**RUSSELL LAW, PC**
L. David Russell (Cal. Bar No. 260043)
david@russelllawpc.com
1500 Rosecrans Ave, Suite 500
Manhattan Beach, California 90266
Telephone: (323) 638-7551
Fax: (323) 760-7458

*Attorneys for Plaintiff Joshua Johnson*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSHUA JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>Defendant. | Case No.: 2:22-cv-06718<br><br>**COMPLAINT FOR:**<br><br>1. **FCRA Private Remedy for Furnisher Reinvestigation Obligations in Response to a Consumer Reporting Agency Request [15 U.S.C. §§ 1681n, 1681o, 1681s-2(b)]**<br><br>2. **CCRAA Private Remedy for Transmitting Incorrect and Inaccurate Information [Cal. Civil Code § 1785.25(a))]**<br><br>**DEMAND FOR JURY TRIAL** |

1
COMPLAINT

Plaintiff Joshua Johnson ("Plaintiff" or "Johnson") alleges as follows:

## THE PARTIES

1. Johnson is an individual who has resided in Los Angeles County, California since March 2019.

2. Defendant JPMorgan Chase Bank, N.A. ("Chase") is a national banking association, with its main office located in Columbus, Ohio. Chase regularly transacts business within this district.

## JURISDICTION AND VENUE

3. This action is brought under the Fair Credit Reporting Act ("FCRA"). This Court has jurisdiction over this matter pursuant to 15 U.S.C. §§ 1681p. This Court has supplemental jurisdiction over Johnson's claim California Consumer Reporting Agencies Act ("CCRAA") because those claims derived from the same common nucleus of operative facts as the FCRA claim and are such that plaintiff would ordinarily be expected to try them in one judicial proceeding. *See Toro v. Centene Corp.,* No. 19-CV-05163-LHK, 2020 WL 1643861, at *5 (N.D. Cal. Apr. 2, 2020) (Koh, J.).

4. Venue is proper in this Court because a substantial part of the events and omissions giving rise to the claim occurred within this judicial district.

## PROCEDURAL BACKGROUND

5. On August, 3, 2022, Plaintiff filed a Demand for Arbitration with an arbitration administrator, JAMS, asking to arbitrate this dispute, pursuant to a contractual arbitration agreement that Plaintiff entered with Chase providing that "all disputes between you and Chase must be resolved by BINDING ARBITRATION[.]" Chase objected to the administration of the arbitration, arguing that: "There is no agreement between the parties for arbitration." Chase contended that the arbitration agreement Plaintiff cited "provide[d] no basis for the instant Demand for Arbitration."

6. On September 16, 2022, JAMS's General Counsel informed the parties that JAMS was unable to proceed with administration of the arbitration because "the parties' arbitration agreement calls for a court to decide issues concerning the scope and interpretation of the agreement . . . . includ[ing] [Chase's] contention that the agreement does not support the Demand."

7. Rather than moving to compel arbitration, Johnson has opted to file a court action. Accordingly, on the next court day, Plaintiff filed this action with this Court.

**FIRST CLAIM FOR RELIEF**
**FCRA Private Remedy for Furnisher Reinvestigation Obligations in Response to a Consumer Reporting Agency Request**
**[15 U.S.C. §§ 1681n, 1681o, 1681s-2(b)]**

8. On or around August 24, 2020, Plaintiff filed a dispute with Equifax, a consumer reporting agency, contesting the completeness and accuracy of information related to a credit card account Plaintiff had previously held with Chase. *See* 15 U.S.C. 1681i(a)(1). Specifically, Plaintiff disputed Chase's reporting that Plaintiff's Chase Ink credit card account was delinquent and was a charge-off, without reporting that there was a bona fide dispute regarding this reporting and that Plaintiff had meritorious defenses, including that (a) in September 2017, Plaintiff contacted Chase to pay off the entire balance of his account and terminate his account relationship with a $0 balance and (b) Plaintiff's payments had never come due because Chase never provided him a statement with the due date. Indeed, as Plaintiff repeatedly communicated to Chase's representatives and technical support professionals prior to requesting that the account relationship be terminated, he was unable to access his account online or view billing statements, so he was not aware of Chase's failure to terminate the account relationship, and once he discovered Chase's false reporting he was unable to verify, Chase's claims that there was a balance on the account.

