**DYKEMA GOSSETT LLP**
ASHLEY R. FICKEL, State Bar No. 237111
*AFickel@dykema.com*
ROBERT A. HYATT, State Bar No. 166178
*RHyatt@dykema.com*
444 South Flower Street, Suite 2200
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

JOSHUA JOHNSON,

Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,

Defendant.

Case No. 2:22-cv-06718-AB-MAAx

The Hon. André Birotte Jr.
Courtroom 7B

Magistrate Maria A. Audero
Courtroom: 690

**DECLARATION OF ROBERT HYATT IN SUPPORT OF DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION FOR STAY AND TRIAL CONTINUANCE**

**Date: October 20, 2023**
**Time: 10:00 a.m.**
**Courtroom: 7B**

Complaint Filed: September 19, 2022



DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

**<u>DECLARATION OF ROBERT HYATT</u>**

I, Robert Hyatt, declare as follows:

1. I am an attorney licensed to practice before all courts in the State of California. I am an attorney at Dykema Gossett LLP, counsel for JPMorgan Chase Bank, N.A. ("Chase") in this action. If called as a witness, I could and would testify competently under oath to the facts stated herein.

2. A true and correct copy of JPMorgan Chase Bank, N.A.'s Petition to Confirm March 3, 2022 Arbitration Award and Complaint for Declaratory Relief, Los Angeles Superior Court Case No. 22STCP02017, is attached hereto as **Exhibit A**.

3. A true and correct copy of Award of Arbitrator in American Arbitration Association Case No. 01-20-0015-1734, is attached hereto as **Exhibit B**.

4. A true and correct copy of the December 7, 2022, Minute Order in Los Angeles Superior Court Case No. 22STCP02017, is attached hereto as **Exhibit C**.

5. A true and correct copy of the Notice of Entry of Order Re Joshua Johnson's Motions to Compel Further Responses to Form Interrogatories, Special Interrogatories, Requests for Admission, and Requests for Production; and Notice of Post-Arbitration Status Conference, is attached hereto as **Exhibit D**.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and this declaration was signed on September 21, 2023 in Los Angeles, California.

Robert Hyatt

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

# EXHIBIT A

**DYKEMA GOSSETT LLP**
ASHLEY R. FICKEL, State Bar No. 237111
*AFickel@dykema.com*
ROBERT A. HYATT, State Bar No. 166178
*RHyatt@dykema.com*
333 South Grand Avenue, Suite 2100
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

Attorneys for Applicant,
JPMORGAN CHASE BANK, N.A.

**DYKEMA GOSSETT LLP**
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

JPMORGAN CHASE BANK, N.A.,

Petitioner,

v.

JOSHUA JOHNSON, an individual,

Respondent.

Case No.: 22STCP02017

**JPMORGAN CHASE BANK, N.A.'S PETITION TO CONFIRM MARCH 3, 2022 ARBITRATION AWARD AND COMPLAINT FOR DECLARATORY RELIEF.**

Petitioner JPMorgan Chase Bank, N.A. ("Chase") for its Petition To Confirm March 3, 2022 Arbitration Award And Complaint For Declaratory Relief ("Complaint"), states as follows:

## INTRODUCTION

This action follows an arbitration before the American Arbitration Association ("AAA") regarding Respondent Joshua Johnson's ("Johnson") claims against Chase regarding an Ink Business credit card that resulted in a March 3, 2022 arbitration award that awarded no damages or sanctions.

///

During the arbitration, the parties agreed that an arbitration agreement contained in Chase's Online Services Agreement governed the arbitration, which agreement did not contain any appellate rights. Nonetheless, Johnson has filed an arbitration with the AAA seeking to appeal and to reverse the arbitration award.

Chase now files this action seeking to confirm the arbitration award and seeking an order from the court declaring that Johnson does not have a right to appeal the arbitration award and enjoining Johnson from pursuing further action before the AAA on his claims against Chase.

**PARTIES**

1. Chase is a national banking association, with its main office located in Columbus, Ohio and is therefore a citizen of Ohio.

2. Respondent Joshua Johnson is an individual who resides in Santa Monica, California.

**JURISDICTION AND VENUE**

3. Jurisdiction is proper pursuant to Cal. Code of Civ. Proc. 410.10, which provides that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."

4. Chase brings this petition to confirm the March 3, 2022 Arbitration Award entered in its favor pursuant to Cal. Code Civ. Pro 1290, et seq. Jurisdiction is also appropriate under 9 U.S.C. § 9, which provides:

> [I]f the parties in their [arbitration agreement] have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected . . . If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

5. Chase and Johnson agreed that the Arbitration Agreement contained in the Online Services Agreement (attached hereto as Ex. A) governed the dispute and controlled the arbitration

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

(the "**OSA Arbitration Agreement**"). The **OSA Arbitration Agreement** "is made pursuant to a transaction involving interstate commerce" and is therefore "governed by the Federal Arbitration Act, 9 U.S.C. sections 1-16, as it may be amended." *Id.* Pursuant to the **OSA Arbitration Agreement**, the parties also consented to judicial confirmation of any award: "Judgment upon any arbitration award may be entered in any court having jurisdiction." *Id.*

6. To the extent Chase seeks a declaration of its rights and to enjoin Johnson, jurisdiction in this Court is proper pursuant to Cal. Civ. Proc. Code §§ 525, 526, and 1060.

7. Personal jurisdiction over Respondent Johnson exists because Johnson is a resident of Los Angeles County.

8. Venue is proper in this Court because Respondent Johnson currently resides in Los Angeles County and has requested that the hearing of the appeal before the AAA take place in Los Angeles, California. *See* Ex. B, p. 1.

9. Jurisdiction and venue are therefore appropriate in this Court for all of Chase's claims.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

## ALLEGATIONS RELATING TO CHASE PETITION FOR CONFIRMATION OF AWARD AND FOR DECLARATORY RELIEF

### I. AAA Case No. 01-20-0015-1734 (the "Arbitration")

#### A. Factual Summary For The Arbitration

10. Johnson obtained a Chase Ink Business Card on January 5, 2017. On that day, he entered into the Ink Business Card Agreement with Chase, which clearly delineated this business account from any personal accounts. *See* Ex. C, p. 4.

11. On February 17, 2017, Johnson enrolled in online billing and approved receipt of paperless statements for the Ink Business Card and established a unique User ID for online account access for the Ink Business Card.

12. Johnson made payments on the Ink Business Card for several months but, after

falling behind on his payment obligations, he made one final payment in September 2017, which amount did not pay the balance in full. Johnson made no further payments toward the balance due on his Ink Business Card.

13. Chase sent Johnson monthly emails to the e-mail account Johnson designated for the Ink Business Card account advising him that statements were available on-line via chase.com.

14. Commencing in October 2017, Chase furnished information to the credit bureaus that Johnson was delinquent on payments due on his Ink Business Card. In April 2018 Chase charged off the remaining balance due on the Ink Business Card.

**B. Johnson Arbitration Demand.**

15. On or about September 30, 2020, Johnson filed a Demand for Arbitration with the AAA and asserted a claim for credit correction and damages arising from his use of his Chase Ink Business Card.

16. Johnson (or someone on his behalf) attached to his Demand a Chase form Arbitration Clause (the "**Form Arbitration Agreement**"). A true and correct copy is attached as Ex. D. The **Form Arbitration Agreement** provided the right to pursue an appeal before the AAA. Ex. D, p. 2.

17. Arbitrator Charles Holton was appointed as Arbitrator of the dispute on January 4, 2021.

18. On April 2, 2021, Johnson amended his claim to clarify he opened the subject account in January 2017 and to assert several alleged failures by Chase that allegedly resulted in damages to him, including damaged creditworthiness, lost profits, late fees and interest, increased insurance rates, and compensation for his time and costs in pursuing his claims through arbitration.

///

///

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

19. On April 16, 2021, Chase filed an Answer to the Amended Complaint denying any wrongdoing.

**C. Johnson Disputes the Application of the Form Arbitration Agreement and Advocates for Application of the OSA Arbitration Agreement**

20. During the course of the Arbitration, Johnson disputed the application of the **Form Arbitration Agreement** and argued that agreement should be rejected and that the **OSA Arbitration Agreement** should govern the Arbitration. Following a discussion with the Arbitrator, the parties ultimately agreed that the **Arbitration** would be conducted pursuant to the **OSA Arbitration Agreement** and Arbitrator Holton issued a confirming email. *See* Ex. A.

21. Unlike the **Form Arbitration Agreement** attached to Johnson's Demand, the **OSA Arbitration Agreement** does not contain appellate rights.

**D. The Arbitrator Issues the Final Award In The Arbitration And The Arbitration Is Closed.**

22. On March 3, 2022, Arbitrator Holton issued the Award of Arbitrator (the "**Award**"). See Ex. E. Among other things, the **Award** stated:

> Upon payment by Claimant Johnson of $238.52 to Respondent Chase or its attorney, Respondent Chase is ordered to retract and cause to be removed any and all adverse credit references which it has caused to be made regarding Claimant Johnson arising out of the Ink business credit card account. No damages or sanctions are awarded, and each party shall bear his/its own costs as incurred.

23. On March 3, 2022, the AAA closed the case and provided to Chase and Johnson a document entitled "What Happens After the Arbitrator Issues an Award." *See* Ex. F. Consistent with the Consumer Arbitration Rules, that document stated:

> The AAA can only handle an appeal of the arbitration award if the parties have agreed that an appeal is allowed. There is no right to appeal in arbitration like there is in court.

///

///

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

**II. AAA Case No. 02-20-0015-1734 (the "Arbitration Appeal") – Johnson's Attempted Appeal of The Award.**

24. On or about March 22, 2022, Johnson commenced AAA Case No. 02-20-0015-1734 as an appeal of the **Award**:

Case Number: **<u>02</u>-20-0015-1734 (APPEAL)**

Joshua Johnson
-vs-
JPMorgan Case Bank N.A.

25. As support for his baseless appeal, before the AAA, Johnson contemporaneously filed with the AAA two irrelevant and otherwise inapplicable arbitration agreements containing rights to pursue an appeal before the AAA: (i) the **Form Arbitration Agreement** (Ex. D), and (ii) a June 5, 2019 notification of amendment to cardmember agreement for Johnson's personal Chase Freedom Card ending in 5301 entitled "Important Changes to Your Account Terms" (Ex. G, the "**Freedom Card Arbitration Agreement**").

26. Having specifically advocated against the application of the **Form Arbitration Agreement** and having argued instead for the application of the **OSA Arbitration Agreement**, Johnson may not rely on any appellate rights contained in the rejected **Form Arbitration Agreement** to support his purported appeal of the **Award**.

27. The dispute in the **Arbitration** did not arise from or otherwise involve Johnson's use of his Chase Freedom credit card ending in 5301. As such, appellate rights contained in the **Freedom Card Arbitration Agreement** (*received by Johnson on June 5, 2019*) provide no basis for AAA jurisdiction or administration of an appeal of the **Award** – particularly where, as here, Arbitrator Holton specifically noted Chase and Johnson's agreement that the **OSA Arbitration Agreement** governed the **Arbitration.** *See* Ex. A.

28. The **OSA Arbitration Agreement** contains no appellate rights and does not constitute an agreement to allow the AAA to administer an appeal of the **Award**.

29. Because there is no agreement between Chase and Johnson for the AAA to administer an appeal of the **Award**, Johnson has no contractual right to request that the AAA administer the **Arbitration Appeal**, including requesting that Chase make payments, and to appoint any arbitrator(s).

30. On April 6, 2022, the AAA sent various items of correspondence to Chase and Johnson that purported to (i) "acknowledge that the filing requirements have been met" to commence the **Arbitration Appeal,** (ii) give Chase until April 20, 2022 to answer Johnson's claim, and (iii) to require Chase to pay its portion of the filing fee by May 6, 2022. Ex. H.

31. On April 20, 2022, Chase filed an Objection noting, among other things, that there is no agreement between the parties for an appeal of the **Award** before the AAA and that the **Arbitration Appeal** should be dismissed. Ex. I.

32. On May 5, 2022, Johnson filed a Response to Chase's Objection. Ex. J.

33. On May 9, 2022, the AAA issued an email advising that it "has made the determination to proceed with the administration" of the appeal and advising that Chase's "filing fee is due no later than May 20, 2022." *See* Ex. B, p. 3. Chase paid the filing fee under protest to avoid any prejudice to its rights.

34. Chase believes the AAA's decision to proceed with administration is reliant on the agreements submitted by Johnson to commence the **Arbitration Appeal.** But neither of those agreements provides Johnson a contractual right to pursue any appeal of the **Award:**

a. Even Johnson agrees that the **Form Arbitration Agreement** does not provide a basis for appellate rights in the **Arbitration Appeal.** Per Johnson: "That agreement, which also contains appellate rights, was indeed rejected and its contents irrelevant." *See* Ex. J, p. 2.

b. Because the dispute in the **Arbitration** did not arise from Johnson's use of his Freedom Card (*see supra* ¶27), the **Freedom Card Arbitration Agreement** provides no basis for

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

Johnson's pursuit of an appeal of the **Award** before the AAA. But even if that agreement were to be applied to the **Arbitration Appeal** (which it should not), that agreement states that only a court may determine if the arbitration agreement applies: "All issues are for the arbitrator to decide, *except that issues relating to the scope, enforceability, interpretation, formation, and validity of this arbitration agreement are for a court to decide*." Ex. G, p. 7.

35. Because Johnson has no basis to request that the AAA administer the **Arbitration Appeal,** Chase brings this action seeking a declaration from the court that Johnson has no contractual right to do so and for an order enjoining Johnson from appealing the **Award** before the AAA forum.

**FIRST CAUSE OF ACTION**
**CONFIRMATION OF ARBITRATION AWARD**

36. Chase repeats and realleges the preceding paragraphs as if fully set forth herein.

37. The Arbitrator accurately set forth the pertinent procedural history of the **Arbitration**:

> A. "Johnson's original Claim in this arbitration, filed under the AAA consumer Arbitration Rules, requested injunctive relief requiring Chase to correct his credit report, which he contended was incorrect."
>
> B. "On April 2, 2021, with the permission of the Arbitrator, Johnson filed an Amended Claim reciting a failure on the part of the Chase to furnish agreed upon statements of account, failure of Chase to provide reasonable technical support regarding electronic statement delivery, failure of Chase to properly settle and close-out his account, and incorrect reporting by Chase that the Johnson account in question was delinquent. [In that amendment] Johnson sought Relief including a requirement that Chase cease reporting derogatory information regarding his account, that Chase be ordered not to discriminate in the future against Johnson for pursuing this claim, compensation for late fees charged by Chase, and compensation for Johnson's time and costs in pursuing this arbitration."
>
> C. "Chase filed an Answer denying all pertinent allegations. In an email to the AAA and opposing counsel on April 2, 2021, Johnson stated that he was not pursuing a Fair Credit Reporting Act (FCRA) claim in this arbitration."
>
> D. "The parties engaged in extensive document discovery, and there were several disputes which ultimately gave rise to a Motion for Sanctions brought by

Johnson."

E. "Contrary to the original estimate of one hearing day, there were four days of evidentiary hearings, along with numerous conference calls to address motions, briefing, and evidentiary issues."

F. "The parties submitted literally volumes of evidence and briefs including five notebooks of documents and at least ten legal briefs."

38. Indeed, Chase and Johnson spent a total of approximately 24 hours engaged in formal hearings on June 8, July 15, September 17, and September 29, 2021.

37. The **OSA Arbitration Agreement** provided that the arbitration "shall be governed by the Federal Arbitration Act, 9 U.S.C. sections 1-16."

38. Under Chapter 1 of the FAA, 9 U.S.C. § 9, a court must confirm a domestic arbitration award if the petitioner sufficiently shows that:

a. The parties agreed to arbitrate their dispute;

b. the arbitration resulted in an award;

c. the parties agreed that judgment may be entered on the arbitration award;

d. the application to confirm the award has been made within the time prescribed; and

e. the award has not been and should not be vacated, modified, or corrected.

39. Chase and Johnson agreed through the Arbitration Agreement and through submission of Johnson's dispute to the AAA that the decision of Arbitrator Holton shall be final and binding and that judgment upon the **Award** may be entered in any court having jurisdiction.

40. Section 9 of the FAA mandates that "the court *must grant* such an order *unless* the award is vacated, modified, or corrected as prescribed in sections 10 and 11." *LG Elecs. MobileComm U.S.A., Inc. v. Reliance Communs., LLC,* No. 18-cv-0250-BAS-RBB, 2018 U.S. Dist. LEXIS 75284, at *14 (S.D. Cal. May 3, 2018), quoting 9 U.S.C. §9 (emphasis added). Confirmation of an arbitration award typically "is a summary proceeding that merely makes what is already a final

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

arbitration award a judgment of the court." *Id.*, at *13-14 (S.D. Cal. May 3, 2018), (*quoting Romero v. Citibank USA, Nat'l Ass'n,* 551 F. Supp. 2d 1010, 1014 (E.D. Cal. 2008) (internal citations omitted)). Courts usually have a very limited role when a party seeks confirmation of an arbitration award: if confirmation of the award satisfies the requirements in 9 U.S.C. § 9, the court must confirm the order. *See G.C. & K.B. Invs., Inc. v. Wilson,* 326 F.3d 1096, 1105 (9th Cir. 2003). Federal policy, evidenced by the FAA, favors arbitration and courts are required to "rigorously enforce agreements to arbitrate." *McCluskey v. Airbnb, Inc.,* No. CV 19-9613 PA (PJWx), 2020 U.S. Dist. LEXIS 3968, at *10 (C.D. Cal. Jan. 7, 2020) (*citing Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226 (1983)). As a result, "federal court review of arbitration awards is extremely limited." *A.G. Edwards & Sons, Inc. v. McCollough,* 967 F.2d 1401, 1403 (9th Cir. 1992). Indeed, "[w]here the parties have agreed to arbitration, the court will not review the merits of the dispute." *Thompson v. Tega-Rand Int'l,* 740 F.2d 762, 763 (9th Cir. 1984).

41. This action to confirm the **Award** is made within one year of the **Award's** March 3, 2022 date. 9 U.S.C. § 9.

42. The **Award** has not and should not be vacated, modified, or corrected because the **Award**: (a) was not procured by corruption, fraud, or undue means; (b) there was no partiality or corruption by the arbitrator; (c) the Arbitrator granted postponements and additional hearings, and reviewed numerous written submissions by the parties regarding the scope of arbitration, the applicable arbitration agreement, and the claims and damages; and (d) there was no material miscalculation of figures or an evident material mistake in the description of the **Award**.

43. Accordingly, the Court should issue an order confirming the **Award** attached as Ex. E and direct that judgment be entered thereon.

**WHEREFORE**, JPMorgan Chase Bank, N.A. respectfully requests that this Court enter an order and judgment as follows:

1. Confirming the **Award** attached as Ex. E pursuant to Cal. Code Civ. Pro 1290, et. seq. and 9 U.S.C. § 9; and

2. Issuing a judgment thereon pursuant to 9 U.S.C. § 13.

A form of Order is attached.

**SECOND CAUSE OF ACTION**
**DECLARATORY JUDGMENT THAT JOHNSON IS ENJOINED FROM PURSUING APPEAL OF MARCH 3, 2022 ARBITRATION AWARD**

44. Chase repeats and realleges the preceding paragraphs as if fully set forth herein.

45. There exists a genuine and bona fide dispute and an actual controversy and disagreement between Chase and Johnson as to whether the March 3, 2022 **Award** is subject to appeal before the AAA.

46. The parties agreed that the **OSA Arbitration Agreement** governed the **Arbitration**.

47. The **OSA Arbitration Agreement** does not contain appellate rights and the parties have not otherwise agreed that the AAA may administer an appeal.

48. Nonetheless, Johnson filed an appeal of the **Award** with the AAA and the AAA has proceeded with administration of the purported appeal.

49. Chase maintains that Johnson's purported appeal of the **Award** is improper because there is no contract or other agreement between the parties.

50. If Chase is forced to defend against an appeal of the **Award** (a claim Johnson has no right to pursue), Chase will suffer harm such that injunctive relief by the Court is required. Also, because the **OSA Arbitration Agreement** does not provide for appellate rights, any further arbitration on these claims is barred by the doctrine of res judicata.

///

///

///

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

**WHEREFORE**, JPMorgan Chase Bank, N.A. respectfully requests the Court declare:

A. Johnson has no right to pursue an appeal of the **Award**; and

B. Johnson is enjoined pursuant to Cal. Civil Code § 526(a)(a) [An injunction may be granted … [w]hen it appears by the complaint that the plaintiff is entitled to the relief demanded, and the relief… consists in retraining the commission or continuance of the act complained of …perpetually."] from pursuing an appeal of the **Award** before the AAA.

Dated: May 27, 2022

**DYKEMA GOSSETT LLP**

By: ______________________
ASHLEY R. FICKEL
ROBERT A. HYATT
Attorneys for Defendant,
JPMorgan Chase Bank, N.A.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

# EXHIBIT A

**Hickey, Joseph**

| | |
|---|---|
| **From:** | Charles Holton <holton@law.duke.edu> |
| **Sent:** | Thursday, July 15, 2021 2:02 PM |
| **To:** | Pro Se Administrator 9 |
| **Cc:** | Joshua Johnson; Maison, Jeannie; Hickey, Joseph |
| **Subject:** | hearing update RE: Joshua Johnson v. JPMorgan Chase Bank N.A. - Case 01-20-0015-1734 |
| **Attachments:** | Arbitrator Ex. 1.pdf |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

*** EXTERNAL***

The hearing today is adjourned, but we are not finished with the taking of evidence. A further hearing is required. An issue has arisen with regard the recent production of newly discovered evidence by the Claimant, as well as Claimant's concerns regarding the thoroughness of prior productions of documents by the Respondent.
Respondent is searching its records further regarding specific items that have been designated by Claimant, and Mr. Hickey will report to the Arbitrator, the Claimant, and the AAA as to what is found.

We hope to reconvene and complete the hearing on next Tuesday, July 20 from 10:00-6:00 EDT – but I will not formally set that date until we hear back from Mr. Hickey.

Finally, an issue arose as to what particular arbitration provision governs the claims in this particular case, given that Chase has posted several ones from time to time that have variances in language. The parties agreed today that the arbitration provision attached hereto as Arbitrator Ex. 1 is the provision governing this arbitration.

