**RUSSELL LAW, PC**
L. David Russell (Cal. Bar No. 260043)
david@russelllawpc.com
1500 Rosecrans Ave, Suite 500
Manhattan Beach, California 90266
Telephone: (323) 638-7551
Fax: (323) 760-7458

*Attorneys for Plaintiff Joshua Johnson*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSHUA JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>Defendant. | No.: 2:22-cv-06718-AB-MAA<br><br>District Judge: Hon. André Birotte Jr.<br>Magistrate: Judge Maria A. Audero<br><br>**DECLARATION OF L. DAVID RUSSELL IN SUPPORT OF OPPOSITION TO MOTION FOR STAY AND TRIAL CONTINUANCE**<br><br>Action Filed: Sept. 19, 2022<br>Trial Date: March 12, 2024<br>Date: October 20, 2023<br>Time: 10:00 a.m.<br>Courtroom 7B |

# DECLARATION OF L. DAVID RUSSELL

I, L. David Russell, declare as follows:

1. I am a partner at Russell Law, PC, and I am an attorney representing Plaintiff Joshua Johnson in the above-captioned matter. Unless stated otherwise, I have personal knowledge of the matters set forth below and, if called as a witness, I could and would testify competently to them.

2. On August 3, 2022, I submitted a JAMS Arbitration Demand on behalf of Joshua Johnson against JPMorgan Chase Bank, N.A. ("Chase"). The claims at issue were the FCRA/CCRAA claims that form the basis of the lawsuit currently before the Court. A true and correct copy of the demand for arbitration (the "Arbitration Demand") is attached as Exhibit 1.

3. I caused the Arbitration Demand to be served on Chase on August 4, 2022. A true and correct copy of the Proof of Service is attached as Exhibit 2.

4. On August 18, 2022, Chase filed an objection to the demand for arbitration and a request for the arbitration to be stricken/dismissed with JAMS. Thus, even though it was undisputed that an arbitration agreement governed Mr. Johnson's claims, Chase refused to arbitrate. A true and correct copy of Chase's Objection, which omits its voluminous exhibits, is attached as Exhibit 3.

5. On September 2, 2022, I submitted a Response to Chase's objection to JAMS on behalf of Mr. Johnson. A true and correct copy of that response is attached as Exhibit 4.

6. On September 16, 2022, JAMS issued a letter stating that—because of Chase's objection—it was unable to proceed with the arbitration. A true and correct copy of that letter is attached as Exhibit 5.

7. The following court day, Mr. Johnson initiated a lawsuit in this Court to pursue his FCRA/CCRAA claims.

8. Mr. Johnson intends to take two depositions of the defendant: (a) a Chase PMK deposition and (b) a deposition of Chase employee, Carla Wills. I originally asked Chase's counsel for deposition dates for these witnesses on June 13, 2023, and followed up by telephone on multiple occasions. I did not receive a response, so on August 21, 2023, I served deposition notices setting their depositions for September 19 and September 21, 2023. Counsel for Chase represented that the witnesses were unavailable for these dates but did not otherwise object to the deposition notices. I then requested available dates on multiple occasions but did not receive a response. Accordingly, on September 24, 2023, I served amended deposition noticing these depositions for October 11 and October 13, 2023.

9. Attached as Exhibit 6 is a true and correct copy of the Initial Disclosures that Mr. Johnson served on Chase on January 13, 2023.

10. Discovery has advanced significantly in this case. Johnson served Requests for Production, Interrogatories, and Requests for Admission on Chase back in February 2023. Chase's responses to much of that written discovery was deficient, requiring multiple meet-and-confer discussions with opposing counsel and the involvement of Magistrate Judge Audero in three separate IDCs. *See* Dkt. 30, 32, 34. Johnson has also successfully subpoenaed documents from third parties.

11. Chase also served Requests for Production, Interrogatories, and Requests for Admission. Indeed, Chase served 71 interrogatories (nearly triple the 25 allowed interrogatories) and when Johnson objected, convened IDC #4 with Magistrate Judge Audero, where Plaintiff agreed to respond to much of that discovery. *See* Dkt. 36.

12. Additionally, in June the parties held a mediation with the Court-approved mediator, Jeffrey Kravitz. *See* Dkt. 28.

13. If this case is lost, evidence will likely be lost and witness memories will fade. Already, Chase has objected to the deposition of one of its witnesses involved in underlying investigations relevant to this claim, Carla Wills, on the grounds that she has no memory of what occurred three years ago. Witnesses' memories will continue to fade if this case is delayed further.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 29, 2023 in Redondo Beach, California.

/s/ L. David Russell
L. David Russell

# EXHIBIT 1

**RUSSELL LAW, PC**
L. David Russell (Cal. Bar No. 260043)
david@russelllawpc.com
1500 Rosecrans Ave, Suite 500
Manhattan Beach, California 90266
Telephone: (323) 638-7551
Fax: (323) 760-7458

*Attorneys for Claimant Joshua Johnson*

# JAMS ARBITRATION

JOSHUA JOHNSON, an individual,

Claimant,

v.

JPMorgan Chase Bank, N.A., and DOES 1-10, inclusive;

Respondents.

**REF NO.:**

**ARBITRATION DEMAND FOR:**

1. **FCRA Private Remedy for Furnisher Reinvestigation Obligations in Response to a Consumer Reporting Agency Request [15 U.S.C. §§ 1681n, 1681o, 1681s-2(b)]**
2. **CCRAA Private Remedy for Transmitting Incorrect and Inaccurate Information [Cal. Civil Code § 1785.25(a))]**

Claimant Joshua Johnson alleges as follows:

## THE PARTIES

1. Claimant Joshua Johnson is an individual who currently resides in Los Angeles County, California.

2. Respondent JPMorgan Chase Bank N.A. ("Chase") is a national banking association, with its main office located in Columbus, Ohio.

3. Claimant does not know the true names and capacities of Respondents sued in this Complaint as Doe 1 through Doe 10, inclusive, and therefore sue these Respondents by fictitious names pursuant to Section 474 of the California Code of Civil Procedure. Claimant will amend this Complaint to allege the true names and capacities of Doe 1 through Doe 10, inclusive, when ascertained. Claimant is informed and believes, and on that basis alleges, that each of the Respondents named herein as Doe 1 through Doe 10, inclusive, is responsible in some manner for the occurrence, injury and other damages alleged in this Arbitration Demand. Collectively, Chase and the Doe Respondents are the "Respondents."

4. Claimant is informed and believe, and on that basis alleges, that each Respondent was in some manner responsible for the acts and damages alleged herein and/or that each Respondent participated in the acts alleged herein and that, in participating in such acts, each Respondent was the agent and coconspirator of each other Respondent, and was acting in the course and scope of such agency and conspiracy.

## FIRST CLAIM FOR RELIEF
**FCRA Private Remedy for Furnisher Reinvestigation Obligations in Response to a Consumer Reporting Agency Request**
**[15 U.S.C. §§ 1681n, 1681o, 1681s-2(b)]**

5. On or around August 24, 2020, Claimant filed a dispute with the consumer reporting agency, Equifax, contesting the completeness and accuracy of information related to a credit card account Claimant had with Chase. *See* 15 U.S.C. 1681i(a)(1). Specifically, Claimant disputed Chase's reporting that

Claimant's Chase Ink credit card account was delinquent and was a charge-off, without reporting that there was a bona fide dispute regarding this claim and that Claimant had meritorious defenses, including that (a) in September 2017, Claimant contacted Chase to pay off the entire balance of his account and close the account with a $0 balance and (b) Claimant's payments had never come due because Chase never provided him a statement with the due date. Indeed, as Claimant repeatedly communicated to Chase's representatives and technical support professionals, he was unable to access his account online or view billing statements, so he was not aware of, and once he found out Chase's false reporting he was unable to verify, Chase's claims that there was a balance on the account.

6. At the very least, by omitting the facts (a) that based on Chase's conduct and representations to him, Claimant believed that he had paid off his entire balance before closing his account, (b) that the amount purportedly owed had never become due because Chase never provided a statement to Claimant, and (c) that Claimant was unable to verify whether there was actually a balance on the account because he could not access the relevant billing statements, Chase created the materially misleading impression that Claimant was a poor credit risk—a "deadbeat" who shirked his financial obligations and refused to pay his bills.

7. Shortly thereafter, on or about August 25, 2020, Equifax provided notification of the dispute to Chase, which had provided the underlying information Claimant disputed. *See* 15 U.S.C. 1681i(a)(2).

8. Upon receiving the notice of dispute, Chase had approximately thirty days to conduct a reasonable investigation of the disputed information, review all relevant information provided by Equifax, and report the results of the investigation to Equifax. *See* 15 U.S.C. § 1681s-2(b)(1), (2). Because the original information was incomplete, inaccurate, and incapable of verification, as alleged above, Chase was required to report the results to Equifax and all other consumer

reporting agencies to which it supplied such information and correct the inaccurate or incomplete information. *See id.*

9. Chase, however, failed to conduct a reasonable investigation or review all relevant information. Besides the information provided by Equifax, Chase had additional information in its possession, including internal emails discussing Claimant's claims, notes, historical call recordings, a parallel complaint Claimant filed with the Consumer Financial Protection Bureau ("CFPB"), and Chase's investigation into the CFPB complaint. A reasonable investigation into the dispute required Chase to review this relevant information relating to dispute. Upon information and belief, Chase failed to review any of this relevant information, despite the fact that it was in its possession. It is clear that Chase's investigation was merely perfunctory because Chase completed it in only a couple of weeks, instead of using the full investigation period in which it was statutorily-entitled to conduct the investigation. Indeed, Chase completed this investigation while its CFPB investigation was still being conducted, which itself demonstrates that the investigation required by FCRA ended prematurely.

