**DYKEMA GOSSETT LLP**
ROBERT A. HYATT, State Bar No. 166178
  *RHyatt@dykema.com*
444 South Flower Street, Suite 2200
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JOSHUA JOHNSON,<br><br>          Plaintiff,<br><br>     v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>          Defendant. | Case No. 2:22-cv-06718-AB-MAAx<br><br>The Hon. André Birotte Jr.<br>Courtroom  7B<br><br>Magistrate Maria A. Audero<br>Courtroom: 690<br><br>**DEFENDANT JPMORGAN CHASE BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>Complaint Filed:   September 19, 2022 |

*Sidebar (rotated):* DYKEMA GOSSETT LLP / 444 SOUTH FLOWER STREET / SUITE 2200 / LOS ANGELES, CALIFORNIA 90071

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

 **PLEASE TAKE NOTICE** that on September 5, 2025, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 7B of the above-entitled court, located at 350 West First Street, Los Angeles, CA  90012, Defendant JPMorgan Chase Bank, N.A. ("Chase") will, and hereby does, move this Court for an order granting Chase summary judgment, or in the alternative summary adjudication, as to every claim in the Complaint ("Compl.") filed by Plaintiff Joshua Johnson.

 This Motion is made pursuant to Rule 56 of the Federal Rules of Civil Procedure and is based on the ground that all Plaintiff's claims are barred by the applicable statute of limitations, issues are precluded by the doctrine of collateral estoppel, and that there is no genuine dispute as to any material fact and Chase is entitled to summary judgment as a matter of law.

 Pursuant to Local Rule 7-3, counsel for Chase met and conferred with Plaintiff's counsel[1] prior to filing the instant Motion.  Chase and Plaintiff were unable to come to a resolution that would obviate the necessity of filing this motion.

 This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, Declaration of Robert Hyatt, the complete file and records of this action, and such other oral and documentary evidence as may be presented at the time of hearing.

---

[1] After receiving Plaintiff's request for substitution of counsel and for self-representation [Dkt. 66], counsel for Chase called and spoke with Plaintiff to discuss the instant motion.  The parties were not able to come to resolution.

DEFENDANT JPMORGAN CHASE BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

1   DATED:  June 25, 2025              DYKEMA GOSSETT LLP

2

3

4                                      By:  /s/ Robert Hyatt

5                                           ROBERT HYATT
                                            Attorneys for Defendant
6                                           JPMORGAN CHASE BANK N.A.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DYKEMA GOSSETT LLP**
**444 SOUTH FLOWER STREET**
**SUITE 2200**
**LOS ANGELES, CALIFORNIA 90071**

DEFENDANT JPMORGAN CHASE BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

# **TABLE OF CONTENTS**

Page(s)

I.     FACTUAL AND PROCEDURAL HISTORY ................................................. 8

II.    LEGAL STANDARD ........................................................................ 14

II.    ARGUMENT .................................................................................. 15

    A.     PLAINTIFF'S CLAIMS FAIL DUE TO THE DOCTRINE OF COLLATERAL ESTOPPEL ..................................................... 15

    B.     PLAINTIFF'S FAIR CREDIT REPORTING ACT CLAIM FAILS ........................................................................ 18

        1.     PLAINTIFF'S FCRA CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS ........................................ 19

        2.     PLAINTIFF'S ADMISSION THAT THE INFORMATION FURNISHED BY CHASE REGARDING HIS INK CARD WAS ACCURATE PRECLUDES HIS FCRA CLAIM ............................... 20

        3.     THE INFORMATION FURNISHED BY CHASE REGARDING PLAINTIFF'S INK CARD WAS IN FACT, ACCURATE ........................................... 21

        4.     CHASE'S INVESTIGATION OF PLAINTIFF'S EQUIFAX DISPUTE WAS REASONABLE BASED ON THE NATURE OF THE DISPUTE DESCRIPTION IT RECEIVED FROM EQUIFAX ................................. 23

    C.     SINCE PLAINTIFF'S FCRA CLAIM FAILS, HIS CALIFORNIA CONSUMER REPORTING AGENCIES ACT ("CCRAA") CLAIM ALSO FAILS ........................................ 26

III.   CONCLUSION ............................................................................ 26

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DEFENDANT JPMORGAN CHASE BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5 *Anderson v. Liberty Lobby, Inc.*,

6 447 U.S. 242 (1986) ...................................................................... 14

7 *Blackwell v. Capital One Bank*,
2008 U.S. Dist. LEXIS 23339, 2008 WL 793476 (S.D. Ga. 2008) ............ 19, 20

8 *Border Business Park, Inc. v. City of San Diego*

9 (2006) 142 Cal.App.4th 1538 .............................................................. 16

10 *Carvalho v. Equifax Info. Servs., LLC*,

11 629 F.3d 876 (9th Cir. 2010) ........................................................ 20, 26

12 *Celotex Corp. v. Catrett*,

13 477 U.S. 317 (1986) ...................................................................... 15

14 *Chiang v. Verizon New England, Inc.*,

15 595 F.3d 26 (1st Cir. 2010) .............................................................. 25

16 *Collins v. D.R. Horton, Inc.*
(9th Cir. 2007) 505 F.3d 874 ............................................................ 15

17

18 *Forester v. Pa. Higher Educ. Assistance Agency*,
2009 U.S. Dist. LEXIS 107372 ......................................................... 19

19

20 *Giovanni v. Bank of Am., N.A.*,
2012 U.S. Dist. LEXIS 178914 ......................................................... 26

21

22 *Gorman v. Wolpoff & Abramson, LLP*,
584 F.3d 1147 (9th Cir. 2009) ........................................... 18, 21, 23, 25

23

24 *Gross v. CitiMortgage, Inc.*,
33 F.4th 1246 (9th Cir. 2022) ........................................................... 20

25

26 *Gustafson v. Experian Info. Solutions, Inc.*,
2015 U.S. Dist. LEXIS 71280 ........................................................... 25

