1
2
3
4

**DYKEMA GOSSETT LLP**
ROBERT A. HYATT, State Bar No. 166178
  *RHyatt@dykema.com*
444 South Flower Street, Suite 2200
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

5
6

Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

7

# UNITED STATES DISTRICT COURT

8

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

9
10
11
12
13
14
15
16
17
18
19

JOSHUA JOHNSON,

            Plaintiff,

      v.

JPMORGAN CHASE BANK, N.A.,

            Defendant.

Case No. 2:22-cv-06718-AB-MAAx

The Hon. André Birotte Jr.
Courtroom  7B

Magistrate Maria A. Audero
Courtroom: 690

**DECLARATION OF ROBERT HYATT IN SUPPORT OF DEFENDANT JPMORGAN CHASE BANK'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

Complaint Filed:    September 19, 2022

20
21
22
23
24
25
26
27
28

DECLARATION OF ROBERT HYATT IN SUPPORT OF DEFENDANT JPMORGAN CHASE BANK'S
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

*DYKEMA GOSSETT LLP*
*444 SOUTH FLOWER STREET*
*SUITE 2200*
*LOS ANGELES, CALIFORNIA 90071*

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

## DECLARATION OF ROBERT HYATT

I, Robert Hyatt, declare as follows:

1.       I am an attorney licensed to practice before all courts in the State of California.  I am an attorney at Dykema Gossett LLP, counsel for JPMorgan Chase Bank, N.A. ("Chase") in this action.  If called as a witness, I could and would testify competently under oath to the facts stated herein.

2.       Attached as Exhibit A are true and correct copies of the relevant portions of the transcript of the Deposition of Joshua Johnson ("Plaintiff"), taken in this matter, on October 27, 2023.

3.       Attached as Exhibit B are true and correct copies of the relevant portions of the transcript of the Deposition of Barbara Burda, taken in this matter, on October 23, 2023.

4.       Attached as Exhibit C is a true and correct copy of the February 16, 2017, email from Chase to Plaintiff.

5.       Attached as Exhibit D is a true and correct copy of the February 27, 2017, email from Chase to Plaintiff.

6.       Attached as Exhibit E is a true and correct copy of the March 8, 2017, email from Chase to Plaintiff.

7.       Attached as Exhibit G are true and correct copies of the relevant portions of the transcript of the Deposition of Carla Wills, taken in this matter, on October 26, 2023.

8.       Attached as Exhibit H is a true and correct copy of an email from OTP CDV Escalation to Carla L. Wills dated August 25, 2020.

9.       Attached as Exhibit I are true and correct copies of emails from Chase to Plaintiff dated September 26, 2017, October 25, 2017, and December 27, 2017.

10.       Attached as Exhibit J is a true and correct copy of the Automated Consumer Dispute Verification ("ACDV") created August 24, 2020, sent by Equifax to Chase.

11.     Attached as Exhibit K is a true and correct copy of the ACDV Response from Chase to Equifax dated September 8, 2020.

12.     Attached as Exhibit L is a true and correct copy of an August 27, 2020 email from Luke Williams to Carla Wills.

13.     Attached as Exhibit M is a true and correct copy of an October 13, 2020 letter from Chase to Plaintiff.

14.     Attached as Exhibit N is a true and correct copy of a letter from Equifax to Plaintiff dated September 11, 2020.

15.     Attached as Exhibit P is a true and correct copy of Chase's Requests for Admission propounded on Plaintiff.

16.     Attached as Exhibit Q is a true and correct of Plaintiff's responses to Requests for Admission.

17.     Counsel for Chase received a letter from AAA dated March 14, 2024, stating that a Preliminary Management hearing in case no. 02-20-0015-1734 would be held on March 28, 2024.  A true and correct copy of the letter is attached as Exhibit S.

18.     I caused Plaintiff to be served with the Notice of Entry of Judgment in Los Angeles Superior Court Case No. 22STCP02017, on June 4, 2025, by electronic service.

I declare under penalty of perjury under the law of the State of California that the foregoing facts are true and correct.  Executed this 26th of June 2025, at Los Angeles, California.

_____
ROBERT HYATT

DECLARATION OF ROBERT HYATT IN SUPPORT OF DEFENDANT JPMORGAN CHASE BANK'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

# EXHIBIT A

CERTIFIED COPY

In the Matter Of:

JOSHUA JOHNSON vs JPMORGAN CHASE BANK, N.A.

Joshua Johnson

October 27, 2023

Job No. 11899 ( J. Johnson )

# Express Deposition Services
## A Legal Support Network Company

1            UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

3

4

5

6  JOSHUA JOHNSON,                    )
                                      )
7                    PLAINTIFF,       )
            VS.                       )     CASE NO.
8  JPMORGAN CHASE BANK, N.A.,         ) 2:22-cv-06718
                                      ) -AB-MAAx
9                    DEFENDANT.       )
10 _____)

11

12

13

14

15          DEPOSITION OF JOSHUA JOHNSON

16            FRIDAY, OCTOBER 27, 2023

17                 12:07 P.M.

18            LOS ANGELES, CALIFORNIA

19

20

21

22  REPORTED BY: DIANE CARVER MANN, CLR, CSR NO. 6008

23  JOB NO.: 11899

24

25

JOSHUA JOHNSON                                          Page 2

1                DEPOSITION OF JOSHUA JOHNSON, TAKEN ON BEHALF OF

2    DEFENDANT AT 444 FLOWER STREET, LOS ANGELES, CALIFORNIA,

3    COMMENCING AT 12:07 P.M., ON FRIDAY, OCTOBER 27, 2023,

4    BEFORE DIANE CARVER MANN, CSR NO. 6008.

5

6    APPEARANCES OF COUNSEL

7

8    FOR THE PLAINTIFF:

9                       RUSSELL LAW PC
                        BY: L. DAVID RUSSELL, ESQ.
10                      1500 ROSECRANS AVENUE, SUITE 500
                        MANHATTAN BEACH, CALIFORNIA 90266
11                      323.638.7551
                        DAVID@RUSSELLLAWPC.COM
12

13   FOR THE DEFENDANT:

14                      DYKEMA GOSSET PLLC
                        BY: ROBERT A. HYATT, ESQ.
15                      444 SOUTH FLOWER STREET, SUITE 2200
                        LOS ANGELES, CALIFORNIA 90071
16                      213.457.1800
                        RHYATT@DYKEMA.COM
17        `

18

19

20

21

22

23

24

25

1           It's important that you understand the

2    questions that you're asked.  So if you don't understand

3    something that I say, please ask me to rephrase it, and

4    I'll do my best.

5           Okay.  Do you have any questions about the

6    procedure for the deposition?

7       A    No.

8       Q    All right.  Are you currently taking any

9    medications?

10      A    No.

11      Q    All right.  Have you taken any drugs today that

12   might affect your memory?

13      A    No.

14      Q    Is there any other reason why you wouldn't be

15   able to give your best testimony today?

16      A    No.

17      Q    Okay.  All right.  Well, let's just get into

18   it, then.

19           Now, we're here about a Fair Credit Reporting

20   Act case that you've brought against Chase.  Is it

21   correct that that case concerns your Chase Ink credit

22   card?

23      A    Yes.

24      Q    Okay.  And is it correct that you've opened

25   that Chase Ink card January 25th, 2017?

JOSHUA JOHNSON                                                    Page 9

1       A     Yes.

2       Q     What state were you living in when you opened

3  the card?

4       A     North Carolina.

5       Q     At some point is it correct that you moved from

6  North Carolina to California?

7       A     Yes.

8       Q     Had you changed your residence from

9  North Carolina to any other state besides California

10  before moving to California?

11       A     No.

12       Q     All right.  So in the beginning of 2017 you

13  were living in North Carolina.  When did you move to

14  California?

15       A     Early 2019, I believe.

16       Q     Okay.  I'm sorry.  Excuse me.

17             In California in early 2017 how did you receive

18  your mail?

19       A     You said in California in 2017.

20       Q     Is that what I said?  I didn't mean to say

21  that.  In North Carolina in 2017 how did you receive

22  your mail?

23       A     How did I receive my mail?

24       Q     I don't mean to hide the ball.  Did you have a

25  P.O. Box?  Did you get your mail at home?  Did you have

1  was referring to your account ending in 0789?

2       A    Yes.

3       Q    Okay.  When you received this email, did you

4  have any concerns that you were getting an email saying

5  that you had chosen to go paperless?

6       A    I'm not sure what you mean by "concerns."

7       Q    Well, was it your understanding.  With your

8  account ending in 0789, your Ink account, that you had

9  chosen to receive paperless statements at this time?

10      A    Yes, I chose to receive paperless statements --

11      Q    All right.

12      A    -- on or about February 16th.

13      Q    Okay.  And then the next sentence there that

14  starts with, "This means," would you please read that

15  sentence.

16      A    "This means we'll no longer mail your

17  statements and some account notices.  We'll post them

18  online and email you a reminder when they're ready."

19      Q    All right.  And what did you understand that

20  sentence to mean?

21      A    I understood it to mean what it says, which is

22  billing statements would not be delivered via USPS mail,

23  they would be made available online.

24      Q    And so was it your understanding from this

25  email that you wouldn't get statements in the mail

JOSHUA JOHNSON                                    Page 14

1   anymore but that you would get a notice that a statement

2   was ready that you could access?

3       A    Yes.

4              (Whereupon, Deposition Exhibit C

5              was marked for identification.)

6          MR. HYATT:  Let's mark this next in order.

7   What are we at, C?

8          MR. RUSSELL:  C.

9          MR. HYATT:  Josh.

10  BY MR. HYATT:

11     Q    So we've marked as Exhibit C a previously

12  produced document, Johnson 7877.

13          Josh, do you recognize this document?

14     A    Yes.

15     Q    Did you create it?

16     A    Yes.

17     Q    Okay.  So if I could have you turn to Johnson

18  7878.  Oh, I'm sorry.  It's 7879 -- and look at it, not

19  reading it aloud but just to yourself, at Section C.

20          Do you see where I'm talking about, towards the

21  top of the page?

22     A    Yes.

23     Q    Okay.  Just look through that.  All right.  So

24  are those statements in Section C there on Johnson 7879

25  true?

JOSHUA JOHNSON                                            Page 17

1              And so it says that you logged into your online
2     profile in order to make a payment.  Do you recall why
3     you did that?
4        A    Yes.
5        Q    Okay.  Why?
6        A    It had been, I think, roughly a month since I
7     had opened the credit card account, and I had been using
8     the credit card to make transactions, so I presumed that
9     a payment was due.
10        Q    All right.  And you never received a paper
11    statement that first month?
12        A    I may have received a statement the very first
13    month before switching to paperless.  I don't recall
14    either way.
15        Q    Okay.  Just to make it a little cleaner on the
16    record, so you have no recollection either way whether
17    you received a paper statement or not?
18              MR. RUSSELL:  Objection.  Vague and ambiguous.
19              THE WITNESS:  I don't remember receiving a
20    paper statement.
21    BY MR. HYATT:
22        Q    Okay.  So your best recollection right now is
23    you logged in because about a month had gone by and you
24    had been using the card and you just wanted to check to
25    see what was due?

JOSHUA JOHNSON                                                    Page 21

1    of Ink, Sapphire, Southwest.  That's in general how I
2    would identify the different cards.
3        Q    Okay.  So when you would log on to your online
4    access in the early part of 2017, you would look to see
5    if all of your accounts were there by the name of the
6    credit card, I guess, for lack of a better description,
7    such as Freedom or Sapphire; is that correct?
8        A    Yes.
9        Q    Okay.  In the early part of 2017 did you ever
10   check to see if all of your accounts were there by
11   matching up the last four digits of the account number
12   or the account number itself?
13       A    I don't remember.
14            MR. HYATT:  Let's go off the record.
15                   (Pause in proceedings.)
16            MR. HYATT:  All right.  Back on the record.  So
17   we'll mark this next in order.  Are we at E?
18            MR. RUSSELL:  D.
19            MR. HYATT:  And then also we'll mark this as E.
20            (Whereupon, Deposition Exhibit D and
21     Deposition Exhibit E were marked for identification.)
22   BY MR. HYATT:
23       Q    All right, Josh, have you seen these e-mails?
24   The first one we marked as Exhibit D was previously
25   produced as Johnson 1006, an email from Chase dated

1    February 27th, 2017.

2        A    Yes.

3        Q    All right.  And then the other one that's

4    previously produced as Johnson 1007, an email from Chase

5    dated March 8th, 2017, have you seen this one?

6        A    Yes.

7        Q    And for the one marked as Exhibit D, the

8    February 27th, 2017 email, what's your understanding of

9    the purpose of this email, or what is it?

10       A    This is an email that -- when an account

11   statement has ostensibly been made available on

12   Chase.com, this is the email that I would receive.

13       Q    Okay.  And then the one that was marked as

14   Exhibit E, the March 8th, 2017 email from Chase, what's

15   your understanding of what that email is about?

16       A    This is an email -- so I configured my credit

17   card account with account alerts, and one of the account

18   alerts is to receive an email message ten days in

19   advance of a payment being due, and so this is that

20   alert message.

21                (Whereupon, Deposition Exhibit F

22                 was marked for identification.)

23   BY MR. HYATT:

24       Q    So this will be marked as Exhibit F.  Let me

25   know the Bates number on that one.  It will make it a

1      Q    Exhibit C, a closing argument.  So looking at

2  Johnson 7880 and Paragraph 7, where it says, "Final

3  payment attempt," do you see where I'm talking about?

4      A    Yes.

5      Q    All right.  If you would just take a second and

6  read to yourself that Paragraph 7.

7      A    Yes.

8      Q    Okay.  So is it true that on September 6th,

9  2017 Chase called you about a payment that was due on

10 your open Ink credit card account?

11     A    Yes.

12     Q    All right.  Now, I know during the arbitration

13 you must have talked about this call a lot.  I'm sure

14 you've thought about it a lot.  What I'd like to know is

15 your best recollection about that phone call on

16 September 6th, 2017.  Is there anything specifically

17 that you remember about that phone call?

18     A    What do you mean by "specifically"?

19     Q    I said, "You are wearing a black dress."

20          She said, "No, I'm not.  It's blue."  Right?

21          I'm asking for specific dialogue that occurred

22 during the phone conversation.

23     A    Specific dialogue.  I do not remember words

24 that were said.  I remember the intent of the

25 conversation.

1  BY MR. HYATT:

2      Q    So I'm not a stickler for yes-or-no answers.  I

3  want you to be able to answer, but I do need you to

4  answer my question.

5      A    No.

6      Q    Okay.  And so let's go to -- I believe that was

7  J.  So looking at K, which has been previously produced

8  as Johnson 1075, an email from Chase to you dated

9  October 25th, 2017.

10          Have you seen this email before?

11     A    Yes.

12     Q    Okay.  And do you recall receiving it the

13  latter part of October, 2017?

14     A    Not specifically, no.

15     Q    All right.  Do you recall taking any actions

16  once you received this email?

17     A    No.

18     Q    Okay.  And then let's go to Exhibit L, which is

19  a previously produced document marked Johnson 1092.

20  It's an email from Chase to you dated December 27th,

21  2017.

22          Have you seen this email before?

23     A    Yes.

24     Q    All right.  Do you recall if you took any

25  actions after receiving this email?

1              MR. HYATT:  I'm sorry.  Excuse me.  Can we go

2    off the record for a minute.

3                        (Pause in proceedings.)

4              MR. HYATT:  Okay.  So let's go back on the

5    record.

6    BY MR. HYATT:

7         Q    I apologize.  I don't know if I cut you off in

8    the middle of your answer, but I think what I what I was

9    saying was -- and that we'll get into this in a

10   minute -- was that you filled out a box in some form

11   that Equifax gave you.

12        A    Let me restate my answer, if that's okay.

13        Q    Please.

14        A    So I went to Equifax.com, initiated a dispute.

15   There was a text box.  I typed the nature of my dispute.

16   I remember it being fairly long.  And then my

17   understanding is that someone at Equifax took that text

18   that I wrote and reshaped it and truncated it, and that

19   is what appears in the relevant information box here.

20        Q    Okay.  All right.  Well, let's go backwards,

21   then, and start with -- so -- okay.

22             So is it correct that you filed a dispute with

23   Equifax August 24th, 2020?

24        A    Yes.

25        Q    Okay.  So specifically in as much as detail as

1   like a text box that was maybe six, seven, eight

2   sentences, and this looks like they took two or three

3   sentences or -- what is this? -- two sentences.  They

4   took two sentences from that.  This looks very similar

5   to text I would have written.  I don't know if they

6   changed, you know, a verb or a subject, but this would

7   have been very similar to something I would have

8   written.

9        Q    Okay.  Is it correct to say that you can't

10  recall specifically what you wrote, but looking at the

11  text in the FCRA relevant field, that that text conforms

12  with your belief as to what you -- as to part of what

13  you wrote in the text box on the Equifax dispute form?

14       A    With, again, the caveat that they may have

15  changed one or two words.  Otherwise, yes.

16       Q    Okay.  Before you filled out the Equifax

17  dispute form, did you make any notes for yourself about

18  what you wanted to say to Equifax?

19       A    I remember drafting -- drafting like the nature

20  of the dispute, and I remember submitting that to

21  several different entities in late August.  I remember

22  submitting it to Equifax, submitting it to the Consumer

23  Financial Protection Bureau, and, I believe, a notice

24  sent directly to Chase too.

25            There were -- I believe they were submitted

1    A    Which timeframe are you referring to?

2    Q    At any time regarding this August 24th, 2020

3  dispute.

4    A    I believe in early or mid 2021 in the context

5  of the arbitration I called Equifax about the dispute to

6  see exactly what they had communicated, but I could be

7  misremembering it.  That might have been a call with

8  Chase.  I don't remember anything -- I don't believe

9  there was anything in communications in 2020.

10    Q    So the reason why I'm kind of hammering at it a

11  little bit is, this language that we talked about the

12  beginning of this that mentions fraud --

13    A    Uh-huh.

14    Q    -- when you filled out the Equifax dispute form

15  describing the nature of the dispute, did you mention

16  fraud at all in that description?

17    A    I didn't mention fraud.  One thing -- no, I did

18  not mention fraud.

19    Q    Okay.  Did you mention ID theft?

20    A    No.

21    Q    Do you have -- yeah, is there something you

22  wanted to say?

23    A    When you said did I mention fraud, you mean the

24  word "fraud" or something that could be construed as

25  fraud?  Or what do you mean by that?

JOSHUA JOHNSON                                        Page 68

1    Q    Well, I do mean the word "fraud."  Do you think

2  that's something that you wrote in the Equifax dispute

3  form that Equifax could have conclude as fraud?

4    A    I communicated to the entities that I

5  communicated my dispute with that I was unable to access

6  the account online and I was unable to access

7  statements.  So I knew there was a balance of $499,

8  because I had never seen a statement until October of

9  2020, I didn't know if -- I just had never seen a

10  statement.  That's the closest thing that would have

11  been communicated in the dispute with respect to, like,

12  fraud.

13    Q    To the best of your recollection regarding the

14  Equifax dispute form, did you say anything about your

15  account being taken over?

16    A    No.

17    Q    So other than what you've just said about not

18  receiving a statement or the lack of access online, is

19  there anything else you can recall writing in the

20  Equifax dispute form that would lead someone at Equifax

21  to write on the Automated Consumer Dispute Verification

22  marked Equifax Supplemental 5, "Claims account takeover

23  fraudulent charges made on account"?

24        MR. RUSSELL:  Objection.  Calls for

25  speculation.

1              THE WITNESS:  No.  If you want to put like the

2       CFPB complaint in front of me, I can answer based on

3       that text.  But just off of cuff, no.

4       BY MR. HYATT:

5       Q    Okay.  Now, looking at that on Equifax

6       Supplemental 5, the FCRA relevant information field

7       that's in the upper right there, in August of --

8       August 24 of 2020, when you submitted the dispute to

9       Equifax, do you believe that the information written

10      there was true at that time?

11      A    Restate the question.

12      Q    It was inartful.

13           I'm just asking that in August -- August 24,

14      2020, was the information in the FCRA relevant

15      information field true?