9. At the very least, by omitting the facts (a) that based on Chase's conduct and representations to him, Plaintiff believed that he had paid off his entire balance before closing his account, (b) that the amount purportedly owed had never become due because Chase never provided a statement to Plaintiff, and (c) that Plaintiff was unable to verify whether there was actually a balance on the account because he could not access the relevant billing statements, Chase created the materially misleading impression that Plaintiff was a poor credit risk—a "deadbeat" who shirked his financial obligations and refused to pay his bills.

10. Shortly thereafter, on or about August 25, 2020, Equifax provided notification of the dispute to Chase, which had provided the underlying information Plaintiff disputed. *See* 15 U.S.C. 1681i(a)(2).

11. Upon receiving the notice of dispute, Chase had approximately thirty days to conduct a reasonable investigation of the disputed information, review all relevant information, and report the results of the investigation to Equifax. *See* 15 U.S.C. § 1681s-2(b)(1), (2). Because the original information was incomplete, inaccurate, and incapable of verification, as alleged above, Chase was required to report the results to Equifax and all other consumer reporting agencies to which it supplied such information and correct the inaccurate or incomplete information. *See id.*

12. Chase, however, failed to conduct a reasonable investigation or review all relevant information. Besides the information provided by Equifax, Chase had additional information in its possession, including internal emails discussing Plaintiff's claims, notes, historical call recordings, a parallel complaint Plaintiff filed with the Consumer Financial Protection Bureau ("CFPB"), and Chase's investigation into the CFPB complaint. A reasonable investigation into the dispute required Chase to review this relevant information relating to dispute. Upon information and belief, Chase failed to review any of this relevant information, despite the fact that it was in its possession. It is clear that Chase's

investigation was merely perfunctory because Chase completed it in only a couple of weeks, instead of using the full investigation period in which it was statutorily-entitled to conduct the investigation. Indeed, Chase completed this investigation while its CFPB investigation was still being conducted, which itself demonstrates that the investigation required by FCRA ended prematurely.

13. At the very least, this failure to conduct a reasonable investigation and review all relevant information constitutes a negligent violation of complying with FCRA. *See* 15 U.S.C. § 1681o. However, because Chase had all the relevant information and disregarded it and knew of the potential harm to Plaintiff by taking such actions, Chase acted with a reckless disregard, which constitutes willful conduct. *See* 15 U.S.C. § 1681n. Plaintiff believes that discovery will uncover additional evidence that Chase willfully refused to comply with these provisions of FCRA.

14. After it concluded its investigation on or about September 8, 2020, Chase updated the information reported to Equifax. While Chase previously reported that "Unpaid balance reported as a loss (charge-off)," its updated report stated that "Account was paid in full, **was a charge-off**." (emphasis added). Again, this information was not accurate or verified. And this report was materially misleading, because it created the impression that Plaintiff intentionally or negligently failed to pay his account, rather than explaining the surrounding circumstances as alleged above. Chase also failed to correct previous reports that there was an delinquent or charged-off account. All these misleading entries should have been deleted and permanently blocked as required by FCRA. Plaintiff only learned about Chase's failure to correct the misleading entries on or around mid-October 2020.

15. At the very least, this failure to update accurately the disputed information constitutes a negligent violation of complying with FCRA. *See* 15 U.S.C. § 1681o. Because these facts also demonstrate that Chase acted with a reckless disregard, it also constitutes a willful violation of FCRA. *See* 15 U.S.C. § 1681n. Plaintiff believes that discovery will uncover additional evidence that Chase willfully refused to comply with these provisions of FCRA.