C. Holton

Arbitrator Ex. 1

**ARBITRATION AGREEMENT**

The governing agreement, in full:

YOU HEREBY AGREE THAT ANY DISPUTE, CLAIM OR CONTROVERSY ARISING NOW OR IN THE FUTURE UNDER OR RELATING IN ANY WAY TO THIS AGREEMENT, OR TO THE ONLINE SERVICE ("CLAIM"), REGARDLESS OF THE NATURE OF THE CAUSE(S) OF ACTION ASSERTED (INCLUDING CLAIMS FOR INJUNCTIVE, DECLARATORY, OR EQUITABLE RELIEF), SHALL BE RESOLVED BY BINDING ARBITRATION. CLAIMS SUBJECT TO ARBITRATION INCLUDE CLAIMS THAT ARE MADE AS COUNTERCLAIMS, CROSS CLAIMS, THIRD PARTY CLAIMS, INTERPLEADERS, OR OTHERWISE. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, AND YOU THEREFORE AGREE TO WAIVE ANY RIGHT THAT YOU OR WE MIGHT OTHERWISE HAVE HAD TO A JURY TRIAL OR THE OPPORTUNITY TO LITIGATE ANY CLAIMS IN COURT BEFORE EITHER A JUDGE OR JURY. YOU FURTHER AGREE THAT YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER REPRESENTATIVE ACTION (SUCH AS AN ACTION IN THE FORM OF A PRIVATE ATTORNEY GENERAL) TO LITIGATE ANY CLAIMS IN COURT BEFORE EITHER A JUDGE OR JURY; NOR WILL YOU BE ABLE TO PARTICIPATE AS A CLASS MEMBER IN A CLASS ACTION OR OTHER REPRESENTATIVE ACTION IN ARBITRATION OR IN COURT BEFORE EITHER A JUDGE OR JURY. IF THE PRECEDING SENTENCE IS NOT ENFORCED FOR ANY REASON, THEN YOU AGREE THAT IN SUCH CASE ANY CLASS DISPUTE WILL NOT BE RESOLVED THROUGH ARBITRATION.

This binding arbitration provision applies to any and all Claims that you have against us, our parent, subsidiaries, affiliates, licensees, predecessors, successors, assigns, and against all of their respective employees, agents, or assigns, or that we have against you; it also includes any and all Claims regarding the applicability of this arbitration clause or the validity of the Agreement, in whole or in part. It is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. sections 1-16, as it may be amended.

The party filing a Claim(s) in arbitration must file its Claim(s) before the American Arbitration Association under the rules of such arbitration administrator in effect at the time the Claim(s) was filed. Rules and forms of the may be obtained and Claims made may be filed at American Arbitration Association, 335 Madison Avenue, Floor 10, New York, NY 10017-4605, 800-778-7879, www.adr.org. Any arbitration hearing that you attend shall be held at a place chosen by the arbitrator or arbitrator administrator within the federal district in which you reside at the time the Claim(s) is filed, or at some other place to which you and we agree in writing. Judgment upon any arbitration award may be entered in any court having jurisdiction.

This Arbitration Agreement shall survive: (i) termination or changes in the Agreement, and the relationship between you and us concerning the Agreement; and (ii) the bankruptcy of any party or any similar proceeding initiated by you or on your behalf. If any portion of this Arbitration provision is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force.

# EXHIBIT B

**Hickey, Joseph**

**From:** Joshua Johnson <josh@jj88.org>
**Sent:** Tuesday, May 10, 2022 2:01 PM
**To:** Pro Se Manager 8
**Cc:** Hickey, Joseph
**Subject:** Re: Joshua Johnson v. JPMorgan Chase Bank N.A. - Case 02-20-0015-1734

*** EXTERNAL***

Hi Pro Se Manager,

> Please see attached, a copy of the April 6 invoice, per your request.

Thank you, much appreciated.

> Additionally, the AAA is requesting that you please provide your address in California as we currently only have your North Carolina address on file.

2201 5th St Apt 208
Santa Monica, CA 90405

> Further, please note that the AAA is actively reviewing the issue.

Understood, no rush. Thanks for the update.

Josh

On Tue, May 10, 2022 at 10:49 AM Pro Se Manager 8 <ProSeManager8@adr.org> wrote:

> Good Afternoon Mr. Johnson:
>
> Please see attached, a copy of the April 6 invoice, per your request.
>
> Additionally, the AAA is requesting that you please provide your address in California as we currently only have your North Carolina address on file. Further, please note that the AAA is actively reviewing the issue.
>
> Thank you,
>
> Pro Se Manager 8

**Pro Se Manager 8**

F: 866 644 0234 E: ProSeManager8@adr.org
PO Box 19609, Johnston, RI 02919
www.adr.org/prose

NPT's BEST NONPROFITS TO WORK FOR ★2022★

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

---

**From:** Joshua Johnson <josh@jj88.org>
**Sent:** Monday, May 9, 2022 3:29 PM
**To:** Pro Se Manager 8 <ProSeManager8@adr.org>
**Cc:** Hickey, Joseph <JHickey@dykema.com>
**Subject:** Re: Joshua Johnson v. JPMorgan Chase Bank N.A. - Case 02-20-0015-1734

***** External E-Mail – Use Caution *****

Pro Se Manager,

Appreciate the quick turnaround time. A couple quick notes.

**Apr 6 Invoice**
I reside in California. Cal. Civ. Proc. Code § 1281.97(a)(2), which went into effect on Jan 1 2022, states that "[a]fter an employee or consumer meets the filing requirements necessary to initiate an arbitration, the arbitration provider shall immediately provide an invoice for any fees and costs required before the arbitration can proceed to all of the parties to the arbitration. The invoice shall be provided in its entirety, shall state the full amount owed and the date that payment is due, and shall be sent to all parties by the same means on the same day".

The Apr 6 2022 letter sent to both parties states "$425.00 is now due from the Business and an invoice will separately follow". I have not yet received a copy of this invoice. **Would you please provide me with a copy?**

**Payment Due Date**
Section 1281.97(a)(2) also states "absent an express provision in the arbitration agreement stating the number of days in which the parties to the arbitration must pay any required fees or costs, the arbitration provider shall issue all invoices to the parties as due upon receipt".

There is no provision in the arbitration agreement or the Consumer Arbitration Rules that allows the objection of the business to delay the payment due date. Nor was an extension requested by either party.

Consistent with applicable state law, the Rules (the fee is "due from the business once the consumer has met the filing requirements [Mar 23 2022]"), and as expressly stated in the Apr 6 2022 letter ("$425.00 is now due"), the business filing fee was due on Apr 6 and is now 33 days past due. **I object to any modification of the payment due date.**

Thanks,

Josh

On Mon, May 9, 2022 at 8:15 AM Pro Se Manager 8 <ProSeManager8@adr.org> wrote:

Good Morning Parties:

After reviewing the parties respective positions regarding the jurisdiction of this matter, the AAA has made the determination to proceed with the administration of this case.

**Given this, please be reminded that Respondent's filing fee is due no later than May 20, 2022.**

Thank you,

Pro Se Manager 8

**Pro Se Manager 8**

F: 866 644 0234 E: ProSeManager8@adr.org
PO Box 19609, Johnston, RI 02919
www.adr.org/prose

NPT's BEST NONPROFITS TO WORK FOR ★2022★

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**From:** Pro Se Manager 8 <ProSeManager8@adr.org>
**Sent:** Monday, May 9, 2022 10:13 AM

**To:** Joshua Johnson <josh@jj88.org>; Pro Se Manager 8 <ProSeManager8@adr.org>
**Cc:** Hickey, Joseph <JHickey@dykema.com>
**Subject:** RE: Joshua Johnson v. JPMorgan Chase Bank N.A. - Case 02-20-0015-1734

Good Morning:

This will confirm receipt of Claimant's Response to Respondent's Objection, which has been made a part of the case file.

The AAA is reviewing the parties' positions and will advise once a determination has been made.

Thank you,

Pro Se Manager 8

**Pro Se Manager 8**

F: 866 644 0234 E: ProSeManager8@adr.org
PO Box 19609, Johnston, RI 02919

---

**From:** Joshua Johnson <josh@jj88.org>
**Sent:** Thursday, May 5, 2022 9:35 PM
**To:** Pro Se Manager 8 <ProSeManager8@adr.org>
**Cc:** Hickey, Joseph <JHickey@dykema.com>
**Subject:** Re: Joshua Johnson v. JPMorgan Chase Bank N.A. - Case 02-20-0015-1734

***** External E-Mail – Use Caution *****

Hello,

Please see attached for response brief (3 pages + exhibits). Please make sure that whoever is tasked with reviewing the brief on the AAA side understands that I am not an attorney (i.e. please construe arguments liberally).

On a related note, will you please forward me a copy of the invoice that was sent to Chase on or about Apr 6 2022?

Thanks,
Josh

On Fri, Apr 29, 2022 at 8:08 AM Pro Se Manager 8 <ProSeManager8@adr.org> wrote:

Good Morning:

Mr. Johnson: please provide your response regarding Respondent's objection to my attention **no later than May 6, 2022.**

Thank you,

Pro Se Manager 8

**Pro Se Manager 8**

F: 866 644 0234 E: ProSeManager8@adr.org
PO Box 19609, Johnston, RI 02919
www.adr.org/prose

NPT's BEST NONPROFITS TO WORK FOR ★2022★

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**From:** Joshua Johnson <josh@jj88.org>
**Sent:** Friday, April 29, 2022 9:56 AM
**To:** Pro Se Manager 8 <ProSeManager8@adr.org>
**Cc:** Hickey, Joseph <JHickey@dykema.com>
**Subject:** Re: Joshua Johnson v. JPMorgan Chase Bank N.A. - Case 02-20-0015-1734

***** External E-Mail – Use Caution *****

If the AAA intends to review Chase's brief in support of its objection, then I wish to submit a response.

On Fri, Apr 29, 2022 at 6:45 AM Pro Se Manager 8 <ProSeManager8@adr.org> wrote:

Good Morning:

This will confirm receipt of the below, which has been made a part of the case file.

The AAA is reviewing the parties' positions and will advise once a determination has been made.

Thank you,

Pro Se Manager 8

**Pro Se Manager 8**

F: 866 644 0234 E: ProSeManager8@adr.org
PO Box 19609, Johnston, RI 02919
www.adr.org/prose

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

---

**From:** Hickey, Joseph <JHickey@dykema.com>
**Sent:** Thursday, April 28, 2022 4:44 PM
**To:** Pro Se Manager 8 <ProSeManager8@adr.org>
**Cc:** Joshua Johnson <josh@jj88.org>; Hickey, Joseph <JHickey@dykema.com>
**Subject:** RE: Joshua Johnson v. JPMorgan Chase Bank N.A. - Case 02-20-0015-1734

***** External E-Mail – Use Caution *****

For the reasons set forth in JPMorgan Chase Bank. N.A.'s April 20th Objection To Demand For Arbitration And Request For Arbitration To Be Stricken / Dismissed, Chase's position is that there is no agreement between the parties for arbitration of Claimant Johnson's purported appeal of Arbitrator Holton's March 3, 2022 ruling in 01-20-0015-1734.

The AAA does not have authority and is without jurisdiction to administer claim 02-20-0015-1734, including requests that Chase pay fees and/or to appoint an arbitrator(s). Chase takes no position on Claimant Johnson's April 21, 2022 request.

Thank you.

**Joseph H. Hickey** (he/him)
Member

D 248-203-0555
JHickey@dykema.com ▪ dykema.com

**BIO VCARD**

39577 Woodward Avenue, Suite 300
Bloomfield Hills, Michigan 48304

Dykema

*** Notice from Dykema Gossett PLLC: This Internet message may contain information that is privileged, confidential, and exempt from disclosure. It is intended for use only by the person to whom it is addressed. If you have received this in error, please (1) do not forward or use this information in any way; and (2) contact me immediately.

Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

---

**From:** Pro Se Manager 8 <ProSeManager8@adr.org>
**Sent:** Thursday, April 21, 2022 9:10 AM
**To:** Joshua Johnson <josh@jj88.org>; Pro Se Manager 8 <ProSeManager8@adr.org>
**Cc:** Hickey, Joseph <JHickey@dykema.com>
**Subject:** RE: Joshua Johnson v. JPMorgan Chase Bank N.A. - Case 02-20-0015-1734
**Importance:** High

*** EXTERNAL***

Good Morning Parties:

This will confirm receipt of the below email from Claimant informing that he is now located in California.

At this time, the AAA is requesting comments from the parties' regarding the change of the locale in this matter from North Carolina to California. **Please respond to this email with your comments no later than <u>April 28, 2022.</u>**

Thank you,

Pro Se Manager 8

**Pro Se Manager 8**

F: 866 644 0234 E: ProSeManager8@adr.org
PO Box 19609, Johnston, RI 02919
www.adr.org/prose

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

---

**From:** Joshua Johnson <josh@jj88.org>
**Sent:** Thursday, April 21, 2022 12:34 AM
**To:** Pro Se Manager 8 <ProSeManager8@adr.org>
**Subject:** Re: Joshua Johnson v. JPMorgan Chase Bank N.A. - Case 02-20-0015-1734

***** External E-Mail – Use Caution *****

Pro se manager,

Separately, I noticed that the Initiation document states that "[i]f an in-person hearing is to be held, the requested hearing locale is **<u>Raleigh, NC</u>**". That is incorrect. I reside in southern CA. The requested hearing locale is **<u>Los Angeles, CA</u>**.

Thanks,

Josh

On Wed, Apr 6, 2022 at 12:15 PM <ProSeManager8@adr.org> wrote:

Hello,

Please review the attached correspondence regarding the above-referenced case.

Feel free to contact me with any questions, comments or concerns you have related to this matter.

Thank you.

[Logo]
Pro Se Manager 8

F: 866 644 0234 E: ProSeManager8@adr.org
PO Box 19609, Johnston, RI 02919
www.adr.org/prose<https://www.adr.org/prose>
[cid:image3c5d81.PNG@1ba82364.4e89d459]

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

# EXHIBIT C

# WELCOME TO ink.

## YOUR BUSINESS CARD AGREEMENT

CHASE

# WELCOME TO YOUR ACCOUNT.

Review and save the following important information about your account. This document together with the Rates and Fees Table is an agreement between you and Chase Bank USA, N.A., a subsidiary of JPMorgan Chase & Co. If you have any questions, please call us using the number on the back of your card. Chase has agreed to lend you money as described in this agreement, and you agree to pay us back together with interest charges and fees. Your use of the account or any payment on the account indicates your acceptance of the terms of this agreement. If any fee in the Rates and Fees Table is marked none, the section of this agreement that relates to that fee does not apply.

**GETTING STARTED: YOUR ACCOUNT** Get acquainted with your account by reviewing the important terms below.

| IMPORTANT TERM | WHAT IT MEANS TO YOU | OUR RESPONSIBILITY |
|---|---|---|
| **Credit Access Line** | You are responsible for balances on your account including amounts charged in excess of your credit access line. We may also refer to credit access line as credit line or credit limit. | We will assign a credit access line to your account, and post it on your monthly billing statement. We may cancel, change or restrict your credit availability at any time. Each transaction is considered for approval on an individual basis, including those above the credit access line. We may not approve all transactions. |
| **Authorized Users** | If any of your employees are allowed to use your account, they will be authorized users. You are responsible for any use of your account by an authorized user or anyone else that you permit to use your account. Authorized users will have access to the entire credit access line unless you establish individual spending limits for them. Authorized users cannot exceed their individual limits during any billing cycle, and any transaction(s) above such spending limit will be declined. You must notify us if you want them to stop using your account. You also are responsible for getting any cards, checks or other means of accessing your account from the authorized user. | If you request, we may issue cards that access your account to your authorized users as designated by you. After the end of each billing cycle, we will restore access to each individual spending limit subject to the available credit on your credit access line. If you wish to terminate an authorized user, we may close your account and open a new account with a different account number. |
| **Annual Membership Fee** | If your account has an annual fee, you are responsible for it every year your account is open or until your account is closed and paid in full. Your monthly billing statement will tell you how to cancel your account and avoid future annual fees. | If your account has an annual fee, we will add your annual fee to your monthly billing statement once a year, whether or not you use your account. Your annual fee will be added to your purchase balance and may incur interest. |
| **Amendments** | **We may change the terms of this agreement including APRs and fees from time to time. We may also add new terms or delete terms. APRs or other terms may also change without amendment, for example when the Prime Rate changes or the default APR becomes applicable. See the Variable Rate and Default APR sections for details.** | Our ability to make changes to this agreement is limited by applicable law. |

R0000002

| | | |
|---|---|---|
| **Guaranty** | Based on your creditworthiness, you may need to provide financial support to us to initiate/maintain your account. | If we in our sole discretion deem such financial support necessary, we will notify you of the type and amount of the required financial support. |

## IMPORTANT DEFINITIONS

| TERM | WHAT IT MEANS |
|---|---|
| **Cash-like Transactions** | The following transactions will be treated as cash advances: purchasing travelers checks, foreign currency, money orders, wire transfers or similar cash-like transactions; purchasing lottery tickets, casino gaming chips, race track wagers or similar betting transactions; and making a payment using a third party service. |
| **Payment Due Date** | Payments are due on the payment due date shown on your monthly statement. The monthly statement also explains when the payment must reach us in order to be considered received as of that date. Payments received after the required time will be credited on the next business day. |
| **Variable Rate** | We calculate variable APRs by adding a margin to the highest U.S. Prime Rate published in the Money Rates section of *The Wall Street Journal* two business days (not weekends or federal holidays) before the closing date shown on your billing statement. The APR may increase or decrease each month if the Prime Rate changes. Any new rate will be applied as of the first day of your billing cycle during which the Prime Rate has changed. If the APR increases, you will pay a higher interest charge and may pay a higher minimum payment. The Prime Rate is simply a reference index and is not the lowest interest rate available. If *The Wall Street Journal* stops publishing the Prime Rate, we will select a similar reference rate. |
| **Default** | Your account will be in default if:<br>1) You do not pay at least the minimum payment when due; 2) You fail to comply with this or other agreements with us or any of our related banks; 3) We believe you may be unwilling or unable to pay your debts on time; 4) We obtain information related to any material adverse change in the business, operations or financial condition of the company; 5) You file a petition as debtor in any bankruptcy, receivership, reorganization, liquidation, dissolution, or insolvency proceeding, or are the subject of an involuntary petition in any such proceeding; 6) You sell the company, go out of business or cease to do business; or 7) You become incapacitated or die.<br>If your account is in default, we may close it without notice and require you to pay your unpaid balance immediately. We can also begin collection activities. To the extent permitted by law, if you are in default because you have failed to pay us, we will require you to pay our collection costs, attorneys' fees, court costs, and all other expenses of enforcing our rights under this agreement. |

## USING YOUR CARD

Your account is a business account and should only be used for business transactions and not for personal, family or household purposes. Business purpose credit is governed by different laws and regulations than those governing consumer purpose credit, and the rules that apply to this account are different from the rules that apply to any consumer accounts you may have with us. For example, the consumer protections of the Credit Card Accountability Responsibility and Disclosure Act of 2009 do not apply to this account. You agree that all purchases and other transactions on your account will be treated as business transactions made solely for business purposes. Except as required by law, we are not responsible for any merchandise or services purchased or leased using your account.

| TRANSACTIONS | WHAT IT MEANS TO YOU | OUR RESPONSIBILITY |
|---|---|---|
| Purchases | You may use your account to buy goods and services. | We provide to you an interest-free period in which to pay for purchases under certain conditions. See Interest Charges below. |
| Balance Transfers | If eligible for a balance transfer, you can transfer balances to your account by using balance transfer checks, visiting our website or calling us. | We permit balance transfers from most non-Chase business accounts. We do not permit balance transfers from other accounts or loans with us or any of our related banks. |
| Cash Advances | You may obtain cash from automatic teller machines, at banks or by using cash advance checks. Unless we say otherwise, balance transfer checks or promotional checks made payable to cash or yourself will be treated as cash advances. | We treat certain other transactions as cash advances. See the Cash-like Transactions section under Important Definitions above. |
| Checks | For your protection, balance transfer and cash advance checks must be signed by the person whose name is printed on the checks. | We may provide balance transfer checks and cash advance checks for your use; we have the right not to pay a check for any reason. |
| Automatic Charges | You may set up scheduled and repeat transactions to your account. If your account is closed or suspended, or your account number changes, you will need to contact any persons that you are paying by automatic transactions. | We are not responsible for scheduled and repeat transactions if your account is closed, suspended or the account number changes. |
| Promotions | You may receive special offers related to your account. | Any special offer is subject to this agreement, unless explained otherwise. |

R0000004

| | | |
|---|---|---|
| **Foreign Transaction Fee and Exchange Rate** | There is a fee, unless "None" is stated in the Rates and Fees Table, for transactions that are made in a currency other than U.S. Dollars. Our fee is a percentage of the U.S. Dollar amount of the transaction. Please see the Rates and Fees Table for the amount of this fee, if any. | • If a transaction is in a foreign currency, Visa International or MasterCard International will convert the transaction into U.S. dollars using their own currency conversion procedures, and then will send us the transaction amount. The exchange rate will be determined using either the range of rates available in the wholesale currency markets for the processing date (which may be different from the rate the card association receives) or a government-mandated rate in effect on that date. The exchange rate used by Visa or MasterCard may differ from the rate on the date of your transaction.<br>• In the case of returned or exchanged merchandise that was purchased in a foreign currency, the exchange rate is determined on the date of the return. |
| **Authorization of Transactions / Closing Your Account** | We are not obligated to honor every transaction, and we may close or suspend your account. Sometimes we close accounts based not on your actions or inactions, but on our business needs. | We may decline transactions for any reason, including: operational matters, the account is in default, or suspected fraudulent or unlawful activity. We are not responsible for any losses associated with a declined transaction. |

## PAYING US BACK

You will receive a billing statement, if one is required, each month. It will show your minimum required payment. After you make a payment, it may take up to 15 days to restore available credit on your account.