10. At the very least, this failure to conduct a reasonable investigation and review all relevant information constitutes a negligent violation of complying with FCRA. *See* 15 U.S.C. § 1681o. However, because Chase had all the relevant information and disregarded it and knew of the potential harm to Claimant by taking such actions, Chase acted with a reckless disregard, which constitutes willful conduct. *See* 15 U.S.C. § 1681n. Claimant believes that discovery will uncover additional evidence that Chase willfully refused to comply with these provisions of FCRA.

11. After it concluded its investigation on or about September 8, 2020, Chase updated the information reported to Equifax. While Chase previously reported that "Unpaid balance reported as a loss (charge-off)," its updated report stated that "Account was paid in full, ***was a charge-off***." (emphasis added). Again,

this information was not accurate or verified. And this report was materially misleading, because it created the impression that Claimant intentionally failed to pay his account, rather than explaining the surrounding circumstances as alleged above. Chase also failed to fix previous reports that there was an overdue or charged-off account. All these misleading entries should have been deleted and permanently blocked as required by FCRA.

12. At the very least, this failure to update accurately the disputed information constitutes a negligent violation of complying with FCRA. *See* 15 U.S.C. § 1681o. Because these facts also demonstrate that Chase acted with a reckless disregard, it also constitutes a willful violation of FCRA. *See* 15 U.S.C. § 1681n. Claimant believes that discovery will uncover additional evidence that Chase willfully refused to comply with these provisions of FCRA.

13. Almost two years later, in approximately March 2022, Chase removed all the challenged credit references regarding Claimant. Until then, however, Claimant was damaged by Chase's actions in numerous ways. First, Claimant suffered lost credit reputation, as Chase's misreporting caused his credit score to drop approximately 200 points. Claimant's credit score and report were passed to at least forty (40) third parties, including a landlord who inquired about it and a mortgage lender. Second, because of the Chase credit report, Claimant's home and automobile insurance rates increased. Third, because of the Chase credit report, Claimant was deterred from purchasing properties because he was unable to secure a favorable mortgage rate. Claimant had investigated and intended to purchase properties in the second half of 2020, but did not do so when he learned that he was only approved for higher mortgage rates reserved for credit risks. But for the misleading and false credit report, Claimant would have purchased these properties, which have appreciated in value by approximately 50% since then. Because Chase deterred him from the accessing the credit markets, Claimant also lost the enjoyment of the properties he planned to purchase, rental income, and the

opportunity to access historically low interest rates. Fourth, Claimant also lost wages and spent valuable time pursuing this dispute, for which he is entitled to compensation. Finally, Claimant suffered from severe emotional distress due to the damage to creditworthiness, reputation, and his sense of well-being.

## SECOND CLAIM FOR RELIEF
## CCRAA Private Remedy for Transmitting Incorrect or Inaccurate Information
## [Cal. Civil Code § 1785.25(a))]

14. Claimant repeats, realleges, and incorporates herein by this reference all prior allegations.

15. As described above, until approximately March 2022, Chase furnished information regarding Claimant's Chase Ink account which it knew or should have known was inaccurate and incomplete. *See* Cal. Civil Code § 1785.25(a). For example, Chase's reporting that Claimant's Chase Ink credit card account was delinquent and was a charge-off, without failing to mention that there was a bona fide dispute regarding this claim and that Claimant had meritorious defenses, including that (a) in September 2017, Claimant contacted Chase to pay off the entire balance of his account and close the account with a $0 balance and (b) Claimant's payments had never come due because Chase never provided him a statement with the due date. Indeed, as Claimant repeatedly communicated to Chase's representatives and technical support professionals, he was unable to access his account online or view billing statements, so he did not know, and once he found out Chase's false reporting he was unable to verify, Chase's claims that there was a balance on the account.

16. At the very least, by omitting the facts (a) that based on Chase's conduct and representations to him, Claimant believed that he had paid off his entire balance before closing his account, (b) that the amount purportedly owed had never become due because Chase never provided a statement to Claimant, and

(c) that Claimant was unable to verify whether there was actually a balance on the account because he could not access the relevant billing statements, Chase created the materially misleading impression that Claimant was a poor credit risk—a "deadbeat" who shirked his financial obligations and refused to pay his bills.

17. Claimant was damaged by Chase's actions in a number of ways. First, Claimant suffered lost credit reputation, as Chase's misreporting caused his credit score to drop approximately 200 points. Claimant's credit score and report were passed to at least forty (40) third parties, including a landlord who inquired about it and a mortgage lender. Second, because of the Chase credit report, Claimant's home and automobile insurance rates increased. Third, because of the Chase credit report, Claimant was deterred from purchasing properties because he was unable to secure a favorable mortgage rate. Claimant had investigated and intended to purchase properties in the second half of 2020, but did not do so when he learned that he was only approved for higher mortgage rates reserved for credit risks. But for the misleading and false credit report, Claimant would have purchased these properties, which have appreciated in value by approximately 50% since then. Because Chase deterred him from the accessing the credit markets, Claimant also lost the enjoyment of the properties he planned to purchase, rental income, and the opportunity to access historically low interest rates. Fourth, Claimant also lost wages and spent valuable time pursuing this dispute, for which he is entitled to compensation. Finally, Claimant suffered from severe emotional distress due to the damage to creditworthiness, reputation, and his sense of well-being.

## **REQUEST FOR RELIEF**

Wherefore, Claimant requests the following relief:

A. Compensatory damages in an amount to be proven at trial;

B. Statutory damages;

C. Punitive damages;

D. Attorneys fees and costs pursuant to 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2) and California Civil Code § 1788.31; and

E. Such other relief as is just and proper.

DATED: August 3, 2022

Respectfully submitted,

*/s/ L. David Russell*

**RUSSELL LAW, PC**
L. David Russell (Cal. Bar No. 260043)
david@russelllawpc.com
1500 Rosecrans Ave, Suite 500
Manhattan Beach, California 90266
Telephone: (323) 638-7551
Fax: (323) 760-7458

*Attorneys for Claimant Joshua Johnson*

Gmail

Joshua Johnson <josh@jj88.org>

# Important information regarding changes to your Chase account

**Chase** <Chase@e.chase.com> Wed, Jun 5, 2019 at 10:18 AM
Reply-To: "Chase@e.chase.com" <Chase-HP2v40000016b28a5c42a9cbc84f4bbe5be50089@e.chase.com>
To: josh@jj88.org

**Email Security Information:**

**Email intended for: Joshua Johnson**

**Chase Freedom® credit card ending in 5301**

If you have concerns about the authenticity of this message, please visit chase.com/CustomerService for options on how to contact us.

## Important Changes to Your Account Terms

**Notice:** Your Cardmember Agreement and associated Rewards Program Agreement (if any) were assigned to JPMorgan Chase Bank, N.A., as successor by merger to Chase Bank USA, N.A., on **05/18/2019**. Furthermore, beginning **05/18/2019** all references to Chase Bank USA, N.A. in your Guide to Benefits and any additional account agreements and documents shall be read as JPMorgan Chase Bank, N.A.

**Summary of changes to your account terms effective 8/8/2019.**

- The description of the Minimum Payment calculation found under your Cardmember Agreement Rates and Fees Table is changing to **a minimum of $35** and to include unique payment obligations in connection with Flexible Financing Offers.
- We are introducing two new features, My Chase Loan℠ and My Chase Plan℠, under which Flexible Financing Offers may be available to you from time to time, subject to the new rates and fees and Cardmember Agreement terms described below.
- A binding arbitration provision is added and the Military Lending Act Notice is revised accordingly. **YOU CAN REJECT THE BINDING ARBITRATION AGREEMENT. YOU MUST MAIL YOUR REJECTION TO US BY 8/7/2019. PLEASE SEE THE END OF THIS NOTICE FOR INSTRUCTIONS**

**Details on the changes to your account, effective 8/8/2019.**

**1.** Your Cardmember Agreement Rates and Fees Table is amended as follows:

**Revised Terms as of 8/8/2019**

**INTEREST RATES AND INTEREST CHARGES**

| | |
|---|---|
| ***My Chase Loan* Annual Percentage Rate (APR)** | **17.24%.** This APR will vary with the market based on the Prime Rate.[a] |

| | |
|---|---|
| | Promotional offers with fixed APRs and varying durations may be available from time to time on some accounts. |
| **Paying interest** | Your due date will be a minimum of 21 days after the close of each billing cycle. We will not charge you interest on new purchases if you pay your entire balance or Interest Saving Balance by the due date each month. We will begin charging interest on balance transfers and cash advances on the transaction date. |

**FEES**

| | |
|---|---|
| ***My Chase Plan* Fee (fixed finance charge)** | **1.72%** of the amount of each purchase transaction selected to create a *My Chase Plan*. The *My Chase Plan* Fee will be determined at the time each *My Chase Plan* is created and will remain the same until the *My Chase Plan* balance is paid in full.[c] |

**ADDITIONAL INFORMATION ABOUT THESE CHANGES**

[a] ***My Chase Loan* APR:** We add **11.74%** to the Prime Rate to determine the *My Chase Loan* APR. Variable APRs are based on the highest U.S. prime rate published in the Money Rates section of *The Wall Street Journal* two business days (not weekends or federal holidays) before your statement closing date. The U.S. prime rate is currently **5.50%** as of **5/8/2019**. The daily periodic rate is **0.04723%**.