27 *Janjua v. Neufeld*,
933 F.3d 1061 (9th Cir. 2019) .......................................................... 15

28

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DEFENDANT JPMORGAN CHASE BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

*Kelly v. Vons Companies, Inc.,*
    supra, 67 Cal.App.4th at p. 1336 ........................................................ 16

*Manriquez v. J.B. Hunt Transp., Inc.,*
    2022 U.S. Dist. LEXIS 244278 ........................................................... 26

*Martinez v. Am. Express Nat'l Bank,*
    2022 U.S. Dist. LEXIS 199019 ........................................................... 23

*Migra v. Warren City Sch. Dist. Bd. of Educ.,*
    465 U.S. 75, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984) ......................... 15

*Miller v. Westlake Servs. LLC,*
    637 F. Supp. 3d 836 (2022) .......................................................... 18, 23

*N. Improvement Co. v. United States,*
    398 F. Supp. 3d 509 ............................................................................ 15

*Nelson v. Chase Manhattan Mortgage Corp.,*
    282 F.3d 1057 (9th Cir. 2002) ............................................................ 19

*Nelson v. Equifax Information Services, LLC,*
    522 F. Supp. 2d 1222 (C.D. Cal. 2007) .............................................. 19

*Noriesta v. Konica. Minolta Bus. Sols. U.S.A., Inc.,*
    2019 WL 6482221 (C.D. Cal. July 8, 2019) ...................................... 26

*Oyeniran v. Holder,*
    672 F.3d 800 (9th Cir. 2012) .............................................................. 15

*Parklane Hosiery Co., Inc.,*
    439 U.S. at 326-27 n.5 ........................................................................ 15

*Personius v. Specialized Loan Servicing LLC,*
    2017 U.S. Dist. LEXIS 216330 ..................................................... 24, 25

*Sabek, Inc. v. Engelhard Corp.,*
    supra, 65 Cal.App.4th at p. 998 ......................................................... 16

*Sandoval v. Superior Court*
    (1983) 140 Cal.App.3d 932 [190 Cal. Rptr. 29] ............................... 16

*Shaw v. Experian Info. Sols., Inc.,*
    891 F.3d 749 (9th Cir. 2018) .............................................................. 20

DEFENDANT JPMORGAN CHASE BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

*V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas LLC*
    (E.D.Cal. Jan. 24, 2022, No. 2:14-cv-02961-TLN-CKD) 2022 U.S.Dist.LEXIS 14625 ................................................................................................................ 16

*Westra v. Credit Control of Pinellas*,
    409 F.3d 825 (7th Cir. 2005) ................................................................ 23, 24, 25

**Statutes**

15 U.S.C. §1681p .......................................................................................... 19

15 U.S.C. §1681s-2(b) ................................................................ 18, 19, 21, 25

Cal. Civ. Code § 1785.33 .............................................................................. 26

Cal. Civ. Code § 1786.52 .............................................................................. 26

**Other Authorities**

Fed. R. Civ. P. 56(c) ...................................................................................... 14

Fed. R. Civ. P. 56(e) ...................................................................................... 15

Local Rule 7-3 ................................................................................................. 2

Rest.2d Judgments, § 13 ................................................................................ 16

Rule 56 of the Federal Rules of Civil Procedure ........................................... 2

DEFENDANT JPMORGAN CHASE BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

## MEMORANDUM OF POINTS AND AUTHORITIES

JPMorgan Chase Bank, N.A.'s ("Chase") Motion for Summary Judgment should be granted for multiple and independent reasons. Plaintiff Joshua Johnson ("Plaintiff") claims for violation of the Fair Credit Reporting Act, and its California counterpart, are barred by the applicable statute of limitations. A previous arbitration between the parties adjudicated issues based on the same nexus of facts as the instant matter, giving preclusive effect to the arbitration award, and establishing that Plaintiff's claims are meritless. The findings of fact from the arbitration fundamentally show that Chase's furnishing for Plaintiff's credit card account was accurate. Furthermore, Plaintiff admitted that fact during the course of the arbitration. Chase performed a reasonable investigation into the issue presented to it by Equifax regarding Plaintiff's Ink credit card, and correctly concluded that Plaintiff's account had not been fraudulently taken over.

Regardless, the evidence is undisputed that the information furnished by Chase to Equifax was accurate.

## I.    FACTUAL AND PROCEDURAL HISTORY[2]

On January 5, 2017, Plaintiff opened a Chase Ink credit card account ("Ink card"). Statement of Uncontroverted Facts in support of Chase's Motion for Summary Judgment ("Facts"), No. 1. Chase mailed a paper billing statement to

---

[2] Due to the multiplicity of chronologically overlapping actions, Chase provides this outline of the relevant proceedings: (a) on September 30, 2020, Plaintiff commenced an arbitration at the American Arbitration Association, which proceeded before Arbitrator Charles Holton and which resulted in an award in Chase's favor on March 3, 2022 (Facts, Nos. 24, 29); (b) on May 27, 2022, Chase commenced an action in Los Angeles Superior Court to affirm the arbitration award as a judgment, and which did result in confirmation of the award on March 5, 2025 (Facts, Nos. 36, 37); (c) on March 4, 2022, Plaintiff attempted to initiate an appeal of the award within the AAA before a panel of three arbitrators, which was ultimately denied on May 17, 2024 (Facts, Nos. 32, 34); and (d) on September 19, 2022, Plaintiff commenced the action before this court. (Dkt. 1).

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DEFENDANT JPMORGAN CHASE BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1  Plaintiff for his first statement with payment due February 18, 2017.  Facts, No. 2.

2  Thereafter, Plaintiff opted for electronic delivery of his statements. On February 16,

3  2017, Plaintiff received an email from Chase confirming his agreement for paperless

4  delivery of his billing statements for his Ink card.  Facts, No. 3.  The email stated

5  "This means we'll no longer mail your statements and some account notices.  We'll

6  post them online and email you a reminder when they're ready."  Id.