16      A    I don't remember if Chase sent a paper bill in

17      the very first month the account was open, January of

18      2017.  I believe -- yeah, so there's that.

19      Q    Okay.  In terms of the part that, "Chase never

20      called or otherwise attempted to make me aware in any

21      way that the account carried a balance while the account

22      was open," is that a true statement?

23      A    The part about never called.  September 6th

24      Chase certainly called me to ask for payment.

25      Q    So is it correct to say that that part of it is

1          Did you have an understanding of that Equifax
2    would respond to your dispute?
3        A    No.  Chase and I were playing phone tag from
4    August through October.
5        Q    But Chase isn't Equifax, and you made the
6    dispute to Equifax.  Did you expect to receive any
7    response from Equifax?
8        A    I don't remember what I thought in 2020.
9        Q    Okay.  And so would it be correct to say that,
10   as you're sitting here now, you have no recollection of
11   whether or not there was a time limit for Equifax to
12   respond to you about the dispute?
13       A    I mean, I know now.  What did I know in 2020?
14   I don't remember.
15       Q    Okay.  When you submitted the dispute
16   August 24th of 2020, were you living in Los Angeles?
17       A    Yes.  Santa Monica.
18       Q    Okay.  Well, it is a separate city, so you're
19   right.
20            When you --
21       A    Actually, Los Angeles.  Los Angeles.
22       Q    Okay.  So when you moved from North Carolina to
23   California, did you take any steps to make sure your
24   mail got to you in California?
25       A    Yes.

1      Q    What did you do?

2      A    I filled out a USPS Change of Address Form.

3      Q    Okay.  Did you have any other mailbox service

4  that helped with your mail?

5      A    I'm not sure what you mean by "mailbox

6  service."

7      Q    Did you have any kind of service that would

8  pick up your mail from some location, scan it, and

9  transmit it to you somehow?

10     A    No, not for -- I think I had a virtual mailbox

11  for a brief period for like work, and that's it.

12     Q    Okay.  Well --

13     A    I also had a cleaner in North Carolina who

14  would go to my condo over there and clean, and she knew

15  to let me know if there was any non-junk mail that had

16  been delivered.

17     Q    So when you moved to California, did you still

18  own your place, the last place you lived in

19  North Carolina?

20     A    That's right.

21     Q    Okay.  What was that address in North Carolina?

22     A    907A St. Mary's Street.

23     Q    So did you still own that party on St. Mary's

24  Street when you made the Equifax dispute?

25     A    Yes.

1    STATE OF CALIFORNIA            )

2    COUNTY OF SAN BERNARDINO       )      ss.

3

4         I, Diane Carver Mann, C.S.R. NO. 6008, in and for

5    the State of California, do hereby certify:

6              That prior to being examined, the witness named

7    in the foregoing deposition was by me duly sworn to

8    testify to the truth, the whole truth, and nothing but

9    the truth;

10             That said deposition was taken down by me in

11   shorthand at the time and place therein named and

12   thereafter reduced to typewriting under my direction,

13   and the same is a true, correct, and complete transcript

14   of said proceedings;

15             That if the foregoing pertains to the original

16   transcript of a deposition in a Federal Case, before

17   completion of the proceedings, review of the transcript

18   { } was { } was not required.

19             I further certify that I am not interested in

20   the event of the action.

21        Witness my hand this 7th day of November, 2023.

22

23

24   _____
                 Certified Shorthand Reporter
25               for the State of California

# EXHIBIT B

1                  UNITED STATES DISTRICT COURT

2                  CENTRAL DISTRICT OF CALIFORNIA

3                              -  -  -
    JOSHUA JOHNSON,              )
4                               ) No.:
                                ) 2:22-cv-06718-RSWL-MAA
5           Plaintiff,          )
                                )
6                               ) REMOTE VIDEOTAPED
                                ) DEPOSITION 30(B)(6) OF
7                               ) BARBARA BURDA
        -vs-                    )
8                               ) Filed on Behalf of the
                                ) Plaintiff
9                               )
                                ) Counsel of Record For
10   JPMORGAN CHASE BANK,       ) This Party:
     N.A.,                      )
11                              ) L. David Russell, Esq.
                                  RUSSELL LAW, PC
12          Defendant.            1500 Rosecrans Avenue
                                  Suite 500
13                                Manhattan Beach, CA
                                  90266

14

15

16

17

18                              -   -   -

19

20                  *** CONFIDENTIAL ***

21      REPRODUCTION OF THIS TRANSCRIPT IS PROHIBITED
     WITHOUT AUTHORIZATION FROM THE CERTIFYING
22   AGENCY

23

24

25

 1            REMOTE VIDEOTAPED DEPOSITION 30(B)(6)

 2    OF BARBARA BURDA, a witness herein, called by

 3    the Plaintiff, for examination, taken pursuant

 4    to the Rule 30(b)(6) of the Federal Rules of

 5    Civil Procedure by and before Michelle L.

 6    Goehring, a court reporter and a notary public

 7    in and for the Commonwealth of Pennsylvania,

 8    held remotely with all parties appearing from

 9    their respective locations, on Monday, October

10    23, 2023, at 9:32 a.m. Pacific Time

11    COUNSEL PRESENT:

12
      For the Plaintiff:
13

14    by L. David Russel, Esq.
      1500 Rosecrans Avenue
15    Suite 500
      Manhattan Beach, CA 90266
16    david@russelllaw.com

17    For the Defendant:

18    DYKEMA GOSSETT LLP
      by Robert A. Hyatt, Esq.
19    444 S. Flower Street
      Suite 2200
20    Los Angeles, CA 90071
      rhyatt@dykema.com

21

22    Also Present:      Autumn Taylor, Videographer

23                       Joshua Johnson, Plaintiff

24                       Andrew Cho, In-house counsel
                         for JPMorgan Chase Bank
25

1   right?

2       A.    Yes.

3       Q.    And then in 2017 for January,

4   there's a B; do you see that?

5       A.    I do see that.

6       Q.    And what does that stand for?

7       A.    That represents the month the

8   account was opened.

9       Q.    And dashes, does that indicate there

10  was no account that was created yet?

11      A.    Correct.

12            (Deposition Exhibit No. 4 was

13  marked for identification.)

14  BY MR. RUSSELL:

15      Q.    I've marked as Exhibit 4 a document

16  produced by Chase that's Bates numbered Chase

17  110 through Chase 112.

18            Ms. Burda, have you seen this

19  document before?

20      A.    I have.

21      Q.    What is it?

22      A.    It's an ACDV.

23      Q.    And does that reflect the

24  information Chase received from the CRA?

25      A.    It does.

1    Q.    So do you see where it says Response

2    Code?

3    A.    I do see that.

4    Q.    And it says, "23-Disputed

5    information accurate.  Updated account

6    information unrelated to the dispute."

7          Do you see that?

8    A.    I do see that.

9    Q.    Was that information provided by the

10   CRA?

11   A.    No.

12   Q.    That was information generated by

13   Chase?

14   A.    Yes.

15   Q.    So what information on this form was

16   provided by the CRA?

17   A.    The request data -- actually, the

18   dispute code, FCRA relevant information, the

19   consumer information data column, the account

20   status -- if you want to scroll down a little

21   bit.

22   Q.    Okay.

23   A.    Everything in Request Data column.

24   Q.    Okay.  Just so I understand, the

25   information that came from the -- actually, let

1    me rephrase that.

2              The row that says FCRA Relevant

3    Information, that all came from the CRA;

4    correct?

5         A.    That's my understanding.

6         Q.    And then below that, there's a

7    row -- in the table that says Consumer

8    Information, there's a row that says Request

9    Data and that whole -- sorry -- there's a

10   column that says Request Data and that entire

11   column came from the CRA, is that correct?

12        A.    That's correct.

13        Q.    And then there's another table that

14   says Account Information and there's a column

15   that says Request Data and all of that

16   information came from the CRA; is that correct?

17              MR. HYATT:  I'm sorry,

18   counsel.  Excuse me.  Where does it say Account

19   Information?  I see Account Status.

20              Oh, up above it.  Okay.

21   BY MR. RUSSELL:

22        Q.    So just to ask that question again,

23   Ms. Burda.  So there's a table that says

24   Account Information; correct?

25        A.    Yes.

1      Q.    And the column that says Request

2  Data, that information all comes from the CRA?

3      A.    Correct.

4      Q.    Is there any additional information

5  on this ACDV that comes from the CRA?

6      A.    The account history that comes from

7  the CRA that shows requested, that is what the

8  CRA had on their file.

9      Q.    Okay.  So the table that says

10  Account History on Pages Chase 111 and

11  Chase 112, that also came from the CRA;

12  correct?

13      A.    Correct.

14      Q.    There's a date here at the bottom

15  that says date 9/8/2020; do you see that?

16      A.    I do see that.

17      Q.    And we're at the bottom of Chase

18  112, for the record.  What does that date

19  9/8/2020 refer to?

20      A.    Can you scroll up to the top?  I

21  believe that's their response date.  Yep.

22  That's our response date.

23      Q.    So what does that mean, response

24  date?

25      A.    That's the date that we responded to

1    the ACDV and back to the CRAs.

2         Q.    Do you know what date Chase received

3    this ACDV?

4         A.    Scroll down.  Let me see.

5              Right there.  Receive date.

6         Q.    So Chase received the ACDV on

7    August 24, 2020?

8         A.    Correct.

9         Q.    And then the response date, the

10   closeout date was September 8, 2020; correct?

11        A.    Correct.

12        Q.    So did the investigation take

13   about -- actually, do you know when the

14   investigation started for Mr. Johnson's

15   complaint?

16        A.    I don't.

17        Q.    Who would have that information?

18        A.    I don't know.

19        Q.    Would an investigation normally

20   start the day the ACDV was received by Chase?

21        A.    No.

22        Q.    How long would an ACDV usually sit

23   in a queue before a specialist would start

24   investigating it?

25        A.    It depends.

```
 1          Q.    Would it normally be a week or two?

 2          A.    It could be.

 3          Q.    Is it fair to say it would at least

 4    take a few days?

 5          A.    Yes.  That's fair.

 6          Q.    And you don't know how long Chase

 7    actually investigated Mr. Johnson's FCRA

 8    complaint; correct?

 9          A.    I don't.

10          Q.    Do you know what specialist was

11    assigned the investigation?

12          A.    I don't.  It's redacted on there.

13          Q.    So it would be -- Under Submitted

14    By, normally it would say who actually --

15          A.    Yep.

16          Q.    -- who actually conducted the

17    investigation?

18          A.    Correct.

19          Q.    You don't know who investigated

20    Mr. Johnson's FCRA complaint?

21          A.    I don't.

22          Q.    Did you try to get the identity of

23    that person before your testimony today?

24          A.    I did not.

25          Q.    You didn't try to reach out to that
```

1    person before your testimony today?

2                    MR. HYATT:   Objection, asked

3    and answered.

4                    THE WITNESS:   No.

5    BY MR. RUSSELL:

6        Q.    And you don't know whether that

7    specialist still works for Chase; is that

8    correct?

9        A.    That is correct.

10       Q.    Do you know if this specialist

11   worked on your team back in 2020?

12       A.    I don't know.

13       Q.    Do you recall, at all, being

14   personally involved in this investigation back

15   in 2020?

16       A.    No, I was not involved in this

17   investigation.

18       Q.    Besides the information that we've

19   gone over on the ACDV, is there anything else

20   that Chase received from the CRA related to

21   Mr. Johnson's dispute?

22       A.    Not that I can see.

23       Q.    And do you know whether the

24   information in the FCRA Relevant Information

25   box was everything that Mr. Johnson put in his

1   dispute to the CRA?

2                   MR. HYATT:  Objection, calls

3   for speculation.

4   BY MR. RUSSELL:

5        Q.    Do you know, Ms. Burda?

6        A.    I only know what's on the ACDV.

7        Q.    You don't know if there was

8   additional information that Mr. Johnson

9   submitted to the CRA; correct?

10       A.    I don't know that.

11                  MR. HYATT:  Objection, calls

12   for speculation.

13   BY MR. RUSSELL:

14       Q.    And so what exactly, in Chase's

15   view, was the FCRA dispute?  What information

16   was Mr. Johnson disputing?

17       A.    There's two things, the 104 dispute

18   code, and then we would have evaluated the

19   relevant information, as well.

20       Q.    So what's the 104 dispute code?

21       A.    Claims account takeover, fraudulent

22   charges on the account.

23       Q.    And did that dispute code come from

24   the CRA?

25       A.    Yes.

1        A.    Correct.

2        Q.    Well, you said before that it was

3    your understanding that it was the CRA that put

4    that information in; correct?

5        A.    I did say that.

6        Q.    And what was that based on, your

7    understanding?

8        A.    Just based on how they provide the

9    information to us from the consumer.

10        Q.    And just -- from your experience,

11    you believe that it's extrapolated, the dispute

12    code is extrapolated from the consumer's -- the

13    information the consumer provides?

14                  MR. HYATT:   Objection, lacks

15    foundation.  Calls for speculation.

16    BY MR. RUSSELL:

17        Q.    You can answer.

18        A.    I'm not sure.

19        Q.    Okay.  So that was -- in Chase's

20    view, that was one part of the disputed

21    information, the 104 code; correct?

22        A.    That's correct.

23        Q.    What's the other part of the

24    dispute?

25        A.    The FCRA relevant information.

1     Q.    So everything that's written in

2   there?

3     A.    Correct.

4     Q.    So did the dispute -- the dispute

5   involve an allegation by Mr. Johnson that there

6   was an incorrect balance on his account?

7     A.    Based on the FCRA relevant

8   information, yes.

9     Q.    And what did Chase do to investigate

10  the dispute in this case, in Mr. Johnson's

11  case?

12    A.    We would have followed our procedure

13  steps in our process.

14    Q.    You say would have followed the

15  procedure steps.  Do you know that Chase

16  actually followed those procedures and steps

17  here?

18    A.    Yes.  I believe they would have.

19    Q.    Have you talked to anyone who is

20  involved in this investigation?

21    A.    No, I have not.

22    Q.    So how do you know that those steps

23  were actually followed here?

24    A.    From the documentation on our system

25  of record.

BARBARA BURDA - 30(B)(6) - CONFIDENTIAL
OCTOBER 23, 2023

JOB NO. 729375

1    Q.    And what documentation are you

2    relying on that allows you to draw that

3    conclusion?

4    A.    The memos that reflect the actions

5    that were taken.

6    Q.    And where are those memos?

7    A.    On C3.

8    Q.    Is there anything else that allows

9    you to draw the conclusion that Chase followed

10   the procedures in the manual?

11   A.    No.  I would rely on the system of

12   record.

13   Q.    There's nothing on this document

14   that allows you to draw that conclusion; is

15   that correct?

16   A.    That's correct.

17   Q.    Do you know --

18   A.    Actually, I do want to restate

19   something.

20   Q.    Please.

21   A.    So this document does provide the

22   response that we sent to the CRAs through our

23   investigation, the response data.

24   Q.    And where is that?

25   A.    Under Response Data, it says,

1    Q.    And after the investigation, that

2    was changed to 64 account paid in full was a

3    chargeoff; is that correct?

4    A.    That is correct.

5    Q.    And that 64 account paid in full was

6    a charge off that was Chase's supplementation

7    or correction; is that correct?

8    A.    It's not a correction.  It's a

9    response to the current status of the account.

10   Q.    Okay.  That was Chase's -- that was

11   the end result of Chase's FCRA investigation

12   into Mr. Johnson?

13             MR. HYATT:  Objection, asked

14   and answered.  Misstates her testimony.

15   BY MR. RUSSELL:

16   Q.    You can answer.

17   A.    This reflects the account status at

18   the time that we completed our investigation

19   and responded to the ACDV.

20   Q.    Thank you.

21         Okay.  Besides the things --

22   besides -- so those things you're relying on

23   for your conclusion that Chase followed the

24   procedures in that policy handbook when

25   conducting its investigation here; correct?

```
 1                      MR. HYATT:  Objection,

 2   misstates her testimony.

 3   BY MR. RUSSELL:

 4        Q.    Ms. Burda, what are you relying on

 5   when you're telling me that you think Chase

 6   followed its procedures in the manual?

 7        A.    We rely on the system of record

 8   information and the memos at the time that we

 9   responded.

10        Q.    Okay.  Just the C3 information,

11   then; correct?

12        A.    Yes.

13                      MR. HYATT:  Objection,

14   misstates her testimony.  She just talked about

15   the ACDV response and how she was able to get

16   information from there also.

17                      MR. RUSSELL:  Mr. Hyatt, I'm

18   going to ask you to state your objection and

19   not coach the witness.  I've gotten responses

20   here.  We don't need more coaching.

21   BY MR. RUSSELL:

22        Q.    Ms. Burda, do you know if any

23   documents were generated during the Johnson

24   FCRA investigation?

25        A.    I'm not sure I understand the
```

1      Q.    We're looking at it.

2      A.    Oh, sorry.  I got you.  Yes, I was

3  going to walk through the memos.  Correct.

4      Q.    Correct.  So where we left off, I

5  believe there was a memo or an annotation on

6  this first page, Chase 129, that was part of

7  the basis for this conclusion; is that right?

8      A.    Yes.

9      Q.    And what were you saying then before

10  we left off?

11      A.    I was saying that our processor, as

12  you can see, there's an ACDV control number.

13  That's the Automated Consumer Dispute

14  Verification form that came in through the

15  credit bureau with the control number that's

16  attached to it.

17           Our investigation performed was

18  based on dispute code of 104, which is where

19  the customer or the bureau put a 104 claims on

20  the account.  It was a takeover/fraudulent

21  charge on the account.

22           Our procedure steps would then

23  verify some conditions on the account, special

24  comment code, other relevant information and

25  attachments reviewed, so FCRA comments, images

 1   attached.

 2              If you go to the next page --

 3        Q.    So this was Chase 129.  And,

 4   Ms. Burda, if you could slow down just a tiny

 5   bit.

 6        A.    I'm sorry.

 7        Q.    So there's something on the next

 8   page, 130, that you wanted to tell me about?

 9        A.    It's the continuation of the

10   investigation.  We reviewed the customer

11   information and fraud also reviewed -- and

12   fraud memos in C3.  We validated the SCC in C3.

13   We verified open-and-close status of the

14   account and we correctly -- that was correctly

15   charged off in C3.  We validated the account,

16   that it was paid in full.

17              The head of chargeoff status in C3,

18   we validated the account status.  We

19   validated -- fraud did their processes, as

20   well, because this did go to the fraud

21   department -- stated the customer was liable

22   for the account.  And we indicated to update

23   the information on the ACDV form that was not

24   under dispute.  So that's what I was commenting

25   on.

1      Q.    So is there anything else in

2  Exhibit 6 that led you to conclude that the

3  specialist who was working on this followed the

4  steps in the FCRA manual?

5      A.    No.   This is the majority.

6      Q.    Okay.   So to go back to Chase 129,

7  it says, "Investigation performed based on

8  dispute codes."

9          Do you see that?

10     A.    Yes.

11     Q.    So what dispute codes were

12  investigated?   Can you tell from this memo?

13     A.    I can.   104, which is what was on

14  the ACDV.   So that's what came through the

15  CRAs, the 104.

16     Q.    And is the specialist supposed to

17  investigate any other codes when a code comes

18  through?

19     A.    They are required to investigate the

20  code that's present on the ACDV and anything

21  that's in the relevant information or on image.

22  You know, if there was anything that would

23  stand out in an image or relevant information.

24     Q.    Okay.   So do you know -- so the

25  first sentence is that the investigation was

1  performed on dispute codes 104.  Claims account

2  take-over, fraudulent charges made on account;

3  correct?

4         A.    Correct.

5         Q.    Is there any information here on

6  what was done to perform that investigation?

7         A.    If you scroll down, this was

8  forwarded to our fraud department because of

9  that dispute code which is fraud related.  We

10  would have relied on their information and

11  their investigation for us to move forward.

12         Q.    Okay.

13         A.    Scroll down a little --

14         Q.    So on Page Chase 130, is that where

15  the information was or back on Chase 129?