16. Almost two years later, in approximately March 2022, Chase removed all of the challenged credit references regarding Plaintiff. Until then, however, Plaintiff was damaged by Chase's actions in numerous ways. First, Plaintiff suffered lost credit reputation, as Chase's misreporting caused his credit score to drop approximately 200 points. Plaintiff's credit score and report were passed to at least forty (40) third parties, including a landlord who inquired about it and a mortgage lender. Second, because of the Chase credit report, Plaintiff's home and automobile insurance rates increased. Third, because of the Chase credit report, Plaintiff was deterred from purchasing properties because he was unable to secure a favorable mortgage rate. Plaintiff had investigated and intended to purchase properties in the second half of 2020, but did not do so when he learned that he was only approved for higher mortgage rates reserved for credit risks. But for the misleading and false credit report, Plaintiff would have purchased these properties, which have appreciated in value by approximately 50% since then. Because Chase deterred him from the accessing the credit markets, Plaintiff also lost the enjoyment of the properties he planned to purchase, rental income, and the opportunity to access historically low interest rates. Fourth, Plaintiff also lost wages and spent valuable time pursuing this dispute, for which he is entitled to compensation. Finally, Plaintiff suffered from severe emotional distress due to the damage to creditworthiness, reputation, and his sense of well-being.

**SECOND CLAIM FOR RELIEF**
**CCRAA Private Remedy for Transmitting Incorrect or Inaccurate Information**
**[Cal. Civil Code § 1785.25(a))]**

17. Plaintiff repeats, realleges, and incorporates herein by this reference all prior allegations.

18. As described above, until approximately March 2022, Chase furnished information regarding Plaintiff's Chase Ink account which it knew or should have known was inaccurate and incomplete. *See* Cal. Civil Code § 1785.25(a). For example, Chase's reporting that Plaintiff's Chase Ink credit card account was delinquent and was a charge-off, without failing to mention that there was a bona fide dispute regarding this claim and that Plaintiff had meritorious defenses, including that (a) in September 2017, Plaintiff contacted Chase to pay off the entire balance of his account and close the account with a $0 balance and (b) Plaintiff's payments had never come due because Chase never provided him a statement with the due date. Indeed, as Plaintiff repeatedly communicated to Chase's representatives and technical support professionals, he was unable to access his account online or view billing statements, so he did not know, and once he found out Chase's false reporting he was unable to verify, Chase's claims that there was a balance on the account.

19. At the very least, by omitting the facts (a) that based on Chase's conduct and representations to him, Plaintiff believed that he had paid off his entire balance before closing his account, (b) that the amount purportedly owed had never become due because Chase never provided a statement to Plaintiff, and (c) that Plaintiff was unable to verify whether there was actually a balance on the account because he could not access the relevant billing statements, Chase created the materially misleading impression that Plaintiff was a poor credit risk—a "deadbeat" who shirked his financial obligations and refused to pay his bills.

20. Plaintiff was damaged by Chase's actions in a number of ways. First, Plaintiff suffered lost credit reputation, as Chase's misreporting caused his credit score to drop approximately 200 points. Plaintiff's credit score and report were passed to at least forty (40) third parties, including a landlord who inquired about it and a mortgage lender. Second, because of the Chase credit report, Plaintiff's home and automobile insurance rates increased. Third, because of the Chase credit report, Plaintiff was deterred from purchasing properties because he was unable to secure a favorable mortgage rate. Plaintiff had investigated and intended to purchase properties in the second half of 2020, but did not do so when he learned that he was only approved for higher mortgage rates reserved for credit risks. But for the misleading and false credit report, Plaintiff would have purchased these properties, which have appreciated in value by approximately 50% since then. Because Chase deterred him from the accessing the credit markets, Plaintiff also lost the enjoyment of the properties he planned to purchase, rental income, and the opportunity to access historically low interest rates. Fourth, Plaintiff also lost wages and spent valuable time pursuing this dispute, for which he is entitled to compensation. Finally, Plaintiff suffered from severe emotional distress due to the damage to creditworthiness, reputation, and his sense of well-being.

## **REQUEST FOR RELIEF**

Wherefore, Plaintiff requests the following relief:

A. Compensatory damages in an amount to be proven at trial;

B. Statutory damages;

C. Punitive damages;

D. Attorneys fees and costs pursuant to 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2) and California Civil Code § 1788.31; and

E. Such other relief as is just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial to the extent claims are lawfully permitted a jury trial.

DATED: September 19, 2022        Respectfully submitted,

/s/ L. David Russell

**RUSSELL LAW, PC**
L. David Russell (Cal. Bar No. 260043)
david@russelllawpc.com
1500 Rosecrans Ave, Suite 500
Manhattan Beach, California 90266
Telephone: (323) 638-7551
Fax: (323) 760-7458

*Attorneys for Plaintiff Joshua Johnson*