| IMPORTANT INFORMATION | WHAT IT MEANS TO YOU | OUR RESPONSIBILITY |
|---|---|---|
| **Payment Instructions** | You must follow the payment instructions on your billing statement. You can pay us by: check, money order, or electronic payment drawn on a U.S. bank or a foreign bank branch in the U.S. All payments must be in U.S. Dollars. You authorize us to collect any payment check either electronically or by draft. Funds may be taken from your account on the same day we receive your payment. Payments marked "paid in full" must be sent to the Conditional Payments address shown on your billing statement. See your billing statement for complete payment instructions. | As long as you make your payment in accordance with the instructions on your billing statement by the date and time payments are due, we will credit your payment as of the same day it is received. We may accept and process any payments marked as "paid in full" without losing our rights. |
| **Minimum Payment** | You agree to pay at least the minimum payment when due. You also agree to pay amounts in excess of your credit access line when billed to your monthly statements or sooner if we ask. Minimum payments may include specific fixed payments that are part of special promotions. You can pay down balances faster by paying more than the minimum payment or the total unpaid balance on your account. | We will calculate your minimum payment based on the method described below the Rates and Fees Table. The minimum payment will appear on your monthly statement and includes any past due amounts. |
| **Interest-Free Period (also called Grace Period) on Purchases** | • The interest-free period is the time when you are not charged interest on new purchases.<br>• Your account is in an interest-free period when you pay your New Balance as shown on your statement every month by the due date and time. During this period, you will not pay interest on purchases.<br>• Balance Transfers, Checks and Cash Advances do not have an interest-free period. | • We do not charge interest on any part of the purchase balance that you pay while your account is in an interest-free period.<br>• We charge interest on purchases from the date the transactions appear on your account (until the balance is paid in full) when your account is not in an interest-free period.<br>• For more details about how we calculate your interest charges, see the Interest Charges section of this agreement. |

| | | |
|---|---|---|
| **Disputing Payments** | You agree to waive all right to dispute, return, refund or reversal of any payment received by us unless, within forty-five (45) calendar days after the statement was mailed or made available to you, we receive a written dispute from you stating that the payment was not authorized by you, the dollar amount of the payment disputed and the date the disputed payment posted to your account. Written disputes must be sent to Cardmember Service, Business Card Department, P.O. Box 15070, Wilmington, Delaware 19850-5070. **Telephoning us will not preserve your rights.** If you do not provide us the required written notice you are forever barred from bringing any claims of any kind against us relating to any unauthorized transactions or inaccuracies in debits, credits or computations or any other errors, discrepancies or irregularities in any monthly statement or relating to the non-receipt of a monthly statement. | All forms of payment received by us for your account, whether by check, electronically or otherwise, will be deemed fully and legally authorized by you, regardless of whether you actually directed or authorized the payment. |
| **Payment Allocation** | • When you make a payment, generally, we first apply your minimum payment to the balance on your monthly statement with the lowest APR.<br>• Any payment above your minimum payment would generally then be applied to the balance on your monthly statement with the highest APR first.<br>• If you do not pay your balance in full each month, you may not be able to avoid interest charges on new purchases. | We apply payments to balances as they appear on your monthly statement before being applied to new transactions. An example of a new transaction is a recent purchase you made that has not yet been included in the New Balance as shown on your statement. |
| **Credit Balances** | You may request a refund of any credit balance. | If you do not request a refund, we will apply any credit balance to new charges on your Account. If a credit balance remains on your account for 6 months and the amount is $1 or more, we will automatically refund it to you. If your credit balance is less than $1, it will be removed from your account but we will send the credit balance to you if you ask us to do so. |

## "HOW TO AVOID..."

Certain transactions and situations may cause your account to receive a fee or have another impact on your account. The information below explains how you can avoid these outcomes. Amounts of these fees are listed in the Rates and Fees Table. Special services you request may incur additional service fees; be sure to carefully review the details of any additional services to understand the terms.

| "HOW TO AVOID..." | WHAT TO DO | WHAT IT MEANS |
|---|---|---|
| Late Fee | Ensure Chase receives at least the minimum payment shown on your billing statement when due. | If any payment is late, we may charge you a late fee. If the fee is based on a balance, we calculate the fee using the total balance at the end of the day the fee is charged. |
| Return Check Fee | Do not stop payment on cash advance and balance transfer checks, and do not default. | We may charge a return check fee if we stop payment on a cash advance check or balance transfer check at your request, or we refuse to pay a cash advance check or balance transfer check for any reason, including because your account is in default. |
| Return Payment Fee | Do not submit a payment that could be returned unpaid. | We may charge this fee if the payment you offer to us is not honored, is returned unpaid, or cannot be processed. |
| Default APR | Do not:<br>• Fail to make any minimum payment by the date and time due (late payment); or<br>• Make a payment to us that is returned unpaid. | If any of these events occurs, we will apply a default APR on all balances. We may consider the following factors to determine your default rate: the length of time your account has been open; the existence, seriousness and timing of the defaults on your account; other indications of your account usage and performance; information about your other relationships with us or any of our related banks; and information we obtain from business credit bureaus and/or from consumer credit reports from a consumer credit reporting agency if you are individually liable on the account. The default rate will take effect as of the first day of the billing cycle in which the default occurs. If we apply a default APR, it may apply indefinitely to all balances. If we decide not to apply a default APR even though there is a default, we reserve our right to apply a default APR in the event of any future default. We may in our discretion determine to charge reduced default rates for all or selected balances on your account. |
| Collections | Do not default. | If you are in default, we may take the actions described above in the Default section under Important Definitions above. |

## "WHAT HAPPENS IF...?"

Review this section for common situations or questions that might require action from you or Chase.

| "WHAT HAPPENS IF...?" | ACTION | WHAT IT MEANS |
|---|---|---|
| ... I think I found a mistake on my statement? | **We will investigate** | Write to us within 60 days after the suspected error appears on your billing statement. We will investigate and contact you with our findings. |
| ... I'm dissatisfied with a credit card purchase? | **We will research the problem** | First, attempt to resolve the problem with the merchant. Then write to us about the purchase. We will research the problem and contact you with our findings. |
| ... my card is lost or stolen? | **Contact us immediately and stop using your account** | If your card is lost or stolen, or you think someone used your account without permission, tell us immediately by calling the Cardmember Services number on your card or billing statement. We need your help to find out what happened and correct the problem. |
| ... my account is closed or suspended? | **You remain responsible for your balance** | Even if your account is closed or suspended, you must still repay all amounts you owe under the account. |
| ...I want to transfer a balance or make a cash advance? | **Balance transfer or cash advance transaction fees apply** | You will incur a transaction fee for these transactions. See the Rates and Fees Table for the amount of this fee. |

## ABOUT OUR RELATIONSHIP

Maintaining a positive relationship with you is very important to us. Please review these terms to understand more about your account.

| IMPORTANT INFORMATION | WHAT IT MEANS |
|---|---|
| **Legal Responsibility** | The words "you", "your" and "yours" mean everyone responsible for this account, including the company acting through its authorizing officer, and the person who applied for the account and provided his/her social security number. You are legally obligated to pay for all purchases, cash advances, and all fees and charges incurred on the account, from the opening of the account. You are liable for all amounts incurred by any authorized user (whether billed or unbilled) prior to the time that (a) you have contacted us verbally (and confirm such verbal notification in writing within five (5) business days) advising us that such authorized user is no longer authorized to use the card or account, and (b) you obtain the card, if applicable, issued to such authorized user and return it to us. |
| **Security Agreement** | As collateral security for the payment of any and all of your obligations owed to us, by using your account you grant us a security interest in, lien upon and right of setoff against all monies, deposits, balances, securities or other property or interest therein of yours or of the company, now or at any time hereafter held or received by or for or left in our possession or control or that of any of our related banks, whether for deposit, safekeeping, custody, transmission, collection, pledge or for any other different purpose, without demand or notice except as otherwise prohibited by law. |
| **Communications** | We may send cards, statements and other communications to you at any mailing or email address in our records. If more than one person is responsible for this account, we can provide billing statements and communications to one of you. When you give us your mobile phone number, we have your permission to contact you at that number about all your Chase or J.P. Morgan accounts. Your consent allows us to use text messaging, artificial or prerecorded voice messages and automatic dialing technology for informational and account service calls, but not for telemarketing or sales calls. It may include contact from companies working on our behalf to service your accounts. Message and data rates may apply. You may contact us anytime to change these preferences. We may also send an email to any address where we reasonably believe we can contact you. Some of the legal purposes for calls and messages include: suspected fraud or identity theft; obtaining information; transactions on or servicing of your account; collecting on your account; and providing you information about products and services.<br>You agree to provide us with sixty (60) days prior written notice of your intent to: (a) transfer or sell any substantial part (10% or more) of your total stock, assets and/or liquidate; or (b) change the basic nature of your business. Notice shall be sent to Cardmember Service, Business Card Department, P.O. Box 15070, Wilmington, Delaware 19850-5070. Notify us immediately of any changes to your contact information. |
| **Telephone Monitoring** | We may listen to and record your telephone calls with us. |

| | |
|---|---|
| **Credit Information** | You agree to furnish us with annual financial statements and other information from time to time (a minimum of at least once a year) at our request. You are required to notify us in writing of any material change in your financial condition. Please send notices to Cardmember Service, Business Card Department, P.O. Box 15070, Wilmington, Delaware 19850-5070. You authorize us to furnish information concerning your performance under this agreement to third parties, including business bureaus, credit reporting agencies and our related banks.<br>We may obtain and review your credit history from credit reporting agencies and others. We may also provide information about you and your account to credit reporting agencies and others. If you think we provided incorrect information, write to us and we will investigate. |
| **Enforcement** | We may enforce the terms of this agreement at any time. We may delay enforcement without losing our right to enforce this agreement at a later time. If any terms of this agreement are found to be unenforceable, we may still enforce the other terms. |
| **Governing Law** | **This agreement and your account will be governed by federal law, as well as the law of Delaware, and will apply no matter where you live or use this account.** |
| **Assignment** | We may assign your account, balances you owe, or any of our rights and obligations under this agreement. The third party is then entitled to any of our rights that we assign to them. |
| **NJ Residents** | All provisions of this agreement are valid, enforceable and applicable in New Jersey. |



R0000011

## INTEREST CHARGES

**Daily Interest Rates and Annual Percentage Rates may be found on the Rates and Fees Table.**

**Periodic Interest Charge Calculation—Daily balance method (including new transactions):**

We calculate a daily balance for each type of transaction and use the daily balances to determine your interest charges.

We figure the "daily balance" for each transaction type as follows:

- We take the beginning balance for each day and add
  - any interest charge from the prior day (known as compounding of interest) and
  - any new transactions or other debits (including Annual Membership Fees, transaction fees, Penalty Fees, any other fees and unpaid interest charges).
- We subtract payments or credits, and treat any net credit balance as a zero balance.
- The result is the daily balance for each type of transaction.

We figure the interest charges on your account as follows:

- To get the daily interest rate for each type of transaction we divide the APR by 365. We may combine different transaction types that have the same daily interest rates.
- We multiply the daily interest rate by the daily balance for each transaction type for each day in the billing cycle.
- We add together the interest charges for each day in the billing cycle for each transaction type.
- If any interest charge is due, we will charge you at least the minimum interest charge shown on the Rates and Fees Table.

We add transactions and fees to your daily balance no earlier than:

- For new purchases, balance transfers or cash advances – the date of the transaction.
- For new cash advance checks or balance transfer checks – the date the payee deposits the check.
- Fees – either on the date of a related transaction, the date they are posted to your account, or the last day of the billing cycle, whichever we may choose.

The Balances Subject to Interest Rate for each type of transaction shown on your billing statement is the sum of the daily balances for that type of transaction divided by the number of days in the billing cycle. We may use mathematical formulas that produce equivalent results to calculate the Balance Subject to Interest Rate, interest charges and related amounts.

Copyright ©2016 JPMorgan Chase & Co. All rights reserved.

R0000013

# BLUEPRINT RULES

Chase credit cards may come with an optional set of features called Blueprint. Blueprint is offered at the sole discretion of Chase Bank USA, N.A., the issuer of your credit card, who may be referred to in these Rules as *we, us* and *our*. The following information is intended to help you understand how the program helps you manage your spending and borrowing and is a separate agreement that is not part of your cardmember agreement.

**IMPORTANT PAYMENT INFORMATION**

To keep your account current, you must always make your required minimum payment by the payment due date.

If you use Blueprint, your statement will show your minimum payment and Blueprint payment amounts. Paying your Blueprint payment by your payment due date satisfies your required minimum payment and ensures you make progress on your Blueprint plans.

If you do not pay your optional Blueprint payment, you must still pay at least your required minimum payment in order to avoid a late fee and/or penalty increases to your APRs. By making only the minimum payment you will not get the benefits of your Blueprint plans, such as paying off the amount as fast as planned or avoiding interest where applicable.

**FULL PAY**

Full Pay lets you select categories of purchases to be paid in full each month. When you pay off the selected category purchases in full each month, they will not be charged interest, even when you carry a balance. Any Full Pay balances that are not paid in full each month will be charged interest from the first day following the billing cycle in which they are put on your account. We will tell you about any limits when you sign up for Full Pay, including, but not limited to, individual purchase transaction amounts, maximum amounts that can be included in Full Pay for each billing cycle and categories available for selection.

**TRACK IT**

Track It allows you to view your credit card account spending history online with the option to create a budget for the categories you want to track more closely.

**CATEGORIES**

Both the Full Pay and Track It Blueprint features use purchase categories to group transactions together. The categories are based on codes assigned to merchants who accept Visa/MasterCard credit cards depending on the kinds of products and services they sell. We group similar merchant codes for purposes of creating categories you can select from. Every effort is made to include all relevant merchant codes in our categories. However, it is possible that even though a merchant or the items it sells may appear to fit within a particular category, the merchant may not have a code that falls within our category. In these

cases, purchases with that merchant will not be included in the category. The categories for both Full Pay and Track It are similar; however, the merchants within each of the Track It categories may not be aligned to the same categories offered in Full Pay.

**FINISH IT AND SPLIT**

Finish It and Split let you create plans to pay off certain amounts on your account. With Finish It, you can pick a portion of your account balance; Split lets you select a specific purchase to pay off.

For both Finish It and Split, you can then pick a monthly payment amount or a certain number of months to pay it off. The number of months you can take to pay off your Finish It or Split balances may be limited. We will tell you about any limits when you sign up.

**GENERAL PROGRAM INFORMATION**

You may receive promotional Blueprint offers from time to time, at which point any rules associated with these offers will be provided.

We may cancel, suspend or change these Rules and your use of Blueprint in whole or in part at any time and for any reason without prior notice including, but not limited to, when your credit card account is in default or if you do not make Blueprint payments.

"Blueprint," "Full Pay," "Split," "Track It," the associated icons and the U Logo are service marks of JPMorgan Chase & Co.

Copyright ©2016 JPMorgan Chase & Co. All rights reserved.

# EXHIBIT D

**ATTACHMENT B**

**Arbitration Clause**

12. Arbitration
You and we agree that upon the election of either of us, any dispute relating in any way to your account or transactions will be resolved by binding arbitration as discussed below, and not through litigation in any court (except for matters in small claims court).This arbitration agreement is entered into pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").

YOU HAVE A RIGHT TO OPT OUT OF THIS AGREEMENT TO ARBITRATE, AS DISCUSSED BELOW. UNLESS YOU OPT OUT OF ARBITRATION, YOU AND WE ARE WAIVING THE RIGHT TO HAVE OUR DISPUTE HEARD BEFORE A JUDGE OR JURY, OR OTHERWISE TO BE DECIDED BY A COURT OR GOVERNMENT TRIBUNAL. YOU AND WE ALSO WAIVE ANY ABILITY TO ASSERT OR PARTICIPATE IN A CLASS OR REPRESENTATIVE BASIS IN COURT OR IN ARBITRATION. ALL DISPUTES, EXCEPT AS STATED BELOW, MUST BE RESOLVED BY BINDING ARBITRATION WHEN EITHER YOU OR WE REQUEST IT.

What claims or disputes are subject to arbitration?
Claims or disputes between you and us about your deposit account, transactions involving your deposit account, safe deposit box, and any related service with us are subject to arbitration. Any claims or disputes arising from or relating to this agreement, any prior account agreement between us, or the advertising, the application for, or the approval or establishment of your account are also included. Claims are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist or may arise in the future. All such claims or disputes are referred to in this section as "Claims."The only exception to arbitration of Claims is that both you and we have the right to pursue a Claim in a small claims court instead of arbitration, if the Claim is in that court's jurisdiction and proceeds on an individual basis.

Can I (customer) cancel or opt out of this agreement to arbitrate?
You have the right to opt out of this agreement to arbitrate if you tell us within 60 days of opening your account. If you want to opt out, call us at 1-800-935-9935 or see a banker. Otherwise this agreement to arbitrate will apply without limitation, regardless of whether 1) your account is closed; 2) you pay us in full any outstanding debt you owe; or 3) you f ile for bankruptcy.

What about class actions or representative actions?
Claims in arbitration will proceed on an individual basis, on behalf of the named parties only. YOU AND WE AGREE NOT TO:
1.SEEK TO PROCEED ON ANY CLAIM IN ARBITRATION AS A CLASS CLAIM OR CLASS ACTION OR OTHER COMPARABLE REPRESENTATIVE PROCEEDING;
2.SEEK TO CONSOLIDATE IN ARBITRATION ANY CLAIMS INVOLVING SEPARATE CLAIMANTS (EXCEPT FOR CLAIMANTS WHO ARE ON THE SAME ACCOUNT), UNLESS ALL PARTIES AGREE;
3.BE PART OF, OR BE REPRESENTED IN, ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE; NOR
4.SEEK ANY AWARD OR REMEDY IN ARBITRATION AGAINST OR ON BEHALF OF ANYONE WHO IS NOT A NAMED PARTY TO THE ARBITRATION.

If these terms relating to class or representative procedures are legally unenforceable for any reason with respect to a Claim, then this agreement to arbitrate will be inapplicable to that Claim, and the Claim will instead be handled through litigation in court rather than by arbitration. No arbitrator shall have authority to entertain any Claim on behalf of a person who is not a named party, nor shall any arbitrator have authority to make any award for the benefit of, or against, any person who is not a named party.

Does arbitration apply to Claims involving third parties?
Arbitration applies whenever there is a Claim between you and us. If a third party is also involved in a Claim between you and us, then the Claim will be decided with respect to the third party in arbitration as well, and it must be named as a party in accordance with the rules of procedure governing the arbitration. No award or relief will be granted by the arbitrator except on behalf of, or against, a named party. For purposes of arbitration, "you" includes any person who is listed on your account, and "we" includes JPMorgan Chase Bank, N.A., all its affiliates, and all third parties who are regarded as agents or representatives of ours in connection with a Claim. (If we assign your account to an unaffiliated third party, then "we" includes that third party.) The arbitration may not be consolidated with any other arbitration proceeding.

How does arbitration work?
The party filing a Claim in arbitration must select either: JAMS or the American Arbitration Association ("A A A") as the arbitration administrator. That organization will apply its code of procedures in effect at the time the arbitration claim is filed. If there is a conflict between that code of procedures and this arbitration provision and/or this agreement, this arbitration provision and this agreement will control. In the event thatJAMS or the A A A is unable to handle the Claim for any reason, then the matter shall be arbitrated instead by a neutral arbitrator selected by agreement of the parties (or, if the parties cannot agree, selected by a court in accordance with the FAA), pursuant to the A A A rules of procedure.The arbitrator will decide the Claim in accordance with all applicable law, including recognized principles of equity and statutes of limitations, and will honor all claims of privilege recognized by law. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law. A single arbitrator will conduct the arbitration and will use applicable substantive law, including the Uniform Commercial Code, consistent with the FA A and the applicable statutes of limitations or conditions precedent to suit, and will honor claims of privilege recognized at law. The arbitrator can award damages or other relief provided for by law to you or us, but not to anyone else. The arbitrator's authority is limited to the Claims between you and us.

Is the arbitrator's decision final? Is there an appeal process?
The arbitrator's decision will be final and binding on the parties. A party can file a written appeal to the arbitration administrator within 30 days of award issuance. The appeal must request a new arbitration in front of three neutral arbitrators designated by the same arbitration administrators. The panel will reconsider all factual and legal issues, following the same rules of procedure, and will make decisions based on majority vote. Any final arbitration award will be binding on the named parties and enforceable by any court having jurisdiction.

Who will pay for costs?
We will pay any costs that are required to be paid by us under the arbitration administrator's rules of procedure. Even if not otherwise required, we will reimburse you up to $500 for any initial arbitration filing fees you have paid. We will also pay any fees of the arbitrator and arbitration administrator for the first two days of any hearing. If you win the arbitration, we will reimburse you for any fees you paid to the arbitration organization and/or arbitrator. All other fees will be allocated according to the arbitration administrator's rules and applicable law. If you consider that you are unable to afford any fees that would be yours to pay, you may request that we pay or reimburse them, and we will consider your request in good faith.How do I (customer) file an arbitration claim?Rules and forms may be obtained from, and Claims may be filed with, JAMS (1-800-352-5267 or www.jamsadr.com) or the A A A (1-800-778-7879 or

www.adr.org). Arbitration hearings will take place in the federal judicial district that includes your address at the time the Claim is filed, unless the parties agree to a different place.

# EXHIBIT E

**AMERICAN ARBITRATION ASSOCIATION**

In the Matter of the Arbitration between

Case Number: 01-20-0015-1734

Joshua Johnson (Claimant)
-vs-
JPMorgan Chase Bank N.A. (Respondent)

**AWARD OF ARBITRATOR**

I, Charles R. Holton, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the proofs and allegations of the Parties at evidentiary hearings held on June 8, July 15, September 17, and Sept. 29, 2021, and Claimant appearing as *pro se,* and Respondent being represented by counsel, do hereby, AWARD, as follows:

**Summary:**
**Upon payment by Claimant Johnson of $238.52 to Respondent Chase or its attorney, Respondent Chase is ordered to retract and cause to be removed any and all adverse credit references which it has caused to be made regarding Claimant Johnson arising out of the Ink business credit card account. No damages or sanctions are awarded, and each party shall bear his/its own costs as incurred.**

**Explanation:**

A. Johnson's original Claim in this arbitration, filed under the AAA Consumer Arbitration Rules, requested injunctive relief requiring Chase to correct his credit report, which he contended was incorrect. On April 2, 2021, with the permission of the Arbitrator, Johnson filed an Amended Claim reciting a failure on the part of Chase to furnish agreed upon statements of account, failure of Chase to provide reasonable technical support regarding electronic statement delivery, failure of Chase to properly settle and close-out his account, and incorrect reporting by Chase that the Johnson account in question was delinquent. Johnson sought Relief including a requirement that Chase cease reporting derogatory information regarding his account, that Chase be ordered not to discriminate in the future against Johnson for pursuing this claim, compensation for late fees charged by Chase, and compensation for Johnson's time and costs in pursuing this arbitration. Chase filed an Answer denying all pertinent allegations. In an email to the AAA and opposing counsel on April 2, 2021, Johnson stated that he was not pursuing a FairCredit Reporting Act (FCRA) claim in this arbitration.