[c] ***My Chase Plan Fee***. The *My Chase Plan* Fee is calculated at the time each plan is created and is based on the amount of each purchase transaction selected to create the plan, the number of billing periods you choose to pay the balance in full, and other factors. The monthly and aggregate dollar amount of your *My Chase Plan* Fee will be disclosed during the activation of each *My Chase Plan*.

**2.** The description of Minimum Payment found under your Cardmember Agreement Rates and Fees Table is changed to read as follows:

**Minimum Payment:** We will calculate the minimum payment as:

1) Any past-due amounts; **PLUS**
2) Any special payment obligations in connection with Flexible Financing Offers which require repayment of the balance over a pre-selected number of billing periods; **PLUS**
3) The larger of:
   a) $35 (or total amount you owe if less than $35); or
   b) The sum of:
      i. 1% of the new balance (excluding any Flexible Financing Offer balances which require special payment obligations to ensure repayment of the balance over a pre-selected number of billing periods), **PLUS**
      ii. any periodic interest charges and late fees we have billed you on the statement for which your minimum payment is calculated.

## 3. IMPORTANT DEFINITIONS

The *Important Definitions* section of your Cardmember Agreement is amended to include two new terms, *Interest Saving Balance* and *Flexible Financing Offers*, as follows:

| TERM | WHAT IT MEANS |
|---|---|
| **Interest Saving Balance** | When you take advantage of Flexible Financing Offers, we will not charge you interest on new purchases if you pay your entire Interest Saving Balance by the due date each month.<br><br>If your Interest Saving Balance for any billing cycle is less than your minimum payment due, your Interest Saving Balance amount will reflect your minimum payment due to avoid a late fee. |
| **Flexible Financing Offers** | When you take advantage of Flexible Financing Offers, like those available with *My Chase Loan* and *My Chase Plan*, you can pay those balances over time based on their offer terms and still avoid additional interest charges on new purchases. |

## 4. USING YOUR CARD

We are adding *My Chase Loan* and *My Chase Plan* to your account. These are two new features under which Flexible Financing Offers may be available to you from time to time. Therefore, the *Using Your Card* section of your Cardmember Agreement is amended to include two new transaction types, *My Chase Loan* and *My Chase Plan* as follows:

| TRANSACTIONS | WHAT IT MEANS TO YOU | OUR RESPONSIBILITY |
|---|---|---|
| My Loan | If eligible, you may use the *My Chase Loan* feature to obtain cash as an electronic deposit into an eligible bank account held by a financial institution located in the United States by accepting a *My Chase Loan* offer. Each offer will include a *My Chase Loan* APR and the number of billing periods it will take to pay the *My Chase Loan* balance in full by making regular payments each monthly billing period.<br><br>Your ability to create a *My Chase Loan* balance is based on a variety of factors, such as your creditworthiness, your credit limit, and your past account behavior. You will not be able to create a *My Chase Loan* balance if you enroll in a debt management program or if your account is closed or in default.<br><br>*My Chase Loan* transactions are not Cash Advances or Balance | At our discretion, we may make *My Chase Loan* available to you; we may decline a *My Chase Loan* transaction for any reason. |

| | | |
|---|---|---|
| | Transfers. *My Chase Loan* provides Flexible Financing Offers. Therefore, when you have a *My Chase Loan* balance on your account, we will not charge you interest on new purchases if you pay your entire Interest Saving Balance by the due date each month. | |
| **My Plan** | If eligible, you may use the *My Chase Plan* feature through Chase.com or the Chase Mobile App to create, from recent eligible purchase transactions, a *My Chase Plan* balance with set repayment terms, subject to the *My Chase Plan* Fee. From the available offers, you select how many billing periods it will take to pay the *My Chase Plan* balance in full by making regular payments each monthly billing period. For each billing period during which there is a balance in the *My Chase Plan*, you will be charged the *My Chase Plan* Fee, rather than interest under the Purchase APR.<br><br>An eligible purchase transaction for *My Chase Plan* is a purchase of at least a specified dollar amount but may not include certain purchase transactions, such as cash-like transactions and any fee owed to us, including Annual Membership Fees. Cash advance, balance transfer and *My Chase Loan* transactions are not eligible for *My Chase Plan*.<br><br>Your ability to create a *My Chase Plan* balance is based on a variety of factors, such as your creditworthiness, your credit limit, and your account behavior. You will not be able to create a *My Chase Plan* balance if you enroll in a debt management program or if your account is closed or in default.<br><br>When you have a *My Chase Plan* balance on your account, we will not charge you interest on new purchases if you pay your entire Interest Saving Balance by the due date each month. | At our discretion, we may make *My Chase Plan* available to you; we may decline a *My Chase Plan* transaction for any reason. |

## 5. PAYING US BACK

- The second bullet under "What it Means to You" for the *Interest-Free Period on Purchases* within the *Paying Us Back* section of your Cardmember Agreement is amended to include a reference to Interest Saving Balance, as follows:
  - Your account is in an interest-free period when you pay your New Balance or Interest Saving Balance, as shown on your statement, every

month by the due date and time. During this period, you will not pay interest on new purchases.

- The "What it Means to You" column for *Payment Allocation* under the *Paying Us Back* section of your Cardmember Agreement is amended in its entirety to read as follows:
  - When you make a payment, generally, we first apply your minimum payment to the monthly obligation for any Flexible Financing Offer balances with special payment obligations which require repayment of the balance over a pre-selected number of billing periods, and then to the balance on your monthly statement with the lowest APR.
  - Any payment above your minimum payment would generally then be applied to the balance on your monthly statement with the highest APR first.
  - If you do not pay your New Balance or Interest Saving Balance, as shown on your statement, in full each month, you may not be able to avoid interest charges on new purchases.

## 6. ABOUT OUR RELATIONSHIP

- The *About Our Relationship* section of your Cardmember Agreement is amended to include a new section titled Binding Arbitration as follows:

| IMPORTANT INFORMATION | WHAT IT MEANS |
|---|---|
| **Binding Arbitration** | Unless you timely reject the agreement to arbitrate, disputes with us may be resolved by binding arbitration. With arbitration, you cannot go to court, have a jury trial or initiate or participate in a class action for your dispute(s) with us. In arbitration, disputes are resolved by an arbitrator, not a judge or jury, and procedures are simpler and more limited than rules applicable in court.<br><br>Please see the *Arbitration Agreement* section for more details, including instructions for how to reject the agreement to arbitrate. |

- The *Military Lending Act* Notice within the *About Our Relationship* section of your Cardmember Agreement is amended by replacing the second to last sentence with the following:

  If you are covered by the Military Lending Act, (i) then you are not bound by the Arbitration Agreement below, and (ii) notwithstanding anything to the contrary in this agreement, to the extent required by the Military Lending Act, nothing in this agreement will be deemed a waiver of the right to legal recourse under any otherwise applicable provision of state or federal law.

## 7. INTEREST CHARGES

With the introduction of *My Chase Loan*, the description of when we add transactions and fees to your daily balance within the *Interest Charges* section of your Cardmember Agreement is amended as follows:

"We add transactions and fees to your daily balance no earlier than:

- For new purchases, balance transfers, cash advances or *My Chase Loans*

- the date of the transaction.

- For new cash advance checks or balance transfer checks - the date the payee deposits the check.
- Fees - either on the date of a related transaction, the date they are posted to your account, or the last day of the billing cycle, whichever we may choose."

**8. ARBITRATION AGREEMENT**

A new section titled *Arbitration Agreement* is hereby added to the end of the agreement as follows (following the section titled *Your Billing Rights*):

**ARBITRATION AGREEMENT**
**PLEASE REVIEW-IMPORTANT-AFFECTS YOUR LEGAL RIGHTS**

This arbitration agreement provides that all disputes between you and Chase must be resolved by BINDING ARBITRATION whenever you or we choose to submit or refer a dispute to arbitration. By accepting this arbitration agreement you GIVE UP YOUR RIGHT TO GO TO COURT (except for matters that may be taken to a small claims court). Arbitration will proceed on an INDIVIDUAL BASIS, so class actions and similar proceedings will NOT be available to you.

YOU HAVE THE RIGHT TO REJECT THIS AGREEMENT TO ARBITRATION, BUT IF YOU WISH TO REJECT IT, YOU MUST DO SO PROMPTLY. If you do not reject this agreement to arbitration by **8/7/2019** in the manner set forth below, then:

* In arbitration, your rights will be determined by a NEUTRAL ARBITRATOR and NOT A JUDGE OR JURY.

* The procedures in arbitration are simpler and more limited than rules applicable in court.