7       Chase emailed a billing statement notice regarding Plaintiff's Ink card on

8  February 27, 2017.  Facts, No. 4.  Chase also emailed a payment due alert for the

9  Ink card on March 8, 2017 because Plaintiff's account carried an unpaid balance.

10  Facts, No. 5.

11       On September 6, 2017, Chase called Plaintiff to request payment on his Ink

12  card.  Facts, No. 6.  Plaintiff did make a payment that day, but did not pay the full

13  balance, so that a balance of $238.52 remained on the Ink card following the

14  September 6th payment.   Facts, No. 7.  Subsequently, Chase closed the account

15  with the agreement of Johnson, but continued to carry and bill, with e-statements,

16  the unpaid balance. After several more months, Chase charged off the account

17  balance and reported the alleged delinquency to credit bureaus.  Facts, No. 8.  After

18  closing the Ink card account, Chase continued to email Plaintiff billing statement

19  notices until it charged-off the account on April 30, 2018.  Facts, No. 9.

20       On August 24, 2020, Plaintiff submitted an online dispute with Equifax

21  regarding his Ink card.  Facts, No. 10.  As part of the online dispute process,

22  Plaintiff provided a narrative description of his dispute in a text box provided.

23  Facts, No. 11.  Equifax transmitted an Automated Consumer Dispute Verification

24  ("ACDV") to Chase in order for Chase to investigate the disputed information.

25  Facts, No. 12.  Equifax described the dispute as "claims account take-over, fradulent

26  [sic] charges on account."  Facts, No. 13.  Equifax also included in the FCRA

27  Relevant Information field on the ACDV, Plaintiff's written text: "Chase never sent

28  a paper bill, never called, never emailed, or otherwise attempted to make me aware

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DEFENDANT JPMORGAN CHASE BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

in any way that the account carried a balance while the account was open. I regularly logged into my Chase account online and observed a $0 balance." Facts, No. 14.

Chase conducted an investigation of the disputed information and responded to Equifax that the disputed information was accurate. Facts, No. 17. In conducting its investigation of the dispute as detailed in the ACDV (that the account was the product of an alleged fraudulent takeover), Chase reviewed the Ink Card account and correctly determined that it was validly opened and used by the Plaintiff himself. Facts, No. 18. In doing so, Chase followed its then-current policies and procedures for verifying disputed information pursuant to an ACDV. Facts, No. 19. Chase determined that payments to the account were made using a checking account in Plaintiff's name. Facts, No. 20. Chase verified that it had made 11 calls to Plaintiff between September 6, 2017, and May 23, 2018. Id. Chase also verified that it had sent several letters to Plaintiff at his address/email address of record stating that a payment was missed or notification of a possible change in status of the account. Id. In addition, Chase confirmed that Plaintiff had enrolled in paperless statements, and that statement notifications were successfully sent monthly. Id. Based on the ACDV transmitted by Equifax, Chase determined that the information disputed by Plaintiff was accurate, the account had not been fraudulently taken over and Plaintiff received notifications and correspondence for his payment obligations. Facts, No. 21.

On or about September 11, 2020, Equifax responded to Plaintiff's dispute at his address in Raleigh, North Carolina. Facts, No. 22. In September 2020, Plaintiff owned the residence in Raleigh, North Carolina, and regularly received mail from that address at his current residence in Los Angeles, California. Facts, No. 23.

Dissatisfied with the results of his Equifax dispute, Plaintiff filed a demand for arbitration regarding his Ink card with the American Arbitration Association ("AAA"), Case No. 01-20-0015-1734, on September 30, 2020 (the "Arbitration").

10

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

Facts, No. 24. While Plaintiff's original claim in the Arbitration was for "injunctive relief requiring Chase to correct his credit report, Plaintiff amended his claim "reciting a failure on the part of Chase to furnish agreed upon statements of account, failure of Chase to provide reasonable technical support regarding electronic statement delivery, failure of Chase to properly settle and close-out his account, and incorrect reporting by Chase that the Johnson account in question was delinquent." Facts, No. 25. Despite raising the issue of incorrect credit reporting in his amended claim, Johnson stated that he was not pursuing a Fair Credit Reporting Act (FCRA) claim in the Arbitration. Facts, No. 26.

The Arbitration consisted of four days of evidentiary hearings, numerous conference calls to address motions, briefing, and evidentiary issues. "The parties submitted literally volumes of evidence and briefs including five notebooks of documents and at least ten legal briefs." Facts, No. 27.

As part of the Arbitration, in discussing whether the Fair Credit Reporting Act applied, Plaintiff stated, **"Claimant [Plaintiff] admits (and Respondent [Chase] concurs) that he was liable for the account, and hence the information reported to the CRAs by Respondent was accurate."** Emphasis added. Facts, No. 28.

On March 3, 2022, the arbitrator, Charles Holton, made his award (the "Arbitration Award"). Facts, No. 29. The arbitrator identified two main issues for the Arbitration. The first: did Chase and Johnson enter into an agreement, on or around February 17, 2017, that "Chase would link the new Ink account with a previously used personal account such that Johnson could receive and pay all statements at one online location, and, if so, did Chase breach this agreement by failing to link the accounts, failing to provide tech support when Johnson made inquiry, and ultimately cause Johnson to fail to fully pay off his Ink account when he canceled it, resulting in adverse credit reports by Chase?" Id., at par. C.1.

Arbitrator Holton found on this first issue that "Johnson presented no evidence that his Ink account statements were not available from March, 2017 at

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

least through Sept., 2017 on the separate account website access that he had set up and then apparently forgot.  Chase presented evidence that such statements were available on the Ink account access website.  So, there was no showing of failure on the part of Chase to provide access to statements and promised tech support."  Facts, No. 30.