16         A.    I'm looking.  I think you have to go

17  back farther.

18         Q.    This is the first document.

19         A.    Yeah.  There's other C3 documents,

20  though, that will show fraud's memos.

21         Q.    Okay.

22         A.    Yeah.  Maybe go one more page back,

23  if you can.  There you go.

24         Q.    So here is Chase 131.

25         A.    Yeah.  Right at the top there it

 1  marked for identification.)

 2  BY MR. RUSSELL:

 3      Q.    I've just marked as Exhibit 18 a

 4  document Bates numbered Chase 113 through 114.

 5            Ms. Burda, have you seen this

 6  document before?

 7      A.    I have.

 8      Q.    And what is this document?

 9      A.    This looks like a document from our

10  executive office to our customer.

11      Q.    Okay.  And does this letter have

12  anything to do with the FCRA investigation that

13  was conducted on Mr. Johnson's account?

14      A.    I don't have firsthand knowledge of

15  information on the letter itself except for

16  what I'm reading.

17            But, yes, it does have the

18  information on when we reviewed Mr. Johnson's

19  account.

20      Q.    Is this the final analysis of what

21  the investigation showed?

22            MR. HYATT:  Objection, it's

23  unclear as to what investigation that you're

24  referring to.

25            MR. RUSSELL:  I'll restate.

1   BY MR. RUSSELL:

2        Q.    The FCRA investigation that Chase

3   conducted in August and September of 2020, was

4   this the final product of that investigation?

5        A.    This was the results of the

6   investigation from the August review the

7   executive office asked for the credit bureau

8   team to review.

9        Q.    So this has nothing to do with the

10  FCRA investigation; correct?

11       A.    You mean the ACDV?

12       Q.    Exactly.

13       A.    No, it does not.

14       Q.    Are you aware of the current balance

15  on Mr. Johnson's Chase Ink Business credit card

16  account?

17       A.    I am.

18       Q.    What's the balance?

19       A.    Zero.

20            (Deposition Exhibit No. 19 was

21  marked for identification.)

22  BY MR. RUSSELL:

23       Q.    So I'm going to mark as Exhibit 19

24  Responses to Request for Admission that Chase

25  provided.

1      A.    Yeah.   957.   That's one of the

2    comments.

3      Q.    Is that --

4      A.    Do you want me to read it?

5      Q.    Please.

6      A.    "Charge reversal was declined on

7    6/6/18 as there's no bank error.   The account

8    correctly charged off.   No letter sent as was

9    sent on 6/6/18."

10          I think farther down there's a

11   comment about the e-mail, as well.

12     Q.    So that's not about -- is that

13   comment about the e-mail or access to

14   statements?

15     A.    Yes.   That's my understanding.

16     Q.    Okay.   And --

17     A.    I think you can -- if you go farther

18   down, I think there's a specific comment about

19   the e-mail.   On 6/6 of '18 at 7:57 a.m., just a

20   reiteration, "The charge off review declined.

21   Account correctly charged off as the card

22   member was on paperless statements since

23   2/17/2017 and no bounce back e-mail on file."

24     Q.    What is a bounceback e-mail?

25     A.    My understanding is that the e-mail

BARBARA BURDA - 30(B)(6) - CONFIDENTIAL
OCTOBER 23, 2023                                                                JOB NO. 729375

```
 1   COMMONWEALTH OF PENNSYLVANIA          )
                                           ) SS
 2   COUNTY OF ALLEGHENY                   )

 3                        CERTIFICATE

 4        I, Michelle L. Goehring, a notary public
     in and for the Commonwealth of Pennsylvania, do
 5   hereby certify that the witness, BARBARA BURDA,
     was by me first duly sworn to testify the
 6   truth, the whole truth, and nothing but the
     truth; that the foregoing deposition was taken
 7   at the time and place stated herein; and that
     the said deposition was recorded
 8   stenographically by me and then reduced to
     typewriting under my direction, and constitutes
 9   a true record of the testimony given by said
     witness.

10

11        I further certify that the inspection,
     reading and signing of said deposition were
12   waived by counsel for the respective parties
     and by the witness.

13        I further certify that I am not a
     relative, employee or attorney of any of the
14   parties, or a relative or employee of either
     counsel, and that I am in no way interested
15   directly or indirectly in this action.

16        IN WITNESS WHEREOF, I have hereunto set my
     hand and affixed my seal of office this 5th day
17   of November, 2023.

18
                 Michelle L. Goehring
19
                 Michelle L. Goehring, Notary Public
20               Court Reporter
                 My Commission Expires: July 12, 2025
21               Commission No. 1317058

22

23

24

25
```

# EXHIBIT C

**EXHIBIT**

Ex. B - Johnson - 10/27/23

**Subject:** Confirming your paperless enrollment
**From:** Chase
**Date:** 2/16/17, 9:28 PM
**To:** josh@jj88.org





Dear JOSHUA JOHNSON

Thanks for choosing to go paperless. This email confirms your change from US Mail to paperless delivery for these account(s):

J. JOHNSON...0789

This means we'll no longer mail your statements and some account notices. We'll post them online and email you a reminder when they're ready.

You can see or print your statements anytime at chase.com or on the Chase Mobile® app.

To see or adjust your delivery settings, sign in to chase.com.

Sincerely,

Digital Customer Care

Keep track of your account activity and avoid fees with Account Alerts. To get started, sign in to chase.com or the Chase Mobile® app.

---

**E-mail Security Information**

**E-mail intended for: josh@jj88.org**

If you would like to learn more about e-mail security or want to report suspicious e-mail, click here.

Note: If you are concerned about clicking links in this e-mail, the Chase Online services mentioned above can be accessed by typing chase.com directly into your browser.

---

ABOUT THIS MESSAGE:

This message provides updates and information for your Chase account. To reply or contact us, go to chase.com. Please don't reply to this message.

Chase Privacy Operations, PO Box 659752, San Antonio, Texas 78265-9752. Chase Privacy Notice

Chase Online and Chase Mobile are registered trademarks of JPMorgan Chase & Co.

JPMorgan Chase Bank, N.A. Member FDIC

© 2017 JPMorgan Chase & Co.



JOHNSON01004

# EXHIBIT D

**EXHIBIT**

Ex. D - Johnson - 10/27/23

**Subject:** Your credit card statement is available online
**From:** Chase
**Date:** 2/27/17, 10:01 AM
**To:** josh@jj88.org

E-mail Security Information.

  

Welcome to Chase

Dear JOSHUA S JOHNSON :

We're writing to let you know the statement for your credit card account ending in 0789 is now available online.

To see your statement or download it as a PDF, log on to www.Chase.com. You can also make a payment online or set up an Account Alert so you'll receive a reminder when your payment is due.

**Note:** The account above is enrolled in Paperless Statements, so you won't receive a paper statement in the mail. You can update your statement delivery preferences anytime to begin receiving paper statements again.

Please don't reply directly to this automatically-generated e-mail message. If you have questions, please contact our Customer Support team at the phone number on the back of your card.

Sincerely,

CardMember Services

**E-mail Security Information**

**E-mail intended for: JOSHUA S JOHNSON . For your card ending in: 0789**

If you are concerned about the authenticity of this message, please click here or call the phone number on the back of your credit card. If you would like to learn more about e-mail security or want to report a suspicious e-mail, click here.

**Note:** If you are concerned about clicking links in this e-mail, the Chase Online services mentioned above can be accessed by typing www.Chase.com directly into your browser.

**About This Message:**
This service message was sent to you as a Chase customer to provide you with account updates and information about your Chase relationship.

Replies to this email message will not be read or responded to. To contact Chase, please do not reply to this message, but instead go to www.chase.com for contact information.

Chase Privacy Operations
PO Box 659752
San Antonio, Texas 78265-9752
Chase Privacy Notice

©2017 JPMorgan Chase & Co.

This e-mail was sent to: josh@jj88.org

JOHNSON01006

# EXHIBIT E

**EXHIBIT**

Ex. E - Johnson - 10/27/23

**Subject:** Your Credit Card Payment is Due Alert From Chase Card Services
**From:** Chase
**Date:** 3/8/17, 5:31 AM
**To:** josh@jj88.org

For credit card account ending in 0789: Your credit card payment is due in 10 days.

This Alert was sent according to your settings.  To update your settings, log on at
www.Chase.com.
---------------------

Don't delay.  No hassles.  No stamps.  No envelopes.  Pay your credit card bill today.  Log in
now.

Please don't reply to this Alert. To send a secure message from your Inbox, log on at
www.Chase.com

JOHNSON01007

# EXHIBIT G

1                    UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
2

3                                  No. 2:22-cv-06718-RSWL-MAA

4   JOSHUA JOHNSON,

5                    Plaintiff,

6   vs.

7   JP MORGAN CHASE BANK, N.A.,

8                    Defendant.

9   ------------------------------------
    VIDEOTAPED
10  DEPOSITION OF:        CARLA WILLS,
                          Taken on behalf of the Plaintiff
11
    DATE TAKEN:           October 26, 2023
12
    TIME:                 9:30 a.m.
13
    PLACE:                Via Zoom
14
    REPORTED BY:          HOLLY A. SONNENBERG, RPR
15                        Registered Professional Reporter