B. The parties engaged in extensive document discovery, and there were several disputes which ultimately gave rise to a Motion for Sanctions brought by Johnson. Contrary to the original estimate of one hearing day, there were four days of evidentiary hearings, along with numerous conference calls to address motions, briefing, and evidentiary issues. The parties submitted literally volumes of evidence and briefs including five notebooks of documents and at least ten legal briefs.

C. During the course of this hotly contested case, Mr. Johnson has very ably represented himself, and Chase has been ably represented by counsel, Mr. Hickey. Two basic issues have emerged from the claims and evidence, and I will briefly discuss each issue and the reasons for my decision regarding each:

1. **First Issue**: On or around Feb. 17, 2017 when Johnson opened his Ink business account with Chase, was there an agreement made by the representative of Chase during a phone call with Johnson that Chase would link the new Ink account with a previously used personal account such that Johnson could receive and pay all statements at one online location, and, if so, did Chase breach this agreement by failing to link the accounts, failing to provide tech support when Johnson made inquiry, and ultimately cause Johnson to fail to fully pay off his Ink account when he canceled it, resulting in adverse credit reports by Chase?

   **Analysis**: As Claimant, Johnson carries the burden of proof on this issue. He has failed to carry this

burden. Understandably, Johnson has had great difficulty during the course of this arbitration in reconstructing many conversations which he had going back over 4 years concerning the opening of his Ink account. Also understandably, his renditions of what he thinks may have happened have changed, even during the course of this arbitration. Early in this arbitration, he acknowledged that he established a separate User ID[***jsjohns3***] for this new business account, different from the User ID [***forepus1***] for his pre-existing personal account. He admitted at the hearings on June 8 and July 15 that his difficulty in being unable to log-in to the Ink account and seeing his statements for that account may have been the result of his forgetting that he had created a separate User ID for that account and later not being aware that the separate account access existed.

Later in the arbitration, Johnson attempted to explain his failure to access his Ink account statements using the ***jsjohns3*** ID by saying that he thought an agreement had been made over the telephone with a Chase representative back around Feb. 17, 2021 to link the new account with the old one so that all statements could be seen at one website location. However, his testimony regarding this explanation was speculative at best. At the hearing on July 15, he said "I believe it's likely what happened" regarding the Feb. 17, 2021 phone call and later "And what I suspect happened is this …." Further, in a telephone conversation with a Chase representative Mr. Pressley in June, 2018 about the account opening, Johnson said "My best guess is I had a conversation with a rep….." Suspicions and best guesses about an unrecorded telephone conversation from 4 years ago are not sufficient evidence upon which to base a claim for breach of contract and related damages.

Johnson presented no evidence that his Ink account statements were not available from March, 2017 at least through Sept., 2017 on the separate account website access that he had set up and then apparently forgot. Chase presented evidence that such statements were available on the Ink account access website. So, there was no showing of failure on the part of Chase to provide access to statements and promised tech support.

2. **Second Issue:** When a Chase representative contacted Johnson by telephone call on Sept. 6, 2017, was there an agreement made that Johnson, in paying $111.49 to Chase, was paying off the entire balance of his account and then closing the account with a $0 balance, such that no adverse credit report should have been made?

**Analysis:** We have no recording of this call. Johnson has testified reasonably that he was intending to pay off and close out his account and that there would have been no good reason for him to make only a minimum payment when he could have paid off the entire balance for a few hundred dollars more – and that he had more than adequate funds with which to do so. Chase has put on evidence that their standard practice in such account collection calls would be to always communicate the entire account balance as well as the minimum payment needed – this is also reasonable. The full account balance as of Sept. 6, 2017 was $350.01, and the minimum payment was $111.49. Regardless, only the minimum payment $111.49 was ever made by Johnson. Chase closed the account with the agreement of Johnson, but continued to carry the unpaid balance and after several more months, wrote off the account and reported the alleged delinquency to credit bureaus.

My conclusion is that a separate contract transaction occurred between the parties in Sept, 2017 involving the closing of the Ink account and payment thereon. There was a mutual mistake of fact between the parties with Johnson understanding that he was paying the entire balance and Chase understanding that he was paying only the minimum payment. The equitable remedy which I hereby apply is to order that Chase retract and cause to be removed any and all adverse credit references regarding Johnson arising out of the Ink business credit card account within 30 days of payment by Johnson to Chase or its attorney of the $238.52 which Johnson acknowledges he owed as of Sept.6. 2017 and which remains unpaid. No damages or other remedies are awarded.

D. There is no basis for punitive or treble damages to be awarded in this case given my analyses above. With regard to Johnson's Motion for Sanctions, this Motion is denied on the basis that both parties appear to have participated in good faith in locating and producing extensive documents, albeit sometimes later than anticipated. Part of the difficulties in production were the result of the evolving claims made by Claimant as well as the understandable ambiguities in defining exactly what searches needed to be made.

The administrative fees of the American Arbitration Association (AAA) totaling $2,400.00 shall be borne as incurred, and the compensation of the arbitrator totaling $10,000.00 shall be borne as incurred.

This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

Date: March 3, 2022

***/s/ Charles R. Holton***
Charles R. Holton, Arbitrator

# EXHIBIT F

AMERICAN ARBITRATION ASSOCIATION®

# What Happens After the Arbitrator Issues an Award

**This guide is being provided for informational and educational purposes only, and is not intended to provide legal advice. You may wish to consult an attorney before using the information in this guide.**

As we discuss what happens after the arbitrator issues an award in your case, it is important to remember that the American Arbitration Association® and/or the arbitrator do not provide legal advice or assistance to the parties and cannot give advice about your case. While parties are not required to have an attorney to participate in arbitration, arbitration is a final, legally-binding process that may impact a party's rights. As such, parties may want to consider consulting an attorney at any time before, during, or after the arbitration.

## Award

The arbitrator's final decision on the case is called the "award." This is like a judge's or jury's decision in a court case. Once the arbitrator decides that all of the parties' evidence and arguments have been presented, the arbitrator will close the hearings. This means no more evidence or arguments will be allowed. The arbitrator will write the award and the AAA® will send that to the parties once it is ready. Depending on the rules and the parties' arbitration agreement, the date the award must be given to the parties may differ, but it is usually between 14 and 30 days from the close of hearings.

## How does a party make sure the other party follows the award?

Many parties will voluntarily follow the arbitrator's decision; however, the AAA and the arbitrator do not have the authority to actually make a party do what the award says. Instead, if a party wins in the arbitration and the other party does not do what the award says, the winning party may go to court to "confirm" the arbitration award.

Under AAA rules, parties to AAA cases agree that the arbitration award can be entered as a judgment in any federal or state court with jurisdiction. This means that the court can enforce it like it was any other court judgment. The AAA and the arbitrator are not involved in the case anymore after the final award is sent to the parties. Because of that, we cannot give advice to the parties about how to make sure the award is enforced. Each state sets its own rules and law for how to make a party do what they're supposed to do under the award.

## Modification of an Award by an Arbitrator

The AAA's Rules allow the arbitrator to change her or his final award, but only for very limited reasons and within a very short time frame. AAA Rules say that a party may ask the arbitrator to correct any clerical, typographical, or computational errors in a final award. The arbitrator is not allowed to reconsider the merits of any issues already decided by the arbitrator. A modification must be asked for within 20 days after the final award is sent to the parties. The other party will be given 10 days to respond to the request. The arbitrator will then rule on the request within 20 days.

American Arbitration Association®

## Appeal of an Arbitration Award with the AAA

The AAA can only handle an appeal of the arbitration award if the parties have agreed that an appeal is allowed. There is no right to appeal in arbitration like there is in court. If the parties agree to use the AAA to handle the appeal, the AAA will treat the appeal like a new case filing and more fees would have to be paid.

## Challenging an Arbitration Award in Court

Under federal and state laws, there are only a few ways to challenge an arbitrator's award. The Federal Arbitration Act ("FAA") and some state laws provide the reasons why an award can be vacated (thrown out), modified (changed), or corrected. Those reasons are very limited in general. Please review the FAA or the applicable state law to understand the standards for vacatur, modification, and correction.

## The AAA's Role in Post-Hearing Proceedings

Neither the AAA nor any arbitrator will be involved in any court cases to enforce or challenge an arbitration award. The AAA rules say that neither the AAA nor the arbitrator are proper parties to litigation involving an arbitration proceeding or award; additionally, parties to arbitration under AAA rules may not call the arbitrator, the AAA, or AAA employees as a witness in any litigation or any other proceeding relating to the arbitration. These concepts are supported by federal and state case law, as well as numerous state laws.

If you need help with any of the topics discussed here, you should consider getting legal advice from an attorney. If you need help finding an attorney, please feel free to visit www.adr.org/prose. There are a number of resources available on the site to assist you with finding a representative.

# EXHIBIT G

Gmail

Joshua Johnson <josh@jj88.org>

## Important information regarding changes to your Chase account

1 message

**Chase** <Chase@e.chase.com> Wed, Jun 5, 2019 at 10:18 AM
Reply-To: "Chase@e.chase.com" <Chase-HP2v40000016b28a5c42a9cbc84f4bbe5be50089@e.chase.com>
To: josh@jj88.org

Email Security Information:

**Email intended for: Joshua Johnson**

**Chase Freedom® credit card ending in 5301**

If you have concerns about the authenticity of this message, please visit chase.com/CustomerService for options on how to contact us.

### Important Changes to Your Account Terms

**Notice:** Your Cardmember Agreement and associated Rewards Program Agreement (if any) were assigned to JPMorgan Chase Bank, N.A., as successor by merger to Chase Bank USA, N.A., on **05/18/2019**. Furthermore, beginning **05/18/2019** all references to Chase Bank USA, N.A. in your Guide to Benefits and any additional account agreements and documents shall be read as JPMorgan Chase Bank, N.A.

**Summary of changes to your account terms effective 8/8/2019.**

- The description of the Minimum Payment calculation found under your Cardmember Agreement Rates and Fees Table is changing to **a minimum of $35** and to include unique payment obligations in connection with Flexible Financing Offers.
- We are introducing two new features, My Chase Loan[SM] and My Chase Plan[SM], under which Flexible Financing Offers may be available to you from time to time, subject to the new rates and fees and Cardmember Agreement terms described below.
- A binding arbitration provision is added and the Military Lending Act Notice is revised accordingly. **YOU CAN REJECT THE BINDING ARBITRATION AGREEMENT. YOU MUST MAIL YOUR REJECTION TO US BY 8/7/2019. PLEASE SEE THE END OF THIS NOTICE FOR INSTRUCTIONS**

**Details on the changes to your account, effective 8/8/2019.**

1. Your Cardmember Agreement Rates and Fees Table is amended as follows:

**Revised Terms as of 8/8/2019**

**INTEREST RATES AND INTEREST CHARGES**

| | |
|---|---|
| ***My Chase Loan* Annual Percentage Rate (APR)** | **17.24%.** This APR will vary with the market based on the Prime Rate.[a]<br><br>Promotional offers with fixed APRs and varying durations may be available from time to time on some accounts. |
| **Paying Interest** | Your due date will be a minimum of 21 days after the close of each billing cycle. We will not charge you interest on new purchases if you pay your entire balance or Interest Saving Balance by the due date |

| | |
|---|---|
| | each month. We will begin charging interest on balance transfers and cash advances on the transaction date. |

**FEES**

| | |
|---|---|
| ***My Chase Plan* Fee (fixed finance charge)** | **1.72%** of the amount of each purchase transaction selected to create a *My Chase Plan*. The *My Chase Plan* Fee will be determined at the time each *My Chase Plan* is created and will remain the same until the *My Chase Plan* balance is paid in full.[c] |

## ADDITIONAL INFORMATION ABOUT THESE CHANGES

[a] ***My Chase Loan* APR:** We add **11.74%** to the Prime Rate to determine the *My Chase Loan* APR. Variable APRs are based on the highest U.S. prime rate published in the Money Rates section of *The Wall Street Journal* two business days (not weekends or federal holidays) before your statement closing date. The U.S. prime rate is currently **5.50%** as of **5/8/2019**. The daily periodic rate is **0.04723%**.

[c] ***My Chase Plan Fee***. The *My Chase Plan* Fee is calculated at the time each plan is created and is based on the amount of each purchase transaction selected to create the plan, the number of billing periods you choose to pay the balance in full, and other factors. The monthly and aggregate dollar amount of your *My Chase Plan* Fee will be disclosed during the activation of each *My Chase Plan*.

**2.** The description of Minimum Payment found under your Cardmember Agreement Rates and Fees Table is changed to read as follows:

**Minimum Payment:** We will calculate the minimum payment as:

1) Any past-due amounts; **PLUS**
2) Any special payment obligations in connection with Flexible Financing Offers which require repayment of the balance over a pre-selected number of billing periods; **PLUS**
3) The larger of:
   a) $35 (or total amount you owe if less than $35); or
   b) The sum of:
      i. 1% of the new balance (excluding any Flexible Financing Offer balances which require special payment obligations to ensure repayment of the balance over a pre-selected number of billing periods), **PLUS**
      ii. any periodic interest charges and late fees we have billed you on the statement for which your minimum payment is calculated.

**3. IMPORTANT DEFINITIONS**

The *Important Definitions* section of your Cardmember Agreement is amended to include two new terms, *Interest Saving Balance* and *Flexible Financing Offers*, as follows:

| TERM | WHAT IT MEANS |
|---|---|
| **Interest Saving Balance** | When you take advantage of Flexible Financing Offers, we will not charge you interest on new purchases if you pay your entire Interest Saving Balance by the due date each month.<br><br>If your Interest Saving Balance for any billing cycle is less than your minimum payment due, your Interest Saving Balance amount will reflect your minimum payment due to avoid a late fee. |

| | |
|---|---|
| **Flexible Financing Offers** | When you take advantage of Flexible Financing Offers, like those available with *My Chase Loan* and *My Chase Plan*, you can pay those balances over time based on their offer terms and still avoid additional interest charges on new purchases. |

**4. USING YOUR CARD**

We are adding *My Chase Loan* and *My Chase Plan* to your account. These are two new features under which Flexible Financing Offers may be available to you from time to time. Therefore, the *Using Your Card* section of your Cardmember Agreement is amended to include two new transaction types, *My Chase Loan* and *My Chase Plan* as follows:

| TRANSACTIONS | WHAT IT MEANS TO YOU | OUR RESPONSIBILITY |
|---|---|---|
| **My Loan** | If eligible, you may use the *My Chase Loan* feature to obtain cash as an electronic deposit into an eligible bank account held by a financial institution located in the United States by accepting a *My Chase Loan* offer. Each offer will include a *My Chase Loan* APR and the number of billing periods it will take to pay the *My Chase Loan* balance in full by making regular payments each monthly billing period.<br><br>Your ability to create a *My Chase Loan* balance is based on a variety of factors, such as your creditworthiness, your credit limit, and your past account behavior. You will not be able to create a *My Chase Loan* balance if you enroll in a debt management program or if your account is closed or in default.<br><br>*My Chase Loan* transactions are not Cash Advances or Balance Transfers. *My Chase Loan* provides Flexible Financing Offers. Therefore, when you have a *My Chase Loan* balance on your account, we will not charge you interest on new purchases if you pay your entire Interest Saving Balance by the due date each month. | At our discretion, we may make *My Chase Loan* available to you; we may decline a *My Chase Loan* transaction for any reason. |
| **My Plan** | If eligible, you may use the *My Chase Plan* feature through Chase.com or the Chase Mobile App to create, from recent eligible purchase transactions, a *My Chase Plan* balance with set repayment terms, subject to the *My Chase Plan* Fee. From the available offers, you select how many billing periods it will take to pay the *My Chase Plan* balance in full by making regular payments each monthly billing period. For each billing period during which there is a balance in the *My Chase Plan*, you will be charged the *My Chase Plan* Fee, rather than interest under the Purchase APR.<br><br>An eligible purchase transaction for | At our discretion, we may make *My Chase Plan* available to you; we may decline a *My Chase Plan* transaction for any reason. |

*My Chase Plan* is a purchase of at least a specified dollar amount but may not include certain purchase transactions, such as cash-like transactions and any fee owed to us, including Annual Membership Fees. Cash advance, balance transfer and *My Chase Loan* transactions are not eligible for *My Chase Plan*.

Your ability to create a *My Chase Plan* balance is based on a variety of factors, such as your creditworthiness, your credit limit, and your account behavior. You will not be able to create a *My Chase Plan* balance if you enroll in a debt management program or if your account is closed or in default.

When you have a *My Chase Plan* balance on your account, we will not charge you interest on new purchases if you pay your entire Interest Saving Balance by the due date each month.

## 5. PAYING US BACK

- The second bullet under "What it Means to You" for the *Interest-Free Period on Purchases* within the *Paying Us Back* section of your Cardmember Agreement is amended to include a reference to Interest Saving Balance, as follows:
  - Your account is in an interest-free period when you pay your New Balance or Interest Saving Balance, as shown on your statement, every month by the due date and time. During this period, you will not pay interest on new purchases.
- The "What it Means to You" column for *Payment Allocation* under the *Paying Us Back* section of your Cardmember Agreement is amended in its entirety to read as follows:
  - When you make a payment, generally, we first apply your minimum payment to the monthly obligation for any Flexible Financing Offer balances with special payment obligations which require repayment of the balance over a pre-selected number of billing periods, and then to the balance on your monthly statement with the lowest APR.
  - Any payment above your minimum payment would generally then be applied to the balance on your monthly statement with the highest APR first.
  - If you do not pay your New Balance or Interest Saving Balance, as shown on your statement, in full each month, you may not be able to avoid interest charges on new purchases.

## 6. ABOUT OUR RELATIONSHIP

- The *About Our Relationship* section of your Cardmember Agreement is amended to include a new section titled Binding Arbitration as follows:

| IMPORTANT INFORMATION | WHAT IT MEANS |
|---|---|
| **Binding Arbitration** | Unless you timely reject the agreement to arbitrate, disputes with us may be resolved by binding arbitration. With arbitration, you cannot go to court, have a jury trial or initiate or participate in a class action for your dispute(s) with us. In arbitration, disputes are resolved by an arbitrator, not a judge or jury, and procedures are simpler and more limited |

than rules applicable in court.

Please see the *Arbitration Agreement* section for more details, including instructions for how to reject the agreement to arbitrate.

- The *Military Lending Act* Notice within the *About Our Relationship* section of your Cardmember Agreement is amended by replacing the second to last sentence with the following:

  If you are covered by the Military Lending Act, (i) then you are not bound by the Arbitration Agreement below, and (ii) notwithstanding anything to the contrary in this agreement, to the extent required by the Military Lending Act, nothing in this agreement will be deemed a waiver of the right to legal recourse under any otherwise applicable provision of state or federal law.

**7. INTEREST CHARGES**

With the introduction of *My Chase Loan*, the description of when we add transactions and fees to your daily balance within the *Interest Charges* section of your Cardmember Agreement is amended as follows:

"We add transactions and fees to your daily balance no earlier than:

- For new purchases, balance transfers, cash advances or *My Chase Loans* - the date of the transaction.
- For new cash advance checks or balance transfer checks - the date the payee deposits the check.
- Fees - either on the date of a related transaction, the date they are posted to your account, or the last day of the billing cycle, whichever we may choose."

**8. ARBITRATION AGREEMENT**

A new section titled *Arbitration Agreement* is hereby added to the end of the agreement as follows (following the section titled *Your Billing Rights*):

**ARBITRATION AGREEMENT**
**PLEASE REVIEW-IMPORTANT-AFFECTS YOUR LEGAL RIGHTS**

This arbitration agreement provides that all disputes between you and Chase must be resolved by BINDING ARBITRATION whenever you or we choose to submit or refer a dispute to arbitration. By accepting this arbitration agreement you GIVE UP YOUR RIGHT TO GO TO COURT (except for matters that may be taken to a small claims court). Arbitration will proceed on an INDIVIDUAL BASIS, so class actions and similar proceedings will NOT be available to you.

YOU HAVE THE RIGHT TO REJECT THIS AGREEMENT TO ARBITRATION, BUT IF YOU WISH TO REJECT IT, YOU MUST DO SO PROMPTLY. If you do not reject this agreement to arbitration by **8/7/2019** in the manner set forth below, then:

* In arbitration, your rights will be determined by a NEUTRAL ARBITRATOR and NOT A JUDGE OR JURY.

* The procedures in arbitration are simpler and more limited than rules applicable in court.

* Arbitrator decisions are subject to VERY LIMITED REVIEW BY A COURT.

If you do not reject this agreement by **8/7/2019**, you or we may elect to resolve any Claim by arbitration.

For purposes of this agreement to arbitrate, "you" includes any co-applicant or authorized user on your account, or anyone else connected with you or claiming through you; and "we" or "us" includes JPMorgan Chase Bank,

N.A. and Chase Bank USA, N.A., all of their parents, subsidiaries, affiliates, successors, predecessors, employees, and related persons or entities and all third parties who are regarded as agents or representatives of us in connection with the account, or the subject matter of the claim or dispute at issue.

All claims or disputes between you and us about or relating in any way to your account, any prior account, your cardmember agreement with us (including any future amendments), any prior cardmember agreement, or our relationship are referred to as "Claims" for purposes of this agreement to arbitrate. Claims include, for example, claims or disputes arising from or relating in any way to transactions involving your account; any interest, charges, or fees assessed on your account; any service(s) or programs related to your account; any communications related to your account; and any collection or credit reporting of your account. Claims also include claims or disputes arising from or relating in any way to advertising and solicitations, or the application for, approval, or establishment of your account. Claims are subject to arbitration regardless of whether they are based on contract, tort, statute, regulation, common law or equity, or whether they seek legal or equitable remedies. All Claims are subject to arbitration whether they arose in the past, may currently exist, or may arise in the future. Arbitration will apply even if your account is closed, sold, or assigned; you pay us in full any outstanding debt you owe; or you file for bankruptcy. In the event that your account is sold and/or assigned, we retain our right to elect arbitration of Claims by you and you retain your right to elect arbitration of Claims by us.