* Arbitrator decisions are subject to VERY LIMITED REVIEW BY A COURT.

If you do not reject this agreement by **8/7/2019**, you or we may elect to resolve any Claim by arbitration.

For purposes of this agreement to arbitrate, "you" includes any co-applicant or authorized user on your account, or anyone else connected with you or claiming through you; and "we" or "us" includes JPMorgan Chase Bank, N.A. and Chase Bank USA, N.A., all of their parents, subsidiaries, affiliates, successors, predecessors, employees, and related persons or entities and all third parties who are regarded as agents or representatives of us in connection with the account, or the subject matter of the claim or dispute at issue.

All claims or disputes between you and us about or relating in any way to your account, any prior account, your cardmember agreement with us (including any future amendments), any prior cardmember agreement, or our relationship are referred to as "Claims" for purposes of this agreement to arbitrate. Claims include, for example, claims or disputes arising from or relating in any way to transactions involving your account; any interest, charges, or fees assessed on your account; any service(s) or programs related to your account; any communications related to your account; and any collection or credit reporting of your account. Claims also include claims or disputes arising from or relating in any way to advertising and

solicitations, or the application for, approval, or establishment of your account. Claims are subject to arbitration regardless of whether they are based on contract, tort, statute, regulation, common law or equity, or whether they seek legal or equitable remedies. All Claims are subject to arbitration whether they arose in the past, may currently exist, or may arise in the future. Arbitration will apply even if your account is closed, sold, or assigned; you pay us in full any outstanding debt you owe; or you file for bankruptcy. In the event that your account is sold and/or assigned, we retain our right to elect arbitration of Claims by you and you retain your right to elect arbitration of Claims by us.

* If you are covered by the Military Lending Act, then you are not bound by this arbitration agreement, and to the extent required by the Military Lending Act, nothing in this agreement will be deemed a waiver of the right to legal recourse under any otherwise applicable provision of state or federal law.

The only other exception to the arbitration requirement is that you have the right to file and pursue a Claim in a small claims court instead of arbitration if the Claim is in that court's jurisdiction and proceeds on an individual basis.

If you initiate a Claim in arbitration, no changes to the terms of this agreement to arbitrate that are made after we receive your Claim will apply to that Claim.

This agreement to arbitrate is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*.

***Can I (the customer) reject this agreement to arbitrate?***

Yes. You have the right to reject this agreement to arbitrate if you notify us no later than **8/7/2019**. You must do so in writing by stating that you reject this agreement to arbitrate and include your name, account number, address and personal signature. Your notice must be mailed to us at P.O. Box 15298, Wilmington, DE 19850-5298. Rejection notices sent to any other address, or sent by electronic mail or communicated orally, will not be accepted or effective.

***What about class actions or representative actions?***

Individuals sometimes seek to bring lawsuits on behalf of other, similarly situated individuals. This is often called a class action. Class actions, other similar representative procedures, and consolidation of Claims (except for claimants on the same account) are *not* available under this agreement to arbitrate. Claims in arbitration will proceed only on an individual basis. Additionally, you may not join your claims with other persons on other accounts in the arbitration; each person must arbitrate his or her own claims separately.

UNLESS YOU REJECT THIS AGREEMENT TO ARBITRATE, YOU AND WE ARE WAIVING THE RIGHT TO ASSERT OR PARTICIPATE IN A CLASS ACTION, OR ANY REPRESENTATIVE OR CONSOLIDATED PROCEEDING IN COURT OR IN ARBITRATION.

The arbitrator shall have no authority to entertain any Claim as a class action or on any other similar representative basis, nor shall the arbitrator

have any authority to consolidate Claims brought by separate claimants (except for claimants on the same account). To be clear, this means that the arbitrator also shall have no authority to make any award for the benefit of, or against, any person other than the individual who is the named party. If these terms prohibiting class, representative, or consolidation procedures are held to be legally unenforceable for any reason with respect to a Claim, then the Claim must be handled through litigation in court instead of by arbitration.

***How does arbitration work?***

Arbitration is different from a lawsuit in state or federal court. Arbitration is conducted by private organizations that specialize in alternative dispute resolution, and is conducted before a neutral arbitrator instead of a judge or jury. Arbitration procedures are generally simpler and more informal than court procedures. For example, discovery is more limited in arbitration than in court. Also, arbitrator decisions are subject to only limited review by courts. As discussed above, certain rights that you may have in court are not available in arbitration. At the same time, in arbitration you are entitled to recover attorneys' fees from us to the same extent as you would be in court.

Under this agreement to arbitrate, the party filing a Claim must select either Judicial Arbitration and Mediation Services ("JAMS") or the American Arbitration Association ("AAA") as the arbitration administrator. You can learn more about these organizations online, at the addresses provided below. Each of these organizations will apply its code of procedures in effect at the time the arbitration claim is filed. If there is a conflict between that code of procedures and this arbitration provision and/or any sections of this agreement, this arbitration provision and/or this agreement will control. In the event that JAMS or the AAA is unable or unwilling to handle the Claim for any reason, then the matter shall be arbitrated instead by a neutral arbitrator selected by agreement of the parties (or, if the parties cannot agree, selected by a court in accordance with the Federal Arbitration Act).

A single arbitrator designated by the arbitration administrator will decide the Claim under applicable law. The arbitrator is bound by the terms of this agreement to arbitrate. All issues are for the arbitrator to decide, except that issues relating to the scope, enforceability, interpretation, formation, and validity of this arbitration agreement are for a court to decide. The arbitrator will honor all claims of privilege recognized by law. Subject to the prohibition on class, representative, and consolidation procedures set forth above, the arbitrator will have the power to award to a party any damages or other relief provided for under applicable law. That is, a party will be entitled to recover in arbitration any damages or other relief that it could recover if it prevailed in a court proceeding as an individual. No arbitration award or decision will have any preclusive effect on issues or claims in any subsequent proceedings beyond the Claims at issue. The arbitrator's authority is limited to claims between you and us, and the arbitrator can award damages or relief only to you, but not to or on behalf of anyone else.

Although under some laws we may have a right to an award of attorneys' fees and expenses if we prevail, we agree that we will not seek such an award.

If your Claim is for $10,000 or less, you may choose whether the arbitration

will be conducted solely on the basis of documents, through a telephonic hearing, or in an in-person hearing. Any in-person hearing will take place in the federal judicial district that includes your address at the time the Claim is filed, unless the parties agree to a different place.

***Is the arbitrator's decision final? Is there an appeal process?***

The arbitrator's decision will be final and binding on the parties. An arbitrator's award shall consist of a written statement setting forth the disposition of each Claim. At the request of any party, the arbitrator shall also set forth a written explanation of the essential findings and conclusions on which the award is based.

A party can file a written appeal to the arbitration administrator within 30 days after an award is issued. The appeal will proceed before a panel of three neutral arbitrators designated by the same arbitration administrator. That panel will consider all legal and factual issues anew, and make all decisions and awards by majority vote based on the documents and arbitration record without a hearing. Any review by a court shall be governed by the Federal Arbitration Act. Any final arbitration award will be binding on the named parties and enforceable by any court having jurisdiction.

***Who will pay for costs?***

We will pay any costs that are required to be paid by us under the arbitration administrator's rules of procedure. Even if not otherwise required, we will reimburse you up to $500 for any initial arbitration filing fees you have paid. We will also pay any fees of the arbitrator and arbitration administrator for the first two days of any hearing. If you win the arbitration, we will reimburse you for any fees you paid to the arbitration organization and/or arbitrator. All other fees will be allocated according to the arbitration administrator's rules and applicable law. If you consider that you are unable to afford any fees that would be yours to pay to the arbitration administrator, you may request that we pay or reimburse them, and we will consider your request in good faith.

You may represent yourself in arbitration, or you may be represented by a lawyer. Except as described above, you will be responsible for your own attorneys' fees and costs.

***How do I (the customer) file an arbitration claim?***

Rules and forms may be obtained from, and Claims may be filed with, JAMS at (800) 352-5267 or jamsadr.com; or the AAA at (877) 495-4185 or www.adr.org. Both of these administrators have particular rules for arbitrations initiated by a consumer.

**ABOUT THIS MESSAGE:**
This service message gives you updates and information about your Chase relationship.

This email was sent from an unmonitored mailbox. Go to chase.com/CustomerService for options on how to contact us.

Your privacy is important to us. See our online Security Center to learn how to protect your information.

Chase Privacy Operations P.O. Box 659752, San Antonio, TX 78265-9752.

©2019 JPMorgan Chase & Co.