The second issue that Arbitrator Holton considered was whether a September 6, 2017, phone call between Chase and Johnson resulted in an agreement between them "that Johnson, in paying $111.49 to Chase, was paying off the entire balance of his account and then closing the account with a $0 balance, such that no adverse credit report should have been made?"  Id., at C.2.

Arbitrator Holton found that "a separate contract transaction occurred between the parties in Sept, 2017 involving the closing of the Ink account and payment thereon.  There was a mutual mistake of fact between the parties with Johnson understanding that he was paying the entire balance and Chase understanding that he was paying only the minimum payment."  Facts, No. 31.

After Arbitrator Holton issued the Arbitration Award on March 3, 2022, two parallel proceedings were initiated: on March 4, 2022, Plaintiff sought to appeal the Arbitration Award with the AAA (the "Arbitration Appeal"), and on May 27, 2022, Chase filed its Petition to Confirm the Arbitration Award, filed in the Los Angeles Superior Court as Case No. 22STCP02017.  Facts, Nos. 32 and 36.  While Chase objected that the arbitration agreement under which Plaintiff commenced arbitration had no appellate arbitration terms, ultimately on March 28, 2024, the AAA's appointed panel of arbitrators for Johnson's appeal (the "Panel") commenced proceedings, including whether Plaintiff had any such right to appeal.  Facts, No 33.  The Panel issued its Findings and Ruling on May 17, 2024.  Facts, No. 34.  The Panel found that Johnson did not have the right to pursue an appeal of the Arbitration Award.  Facts, No. 35.  As will be discussed below, on March 5, 2025, the Los Angeles Superior Court confirmed the Arbitration Award, and found that

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

1   Plaintiff did not have the right to appeal the Arbitration Award.  Facts, No. 37.

2        Meanwhile, on September 19, 2022, Plaintiff filed the instant action against

3   Chase for violation of the Fair Credit Reporting Act and its California counterpart.

4   Plaintiff's Complaint is, essentially, a restatement of the same nexus of facts he

5   complained of in the Arbitration, with the argument that Chase's furnishing of

6   information to Equifax created a materially misleading impression of Plaintiff.

7   Compl. 3:6-8.    Plaintiff relies on the same nexus of facts that he presented in the

8   Arbitration. Like in the Arbitration, Plaintiff again alleges:

9        [T]hat Plaintiff had meritorious defenses, including that (a) in September

10       2017, Plaintiff contacted Chase to pay off the entire balance of his account

11       and terminate his account relationship with a $0 balance and (b) Plaintiff's

12       payments had never come due because Chase never provided him a statement

13       with the due date.

14       [B]y omitting the facts (a) that based on Chase's conduct and representations

15       to him, Plaintiff believed that he had paid off his entire balance before closing

16       his account, (b) that the amount purportedly owed had never become due

17       because Chase never provided a statement to Plaintiff, and (c) that Plaintiff

18       was unable to verify whether there was actually a balance on the account

19       because he could not access the relevant billing statements.

20       Compl., 3:18-22 and 4:1-6.

21       On September 22, 2023, Chase filed its Motion to Stay and for Trial

22   Continuance for the purpose of completing the aforementioned Arbitration Appeal

23   before moving for summary judgment in this Court.  Dkt. 37.  The Court heard the

24   motion on October 27, 2023, continued the matter to November 27, 2023, and

25   ordered the parties to file a status report.  Dkt. 45.  On November 21, 2023, the

26   parties filed a Joint Status Report re Motion for Stay and Trial Continuance.  Dkt.

27   51.  The Status Report detailed the current status of the AAA's efforts to appoint the

28   Panel for the Arbitration Appeal.  Id.  On November 27, 2023, the Court continued

DEFENDANT JPMORGAN CHASE BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1  the motion to December 15, 2023.  Dkt. 52.  Once again, the Court continued the

2  motion to January 12, 2024.  Dkt. 55.

3       On January 12, 2024, the Court granted Chase's Motion for Stay and Trial

4  Continuance, vacating all pretrial and trial related deadlines.  Dkt. 59.  After holding

5  several status conferences (Dkt. 61, 62, and 63), the Court, on March 28, 2025,after

6  learning that the Arbitration Appeal had completed, ordered the parties to file a

7  stipulation and proposed order to vacate the stay in about 60 days to allow for a

8  judgment to be entered in the Los Angeles Superior Court case brought by Chase to

9  confirm the Arbitration Award.  Dkt. 63.  The parties complied (Dkt. 64) and the

10  stay was vacated on May 27, 2025.  Dkt. 65.

11       On March 5, 2025, Judge Michael Small of the Los Angeles Superior Court

12  heard, and granted Chase's Motion to Confirm March 3, 2022 Arbitration Award.

13  Facts, No. 37.  Judge Small also ruled on Johnson's challenge to the Findings and

14  Ruling of the Panel, denying his challenge and finding that he had no right to appeal

15  the Arbitration Award with the AAA.  Facts, No. 38.  Judge Small signed the

16  judgment confirming the Arbitration Award on May 9, 2025.  Facts, No. 39.

17       Plaintiff was served with Notice of Entry of Judgment on June 4, 2025.  Facts,

18  No. 40.

19  **II.    LEGAL STANDARD**

20       Summary judgment is appropriate when the moving party demonstrates that

21  "there is no genuine issue as to any material fact and that the moving party is

22  entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Thus, when

23  addressing a motion for summary judgment, the Court must decide whether there

24  exists "any genuine factual issues that properly can be resolved only by a finder of

25  fact because they may reasonably be resolved in favor of either party."  *Anderson v.*

26  *Liberty Lobby, Inc.*, 447 U.S. 242, 250 (1986).  Once defendants meet their initial

27  burden of demonstrating the absence of a genuine issue of material fact as to a claim

28  or issue, the Plaintiff bears the burden of establishing – through competent evidence

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

1 – that there is a genuine issue of material fact for trial. *See* Fed. R. Civ. P. 56(e).