16

17

18

19

20

21

22

23

24

25

CARLA WILLS                                              JOB NO. 732581
OCTOBER 26, 2023

```
 1   A P P E A R A N C E S:

 2   MR. L. DAVID RUSSELL
     Russell Law, PC
 3   Attorneys at Law
     1500 Rosecrans Avenue
 4   Suite 500
     Manhattan Beach, California  90266
 5         Appearing on behalf of the Plaintiff;

 6   MR. ROBERT HYATT
     Dykema Gossett
 7   Attorneys at Law
     333 South Grand Avenue
 8   Suite 2100
     Los Angeles, California  90071;

 9
     Videographer:
10   Ms. Jane Phillip
     Steno
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1  gave when you would call a Chase customer regarding an

2  investigation?

3          MR. HYATT:  Objection.  Calls for speculation.

4  Lacks foundation.

5          MR. RUSSELL:

6  Q.      You can answer.

7  A.      Normally, when I call somebody, I say something

8  similar to this or would leave a voicemail similar to

9  this.

10 Q.      Do you know whether, when you call consumers,

11 your number is flagged as spam?

12 A.      I'm not sure.  I have had customers say that it

13 is, and I have had other customers say that it's not.

14 Q.      Do you remember if Mr. Johnson told you that

15 your number had been flagged as spam for him?

16         MR. HYATT:  Objection.  Misstates the testimony.

17         MR. RUSSELL:

18 Q.      You can answer.

19 A.      No.  I do not recall.

20 Q.      So I have marked, as Exhibit 23, a document

21 produced by Chase in this litigation, Bates No. Chase

22 115 through Chase 117.  Ms. Wills, is this an E-mail

23 chain that you were on?

24 A.      It has my name on it, but to confirm, it doesn't

25 show my E-mail address, so I can't really confirm that

CARLA WILLS
OCTOBER 26, 2023

JOB NO. 732581

1   it is.  I mean, it has my name on it, but it doesn't

2   have my E-mail address.

3   Q.      You don't remember receiving this E-mail?

4   A.      No.

5   Q.      So the E-mail is from OTPCDV Escalation.  Do you

6   see that?

7   A.      Yes.

8   Q.      What is OTPCDV Escalation?

9   A.      I'm not sure what OTPCDV's -- OTP stands for,

10  but based on the CDV Escalations, I'm not sure if it's

11  even a mailbox that's still used, but we would reach

12  out -- we normally reach out to CDV and request that

13  they verify a recording on customers' accounts.

14  Q.      What is "CDV"?

15  A.      I do not know.

16  Q.      What does CDV do?

17  A.      So they send -- they review -- to my knowledge

18  what they to is they verify that the information that we

19  are reporting to the credit bureaus matches our records.

20  Q.      And this E-mail says, "To Wills," comma, "Carla

21  L."  Do you see that?

22  A.      Yes.

23  Q.      Does your middle name start with an L?

24  A.      It does.

25  Q.      What is your middle name?

1    activity or collection efforts or anything related to

2    collections for credit card accounts.

3    Q.    Do you know why Luke Williams would have sent

4    this E-mail to you on August 27, 2020?

5         MR. HYATT:  Objection.  Calls for speculation.

6    Lacks foundation.

7         MR. RUSSELL:

8    Q.    You can answer.

9    A.    If Luke Williams sent me this E-mail, I would

10   imagine that I submitted a request to our collections

11   department for review.

12   Q.    What --

13        MR. HYATT:  I need to take a break.  I need to

14   take a break.

15        MR. RUSSELL:  Okay. Let's take 10.

16        THE VIDEOGRAPHER:  We are now off the record.

17   The time is 10:28 a.m. Pacific time.

18        (Whereupon, a break was taken.)

19        THE VIDEOGRAPHER:  We are now on the record.

20   The time is 10:47 a.m. Pacific time.

21        MR. RUSSELL:

22   Q.    Ms. Wills, do you understand that you are still

23   under oath?

24   A.    Yes.

25   Q.    Ms. Wills, going back to what we have marked as

1   Exhibit 24, can you explain to me what this document is?

2         MR. HYATT:  Objection.  Lacks foundation.  Calls

3   for speculation.

4         MR. RUSSELL:

5   Q.    I will rephrase the question.  Do you know what

6   this E-mail is?

7   A.    Yes.  It's an E-mail from our collections

8   department.

9   Q.    Do you know why they sent you this E-mail?

10  A.    No.

11  Q.    Do you know whether you requested this E-mail

12  from the collections department?

13  A.    I don't know.

14  Q.    I'm going to the page that's Bates numbered

15  Chase 121.  Do you see, under "Additional Information,"

16  there are two bullet points?

17  A.    Yes.

18  Q.    The first bullet point says, "Please continue to

19  work with CDV regarding any credit bureau concerns, as

20  this is outside of CSD scope."  Do you see that?

21  A.    Yes.

22  Q.    Do you know whether you continued to work with

23  CDV regarding any credit bureau concerns after receiving

24  this E-mail?

25        MR. HYATT:  Objection.  Calls for speculation,

CARLA WILLS
OCTOBER 26, 2023

JOB NO. 732581

1  Q.      I have marked, as Exhibit 25, a document

2  produced by Chase, Bates numbered -- sorry.  Bates

3  numbered Chase 113 through 114, and, Ms. Wills, I'm

4  happy to scroll through this as slowly as you need, but

5  my question is going to be have you seen this document

6  before?

7  A.      I do not know.

8  Q.      You don't know, one way or the other, whether

9  you have seen this document before?

10  A.      Correct.  I don't know.

11  Q.      If you were involved in an investigation of a

12  CFPB account regarding Mr. Johnson's account, is this

13  the type of document you would review or see in?

14          MR. HYATT:  Objection.  Calls for speculation.

15  Lacks foundation.  Improper hypothetical.

16          MR. RUSSELL:

17  Q.      Are you able to answer that question, Ms. Wills?

18  A.      Can you please restate the question?

19  Q.      This document we have marked as Exhibit 25 --

20  you see this document, correct?

21  A.      Yes.

22  Q.      If you were involved in a CFPB investigation of

23  Mr. Johnson's, Inc., credit card account, is this the

24  type of document that you would have seen?

25          MR. HYATT:  Same objections.

1          MR. RUSSELL:

2    Q.     Are you able to answer that question?

3    A.     I would have only seen a document like this if a

4    previous case was worked.  This appears to be a response

5    letter from my department.

6    Q.     Do you remember if you were involved in

7    preparing the response letter?

8          MR. HYATT:  Objection.  Calls for speculation.

9    Misstates testimony.  Lacks foundation.

10          MR. RUSSELL:

11   Q.     You can answer.

12   A.     No.  I do not remember.

13   Q.     Do you remember if you provided any of the

14   information that is included in this response?

15   A.     I do not remember.

16   Q.     As part of your position as a specialist, you

17   gather this type of information for responses to CFPB

18   disputes?

19          MR. HYATT:  Objection.  Vague and ambiguous as

20   to "this type of information."

21          MR. RUSSELL:

22   Q.     You can respond, or answer.

23   A.     I'm not sure.

24   Q.     Marked as exhibit 26 is a document that's been

25   produced in this litigation Bates No. Johnson 1646

CARLA WILLS                                                    JOB NO. 732581
OCTOBER 26, 2023

1                      CERTIFICATE OF REPORTER

2    STATE OF FLORIDA
     COUNTY OF BREVARD

3

4           I, HOLLY A. SONNENBERG, Shorthand Reporter,

5    certify that I was authorized to and did

6    stenographically report the deposition of CARLA WILLS,

7    that a review of the transcript was not requested, and

8    that pages 1 through 33, inclusive, are a true and

9    accurate record of my stenographic notes.

10          I further certify that I am not a relative,

11   employee, attorney, or counsel to any party, nor to the

12   attorneys of said action, nor in any way interested in

13   the outcome thereof.

14          Dated this 30th day of October, 2023.

15

16

17                              _Holly Sonnenberg_

18                              Holly A. Sonnenberg, RPR
                                Registered Professional Reporter

19

20

21

22

23

24

25

# EXHIBIT H

C. WILLS
06.26.23

**Exhibit 23**

HOLLY A. SONNENBERG

## Wills, Carla L (CCB, USA)

| | |
|---|---|
| **From:** | OTP CDV Escalation |
| **Sent:** | Tuesday, August 25, 2020 3:23 PM |
| **To:** | Wills, Carla L (CCB, USA) |
| **Subject:** | Re: Executive Office Request  - Johnson CFPB  ECW200819-04763 |
| **Attachments:** | johnson cra's.pdf |

Hello,

Case completed, CRA's attached, Update submitted.

Thank you,

Michael Kohles

███████-7927


Original Message Follows: ------------------------

***Please note that we do not process courtesy requests for reage or to have a trade line removed***


Consumer Name: JOSH JOHNSON

ECW/Case ID: ECW200819-04763

16 digit Account Number: ████████████0256

Social Security Number: ███████10

Address: 17352 W SUNSET BLVD APT 405

City: PACIFIC PALISADES

State: CA

Zip Code: 90272-4115

*Please provide specific credit bureau dispute: **If the customer is disputing delinquency, please provide the specific month and year the consumer is disputing.

Customer states that they paid account in full each month and that the account should not have a balance.

1

R0000115
CHASE00115

- Please confirm reporting is accurate for the account.

Thank you

<mark>**CDV Specialists only below this line**<span style="color:red">**Do not remove** Please provide detailed answers</span></mark>

---

**Account system reporting (info from C3)  0**

| | | |
|---|---|---|
| · | Open Date:  {Date} | 01/05/17 |
| · | Closed Date:  {Date} | 09/15/17 |
| · | Last Payment Date: {Date} | 09/06/17 |
| · | Special comment :   - | |
| . | Compliance Condition Code:  XA-closed by consumer | |
| · | Account Status: | 97- charged off |
| · | Bankruptcy (yes or No) | No |
| | . Bankruptcy status: | |
| · | Sold Date (only if the account status reflects sold): - | |
| · | Sold Name:  The company the account was sold to): - | |
| · | Balance: | 499 |
| · | Past due amount: | 499 |
| · | High Credit: | 4920 |
| . | Original Charged Off Amount:  - | 499 |
| · | Payment History | |
| | o  31-60 : | 08/17,11/17 |
| | o  61-90 :  - | 12/17 |
| | o  91-120 : - | 01/18 |
| | o  121-150 : - | 02/18 |
| | o  151-180 :  - | 03/18 |
| | o  181-210 :  - | 04/18 |
| | o  (L)  :  Charged Off: - | 04/30/2018 |

· Does the reporting at the bureaus require an update (Yes or No),  Please see memo below as to what was updat

- IF UPDATE SUBBMITED WILL REFLECT ABOVE INFORMATION FROM C3

<span style="color:red">**Bureaus Overview**</span>
**Equifax** : update required –   **closure date**
**Experian**:  no update required
**Trans Union**:  update required –   payment history 03/18 and 04/18
**Innovis**:  no update required

Reminder:  Provided BAGS with all new requests

2

R0000116
**CHASE00116**

3

**CONFIDENTIAL**

# EXHIBIT I

**EXHIBIT**

Ex. J - Johnson - 10/27/23

**Subject:** Your credit card statement is available online
**From:** Chase
**Date:** 9/26/17, 8:39 AM
**To:** josh@jj88.org

E-mail Security Information.







Dear JOSHUA S JOHNSON :

We're writing to let you know the statement for your credit card account ending in 0256 is now available online.

To see your statement or download it as a PDF, log on to www.Chase.com. You can also make a payment online or set up an Account Alert so you'll receive a reminder when your payment is due.

**Note:** The account above is enrolled in Paperless Statements, so you won't receive a paper statement in the mail. You can update your statement delivery preferences anytime to begin receiving paper statements again.

Please don't reply directly to this automatically-generated e-mail message. If you have questions, please contact our Customer Support team at the phone number on the back of your card.

Sincerely,

CardMember Services

---

**E-mail Security Information**

**E-mail intended for: JOSHUA S JOHNSON . For your card ending in: 0256**

If you are concerned about the authenticity of this message, please click here or call the phone number on the back of your credit card. If you would like to learn more about e-mail security or want to report a suspicious e-mail, click here.

**Note:** If you are concerned about clicking links in this e-mail, the Chase Online services mentioned above can be accessed by typing www.Chase.com directly into your browser.

**About This Message:**
This service message was sent to you as a Chase customer to provide you with account updates and information about your Chase relationship.

Replies to this email message will not be read or responded to. To contact Chase, please do not reply to this message, but instead go to www.chase.com for contact information.

Chase Privacy Operations
PO Box 659752
San Antonio, Texas 78265-9752
Chase Privacy Notice

©2017 JPMorgan Chase & Co.

This e-mail was sent to: josh@jj88.org

JOHNSON01064

**EXHIBIT**

Ex. K - Johnson - 10/27/23

**Subject:** Your credit card statement is available online
**From:** Chase
**Date:** 10/25/17, 9:27 AM
**To:** josh@jj88.org

E-mail Security Information.







Dear JOSHUA S JOHNSON :

We're writing to let you know the statement for your credit card account ending in 0256 is now available online.

To see your statement or download it as a PDF, log on to www.Chase.com. You can also make a payment online or set up an Account Alert so you'll receive a reminder when your payment is due.

**Note:** The account above is enrolled in Paperless Statements, so you won't receive a paper statement in the mail. You can update your statement delivery preferences anytime to begin receiving paper statements again.

Please don't reply directly to this automatically-generated e-mail message. If you have questions, please contact our Customer Support team at the phone number on the back of your card.

Sincerely,

CardMember Services

**E-mail Security Information**

**E-mail intended for: JOSHUA S JOHNSON . For your card ending in: 0256**

If you are concerned about the authenticity of this message, please click here or call the phone number on the back of your credit card. If you would like to learn more about e-mail security or want to report a suspicious e-mail, click here.

**Note:** If you are concerned about clicking links in this e-mail, the Chase Online services mentioned above can be accessed by typing www.Chase.com directly into your browser.

About This Message:
This service message was sent to you as a Chase customer to provide you with account updates and information about your Chase relationship.

Replies to this email message will not be read or responded to. To contact Chase, please do not reply to this message, but instead go to www.chase.com for contact information.

Chase Privacy Operations
PO Box 659752
San Antonio, Texas 78265-9752
Chase Privacy Notice

©2017 JPMorgan Chase & Co.

This e-mail was sent to: josh@jj88.org



JOHNSON01075

**EXHIBIT**

Ex. L - Johnson - 10/27/23

**Subject:** Your credit account statement is available online
**From:** Chase
**Date:** 12/27/17, 9:38 AM
**To:** josh@jj88.org

E-mail Security Information.

    



Dear JOSHUA S JOHNSON :

The statement for your credit account ending in 0256 is now available online.

To see your statement or download it as a PDF, go to www.Chase.com, where you can also set up automatic payments or alerts to remind you when your payment's due.

Keep in mind: This account is enrolled in paperless statements, so you won't get a paper statement in the mail. You can update your delivery preferences to start getting paper statements again any time on chase.com.

If you have questions, please call the phone number on the back of your card or account statement.

Thank you,

Chase Customer Service

**E-mail Security Information**

**Email intended for: JOSHUA S JOHNSON . For your account ending in: 0256**

If you're concerned about the authenticity of this message, please visit our fraud information page or call us using the phone number on the back of your card or account statement. If you'd like to learn more about email security or want to report a suspicious email, go to click here. and search for "fraud information."

You can type www.Chase.com directly into your browser if you don't want to click links in this email.

About This Message:
We sent you this message to give you account updates and information about your Chase relationship.

If you reply to this message, we will not be able to read or respond to it. Please go to www.Chase.com to find the best way to contact us.

Chase Privacy Operations
PO Box 659752
San Antonio, Texas 78265-9752
Chase Privacy Notice

JOHNSON01092

# EXHIBIT J

**TRADES**　　　　**AUTOMATED CONSUMER DISPUTE VERIFICATION**　　　　**EQUIFAX**

| Control Number | 99990237086153022 | | | Dispute 1 | [ 021 ] CLAIMS ACCOUNT TAKE-OVER, FRADULENT CHARGES MADE ON ACCOUNT. VERIFY SPECIAL COMMENT CODE. |
|---|---|---|---|---|---|
| Origin NCRA | EFX | Bureau Code | 9999 | | |
| Date Created | 08/24/2020 | Response Due | 09/17/2020 | Dispute 2 | |
| Subscriber Code | 458ON13374 | | | | |
| Account Number | 4246315231750256 | | | FCRA Relevant Information | Chase never sent a paper bill, never called, never emailed, or otherwise attempted to make me aware in any way that the account carried a balance while the account was open. I regularly logged into my Chase account online and observed a $0 balance. |
| Grantor Name | JPMorgan Chase | | | | |
| Responder Name | | | | | |
| Responder Phone | | Responder Date | 09/08/2020 | | |

| Response Code | ☐ Verified As Reported　☑ Disputed Info accurate. Updtd Acct info unrelated to dispute　☐ Delete Account　☐ Delete Fraud |
|---|---|

**Reported Consumer Identity**　　　　　　　　　　　　Same　　Modified Consumer Identity

| Name | JOHNSON JOSHUA S | ☑ | Name | JOHNSON JOSHUA S |
|---|---|---|---|---|
| AKA/FN | | ☐ | AKA/FN | |
| Address | 907 SAINT MARYS ST #A, RALEIGH, NC 27605 | ☐ | Address | 311 S SWALL DR APT 204, LOS ANGELES, CA 90048 |
| Previous | 308 S BLOUNT ST APT 2113, RALEIGH, NC 27601 | ☐ | Previous | |
| SSN | | ☑ | SSN | |
| DOB | | ☑ | DOB | |
| Phone | | ☐ | Phone | |

| Account Type | ECOA | Date Open | Type & Rate | Narratives |
|---|---|---|---|---|
| 0G | I | 01/2017 | R9 | [ 168 ] ACCOUNT CLOSED AT CONSUMERS REQUEST |
| 0G | I | | R9 | [ 067 ] CHARGED OFF ACCOUNT |
| Credit Limit | High Credit | Current Balance | Past Due | [ 275 ] FLEXIBLE SPENDING CREDIT CARD |
| $10000 | | $499 | $499 | |
| $10000 | $4920 | $0 | $NaN | |
| Original Charge Off | Date 1st Delinquency | Last Payment Date | Date Closed | [ 168 ] ACCOUNT CLOSED AT CONSUMERS REQUEST |
| $499 | 10/01/2017 | 09/01/2017 | | [ 067 ] CHARGED OFF ACCOUNT |
| $499 | 10/01/2017 | 08/01/2020 | 09/01/2017 | [ 275 ] FLEXIBLE SPENDING CREDIT CARD |
| Activity Designator | Creditor Classification | Purchased/Sold To Name/Original Creditor | Purchase Indicator | Mortgage Id Number |
| [C] CLOSED | | | | |
| Terms Duration | Term Frequency | Monthly Payment | Actual Payment | Deferred Pay Start Date | Ballon Payment | Ballon Payment Due |
| | [M] MONTHLY | | | | | |
| | [M] MONTHLY | $NaN | | | | |

| Date of Account Info | Pmt Hist Months 1-12 | Pmt Hist Months 13-24 | Pmt Hist Months 25-36 | Pmt Hist Months 37-48 | Pmt Hist Months 49-60 | Pmt Hist Months 61-72 | Pmt Hist Months 73-84 |
|---|---|---|---|---|---|---|---|
| 07/25/2018 | ............. | ............. | ............. | ............. | ............. | ............. | ............. |
| 08/01/2020 | LLLLLLL****** | LLLLLLLLLLLLL | 456LLLLLLLLLL | 000000100123 | ............B | ............. | ............. |
| | | | | | | | |
| | | | | | | | |

| Consumer Info Indicator | |
|---|---|
| | |

| Compliance Condition Code | [ XA ] Account closed at consumer's request |
|---|---|
| | [ XA ] Account closed at consumer's request |
| Special Comment Code | |
| | |
| Account Status | [ 97 ] Unpaid balance reported as a loss by credit grantor (charge-off) |
| | [ 64 ] Account paid in full was a charge-off |
| Payment Rating | |

**TRADES**　　　　**AUTOMATED CONSUMER DISPUTE VERIFICATION**　　　　**EQUIFAX**

CONFIDENTIAL　　EQUIFAX SUPPLEMENTAL 000005

| Images Sent |
| --- |
| No Images Sent |
| |
| |
| |
| |
| |

CONFIDENTIAL

EQUIFAX SUPPLEMENTAL 000006

HISTORICAL ACCOUNT DATA        AUTOMATED DISPUTE CONSUMER VERIFICATION        EQUIFAX

**No Historical Data.**

CONFIDENTIAL        EQUIFAX SUPPLEMENTAL 000007

**HISTORICAL ACCOUNT DISPUTE REASON     AUTOMATED DISPUTE CONSUMER VERIFICATION          EQUIFAX**

**No Historical Account Information was disputed.**

CONFIDENTIAL     EQUIFAX SUPPLEMENTAL 000008

# DECLARATION OF CUSTODIAN OF RECORDS

I, Dia Colclough, declare as follows:

1. My name is (Dia Colclough). I am over 21 years of age and I am fully competent to make this declaration. I am a Legal Support Associate for Equifax, Inc. and have authority to submit this declaration on its behalf.

2. To the best of my knowledge, after reasonable inquiry, The records herein are true and accurate copies of the documents maintained by Equifax, Inc.

3. These records are true and accurate copies of documents that were prepared in the ordinary course of business at or near the time of the acts, conditions or events described in the records.

I declare under penalty of perjury under the laws of the State of Georgia that the foregoing is true and correct.

Executed this 22nd day of September, 2023.

*Dia Colclough*

**Name**
**Legal Support & Records Custodian**
**Equifax, Inc**

# EXHIBIT K

B. PURDA - 30(B)(6)
10.23.23

**Exhibit 4**

Michelle L. Goehring

3/17/2021    autoserv-clive.jpmchase.net/CART/sso/ACDV.aspx?id=99990237086153022

**ACDV Response:**

| Account Number: | ████ 0256 | SSN: | █ 910 |
|---|---|---|---|
| Consumer Name: | JOSHUA JOHNSON | Control Number: | ████ 3022 |
| Response Code: | 23 - Disputed information accurate. Updated account information unrelated to the dispute. | Subscriber Code: | ████ |
| Response Date: | 9/8/2020 | DF Contact Number: | |
| Response Due Date: | 9/17/2020 | DF Authorized Name: | ███ ████ |

**Dispute Information:**

| Dispute Code 1: | 104 - Claims account take-over, fraudulent charges on account |
|---|---|
| Dispute Code 2: | |
| FCRA Relevant Information: | Chase never sent a paper bill, never called, never emailed, or otherwise attempted to make me aware in any way that the account carried a balance while the account was open. I regularly logged into my Chase account online and observed a $0 balance. |

**Consumer Information:**

| | Request Data | Response Data | Same / Diff |
|---|---|---|---|
| Last Name: | JOHNSON | JOHNSON | Same |
| First Name: | JOSHUA | JOSHUA | Same |
| Middle Name: | S | S | Same |
| Generation Code: | | | Unknown |
| Prev. Last Name: | | | Unknown |
| Prev. First Name: | | | Unknown |
| Prev. Middle Name: | | | Unknown |
| Prev. Generation Code: | | | |
| SSN: | ████ 4910 | ████ 4910 | Same |
| Date of Birth: | 12/27/1988 | 12/27/1988 | Same |
| Telephone Number: | | | Unknown |
| ECOA Code: | 1 - Individual | 1 - Individual | |
| Street Address: | 907 SAINT MARYS ST #A | 311 S SWALL DR APT 204 | Different |
| City: | RALEIGH | LOS ANGELES | |
| State: | NC | CA | |
| Zip: | 27605 | 90048 | |
| Prev. Street Address: | 308 S BLOUNT ST APT 2113 | | Unknown |
| Prev. City: | RALEIGH | | |
| Prev. State: | NC | | |
| Prev. Zip: | 27601 | | |
| 2nd Prev. Street Address: | 17352 W SUNSET BLVD APT 405 | | |
| 2nd Prev. City: | PACIFIC PALISADES | | |
| 2nd Prev. State: | CA | | |
| 2nd Prev. Zip: | 90272 | | |

**Account Information:**

| | Request Data | Response Data |
|---|---|---|
| Account Status: | 97 - Unpaid balance reported as a loss (charge-off) | 64 - Account paid in full, was a charge-off |
| Payment Rating: | | |
| Cond. / Cum. Status: | | |

**CONFIDENTIAL**

R0000110
CHASE00110

3/17/2021                          autoserv-clive.jpmchase.net/CART/sso/ACDV.aspx?id=99990237086153022

| | | |
|---|---|---|
| CII: | | |
| MOP: | | |
| CCC: | XA - Account closed at Consumer's request. | XA - Account closed at Consumer's request. |
| SCC: | | |
| Portfolio Type: | R - Revolving | R - Revolving |
| Account Type: | 0G - Flexible Spending Credit Card | 0G - Flexible Spending Credit Card |
| Interest Type Indicator: | | |
| Terms Duration: | REV | REV |
| Terms Frequency: | M | M |
| Date Opened: | 1/5/2017 | 1/5/2017 |
| Date of Account Information: | 7/25/2018 | 8/26/2020 |
| Date of Last Payment: | 9/1/2017 | 8/26/2020 |
| Date Closed: | | 9/15/2017 |
| FCRA DOFD: | 10/1/2017 | 10/24/2017 |
| Current Balance: | 499 | 0 |
| Amount Past Due: | 499 | 0 |
| High Credit / Original Amt.: | | 4920 |
| Credit Limit: | 10000 | 10000 |
| Original Charge Off Amount: | 499 | 499 |
| Actual Payment: | | |
| Scheduled Monthly Payment: | | 0 |
| Original Creditor Name: | | |
| Creditor Classification: | | |
| Agency ID: | | |
| Sec. Mktg. Agency Acct Num: | | |
| Mortgage ID Number (MIN): | | |
| Specialized Payment Ind.: | | |
| Defrd. Payment Start Date: | | |
| Balloon Payment Amt.: | | |