* If you are covered by the Military Lending Act, then you are not bound by this arbitration agreement, and to the extent required by the Military Lending Act, nothing in this agreement will be deemed a waiver of the right to legal recourse under any otherwise applicable provision of state or federal law.

The only other exception to the arbitration requirement is that you have the right to file and pursue a Claim in a small claims court instead of arbitration if the Claim is in that court's jurisdiction and proceeds on an individual basis.

If you initiate a Claim in arbitration, no changes to the terms of this agreement to arbitrate that are made after we receive your Claim will apply to that Claim.

This agreement to arbitrate is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*

***Can I (the customer) reject this agreement to arbitrate?***

Yes. You have the right to reject this agreement to arbitrate if you notify us no later than **8/7/2019**. You must do so in writing by stating that you reject this agreement to arbitrate and include your name, account number, address and personal signature. Your notice must be mailed to us at P.O. Box 15298, Wilmington, DE 19850-5298. Rejection notices sent to any other address, or sent by electronic mail or communicated orally, will not be accepted or effective.

***What about class actions or representative actions?***

Individuals sometimes seek to bring lawsuits on behalf of other, similarly situated individuals. This is often called a class action. Class actions, other similar representative procedures, and consolidation of Claims (except for claimants on the same account) are *not* available under this agreement to arbitrate. Claims in arbitration will proceed only on an individual basis. Additionally, you may not join your claims with other persons on other accounts in the arbitration; each person must arbitrate his or her own claims separately.

UNLESS YOU REJECT THIS AGREEMENT TO ARBITRATE, YOU AND WE ARE WAIVING THE RIGHT TO ASSERT OR PARTICIPATE IN A CLASS ACTION, OR ANY REPRESENTATIVE OR CONSOLIDATED PROCEEDING IN COURT OR IN ARBITRATION.

The arbitrator shall have no authority to entertain any Claim as a class action or on any other similar representative basis, nor shall the arbitrator have any authority to consolidate Claims brought by separate claimants (except for claimants on the same account). To be clear, this means that the arbitrator also shall have no authority to make any award for the benefit of, or against, any person other than the individual who is the named party. If these terms prohibiting class, representative, or consolidation procedures are held to be legally unenforceable for any reason with respect to a Claim, then the Claim must be handled through litigation in court instead of by arbitration.

***How does arbitration work?***

Arbitration is different from a lawsuit in state or federal court. Arbitration is conducted by private organizations that specialize in alternative dispute resolution, and is conducted before a neutral arbitrator instead of a judge or jury. Arbitration procedures are generally simpler and more informal than court procedures. For example, discovery is more limited in arbitration than in court. Also, arbitrator decisions are subject to only limited review by courts. As discussed above, certain rights that you may have in court are not available in arbitration. At the same time, in arbitration you are entitled to recover attorneys' fees from us to the same extent as you would be in court.

Under this agreement to arbitrate, the party filing a Claim must select either Judicial Arbitration and Mediation Services ("JAMS") or the American Arbitration Association ("AAA") as the arbitration administrator. You can learn more about these organizations online, at the addresses provided below. Each of these organizations will apply its code of procedures in effect at the time the arbitration claim is filed. If there is a conflict between that code of procedures and this arbitration provision and/or any sections of this agreement, this arbitration provision and/or this agreement will control. In the event that JAMS or the AAA is unable or unwilling to handle the Claim for any reason, then the matter shall be arbitrated instead by a neutral arbitrator selected by agreement of the parties (or, if the parties cannot agree, selected by a court in accordance with the Federal Arbitration Act).

A single arbitrator designated by the arbitration administrator will decide the Claim under applicable law. The arbitrator is bound by the terms of this agreement to arbitrate. All issues are for the arbitrator to decide, except that issues relating to the scope, enforceability, interpretation, formation, and validity of this arbitration agreement are for a court to decide. The arbitrator will honor all claims of privilege recognized by law. Subject to the prohibition on class, representative, and consolidation procedures set forth above, the arbitrator will have the power to award to a party any damages or other relief provided for under applicable law. That is, a party will be entitled to recover in arbitration any damages or other relief that it could recover if it prevailed in a court proceeding as an individual. No arbitration award or decision will have any preclusive effect on issues or claims in any subsequent proceedings beyond the Claims at issue. The arbitrator's authority is limited to claims between you and us, and the arbitrator can award damages or relief only to you, but not to or on behalf of anyone else.

Although under some laws we may have a right to an award of attorneys' fees and expenses if we prevail, we agree that we will not seek such an award.

If your Claim is for $10,000 or less, you may choose whether the arbitration will be conducted solely on the basis of documents, through a telephonic hearing, or in an in-person hearing. Any in-person hearing will take place in

the federal judicial district that includes your address at the time the Claim is filed, unless the parties agree to a different place.

***Is the arbitrator's decision final? Is there an appeal process?***

The arbitrator's decision will be final and binding on the parties. An arbitrator's award shall consist of a written statement setting forth the disposition of each Claim. At the request of any party, the arbitrator shall also set forth a written explanation of the essential findings and conclusions on which the award is based.

A party can file a written appeal to the arbitration administrator within 30 days after an award is issued. The appeal will proceed before a panel of three neutral arbitrators designated by the same arbitration administrator. That panel will consider all legal and factual issues anew, and make all decisions and awards by majority vote based on the documents and arbitration record without a hearing. Any review by a court shall be governed by the Federal Arbitration Act. Any final arbitration award will be binding on the named parties and enforceable by any court having jurisdiction.

***Who will pay for costs?***

We will pay any costs that are required to be paid by us under the arbitration administrator's rules of procedure. Even if not otherwise required, we will reimburse you up to $500 for any initial arbitration filing fees you have paid. We will also pay any fees of the arbitrator and arbitration administrator for the first two days of any hearing. If you win the arbitration, we will reimburse you for any fees you paid to the arbitration organization and/or arbitrator. All other fees will be allocated according to the arbitration administrator's rules and applicable law. If you consider that you are unable to afford any fees that would be yours to pay to the arbitration administrator, you may request that we pay or reimburse them, and we will consider your request in good faith.

You may represent yourself in arbitration, or you may be represented by a lawyer. Except as described above, you will be responsible for your own attorneys' fees and costs.

***How do I (the customer) file an arbitration claim?***

Rules and forms may be obtained from, and Claims may be filed with, JAMS at (800) 352-5267 or jamsadr.com; or the AAA at (877) 495-4185 or www.adr.org. Both of these administrators have particular rules for arbitrations initiated by a consumer.

**ABOUT THIS MESSAGE:**
This service message gives you updates and information about your Chase relationship.

This email was sent from an unmonitored mailbox. Go to chase.com/CustomerService for options on how to contact us.

Your privacy is important to us. See our online Security Center to learn how to protect your information.

Chase Privacy Operations P.O. Box 659752, San Antonio, TX 78265-9752.

©2019 JPMorgan Chase & Co.

EM10496

# EXHIBIT H

## Hickey, Joseph

| | |
|---|---|
| **From:** | ProSeManager8@adr.org |
| **Sent:** | Wednesday, April 6, 2022 3:15 PM |
| **To:** | Hickey, Joseph; josh@jj88.org |
| **Cc:** | legal.papers.served@jpmchase.com |
| **Subject:** | Joshua Johnson v. JPMorgan Chase Bank N.A. - Case 02-20-0015-1734 |
| **Attachments:** | 2022-04-06 AAA Cybersecurity Best Practices.pdf; 2022-04-06 AAA Cybersecurity Checklist.pdf; 2022-04-06 AAA Consumer Arbitration Reference Sheet.pdf; 2022-04-06 Pro Se - Standards of Conduct.pdf; 2022-04-06 Pro Se Information Sheet.pdf; 2022-04-06 cs Initiation.pdf; 2022-04-06 cs Initial List of People.rtf |

*** EXTERNAL***

Hello,

Please review the attached correspondence regarding the above-referenced case.

Feel free to contact me with any questions, comments or concerns you have related to this matter.

Thank you.

**Pro Se Manager 8**

F: 866 644 0234 E: ProSeManager8@adr.org
PO Box 19609, Johnston, RI 02919
www.adr.org/prose

NPT's BEST NONPROFITS TO WORK FOR ★2022★

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

P.O. Box 19609
Johnston, RI 02919

April 6, 2022

Joshua Johnson
907A Saint Marys Street
Raleigh, NC 27605
**Via Email to: josh@jj88.org**

Joseph Hickey, Esq.
Dykema Gossett, PLLC
39577 Woodward Avenue
Suite 300
Bloomfield Hills, MI 48304
**Via Email to: jhickey@dykema.com**

Case Number: **02-20-0015-1734 (APPEAL)**
Joshua Johnson
-vs-
JPMorgan Chase Bank N.A.

Dear Parties:

This will acknowledge that the filing requirements have been met. Your case is now assigned to me for administration. This case is filed as an appeal to the award of case 01-20-0015-1734.

I am a member of the Pro Se Arbitration Administration Team. Please review the enclosed Standards of Conduct and Pro Se Arbitration Information Sheet, which will provide you with some basic information about the AAA's arbitration process. You may also view our website at www.adr.org/pro-se for additional information and resources.

Joshua Johnson, please let us know if you intend to get an attorney or continue representing yourself in this case. If you need help finding an attorney, please reference the "Find an Attorney or Other Legal Representation" document from our Pro Se website.

The **Consumer Arbitration Rules** have been applied to this matter.

**Answer**

- The Respondent has until **April 20, 2022** to file an answer to the claim.
- Answers received after the due date will still be provided to the arbitrator.
- Please reference the Rules if filing a counterclaim.
- Per Consumer Rule R-2(e) "If no answer is filed within 14 calendar days, the AAA will assume that the respondent does not agree with the claim filed by the claimant."

**Initial List of People Form**

- Please complete and return the enclosed Initial List of People Form by **April 20, 2022**. Further instructions are provided on the enclosed reference sheet as well as on the Initial List form.

**Hearing Type and Locale of In-Person Hearing**

- If an in-person hearing is to be held, the requested hearing locale is Raleigh, NC. Please refer to the Consumer Arbitration Rules for information regarding the Fixing of Locale (the city, county, state, territory and/or country where the arbitration will take place).
- If no disclosed claim or counterclaim exceeds $25,000, this matter shall be resolved by the Procedures for the Resolution of Disputes through Document Submission contained in the Consumer Arbitration Rules, unless a party asks for a hearing or the arbitrator decides that a hearing is necessary.

**The Costs of Arbitration effective November 1, 2020**

- The costs for this case are detailed in the Consumer Rules Costs of Arbitration effective November 1, 2020, available on our website at www.adr.org.

**Amounts Paid or Due**

- The Consumer has met the filing requirements regarding their filing fee.
- The Business has paid $0.00.
- $425.00 is now due from the Business and an invoice will separately follow. Please reference the invoice for payment options.
- **Payment is due thirty days from the date of this letter, on or before May 6, 2022.**

**Cybersecurity and Privacy**

- Please review the enclosed *AAA-ICDR® Best Practices Guide for Maintaining Cybersecurity and Privacy,* and *AAA-ICDR® Cybersecurity Checklist.*

**AAA WebFile®**

- If you have a WebFile account, you should see this case listed when you log in. If you do not see the case number when you login, please contact the undersigned.
- If you do not have a WebFile account, please email a request for a registration code to: customerservice@adr.org. AAA Customer Service will send you an email with the code and instructions for registering for immediate case access.
- WebFile can be accessed via our mobile app, where you can see your case at a glance.

**Small Claims Court Option**

- We draw your attention to R-9 of the Consumer Arbitration Rules. If a party's claim is within the jurisdiction of a small claims court, either party may choose to exercise the small claims option. If either party would like this matter decided by a small claims court, please send your written request to me with a copy all other parties. If the parties disagree over whether the claim is within the jurisdiction of a small claims court, the case will proceed in arbitration and the arbitrator may make a final determination on whether the claim may proceed to small claims court.

**Next Administrative Step after Answer Due Date has Passed**

- We now encourage you to attempt settlement. However, if any party requests that this case proceed, we will appoint an arbitrator as the next administrative step.

Please review the enclosed Consumer Arbitration Reference Sheet for more information or view our website at www.adr.org/consumer.

The AAA appreciates the opportunity to assist you with your dispute resolution needs.

Sincerely,
/s/
Pro Se Manager 8
Manager of ADR Services
Email: ProSeManager8@adr.org

Supervisor Information: Pro Se Director, prosedirector@adr.org

Enclosures

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

# AAA-ICDR® Best Practices Guide
## for Maintaining Cybersecurity and Privacy

The AAA-ICDR is committed to the security and privacy of customer and case information. To effectuate that goal AAA-ICDR has implemented best practice policies, procedures and technologies internally to help protect its data and information systems. The protections that have been implemented apply to all case data and equipment stored and managed on the AAA-ICDR technology infrastructure. AAA® employees routinely participate in online training programs designed to heighten their knowledge of security policies and procedures. The AAA has also prepared a *AAA-ICDR Cybersecurity Checklist* which parties and/or their representatives as well as arbitrators may use as a resource.

Recognizing that cybersecurity is a shared responsibility, AAA-ICDR is requiring all arbitrators on its panels to complete a training course by year-end 2020. The program is designed to educate the arbitrators as to the cybersecurity basics so they can preserve and protect the integrity and legitimacy of the arbitral process in cases in which they are serving.

The level of cybersecurity that should be implemented during arbitration ultimately rests with the parties and their legal advisors. The American Bar Association has issued two opinions regarding a lawyer's obligations either after an electronic data breach or cyberattack (Formal Opinion 483) or when securing email communication of protected client information (Formal Opinion 477).

In accordance with the ABA guidance, legal counsel in consultation with their clients should assess the nature of the information to be shared during arbitration and the impact of a cybersecurity breach on their client's business. A risk assessment should be undertaken in which counsel and the client identify whether highly sensitive data, such as personal, classified, financial, commercial or confidential information, is pertinent to the dispute and whether a particular approach must be taken during the collection, storage and transmission of such data to opposing counsel, arbitral institutions and arbitrators. In a case with a heightened need for cybersecurity, parties may elect to screen prospective arbitrators by means of a cybersecurity checklist designed to identify potential security concerns.

The following best practices are designed to provide guidance to parties, their representatives, and arbitrators regarding cybersecurity measures they should consider adopting. It does not impose hard or fast rules, but rather encourages an in depth discussion of the potential risks and reasonable and proportionate protective measures that might be taken to better secure sensitive information. These best practices are not intended to ensure compliance with any applicable laws, regulations, professional or ethical obligations.

1. During the preliminary hearing, the parties and/or their representatives and arbitrator should discuss reasonable precautions to be taken with regard to cybersecurity, privacy, and data protection to ensure an appropriate level of security for the case.
2. Early in the proceeding, and no later than the preliminary hearing, the parties' representatives should also discuss whether they plan to exchange information that presents a heightened need for cybersecurity, such as confidential information or personal data.

3. In connection with the above, arbitrator(s) and parties' representatives should discuss the following:
   a. Does this case require an enhanced level of cybersecurity, privacy or data protection? If yes, why?
   b. Is there confidential information that will require specific security practices and measures? If yes, how should these specific practices and measures be incorporated in this proceeding?
   c. How do participants plan to ensure that all case related email communications are secure? Are there any concerns with the security level of the email accounts or service providers being utilized by all participants?
   d. What electronic and/or hardcopies of hearing briefs or other related documents will be submitted in this proceeding? Who needs electronic versions? Who needs a flash drive? Must flash drives be encrypted with a password? Who needs hardcopies? What are the conditions under which an authorized recipient can further share a document?
   e. How do participants plan to ensure secure exchange and storage of electronic versions of case related documents and files?
      a. If the participants wish to use email, are they willing to use Citrix ShareFile for encrypted email transmission of case related documents? If yes, do you want AAA to provide instructions for use of Citrix ShareFile?
      b. Are all the participants willing to use AAA WebFile® and Panelist eCenter® in-lieu of email for all case related documents and/or storage? If yes, do you want AAA to provide instructions for use of AAA-ICDR WebFile? If no, do the parties require a different common secure cloud service for document exchange and storage?
   f. How do participants plan to ensure secure storage of all case related documents and files once exchanged? Is everyone satisfied with the secure storage measures currently being utilized by all participants?
   g. Do the parties plan to submit sensitive personal identifiers, including national identification numbers, dates of birth, medical health information, intellectual property, privileged information, credit card or financial account numbers, or other similar personal information? If yes, is it essential that this information be submitted? If it is essential, can the data be redacted?
   h. Will any third parties (companies or individuals) need access to any case related documents? If yes, who, why, what and how? Will additional security measures be necessary when submitting documents to third parties?
   i. When and how should case related documents be destroyed by the participants? Should there be written confirmation of document destruction by all participants and third parties?
   j. Will all participants and third parties agree to notify all participants of any security concerns, incidents, or breaches within 24 hours?
   k. Are there any other issues that need to be discussed relating to cybersecurity, privacy or data protection?

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

# AAA-ICDR® Best Practices Guide
## for Maintaining Cybersecurity and Privacy



4. Parties should identify any contractual obligations, such as confidentiality agreements, applicable laws or regulations governing information security.
5. A deadline should be set by the arbitrator for the parties to meet and agree upon procedures to govern the handling of sensitive information:
    a. Transmission of any and all sensitive communications by the parties, among arbitrators, between arbitrators and with any administering organization;
    b. Storage of arbitration-related sensitive information;
    c. Sharing of arbitration-related sensitive information with authorized third parties, such as arbitral participants, fact witnesses, experts or vendors, such as a stenographer.
    d. Breach detection and notification to all parties, the arbitrators, participants and, if applicable, government regulators.
    e. Retention and destruction of sensitive case documents.
6. The parties' agreement on the cybersecurity measures to be employed should be adopted by the arbitrator(s) unless the arbitrator(s) determine that applicable law requires additional security measures.
7. If the parties disagree as to the cybersecurity procedures that must be implemented, the arbitrators should provide the parties with an opportunity to address whether the measures are reasonable and proportionate prior to adjudication by the arbitrator and issuance of an order.
8. If a party objects to the continued service of an arbitrator due to an alleged inability to comply with the required cybersecurity measures either agreed to by the parties or ordered by the arbitrator(s), the issue may be submitted to AAA's Administrative Review Council.
9. A copy of the mandatory cybersecurity measures either agreed to by the parties or ordered by the arbitrator(s) should be provided to all participants and authorized third parties who will be required to confirm in writing that they are in compliance.
10. The arbitrator following discussions with the parties should determine what action should be taken if a participant is unable to comply with the cybersecurity requirements.

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

# Consumer Arbitration Reference Sheet

## Application of Consumer Rules

The AAA® applies the *Consumer Arbitration Rules* to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. Please reference the Consumer Rules and the Consumer Due Process Protocol.

In order to determine if the arbitration agreement substantially and materially complies with the due process standards of the *Consumer Due Process Protocol*, **the AAA reviews the parties' arbitration clause only,** and not the entire contract. The AAA's review of the arbitration clause is only an administrative review to determine whether the clause complies with the AAA's minimum due process standards in consumer arbitrations. However, the AAA's review is not an opinion on whether the arbitration agreement, the contract, or any part of the contract is legally enforceable.

## Cybersecurity and Privacy

Please review the *AAA-ICDR® Best Practices Guide for Maintaining Cybersecurity and Privacy.*

## Communication

The AAA will use electronic mail when communicating in writing, and requests that the parties do the same. If you have not provided us with your email address, we ask that you do so at this time. If a party does not provide us with their email address, then that party will have to rely on receiving correspondence via regular mail or facsimile.

Your case administrator will help ensure the appropriate exchange of written correspondence. The arbitrator will direct you to submit correspondence either through the AAA or directly to the arbitrator with a copy to all parties and the AAA. To ensure the proper handling of case-related documents, the parties should always copy the AAA and all other case participants. The AAA will determine if written communication was properly served to all participants and will provide that correspondence to parties or the arbitrator as needed.

## Extension Requests

The AAA has a strict policy regarding requests for extensions. If you need to extend any deadline during the course of the administrative process, please try to obtain the other party's agreement prior to contacting the AAA. The AAA or the arbitrator may extend any period for good cause in these Rules, except as set forth in R-42. The AAA will notify the parties of any extension.

© 2022 American Arbitration Association, Inc.

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

## AAA WebFile®

We invite you to visit our website to learn more about managing your case online. As part of our administrative service, AAA's WebFile allows you to perform a variety of case related activities, including:

- File additional claims;
- Complete the Initial List of People form;
- View invoices and submit payment;
- Merge forms that auto-populate with case and party information;
- Share and manage documents;
- Review case status or hearing dates and times; and,
- Upload hearing exhibits in a dedicated space activated by the arbitrator.

## Mediation

The AAA provides mediation services for all cases. Mediation is a private, non-binding process under which the parties submit their dispute to a third-party mediator. If you would like more information about the AAA's mediation services including our *Fixed Rate Mediation Program* for cases involving only two parties with claims under $75,000 for the flat rate of $850, please contact your case administrator.

## Requirement Per California Statute

Pursuant to the California Code of Civil Procedure section 1281.96, the AAA must collect and make available to the public information regarding our involvement in, and outcome of, all of our consumer arbitrations. The AAA's *Consumer Arbitration Statistics* are available on the consumer page of the AAA's website.

To fulfill our obligations under California law the AAA relies on the information provided by the parties. Therefore, we ask that you review the party names in the case caption and immediately advise your case administrator of any needed changes.



© 2022 American Arbitration Association, Inc.

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

# AAA-ICDR® Cybersecurity Checklist



## General Best Practice

- ☐ Limit requests for and acceptance of sensitive information
- ☐ Avoid using free WiFi; use a personal hotspot instead
- ☐ Use a Virtual Private Network (VPN) service if using free WiFi cannot be avoided
- ☐ Report security incidents
- ☐ Take regular security awareness training
- ☐ Implement a document retention and destruction policy
- ☐ Back-up your critical data
- ☐ Buy cybersecurity insurance

## PC/Laptop/Mobile Devices

- ☐ Lock PC, laptop and mobile devices with a password or pin
- ☐ Turn on full disc encryption on all devices
- ☐ Encrypt thumb drives *(password required)* and any other removable drives
- ☐ Use anti-virus software; update regularly
- ☐ Set-up and consistently accept automatic updates for PC, laptop and mobile devices
- ☐ Do not use PC/laptop administrative logon account for daily work; create a separate, limited-privilege account instead
- ☐ Turn on mobile device Wi-Fi only when needed
- ☐ Turn off Bluetooth when not in use
- ☐ Use a privacy screen

## Email

- ☐ Avoid using free/personal email for case communications
- ☐ Don't email sensitive documents; use cloud storage or secure file transfer services instead
- ☐ Confirm sender before opening attachments or clicking on links

## Password Hygiene

- ☐ Use complex passwords or pass phrases
- ☐ Keep passwords private *(do not write down or share)*
- ☐ Use different passwords for different accounts; consider using a password manager
- ☐ Opt NOT to have your browser save passwords
- ☐ Use multi-factor authentication whenever offered for all your accounts

© 2020 American Arbitration Association, Inc.