# EXHIBIT 2

| | | |
|---|---|---|
| *Attorney or Party without Attorney:*<br>L. David Russell (SBN 260043)<br>RUSSELL LAW, PC<br>1500 Rosecrans Ave. Suite 500<br>Manhattan Beach, CA 90266<br>*Telephone No:* 323-638-7551<br>*Attorney For:* Claimant Joshua Johnson | *Ref. No. or File No.:* | ***For Court Use Only*** |
| *Insert name of Court, and Judicial District and Branch Court:*<br>JAMS ARBITRATION | | |
| *Plaintiff:* JOSHUA JOHNSON, an individual<br>*Defendant:* JPMorgan Chase Bank, N.A. | | |

| | | | | |
|---|---|---|---|---|
| **PROOF OF SERVICE** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>5210000148 |

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Demand For Arbitration; Arbitration Demand

3. *a. Party served:* JPMorgan Chase Bank, N.A.
   *b. Person served:* Sarai Marin, Intake Specialist, CT Corporation Inc., Registered Agent

4. *Address where the party was served:* 330 N Brand Blvd Suite 700, Glendale, CA 91203

5. *I served the party:*
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Thu, Aug 04 2022 (2) at: 12:40 PM

Recoverable cost Per CCP 1033.5(a)(4)(B)

6. ***Person Who Served Papers:***
   a. Douglas Forrest (5141, Los Angeles)
   **b. FIRST LEGAL**
   1517 W. Beverly Blvd.
   LOS ANGELES, CA 90026
   c. (213) 250-1111

   **d.** ***The Fee*** *for Service was:* $77.31
   **e.** I am: A Registered California Process Server

7. ***I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.***

08/04/2022
*(Date)*

*(Signature)*

# EXHIBIT 3

JAMS ARBITRATION

Joshua Johnson,

Claimant,

JAMS Case No.: 5210000148

vs.

JPMorgan Chase Bank, N.A.,

Respondent.

---

L. David Russell
**Russell Law, PC**
*Attorneys for Joshua Johnson*
1500 Rosecrans Ave., Ste. 500
Manhattan Beach, CA 90266
(323) 760-7458
david@russelllawpc.com

Ashley R. Fickel
**DYKEMA GOSSETT LLC**
*Attorneys for JPMorgan Chase Bank, N.A.*
333 S. Grand Ave., Ste. 2100
Los Angeles, CA 90071
213-457-1800
afickel@dykema.com

---

**JPMORGAN CHASE BANK, N.A.'S OBJECTION TO DEMAND FOR ARBITRATION AND REQUEST FOR ARBITRATION TO BE STRICKEN / DISMISSED**

JPMorgan Chase Bank, N.A. ("Chase") objects to Claimant Joshua Johnson's claim and, pursuant to JAMS Rule 18, requests that JAMS decline administration. There is no agreement between the parties for arbitration. Claimant Johnson's claim should be dismissed and stricken. In support of this objection and request, Chase states as follows:

1. Claimant commenced an arbitration with the American Arbitration Association ("AAA") Case No 01-20-0015-1734 on October 7, 2020. The claim concerned Claimant's Chase Ink business credit card account, and alleged damages suffered by Claimant from Chase's purportedly false credit reporting.

2. Arbitrator Charles Holton was appointed on January 4, 2021.

3. During the course of those proceedings Claimant Johnson objected to arbitration of AAA Case No. 01-20-0015-1734 pursuant to and governed by the terms of the arbitration clause Claimant submitted to his October 7, 2020 claim.

4. On July 15, 2021, Claimant Johnson proffered an arbitration agreement from the Chase Online Services Agreement, which agreement differed from the one attached to his October 7, 2020 AAA claim. Arbitrator Holton heard argument from Claimant Johnson and Chase and thereafter determined that the arbitration agreement from the Online Services Agreement (the "OSA") applied to the arbitration of AAA Case No. 01-20-0015-1734.

5. Arbitrator Holton rendered his Final Award in AAA Arbitration Case No. 01-20-0015-1734 on March 3, 2022. A true and correct copy of the March 3, 2022 Final Award is attached as Exhibit A. Arbitrator Holton stated in the Award, "There was a mutual mistake of fact between the parties with Johnson understanding that he was paying the entire balance and Chase understanding that he was paying only the minimum payment.. The equitable remedy which I hereby apply is to order that Chase retract and cause to be removed any and all adverse credit references regarding Johnson arising out of the Ink business credit card account within 30 days of payment by Johnson to Chase or its attorney of the $238.52 **which Johnson acknowledges he owed as of Sept. 6, 2017 and which remains unpaid**. No damages or other remedies are awarded." (emphasis added).

6. The **OSA** contains no appellate rights. A true and correct copy of the OSA is attached as Exhibit B.

7. On or about March 22, 2022, Claimant Johnson commenced a matter with AAA, which purports to be an appeal of Arbitrator Holton's final award in AAA Case No. 01-20-0015-1734:

AAA Case Number: **02-20-0015-1734 (APPEAL)**
Joshua Johnson
-vs-
JPMorgan Chase Bank N.A.

Claimant Johnson contemporaneously filed with the AAA two irrelevant and otherwise inapplicable arbitration agreements containing appellate rights, including the arbitration agreement from his Chase Freedom credit card ending in 5301, the same agreement as put forth in the instant JAMS matter.

8. Having specifically advocated against the application of the arbitration agreement attached to his original AAA claim on October 7, 2020 [Case No. 01-20-0015-1734] and having argued instead for the application of the OSA, Claimant Johnson may not rely on any appellate rights contained in that rejected arbitration agreement to support his purported AAA appeal.

9. The dispute in AAA Arbitration Case No. 01-20-0015-1734 did not arise from Johnson's use of his Chase Freedom credit card ending in 5301.

10. On May 27, 2022, Chase filed a Petition to Confirm March 3, 2022 Arbitration Award and Complaint for Declaratory Relief (the "Petition") in the Los Angeles County Superior Court, case no. 22STCP02017. A true and correct copy of the petition is attached as Exhibit C.

11. Through the Petition, Chase seeks to have the Court confirm the March 3, 2022 Award, and for a declaration that Johnson does not have any appellate rights regarding the Award.

12. After answering the Petition, Claimant now brings the instant Demand for Arbitration with JAMS on an identical nexus of facts that were considered in the AAA arbitration, and the purported AAA Appeal.

13. Claimant proffers the arbitration agreement associated with his Chase Freedom credit card account ending in 5301 in support of his demand for arbitration. However, the claim

is solely based on purportedly false credit reporting regarding Claimant's Chase Ink business credit card account, the very issue heard and decided during the AAA arbitration.

14. Because the instant dispute did not arise from Johnson's use of his Freedom Card, the Freedom Card Arbitration agreement provides no basis for the instant Demand for Arbitration. Assuming arguendo that the agreement applies to this arbitration, the agreement states that only a court may determine if the arbitration agreement applies: "**All issues are for the arbitrator to decide, except that issues relating to the scope, enforceability, interpretation, formation, and validity of this arbitration agreement are for a court to decide**." Claimant's Arbitration Demand, Exhibit "Important Information regarding changes to your Chase account", par. 8 under "How does arbitration work?" (emphasis added). Chase asserts that the Freedom Card Arbitration Agreement does not support Claimant's Demand for Arbitration, and that any dispute over this issue must be decided by a court. Since Chase has put this issue before the Los Angeles County Superior Court in case no. 22STCP02017, JAMS is without jurisdiction to decide whether the Freedom Card Arbitration Agreement can support Claimant's Demand for Arbitration.

15. In the alternative, Claimant Johnson should be estopped with proceeding with this Demand for Arbitration because it raises identical factual issues as the prior AAA arbitration. Johnson is precluded from making the claims he asserts because he has already admitted through the course of the AAA arbitration that he had an unpaid balance on his Chase Ink business credit card that remained unpaid through the AAA arbitration. Johnson's claims for violation of FCRA and CCRAA based on inaccurate reporting regarding his Ink card cannot stand.

Because there is no agreement between the parties for JAMS to administer this Demand for Arbitration, Claimant Johnson has no right to proceed and JAMS is without jurisdiction to

require any payments, appoint any arbitrator(s) or to pursue any act in administration of this claim.

Chase requests that JAMS strike and dismiss this claim.

**DYKEMA GOSSETT PLLC**
*Attorneys for Respondent,*
*JPMorgan Chase Bank, N.A.*

**JPMORGAN CHASE BANK, N.A.'S RESPONSE TO JOSHUA JOHNSON'S DEMAND FOR ARBITRATION**

Chase generally denies all material allegations of Claimant's Demand for Arbitration. As stated above in Chase's Objection to Demand for Arbitration, and incorporated herein by reference, JAMS lacks jurisdiction to determine whether the arbitration agreement Claimant asserts supports the Demand for Arbitration, and all issues in the Demand for Arbitration have already been adjudicated in a prior arbitration with AAA. Chase asserts that the March 3, 2022 Arbitration Award is final and disposes of Johnson's claims. In addition, Chase asserts the following affirmative defenses.

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

(Failure to State a Claim)

1. The Demand for Arbitration fails to state facts sufficient to constitute a cause of action against Chase.

**SECOND AFFIRMATIVE DEFENSE**

(Compliance with the Law)

2. The actions taken by Chase were in full compliance with the law.

**THIRD AFFIRMATIVE DEFENSE**

(Wrongful Acts of Third Parties)

3. Claimant's damages, if any, were legally caused in whole or in part by the intentional misconduct, willful misconduct, fault, or negligence of persons or entities other than Chase, and should Claimant recover any damages, Chase is entitled to have such damages reduced or eliminated to the extent that third parties caused or contributed to such damages.

**FOURTH AFFIRMATIVE DEFENSE**

(No Damages)

4. Claimant has not suffered any damages as a result of conduct attributable to Chase.

**FIFTH AFFIRMATIVE DEFENSE**

(Failure to Mitigate)

5. Claimant's claims, if any, are barred for their failure, and/or the failure of the persons and/or entities acting on their behalf, to mitigate any purported damages.