2 Where there is no evidence demonstrating the existence of a genuine issue of

3 material fact, the moving party may prevail simply by "pointing out to the district

4 court . . . that there is an absence of evidence to support the nonmoving party's

5 case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

6 **II.    ARGUMENT**

7     **A.    PLAINTIFF'S CLAIMS FAIL DUE TO THE DOCTRINE OF**

8         **COLLATERAL ESTOPPEL**

9     Plaintiff is precluded from relitigating issues finally determined in the

10 Arbitration. As discussed below, the instant litigation and the Arbitration are based

11 on the same nexus of facts, and the same parties. The issues necessarily decided in

12 the Arbitration are identical with issues to be decided in this action. The Arbitration

13 was a sufficient adjudicative procedure to support collateral estoppel of the issues

14 determined against Plaintiff in this action.

15     "Under the doctrine of collateral estoppel … the second action is upon a

16 different cause of action and the judgment in the prior suit precludes relitigation of

17 issues actually litigated and necessary to the outcome of the first action." *Parklane*

18 *Hosiery Co., Inc*., 439 U.S. at 326-27 n.5 (citations omitted)." *Collins v. D.R.*

19 *Horton, Inc*. (9th Cir. 2007) 505 F.3d 874, 880.

20     "Federal courts apply the collateral estoppel doctrine of the state where the

21 judgment was rendered." *N. Improvement Co. v. United States*, 398 F. Supp. 3d 509,

22 527 (citing *Migra v. Warren City Sch. Dist. Bd. of Educ*., 465 U.S. 75, 81, 104 S. Ct.

23 892, 79 L. Ed. 2d 56 (1984)). The elements of collateral estoppel are "(1) the issue

24 at stake was identical in both proceedings; (2) the issue was actually litigated and

25 decided in the prior proceedings; (3) there was a full and fair opportunity to litigate

26 the issue; and (4) the issue was necessary to decide the merits." *Janjua v. Neufeld*,

27 933 F.3d 1061, 1065 (9th Cir. 2019) (quoting *Oyeniran v. Holder*, 672 F.3d 800,

28 806 (9th Cir. 2012), as amended (May 3, 2012)). *V.V.V. & Sons Edible Oils Ltd. v.*

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DEFENDANT JPMORGAN CHASE BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

*Meenakshi Overseas LLC* (E.D.Cal. Jan. 24, 2022, No. 2:14-cv-02961-TLN-CKD) 2022 U.S.Dist.LEXIS 14625, at *10-11.

"[F]or purposes of issue preclusion, as opposed to res judicata, " 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." (Rest.2d Judgments, § 13, italics added; see *Sabek, Inc. v. Engelhard Corp.*, supra, 65 Cal.App.4th at p. 998; *Sandoval v. Superior Court* (1983) 140 Cal.App.3d 932, 936 [190 Cal. Rptr. 29].) *Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538. "In addition, we note that courts of both this state and others have held that an arbitration award has collateral estoppel effect, "so long as the arbitration had the elements of an adjudicatory procedure." (*Kelly v. Vons Companies, Inc.*, supra, 67 Cal.App.4th at p. 1336.) *Id.* at 1564.

"A prior adjudication of an issue in another action may be deemed "sufficiently firm" to be accorded preclusive effect based on the following factors: (1) whether the decision was not avowedly tentative; (2) whether the parties were fully heard; (3) whether the court supported its decision with a reasoned opinion; and (4) whether the decision was subject to an appeal." *Id.* at 1565.

Here, the issues presented in this matter are identical to issues necessarily decided in the Arbitration. Plaintiff presented the following issues for determination in the Arbitration: failure on the part of Chase to furnish agreed upon statements of account, failure of Chase to provide reasonable technical support regarding electronic statement delivery, failure of Chase to properly settle and close-out his account, and incorrect reporting by Chase that the Johnson account in question was delinquent. Facts, No. 25.

Plaintiff has alleged identical issues in this action: in September 2017, Plaintiff contacted Chase to pay off the entire balance of his account and terminate his account relationship with a $0 balance; Plaintiff's payments had never come due because Chase never provided him a statement with the due date; and, Plaintiff was

DEFENDANT JPMORGAN CHASE BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

1  unable to verify whether there was actually a balance on the account because he

2  could not access the relevant billing statements.  Compl., ¶¶ 8 and 9.

3       Clearly the common issues presented in the Arbitration and this action are: 1)

4  whether Chase failed to provide billing statements for Plaintiff's Ink account; 2)

5  whether Plaintiff had access to electronic billing statements; 3) whether Plaintiff's

6  Ink account was closed correctly and/or whether Plaintiff's Ink account should have

7  been closed with a balance remaining; and 4) whether Chase should have furnished

8  information to credit bureaus that Plaintiff's Ink account was delinquent.

9       Arbitrator Holton issued a written decision on all these issues (except for 4,

10  which necessarily encompasses facts found in the Arbitration.) after a "hotly

11  contested case" that was arbitrated over four hearing days with substantial briefing

12  and argument over evidentiary issues.  Facts, No. 27.  Johnson's argument is,

13  essentially, that he intended to pay off his Ink account in full, but Chase failed to do

14  so, and left a balance remaining.  Johnson was unable to find out about the

15  outstanding balance because he, allegedly, was unable to access his account online

16  to view electronic billing statements.  Arbitrator Holton found that Johnson's

17  arguments were lacking in evidentiary support.

18       As for the first and second issues, Arbitrator Holton found that "there was no

19  showing of failure on the part of Chase to provide access to statements and promised

20  tech support."  Facts, No. 30.  His reasoned analysis shows the basis for his

21  determination that Johnson had access to his billing statements online, and any

22  failure of tech support was more likely due to his own failure to remember his

23  online access ID.  Id.