| Balloon Payment Due Date: | | |
| Portfolio Indicator: | | |
| Purchased From / Sold To: | | |
| Image Count: | | |
| Queue Name: | ACDV Fraud Follow-up | |
| Received Date: | 2020-08-24 23:39:33 | |
| Orig Codes Description: | Equifax | |
| Narrative / Remarks: | CLOSED ACCOUNT | |

| Account History: Year | | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2020 | Req. | | | | | - | - | - | - | - | - | - | - |
| | Resp. | | | | | L | L | L | L | L | L | L | L |
| 2019 | Req. | - | - | - | - | - | - | - | - | - | - | - | - |
| | Resp. | L | L | L | L | L | L | L | L | L | L | L | L |

R0000111

CONFIDENTIAL

CHASE00111

3/17/2021                     autoserv-clive.jpmchase.net/CART/sso/ACDV.aspx?id=99990237086153022

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2018 | Req. | - | - | - | - | - | L | L | 6 | 5 | 4 | 3 | 2 |
| | Resp. | L | L | L | L | L | L | L | L | 6 | 5 | 4 | 3 |
| 2017 | Req. | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | B | - |
| | Resp. | 2 | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | B |
| 2016 | Req. | - | - | - | - | - | - | - | - | - | - | - | - |
| | Resp. | - | - | - | - | - | - | - | - | - | - | - | - |
| 2015 | Req. | - | - | - | - | - | - | - | - | - | - | - | - |
| | Resp. | - | - | - | - | - | - | - | - | - | - | - | - |
| 2014 | Req. | - | - | - | - | - | - | - | - | - | - | - | - |
| | Resp. | - | - | - | - | - | - | - | - | - | - | - | - |
| 2013 | Req. | - | - | - | - | | | | | | | | |
| | Resp. | - | - | - | - | | | | | | | | |

**Associated Consumer Information:**

| | | |
|---|---|---|
| Last Name: | | |
| First Name: | | |
| Middle Name: | | |
| Generation Code: | | |
| SSN: | | |
| Date of Birth: | | |
| Telephone Number: | | |
| ECOA Code: | | |
| CII: | | |
| Street Address: | | |
| City: | | |
| State: | | |
| Zip: | | |
| Submitted By: | ▮▮▮▮▮▮▮ | |
| Date: | 9/8/2020 | |

R0000112
CHASE00112

# EXHIBIT L

C. WILLS
06.26.23

**Exhibit 24**

HOLLY A. SONNENBERG

## Wills, Carla L (CCB, USA)

| | |
|---|---|
| **From:** | Williams, Luke S (CCB, USA) |
| **Sent:** | Thursday, August 27, 2020 11:01 AM |
| **To:** | Wills, Carla L (CCB, USA) |
| **Cc:** | Williams, Luke S (CCB, USA) |
| **Subject:** | EO // JOSH JOHNSON // Case #160359 // IRR SLA: 27-AUG-2020 11:10 |

Escalated Complaints Auto Notification --- Case #160359.

The following information is the IRR for the Case:

Hello Carla

I have reviewed accounts ██████████0256, ██████████5827 and ██████████9959 for the customer (CM) Josh Johnson.
The following is the information I can provide for you

**Collection Efforts**

- Per Purged Events, There were 11 Outbound calls between 09/06/17 and 05/23/18 with 3 customer contacts
- Per ICP (Integrated Collections Platform) , I was able to locate 3 Calls with the CM between May 2018 and June 2018. Due to retention limits, I am unable to review these calls.
- **The following letters were sent by Chase**
- 06/01/17: Letter AM0151: Please make a payment right away
- 08/02/17: Letter AM0048: Make a payment right away on your past due account
- 09/05/17: Letter BZC004: Please make a payment to prevent your account from being closed
- 04/02/18: Letter AM0147: Please make a payment right away to prevent a charge off for bad debt
- 06/06/18: Letter AM0097 was sent: We have confirmed your account is charged off

**After charge off , the account was placed with 4 Vendors. I have reached out to them for calls, and letters and will follow up as soon as available**

**EO Link**

https://fn.jpmchase.net/navigator/bookmark.jsp?desktop=FaaS5&repositoryId=FaaS5&repositoryType=p8&docid=Folder%2C%7BE47846E9-DBDF-4AD9-893A-CCFC9EC5D13A%7D%2C%7B00E12F74-0000-CD1B-815A-1A2C735DAE21%7D&mimeType=folder&template_name=Folder

**Account Statuses**

██████████0256

Date of Last Payment: 08/26/20
Balance at time of Charge Off:$499.53 as of 04/30/18
Current Balance:$0.00
Current Principal Balance:$0.00

██████████5827

**CONFIDENTIAL**

R0000120
CHASE00120

Closed per bank policy as of 01/18/15 with $0 balance

█████████9959

Closed due to inactivity as of 04/03/20 with $0 balance

**Additional Information**

- Please continue to work with CDV regarding any credit bureau concerns as this is outside of CSD scope.
- Please follow your department guidelines regarding Online Statements as this is outside of CSD Scope

Please let me know if you any further questions or concerns.

Thank You,

Luke S Williams | CCB Collections
600 Business Center Dr. | Mail Code FL1-6255| Heathrow, FL 32746
( Phone ███████-4014|+ luke.s.williams@chase.com

Your CCB Card Collections Escalated Complaints Team

**CONFIDENTIAL**

R0000121
**CHASE00121**

# EXHIBIT M

CHASE ⬡

**Executive Office**
3415 Vision Drive OH4-7120
Columbus, OH 43219

October 13, 2020

C. WILLS
10.26.23
**Exhibit 25**
HOLLY A. SONNENBERG

Josh Johnson
311 S Swall Dr., Apt. 204
Los Angeles, CA 90048

**The account is valid, and we have updated the credit bureau reporting**

Reference Number:ECW200819-04763

Dear Josh Johnson:

We are responding to your inquiry about credit bureau reporting for your credit card account ending in 0256. We appreciate the opportunity to assist you.

We reviewed your account and found that an update is needed for the reporting to the credit reporting agencies. We've sent the updated information to the agencies for their records. The account should show:

- Account closure date updated to September 15, 2017
- The payment history for March 2018 to show 151-180 days late
- The payment history for April 2018 to show 181-210 days late

Allow sufficient time for the update, then request a new copy of your credit report. If you find an error, let the specific agency know. Here's the contact information for the four credit reporting agencies:

| Equifax | Experian | Innovis | TransUnion |
|---|---|---|---|
| PO Box 740256 | PO Box 9701 | PO Box 1640 | PO Box 2000 |
| Atlanta, GA 30374-0256 | Allen, TX 75013 | Pittsburgh, PA 15230-1640 | Chester, PA 19022-2000 |
| 1-866-349-5191 | 1-800-493-1058 | 1-800-540-2505 | 1-800-916-8800 |
| equifax.com | experian.com | innovis.com | transunion.com |

We found that we are reporting all other information about your account accurately to the credit reporting agencies. Because the information we send to the credit reporting agencies must accurately reflect your account activity and status, we can't comply with your request for any additional updates.

We reviewed your account and determined it's valid. Here's what we found during our review:

- Payments to the account were made using a checking in your name

For the above reasons, the account isn't fraudulent, and you are liable for the balance.

We made 11 calls to you between September 6, 2017 and May 23, 2018; we made contact with you 3 times. Due to the time that has past we are unable to review the calls. We sent you the enclosed letters dated June 1, 2017, August 2, 2017, September 5, 2017, April 2, 2018 and June 6, 2018 to share with you that a payment was missed or notification of a possible change in status of the account.

**CONFIDENTIAL**

R0000113
CHASE00113

53  Your account was enrolled to receive paperless statement on February 17, 2017, only customers can
54  enroll their account in paperless statements. We have confirmed that the statement notifications were
55  successful sent to your email and were not returned as being undeliverable. We have enclosed your 2017
56  and 2018 billing statements for review.
57
58  We apologize for any confusion or frustration you experienced trying to resolve your concern. We were
59  unable to locate any recent calls about your account and the calls we found noted to your account we are
60  unable to review due to the length of time that has passed.
61
62  If you have questions about this issue, please call Carla at 1-877-805-8049, extension 1050023663. We
63  accept operator relay calls. Our office is available to help, if needed, Monday through Friday from 8 a.m.
64  to 6 p.m. Eastern Time.
65
66  Sincerely,
67
68  Card Executive Office
69  1-800-242-7399
70  1-847-787-5509 Fax; it's free from any Chase branch
71  chase.com
72
73  Enclosed:    Letters dated June 1, 2017, August 2, 2017, September 5, 2017, April 2, 2018 and June 6,
74            2018
75            Your billing statements for 2017 and 2018
76
77  cc  Consumer Financial Protection Bureau,    Compliant ID  200819-5382344
78
79      Esta comunicación contiene información importante acerca de la cuenta. Si tiene alguna pregunta o
80      necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-800-242-7399, de lunes a
81                  viernes de 8 a.m. a 6 p.m., hora del Este.
82
83  Other than providing the credit reporting agencies with requests for the changes, deletions, or entries
84  described above, we're not responsible for the actions or omissions of the credit reporting agencies. We
85  can't guarantee, warrant, or take responsibility for the performance of any credit reporting agency in
86  changing, deleting, or making entries in relation to any derogatory credit information.
87
88
89
90                                                                              Idxxxx
91                                                                              ECD30

**CONFIDENTIAL**

R0000114
**CHASE00114**

# EXHIBIT N

# EQUIFAX

CREDIT FILE : September 11, 2020

Confirmation # 0237086153

Dear JOSHUA JOHNSON:

We are pleased to let you know that the results of the dispute you recently filed with Equifax are complete. Here are a few things to know about the process:

**Were changes made to my credit report and what actions were taken?**

Please see the following page(s) for more detailed information on your specific results.

If we were able to make changes to your credit report based on the information you provided, we have done so. Otherwise, we contacted the company reporting the information to Equifax for them to investigate your dispute.

In this situation:

- We request that the reporting company verify the accuracy of the information you disputed;

- We provide them with any relevant information and supporting documentation you provided us with the dispute to consider as part of the investigation; and

- We request that they send Equifax a response to your dispute and update their records and systems, as necessary.

If your dispute involves a public record item, Equifax contacts a third party vendor to obtain the most recent status of the public record.

**How do I know that all of this is happening?**

When the reporting company replies to us, they certify that they have followed Equifax's instructions and the law; considered all information and documentation provided; and updated your information, as necessary.

**What should I do if I do not agree with the results of the investigation?**

<u>You have a few options:</u>



(Continued On Next Page)

0237086153-GZG-08df0108000000db-09112020

000034478- DISC
JOSHUA JOHNSON
907 SAINT MARYS ST # A
RALEIGH, NC 27605-1230

P.O. Box 105069
Atlanta, GA 30348

CONFIDENTIAL

EQUIFAX SUPPLEMENTAL 000009

- You should contact the reporting companies about the information you believe is fraudulent. Ask them to explain their fraud investigation process and what steps you should take. If they agree the information does not belong to you, have them confirm this to you in writing. You can then send us the written confirmation if the item continues to report on your credit file.
- You may add a statement of up to 100 words to your credit report. If you provide a consumer statement that contains medical information related to services provided or medical procedures, then you expressly consent to including this information in every credit report we issue about you.
- You may contact the company that reports the information to us and dispute it directly with them. If you would like written proof about your accounts (such as the original agreement), please contact your creditors directly.
- You may provide us additional information or documents (such as an identity theft report or a letter from the reporting company) about your dispute to help us resolve it by visiting our website https://www.equifax.com/personal/disputes. You may also mail your documents to PO Box 740256, Atlanta GA 30374-0256 or contact us by calling a Customer Representative at 866-349-5191.
- You may contact the Consumer Financial Protection Bureau or your State Attorney General's office about your issue or complaint against Equifax or the company reporting the information.

CONFIDENTIAL    EQUIFAX SUPPLEMENTAL 000010

**What else should I know?**

If there has been a change to your credit report based on your dispute, or if you add a consumer statement, you may request that Equifax send an updated report to companies who received your credit report within the last two years for employment purposes, or within the last six months for any other purpose (the past 12 months for residents of California, Colorado, Maryland, New York and New Jersey residents).

Also, if you are interested, you may  request a description of how the reinvestigation was conducted along with the business name, address and telephone number (if reasonably available) of the furnisher of your disputed information.

For frequently asked questions about your credit report and the dispute process, please visit Equifax at https://help.equifax.com/.

As always, we thank you for contacting Equifax and the results of your dispute are on the pages following this letter.

CONFIDENTIAL                              EQUIFAX SUPPLEMENTAL 000011

**How should I read my dispute results?**

To better assist you with understanding the results of your dispute, please review the information below:

- If an item states **"Deleted"**, we have removed it from your credit report and taken steps so it does not reappear.
- If an item states **"Verified as Reported"**, the reporting company has certifed it is reporting accurately.
- If an item states **"Updated"**, we have updated one or more fields on the item based on information received from the reporting company.

Updated disputed account information only: **The information you disputed has been updated.**

Updated disputed account information. Additional account information was also updated: **The information you disputed has been updated as well as other information on this item.**

Disputed information accurate. Updated account information unrelated to the dispute: **The information you disputed has been verified as accurate, however, information unrelated to your dispute has been updated.**

Consumer's dispute not specific. Consumer Information verified. Account information updated: **Information on your report has been updated.**

| *The Results Of Our Reinvestigation* |
| --- |

>>> *We have reviewed the former address. The results are:* The disputed address has been deleted.

**Credit Account Information**
*(For your security, the last 4 digits of account number(s) have been replaced by *) (This section includes open and closed accounts reported by  credit grantors)*

| *Account History Status Code Descriptions* | 1 : 30-59 Days Past Due<br>2 : 60-89 Days Past Due<br>3 : 90-119 Days Past Due<br>4 : 120-149 Days Past Due | 5 : 150-179 Days Past Due<br>6 : 180 or More Days Past Due<br>G : Collection Account<br>H : Foreclosure | J : Voluntary Surrender<br>K : Repossession<br>L : Charge Off |
| --- | --- | --- | --- |

>>> **We have researched the credit account. Account # - 424631523175*** The results are:** This item has been updated to report as paid in full. THE FOLLOWING FIELDS HAVE BEEN MODIFIED: *BALANCE *PAST DUE *CHARGE OFF AMOUNT *HIGH CREDIT *DATE OF LAST PAYMENT *ACTIVITY DESIGNATOR *ADDITIONAL INFORMATION *ACCOUNT HISTORY.   If you have additional questions about this item please contact: *Chase Card, PO Box 15298, Wilmington, DE 19850-5298 Phone: 800432311*

CONFIDENTIAL

EQUIFAX SUPPLEMENTAL 000012

For an added convenience, use one of the below options to start an investigation or check the status of your dispute.

Visit us at **www.equifax.com/personal/disputes** or Call us at  866-349-5191.

                                                           0237086153-GZG-08df0108000000db-09112020

CONFIDENTIAL                              EQUIFAX SUPPLEMENTAL 000013

## STATE OF CALIFORNIA - Consumer Credit Reporting Agencies Act

You have a right to obtain a copy of your credit file from a consumer credit reporting agency. You may be charged a reasonable fee not exceeding eight dollars ($8.00). There is no fee, however, if you have been turned down for credit, employment, insurance, or a rental dwelling because of information in your credit report within the preceding 60 days. The consumer credit reporting agency must provide someone to help you interpret the information in your credit file.

You have a right to dispute inaccurate information by contacting the consumer credit reporting agency directly. However, neither you nor any credit repair company or credit service organization has the right to have accurate, current, and verifiable information removed from your credit report. Under the Federal Fair Credit Reporting Act, the consumer credit reporting agency must remove accurate, negative information from your report only if it is over seven (7) years old. Bankruptcy information can be reported for ten (10) years.

If you have notified a consumer credit reporting agency in writing that you dispute the accuracy of information in your file, the consumer credit reporting agency must then, within 30 business days, reinvestigate and modify or remove inaccurate information. The consumer credit reporting agency may not charge a fee for this service. Any pertinent information and copies of all documents you have concerning an error should be given to the consumer credit reporting agency.

If reinvestigation does not resolve the dispute to your satisfaction, you may send a brief statement to the consumer credit reporting agency to keep in your file, explaining why you think the record is inaccurate. The consumer credit reporting agency must include your statement about disputed information in a report it issues about you.

You have a right to receive a record of all inquiries relating to a credit transaction initiated in 12 months preceding your request. This record shall include the recipients of any consumer credit report.

You may request in writing that the information contained in your file not be provided to a third party for marketing purposes.

You have a right to place a "security alert" in your credit report, which will warn anyone who receives information in your credit report that your identity may have been used without your consent. Recipients of your credit report are required to take reasonable steps, including contacting you at the telephone number you may provide with your security alert, to verify your identity prior to lending money, extending credit, or completing the purchase, lease, or rental of goods or services. The security alert may prevent credit, loans, and services from being approved in your name without your consent. However, you should be aware that taking advantage of this right may delay or interfere with the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, or cellular phone or other new account, including an extension of credit at point of sale. If you place a security alert on your credit report, you have a right to obtain a free copy of your credit report at the time the initial one year security alert period expires. A security alert may be requested by calling the following toll-free telephone number: 1-800-525-6285 .

You have a right to bring civil action against anyone, including a consumer credit reporting agency, who improperly obtains access to a file, knowingly or willfully misuses file data, or fails to correct inaccurate file data.

If you are a victim of identity theft and provide to a consumer credit reporting agency a copy of a valid police report or a valid investigative report made by a Department of Motor Vehicles investigator with peace officer status describing your circumstances, the following shall apply:

You have a right to have any information you list on the report as allegedly fraudulent promptly blocked so that the information cannot be reported. The information will be unblocked only if (A) the information you provide is a material misrepresentation of the facts, (B) you agree that the information is blocked in error, or (C) you knowingly obtained possession of goods, services, or moneys as result of the blocked transactions. If blocked information is unblocked, you will be promptly notified.

You have a right to receive, free of charge and upon request, one copy of your credit report each month for up to 12 consecutive months.

If you have requested the credit file and not the credit score, you may request and obtain a credit score. The charge for the credit score is $7.95. To obtain a credit score from Equifax call (800) 685-1111.

You may also mail your request to:

Equifax
P.O. Box 105379
Atlanta, GA 30348-5379

Using any other address may delay the processing of your request.  Please enclose a check for $7.95 payable to Equifax Information Services LLC with your request. Also include your complete name, complete address, social security number and date of birth.

CONFIDENTIAL

EQUIFAX SUPPLEMENTAL 000014

## CONSUMERS HAVE THE RIGHT TO OBTAIN A SECURITY FREEZE

You have a right to place a 'security freeze' on your credit report, which will prohibit a consumer reporting agency from releasing information in your credit report without our express authorization. The security freeze is designed to prevent credit, loans, and services from being approved in your name with your consent. However, you should be aware that using a security freeze to take control over who get access to the personal and financial information in your credit report may delay, interfere with, or prohibit the timely approval of any subsequent requires or application you make regarding a new loan, credit, mortgage, or any other account involving the extension of credit.

As an alternative to a security freeze, you have the right to place an initial or extended fraud alert on your credit file at no cost. An initial fraud alert is a 1-year alert that is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If you are a victim of identity theft, you are entitled to an extended fraud alert, which is a fraud alert lasting 7 years.

A security freeze does not apply to a person or entity, or its affiliates, or collection agencies on behalf of the person or entity, with which you have an existing account that requests information in your report for the purposes of reviewing or collecting the account.  Reviewing the account includes activities related to account maintenance, monitoring, credit line increases, and account upgrades and enhancements.

To place, temporarily lift or permanently remove the security freeze on your Equifax credit report, you can:

- Log in or create an account at www.myEquifax.com
- Call us at 1-888-298-0045
- Or send a written request that includes your name, address and social security number to:

**Equifax Information Services LLC**
**P.O. Box 105788**
**Atlanta, GA 30348**

If you are sending your request by mail, please be sure to include copies of the following:

| One Government Issued ID | One Item to Validate Your Address |
|---|---|
| Example:<br>Driver's License<br>State Issued ID Card<br>Passport<br>Birth Certificate | Example:<br>Driver's License<br>Utility Bill<br>Pay Stub<br>W2 or 1099 Form |

For requests to temporarily lift your security freeze, please be sure to specify the desired date range.
Example: March 15, 20XX to March 21, 20XX

CONFIDENTIAL

EQUIFAX SUPPLEMENTAL 000015

### *State of California - Notice to California Consumers*

You may request a description of the procedure used to determine the accuracy and completeness of the information, including the business name and address of the furnisher of information contacted, and if reasonably available the telephone number.

If you still disagree with an item after it has been verified, you may send to us a brief statement, not to exceed one hundred words, explaining the nature of your dispute. Your statement will become part of your credit file and will be disclosed each time that your credit file is accessed as long as the information you disputed is retained in our credit reporting database.

If the reinvestigation results in a change to or deletion of the information you are concerned about, or you submit a statement in accordance with the preceding paragraph, you have the right to request that we send your revised credit file to any company that received your credit file in the past twelve months for any purpose or in the past two years for employment purposes.

CONFIDENTIAL

EQUIFAX SUPPLEMENTAL 000016

# EQUIFAX

## CREDIT FILE : September 11, 2020

**Confirmation # 0237086153**

| **Personal Identification Information** *(This section includes your name, current and previous addresses, and any other identifying information reported by your creditors.)* |
| --- |

Name On File:     Joshua S Johnson