AMERICAN ARBITRATION ASSOCIATION®

# Pro Se Arbitration Administration Information Sheet

Thank you for filing a case with the American Arbitration Association® ("AAA®").

We would like to introduce you to the AAA and the Pro Se Arbitration Administration Team. This information is being provided in order to educate parties on the role of the AAA in administering the case that has been filed. Because you are proceeding with your arbitration without representation, which the AAA refers to as a Pro se party, the AAA has assigned the administration of your case to its Pro Se Arbitration Administration Team. Below is some basic information about the arbitration process you need to be aware of:

- The AAA is an independent organization that is not affiliated with the individuals, companies or law firms involved with this dispute. The arbitrator is not an employee of the AAA, but rather the AAA maintains rosters of individuals with expertise, qualifications and knowledge in a variety of subject matters and fields.
- The AAA manages only the administrative aspects of the arbitration, such as the appointment of the arbitrator and handling the fees associated with the arbitration. **The AAA and/or the arbitrator do not assist the parties in presenting their case.**
- **The AAA and/or the arbitrator do not provide legal advice or assistance to the parties and cannot give advice about your case or what documents you should use as evidence.** If you need legal advice, you should consider consulting with an attorney.
- **The AAA does not decide the outcome of a case or make any rulings on issues such as what documents must be shared with each side.** The arbitrator makes such decisions or rulings and the AAA cannot overrule or change an arbitrator's decisions or rulings.
- **Unless directed otherwise, communications with the AAA for cases administered by the AAA's Pro Se Arbitration Administration Team should be sent in writing.** The AAA's Pro Se Team also has a customer service phone line should you have general questions about the arbitration process. You can reach the Pro Se customer service team at 844-241-1773. If you are unable to reach a representative, please leave a voice message clearly stating your name, phone number, and case number and we will respond to you as soon as possible.
    - **Unless the AAA directs the parties differently, all written communications should be shared with the other parties involved in the arbitration.** If you fail to share communications with the other party, the AAA or the arbitrator might not act on any requests or objections contained within those communications.
- **It is very important that the parties follow the deadlines set in the Rules and by the AAA.** When a deadline is set for a party to take an action, that action must be taken by that time. If a party is unable to meet a deadline, they should send a written communication to the case administrator immediately.

**Finally, a variety of resources for pro se arbitration parties is provided by the AAA on our website,** www.adr.org/pro-se. These include a document entitled "Find an Attorney or Other Legal Representation," should you have an interest in finding representation in this arbitration.



© 2021 American Arbitration Association, Inc.

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

# American Arbitration Association/ International Centre for Dispute Resolution Standards of Conduct for Parties and Representatives

The American Arbitration Association (AAA®) and its international division, the International Centre for Dispute Resolution (ICDR®) strive at all times to provide dispute resolution services in accordance with our Shared Mission, Vision and Values. AAA and ICDR employees' conduct is governed by *Standards of Ethics and Business Conduct*, and the conduct of our arbitrators and mediators is governed by separate codes of ethics as well.[1]

The AAA also requires that parties and their representatives ("Participants") conduct themselves in an appropriate manner when utilizing the AAA's services. Participants in AAA cases are required to abide by the following standards of conduct, and failure to do so may result in the AAA declining to further administer a particular case or caseload.

- Participants in AAA-administered cases shall treat all employees and others involved in the proceedings in a courteous, respectful and civil manner.
- Participants must respect the AAA's policy against any form of unlawful discrimination based on an individual's gender, race, ethnicity, age, religion, national origin, or any other legally-protected characteristic.
- Participants shall not engage in harassing, threatening, or intimidating conduct toward AAA employees or arbitrators/mediators.
- Party representatives shall advise their clients and witnesses of the appropriate conduct that is expected of them during the proceedings.
- Participants shall refrain from using vulgar, profane, or otherwise inappropriate language.
- Participants shall direct case-related communications only to their assigned case management staff at the phone, email, or address provided by AAA staff, and shall copy the other parties on such communications as required by the rules governing the case, or as directed by the AAA. Those assigned case-management staff will raise matters with other AAA executives directly and as necessary.
- Participants shall not contact members of the AAA's Board of Directors on case-related matters. The AAA's Board has no involvement in the day-to-day management of the AAA, and AAA Directors do not have any authority or input regarding the administration or outcome of a particular matter.
- Threats of violence or other unlawful conduct will not be tolerated and will be forwarded to law enforcement authorities.
- Participants shall not repeatedly file unmeritorious demands for arbitration, pleadings, or other papers, or engage in other tactics that the AAA or an arbitrator determines are frivolous, filed for the purpose of harassment, or primarily intended to cause unnecessary delay or increased costs.

[1] These codes include the *Code of Ethics for Arbitrators in Commercial Disputes*, the *Code of Professional Responsibility for Arbitrators of Labor-Management Disputes*, and the *Model Standards of Conduct for Mediators*.

- Participants shall not withdraw a previously filed matter for the purpose of refiling the same or similar matter due to their discontent with the actions or decisions of the AAA, its case administrator, or the arbitrator/mediator.
- Participants shall not have previously been declared to be a vexatious litigant or similar equivalent in any state or federal court or by an arbitrator in a prior arbitration.

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

P.O. Box 19609
Johnston, RI 02919

**AMERICAN ARBITRATION ASSOCIATION**
**Initial List of People, Firms, Companies, and/or Groups Involved in the Arbitration**

---

In the Matter of the Arbitration between:

Case Number: 02-20-0015-1734

Joshua Johnson
-vs-
JPMorgan Chase Bank N.A.

Pro Se Manager 8, Manager of ADR Services
DATE: April 6, 2022

---

An Arbitrator serving on this case must know the names of all persons, firms, companies or other groups involved in this arbitration in order to make proper disclosures of any interests or relationships. The arbitrator uses the information you provide below to check his or her records for any interests or relationships. Providing complete information on this document is also important because it lowers to possibility of having to remove the arbitrator because of an interest or relationship after he or she begins serving on the case.

The AAA does not give this list to the opposing party and the parties are not required to share this list with each other, although the parties may do so voluntarily. We provide this list to the arbitrator, together with the filing documents. The arbitrator will need to divulge any relevant information when making appropriate and necessary disclosures in accordance with the applicable arbitration rules.

The arbitrator uses this form to check for conflicts; it is not a preliminary or final witness list.

**Please list all people, firms, companies, and/or groups involved in the arbitration, including, but not limited to, witnesses, consultants, attorneys, and all other interested parties. Subsidiary and other related entities of any person, firm, company or other group should also be included on this list.**

PLEASE CIRCLE ONE: CONSUMER / BUSINESS

| NAME | AFFILIATION | ADDRESS |
| --- | --- | --- |

# EXHIBIT I

AMERICAN ARBITRATION ASSOCIATION

Joshua Johnson,

Claimant,

AAA Case: 02-20-0015-1734-2-PA

vs.

JPMorgan Chase Bank, N.A.,

Respondent.

---

Joshua Johnson
907A St. Marys Street
Raleigh, North Carolina
(336) 423-2594
josh@jj88.org

Joseph H. Hickey
**DYKEMA GOSSETT PLLC**
*Attorneys for JPMorgan Chase Bank, N.A.*
39577 Woodward Ave., Suite 300
Bloomfield Hills, MI 48304-5086
(248) 203-0555
jhickey@dykema.com

---

**JPMORGAN CHASE BANK, N.A.'S OBJECTION TO DEMAND FOR ARBITRATION AND REQUEST FOR ARBITRATION TO BE STRICKEN / DISMISSED**

JPMorgan Chase Bank, N.A. ("Chase") objects to Claimant Joshua Johnson's claim and, pursuant to AAA Rule A-1, requests that the American Arbitration Association decline administration. There is no agreement between the parties for arbitration of an appeal of the March 3, 2022 Final Award of Arbitrator Charles Holton in Case No. 01-20-0015-1734. Claimant Johnson's purported appeal should be dismissed and stricken. In support of this objection and request, Chase states as follows:

1. Claimant commenced Arbitration Case No 01-20-0015-1734 on October 7, 2020.

2. Arbitrator Charles Holton was appointed on January 4, 2021.

3. During the course of those proceedings Claimant Johnson objected to arbitration of Case No. 01-20-0015-1734 pursuant to and governed by the terms of the arbitration clause Claimant submitted as ATTACHMENT B to his October 7, 2020 claim.

4. On July 15, 2021, Claimant Johnson proffered an arbitration agreement from the Chase Online Services Agreement, which agreement differed from the one attached to his October 7, 2020 claim. Arbitrator Holton heard argument from Claimant Johnson and Chase and thereafter determined that the arbitration agreement from the Online Services Agreement applied to the arbitration of Case No. 01-20-0015-1734. *See* Arbitrator Holton's July 15, 2021 Hearing Update Email, together with attachment entitled **Arbitrator Ex. 1**, forwarded to Pro Se Administrator 9 and the parties:

> An issue arose as to what particular arbitration provision governs the claims in this particular case, given that Chase has posted several ones from time to time that have variances in language. The parties agreed today that the arbitration agreement attached hereto as Arbitrator Ex. 1 is the provision governing this arbitration.

See attached Exhibit "A."

5. Arbitrator Holton rendered his Final Award in Arbitration Case No. 01-20-0015-1734 on March 3, 2022. On that same date, Pro Se Manager 8 provided a document entitled "What Happens After the Arbitrator Issues an Award." Consistent with the Consumer Arbitration Rules, that document stated:

> The AAA can only handle an appeal of the arbitration award if the parties have agreed that an appeal is allowed. There is no right to appeal in arbitration like there is in court.

6. The **Arbitrator Ex. 1** arbitration agreement contains no appellate rights and does not constitute an agreement to allow the AAA to administer an appeal of the Arbitrator's Final Award rendered in Arbitration Case No. 01-20-0015-1734. See Exhibit "A."

7. On or about March 22, 2022, Claimant Johnson commenced this matter, which purports to be an appeal of Arbitrator Holton's final award in Case No. 01-20-0015-1734:

> Case Number: **02-20-0015-1734 (APPEAL)**
> Joshua Johnson
> -vs-
> JPMorgan Chase Bank N.A.

Claimant Johnson contemporaneously filed with the AAA two irrelevant and otherwise inapplicable arbitration agreements containing appellate rights.

8. Having specifically advocated against the application of the arbitration agreement attached to his original claim on October 7, 2020 [Case No. 01-20-0015-1734] and having argued instead for the application of the agreement contained in **Arbitrator Ex. 1**, Claimant Johnson may not rely on any appellate rights contained in that rejected arbitration agreement to support this purported appeal.

9. The dispute in Arbitration Case No. 01-20-0015-1734 did not arise from Johnson's use of his Chase Freedom credit card ending in 5301 and, in any case, because Arbitrator Holton specifically held that the arbitration agreement in **Arbitrator Ex. 1** governed the proceedings in Arbitration Case No. 01-20-0015-1734, Claimant Johnson similarly may not rely on appellate rights contained in the "Important Changes to Your Account Terms" document he filed with the AAA on March 22, 2022.

Because there is no agreement between the parties for the AAA to administer this purported appeal, Claimant Johnson has no right to appeal and the AAA is without jurisdiction to require any payments, appoint any arbitrator(s) or to pursue any act in administration of this claim. Chase requests that the AAA strike and dismiss this claim.

/s/ Joseph H. Hickey
**DYKEMA GOSSETT PLLC**
*Attorneys for JPMorgan Chase Bank, N.A.*

# EXHIBIT A

**Hickey, Joseph**

| | |
|---|---|
| **From:** | Charles Holton <holton@law.duke.edu> |
| **Sent:** | Thursday, July 15, 2021 2:02 PM |
| **To:** | Pro Se Administrator 9 |
| **Cc:** | Joshua Johnson; Maison, Jeannie; Hickey, Joseph |
| **Subject:** | hearing update RE: Joshua Johnson v. JPMorgan Chase Bank N.A. - Case 01-20-0015-1734 |
| **Attachments:** | Arbitrator Ex. 1.pdf |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

*** EXTERNAL***

The hearing today is adjourned, but we are not finished with the taking of evidence. A further hearing is required. An issue has arisen with regard the recent production of newly discovered evidence by the Claimant, as well as Claimant's concerns regarding the thoroughness of prior productions of documents by the Respondent.
Respondent is searching its records further regarding specific items that have been designated by Claimant, and Mr. Hickey will report to the Arbitrator, the Claimant, and the AAA as to what is found.

We hope to reconvene and complete the hearing on next Tuesday, July 20 from 10:00-6:00 EDT – but I will not formally set that date until we hear back from Mr. Hickey.

Finally, an issue arose as to what particular arbitration provision governs the claims in this particular case, given that Chase has posted several ones from time to time that have variances in language. The parties agreed today that the arbitration provision attached hereto as Arbitrator Ex. 1 is the provision governing this arbitration.

C. Holton

Arbitrator Ex. 1

**ARBITRATION AGREEMENT**

The governing agreement, in full:

> YOU HEREBY AGREE THAT ANY DISPUTE, CLAIM OR CONTROVERSY ARISING NOW OR IN THE FUTURE UNDER OR RELATING IN ANY WAY TO THIS AGREEMENT, OR TO THE ONLINE SERVICE ("CLAIM"), REGARDLESS OF THE NATURE OF THE CAUSE(S) OF ACTION ASSERTED (INCLUDING CLAIMS FOR INJUNCTIVE, DECLARATORY, OR EQUITABLE RELIEF), SHALL BE RESOLVED BY BINDING ARBITRATION. CLAIMS SUBJECT TO ARBITRATION INCLUDE CLAIMS THAT ARE MADE AS COUNTERCLAIMS, CROSS CLAIMS, THIRD PARTY CLAIMS, INTERPLEADERS, OR OTHERWISE. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, AND YOU THEREFORE AGREE TO WAIVE ANY RIGHT THAT YOU OR WE MIGHT OTHERWISE HAVE HAD TO A JURY TRIAL OR THE OPPORTUNITY TO LITIGATE ANY CLAIMS IN COURT BEFORE EITHER A JUDGE OR JURY. YOU FURTHER AGREE THAT YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER REPRESENTATIVE ACTION (SUCH AS AN ACTION IN THE FORM OF A PRIVATE ATTORNEY GENERAL) TO LITIGATE ANY CLAIMS IN COURT BEFORE EITHER A JUDGE OR JURY; NOR WILL YOU BE ABLE TO PARTICIPATE AS A CLASS MEMBER IN A CLASS ACTION OR OTHER REPRESENTATIVE ACTION IN ARBITRATION OR IN COURT BEFORE EITHER A JUDGE OR JURY. IF THE PRECEDING SENTENCE IS NOT ENFORCED FOR ANY REASON, THEN YOU AGREE THAT IN SUCH CASE ANY CLASS DISPUTE WILL NOT BE RESOLVED THROUGH ARBITRATION.

This binding arbitration provision applies to any and all Claims that you have against us, our parent, subsidiaries, affiliates, licensees, predecessors, successors, assigns, and against all of their respective employees, agents, or assigns, or that we have against you; it also includes any and all Claims regarding the applicability of this arbitration clause or the validity of the Agreement, in whole or in part. It is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. sections 1-16, as it may be amended.

The party filing a Claim(s) in arbitration must file its Claim(s) before the American Arbitration Association under the rules of such arbitration administrator in effect at the time the Claim(s) was filed. Rules and forms of the may be obtained and Claims made may be filed at American Arbitration Association, 335 Madison Avenue, Floor 10, New York, NY 10017-4605, 800-778-7879, www.adr.org. Any arbitration hearing that you attend shall be held at a place chosen by the arbitrator or arbitrator administrator within the federal district in which you reside at the time the Claim(s) is filed, or at some other place to which you and we agree in writing. Judgment upon any arbitration award may be entered in any court having jurisdiction.

This Arbitration Agreement shall survive: (i) termination or changes in the Agreement, and the relationship between you and us concerning the Agreement; and (ii) the bankruptcy of any party or any similar proceeding initiated by you or on your behalf. If any portion of this Arbitration provision is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force.

**PROOF SERVICE**

I certify under penalty of perjury that on April 20, 2022, I filed and served *JPMORGAN CHASE BANK, N.A.'s OBJECTION TO DEMAND FOR ARBITRATION AND REQUEST FOR ARBITRATION TO BE STRICKEN / DISMISSED* via email to the AAA (to Pro Se Manager 8 [prosemanager8@adr.org] and upon Claimant Joshua Johnson (josh@jj88.org).

Dated: April 20, 2022

By: */s/ Joseph H. Hickey*
JOSEPH H. HICKEY
*JHickey@dykema.com*
**DYKEMA GOSSETT PLLC**
39577 Woodward Ave, Ste. 300
Bloomfield Hills, MI 48304
Tel.: +1 248 203-0555
Fax: +1 855 233-1467

# EXHIBIT J

## Johnson Response to Chase Objection to Demand for Arbitration

### I. Factual Background

1. On Jan 5 2017, Mr. Johnson opened the credit card account that is the subject of the case under appeal, case 01-20-0015-1734. The parties entered into an arbitration agreement ("Superseded Agreement") which would subsequently be superseded.
2. On Jun 5 2019, that agreement was superseded by an amended agreement ("Amended Agreement") which contains appellate rights and retroactively covers "all disputes between [Mr. Johnson] and Chase", including those relating to "any prior account". Ex. A.
3. On Oct 7 2020, the case commenced. The parties agreed that Chase would produce the card agreement and "any other agreements that would influence arbitration" prior to the hearing. Ex. B.
4. On Jun 1 2021, Chase breached that agreement. Neither the Superseded Agreement nor the Amended Agreement were produced. Ex. C.
5. On Jun 21 2021, after Mr. Johnson discovered evidence of Chase's breach, the arbitrator ordered that "Mr. Hickey will investigate with his client to determine all possible arbitration clauses which may have relevance to this arbitration". Ex. D.
6. On Jul 9 2021, Chase claimed to have "concluded its investigation" and stated that it was "not currently aware of any additional agreements that impact the claims". *Id.*
7. On Jul 13 2021, Chase produced the Superseded Agreement but not the Amended Agreement. *Id.*
8. On Feb 7 2022, the hearing closed without production of the Amended Agreement.

### II. Argument

### A. Chase's argument that there is no agreement to arbitrate an appeal fails.

Chase's argument that there is "no agreement between the parties for arbitration of an appeal" fails. It is contradicted by the plain language of the agreement, as unilaterally amended by Chase on Jun 5 2019. The Amended Agreement includes appellate rights ("[a] party can file a written appeal to the

arbitration administrator") and encompasses all disputes between the parties, expressly including those relating in any way to "any prior account".

**B. Chase's argument that Mr. Johnson relies on a "rejected" agreement fails.**

Chase references the "arbitration clause Claimant submitted as ATTACHMENT B to his October 7, 2020 claim" several times, in support of an argument that Mr. Johnson may not rely on appellate rights contained in that "rejected" agreement.[1] This argument is nonsensical. That agreement, which also contains appellate rights, was indeed rejected and its contents irrelevant. The right to appeal is found within the Amended Agreement, which Mr. Johnson provided to the AAA on Mar 22 2022.

**C. Chase actively concealed the Amended Agreement during arbitration.**

During the arbitration, Chase purported to be unaware of the Amended Agreement, even after conducting an investigation ordered by the arbitrator to "determine all possible arbitration clauses which may have relevance to this arbitration". It did so despite the fact that it drafted the Amended Agreement, sent the agreement to nearly 50 million customers, and even informed the New York Times of its scope. "Patricia Wexler, a JPMorgan spokeswoman, said the change would affect 'nearly all' of its credit card customers, except certain servicemembers and holders of its AARP card.". Ex. E.

**D. Chase's argument that Mr. Johnson waived appellate rights fails.**

Chase's argument that Mr. Johnson waived rights afforded to him by the Amended Agreement also fails. He did not do so, and could not have done so, as the Amended Agreement was not produced during the arbitration. The email which Chase cites several times in its objection ("Exhibit A") does not reflect an agreement to ignore the Amended Agreement in favor of the Superseded Agreement (which Chase refers to as "Arbitrator Ex. 1"). It reflects the rejection of the inapplicable deposit account agreement in favor of the actual prior agreement of the parties, which Chase misrepresented via its concealment of the Amended Agreement.

Furthermore, were Mr. Johnson to have sought to waive his rights via modification of the prior agreement, the AAA Consumer Arbitration Rules ("Consumer Rules") sensibly require such a

---

[1] An inapplicable deposit account agreement was erroneously attached to the original Demand for Arbitration, due to Chase's poor labelling of the multiple arbitration agreements it had registered in the AAA consumer clause registry. Mr. Johnson has never held a deposit account with Chase.

modification to be “in writing”, “signed by both parties”, and reviewed by the AAA for compliance with the Consumer Due Process Protocol. Consumer Rules, Rule R-2.

**E. Chase's objection is pursuant to an inapplicable rule.**

Chase's objection is "pursuant to AAA Rule A-1". This is presumably a reference to the AAA Optional Appellate Rules, although the reader is left to speculate due to the lack of a citation. Rule A-1 plainly states that those rules do not apply to consumer arbitrations. "These Appellate Rules do not apply to disputes where the arbitration clause is contained in an agreement between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers". AAA Optional Appellate Rules, Rule A-1.

**III. Conclusion**

Chase's argument that there is no agreement to arbitrate is contradicted by the unambiguous language of the Amended Agreement, which it drafted and then actively sought to conceal from the arbitrator and Mr. Johnson during arbitration. Its contention that Mr. Johnson relies on a rejected agreement is nonsensical. Its argument that he waived rights granted by the Amended Agreement is untrue, impossible, and finds no support in the Consumer Rules. The objection itself is brought pursuant to a rule which plainly states its inapplicability to consumer arbitrations. In short, the objection is wholly without merit.