**SIXTH AFFIRMATIVE DEFENSE**

(Mistake)

6. Chase alleges that Claimant's claims, if any, are barred by the doctrine of mistake.

**SEVENTH AFFIRMATIVE DEFENSE**

(Unjust Enrichment)

7. Chase alleges that Claimant's Demand for Arbitration is barred by the doctrine of unjust enrichment and that Claimant would be unjustly enriched by the requested relief.

**EIGHTH AFFIRMATIVE DEFENSE**

(Intervening/Superseding Causes)

8. Chase alleges that the injuries and damages of which Claimant complains were proximately caused, or contributed to, by the acts of other defendants, cross-defendants, persons and/or other entities, and that such acts were an intervening and superseding cause of the injuries and damages, if any, of which Claimant complains, thus barring Claimant from any recovery against Chase.

**NINTH AFFIRMATIVE DEFENSE**

(Waiver)

9. Claimant is barred, in whole or in part, from prosecuting the purported causes of action set forth in the Demand for Arbitration by the doctrine of waiver.

**TENTH AFFIRMATIVE DEFENSE**

(Estoppel)

10. By virtue of Claimant's acts, omissions, carelessness and negligence, and by virtue of their conduct, Claimant is estopped from recovering any damages against Chase.

**ELEVENTH AFFIRMATIVE DEFENSE**

(Unclean Hands)

11. Chase alleges that Claimant's claims are barred by the equitable doctrine of unclean hands.

**TWELFTH AFFIRMATIVE DEFENSE**

(Laches)

12. Chase alleges that Claimant's claims are barred by the equitable doctrine of laches.

**THIRTEENTH AFFIRMATIVE DEFENSE**

(Res Judicata)

13. Chase alleges that Claimant's claims are barred by the doctrine of res judicata.

**FOURTEENTH AFFIRMATIVE DEFENSE**

(Collateral Estoppel)

14. Chase alleges that Claimant's claims are barred by the doctrine of collateral estoppel.

**FIFTEENTH AFFIRMATIVE DEFENSE**

(Lack of Jurisdiction)

15. Chase alleges that Claimant's claims are not subject to arbitration, and that JAMS lacks jurisdiction to conduct an arbitration based on Claimant's claims.

**SIXTEENTH AFFIRMATIVE DEFENSE**

(Additional Defenses)

16. Chase alleges that the Demand for Arbitration is uncertain, vague and/or ambiguous. Accordingly, Chase is unable to determine what additional defenses may exist to the events and claims alleged in the Demand for Arbitration. Chase therefore reserves the right to assert all defenses which may pertain to the Demand for Arbitration and each of the claims therein once the precise nature of such events and claims is ascertained.

**DYKEMA GOSSETT PLLC**
*Attorneys for Respondent,*
*JPMorgan Chase Bank, N.A.*

# EXHIBIT 4

**RUSSELL LAW, PC**
L. David Russell (Cal. Bar No. 260043)
david@russelllawpc.com
1500 Rosecrans Ave, Suite 500
Manhattan Beach, California 90266
Telephone: (323) 638-7551
Fax: (323) 760-7458

*Attorneys for Claimant Joshua Johnson*

**JAMS ARBITRATION**

| | |
|---|---|
| JOSHUA JOHNSON, an individual,<br><br>Claimant,<br><br>v.<br><br>JPMorgan Chase Bank, N.A., and DOES 1-10, inclusive;<br><br>Respondents. | **REF NO.: 5210000148**<br><br>**RESPONSE TO JPMORGAN CHASE BANK, N.A.'S OBJECTION TO DEMAND FOR ARBITRATION AND REQUEST FOR ARBITRATION TO BE STRICKEN / DISMISSED** |

# I. INTRODUCTION

Chase routinely requires its cardholders to enter into arbitration agreements. By requiring its customers to use these agreements, most (if not all) Chase customers have waived their rights to seek redress in court. And when Chase customers decide to ignore these agreements, Chase is quick to force those customers out of court and into arbitration proceedings.

Ignoring its reliance on arbitration agreements, here Chase cynically attempts to disclaim the arbitration agreement it entered with Mr. Johnson. Luckily, the Case Administrator does not need to delve into the convoluted and contradictory arguments strewn throughout Chase's 129-page Objection. Rather, the Case Administrator should disregard the Objection for the simple reason that Chase's Rule 18 request is premature because an Arbitrator has not yet been appointed.

The Objection also fails for the additional reason that Chase is not challenging any "issues relating to the scope, enforceability, interpretation, formation, and validity of this arbitration agreement," which are subject to a delegation clause. Rather, Chase has argued something else entirely—that the "Freedom Card Arbitration Agreement ***does not support*** Claimant's Demand for Arbitration[.]" Obj. ¶ 14. To be clear, Chase is not arguing (and cannot seriously argue) that this agreement is not enforceable, that Mr. Johnson did not enter this agreement, or that the arbitration clause's scope which covers "all disputes" with Chase is somehow not broad enough. And even if the Freedom Card Arbitration Agreement did not apply, Chase acknowledges that Mr. Johnson entered into other substantially similar arbitration agreements with Chase that would apply here.

Accordingly, Mr. Johnson respectfully requests that the Case Administrator disregard Chase's objection and that JAMS proceed with administering this arbitration.

## II. ARGUMENT

### A. Chase's Request Under JAMS Rule 18 Is Improper.

Chase's "request[] that JAMS decline administration" is made pursuant to JAMS Rule 18. Objection ("Obj.") at 1. This request for relief is premature. Rule 18 states that:

> The Arbitrator may permit any Party to file a Motion for Summary Disposition of a particular claim or issue, either by agreement of all interested Parties or at the request of one Party, provided other interested Parties have reasonable notice to respond to the request. The Request may be granted only if the Arbitrator determines that the requesting Party has shown that the proposed motion is likely to succeed and dispose of or narrow the issues in the case.

Here, an Arbitrator has not yet been appointed. *See* JAMS Rule 15 (rules for the selection of the arbitrator). And, unlike other JAMS rules, Rule 18 only vests the Arbitrator—and not JAMS—with authority to file a motion under Rule 18. *See* JAMS Rule 8(a). Furthermore, under JAMS Rule 11, only the "Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."

In summary, because an Arbitrator has not been appointed, Chase's Rule 18 request is premature and improper. Mr. Johnson respectfully requests that the Case Administrator deny this request on that basis.

### B. The Issues Chase Raises Are Not Subject To The Arbitration Agreement's Delegation Clause.

Chase also argues that the arbitration should be dismissed because the Freedom Card Arbitration Agreement at issue has a clause delegating "issues relating to the scope, enforceability, interpretation, formation, and validity of this arbitration agreement" to "a court to decide." Obj. ¶ 14. Citing this delegation clause, Chase argues that because it "asserts that the Freedom Card Arbitration Agreement does not support Claimant's Demand for Arbitration, and that any dispute over this issue must be decided by a court." *Id.* As a threshold matter, as

explained in Section II.B., *supra*, this argument regarding the arbitrability of Mr. Johnson's claim can only be raised to the Arbitrator. *See* JAMS Rule 11.

More fundamentally, however, Chase is not challenging "the scope, enforceability, interpretation, formation, and validity of this arbitration agreement." First, the scope of the arbitration clause is clear and cannot reasonably be subjected to multiple interpretations. "This arbitration agreement provides that ***all disputes between you and Chase*** must be resolved by BINDING ARBITRATION whenever you or we choose to submit or refer a dispute to arbitration." Freedom Arbitration Agreement ¶ 8 (emphasis added). By its own text, this provision is not limited to claims related to the Freedom card but rather "all disputes" with Chase. And Chase has successfully argued as much on several occasions. *See Vardparonyan v. J.P. Morgan Chase Nat. Corporate Services, Inc*., No. 20STCV01342, (Cal. Super. Jan. 15, 2021) (attached hereto as Exhibit 1) at 10 (compelling arbitration based on same arbitration language as here); *see also* Chase's Mot. to Compel Arbitration, *Vardparonyan v. J.P. Morgan Chase Nat. Corporate Services, Inc*., No. 20STCV01342 (attached hereto as Exhibit 2) (arguing that "[t]here is no question the Arbitration Agreements [which are the same Freedom and Ink agreements as here] govern the terms of any dispute between JPMC and Plaintiff").

Second, Chase is not arguing that this arbitration agreement is not enforceable or that—by sending Mr. Johnson this email—there was not mutual consent sufficient for entering a contract. Indeed, Chase has successfully moved to compel arbitrations based on this arbitration agreement numerous times and has convinced courts of the "expansive language of the arbitration provision." *Vardparonyan v. J.P. Morgan Chase Nat. Corporate Services, Inc*., No. 20STCV01342, (Cal. Super. Jan. 15, 2021) (attached hereto as Exhibit 1) at 10; *see also* Exhibit 2, 3. It is estopped here from arguing otherwise.