24       The third issue, whether Plaintiff's Ink account should have been closed with

25  a balance remaining, was also decided against Plaintiff.  Arbitrator Holton found

26  that "a separate contract transaction occurred between the parties in Sept, 2017

27  involving the closing of the Ink account and payment thereon."  Facts, No. 31.  He

28  found that there was "a mutual mistake of fact between the parties", with Chase

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

17

understanding that Plaintiff was paying only the minimum payment, and Johnson understanding that he was paying the entire balance. Id. Based on this finding of mutual mistake, Arbitrator Holton ordered an equitable remedy for Chase to remove adverse credit references regarding Plaintiff's Ink account, and Plaintiff to pay Chase the outstanding balance on the account. Id.

While Arbitrator Holton did not rule on a Fair Credit Reporting Act claim, regarding the fourth issue, it is clear from his Award that Chase's furnishing of information to Equifax of Plaintiff's Ink account delinquency was based on its understanding of Plaintiff's final payment, and not the result of any inaccuracies on the part of Chase. Plaintiff acknowledged that he owed an unpaid balance on his Ink account. Id. It is evident that Plaintiff has raised identical issues in both the Arbitration and the instant action. He should not be allowed to relitigate issues that have come to a final determination.

## B.    PLAINTIFF'S FAIR CREDIT REPORTING ACT CLAIM FAILS

In this case, Plaintiff alleges Chase violated the Fair Credit Reporting Act ("FCRA") at 15 U.S.C. §1681s-2(b), by failing to conduct a reasonable investigation of the dispute he filed with Equifax (a "CRA" under FCRA) regarding his Chase Ink credit card.  To succeed on a FCRA claim, "Plaintiff must prove: '(1) Defendant is a 'furnisher'; (2) Plaintiff notified the CRA that Plaintiff disputed the reporting as inaccurate; (3) the CRA notified the furnisher of the alleged inaccurate information of the dispute; (4) the reporting was in fact inaccurate; and (5) Defendant failed to conduct the investigation required by § 1681s-2(b)(1).'  *Miller v. Westlake Servs. LLC*, 637 F. Supp. 3d 836, 848 (2022) citing *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1155-57 (9th Cir. 2009).

Chase concedes that it is a furnisher for purposes of the FCRA, that Plaintiff notified the CRA (Equifax) that he disputed the reporting of his Chase Ink card as inaccurate, and that Equifax notified Chase of the alleged inaccurate information of the dispute.  At issue are only the last two elements: whether the reporting was in

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

fact inaccurate, and whether Chase failed to conduct the investigation required by § 1681s-2(b)(1). On both issues, Plaintiff cannot prevail. Moreover, Plaintiff's claims are barred by the applicable statute of limitations.

### 1. PLAINTIFF'S FCRA CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS

"Claims under § 1681s-2(b) may be brought no later than the earlier of "(1) two years after the date of discovery by the Plaintiff of the violation that is the basis for such liability; or (2) five years after the date on which the violation that is the basis for such liability occurs." *Forester v. Pa. Higher Educ. Assistance Agency*, 2009 U.S. Dist. LEXIS 107372, *9 citing 15 U.S.C. §1681p.

Plaintiff disputed the accuracy of the reporting of his Ink card with Equifax on August 24, 2020.  Facts, No. 10.  Equifax transmitted the ACDV to Chase, and Chase responded on September 8, 2020.  Facts, No. 17.  Equifax responded to Plaintiff's dispute on or around September 11, 2020.  Facts, No. 22.

The *Forester* Court (supra.) discussed the accrual of the two year statute of limitations stating that "A Section 1681s-2(b)(1) violation "is triggered only after the consumer notifies the CRA, and the CRA then notifies the furnisher of credit." *Nelson v. Equifax Information Services, LLC*, 522 F. Supp. 2d 1222, 1231 (C.D. Cal. 2007) (citing *Nelson v. Chase Manhattan Mortgage Corp*., 282 F.3d 1057, 1059 (9th Cir. 2002)).  *Forester*, supra. at *10.

The relevant alleged violation is Chase's purported failure to conduct a statutorily compliant investigation after Equifax forwarded Plaintiff's dispute to it. "[T]he appropriate date to consider is the information furnisher's failure to investigate inaccuracies properly." *Forester*, supra. at *11 citing *Blackwell v. Capital One Bank*, 2008 U.S. Dist. LEXIS 23339, 2008 WL 793476 at * 2 (S.D. Ga. 2008).

//

In *Blackwell*, supra., the plaintiff filed a dispute with the credit reporting

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DEFENDANT JPMORGAN CHASE BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

agencies on December 11, 2003 regarding a Capital One credit card account. *Id*. Capital One responded on December 22, 2003, that the account information was accurate as reported. *Id*. at *3. The *Blackwell* court stated that the appropriate date to consider for statute of limitations purposes is December 22, 2003 "because that is when [plaintiff] would have discovered the violation that is the basis for liability – Capitol One's failure to investigate properly. So the statute of limitations ran on that claim on 12/21/05." *Id*. at *5.

For purposes of the instant action, September 8, 2020 is the relevant date because it is the date that Chase responded to Plaintiff's Equifax dispute regarding his Ink card. Plaintiff initiated this action on September 19, 2022. [Dkt. 1], which is over two years from September 8, 2020. Thus, Plaintiff failed to file this action for violation of FCRA within the two year time limitation, and is time barred from asserting this claim.

### 2. PLAINTIFF'S ADMISSION THAT THE INFORMATION FURNISHED BY CHASE REGARDING HIS INK CARD WAS ACCURATE PRECLUDES HIS FCRA CLAIM

Before a court looks into the reasonableness of a furnisher's procedures, the consumer must make a prima facie showing of inaccuracy in the information furnished. *Gross v. CitiMortgage, Inc*., 33 F.4th 1246, 1251 (9th Cir. 2022) citing *Shaw v. Experian Info. Sols., Inc*., 891 F.3d 749, 756 (9th Cir. 2018) (quoting *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010)). "[T]o prevail on a FCRA claim against a furnisher, a consumer must make a prima facie showing that the furnisher's report was inaccurate." *Id*.