Social Security #    XXX-XX-4910   Date of Birth: December 27, 1988
Current Address:   311 S Swall Dr Apt 204, Los Angeles, CA 90048   Reported: 09/2020
Previous Address(es):   907 Saint Marys, Raleigh, NC 27605   Reported: 09/2020
                  308 S Blount St Apt 2113, Raleigh, NC 27601   Reported: 09/2020
                  1438 14th St Apt 1, Santa Monica, CA 90404   Reported: 09/2020
                  1109 Foxglove Dr, Morrisville, NC 27560   Reported: 09/2020

Formerly Known As:    Jammie S Johnson; John A Johnson; Jonathan H Johnson; Julie F Johnson

Please address all future correspondence to:

 www.equifax.com/personal/disputes

 Equifax Information Services LLC
P.O. Box 105069
Atlanta, GA 30348

 Phone: (800) 377-6568
M - F 9:00am to 5:00pm in your time zone.

## Credit Account Information
*(For your security, the last 4 digits of account number(s) have been replaced by *) (This section includes open and closed accounts reported by credit grantors)*

### Account Column Title Descriptions:

| | | | |
| --- | --- | --- | --- |
| Account Number - | The Account number reported by credit grantor | Amount Past Due - | The Amount Past Due as of the Date Reported |
| Date Acct. Opened - | The Date that the credit grantor opened the account | Date of Last Paymnt - | The Date of Last Payment |
| | | Actual Pay Amt - | The Actual Amount of Last Payment |
| High Credit - | The Highest Amount Charged | Sched Pay Amt - | The Requested Amount of Last Payment |
| Credit Limit - | The Highest Amount Permitted | Date of 1st Delinquency - | The Date of First Delinquency |
| Terms Duration - | The Number of Installments or Payments | Date of Last Actvty - | The Date of the Last Account Activity |
| Terms Frequency - | The Scheduled Time Between Payments | Date Maj Delq Rptd - | The Date the 1st Major Delinquency Was Reported |
| Months Reviewed - | The Number of Months Reviewed | | |
| Activity Designator - | The Most Recent Account Activity | Charge Off Amt - | The Amount Charged Off by Creditor |
| Creditor Class - | The Type of Company Reporting The Account | Deferred Pay Date - | The 1st Payment Due Date for Deferred Loans |
| Date Reported - | Date of Last Reported Update | Balloon Pay Amt - | The Amount of Final(Balloon) Payment |
| Balance Amount - | The Total Amount Owed as of the Date Reported | Balloon Pay Date - | The Date of Final(Balloon) Payment |
| | | Date Closed - | The Date the Account was Closed |
| Status - | Condition of Account When Last Updated by Creditor or Otherwise | | |

| ***Account History Status Code Descriptions*** | 1 : 30-59 Days Past Due | 5 : 150-179 Days Past Due | J: Voluntary Surrender |
| --- | --- | --- | --- |
| | 2 : 60-89 Days Past Due | 6 : 180 or More Days Past Due | K: Repossession |
| | 3 : 90-119 Days Past Due | G: Collection Account | L: Charge Off |
| | 4 : 120-149 Days Past Due | H: Foreclosure | |

**American Express**     *PO Box 981537 El Paso TX 79998-1537 : (800) 874-2717*

CONFIDENTIAL

EQUIFAX SUPPLEMENTAL 000017

*Para información en español, visite www.consumerfinance.gov/learnmore o escribe a la Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.*

### A Summary of Your Rights Under the Fair Credit Reporting Act

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under FCRA. **For more information, including information about additional rights, go to www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.**

- **You must be told if information in your file has been used against you.** Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment - or to take another adverse action against you - must tell you, and must give you the name, address, and phone number of the agency that provided the information.

- **You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:

  - a person has taken adverse action against you because of information in your credit report;
  - you are the victim of identity theft and place a fraud alert in your file;
  - your file contains inaccurate information as a result of fraud;
  - you are on public assistance;
  - you are unemployed but expect to apply for employment within 60 days.

  In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies.  See www.consumerfinance.gov/learnmore for additional information.

- **You have the right to ask for a credit score.** Credit scores are numerical summaries of your credit-worthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

- **You have the right to dispute incomplete or inaccurate information.** If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.consumerfinance.gov/learnmore for an explanation of dispute procedures.

- **Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information.** Inaccurate, incomplete, or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.

- **Consumer reporting agencies may not report outdated negative information.** In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

CONFIDENTIAL        EQUIFAX SUPPLEMENTAL 000035

○ **Access to your file is limited.** A consumer reporting agency may provide information about you only to people with a valid need - usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.

○ **You must give your consent for reports to be provided to employers.** A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.consumerfinance.gov/learnmore.

○ **You may limit "prescreened" offers of credit and insurance you get based on information in your credit report.** Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on. You may opt out with the nationwide credit bureaus at 1-888-5-OPTOUT (1-888-567-8688).

○ The following FCRA right applies with respect to nationwide consumer reporting agencies:

**CONSUMERS HAVE THE RIGHT TO OBTAIN A SECURITY FREEZE**

**You have a right to place a "security freeze" on your credit report, which will prohibit a consumer reporting agency from releasing information in your credit report without your express authorization.** The security freeze is designed to prevent credit, loans, and services from being approved in your name without your consent.  However, you should be aware that using a security freeze to take control over who gets access to the personal and financial information in your credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, or any other account involving the extension of credit.

As an alternative to a security freeze, you have the right to place an initial or extended fraud alert on your credit file at no cost. An initial fraud alert is a 1-year alert that is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If you are a victim of identity theft, you are entitled to an extended fraud alert, which is a fraud alert lasting 7 years.

A security freeze does not apply to a person or entity, or its affiliates, or collection agencies acting on behalf of the person or entity, with which you have an existing account that requests information in your credit report for the purposes of reviewing or collecting the account. Reviewing the account includes activities related to account maintenance, monitoring, credit line increases, and account upgrades and enhancements.

○ **You may seek damages from violators.** If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.

○ **Identity theft victims and active duty military personnel have additional rights.** For more information, visit www.consumerfinance.gov/learnmore.

CONFIDENTIAL          EQUIFAX SUPPLEMENTAL 000036

**States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General. For information about your federal rights, contact:**

| TYPE OF BUSINESS: | CONTACT: |
|---|---|
| 1.a. Banks, savings associations, and credit unions with total assets of over $10 billion and their affiliates.<br><br>b. Such affiliates that are not banks, savings associations, or credit unions also should list, in addition to the CFPB | a. Bureau of Consumer Financial Protection<br>1700 G Street NW<br>Washington, DC 20552<br><br>b. Federal Trade Commission<br>Consumer Response Center<br>600 Pennsylvania Avenue, N.W.<br>Washington, DC 20580<br>(877) 382-4357 |
| 2. To the extent not included in item 1 above:<br><br>a. National banks, federal savings associations, and federal branches and federal agencies of foreign banks<br><br>b. State member banks, branches and agencies of foreign banks (other than federal branches, federal agencies, and Insured State Branches of Foreign Banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act.<br><br>c. Nonmember Insured Banks, Insured State Branches of Foreign Banks, and insured state savings associations<br><br>d. Federal Credit Unions | a. Office of the Comptroller of the Currency<br>Customer Assistance Group<br>1301 McKinney Street, Suite 3450<br>Houston, TX 77010-9050<br><br>b. Federal Reserve Consumer Help Center<br>P. O. Box 1200<br>Minneapolis, MN 55480<br><br><br><br>c. FDIC Consumer Response Center<br>1100 Walnut Street, Box #11<br>Kansas City, MO 64106<br><br>d. National Credit Union Administration<br>Office of Consumer Financial Protection (OCFP)<br>Division of Consumer Compliance Policy and Outreach<br>1775 Duke Street<br>Alexandria, VA 22314 |
| 3. Air carriers | Asst. General Counsel for Aviation Enforcement & Proceedings<br>Aviation Consumer Protection Division<br>Department of Transportation<br>1200 New Jersey Avenue, SE<br>Washington, DC 20590 |
| 4. Creditors Subject to Surface Transportation Board | Office of Proceedings, Surface Transportation Board<br>Department of Transportation<br>395 E Street, S.W.<br>Washington, DC 20423 |
| 5. Creditors Subject to Packers and Stockyards Act, 1921 | Nearest Packers and Stockyards Administration area supervisor |
| 6. Small Business Investment Companies | Associate Deputy Administrator for Capital Access<br>United States Small Business Administration<br>409 Third Street, S.W., Suite 8200<br>Washington, DC 20416 |
| 7. Brokers and Dealers | Securities and Exchange Commission<br>100 F Street, NE<br>Washington, DC 20549 |
| 8. Federal Land Banks, Federal Land Bank Associations, Federal Intermediate Credit Banks, and Production Credit Associations | Farm Credit Administration<br>1501 Farm Credit Drive<br>McLean, VA 22102-5090 |
| 9. Retailers, Finance Companies, and All Other Creditors Not Listed Above | Federal Trade Commission<br>Consumer Response Center<br>600 Pennsylvania Avenue, N.W.<br>Washington, DC 20580<br>(877) 382-4357 |

CONFIDENTIAL          EQUIFAX SUPPLEMENTAL 000037

*Para información en español, visite www.consumerfinance.gov/learnmore o escribe a la Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.*

## Remedying the Effects of Identity Theft

You are receiving this information because you have notified a consumer reporting agency that you believe that you are a victim of identity theft. Identity theft occurs when someone uses your name, Social Security number, date of birth, or other identifying information, without authority, to commit fraud. For example, someone may have committed identity theft by using your personal information to open a credit card account or get a loan in your name. For more information, visit www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.

The Fair Credit Reporting Act (FCRA) gives you specific rights when you are, or believe that you are, the victim of identity theft. Here is a brief summary of the rights designed to help you recover from identity theft.

1. **You have the right to ask that nationwide consumer reporting agencies place "fraud alerts" in your file to let potential creditors and others know that you may be a victim of identity theft.** A fraud alert can make it more difficult for someone to get credit in your name because it tells creditors to follow certain procedures to protect you. It also may delay your ability to obtain credit. You may place a fraud alert in your file by calling just one of the three nationwide consumer reporting agencies. As soon as that agency processes your fraud alert, it will notify the other two, which then also must place fraud alerts in your file.

   - Equifax:      1-800-525-6285    www.equifax.com
   - Experian:     1-888-397-3742    www.experian.com
   - TransUnion:   1-800-680-7289    www.transunion.com

   An underlined initial fraud alert stays in your file for at least one year. An extended alert stays in your file for seven years. To place either of these alerts, a consumer reporting agency will require you to provide appropriate proof of your identity, which may include your Social Security number. If you ask for an extended alert, you will have to provide an identity theft report. An identity theft report includes a copy of a report you have filed with a federal, state, or local law enforcement agency, and additional information a consumer reporting agency may require you to submit. For more detailed information about the identity theft report, visit www.consumerfinanace.gov/learnmore.

2. **You have the right to free copies of the information in your file (your "file disclosure").** An initial fraud alert entitles you to a copy of all the information in your file at each of the three nationwide agencies, and an extended alert entitles you to two free file disclosures in a 12-month period following the placing of the alert. These additional disclosures may help you detect signs of fraud, for example, whether fraudulent accounts have been opened in your name or whether someone has reported a change in your address. Once a year, you also have the right to a free copy of the information in your file at any consumer reporting agency, if you believe it has inaccurate information due to fraud, such as identity theft. You also have the ability to obtain additional free file disclosures under other provisions of the FCRA. See www.consumerfinance.gov/learnmore.

3. **You have the right to obtain documents relating to fraudulent transactions made or accounts opened using your personal information.** A creditor or other business must give you copies of applications and other business records relating to transactions and accounts that resulted from the theft of your identity, if you ask for them in writing. A business may ask you for proof of your identity, a police report, and an affidavit before giving you the documents. It also may specify an address for you to send your request. Under certain circumstances, a business can refuse to provide you with these documents. See www.consumerfinance.gov/learnmore.

CONFIDENTIAL        EQUIFAX SUPPLEMENTAL 000038

4. **You have the right to obtain information from a debt collector.** If you ask, a debt collector must provide you with certain information about the debt you believe was incurred in your name by an identity thief - like the name of the creditor and the amount of the debt.

5. **If you believe information in your file results from identity theft, you have the right to ask that a consumer reporting agency block that information from your file.** An identity thief may run up bills in your name and not pay them. Information about the unpaid bills may appear on your consumer report. Should you decide to ask a consumer reporting agency to block the reporting of this information, you must identify the information to block, and provide the consumer reporting agency with proof of your identity and a copy of your <u>identity theft report</u>. The consumer reporting agency can refuse or cancel your request for a block if, for example, you don't provide the necessary documentation, or where the block results from an error or a material misrepresentation of fact made by you. If the agency declines or rescinds the block, it must notify you. Once a debt resulting from identity theft has been blocked, a person or business with notice of the block may not sell, transfer, or place the debt for collection.

6. **You also may prevent businesses from reporting information about you to consumer reporting agencies if you believe the information is a result of identity theft.** To do so, you must send your request to the address specified by the business that reports the information to the consumer reporting agency. The business will expect you to identify what information you do not want reported and to provide an <u>identity theft report.</u>

7. The following FCRA right applies with respect to nationwide consumer reporting agencies:

**CONSUMERS HAVE THE RIGHT TO OBTAIN A SECURITY FREEZE**

**You have a right to place a "security freeze" on your credit report, which will prohibit a consumer reporting agency from releasing information in your credit report without your express authorization.** The security freeze is designed to prevent credit, loans, and services from being approved in your name without your consent. However, you should be aware that using a security freeze to take control over who gets access to the personal and financial information in your credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, or any other account involving the extension of credit.

As an alternative to a security freeze, you have the right to place an initial or extended fraud alert on your credit file at no cost. An initial fraud alert is a 1-year alert that is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If you are a victim of identity theft, you are entitled to an extended fraud alert, which is a fraud alert lasting 7 years.

A security freeze does not apply to a person or entity, or its affiliates, or collection agencies acting on behalf of the person or entity, with which you have an existing account that requests information in your credit report for the purposes of reviewing or collecting the account. Reviewing the account includes activities related to account maintenance, monitoring, credit line increases, and account upgrades and enhancements.

To learn more about identity theft and how to deal with its consequences, visit www.consumerfinance.gov/learnmore, or write to the Consumer Financial Protection Bureau. You may have additional rights under state law. For more information, contact your local consumer protection agency or your state Attorney General.

In addition to the new rights and procedures to help consumers deal with the effects of identity theft, the FCRA has many other important consumer protections. They are described in more detail at www.consumerfinance.gov/learnmore.

CONFIDENTIAL      EQUIFAX SUPPLEMENTAL 000039

## *Commonly Asked Questions About Credit Files*

**Q.** *How can I correct a mistake in my credit file ?*

**A.** Complete the Research Request form and give details of the information you believe is incorrect. We will then check with the credit grantor, collection agency or public record source to see if any error has been reported. Information that cannot be verified will be removed from your file. If you and a credit grantor disagree on any information, you will need to resolve the dispute directly with the credit grantor who is the source of the information in question.

**Q.** *If I do have credit problems, is there someplace where I can get advice and assistance ?*

**A.** Yes, there are a number of organizations that offer assistance. For example, the Consumer Credit Counseling Service (CCCS) is a non-profit organization that offers free or low-cost financial counseling to help people solve their financial problems. CCCS can help you analyze your situation and work with you to develop solutions. There are more than 600 CCCS offices throughout the country. Call 1 (800) 388-2227 for the telephone number of the office nearest you.

**Q.** *Once the fraud alert is added to my credit file, who will contact me to verify if an application is legitimate ?*

**A.** When the credit grantor accesses your credit file, they should contact you as a part of their credit application approval process.

## *Facts You Should Know*

❍ The length of time an account or record remains in your credit file is shown below:

Collection Agency Accounts: Remain for up to 7 years from the Date of 1st Delinquency.

Credit or Other Reported Accounts:    Accounts paid as agreed remain for up to 10 years from the Date Reported. Accounts not paid as agreed (i.e. delinquent, charge off, accounts placed for collection) remain for up to 7 years from the Date of 1st Delinquency.

Public Records:    Remain for up to 7 years from the date filed, except:
Bankruptcy - Chapter 7 and 11 remain for up to 10 years from the date filed.
Bankruptcy - Chapter 13 dismissed or no disposition rendered remain for up to 10 years from the date filed.
Unpaid tax liens remain for up to 10 years from the date filed.
Paid tax liens remain for up to 7 years from the date released or up to 10 years from the date filed, whichever is earlier.

New York State Residents Only:    Satisfied judgments remain for up to 5 years from the date filed; paid collections remain for up to 5 years from the Date of 1st Delinquency.

Payment history and Historical Account Information for an account on your credit file, if any, is found at the bottom of an account under the title "Account History with Status Codes" or "Historical Account information" respectively.

This payment history reflects the month, year and late payment status, and is generally supplied by credit grantors or other furnishers of information to Equifax with whom you have a relationship. This history is included on both open accounts and accounts that have already been closed.

The historical account information reflects a broader view of your credit behavior over a 24 month period. This history is also included on both open accounts and closed accounts.

Payment in full does not remove your payment history or historical account information. If you have always paid an account as agreed, the account should not have payment history status information. Specific payment history typically remains on your credit file for up to 7 years from the date shown for it.

❍ Name, address, and Social Security Number information may be provided to businesses that have a legitimate need to locate or identify a consumer.

❍ To protect your information from misuse, you should monitor any change in mail receipt patterns. Ensure that documents containing personal data or account numbers are destroyed or made illegible before disposing of them. Do not preprint checks or other documents with unique identifiers such as your driver's license or social security number. Never give out your account number or identifying information on phone calls in which you did not initiate the contact.

❍ To have a fraud alert removed from your credit file, identification information, such as, a copy of your driver's license or utility bill reflecting your current address along with a copy of your social security card must be provided.

CONFIDENTIAL

EQUIFAX SUPPLEMENTAL 000040

***Additional Notice to Consumer:***

You may request a description of the procedure used to determine the accuracy and completeness of the information, including the business name and address of the furnisher of information contacted, and if reasonably available the telephone number.

If you still disagree with an item after it has been verified, you may send to us a brief statement, not to exceed one hundred words, explaining the nature of your dispute. Your statement will become part of your credit file and will be disclosed each time that your credit file is accessed as long as the information you disputed is retained in our credit reporting database.

If the reinvestigation results in a change to or deletion of the information you are concerned about, or you submit a statement in accordance with the preceding paragraph, you have the right to request that we send your revised credit file to any company that received your credit file in the past twelve months for any purpose or in the past two years for employment purposes.

CONFIDENTIAL      EQUIFAX SUPPLEMENTAL 000041

**EQUIFAX**                    ***RESEARCH REQUEST FORM***

**You may initiate an investigation request via the internet at  www.equifax.com/personal/disputes . To initiate your request or if you elect below to have the results of your investigation posted on a secured website, you will need the below confirmation number, email address you provided, and ID information.**

Or, mail this document to the following address:

    Equifax Information Services LLC
    P.O. Box 105069
    Atlanta, GA 30348
    (800) 377-6568

**Email Address** (please print clearly): _____

Would you like Equifax to hide the first 5 digits of your social security number on our response to you?  **Circle:**    Yes        No

*Confirmation Number:  **0237086153***

Intentionally making any false statements to a consumer reporting agency for the purpose of having it placed on a consumer report is punishable by law in some states.To ensure that your request is processed accurately, please enlarge photocopies of any items that contain small print (i.e. driver's license, W2 Forms, etc.). Photocopies that are not legible or contain highlighting may cause us to request that you resubmit your request for clarity.

If your identity information differs from the information listed on this form, please fill in the correct information in the space provided for each item. Please provide a photocopy of your driver's license, social security card, or recent utility bill that reflects the correct information.