The Consumer Rules state that the business' filing fee is "due from the business once the consumer has met the filing requirements". The filing requirements for this appeal, case 02-20-0015-1734, were met by Mr. Johnson on Mar 23 2022 and acknowledged by the AAA in a letter sent to both parties on Apr 6. Ex. F.

This objection is nothing more than a tactic by Chase to delay the appeal. The AAA should (1) deny the objection, (2) reiterate that the objection does not toll the payment due date (now more than 30 days past due), and (3) make an administrative ruling that the objection is frivolous, so that Mr. Johnson may seek reimbursement from the arbitrators for time and costs responding to this objection.

# Exhibit A

Gmail

Joshua Johnson <josh@jj88.org>

# Important information regarding changes to your Chase account

1 message

**Chase** <Chase@e.chase.com> Wed, Jun 5, 2019 at 10:18 AM
Reply-To: "Chase@e.chase.com" <Chase-HP2v40000016b28a5c42a9cbc84f4bbe5be50089@e.chase.com>
To: josh@jj88.org

Email Security Information:

**Email intended for: Joshua Johnson**

**Chase Freedom® credit card ending in 5301**

If you have concerns about the authenticity of this message, please visit chase.com/CustomerService for options on how to contact us.

## Important Changes to Your Account Terms

**Notice:** Your Cardmember Agreement and associated Rewards Program Agreement (if any) were assigned to JPMorgan Chase Bank, N.A., as successor by merger to Chase Bank USA, N.A., on **05/18/2019**. Furthermore, beginning **05/18/2019** all references to Chase Bank USA, N.A. in your Guide to Benefits and any additional account agreements and documents shall be read as JPMorgan Chase Bank, N.A.

**Summary of changes to your account terms effective 8/8/2019.**

- The description of the Minimum Payment calculation found under your Cardmember Agreement Rates and Fees Table is changing to **a minimum of $35** and to include unique payment obligations in connection with Flexible Financing Offers.
- We are introducing two new features, My Chase Loan[SM] and My Chase Plan[SM], under which Flexible Financing Offers may be available to you from time to time, subject to the new rates and fees and Cardmember Agreement terms described below.
- A binding arbitration provision is added and the Military Lending Act Notice is revised accordingly. **YOU CAN REJECT THE BINDING ARBITRATION AGREEMENT. YOU MUST MAIL YOUR REJECTION TO US BY 8/7/2019. PLEASE SEE THE END OF THIS NOTICE FOR INSTRUCTIONS**

**Details on the changes to your account, effective 8/8/2019.**

1. Your Cardmember Agreement Rates and Fees Table is amended as follows:

**Revised Terms as of 8/8/2019**

**INTEREST RATES AND INTEREST CHARGES**

| | |
|---|---|
| ***My Chase Loan* Annual Percentage Rate (APR)** | **17.24%.** This APR will vary with the market based on the Prime Rate.[a]<br><br>Promotional offers with fixed APRs and varying durations may be available from time to time on some accounts. |
| **Paying interest** | Your due date will be a minimum of 21 days after the close of each billing cycle. We will not charge you interest on new purchases if you pay your entire balance or Interest Saving Balance by the due date |

than rules applicable in court.

Please see the *Arbitration Agreement* section for more details, including instructions for how to reject the agreement to arbitrate.

- The *Military Lending Act* Notice within the *About Our Relationship* section of your Cardmember Agreement is amended by replacing the second to last sentence with the following:

  If you are covered by the Military Lending Act, (i) then you are not bound by the Arbitration Agreement below, and (ii) notwithstanding anything to the contrary in this agreement, to the extent required by the Military Lending Act, nothing in this agreement will be deemed a waiver of the right to legal recourse under any otherwise applicable provision of state or federal law.

**7. INTEREST CHARGES**

With the introduction of *My Chase Loan*, the description of when we add transactions and fees to your daily balance within the *Interest Charges* section of your Cardmember Agreement is amended as follows:

"We add transactions and fees to your daily balance no earlier than:

- For new purchases, balance transfers, cash advances or *My Chase Loans* - the date of the transaction.
- For new cash advance checks or balance transfer checks - the date the payee deposits the check.
- Fees - either on the date of a related transaction, the date they are posted to your account, or the last day of the billing cycle, whichever we may choose."

**8. ARBITRATION AGREEMENT**

A new section titled *Arbitration Agreement* is hereby added to the end of the agreement as follows (following the section titled *Your Billing Rights*):

**ARBITRATION AGREEMENT**

**PLEASE REVIEW-IMPORTANT-AFFECTS YOUR LEGAL RIGHTS**

This arbitration agreement provides that all disputes between you and Chase must be resolved by BINDING ARBITRATION whenever you or we choose to submit or refer a dispute to arbitration. By accepting this arbitration agreement you GIVE UP YOUR RIGHT TO GO TO COURT (except for matters that may be taken to a small claims court). Arbitration will proceed on an INDIVIDUAL BASIS, so class actions and similar proceedings will NOT be available to you.

YOU HAVE THE RIGHT TO REJECT THIS AGREEMENT TO ARBITRATION, BUT IF YOU WISH TO REJECT IT, YOU MUST DO SO PROMPTLY. If you do not reject this agreement to arbitration by **8/7/2019** in the manner set forth below, then:

* In arbitration, your rights will be determined by a NEUTRAL ARBITRATOR and NOT A JUDGE OR JURY.

* The procedures in arbitration are simpler and more limited than rules applicable in court.

* Arbitrator decisions are subject to VERY LIMITED REVIEW BY A COURT.

If you do not reject this agreement by **8/7/2019**, you or we may elect to resolve any Claim by arbitration.

For purposes of this agreement to arbitrate, "you" includes any co-applicant or authorized user on your account, or anyone else connected with you or claiming through you; and "we" or "us" includes JPMorgan Chase Bank,

N.A. and Chase Bank USA, N.A., all of their parents, subsidiaries, affiliates, successors, predecessors, employees, and related persons or entities and all third parties who are regarded as agents or representatives of us in connection with the account, or the subject matter of the claim or dispute at issue.

All claims or disputes between you and us about or relating in any way to your account, any prior account, your cardmember agreement with us (including any future amendments), any prior cardmember agreement, or our relationship are referred to as "Claims" for purposes of this agreement to arbitrate. Claims include, for example, claims or disputes arising from or relating in any way to transactions involving your account; any interest, charges, or fees assessed on your account; any service(s) or programs related to your account; any communications related to your account; and any collection or credit reporting of your account. Claims also include claims or disputes arising from or relating in any way to advertising and solicitations, or the application for, approval, or establishment of your account. Claims are subject to arbitration regardless of whether they are based on contract, tort, statute, regulation, common law or equity, or whether they seek legal or equitable remedies. All Claims are subject to arbitration whether they arose in the past, may currently exist, or may arise in the future. Arbitration will apply even if your account is closed, sold, or assigned; you pay us in full any outstanding debt you owe; or you file for bankruptcy. In the event that your account is sold and/or assigned, we retain our right to elect arbitration of Claims by you and you retain your right to elect arbitration of Claims by us.

* If you are covered by the Military Lending Act, then you are not bound by this arbitration agreement, and to the extent required by the Military Lending Act, nothing in this agreement will be deemed a waiver of the right to legal recourse under any otherwise applicable provision of state or federal law.

The only other exception to the arbitration requirement is that you have the right to file and pursue a Claim in a small claims court instead of arbitration if the Claim is in that court's jurisdiction and proceeds on an individual basis.

If you initiate a Claim in arbitration, no changes to the terms of this agreement to arbitrate that are made after we receive your Claim will apply to that Claim.

This agreement to arbitrate is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*

***Can I (the customer) reject this agreement to arbitrate?***

Yes. You have the right to reject this agreement to arbitrate if you notify us no later than **8/7/2019**. You must do so in writing by stating that you reject this agreement to arbitrate and include your name, account number, address and personal signature. Your notice must be mailed to us at P.O. Box 15298, Wilmington, DE 19850-5298. Rejection notices sent to any other address, or sent by electronic mail or communicated orally, will not be accepted or effective.

***What about class actions or representative actions?***

Individuals sometimes seek to bring lawsuits on behalf of other, similarly situated individuals. This is often called a class action. Class actions, other similar representative procedures, and consolidation of Claims (except for claimants on the same account) are *not* available under this agreement to arbitrate. Claims in arbitration will proceed only on an individual basis. Additionally, you may not join your claims with other persons on other accounts in the arbitration; each person must arbitrate his or her own claims separately.

UNLESS YOU REJECT THIS AGREEMENT TO ARBITRATE, YOU AND WE ARE WAIVING THE RIGHT TO ASSERT OR PARTICIPATE IN A CLASS ACTION, OR ANY REPRESENTATIVE OR CONSOLIDATED PROCEEDING IN COURT OR IN ARBITRATION.

The arbitrator shall have no authority to entertain any Claim as a class action or on any other similar representative basis, nor shall the arbitrator have any authority to consolidate Claims brought by separate claimants (except for claimants on the same account). To be clear, this means that the arbitrator also shall have no authority to make any award for the benefit of, or against, any person other than the individual who is the named party. If these terms prohibiting class, representative, or consolidation procedures are held to be legally unenforceable for any reason with respect to a Claim, then the Claim must be handled through litigation in court instead of by arbitration.

***How does arbitration work?***

Arbitration is different from a lawsuit in state or federal court. Arbitration is conducted by private organizations that specialize in alternative dispute resolution, and is conducted before a neutral arbitrator instead of a judge or jury. Arbitration procedures are generally simpler and more informal than court procedures. For example, discovery is more limited in arbitration than in court. Also, arbitrator decisions are subject to only limited review by courts. As discussed above, certain rights that you may have in court are not available in arbitration. At the same time, in arbitration you are entitled to recover attorneys' fees from us to the same extent as you would be in court.

Under this agreement to arbitrate, the party filing a Claim must select either Judicial Arbitration and Mediation Services ("JAMS") or the American Arbitration Association ("AAA") as the arbitration administrator. You can learn more about these organizations online, at the addresses provided below. Each of these organizations will apply its code of procedures in effect at the time the arbitration claim is filed. If there is a conflict between that code of procedures and this arbitration provision and/or any sections of this agreement, this arbitration provision and/or this agreement will control. In the event that JAMS or the AAA is unable or unwilling to handle the Claim for any reason, then the matter shall be arbitrated instead by a neutral arbitrator selected by agreement of the parties (or, if the parties cannot agree, selected by a court in accordance with the Federal Arbitration Act).

A single arbitrator designated by the arbitration administrator will decide the Claim under applicable law. The arbitrator is bound by the terms of this agreement to arbitrate. All issues are for the arbitrator to decide, except that issues relating to the scope, enforceability, interpretation, formation, and validity of this arbitration agreement are for a court to decide. The arbitrator will honor all claims of privilege recognized by law. Subject to the prohibition on class, representative, and consolidation procedures set forth above, the arbitrator will have the power to award to a party any damages or other relief provided for under applicable law. That is, a party will be entitled to recover in arbitration any damages or other relief that it could recover if it prevailed in a court proceeding as an individual. No arbitration award or decision will have any preclusive effect on issues or claims in any subsequent proceedings beyond the Claims at issue. The arbitrator's authority is limited to claims between you and us, and the arbitrator can award damages or relief only to you, but not to or on behalf of anyone else.

Although under some laws we may have a right to an award of attorneys' fees and expenses if we prevail, we agree that we will not seek such an award.

If your Claim is for $10,000 or less, you may choose whether the arbitration will be conducted solely on the basis of documents, through a telephonic hearing, or in an in-person hearing. Any in-person hearing will take place in

the federal judicial district that includes your address at the time the Claim is filed, unless the parties agree to a different place.

***Is the arbitrator's decision final? Is there an appeal process?***

The arbitrator's decision will be final and binding on the parties. An arbitrator's award shall consist of a written statement setting forth the disposition of each Claim. At the request of any party, the arbitrator shall also set forth a written explanation of the essential findings and conclusions on which the award is based.

A party can file a written appeal to the arbitration administrator within 30 days after an award is issued. The appeal will proceed before a panel of three neutral arbitrators designated by the same arbitration administrator. That panel will consider all legal and factual issues anew, and make all decisions and awards by majority vote based on the documents and arbitration record without a hearing. Any review by a court shall be governed by the Federal Arbitration Act. Any final arbitration award will be binding on the named parties and enforceable by any court having jurisdiction.

***Who will pay for costs?***

We will pay any costs that are required to be paid by us under the arbitration administrator's rules of procedure. Even if not otherwise required, we will reimburse you up to $500 for any initial arbitration filing fees you have paid. We will also pay any fees of the arbitrator and arbitration administrator for the first two days of any hearing. If you win the arbitration, we will reimburse you for any fees you paid to the arbitration organization and/or arbitrator. All other fees will be allocated according to the arbitration administrator's rules and applicable law. If you consider that you are unable to afford any fees that would be yours to pay to the arbitration administrator, you may request that we pay or reimburse them, and we will consider your request in good faith.

You may represent yourself in arbitration, or you may be represented by a lawyer. Except as described above, you will be responsible for your own attorneys' fees and costs.

***How do I (the customer) file an arbitration claim?***

Rules and forms may be obtained from, and Claims may be filed with, JAMS at (800) 352-5267 or jamsadr.com; or the AAA at (877) 495-4185 or www.adr.org. Both of these administrators have particular rules for arbitrations initiated by a consumer.

**ABOUT THIS MESSAGE:**
This service message gives you updates and information about your Chase relationship.

This email was sent from an unmonitored mailbox. Go to chase.com/CustomerService for options on how to contact us.

Your privacy is important to us. See our online Security Center to learn how to protect your information.

Chase Privacy Operations P.O. Box 659752, San Antonio, TX 78265-9752.

©2019 JPMorgan Chase & Co.

EM10496

# Exhibit B

**Subject**: RE: Joshua Johnson v. JPMorgan Chase Bank N.A. - Case 01-20-0015-1734
**From**: "Walls, Samantha" <SWalls@dykema.com>
**To**: Joshua Johnson <josh@jj88.org>,ProSeAdministrator9 <ProSeAdministrator9@adr.org>,"Hickey, Joseph" <JHickey@dykema.com>
**Date Sent**: Monday, April 5, 2021 12:18:56 PM GMT-04:00
**Date Received**: Monday, April 5, 2021 12:19:08 PM GMT-04:00

---

Good afternoon,

We address your issues in turn below.

1. Legal Agreements: Chase has no issue providing the relevant card agreement. We will investigate if there were any other agreements between you and Chase.

2. Communications: Chase will investigate if any recordings relating to your account exist. I will advise now that, because of building restrictions related to Covid, if any calls exist, it has usually been at least a 30 day turnaround to receive copies of those calls. Chase objects to your request for "metadata," particularly the technical meaning of metadate, as well as any request for information that is not kept in the ordinary course of business.

3. Retention Policy: As we discussed on the call, the limit on account access information is not a retention policy issue, but rather a technology limit. We cannot produce what does not exist.

Thank you,
Samantha

DyKEMA | **Samantha L. Walls** Attorney SWalls@dykema.com | 313-568-6617 Direct 313-568-6800 Main 855-243-9880 Fax | 400 Renaissance Center Detroit, Michigan 48243 www.dykema.com

---

**From:** Joshua Johnson <josh@jj88.org>
**Sent:** Friday, April 2, 2021 6:18 PM
**To:** ProSeAdministrator9 <ProSeAdministrator9@adr.org>; Walls, Samantha <SWalls@dykema.com>; Hickey, Joseph <JHickey@dykema.com>
**Subject:** Re: Joshua Johnson v. JPMorgan Chase Bank N.A. - Case 01-20-0015-1734

***** EXTERNAL*****

Samantha and Joe,

I'd also like to follow up on a few threads from our conference:

Although I do not think we discussed it in the conference, I requested relevant legal agreements via email. By "relevant legal agreements", I mean the original cardmember agreement and any amendments to it, the terms and conditions associated with use of the online services that were in effect in 2017, any agreements that were consented to electronically, and any other agreements that would influence arbitration concerning this account.

| a) Respondent will produce to Claimant copies of all communications that it has between the parties;

To head off any confusion, I define "communications" in this context as (1) telephone recordings, (2) documents sent via mail, (3) documents furnished via chase.com, as well as the following metadata: (4) when a document was furnished, (5) whether a call was incoming or outgoing, (6) call start times and durations, and (7) any written notes, memos, or transcripts concerning specific calls or the account

# Exhibit C

**Subject**: Joshua Johnson v. JPMorgan Chase Bank N.A. - Case 01-20-0015-1734
**From**: Pro Se Administrator 9 <ProSeAdministrator9@adr.org>
**To**: "josh@jj88.org" <josh@jj88.org>,"swalls@dykema.com" <swalls@dykema.com>,"jhickey@dykema.com" <jhickey@dykema.com>
**Cc**: Pro Se Administrator 9 <ProSeAdministrator9@adr.org>
**Date Sent**: Monday, April 12, 2021 9:33:22 AM GMT-04:00
**Date Received**: Monday, April 12, 2021 9:33:26 AM GMT-04:00

---

Good Morning:

Please see the following message from Arbitrator Holton:

*Please tell the parties that I am inclined to set the hearing for the week of June 7. Right now, my schedule is pretty open that week.*
*I suggest holding the hearing on Tues., June 8 at 10:00 via Zoom. If the parties wish to confer and propose an alternate date that week, they are welcome to do so.*
*All discovery should be concluded by June 1, and the parties should exchange witness and exhibit identifications by June 1.*
*If the parties need to have another conf. call, we can set one up.*

**Pro Se Administrator 9**
American Arbitration Association
E: ProSeAdministrator9@adr.org
adr.org | icdr.org | aaamediation.org

NPT's BEST NONPROFITS TO WORK FOR ★2021★

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

# Exhibit D

**Sent:** Monday, June 21, 2021 6:26 AM
**To:** ProSeAdministrator9 <ProSeAdministrator9@adr.org>; Hickey, Joseph <JHickey@dykema.com>
**Subject:** Re: Exhibits & Audio // Joshua Johnson v. JPMorgan Chase Bank N.A. - Case 01-20-0015-1734

***** EXTERNAL*****

Pro se admin,

Please also forward the following along:

---

Mr. Holton,

I have reason to believe that Chase has withheld information that should have been produced during discovery. This belief is based in part on information in one of the "account screen" exhibits that Chase has already provided.

However, to be certain, one of the Chase witnesses will need to interpret what is shown on the account screen. I also have a separate (just discovered) document that supports the claim that information was withheld, which has not yet been introduced as an exhibit.

I would like to discuss this at the start of the hearing. Please let me know if there is anything I need to do in advance of the hearing in order to do so.

Thanks,
Josh

On Sat, Jun 19, 2021 at 10:08 PM Joshua Johnson <josh@jj88.org> wrote:

> Pro se admin, please pass the message below on to the arbitrator. Thanks.
>
> ---
>
> Mr. Holton,
>
> I've uploaded all of the claimant exhibits to AAA WebFile.
>
> Each exhibit has a unique exhibit ID and each page of each exhibit is labeled with a unique page ID (I think this is the "bate stamp"?). The filename contains the exhibit ID and the ID of the first page, e.g. "CEX5 - C000075 - Chase Online Services Workflow.pdf" is Claimant exhibit 5 with the four pages labeled C000075 through C000078.
>
> The page IDs are as they were on June 1st. The exhibit IDs were added by me today. We came up with a few exhibit IDs on the fly in the hearing, but my notes are frankly a mess and don't capture them all -- so I just went through and sequentially assigned IDs. If that's a problem, let me know. I can probably listen to the recorded audio of the hearing and figure out what is what.
>
> Exhibits CEX1 through CEX49 are the exhibits that were sent to the AAA and Joe on June 1st (that should have been forwarded to you then).
>
> Exhibits CEX50 and CEX51 were sent out shortly before the hearing. CEX50 is a spreadsheet that I presented at length during the hearing. It summarizes and provides commentary on a few key Claimant and Respondent exhibits. Note that there are three spreadsheet "tabs": Highlights, Payments, and Comms. CEX51 is written testimony that I read from at the hearing. These two exhibits are not labeled with page IDs.

**Subject**: Further Re: Call with Mr. Holton today (Monday June 21st)? // Joshua Johnson v. JPMorgan Chase Bank N.A. - Case 01-20-0015-1734
**From**: Charles Holton <holton@law.duke.edu>
**To**: Pro Se Administrator 9 <ProSeAdministrator9@adr.org>
**Cc**: "Hickey, Joseph" <JHickey@dykema.com>, Joshua Johnson <josh@jj88.org>
**Date Sent**: Monday, June 21, 2021 2:03:32 PM GMT-04:00
**Date Received**: Monday, June 21, 2021 2:03:42 PM GMT-04:00
**Attachments**: image115b93.PNG,image605382.PNG

---

Mr. Hickey set up the call.
Because issues have now arisen as to what arbitration agreement may govern this arbitration, we have agreed to adjourn the hearing scheduled for tomorrow, June 22, and resume the hearing possibly on July 14, 15, or 16. The parties well let us know which of those dates may be preferable.
Further, Mr. Johnson has agreed to send an email to Mr. Hickey with a copy to me and the AAA, specifying the various arbitration clauses which he has noted in the documents which have been produced in discovery and also specifying which arbitration clause he contends should govern this arbitration.
Mr. Hickey will investigate with his client to determine all possible arbitration clauses which may have relevance to this arbitration, and he will update us with what he finds.

C. Holton

**Subject**: RE: Continued Hearing on July 15th // Joshua Johnson v. JPMorgan Chase Bank N.A. - Case 01-20-0015-1734
**From**: "Hickey, Joseph" <JHickey@dykema.com>
**To**: Joshua Johnson <josh@jj88.org>,Pro Se Administrator 9 <ProSeAdministrator9@adr.org>,Charles Holton <holton@law.duke.edu>
**Cc**: "Hickey, Joseph" <JHickey@dykema.com>
**Date Sent**: Wednesday, June 30, 2021 1:00:15 PM GMT-04:00
**Date Received**: Wednesday, June 30, 2021 1:00:21 PM GMT-04:00

---

Hello Josh and Arbitrator Holton,

Ironically I was just getting ready to hit send on Chase's response (which I have copied in below):

Chase has considered your questions / issues and responds as follows:

**Request For "Temporary" Deletion Of Information Furnished To the Credit Bureaus:**

Chase contended / contends it conducted a reasonable investigation of your dispute submitted via Equifax. You admitted that the information provided to the bureaus was accurate. As a federally regulated bank Chase seeks to furnish accurate information to the bureaus and conduct a reasonable investigation when informed of a dispute. Even without your admission, based on what we have learned in this case via your testimony and other evidence, Chase does not believe it has any basis to delete your tradeline.