Moreover, even if the arbitration provision for the Freedom Card does not apply, there are substantially similar arbitration agreements that Mr. Johnson entered into with Chase that would apply here. All of those postdate the arbitration provision Chase has attached as Exhibit B. to the Objection. Indeed, in *Vardparonyan*, Chase acknowledged that the Chase Freedom and Chase Ink credit card accounts (which is the card at issue in this case) were governed by arbitration clauses with identical language. Exhibit 1 at 2-3 (referring to declaration filed by Chase under penalty of perjury); *see also* Exhibit 2, 3.

Finally, Chase has not put the issue of the arbitrability of this dispute before the Los Angeles Superior Court. In the Petition to Confirm Award, attached as Exhibit C to Chase's filling, Chase argues only that Mr. Johnson does not have appellate rights to a separate arbitration that was pending before the American Arbitration Association. *See* Petition (attached as Exhibit C to Chase Objection) at 12 (prayer for relief requesting declaration that "Johnson has no right to pursue an appeal of the Award" and enjoining Johnson "from pursuing an appeal of the Award before the AAA"). Nor could the Superior Court action address the JAMS proceeding because the Superior Court action was filed on May 27, 2022—more than two months before the JAMS action was initiated. *See id.* In short, whether Mr. Johnson's FCRA and CCRAA claims are subject to the Chase Freedom Arbitration Agreement simply is not at issue In the Superior Court proceeding (although Chase has previously convinced the Superior Court that this arbitration clause does apply to claims like Mr. Johnson's). *See Vardparonyan* (attached as Exhibit 1) at 10.

**C. The Claims At Issue In This Arbitration Were Not Brought Before The AAA Arbitration Panel And Involve Different Factual Issues.**

Chase also argues that Mr. Johnson already litigated the FCRA and CCRAA claims in the AAA Arbitration. Simply put, Chase's claim is false. First, Mr.

Johnson initiated the AAA arbitration on August 25, 2020. *See* Exhibit 4. This was before the FCRA and CCRAA claims accrued. *See* Arbitration Demand ¶ 11. Second, the AAA's Award of Arbitration specifically carved out Mr. Johnson's FCRA claims from that arbitration. "In an email to the AAA and opposing counsel on April 2, 2021, Johnson stated that he was not pursuing a FairCredit Reporting Act (FCRA) claim in this arbitration." Obj., Ex. A. Moreover, this type of collateral estoppel argument must be made to the Arbitrator and is not a threshold question for determining whether this arbitration should be administered.

## III. CONCLUSION

For the foregoing reasons, Mr. Johnson respectfully requests that the Case Administrator disregard Chase's objection and that JAMS administer the claims laid out in his Arbitration Demand.

DATED: September 2, 2022 Respectfully submitted,

*/s/ L. David Russell*

**RUSSELL LAW, PC**
L. David Russell (Cal. Bar No. 260043)
david@russelllawpc.com
1500 Rosecrans Ave, Suite 500
Manhattan Beach, California 90266
Telephone: (323) 638-7551
Fax: (323) 760-7458

*Attorneys for Claimant Joshua Johnson*

# EXHIBIT 5

NOTICE TO ALL PARTIES September 16, 2022

**RE: Johnson, Joshua vs. JPMorgan Chase Bank, N.A. – 5210000148**

Dear Parties:

JAMS has received and reviewed Respondent's Objection to Demand for Arbitration and Request for Arbitration to be Stricken / Dismissed, and Claimant's response thereto.

The parties' submissions raise numerous issues. This letter addresses the issues most relevant to JAMS' administration of this matter.

Claimant seeks arbitration under his Chase Freedom cardmember agreement. Claimant's statement of claims references his Chase Ink credit card account. Respondent contends the Chase Freedom cardmember agreement does not apply to this dispute and "does not support Claimant's Demand for Arbitration." Objection, no. 14. The Chase Freedom cardmember agreement states, "All issues are for the arbitrator to decide, except that issues relating to the scope, enforceability, interpretation, formation, and validity of this arbitration agreement are for a court to decide." Freedom cardmember agreement, p. 8. Respondent argues this clause requires a court, not an arbitrator, to decide any further issue about whether the Freedom cardmember agreement supports Claimant's Demand for Arbitration.

Claimant argues that Respondent "is not challenging 'the scope, enforceability, interpretation, formation, and validity of this arbitration agreement'." Response, p. 3. "[T]he scope of the arbitration clause is clear and cannot reasonably be subjected to multiple interpretations." *Ibid*. The clause covers "all disputes" with Respondent and thus Respondent cannot argue the clause "is somehow not broad enough" to encompass the present dispute. Response, p. 1. Instead, Respondent's objection represents an arbitrability dispute which, under JAMS Rule 11(b), "can only be raised to the Arbitrator." Response, p. 3.

JAMS Rule 2(a) states, "The Parties may agree on any procedures not specified herein or in lieu of these Rules that are consistent with the applicable law and JAMS policies . . . . The Party-agreed procedures shall be enforceable as if contained in these Rules." As discussed above, the parties' arbitration agreement calls for a court to decide issues concerning the scope and interpretation of the agreement. This includes Respondent's contention that the agreement does not support the Demand and Claimant's contention that the scope "is clear and cannot reasonably be subjected to multiple interpretations." Thus, while JAMS Rule 11(b) calls for the

arbitrator to hear and decide as a preliminary matter issues concerning the scope and interpretation of the agreement, that provision of the JAMS Rules does not apply under the Freedom agreement. Therefore, in light of Respondent's objection, JAMS is unable to proceed with administration at this time. If a court orders the parties to proceed at JAMS, or if the parties agree to proceed here, JAMS will resume administration.

Any request for summary disposition under JAMS Rule 18 would be for an arbitrator to decide.

Sincerely,

*/s/ Sheri Eisner*

Sheri Eisner
Senior Vice President, General Counsel
Co-Chair, JAMS National Arbitration Committee

# EXHIBIT 6

**RUSSELL LAW, PC**
L. David Russell (Cal. Bar No. 260043)
david@russelllawpc.com
1500 Rosecrans Ave, Suite 500
Manhattan Beach, California 90266
Telephone: (323) 638-7551
Fax: (323) 760-7458

*Attorneys for Plaintiff Joshua Johnson*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSHUA JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>Defendant. | No.: 2:22-cv-06718-RSWL-MAA<br><br>**PLAINTIFF'S INITIAL DISCLOSURES** |

Pursuant to Federal Rules of Civil Procedure 26(a)(1) of the Federal Rules of Civil Procedure, the Court's Local Rules, and the parties' agreement to exchange Initial Disclosures on January 13, 2023, plaintiff Joshua Johnson ("Plaintiff") hereby makes the following disclosures to defendant JPMorgan Chase Bank, N.A. ("Chase").

Plaintiff has not completed its investigation of the facts relevant to this case, its discovery in this action, or its preparation for trial. Plaintiff reserves its right to modify and supplement these disclosures as permitted by the Federal Rules of Civil Procedure and the Court's Local Rules.

**A. List of Knowledgeable Individuals**

The following individuals may provide information on the identified subjects to the extent not protected by applicable privilege, work product, or other protection.

1. Joshua Johnson. Mr. Joshua Johnson has knowledge of the facts and circumstances of the allegations made in his Complaint as well as the damages he has suffered. Mr. Johnson should be contacted through Plaintiff's counsel.

2. Sam Alcorn. Ms. Alcorn is a friend of Mr. Johnson's and Mr. Johnson's realtor and has knowledge of the emotional distress and actual damages Mr. Johnson suffered because of Chase's misconduct. (919) 840-8132; 518 Cape Ave, Raleigh, NC 27601.

3. Robert Johel. Mr. Johel is a friend of Mr. Johnson's and has knowledge of the emotional distress damages Mr. Johnson suffered because of Chase's misconduct. (919) 612-5063; 1404 Van Page Blvd, Raleigh, NC 27607.

4. Meghan Johel. Ms. Johel is a friend of Mr. Johnson's and has knowledge of the emotional distress damages Mr. Johnson suffered because of Chase's misconduct. (704) 771-6086; 1404 Van Page Blvd, Raleigh, NC 27607.

5. Brandon Workman. Mr. Workman is a friend of Mr. Johnson's and has knowledge of the emotional distress damages Mr. Johnson suffered because

of Chase's misconduct. (704) 763-0486; 1325 Kirkland Rd #102 Raleigh, NC 27603.

6. Jay Jenkins. Mr. Jenkins is a friend of Mr. Johnson's and has knowledge of the emotional distress damages Mr. Johnson suffered because of Chase's misconduct. (252) 227-0041; 203 N Channel Dr, Wrightsville Beach, NC 28480.

7. Ashley Hoffmann. Mrs. Hoffmann is a friend of Mr. Johnson's and has knowledge of the emotional distress damages Mr. Johnson suffered because of Chase's misconduct. (704) 929-0811; 2701 Flume Gate Dr, Raleigh, NC 27603.

8. Zack Hoffmann. Mr. Hoffmann is a friend of Mr. Johnson's and has knowledge of the emotional distress damages Mr. Johnson suffered because of Chase's misconduct. (919) 418-3691; 2701 Flume Gate Dr, Raleigh, NC 27603.

9. Addison McMillan. Mr. McMillan is a friend of Mr. Johnson's and has knowledge of the emotional distress damages Mr. Johnson suffered because of Chase's misconduct. (910) 734-8402; 1818 S State College Blvd #233, Anaheim, CA 92806.