Here, Plaintiff filed a demand for arbitration regarding his Ink card with the AAA. Facts, No. 24. As part of that arbitration, in discussing whether the Fair Credit Reporting Act applied, Plaintiff stated, "Claimant [Plaintiff] admits (and Respondent [Chase] concurs) that he was liable for the account, and hence the information reported to the CRAs by Respondent was accurate." Facts, No. 28.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

This admission is fatal to Plaintiff's FCRA claim. Without an inaccuracy in the furnished information, there is no basis for the claim. Plaintiff cannot simply ignore this admission because it is inconvenient for his subsequent case attempting to re-litigate the same dispute. By admitting that the information reported was accurate, Plaintiff is admitting that he has no claim under FCRA.

### 3. THE INFORMATION FURNISHED BY CHASE REGARDING PLAINTIFF'S INK CARD WAS IN FACT, ACCURATE

Information on a credit report can be incomplete or inaccurate within the meaning of the FCRA "because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163.

"Holding that there is a private cause of action under § 1681s-2(b) does not mean that a furnisher could be held liable on the merits simply for a failure to report that a debt is disputed. The consumer must still convince the finder of fact that the omission of the dispute was "misleading in such a way and to such an extent that [it] can be expected to have an adverse effect." *Id.* "In other words, a furnisher does not report "incomplete or inaccurate" information within the meaning of § 1681s-2(b) simply by failing to report a meritless dispute, because reporting an actual debt without noting that it is disputed is unlikely to be materially misleading." *Id.*

Here, the disputed information is contained in the ACDV which includes the FCRA Relevant Information which Plaintiff filled out. Facts, Nos. 10, 11, 12, and 14. Specifically, Equifax characterized the dispute as "claims account take-over" and "fradulent [sic] charges made on account." Facts, No. 13. Plaintiff's text in the FCRA Relevant Information field of the ACDV states "Chase never sent a paper bill, never called, never emailed, or otherwise attempted to make me aware in any way that the account carried a balance while the account was open. I regularly logged into my Chase account online and observed a $0 balance." Facts, No. 14.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DEFENDANT JPMORGAN CHASE BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1    The clear implication of the ACDV as received from Equifax was that

2    Plaintiff had been the subject of fraud and/or identity theft.  As such, Chase

3    investigated the disputed information in that light.  Chase's investigation correctly

4    revealed that Plaintiff's Ink card account had not been fraudulently taken over.

5    Facts, No. 15.  It also revealed that all the disputed information in the FCRA

6    Relevant Information field had been furnished accurately to the CRAs, including

7    Equifax.  Facts, Nos. 18-21.

8    Chase considered each item from the FCRA Relevant Information field, and

9    found that Plaintiff was incorrect in his claims about Chase.  Id.  Chase did in fact

10    send Plaintiff a paper bill for his first Ink card billing statement.  Facts, No. 20.

11    Chase called Plaintiff 11 times between September 6, 2017 and May 23, 2018, and

12    made contact with him three times.  Id.  Chase sent five letters to Plaintiff between

13    June 1, 2017 and June 6, 2018, to advise him that a payment was missed or

14    notification of a possible change in the status of his account.  Id.  Chase sent

15    numerous emails about Plaintiff's Ink card, including statement notifications

16    pursuant to his enrollment to receive paperless statements.  Id.  Plaintiff has testified

17    that he was never able to log into his online profile for his Ink card, so his statement

18    that he "regularly logged into my Chase account online and observed a $0 balance"

19    is patently false.  Facts, No. 37.

20    Perhaps more importantly, Plaintiff has testified that all of the information on

21    the ACDV FCRA Relevant Information field, as written by him, is false.  Plaintiff

22    has testified that he never mentioned fraud or identity theft when filling out the

23    Equifax online dispute form.  Facts, No. 15.  Plaintiff has no recollection of whether

24    or not he received a paper statement for his Ink card.  Id.  Plaintiff also testified that

25    Chase did call him about payment for the Ink card.  Facts, No. 6.  In fact, Plaintiff

26    produced many emails from Chase regarding his Ink card.

27    //

28    Plaintiff is precluded from relitigating any issues covered in the Arbitration.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DEFENDANT JPMORGAN CHASE BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

It has been determined that Plaintiff had access to his online billing statements, and that closure of his Ink account with a balance remaining was the result of a mutual mistake between him and Chase.  Facts, Nos. 30 and 31.

In sum, the disputed information transmitted to Chase by Equifax was, in fact, correct.  Since the disputed information was accurate, Plaintiff does not have a FCRA claim.  Chase had no obligation to furnish information about Plaintiff's dispute over the account balance, nor any obligation to furnish information about Plaintiff's purported inability to access online statements, because Plaintiff did, in fact, have access to those statements.  Facts, No. 30.

### 4.   CHASE'S INVESTIGATION OF PLAINTIFF'S EQUIFAX DISPUTE WAS REASONABLE BASED ON THE NATURE OF THE DISPUTE DESCRIPTION IT RECEIVED FROM EQUIFAX

"In determining whether a furnisher's investigation was reasonable, "[t]he pertinent question is ... whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Gorman*, 584 F.3d at 1157 (citing *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005)."  *Miller v. Westlake Servs. LLC*, 637 F. Supp. 3d 836, 848.  "A furnisher's obligation to investigate is procedural: "[a]n investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate." Id. at 1161. *Martinez v. Am. Express Nat'l Bank*, 2022 U.S. Dist. LEXIS 199019, *10 (citing *Gorman*, supra.).  Summary judgment is not precluded altogether on questions of reasonableness; it is appropriate when only one conclusion about the conduct's reasonableness is possible.  *Gorman*, supra. at 1157.

The dispute, as transmitted by Equifax regarded a fraudulent account takeover.  Chase correctly determined that the account had not been fraudulently taken over, a fact Plaintiff admits.  Facts, Nos. 15 and 21.  There is no indication in

DYKEMA GOSSETT LLP
444 South Flower Street
Suite 2200
Los Angeles, California 90071

the ACDV as to what resolution Plaintiff wanted, and there is no indication that any debt for his Ink card is being disputed.  Facts, No. 16.