**Name:** Joshua S Johnson                                    **SSN #:** XXX-XX-4910
                                                             **DOB:** December 27, 1988

**Current Address:** 311 S Swall Dr Apt 204, Los Angeles, CA 90048

**Previous Address(es):**     907 Saint Marys, Raleigh, NC 27605
                             308 S Blount St Apt 2113, Raleigh, NC 27601

**Daytime Phone Number**                                    **Evening Phone Number**

**List other names which you have used for credit in the past**

**Fraud Account Information**

**Company Name** _____    **Account Number** _____

Reason for investigation:    ❑ Fraudulent account was established using personal identification without my authorization.

                  ❑ Fraudulent/unauthorized charges made on the account I established.

    ❑ Other (Please explain) _____

If you have notified this creditor of the fraudulent information, please provide the following:

    Contact Name _____ Department Name _____ Phone # (    )  ____ - _____

**Company Name** _____    **Account Number** _____

Reason for investigation:    ❑ Fraudulent account was established using personal identification without my authorization.

                  ❑ Fraudulent/unauthorized charges made on the account I established.

    ❑ Other (Please explain) _____

If you have notified this creditor of the fraudulent information, please provide the following:

    Contact Name _____ Department Name _____ Phone # (    )  ____ - _____

**Company Name** _____    **Account Number** _____

Reason for investigation:    ❑ Fraudulent account was established using personal identification without my authorization.

                  ❑ Fraudulent/unauthorized charges made on the account i established.

    ❑ Other (Please explain) _____

If you have notified this creditor of the fraudulent information, please provide the following:

    Contact Name _____ Department Name _____ Phone # (    )  ____ - _____

CONFIDENTIAL        EQUIFAX SUPPLEMENTAL 000042

# EXHIBIT P

**DYKEMA GOSSETT LLP**
ASHLEY R. FICKEL, State Bar No. 237111
  *AFickel@dykema.com*
ROBERT A. HYATT, State Bar No. 166178
  *RHyatt@dykema.com*
444 South Flower Street, Suite 2200
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JOSHUA JOHNSON,<br><br>            Plaintiff,<br><br>      v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>            Defendant. | Case No. 2:22-cv-06718-AB-MAAx<br><br>The Hon. André Birotte Jr.<br>Courtroom 7B<br><br>Magistrate Maria A. Audero<br>Courtroom: 690<br><br>**DEFENDANT JPMORGAN CHASE BANK, N.A.'S REQUESTS FOR ADMISSION, SET ONE**<br><br>Complaint Filed:   September 19, 2022 |

**PROPOUNDING PARTY:    DEFENDANT JPMORGAN CHASE BANK, N.A.**

**RESPONDING PARTY:    PLAINTIFF JOSHUA JOHNSON**

**SET NUMBER:    ONE**

## REQUESTS FOR ADMISSION

Defendant JP Morgan Chase Bank, N.A. ("Chase") through its attorneys, Dykema Gossett LLP, hereby submits the following first set of requests for admission ("Requests for Admission") pursuant to Fed. R. Civ. P. 26 and 36 to

Plaintiff Joshua Johnson ("Plaintiff").  Chase requests that Plaintiff respond to the following Requests for Admission within 30 days from service hereof.

### INSTRUCTIONS

1.      These Requests for Admission are to be read and interpreted in accordance with the Instructions and Definitions set forth herein.

2.      These Requests for Admission are deemed to be continuing so as to require the filing of supplemental responses promptly in accordance with Rule 26 of the Federal Rules of Civil Procedure.

3.      Each Requests for Admission is to be responded to separately and as completely as possible.  The fact that investigation is continuing or that discovery is not complete shall not be used as an excuse for failure to respond to each request as fully as possible.

4.      Words in the masculine, feminine, or neuter shall include each of the other genders as necessary to make the requests inclusive rather than exclusive.

5.      The word "or" is used herein in its inclusive sense.  In other words, "or" should be read as "and/or."  Similarly, the word "any" should be read as "any and all" and the word "each" should be read as "each and every."  The word "including" should be read as "including, but not limited to" and the word "includes" should be read as "includes, but is not limited to."

6.      The singular shall include the plural and the plural shall include the singular as necessary to make a request inclusive rather than exclusive.

7.      If any Requests for Admission is not responded to on the grounds that the Requests for Admission calls for privileged documents or things, provide the following information with respect to any such documents or things:

        a.      The nature of the privilege claimed (e.g., attorney-client, work product, etc.);

        b.      The facts upon which Plaintiff relies as the basis for claiming the privilege as to the specific information;

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

2

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

c.    Identify:

(1)    each person who prepared the documents or things;

(2)    the title (if any) of the documents or things;

(3)    the date of the documents or things;

(4)    the number of pages in the documents or things;

(5)    the Requests for Production to which the documents or things respond;

(6)    whether any matter that is not privileged or not work product is discussed or mentioned in the documents or things;

(7)    the name and job title of each person to whom the documents or things were addressed, distributed, or shown; and

(8)    the general subject matter of the documents or things.

8.    If any document or thing responsive to a Requests for Admission cannot be produced because a document or thing containing responsive information has been lost or destroyed, or transferred to a third party over whom Plaintiff claims he lacks control, please identify the document or thing by author, date, and subject matter, the date and circumstances surrounding the loss, destruction, or transfer, the reason for the loss, destruction, or transfer, the person or entity to whom transferred, the present location of the document or thing, and the date and manner in which the document or thing may be obtained.

9.    Should you claim that any information requested by these Requests for Admission is beyond the scope of permissible discovery, such claim shall specify in detail all the grounds on which the claim rests.  Pursuant to Fed. R. Civ. P. 37(c)(1), Defendant may, before or at the time of hearing, move the Court for an order excluding from evidence all tangible or intangible things that were known to

Plaintiff at the time of his responses to these Requests for Production but not disclosed in his responses thereto.

10.  Insofar as a term contained in these Requests for Admission is not explicitly defined, the meaning to be used is the commonly accepted definition of the term.

11.  The terms "concerning," "relate," "related" and "relating" are intended in their broadest meaning, including, without limitation, the following concepts: anything that embodies, comprises, reflects, identifies, states, refers to, comments on, responds to, describes, analyzes, contains information concerning, or is in any way pertinent to the subject matter.  The terms are not restricted to the notion of legal relevance for the purposes of admissibility of evidence at trial.

12.  References to "rules" are to the Federal Rules of Civil Procedure. Responses must be supplemented pursuant to Fed. R. Civ. P. 26.

13.  These Requests for Admission shall be deemed continuing so as to require further and supplemental responses if Plaintiff receives, generates or tardily discovers additional information which changes or alters Plaintiff's response in any way within the scope of this request following compliance herewith.

14.  "Identify" shall mean:

    a.  When used with respect to a person;

        (1)  the person's name;

        (2)  the person's last known residence, business address, and telephone number;

        (3)  the person's company or business affiliation at the date of the transaction, correspondence, or thing referred to; and

        (4)  the person's title and duties in the company or business with which he was or is affiliated.

    b.  When used with respect to a document or thing:

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

(1)   the identity of each person who prepared and/or authored and/or signed the document or thing;

(2)   the date of the document or thing;

(3)   the general nature of the document or thing (e.g., letter, memorandum, photograph, computer printout, model, etc.);

(4)   the identity of each person to whom the document or thing was addressed or distributed;

(5)   the present location and the identity of the present custodian of the document or thing;

(6)   the nature and substance of the document or thing with sufficient particularity to enable the document or thing to be identified.

c.   When used with respect to a communication:

(1)   if written, the identity of the document or documents in which the communication was made, and the identity of all documents or things that refer to, relate to, or reflect such communication, in whole or in part, or that were discussed, displayed, or used during such communication;

(2)   if oral:

(i)   whether the communication was made in person or by telephone;

(ii)   the identity of each person who attended, heard, or observed the communication;

(iii)   the location of each such person at the time of communication; and

(iv)   the substance of what each person said.

15.   Whenever reasonably practicable, organize and label the documents produced to correspond with the categories.  Alternatively, the documents demanded

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

should be produced as they are kept in the usual course of business.  Label the documents to indicate their source (for example, "Desk file of John Doe").  Also, where applicable, please be certain to copy the front and back of all file folders from which the documents are obtained, and paper clip, bind, and staple documents in the same manner as the originals.

## **DEFINITIONS**

Unless otherwise indicated, the following definitions shall apply to each Request:

1.     "YOU" or "YOUR" means and refers to Plaintiff Joshua Johnson and his representatives and/or agents.

2.     "CHASE" shall refer to Defendant JPMorgan Chase Bank, N.A. and its representatives and/or agents.

3.     "COMPLAINT" shall refer to the Complaint YOU filed in this action on or about September 19, 2022.

4.     "DOCUMENT(S)" is used in its customary broad sense and includes, without limitation, the following items regardless of origin or location, whether printed or recorded, or filmed, or reproduced by any other mechanical, electronic, or magnetic process, or written or produced by hand, whether or not claimed to be privileged against discovery on any ground, and whether an original, master or copy, namely contracts; agreements; COMMUNICATIONS, including inter-company communications; correspondence; cablegrams, radiograms and telegrams; records of telephone conversations, meetings and conferences, including lists of persons attending meetings or conferences; summaries and records of personal conversations or interviews, books, manuals; publications and diaries; calendars, laboratory and engineering reports and notebooks; blueprints; charts; plans; sketches and drawings; photographs; reports and/or summaries of investigations; opinions and reports of consultants; patents and applications for patents; patent appraisals and patent ability or validity searches and studies; sales records, including purchase

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

orders and invoices; reports and summaries of negotiations; brochures; pamphlets; catalogs and catalog sheets; advertisements; circulars; trade letters; press releases; publicity, trade and product releases; draft or original or preliminary notes on, and marginal comments appearing on, any DOCUMENT; other reports and records; and any other information-containing paper, writing or physical thing in the possession, custody or control of YOU or YOUR attorneys. If the original of the DOCUMENT contains information not reflected on the copy, please produce the original. DOCUMENT is broadly defined to include all media on which information is recorded or stored.  Fed. R. Civ. P. 34(a)(1)(A).

5.      "COMMUNICATIONS" means all conversations, agreements, inquiries or replies, whether in person, by telephone, in writing, or by means of electronic transmittal devices, and includes, but is not limited to, all DOCUMENTS, correspondence, transmittal slips, memoranda, or notes.

## <u>REQUESTS FOR ADMISSION</u>

**REQUEST TO ADMIT No. 1:** Admit that the document attached as Exhibit A is a true and correct copy of YOUR Pre-Hearing Brief in American Arbitration Association ("AAA") Case No. 01-20-0015-1734.

**REQUEST TO ADMIT No. 2:** Admit that YOU were liable for the Chase Ink credit card account identified in YOUR COMPLAINT.

**REQUEST TO ADMIT No. 3:** Admit that the information furnished to the credit reporting agencies by CHASE was accurate because YOU were liable for the Chase Ink credit card account identified in YOUR COMPLAINT.

**REQUEST TO ADMIT No. 4:** Admit that the information furnished to Equifax regarding YOUR Chase Ink credit card account identified in YOUR COMPLAINT was accurate.

**REQUEST TO ADMIT No. 5:** Admit that YOU argued that YOUR claim in arbitration was not preempted because it did not concern the reporting of inaccurate information.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

1    **REQUEST TO ADMIT No. 6:** Admit that the Chase Ink credit card

2    account identified in YOUR COMPLAINT, required the creation of a separate

3    online profile from YOUR previous online profile with CHASE.

4    **REQUEST TO ADMIT No. 7:** Admit that on February 17, 2017, YOU

5    enrolled in online billing and approved receipt of paperless statements for YOUR

6    Chase Ink credit card.

7    **REQUEST TO ADMIT No. 8:** Admit that YOU created a unique user id

8    for online account access for YOUR Chase Ink credit card account.

9    **REQUEST TO ADMIT No. 9:** Admit that on February 17, 2017, YOU

10   entered into a E-Sign Disclosure and Consent Agreement with CHASE.

11   **REQUEST TO ADMIT No. 10:** Admit that YOU don't know whether

12   YOU were logging into the wrong account when YOU tried to log into YOUR

13   online access for YOUR Chase Ink credit card account.

14   **REQUEST TO ADMIT No. 11:** Admit that YOU forgot about YOUR

15   separate online access for YOUR Chase Ink credit card account.

16   **REQUEST TO ADMIT No. 12:** Admit that YOU had a phone call with

17   CHASE employee Jeremiah Pressley on June 12, 2018, where YOU stated that

18   "This is the first time I've been made aware that I had multiple accounts to be

19   honest."

20   **REQUEST TO ADMIT No. 13:** Admit that YOU have no recollection of

21   YOUR phone call with CHASE on September 6, 2017.

22   **REQUEST TO ADMIT No. 14:** Admit that after YOUR September 6,

23   2017, call with CHASE, that CHASE sent YOU an email noting YOUR

24   authorization for payment of $111,49 to YOUR Chase Ink credit card account.

25   **REQUEST TO ADMIT No. 15:** Admit that CHASE sent YOU emails

26   through April 2018 stating that YOUR credit card statement for YOUR Chase Ink

27   credit card were available online.

28   **REQUEST TO ADMIT No. 16:** Admit that YOU did not read the emails

1  YOU received from CHASE regarding YOUR Chase Ink credit card from

2  September 2017 to April 2018.

3

4  DATED:  June 16, 2023                DYKEMA GOSSETT LLP

5

6

7  By: _____

8  ASHLEY R. FICKEL
   ROBERT A. HYATT

9  Attorneys for Defendant
   JPMORGAN CHASE BANK, N.A.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

9

# EXHIBIT A

AAA Case 01-20-0015-1734

Joshua Johnson v. JPMorgan Chase Bank N.A.

June 7, 2021

## **PRE-HEARING BRIEF**

Claimant responds herein to arguments Respondent is expected to raise at the hearing, based on a disclosure that "federal preemption" will be argued and prior correspondence:

> [Claimant] requests as relief that [Respondent] cease making "derogatory" credit marks in his amended complaint. However, a request for a change in credit reporting is relief granted in response to a Fair Credit Reporting Act claim. FCRA preempts all other credit reporting related claims regardless of the name under which they are pled; [Claimant] declined to make a FCRA claim in his amended complaint and is therefore not entitled to such relief because such relief could not be awarded in court under these circumstances.

## I. **THE FAIR CREDIT REPORTING ACT**

The Fair Credit Reporting Act (FCRA), as originally enacted in 1970, was designed to regulate credit reporting agencies (CRAs). In 1996, it was amended to regulate entities that furnish debt information to CRAs (furnishers). *Ross v. FDIC*, 625 F.3d 808, 812 (4th Cir. 2010).

### **A. Furnishers May Not Report Inaccurate Information**

Under the FCRA, furnishers are prohibited from knowingly reporting inaccurate information to CRAs. 15 U.S.C. § 1681s–2(a). Information is considered

accurate if it "correctly [r]eflects ... liability for the account." 12 C.F.R. § 1022.41(a); *Denan v. Trans Union LLC*, 959 F.3d 290 (7th Cir. 2020).

### B. Consumers May Only Sue after CRA Dispute

No private right of action exists under § 1681s-2(a), however one does exist under § 1681s–2(b), which establishes that furnishers also have a duty to verify the accuracy of reported information once they are notified of a possible inaccuracy by a CRA, i.e. consumers must file a complaint with a CRA (which is then required to pass the complaint on to the furnisher) before bringing an action. *Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438 (D.N.J. 2010).

### C. Certain Tort Claims Expressly Preempted

A general preemption provision, § 1681t(a), preempts state laws only "to the extent that those laws are inconsistent with any provision of [the FCRA]". A qualified immunity provision, § 1681h(e), preempts certain state tort claims:

> [N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against ... any person who furnishes information to a consumer reporting agency, ... based on information disclosed pursuant to [a FCRA-mandated disclosure] ... except as to false information furnished with malice or willful intent to injure such consumer.

### D. All Accuracy-Related Statutory Laws Preempted

An express preemption provision, § 1681t(b), preempts state statutory laws relating to a furnisher's duties under § 1681s–2:

> No requirement or prohibition may be imposed under the laws of any State (1) with respect to any subject matter regulated under ... (F)

2

section 1681s–2 ... except [a Massachusetts statute and a California statute].

Courts have struggled to reconcile § 1681h(e) with this provision, which *appears* to preempt all state laws regarding the duties of furnishers under § 1681s–2, including common law claims laws such as defamation with malice, that would otherwise survive § 1681h(e) preemption. *Barnhill v. Bank of Am., N.A.*, 378 F. Supp. 2d 696 (D.S.C. 2005).

### E. Accuracy-Related Tort Claims: Preempted in Some Courts

Under the "total preemption approach", which the Second and Seventh Circuits have adopted, § 1681t(b)(1)(F) preempts all state laws that fall within the ambit of § 1681s–2, rendering § 1681h(e) superfluous. *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45 (2d Cir. 2011); *Purcell v. Bank of Am.*, 659 F.3d 622 (7th Cir. 2011).

### F. Accuracy-Related Tort Claims: Not Preempted in Fourth Circuit

Under the "statutory approach", for which there "is [uniform] support for ... among the district courts within the United States Court of Appeals for the Fourth Circuit and in two unpublished opinions by the Fourth Circuit", § 1681t(b)(1)(F) preempts all state statutory claims, while § 1681h(e) continues to preempt certain state tort claims. *Evans v. Trans Union LLC*, No. 2:10-CV-00945, 2011 WL 672061 (S.D.W. Va. Feb. 14, 2011); *Beuster v. Equifax Info. Servs.*, 435 F. Supp. 2d 471 (D. Md. 2006).

3

### G. Contract Claims Not Preempted

Breach of contract claims are not prohibited under either the total or statutory approach, as they are not "imposed" under state law. *Spencer v. Nat'l City Mortg.*, 831 F. Supp. 2d 1353 (N.D. Ga. 2011). "[T]he few courts to address the issue hold that a 'breach of contract claim ... is not preempted by the FCRA.'" *Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111, 1152 (C.D. Cal. 2012).

### H. Injunctive Relief Not Available

Most district courts, and the only circuit court to directly rule on the issue, have held that a FCRA claim may not seek injunctive relief unless it is brought by the FTC. *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263 (5th Cir. 2000).

## II. <u>CLAIM NOT PREEMPTED</u>

### A. Claim Not Accuracy-Related Statutory Claim

Claimant admits (and Respondent concurs) that he was liable for the account, and hence the information reported to the CRAs by Respondent was accurate. Claimant's claim thus survives § 1681t(b)(1)(F), regardless of whether the total or statutory preemption approach is utilized, because it does not arise under a state statute and does not concern the reporting of inaccurate information.

### B. Claim Not Expressly Preempted Tort Claim Based On FCRA Disclosure

The claim survives § 1681h(e) because it is not in the nature of one of the three expressly enumerated tort laws, nor is it based on information obtained exclusively via a FCRA-mandated disclosure.

4

### C. Injunctive Relief Available

Injunctive relief is unavailable for consumer claims brought under (or preempted by) the FCRA. Claimant's claim is neither a FCRA claim and is not preempted by the FCRA, hence injunctive relief is available.

### III. <u>RELIEF UNAVAILABLE IN COURT</u>

Whether or not relief could be awarded in court under these circumstances, it is not correct that Claimant is "not entitled to [relief] that could not be awarded in court under these circumstances":

1. The Federal Arbitration Act does not impose this restriction.

2. Neither does the Delaware Uniform Arbitration Act, § 5714(a) of which states "the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award".

3. Respondent has not produced a clause that imposes this restriction on the arbitrator's authority, which is typically where such restrictions would be found.

4. While Rule R-44(a) of the AAA Consumer Rules states that the arbitrator "may grant any remedy, relief, or outcome that the parties could have received in court ...", this provides express permission to the arbitrator, it does not prohibit outcomes not expressly provided for in the rules.

5. Respondent did not timely object to the arbitrator's statement three months ago on March 8th, that he "will consider substantive law *and*

5

*equity/fairness*". Such appeals are, by definition, outside of the scope of substantive law.

## IV. <u>ARBITRATION COST REIMBURSEMENT IS A REASONABLE REMEDY</u>

J.P. Morgan Chase is the number one credit card issuer in the U.S., serving over 63 million households[1]. Despite the ubiquity of forced arbitration clauses in their cardmember agreements, in the five years between 2016 and 2021, 56 consumers represented themselves versus Chase. *Three* of them won an arbitral award[2]. Perhaps Chase's customer service is that good, or perhaps it has something to do with the 2,000 employees that its General Counsel oversees[3], its history of anti-consumer collusion[4], and $3 trillion in assets under management[1]. Claimant recognizes that non-attorney *pro se* litigants are not often permitted to recover attorney's fees in litigation, but highlights the obvious unfairness of the broader system, the economic disincentives for any attorney to proceed in arbitration over a $500 debt, Claimant's immense opportunity cost, and the availability of such a remedy in arbitration.

---

1 https://www.jpmorgan.com/commercial-banking/solutions/asset-management

2 https://www.adr.org/ConsumerArbitrationStatistics

3 https://www.americanbanker.com/news/most-powerful-women-in-banking-2019-no-9-jpmorgan-chases-stacey-friedman

4 https://www.wsj.com/articles/SB112553966818328701

### PROOF OF SERVICE
*Joshua Johnson vs. JPMorgan Chase Bank, N.A.*
*USDC, Central District, Case No. 2:22-cv-06718-AB-MAA*

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 444 South Flower Street, Suite 2200, Los Angeles, California 90071.

On the date set forth below, I served the foregoing document(s) described as:

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S REQUESTS FOR ADMISSION, SET ONE**

on the interested parties in this action as follows:

| | |
|---|---|
| L. David Russell, Esq.<br>RUSSELL LAW, PC<br>1500 Rosecrans Avenue, Suite 500<br>Manhattan Beach, CA 90266<br>Telephone: (323) 638-7551<br>Facsimile: (323) 760-7468<br>E-mail:      david@russelllawpc.com | *Attorneys for Plaintiff*<br>*JOSHUA JOHNSON* |

☒ (**BY ELECTRONIC SERVICE**), I caused to electronically served the document(s) listed above to the attorney(s) listed on the service list and at the electronic service address(es) listed by their name(s).

☒ (Federal) I declare that I employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on June 16, 2023 at Los Angeles, California.

_____

_Nanette Leali_
Nanette Leali

008241.002262  4886-3481-6362.1

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S REQUESTS FOR ADMISSION, SET ONE**

# EXHIBIT Q

1  Russell Law, P.C.
L. David Russell (SBN 260043)
2  1500 Rosecrans Ave, Suite 500
Manhattan Beach, CA 90266
3  Tel: (323) 638-7551
Fax: (323) 760-7458
4  david@russelllawpc.com

5  Attorneys for Plaintiff
JOSHUA JOHNSON

6

7                    **UNITED STATES DISTRICT COURT**

8                    **CENTRAL DISTRICT OF CALIFORNIA**

9

**WESTERN DIVISION - FIRST STREET UNITED STATES COURTHOUSE**

10

| JOSHUA JOHNSON, | CASE NO: 2:22-cv-06718-AB-MAAx |
|---|---|
| Plaintiff, | **PLAINTIFF JOSHUA JOHNSON'S RESPONSES TO DEFENDANT JPMORGAN CHASE BANK, N.A'S REQUESTS FOR ADMISSION, SET ONE** |
| vs. | |
| JPMORGAN CHASE BANK, N.A., | |
| Defendant. | |

**PROPOUNDING PARTY**:   Defendant JPMORGAN CHASE BANK, N.A

**RESPONDING PARTY**:     Plaintiff JOSHUA JOHNSON

**SET NUMBER**:           ONE

Plaintiff Joshua Johnson ("Johnson") hereby objects and responds to Defendant JPMorgan Chase Bank, N.A's ("Defendant") Requests for Admission, Set One as follows:

## **PRELIMINARY STATEMENT**

Johnson makes these responses solely for the purpose of this action. Johnson has not completed discovery in this action, or an investigation of all the facts underlying this lawsuit, or preparation of this case for trial. The responses contained herein are in a good faith effort to supply as much information as is presently known to Johnson. Further discovery and investigation may lead to the discovery of additional information responsive to these requests. Accordingly, the following responses are without prejudice to Johnson's right to produce evidence of any subsequently discovered information.

Any information provided in response to these requests is subject to any and all objections regarding competence, relevance, materiality, propriety and admissibility. The following responses are subject to all objections if offered in court, and all such objections are reserved and may be interposed at the time of trial or at any other time.

Johnson makes no incidental or implied admissions by these responses. Accordingly, JPMorgan Chase Bank, N.A shall not construe Johnson's responses or objections to these requests as an admission of the existence of any fact set forth or assumed by these requests, or that such responses constitute admissible evidence. The fact that Johnson has answered any request or any portion thereof is not intended to nor shall it be construed to be as a waiver of all or any part of any objection to any request.

## **GENERAL OBJECTIONS**

Johnson's responses to each request are subject to the general objections set forth below. These general objections form a part of the response to each request and are set forth here to avoid the duplication and repetition of restating them for each response.

1.      Johnson objects to these requests to the extent they seek information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other applicable privileged or protected information. To the extent that the requests may be construed as seeking such privileged or protected information, Johnson hereby claims such privilege and invokes such privilege. The fact that Johnson does not specifically object to an individual request on the ground that it seeks such privileged or protected information is not a waiver of the protection afforded by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection.

2.      Johnson objects to the extent that these requests seek information or documents from third parties or which is protected from compelled disclosure under the California Constitution, Article 1, Section 1, and the United States Constitution.

3.      Johnson objects to the extent that these requests seek information that is irrelevant and/or not calculated to lead to the discovery of admissible evidence.

4.      Johnson objects to the extent that the requests seek documents or information that are not in Johnson's possession, custody, or control.

The foregoing objections and qualifications apply to the responses contained herein and are incorporated by reference to the extent applicable to the specific responses set forth below as though fully set forth therein. The failure to mention any of the foregoing objections and qualifications in the specific responses set forth below shall not be deemed a waiver of such objection or qualification.

## RESPONSES AND OBJECTIONS

### REQUESTS FOR ADMISSION NO. 1:

Admit that the document attached as Exhibit A is a true and correct copy of YOUR Pre-Hearing Brief in American Arbitration Association ("AAA") Case No. 01-20-0015-1734.

### RESPONSE TO REQUESTS FOR ADMISSION NO. 1:

Johnson objects to this request on the grounds that it is vague and

ambiguous. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds: Admit that the document attached as Exhibit A is a copy of a written submission Johnson filed in *pro per* titled "Pre-Hearing Brief" in the AAA arbitration.  Deny that Johnson made the red marking on page 4 of Exhibit A.

**REQUESTS FOR ADMISSION NO. 2:**

Admit that YOU were liable for the Chase Ink credit card account identified in YOUR COMPLAINT.

**RESPONSE TO REQUESTS FOR ADMISSION NO. 2:**

Johnson objects to this request on the grounds that it is vague and ambiguous. Moreover, Johnson objects to this request as it lacks both relevance and proportionality to the matters and issues in dispute in this case.  Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds: Admit that Johnson opened that Chase Ink credit card account and made purchases using the Chase Ink credit card account from January 14, 2017 through July 6, 2017.

**REQUESTS FOR ADMISSION NO. 3:**

Admit that the information furnished to the credit reporting agencies by CHASE was accurate because YOU were liable for the Chase Ink credit card account identified in YOUR COMPLAINT.

**RESPONSE TO REQUESTS FOR ADMISSION NO. 3:**

Johnson objects to this request on the grounds that it is vague and ambiguous. Moreover, Johnson objects to this request as it lacks both relevance and proportionality to the matters and issues in dispute in this case.  Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds: Deny, to the extent the term "accurate" is used as defined by the

1 | Fair Credit Reporting Act.

2

3 | **REQUESTS FOR ADMISSION NO. 4:**

4 | Admit that the information furnished to Equifax regarding YOUR Chase Ink

5 | credit card account identified in YOUR COMPLAINT was accurate.

6 | **RESPONSE TO REQUESTS FOR ADMISSION NO. 4:**

7 | Johnson objects to this request on the grounds that it is vague and

8 | ambiguous. Moreover, Johnson objects to this request as it lacks both relevance and

9 | proportionality to the matters and issues in dispute in this case.  Subject to Johnson's

10 | reasonable interpretation of the request and without waiving said objections,

11 | Johnson responds: Deny. Some information may have been accurate. Request does

12 | not identify specific information furnished to Equifax or the dates on which it was

13 | furnished.

14

15 | **REQUESTS FOR ADMISSION NO. 5:**

16 | Admit that YOU argued that YOUR claim in arbitration was not preempted

17 | because it did not concern the reporting of inaccurate information.

18 | **RESPONSE TO REQUESTS FOR ADMISSION NO. 5:**

19 | Johnson objects to this request on the grounds that it is vague and

20 | ambiguous. Moreover, Johnson objects to this request as it lacks both relevance and

21 | proportionality to the matters and issues in dispute in this case.  Subject to Johnson's

22 | reasonable interpretation of the request and without waiving said objections,

23 | Johnson responds: Admit that the arbitrator did not consider any claim related to an

24 | investigation under the FCRA and therefore did not concern preemption.

25

26 | **REQUESTS FOR ADMISSION NO. 6:**

27 | Admit that the Chase Ink credit card account identified in YOUR

28 | COMPLAINT, required the creation of a separate online profile from YOUR

1 | previous online profile with CHASE.

2 | **RESPONSE TO REQUESTS FOR ADMISSION NO. 6:**

3 |        Johnson objects to this request on the grounds that it is vague and

4 | ambiguous. Moreover, Johnson objects to this request as it lacks both relevance and

5 | proportionality to the matters and issues in dispute in this case.  Subject to Johnson's

6 | reasonable interpretation of the request and without waiving said objections,

7 | Johnson responds: Johnson has made a reasonable inquiry, and the information

8 | known and readily obtainable is insufficient to enable Johnson to admit or deny the

9 | truth of that representation.

10 |

11 | **REQUESTS FOR ADMISSION NO. 7:**

12 |       Admit that on February 17, 2017, YOU enrolled in online billing and

13 | approved receipt of paperless statements for YOUR Chase Ink credit card.

14 | **RESPONSE TO REQUESTS FOR ADMISSION NO. 7:**

15 |        Johnson objects to this request on the grounds that it is vague and

16 | ambiguous. Moreover, Johnson objects to this request as it lacks both relevance and

17 | proportionality to the matters and issues in dispute in this case.  Subject to Johnson's

18 | reasonable interpretation of the request and without waiving said objections,

19 | Johnson responds: Admit that, on or about February 17, 2017, Johnson contacted

20 | Chase, in accordance with the express instructions described on Chase's website

21 | which state "[t]o see both business and personal accounts using the same User ID

22 | and Password […] call 1-877-CHASEPC", and informed Chase of his designation

23 | of his pre-existing "forepus1" chase.com user account, created on December 13,

24 | 2010, and used continuously and exclusively for credit card account management

25 | and the receipt of billing statements since that time, for the receipt of electronic

26 | billing statements for his Chase Ink credit card.

27 |

28 | **REQUESTS FOR ADMISSION NO. 8:**

Admit that YOU created a unique user id for online account access for YOUR Chase Ink credit card account.

**RESPONSE TO REQUESTS FOR ADMISSION NO. 8:**

Johnson objects to this request on the grounds that it is vague and ambiguous. Moreover, Johnson objects to this request as it lacks both relevance and proportionality to the matters and issues in dispute in this case. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds: Admit that he created a "forepus1" chase.com user account on December 13, 2010, and designated this account for the credit card account management and the receipt of billing statements for all credit card accounts, including his Chase Ink account.

**REQUESTS FOR ADMISSION NO. 9:**

Admit that on February 17, 2017, YOU entered into a E-Sign Disclosure and Consent Agreement with CHASE.

**RESPONSE TO REQUESTS FOR ADMISSION NO. 9:**

Johnson objects to this request on the grounds that it is vague and ambiguous. Moreover, Johnson objects to this request as it lacks both relevance and proportionality to the matters and issues in dispute in this case. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds: Johnson admits that he entered into one or more agreements on or about February 17, 2017. The contents of said agreements are in Chase's possession.

**REQUESTS FOR ADMISSION NO. 10:**

Admit that YOU don't know whether YOU were logging into the wrong account when YOU tried to log into YOUR online access for YOUR Chase Ink credit card account.

**RESPONSE TO REQUESTS FOR ADMISSION NO. 10:**

Johnson objects to this request on the grounds that it is vague and ambiguous, especially as to the term "wrong account." Moreover, Johnson objects to this request as it lacks both relevance and proportionality to the matters and issues in dispute in this case.  Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds: Deny.

**REQUESTS FOR ADMISSION NO. 11:**

Admit that YOU forgot about YOUR separate online access for YOUR Chase Ink credit card account.

**RESPONSE TO REQUESTS FOR ADMISSION NO. 11:**

Johnson objects to this request on the grounds that it is vague and ambiguous, especially as to the term "forgot". Moreover, Johnson objects to this request as it lacks both relevance and proportionality to the matters and issues in dispute in this case.  Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds: Deny.

**REQUESTS FOR ADMISSION NO. 12:**

Admit that YOU had a phone call with CHASE employee Jeremiah Pressley on June 12, 2018, where YOU stated that "This is the first time I've been made aware that I had multiple accounts to be honest."

**RESPONSE TO REQUESTS FOR ADMISSION NO. 12:**

Johnson objects to this request on the grounds that it is vague and ambiguous. Moreover, Johnson objects to this request as it lacks both relevance and proportionality to the matters and issues in dispute in this case.  Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds: Admit.

## REQUESTS FOR ADMISSION NO. 13:

Admit that YOU have no recollection of YOUR phone call with CHASE on September 6, 2017.

## RESPONSE TO REQUESTS FOR ADMISSION NO. 13:

Johnson objects to this request on the grounds that it is vague and ambiguous. Moreover, Johnson objects to this request as it lacks both relevance and proportionality to the matters and issues in dispute in this case. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds: Deny.

## REQUESTS FOR ADMISSION NO. 14:

Admit that after YOUR September 6, 2017, call with CHASE, that CHASE sent YOU an email noting YOUR authorization for payment of $111,49 to YOUR Chase Ink credit card account.

## RESPONSE TO REQUESTS FOR ADMISSION NO. 14:

Johnson objects to this request on the grounds that it is vague and ambiguous. Moreover, Johnson objects to this request as it lacks both relevance and proportionality to the matters and issues in dispute in this case. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds: Admit that Johnson received an email on September 06, 2017, which did not mention "Chase Ink" and stated "Account Ending in 0256 … We are writing to confirm the following electronic payments you authorized to your credit card account during our recent phone conversation. […] Payment Amount […] $111.49".

## REQUESTS FOR ADMISSION NO. 15:

Admit that CHASE sent YOU emails through April 2018 stating that YOUR credit card statement for YOUR Chase Ink credit card were available online.

**RESPONSE TO REQUESTS FOR ADMISSION NO. 15:**

Johnson objects to this request on the grounds that it is vague and ambiguous. Moreover, Johnson objects to this request as it lacks both relevance and proportionality to the matters and issues in dispute in this case. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds:

Deny. Johnson received over 300 unsolicited emails from Chase through April 25, 2018, including many from no-reply@alertsp.chase.com that stated "the statement for your credit card account ending in [9959, 0256, 4945, 5301, 1787, 0789, 5301, 7207, 5827, 5159, or 6650] is now available online. To see your statement or download it as a PDF, log on to www.Chase.com. You can also make a payment online or set up an Account Alert so you'll receive a reminder when your payment is due." None of these emails referenced "Chase Ink", nor did they reference the user account which Chase purports to have provided statements under, nor did Johnson "receive a reminder when your payment is due" after the closure of the Chase Ink credit card account, despite enrollment in the account alerts program, nor did they indicate a payment was due.

**REQUESTS FOR ADMISSION NO. 16:**

Admit that YOU did not read the emails YOU received from CHASE regarding YOUR Chase Ink credit card from September 2017 to April 2018.

**RESPONSE TO REQUESTS FOR ADMISSION NO. 16:**

Johnson objects to this request on the grounds that it is vague and ambiguous. Moreover, Johnson objects to this request as it lacks both relevance and proportionality to the matters and issues in dispute in this case. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds: Deny.

1

2
DATED:  August 4, 2023                    RUSSELL LAW, P.C.

3
/s/ L. David Russell

4
L. David Russell
Attorneys for Plaintiff

5
JOSHUA JOHNSON

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>PROOF OF SERVICE</u>

2    I am employed in the County of Los Angeles, State of California. I am over the age of 18, and not a party to the within action. My business address is Russell Law,
3    P.C., 1500 Rosecrans Ave, Suite 500, Manhattan Beach, CA 90266. On the date below, I served the foregoing document(s) described as:

4

5    **PLAINTIFF JOSHUA JOHNSON'S RESPONSES TO DEFENDANT JPMORGAN CHASE BANK, N.A'S REQUESTS FOR ADMISSION, SET ONE**

6

7    By sending a true copy thereof to the address listed below:

## **SEE ATTACHED SERVICE LIST**

8

9    ☐    **By Messenger Service.** I served the documents by providing them to a professional messenger service for personal service.

10    ☐    **By Overnight Delivery.** I deposited a sealed envelope containing a true and correct copy of the documents listed above for overnight
11    delivery and with the postage fully prepaid.

12    ☒    **By E-Mail or Electronic Transmission.** I caused the documents to be sent to the persons at the email address listed above in a PDF file,
13    and the transmission appeared to be successful.

14    ☐    **By United States Mail.** I deposited a sealed envelope containing a true and correct copy of the documents listed above with the United
15    States Postal Service with the postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope
16    or package was placed in the mail at Manhattan Beach, California.

17    ☐    **By Fax Transmission.** I faxed the documents to the persons at the fax number listed above, and the transmission appeared to be
18    successful.

19    I declare under penalty of perjury under the laws of the United States that the above is true and correct.

20

21    Executed on August 4, 2023 at Manhattan Beach, California.

22

23    <u>/s/ L. David Russell</u>

24

25

26

27

28

PLAINTIFF'S RESPONSES TO DEFENDANT'S REQUESTS FOR ADMISSION, SET ONE

1

## **<u>SERVICE LIST</u>**

2

ASHLEY R. FICKEL
ROBERT A. HYATT
DYKEMA GOSSETT LLP
444 South Flower Street, Suite 2200
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850
AFickel@dykema.com
RHyatt@dykema.com
Attorneys for Defendant JPMorgan Chase Bank, N.A

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S RESPONSES TO DEFENDANT'S REQUESTS FOR ADMISSION, SET ONE

# EXHIBIT S

AMERICAN
ARBITRATION
ASSOCIATION®

INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION®

P.O. Box 19609
Johnston, RI 02919

March 14, 2024

Joshua Johnson
2201 5th Street
Apartment 208
Santa Monica, CA 90405
Via Email to: josh@jj88.org

Joseph Hickey, Esq.
Dykema Gossett, PLLC
39577 Woodward Avenue
Suite 300
Bloomfield Hills, MI 48304
Via Email to: jhickey@dykema.com

Case Number: 02-20-0015-1734

Joshua Johnson
-vs-
JPMorgan Chase Bank N.A.

Dear Parties:

A Preliminary Management Hearing has been set for March 28, 2024 at 10:00 AM, Pacific Time. Please dial into the hearing by using the following telephone number and code:

Telephone No.:      (855)633-2040
Access Code: 2807361#

After the call, the arbitrator will complete a Report of Preliminary Management Hearing and Scheduling Order. Enclosed please find a sample Scheduling Order and the Preliminary Management Hearing Information Sheet. We encourage you to review these documents before the hearing to facilitate an efficient and expeditious hearing.

We anticipate you will discuss the Evidentiary Hearing and want you to know the AAA can provide interested parties and the arbitrator information about our videoconferencing services, including setting up a test run in advance. The AAA-ICDR® Deposition and Hearing Services offers virtual/hybrid hearing hosting and exhibit support, AI-powered transcription, and document translation services. For more information, please visit our website at www.adr.org/hearing-services.

Please note that video hearings or proceedings are conducted through third-party platforms.  The use of such platforms for proceedings is subject to the platform's terms and policies. The AAA-ICDR arranges proceedings through these third-party platforms for the arbitrators' and parties' convenience.  The AAA-ICDR does not endorse any platform over another nor does the AAA-ICDR guarantee the suitability or availability of any platform.  Any concerns regarding the use of a third-party video conferencing platform should be raised by copying correspondence to all parties involved in this matter.

As the AAA WebFile® Electronic Case Filing Guidelines apply to this case, we remind you to register for WebFile. If you have an AAA WebFile account, you should see this case listed when you log in. If you do not see the case number, please contact me. If you do not have an AAA WebFile account, please navigate to www.adr.org and click "Create Account" at the top to enter your email address and begin the registration process.

AAA reminds you of R-9 of the Consumer Arbitration Rules. This rule states, "after the arbitrator is appointed, if a party wants to take the case to small claims court and notifies the opposing party and the AAA, it is up to the arbitrator to determine if the case should be decided in arbitration or if the arbitration case should be closed and the dispute decided in small claims court."

The arbitrator will receive this information separately.

Sincerely,
/s/
AAA Case Manager 1
Manager of ADR Services
Email: aaacasemanager1@adr.org
Fax: (866)644-0234

Supervisor Information: *Donna Martinez, (559) 490-1881* _donnamartinez@adr.org_

Enclosures

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

## PRELIMINARY MANAGEMENT HEARING INFORMATION SHEET

Holding a preliminary hearing as early in the process as possible will help the parties and the arbitrator organize the proceeding in a manner that will maximize efficiency and economy.

The items to be addressed in a particular case will be subject to the discretion of the arbitrator.

Care must be taken to avoid importing procedures from court systems, and the following checklist suggests subjects that the parties and the arbitrator might address at the preliminary hearing:

- The parties and/or their representatives and arbitrator should discuss reasonable precautions to be taken with regard to cybersecurity, privacy, and data protection to ensure an appropriate level of security for the case.

- Whether all necessary or appropriate parties are included in the arbitration;

- Whether a party will seek a more detailed statement of claims, counterclaims or defenses (R-8);

- Whether there are any anticipated amendments to the parties' claims, counterclaims, or defenses;

- Which arbitration rules, procedural law, and substantive law apply;

- Whether there are arbitrability or jurisdictional questions;

- Dispositive motions that can efficiently be decided without considering the entire case, without limitation (R-33);

- Written motions (R-24);

- Whether the parties will exchange information, including electronically stored documents, on which they intend to rely in the arbitration, and/or make written requests for production of documents within defined parameters (R-22);

- Whether the parties intend to present evidence from expert witnesses, and if so, whether to establish a schedule for the parties to identify their experts and exchange expert reports (Rule R-35);

- Whether, according to a schedule set by the arbitrator, the parties will:

  o Identify all witnesses, the subject matter of their anticipated testimonies, exchange written witness statements, and determine whether written witness statements will replace direct testimony at the hearing;

  o Exchange and pre-mark documents that each party intends to submit;

- The date, time and place of the arbitration hearing (R-26) or decision by documents only (R-29);

- Whether, at the arbitration hearing:

  o Testimony may be presented in person, in writing, by videoconference, via the internet, telephonically, or by other reasonable means (R-32);

  o There will be a stenographic transcript or other record of the proceeding and, if so, who will make arrangements to provide it (R-27);

- Whether any procedure needs to be established for the issuance of subpoenas (R-34);

- The identification of any ongoing, related litigation or arbitration;

- The form of the arbitration award (R-43); and

- Any other matter the arbitrator considers appropriate or a party wishes to raise.