You sought to avoid application of the FCRA (and FCRA pre-emption) by arguing that Chase breached a contract – a contract to provide your statements to you. However, your testimony and exhibits establish that Chase did not breach any such contract or agreement. Your testimony and evidence (*again, e-mails and documents you produced*) establish:

- In February 2017 you signed up to receive your statements via e-mail and you received an e-mail confirming that fact (the subject line stated "Your Paperless Enrollment");
- The e-mail further stated:
  - This means we'll [Chase] no longer mail your statement and some account notices.
  - We'll [Chase] post them online and e-mail you a reminder when they're ready.
  - You had the opportunity to opt-out of the paperless enrollment.
- Your testimony about your actions after receipt of the e-mail notices (not opening them, etc) speaks for itself.

**Terms in Chase Documents R000083 and R000084:**

As for the terms contained in R000083, that document relates to a different card (sign up date from 12/13/**2010**) –COLSA1A, etc. – that are clearly not related to the subject account. As for R000084, Chase is still endeavoring to determine if the COLSA3 was amended after the 3/22/2015 update listed on that document and to answer your specific questions about the terms contained on that page. Chase is also confirming that there are no other arbitration agreements. I do not believe there are.

**Arbitration Agreement:**

The arbitration agreement that governs this dispute is the agreement attached to your demand for arbitration. That agreement contains terms that not only mirror those in the amendment to the cardmember agreement (the PDF you attached to your June 21, 2021 e-mail), but they are also more favorable to you than the arbitration agreement contained in the Online Services Agreement – although the AAA Consumer Rules fill in most of the gaps. As such, the answer to the question I raised on Chase's behalf during our call – "How are the agreements materially different?" – is that they are not. If there is a difference, the agreement you attached to your demand is more beneficial and Chase does not object to its governing here.

| **Arbitration Attached As Attachment B To Your Arbitration Demand** | **Arbitration Clause (paragraph 12) in the Online Service Agreement (OSA)** |
|---|---|
| **Power Of The Arbitrator:** The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law. | Arguably the language in the OSA is not as broad, but R-44 and the AAA definition of the arbitrator's role (Consumer Rules, p. 7) convey similar authority. |
| **Appellate Rights:** The arbitrator's decision will be final and binding on the parties. A party can file a written appeal to the arbitration administrator within 30 days of the award issuance. The appeal must request a new arbitration in front of three neutral arbitrators designated by the same arbitration administrators. | No appellate rights in the OSA. There are no appellate rights under the AAA rules. These benefits accrue to you. |
| **Who Will Pay For the Cost:** We will pay any costs that are required to be paid by us [illegible] | No discussion of cost split in OSA. But Costs of Arbitration (Consumer Rules, pp. [illegible] |

**Subject**: RE: Joshua Johnson v. JPMorgan Chase Bank N.A. - Case 01-20-0015-1734
**From**: "Hickey, Joseph" <JHickey@dykema.com>
**To**: ProSeAdministrator9 <ProSeAdministrator9@adr.org>
**Cc**: Joshua Johnson <josh@jj88.org>, "Hickey, Joseph" <JHickey@dykema.com>
**Date Sent**: Friday, July 9, 2021 3:08:21 PM GMT-04:00
**Date Received**: Friday, July 9, 2021 3:08:26 PM GMT-04:00
**Attachments**: AAA Case No 01-20-0015-1734-2-PA Johnson v Chase_Chase Brief Regarding Arbitration.pdf

---

Pro Se #9,

Please send this communication and attachment to Mr. Holton.

---

This is a simple dispute about:

- **Chase's alleged violation of the Fair Credit Reporting Act**, which issue has been resolved in our view by Mr. Johnson's admission in his legal brief that Chase furnished accurate information to the bureau (hence, Chase asserts that admission also covers the reasonableness of its investigation); and
- **Chase's alleged breach of an obligation to provide statements** to Mr. Johnson. As to that issue, Mr. Johnson provided testimony and evidence during his case in chief that in Chase's view undermines that claim in its entirety and, frankly, requires dismissal per R-33.

Mr. Johnson has raised the issue of the precise terms of the agreement to arbitrate and Chase has concluded its investigation and its further response to that issue is attached.

We are not currently aware of any additional agreements that impact the claims at issue (above). Chase believes the Online Services agreement, along with any amendment, is not material to the remaining issue of Chase's alleged breach. In fact, the statement cited by Mr. Johnson in his Legal Agreement document (at p. 10) – "Your account statement, furnished to you by us in a paper format, or electronically if you are enrolled in paperless statements service, [is] the official record" – supports Chase's position that it provided statements to Mr. Johnson in a manner he agreed to and does not involve an issue with the agreement.

I am not aware of any intention on Chase's part to introduce additional exhibits "at the eleventh hour" and I do not know in what way Chase violated R-32(b) other than my noted inability to use screenshare. Pejorative accusations aside, Chase and its counsel have (i) attempted in good faith to comply with discovery requests relevant to the claims at issue, (ii) retrieved records purged from its active systems because they contain responsive information, and (iii) gone above what was required by, among other things, answering questions about the documents it produced and additionally procuring (at great time and expense) a recording (even having it transcribed) of Mr. Johnson's August 26, 2020 call (which he did not even use in his case in chief).

We are in receipt of Mr. Holton's e-mail regarding the exchange of additional documents. Perhaps if I had the time to respond yesterday (per my e-mail below I advised yesterday that we intended to respond to Mr. Johnson's request and I am unsure if you forwarded that message), Mr. Holton might have ruled differently. Perhaps not. In any case, it is Chase's position that Mr. Johnson concluded his case in chief on June 8, 2021 and Chase objects to the introduction of any additional documents / reopening of his case with yet another new twist or attempt to amend or restate his claim.

We do not object to Mr. Johnson's request that the arbitrator allow post-hearing briefs.

I hope you both have a good weekend.

Thank you,

**Subject**: RE: Joshua Johnson v. JPMorgan Chase Bank N.A. - Case 01-20-0015-1734
**From**: "Hickey, Joseph" <JHickey@dykema.com>
**To**: Joshua Johnson <josh@jj88.org>
**Cc**: ProSeAdministrator9 <ProSeAdministrator9@adr.org>, "Hickey, Joseph" <JHickey@dykema.com>
**Date Sent**: Tuesday, July 13, 2021 11:54:19 AM GMT-04:00
**Date Received**: Tuesday, July 13, 2021 11:57:03 AM GMT-04:00
**Attachments**: art_COLSA3_Agmt(69535153.1).pdf,art_edc_Agmt(69535151.1).pdf

---

Josh, While we continue to contend that the Online Service Agreement is not material to your matter, the applicable COLSA3 was amended as of 8/21/16. Please see attached. The arbitration provision was not amended.

We also attach a copy of the ecd.

We have not located a paperless prompt agreement.

The coding closing the account reflected in the purged notes is listed on 9/15/17, but we are not aware of any call on that date. Nor has a call on that date ever been alleged.

Thanks,

Joe

DYKEMA | **Joseph H. Hickey** Member JHickey@dykema.com | 248-203-0555 Direct 248-203-0700 Main 855-233-1467 Fax | 39577 Woodward Avenue, Suite 300 Bloomfield Hills, Michigan 48304 www.dykema.com

---

**From:** Joshua Johnson <josh@jj88.org>
**Sent:** Tuesday, July 13, 2021 10:23 AM
**To:** ProSeAdministrator9 <ProSeAdministrator9@adr.org>; Hickey, Joseph <JHickey@dykema.com>
**Subject:** Joshua Johnson v. JPMorgan Chase Bank N.A. - Case 01-20-0015-1734

***** EXTERNAL*****

Good Morning Joe,

Following up about discovery:

**Missing Agreements**

Colsa was not the only legal agreement that appeared to be referenced in R0000084. There is also "ecd" and "paperless prompt".

**Missing 9/15/17 Call**

The account was closed on 9/15/17. However, there are no CSR notes recorded for 9/15, nor is there a record of a call in R0000129 or R0000154. I always found it odd that the last payment of $111 was made during a call on 9/6, but the account was closed on 9/15 without a call taking place.

Last week, I discovered call logs from 2017. They show that I made an outbound call to Chase customer service at (800) 432-3117 on 9/15/17, and the call lasted 12 minutes. I also discovered three hours of audio from the 2018 calls. During those calls, various CSRs can be heard looking through the 2017 records. They are able to see the 9/6 call where a $111 payment was made is referenced, but none of them mention a call on 9/15.

# Exhibit E

The New York Times | https://www.nytimes.com/2019/06/04/business/jpmorgan-chase-credit-card-arbitration.html

# *JPMorgan Chase Seeks to Prohibit Card Customers From Suing*

**By Emily Flitter**

June 4, 2019

WASHINGTON — JPMorgan Chase is trying to require its credit card customers to go into private arbitration to settle disputes — even if they involve an older account — by reintroducing provisions it dropped a decade ago.

“With arbitration, you cannot go to court, have a jury trial or initiate or participate in a class action for your dispute(s) with us,” the bank said in notifications sent to customers.

The change, which affects about 47 million accounts, including those for Chase’s popular Sapphire cards, reflects a broader effort by Wall Street firms to prevent customers and employees from engaging in class-action lawsuits that can result in large settlements and bad publicity. Unlike court cases, arbitration cases do not leave a trail of public documents and they cannot be brought by groups of aggrieved customers.

To prevent the new individual arbitration agreement from taking effect, customers must object to it in writing by mail by Aug. 7, according to the notifications. Customers could still take action in small-claims court.

Patricia Wexler, a JPMorgan spokeswoman, said the change would affect “nearly all” of its credit card customers, except certain servicemembers and holders of its AARP card. She said arbitration was already “standard practice” for JPMorgan’s consumer banking and auto loan businesses.

“Data shows that arbitration is often faster, less expensive with better outcomes for our customers,” she said.

JPMorgan — the country’s largest bank — is far from alone in increasing the use of arbitration clauses. Seventy-two percent of banks used such clauses in 2016, up from 59 percent in 2013, according to a report from the Pew Charitable Trusts.

The notifications said the arbitration agreement would apply not just to the customers’ current accounts but “all claims or disputes between you and us,” including “any prior account.”

# Exhibit F

Gmail

Joshua Johnson <josh@jj88.org>

---

**Payment Received on AAA Case 02-20-0015-1734**
1 message

---

**noreply@adr.org** <noreply@adr.org> Wed, Mar 23, 2022 at 12:56 PM
To: josh@jj88.org

Thank you for making the following payment to the American Arbitration Association:

Transaction ID: 001096
Case Number: 02-20-0015-1734
Party: Joshua Johnson
Amount: $200.00
Comments: Consumer Filing Fee

**Please do not reply to this email.** If you have any questions about this payment, please contact Michelle Goldberg at GoldbergM@adr.org.

Thank you.

# EXHIBIT B

**AMERICAN ARBITRATION ASSOCIATION**

In the Matter of the Arbitration between

Case Number: 01-20-0015-1734

Joshua Johnson (Claimant)
-vs-
JPMorgan Chase Bank N.A. (Respondent)

**AWARD OF ARBITRATOR**

I, Charles R. Holton, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the proofs and allegations of the Parties at evidentiary hearings held on June 8, July 15, September 17, and Sept. 29, 2021, and Claimant appearing as *pro se,* and Respondent being represented by counsel, do hereby, AWARD, as follows:

**Summary:**
**Upon payment by Claimant Johnson of $238.52 to Respondent Chase or its attorney, Respondent Chase is ordered to retract and cause to be removed any and all adverse credit references which it has caused to be made regarding Claimant Johnson arising out of the Ink business credit card account. No damages or sanctions are awarded, and each party shall bear his/its own costs as incurred.**

**Explanation:**

A. Johnson's original Claim in this arbitration, filed under the AAA Consumer Arbitration Rules, requested injunctive relief requiring Chase to correct his credit report, which he contended was incorrect. On April 2, 2021, with the permission of the Arbitrator, Johnson filed an Amended Claim reciting a failure on the part of Chase to furnish agreed upon statements of account, failure of Chase to provide reasonable technical support regarding electronic statement delivery, failure of Chase to properly settle and close-out his account, and incorrect reporting by Chase that the Johnson account in question was delinquent. Johnson sought Relief including a requirement that Chase cease reporting derogatory information regarding his account, that Chase be ordered not to discriminate in the future against Johnson for pursuing this claim, compensation for late fees charged by Chase, and compensation for Johnson's time and costs in pursuing this arbitration. Chase filed an Answer denying all pertinent allegations. In an email to the AAA and opposing counsel on April 2, 2021, Johnson stated that he was not pursuing a FairCredit Reporting Act (FCRA) claim in this arbitration.

B. The parties engaged in extensive document discovery, and there were several disputes which ultimately gave rise to a Motion for Sanctions brought by Johnson. Contrary to the original estimate of one hearing day, there were four days of evidentiary hearings, along with numerous conference calls to address motions, briefing, and evidentiary issues. The parties submitted literally volumes of evidence and briefs including five notebooks of documents and at least ten legal briefs.

C. During the course of this hotly contested case, Mr. Johnson has very ably represented himself, and Chase has been ably represented by counsel, Mr. Hickey. Two basic issues have emerged from the claims and evidence, and I will briefly discuss each issue and the reasons for my decision regarding each:

1. **First Issue**: On or around Feb. 17, 2017 when Johnson opened his Ink business account with Chase, was there an agreement made by the representative of Chase during a phone call with Johnson that Chase would link the new Ink account with a previously used personal account such that Johnson could receive and pay all statements at one online location, and, if so, did Chase breach this agreement by failing to link the accounts, failing to provide tech support when Johnson made inquiry, and ultimately cause Johnson to fail to fully pay off his Ink account when he canceled it, resulting in adverse credit reports by Chase?

   **Analysis**: As Claimant, Johnson carries the burden of proof on this issue. He has failed to carry this

burden. Understandably, Johnson has had great difficulty during the course of this arbitration in reconstructing many conversations which he had going back over 4 years concerning the opening of his Ink account. Also understandably, his renditions of what he thinks may have happened have changed, even during the course of this arbitration. Early in this arbitration, he acknowledged that he established a separate User ID**[*jsjohns3*]** for this new business account, different from the User ID **[*forepus1*]** for his pre-existing personal account. He admitted at the hearings on June 8 and July 15 that his difficulty in being unable to log-in to the Ink account and seeing his statements for that account may have been the result of his forgetting that he had created a separate User ID for that account and later not being aware that the separate account access existed.

Later in the arbitration, Johnson attempted to explain his failure to access his Ink account statements using the ***jsjohns3*** ID by saying that he thought an agreement had been made over the telephone with a Chase representative back around Feb. 17, 2021 to link the new account with the old one so that all statements could be seen at one website location. However, his testimony regarding this explanation was speculative at best. At the hearing on July 15, he said "I believe it's likely what happened" regarding the Feb. 17, 2021 phone call and later "And what I suspect happened is this …." Further, in a telephone conversation with a Chase representative Mr. Pressley in June, 2018 about the account opening, Johnson said "My best guess is I had a conversation with a rep….." Suspicions and best guesses about an unrecorded telephone conversation from 4 years ago are <u>not</u> sufficient evidence upon which to base a claim for breach of contract and related damages.

Johnson presented no evidence that his Ink account statements were not available from March, 2017 at least through Sept., 2017 on the separate account website access that he had set up and then apparently forgot. Chase presented evidence that such statements were available on the Ink account access website. So, there was no showing of failure on the part of Chase to provide access to statements and promised tech support.

2. **Second Issue:** When a Chase representative contacted Johnson by telephone call on Sept. 6, 2017, was there an agreement made that Johnson, in paying $111.49 to Chase, was paying off the entire balance of his account and then closing the account with a $0 balance, such that no adverse credit report should have been made?

**Analysis:** We have no recording of this call. Johnson has testified reasonably that he was intending to pay off and close out his account and that there would have been no good reason for him to make only a minimum payment when he could have paid off the entire balance for a few hundred dollars more – and that he had more than adequate funds with which to do so. Chase has put on evidence that their standard practice in such account collection calls would be to always communicate the entire account balance as well as the minimum payment needed – this is also reasonable. The full account balance as of Sept. 6, 2017 was $350.01, and the minimum payment was $111.49. Regardless, only the minimum payment $111.49 was ever made by Johnson. Chase closed the account with the agreement of Johnson, but continued to carry the unpaid balance and after several more months, wrote off the account and reported the alleged delinquency to credit bureaus.

My conclusion is that a separate contract transaction occurred between the parties in Sept, 2017 involving the closing of the Ink account and payment thereon. There was a mutual mistake of fact between the parties with Johnson understanding that he was paying the entire balance and Chase understanding that he was paying only the minimum payment. The equitable remedy which I hereby apply is to order that Chase retract and cause to be removed any and all adverse credit references regarding Johnson arising out of the Ink business credit card account within 30 days of payment by Johnson to Chase or its attorney of the $238.52 which Johnson acknowledges he owed as of Sept.6. 2017 and which remains unpaid. No damages or other remedies are awarded.

D. There is no basis for punitive or treble damages to be awarded in this case given my analyses above. With regard to Johnson's Motion for Sanctions, this Motion is denied on the basis that both parties appear to have participated in good faith in locating and producing extensive documents, albeit sometimes later than anticipated. Part of the difficulties in production were the result of the evolving claims made by Claimant as well as the understandable ambiguities in defining exactly what searches needed to be made.

The administrative fees of the American Arbitration Association (AAA) totaling $2,400.00 shall be borne as incurred, and the compensation of the arbitrator totaling $10,000.00 shall be borne as incurred.

This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

***/s/ Charles R. Holton***

Date: March 3, 2022 Charles R. Holton, Arbitrator

# EXHIBIT C

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

Central District, Stanley Mosk Courthouse, Department 57

**22STCP02017** December 7, 2022
**JPMORGAN CHASE BANK, N.A., vs JOSHUA JOHNSON** 8:30 AM

Judge: Honorable Steven J. Kleifield
Judicial Assistant: M. Gonzalez
Courtroom Assistant: S. Jusi

CSR: None
ERM: None
Deputy Sheriff: None

APPEARANCES:

For Petitioner(s): Ashley R. Fickel (not present); Robert Hyatt via LACourtConnect

For Respondent(s): JOSHUA JOHNSON (Pro Per)

**NATURE OF PROCEEDINGS:** Hearing on Motion to Confirm Arbitration Award; Case Management Conference

The matter is called for hearing.

After hearing oral argument, the Court rules as follows:

The Motion re: to Confirm Arbitration Award filed by JPMORGAN CHASE BANK, N.A., on 08/16/2022 is Denied.

The petition to confirm arbitration award is denied without prejudice.

Notice waived.

# EXHIBIT D

Electronically FILED by Superior Court of California, County of Los Angeles on 03/29/2023 02:18 PM David W. Slayton, Executive Officer/Clerk of Court, by S. Bolden,Deputy Clerk


**DYKEMA GOSSETT LLP**
ASHLEY R. FICKEL, State Bar No. 237111
*AFickel@dykema.com*
ROBERT A. HYATT, State Bar No. 166178
*RHyatt@dykema.com*
333 South Grand Avenue, Suite 2100
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

Attorneys for Applicant,
JPMORGAN CHASE BANK, N.A.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

JPMORGAN CHASE BANK, N.A.,

Petitioner,

v.

JOSHUA JOHNSON, an individual,

Respondent.

Case No.: 22STCP02017
Assigned for All Purposes to Hon. Michael Small, Department 57

**NOTICE OF ENTRY OF ORDER RE JOSHUA JOHNSON'S MOTIONS TO COMPEL FURTHER RESPONSES TO FORM INTERROGATORIES, SPECIAL INTERROGATORIES, REQUESTS FOR ADMISSION, AND REQUESTS FOR PRODUCTION; AND NOTICE OF POST-ARBITRATION STATUS CONFERENCE**

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 21, 2023 at 8:30 a.m. in Department 57 of the above-entitled court located at 111 North Hill Street, Los Angeles, CA 90012, the Court heard Respondent Joshua Johnson's motions to compel further responses to form interrogatories, special interrogatories, requests for admission, and requests for production. Robert Hyatt appeared on behalf of Chase. There was no appearance by Joshua Johnson.

**GOOD CAUSE APPEARING**, the Court made the following orders:

1. The Court adopted its tentative ruling regarding Johnson's motions to compel further discovery which states, "Joshua Johnson has filed four motions to compel further responses to various forms of discovery that he has propounded on JP Morgan Chase Bank, N.A. ("JPM Chase") . The motions seeks discovery from JPM Chase in connection with Johnson's contention that he has a right to appeal an American Arbitration Association's ("AAA") award in an arbitration proceeding between the parties. Johnson has filed that appeal with AAA itself. The appeal is pending with AAA. Under these circumstances, there is no present controversy between the parties for this Court to adjudicate. The matter is before the AAA. The Court's tentative decision thus is to deny all four motions without prejudice."

2. A Post-Arbitration Status Conference is set for December 20, 2023, at 8:30 a.m. in the above entitled Court and Department.

Dated: March 29, 2023

**DYKEMA GOSSETT LLP**

By: ______________________________
ASHLEY R. FICKEL
ROBERT HYATT
Attorneys forPetitioner,
JPMorgan Chase Bank, N.A.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

# PROOF OF SERVICE

**JPMORGAN CHASE BANK, N.A. v. JOHNSON**
**22STCP02017**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 333 South Grand Avenue, Suite 2100, Los Angeles, California 90071.

On March 29, 2023, I served true copies of the following document(s) described as **NOTICE OF ENTRY OF ORDER RE JOSHUA JOHNSON'S MOTIONS TO COMPEL FURTHER RESPONSES TO FORM INTERROGATORIES, SPECIAL INTERROGATORIES, REQUESTS FOR ADMISSION, AND REQUESTS FOR PRODUCTION; AND NOTICE OF POST-ARBITRATION STATUS CONFERENCE** on the interested parties in this action as follows:

| | |
|---|---|
| Joshua Johnson<br>2201 5th St. Apt 208<br>Santa Monica, CA 90405<br><br>Tel: (336) 423-2594<br>Email: josh@jj88.org | Respondent in Pro Per |

☒**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Dykema Gossett LLP for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Los Angeles, California.

☒**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address AFeygin@dykema.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 29, 2023, at Los Angeles, California.

Anna Feygin