10. Audrey Luu. Ms. Luu is a friend of Mr. Johnson's and has knowledge of the emotional distress damages Mr. Johnson suffered because of Chase's misconduct. (626) 789-4244.

11. Stan Johnson. Stan Johnson is Mr. Johnson's father and has knowledge of the emotional distress damages Mr. Johnson suffered because of Chase's misconduct. (336) 996-5982; 881 Sedge Garden Rd, Kernersville, NC 27284.

12. Kim Johnson. Kim Johnson is Mr. Johnson's mother and has knowledge of the emotional distress damages Mr. Johnson suffered because of Chase's misconduct. (336) 996-5982; 881 Sedge Garden Rd, Kernersville, NC 27284.

13. Cheryl Jackson. Ms. Jackson is Mr. Johnson's aunt and has knowledge of the emotional distress damages Mr. Johnson suffered because of Chase's misconduct. (336) 408-8654 116; Humberside Dr, Kernersville, NC 27284.

14. Garrett Jackson. Mr. Jackson is Mr. Johnson's uncle and has knowledge of the emotional distress damages Mr. Johnson suffered because of Chase's misconduct. (336) 303-2162 1312; Rose of Sharon Ct, Pleasant Garden, NC 27313.

15. Shirley Pakdaman. Dr. Pakdaman is a psychologist who treated Mr. Johnson and has knowledge of the emotional distress damages Mr. Johnson suffered because of Chase's misconduct. (310) 431-98669171; Wilshire Blvd #615, Beverly Hills, CA 90210, United States.

16. Daniel Norman. Dr. Norman is a sleep specialist who treated Mr. Johnson and has knowledge of the emotional distress damages Mr. Johnson suffered because of Chase's misconduct. (310) 828-2293 12301; Wilshire Boulevard #200, Los Angeles, CA 90025.

17. Trilok Shah. Dr. Shah is a psychiatrist who treated Mr. Johnson and has knowledge of the emotional distress damages Mr. Johnson suffered because of Chase's misconduct. (773) 916-7595; 10880 Wilshire Blvd #1101, Los Angeles, CA 90024.

18. Moshe Hendizadeh. Dr. Hendizadeh is a neurologist who treated Mr. Johnson and has knowledge of the emotional distress damages Mr. Johnson suffered because of Chase's misconduct. (310) 422-6111; 10966 W Pico Blvd, Los Angeles, CA 90064.

19. Sarah Kim. Dr. Kim is an endocrinologist who treated Mr. Johnson and has knowledge of the emotional distress damages Mr. Johnson suffered because of Chase's misconduct. (310) 828-1050; 2020 Santa Monica Boulevard #550 Santa Monica, California 90404.

20. Alexandria Lee. Dr. Lee is a primary care physician who treated Mr. Johnson and has knowledge of the emotional distress damages Mr. Johnson suffered because of Chase's misconduct. (562) 270-9997 6460; E Pacific Coast Hwy #D-210, Long Beach, CA 90803.

21. Spencer Nadolsky. Dr. Nadolsky is a primary care physician who treated Mr. Johnson and has knowledge of the emotional distress damages Mr. Johnson suffered because of Chase's misconduct. (619) 376-8275; 1964 Cass Street #7G San Diego, CA 92109.

22. Carla L Wills. Ms. Wills was a Chase employee who led the 2020 investigation regarding the information Plaintiff disputed with respect to his Chase credit card account.

23. Michael Kohles. Mr. Kohles was a Chase employee who participated in the 2020 investigation regarding the information Plaintiff disputed with respect to his Chase credit card account.

24. Luke S Williams. Mr. Williams was a Chase employee who participated in the 2020 investigation regarding the information Plaintiff disputed with respect to his Chase credit card account.

25. Katrina Ann A. Ms. Ann was a Chase employee who participated in the 2020 investigation regarding the information Plaintiff disputed with respect to his Chase credit card account.

26. Jeremiah D Presley. Ms. Ann was a Chase employee who led the 2018 investigation regarding Plaintiff's Chase credit card account.

27. Melanie (last name unknown). Plaintiff spoke to this Chase employee regarding his credit card account in May 2018.

28. Linda (last name unknown). Plaintiff spoke to this Chase employee regarding his credit card account in May 2018.

29. Percy (last name unknown). Plaintiff spoke to this Chase employee regarding his credit card account in May 2018.

30. Catherine (last name unknown). Plaintiff spoke to this Chase employee regarding his credit card account in May 2018.

31. Jayshwan (last name unknown). Plaintiff spoke to this Chase employee regarding his credit card account in May 2018.

32. Tom (last name unknown). Plaintiff spoke to this Chase employee regarding his credit card account in May 2018.

33. Manny (last name unknown). Plaintiff spoke to this Chase employee regarding his credit card account in May 2018.

34. Stephanie (last name unknown). Plaintiff spoke to this Chase employee regarding his credit card account in May 2018.

35. Albina (last name unknown). Plaintiff spoke to this Chase employee regarding his credit card account in May 2018.

**36.** Felicia (last name unknown). Plaintiff spoke to this Chase employee regarding his credit card account in May 2018.

**B. Documents, Electronically Stored Information, and Tangible Things.**

The following are documents, electronically stored information, and tangible things that are in the possession, custody or control of Plaintiff which may be used to support Plaintiff's claims:

- Documents related to prospective & aborted real estate purchases
- Financial statements
- Documents related to Mr. Johnson's increased insurance rates
- Correspondence between Mr. Johnson and a landlord
- Credit card agreement(s)
- Call recordings & logs between Chase and Mr. Johnson
- Credit reports from Equifax, Experian, and TransUnion
- Emails between Chase and Mr. Johnson
- Account records previously produced by Chase
- Correspondence between Chase and Mr. Johnson

Pursuant to the agreement with Chase's counsel, documents will be produced by the end of January 2023.

**C. Damages**

Plaintiff is seeking the following relief:

- Actual damages. Actual damages for all harm caused to Plaintiff by Chase's actions, which includes the following:
    - Plaintiff suffered lost credit reputation, as Chase's misreporting caused his credit score to drop approximately 200 points. Plaintiff's credit score and report were passed to at least forty (40) third parties, including a landlord who inquired about it and a mortgage lender.
    - Because of the Chase credit report, Plaintiff's home and automobile insurance rates increased. Plaintiff is still conducting an investigation into the amount of the rate increase, but believes that it was several hundred dollars, at the least.
    - As a result of the Chase credit report, Plaintiff was deterred from purchasing properties because he was unable to secure a favorable mortgage rate. Plaintiff had investigated and intended to purchase properties in North Carolina and California the second half of 2020 costing between $300,000-$500,000, but did not do so when he learned that he was only approved for higher mortgage rates reserved for credit risks. But for the misleading and false credit report, Plaintiff would have purchased these properties, which upon Plaintiff's initial investigation, appear to have appreciated in value by approximately 50% since then. Because Chase deterred him from the accessing the credit markets, Plaintiff also lost the enjoyment of the properties he planned to purchase, potential rental income, and the opportunity to access historically low interest rates.

- Plaintiff also lost wages and spent valuable time pursuing this dispute, for which he is entitled to compensation. Plaintiff estimates that he spent over 90 hours investigating his credit card account and pursuing this dispute, comprising of an estimated (a) 4 hours spent on the phone with Chase in mid-2018, (b) 20 hours of credit repair research in 2018, (c) 30 minutes spent on the phone with Chase in mid-2020, (d) 40 hours of research in 2020, and (e) 30 minutes drafting Equifax and CFPB complaints in mid-2020.
- Plaintiff suffered from severe emotional distress, humiliation, and stress due to the damage to creditworthiness, reputation, and his sense of well-being. This emotional distress had physical manifestations and impacts on Plaintiff's health, including sleep loss, hair loss, physical fatigue, anxiety, depression, and cognitive dysfunction.

- Statutory Damages
    - Under FCRA, statutory damages of $1,000 for Chase's willful violations of the statute. *See* 15 U.S.C. § 1681n(a)(1)(A).
    - Under CCRA statutory punitive damages of $5,000 for each of Chase's willful violations of the statute. *See* Cal. Civ. Code § 1785.31. Discovery has not been conducted into how many violations of the statute took place.
- Punitive Damages, Attorneys Fees, Costs including expert witness fees, and Interest
    - Amounts unknown at this time

**D. Insurance**

Plaintiff is unaware of any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

DATED: January 13, 2023

Respectfully submitted,

*/s/ L. David Russell*

**RUSSELL LAW, PC**

*Attorneys for Plaintiff Joshua Johnson*

# CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 1500 Rosecrans Avenue, Suite 500, Manhattan Beach, CA 90266.

On January 13, 2023, I served the within document(s): **PLAINTIFF'S INITIAL DISCLOSURES**

By transmitting the document(s) listed above, electronically, via the e-mail addresses set for below.

DYKEMA GOSSETT LLP
ASHLEY R. FICKEL, State Bar No. 237111
AFickel@dykema.com
ROBERT A. HYATT, State Bar No. 166178
RHyatt@dykema.com
333 South Grand Avenue, Suite 2100
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 13, 2023

/s/ L. David Russell

L. David Russell