The *Westra*, supra., case is instructive on the reasonableness of investigations given the information provided by a CRA.  The *Westra* court found that the defendant's investigation was reasonable given the scant information it received regarding the nature of the plaintiff's dispute.  *Id*. at 827.  In *Westra*, the CRA sent an ACDV indicating that the plaintiff was disputing a charge on the basis that the account did not belong to him.  *Id*.  The ACDV, however, did not provide any information about possible fraud or identity theft or include the documentation that he had provided to the CRA.  *Id*. Based on the information provided to it, the defendant performed a reasonable investigation. While the plaintiff further argued that the defendant should have contacted him directly about the disputed account, the court held that, "[w]hile that would have undoubtedly helped matters in the instant case, requiring a furnisher to automatically contact every consumer who disputes a debt would be terribly inefficient and such action is not mandated by the FCRA." *Id.*

The scope of the investigation is dictated by the nature of the dispute transmitted to the furnisher by the CRA.  "The Ninth Circuit recognizes that "[t]he pertinent question [in a furnisher liability case] is thus whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute."' Gorman, supra, 584 F.3d at 1157…"  *Personius v. Specialized Loan Servicing LLC*, 2017 U.S. Dist. LEXIS 216330, *7.  "Indeed, the parameters and scope of whether the furnisher's investigation was reasonable depends on the amount and type of information provided to it from the CRA: Experian."  *Id*.  "In other words, once the furnisher conducts this reasonable investigation and proves by a preponderance of the evidence that it has done so based on the information received by the CRA, it is relieved of liability."  *Id*. at *10.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

1       "[T]he plaintiff must demonstrate some causal relationship between the

2  furnisher's unreasonable investigation and the failure to discover inaccuracies in his

3  account." *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 38 (1st Cir. 2010).

4  *Gustafson v. Experian Info. Solutions, Inc.*, 2015 U.S. Dist. LEXIS 71280, *10.

5  "Accordingly, the central inquiry when assessing a consumer's claim under § 1681s-

6  2(b) is 'whether the furnisher's procedures were reasonable in light of what it learned

7  about the nature of the dispute from the description in the CRA's notice of dispute.'"

8  *Chiang*, 595 F.3d at 38 (quoting *Gorman*, 584 F.3d at 1157). *Id*. at *11

9       Here, Plaintiff's dispute as transmitted in the Equifax ACDV is similar to the

10  situation in *Westra*, except that Chase had even less information to work with.

11  Nonetheless, Chase investigated each piece of information raised on the ACDV

12  against its records, performing a reasonable reinvestigation in these circumstances.

13  After determining from the ACDV that the dispute involved some type of fraud,

14  Chase directed the investigation initially to its fraud department, which determined

15  that payments were made to the Ink card account from a checking account in

16  Plaintiff's name.  Facts, Nos. 18-21.  Given these payments, Chase correctly

17  determined that the account was not fraudulent.  Id.  Chase also reviewed its system

18  of record pursuant to its then current policies and procedures to determine whether

19  any of the disputed information in the FCRA Relevant Information field was being

20  furnished inaccurately.  Id.  After this review, Chase determined that all of the

21  information furnished was accurate.  Id.  Although Plaintiff may have wanted Chase

22  to investigate any number of things, the ACDV presented to Chase indicated that

23  Chase was to investigate if the Ink Account contained fraudulent charges. Based on

24  a reasonable investigation into that question, Chase correctly concluded that the

25  charges on the Ink Account were not fraudulently incurred.

26       There is only one conclusion to be drawn.  Chase's investigation of Plaintiff's

27  Equifax dispute was reasonable in light of the information that Chase received in the

28  ACDV from Equifax.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

25

### C.    SINCE PLAINTIFF'S FCRA CLAIM FAILS, HIS CALIFORNIA CONSUMER REPORTING AGENCIES ACT ("CCRAA") CLAIM ALSO FAILS

"Except for their standing provisions, the FCRA and CCRAA are substantially similar. The CCRAA's requirements of completeness and accuracy mirror those found in the FCRA. Thus cases decided under the FCRA are 'persuasive authority and entitled to substantial weight when interpreting the California provisions.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir.2010) (internal quotation marks and citation omitted)." *Giovanni v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 178914, *20.

"The statute of limitations for the CCRAA claim is "two years from the date the plaintiff knew of or should have known of the violation, but not more than seven years from the earliest date on which liability could have arisen." Cal. Civ. Code § 1785.33. The statute of limitations for the ICRAA claim is "two years from the date of discovery." Cal. Civ. Code § 1786.52. "Courts treat the FCRA, CCRAA and ICRAA two-year discovery similarly." *Noriesta v. Konica. Minolta Bus. Sols. U.S.A., Inc*., 2019 WL 6482221, at *2 (C.D. Cal. July 8, 2019)." *Manriquez v. J.B. Hunt Transp., Inc*., 2022 U.S. Dist. LEXIS 244278, *9.

Since Plaintiff's CCRAA claim mirrors his FCRA claim, it fails on the same grounds, especially because Plaintiff admits that the furnished information is accurate

## III.    CONCLUSION

For the foregoing reasons, Chase respectfully requests that the Court grant summary judgment in its favor as against Plaintiff's Complaint. Chase's furnishing of Plaintiff's credit information was correct and Plaintiff has admitted that fact. Thus, he should not be permitted to profit from his failure to pay his credit card bill through a FCRA lawsuit.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

1   DATED: June 26, 2025              DYKEMA GOSSETT LLP

2

3

4                                By:  /s/ Robert Hyatt

5                                     ROBERT A. HYATT
                                      Attorneys for Defendant
6                                     JPMORGAN CHASE BANK, N.A.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DEFENDANT JPMORGAN CHASE BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION