1  **Joshua Johnson**
2  1373 Caminito Halago
   La Jolla, CA 92037
3  (336) 423-2594
4  josh@jj88.org
   IN PRO PER
5



FILED
CLERK, U.S. DISTRICT COURT
8/10/2025
CENTRAL DISTRICT OF CALIFORNIA
BY_____RYO_____DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

6              **UNITED STATES DISTRICT COURT**

7       **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

8

9  JOSHUA JOHNSON,                    Case No.: 2:22-cv-06718-AB-MAAx

10        Plaintiff,                   The Hon. André Birotte Jr.
                                       Courtroom: 7B
11  v.

12  JPMORGAN CHASE BANK, N.A.,        Magistrate Maria A. Audero
                                       Courtroom: 690
13        Defendant.

14                                      **JOSHUA JOHNSON'S**
15                                      **CORRECTED OPPOSITION TO**
                                        **JPMORGAN CHASE BANK'S**
16                                      **MOTION FOR SUMMARY**
                                        **JUDGMENT**
17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES**................................................................**4**

**I. BACKGROUND**..................................................................**6**

**II. SUMMARY OF ARGUMENT**...........................................................7

**III. SUMMARY OF EVIDENTIARY OBJECTIONS**...............................**8**

**IV. LEGAL STANDARD**........................................................**10**

**V. ARGUMENT**..................................................................**11**

A. Johnson's claims do not fail due to the doctrine of collateral estoppel......... 11

  1. The parties' agreement precludes the application of collateral estoppel...12

  2. Chase lost in arbitration and was ordered to "retract and cause to be
  removed any and all adverse credit references"............................13

    a. Johnson was not awarded compensation for late fees charged between
    February 17, 2017 and September 6, 2017................................13

    b. Johnson was entitled to credit repair as a consequence of credit
    reporting after September 6, 2017, stemming from a mutual mistake on
    that date.............................................................. 14

  3. Even if collateral estoppel applied, the arbitrator's findings support that
  Chase's reporting was "inaccurate or incomplete"........................14

    a. Chase's reporting was incomplete and misleading because it omitted
    the existence of a bona fide dispute.................................... 14

    b. Chase's reporting was patently incorrect because it stated a balance of
    $499 instead of $238.52............................................... 16

    c. Chase's reporting was misleading because it suggested willful or
    negligent non-payment over an extended period of time.....................16

    d. Chase's reporting was, in the alternative, unverifiable because Chase
    deleted the only evidence suitable to verify its accuracy.....................16

    e. With respect to accuracy, Chase's subjective intent is irrelevant.........17

B. Johnson's FCRA claim does not fail...........................................18

CORRECTED OPPOSITION TO JPMORGAN CHASE BANK, N.A'S MOTION FOR SUMMARY JUDGMENT

1. Johnson's FCRA claim is not barred by the statute of limitations............ 18

2. Johnson's pro se legal argument in a prior arbitration is not a binding

judicial admission.........................................................................................20

3. The information furnished by Chase was not accurate............................ 22

    a. The "disputed information" is not limited to the ACDV contents....... 22

    b. Chase was provided relevant information beyond the ACDV............. 23

    c. The ACDV itself put Chase on notice of the dispute's nature............. 23

    d. Inconsistencies in Chase's evidence undermine its accuracy defense. 24

    e. Chase conflates "relevant information" with "disputed information". 24

    f. Chase's purported basis for its investigation's reasonableness has

    "nothing to do" with its investigation.................................................. 25

4. Chase's investigation was not reasonable............................................... 26

C. Johnson's CCRAA claim does not fail.......................................................... 27

**VI. CONCLUSION..........................................................................................28**

CORRECTED OPPOSITION TO JPMORGAN CHASE BANK, N.A'S MOTION FOR SUMMARY JUDGMENT

1

**TABLE OF AUTHORITIES**

2

**Cases**                                                                                   **Page(s)**

3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)                                         10

4

*Blackwell v. Capital One Bank*, 2008 WL 793476 (S.D. Ga. 2008)                                18

5
6

*Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876 (9th    14, 27
Cir. 2010)

7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)                                                10

8

*Comstock v. Humphries*, 786 F.3d 701 (9th Cir. 2015)                                          20

9

*Davis v. PNC Bank, N.A.*, No. 24-2564 (9th Cir. 2025)                                         14

10

*Denan v. Trans Union LLC*, 959 F.3d 290 (7th Cir. 2020)                                       20

11
12

*Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100 (9th Cir. 2012)                             18

13

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir.         22, 25
2009)

14

*Harper v. Wallingford*, 877 F.2d 728 (9th Cir. 1989)                                          10

15
16

*Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295 (11th Cir.     16, 22, 24
2016)

17

*In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010)                                 10

18
19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574               10
(1986)

20
21

*Pastrano v. Ditech Fin., LLC*, No. EDCV 18-00659-AB (MRWx),                     14
2018 WL 3343606 (C.D. Cal. July 3, 2018)

22
23

*Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224 (E.D. Cal.               10
1985), aff'd, 810 F.2d 898 (9th Cir. 1987)

24

*Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017)                                               18

25

*Wang v. Asset Acceptance, LLC*, 681 F. Supp. 2d 1143 (N.D. Cal.                 27
2010)

26

27

28

CORRECTED OPPOSITION TO JPMORGAN CHASE BANK, N.A'S MOTION FOR SUMMARY JUDGMENT

**Statutes**                                                        **Page(s)**

15 U.S.C. § 1681p                                                        18

15 U.S.C. § 1681s-2(b)                                                6, 24

15 U.S.C. § 1681s-2(b)(1)(D)                                             18

15 U.S.C. § 1681t(b)(1)(F)                                               20

Cal. Civ. Code § 1785.25(a)                                             27


**Rules**                                                           **Page(s)**

12 C.F.R. § 1022.41(a)                                                   20

Fed. R. Civ. P. 56(c)                                                    10

C.D. Cal. L.R. 11-6.1                                                    28

CORRECTED OPPOSITION TO JPMORGAN CHASE BANK, N.A'S MOTION FOR SUMMARY JUDGMENT

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**I. BACKGROUND**

On September 6, 2017, Joshua Johnson ("Johnson") told JPMorgan Chase Bank, N.A. ("Chase") to close his Chase Ink credit card account and authorized a full payoff withdrawal from his bank account. (SGD ¶ 121). Chase closed the account but withdrew only the minimum amount due of $111.49, leaving a balance of $238.52.

From October 2017 to April 2018, Chase reported a growing balance and delinquency, culminating in a May 2018 report that the account had been charged off as a loss, with a $499 balance. Johnson was unaware because he received no notice from Chase regarding a balance owed or payment due. (SGD ¶ 122–124).

Johnson discovered the negative reporting on May 21, 2018, disputed it directly with Chase, and offered to resolve the dispute by paying the entire amount allegedly owed in exchange for credit repair. (SGD ¶¶ 46–47, 125). Chase refused. On August 25, 2020, Johnson disputed again via Equifax, and Equifax notified Chase via an "Automated Credit Dispute Verification" form ("ACDV"). The notice triggered Chase's duties under 15 U.S.C. § 1681s-2(b) to investigate and correct any reporting that was inaccurate, incomplete, or unverifiable. On September 8, 2020, Chase responded to Equifax via an ACDV response that left its reporting unchanged.

On August 26, 2020, Johnson paid $499 under protest. On December 22, 2020, December 30, 2020, and March 2, 2021, Johnson informed counsel for Chase of his willingness to resolve the dispute in exchange for nothing more than credit repair. (SGD ¶ 126). Chase again refused.

On September 30, 2020, Johnson initiated arbitration against Chase. On March 3, 2022, the arbitrator found a "mutual mistake" regarding the September 6, 2017 call—Johnson understood he was paying in full, Chase understood he made

1  only a minimum payment—and ordered Chase to "retract and cause to be removed

2  any and all adverse credit references" upon Johnson's payment of $238.52.

3  **II. SUMMARY OF ARGUMENT**

4       Chase moves for summary judgment by asking this Court to resolve disputed

5  facts and ignore evidence that creates multiple triable issues for a jury. Chase has

6  failed to meet its initial burden of showing the absence of a genuine issue of

7  material fact on any of Johnson's claims. To the contrary, the record is replete with

8  evidence from which a reasonable jury could find in Johnson's favor.

9       **Chase has no admissible evidence regarding the accuracy of the**

10 **information it reported or the reasonableness of its investigation.** Chase argues

11 that the information it reported was accurate but it cannot present any evidence that

12 would be admissible at trial in support of its argument. Similarly, Chase argues that

13 it conducted a reasonable investigation, but it has no evidence that would be

14 admissible at trial in support of that, either.

15      **The arbitration award has no preclusive effect.** Chase asks this Court to

16 give a preclusive effect to certain findings in the arbitration award, even though

17 Chase's own agreement—drafted and promulgated by it in 2019—expressly

18 forbids any such effect beyond the claims arbitrated.

19      **The arbitration award undermines Chase's position.** Even if preclusion

20 were available, the award itself undermines Chase's position: not only did Johnson

21 win, with the arbitrator ordering credit repair (confirming a bona fide dispute as

22 omitted), but he found that the issue stemmed from a mutual mistake (not

23 negligence or willful misconduct as implied) and that the balance was $238.52 (not

24 $499 as stated).

25      **The statute of limitations had not run when Johnson filed his claim.**

26 Chase argues that the statute of limitations for Johnson's Fair Credit Reporting Act

27 ("FCRA") claim ran on September 8, 2022 because Chase "responded" to Equifax

28 on September 8, 2020. The argument fails for the obvious reason that Johnson

CORRECTED OPPOSITION TO JPMORGAN CHASE BANK, N.A'S MOTION FOR SUMMARY JUDGMENT

could not have discovered anything from a private communication between Chase and Equifax to which he was not a party. Moreover, Chase presents no evidence that Johnson was aware of Chase's response on September 8, 2020.

**The information reported by Chase to the credit bureaus was inaccurate, incomplete, and unverifiable.** *First*, it was inaccurate because it stated a patently incorrect balance of $499 instead of $238.52. *Second*, it was incomplete, because it omitted the existence of a bona fide dispute. *Third*, it was misleading because it implied seven months of willful non-payment instead of a mutual mistake. *Fourth*, it was unverifiable, because Chase deleted the dispositive September 6, 2017 call recording while Johnson was actively disputing the account.

**Chase's investigation was unreasonable.** The investigation that Chase conducted was unreasonable. Chase investigated only fraud, despite multiple indicators to the contrary: it was on notice that the dispute did not concern fraud, the ACDV dispute code did not indicate fraud, and the narrative text in the ACDV did not indicate fraud.

## III. SUMMARY OF EVIDENTIARY OBJECTIONS

Chase relies on several purportedly uncontroverted facts in its Statement of Uncontroverted Facts in Support of its Motion for Summary Judgment (Dkt. 68-2) ("SUF"). Those facts, in turn, are supported by a small number of key exhibits as well as the testimony of its corporate representative, Barbara Burda, which she gave when deposed by Johnson. The exhibits, as well as Burda's testimony, are replete with serious incurable evidentiary problems that preclude them from being presented in admissible form at trial. As the party moving for summary judgment, Chase bears the initial burden of demonstrating the absence of a genuine issue of material fact. Chase's motion should be denied because it has not, and cannot, meet this initial burden.

CORRECTED OPPOSITION TO JPMORGAN CHASE BANK, N.A'S MOTION FOR SUMMARY JUDGMENT

**Missing Aug 25 ACDV.** Chase's defense relies heavily on the alleged fact that Equifax sent it an ACDV with a "dispute code" of "104". Chase acknowledges that Equifax sent an ACDV to it electronically on August 25, 2020 but has produced neither the request nor a reproduction of the request. Instead, Chase has produced two different reproductions of its September 8, 2020 ACDV *response*. Chase claims that the second reproduction is the ACDV request sent on August 25, 2020 despite the fact that it contains a "response date" of September 8, 2020 on its face. Paradoxically, this reproduction contains a dispute code of "021", not "104". (SGD ¶¶ 12–14, 16, 18, 21).

**Irrelevant draft CFPB response letter.** In responses to interrogatories propounded by Johnson asking Chase to state the basis for (1) its determination that its reporting was accurate and complete and (2) its contention that its investigation was reasonable, Chase directed Johnson to a letter dated October 13, 2020 and authored by Carla Wills. These interrogatories were verified on July 22, 2023 by Chase's designated corporate representative, Burda. But, on October 26, 2023, Burda testified that the letter had "nothing to do" with its investigation. Moreover, Wills disavowed any knowledge of the letter during her deposition. Finally, the letter is inadmissible as it consists of at least three layers of hearsay. (SGD ¶ 20).

**No personal knowledge.** Chase neither knows the name of nor tried to identify the employee who conducted the investigation. Instead, Chase stipulated that it is not aware of any employee, current or former, with personal knowledge of the investigation. *See* Evidentiary Objections in Support of Opposition to Motion for Summary Judgment ("EO"), Section V (Objection re: Employee Stipulation).

**Speculative testimony based on unreliable and incomplete business records containing layers of hearsay.** Because she has no personal knowledge of the investigation, Burda testified only as to what she believed an investigator "would have" done based entirely on memos in Chase's "C3" system of record. *See*

CORRECTED OPPOSITION TO JPMORGAN CHASE BANK, N.A'S MOTION FOR SUMMARY JUDGMENT

1  EO, Section VI.A (Objection to C3 Screens). Chase relies heavily on its "C3"

2  system of record. According to Burda, C3 contains the totality of the information

3  reviewed during the investigation *and* the actions taken during the investigation.

4  But C3 is both unreliable and incomplete. *Id*. Burda testified that memos may

5  contain errors. *Id*. She also testified that records can be "purged" from C3, but she

6  did not know the criteria, and an employee reviewing C3 would not know either.

7  *Id*. Even if C3 was a reliable repository of records, which it is not, Chase could rely

8  upon a standard hearsay exception to show that the record was made. *Id*. But the

9  memos contain more hearsay, e.g., a memo by an unidentified employee stating the

10  conclusion "validated account status in C3", which cannot be cured because no one

11  has personal knowledge of the investigation.

12      **Improper instruction concerning post-September 2017 notice.** Chase

13  proffers several uncontroverted facts regarding notice after September 6, 2017.

14  Chase has presented no evidence and opposing counsel improperly instructed

15  Chase's witness not to answer questions. *See* EO, Section VI.B (Objection to

16  Improper Instruction).

17  **IV. LEGAL STANDARD**

18      A motion for summary judgment must be granted when "the pleadings, the

19  discovery and disclosure materials on file, and any affidavits show that there is no

20  genuine issue as to any material fact and that the movant is entitled to judgment as

21  a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

22  242, 247–48 (1986).

23      The moving party bears the initial burden of identifying the elements of the

24  claim or defense and evidence that it believes demonstrates the absence of an issue

25  of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the

26  nonmoving party will have the burden of proof at trial, the movant can prevail

27  merely by pointing out that there is an absence of evidence to support the

28  nonmoving party's case. *Id*.

Once the moving party has met its initial burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. An issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for either party," and material if the issue would "affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id*. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

The Court must draw all reasonable inferences in the nonmoving party's favor. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson*, 477 U.S. at 255). Nevertheless, inferences are not drawn out of thin air, and it is the nonmoving party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987). "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

## V. ARGUMENT[1]

### A. Johnson's claims do not fail due to the doctrine of collateral estoppel.

Chase contends that Johnson's claims are barred by the doctrine of collateral estoppel. According to Chase, although the prior arbitration did not directly determine whether its credit reporting was accurate under the Fair Credit Reporting Act (FCRA), the issues that were decided in that arbitration necessarily establish, as a matter of law, that Chase's reporting was accurate under the FCRA. Chase's argument fails for several reasons.

---

[1] The subsections herein track and respond to the corresponding subsections in the MSJ.

CORRECTED OPPOSITION TO JPMORGAN CHASE BANK, N.A'S MOTION FOR SUMMARY JUDGMENT

*First*, in 2019, Chase introduced an anti-preclusion clause into its standard-form agreement, such that no arbitration award or decision would have any preclusive effect on issues or claims in any subsequent proceedings beyond the claims at issue in the arbitration. As Chase concedes, the arbitration did not concern a FCRA claim.

*Second*, even if collateral estoppel applied, the arbitrator's findings cut against Chase and demonstrate several independent grounds for a FCRA violation: (a) Chase's reporting was incomplete and misleading (it omitted the existence of the bona fide dispute that Johnson ultimately prevailed on); (b) Chase reported an incorrect balance of $499 (the arbitrator found only $238.52 was owed); (c) Chase's reporting misleadingly suggested willful non-payment over seven months (the arbitrator found it was the result of a mutual mistake); (d) Chase's reporting was, in the alternative, unverifiable (Chase deleted the recording of the key oral agreement while the account was under dispute).

*Third*, Chase's subjective "understanding" of its reporting is irrelevant to the objective accuracy standard under the FCRA. After all, Chase reported Johnson, not the other way around.

**1. The parties' agreement precludes the application of collateral estoppel.**

In 2019, well before the arbitration that was initiated by Johnson's demand for arbitration on September 30, 2020, Chase amended its standard cardmember agreements—including an agreement that it had with Johnson—to add the following language:

> All claims or disputes between you and us about or relating in any way to your account, <u>any prior account</u>, your cardmember agreement with us (including any future amendments), <u>any prior cardmember agreement</u>, or <u>our relationship</u> are referred to as "Claims" for purposes of this agreement to arbitrate. ... All Claims are subject to arbitration whether they <u>arose in the past</u>, may currently exist, or may arise in the

CORRECTED OPPOSITION TO JPMORGAN CHASE BANK, N.A'S MOTION FOR SUMMARY JUDGMENT

future. ... <u>No arbitration award or decision will have any preclusive effect on issues or claims in any subsequent proceedings beyond the Claims at issue.</u>

(Statement of Genuine Disputes in Support of Opposition to Motion for Summary Judgment ("SGD") ¶¶ 41–42).

Chase is therefore barred, by the agreement that it drafted, from asserting collateral estoppel.

**2. Chase lost in arbitration and was ordered to "retract and cause to be removed any and all adverse credit references".**

Ultimately, Johnson prevailed in the arbitration against Chase. (SGD ¶¶ 43–44). The arbitrator considered a breach-of-contract claim based on the parties' conduct from early 2017 through mid-2018. (Declaration of Robert Hyatt in Support of Chase's Motion for Summary Judgment (Dkt. 68-3) ("Hyatt Decl.") Ex. F at 5–6 ("Arbitration Award")).[2]

The two issues examined by the arbitrator, and his findings on those issues, are bifurcated into two periods split by the agreement that was entered into on September 6, 2017. *Id*. On the first issue, the arbitrator found against Johnson. *Id*. That issue was not necessary to decide the merits of the arbitration, and is not relevant here as it concerned various allegations concerning conduct that occurred prior to September 6, 2017. *Id*. On the second issue, the arbitrator found for Johnson, and consequently ordered Chase to <u>"retract and cause to be removed any and all adverse credit references"</u> relating to Johnson's Ink account upon payment of $238.52. *Id*.

**a. Johnson was not awarded compensation for late fees charged between February 17, 2017 and September 6, 2017.**

With respect to the first issue, the arbitrator considered whether an agreement had been reached between the parties on February 17, 2017 regarding

---

[2] Johnson maintains his objection to this document. *See* EO, Section IV.

CORRECTED OPPOSITION TO JPMORGAN CHASE BANK, N.A'S MOTION FOR SUMMARY JUDGMENT

1  online statement access, the terms of that agreement, and whether Chase had

2  breached that agreement, "ultimately caus[ing] Johnson to fail to fully pay off his

3  Ink account when he canceled it, resulting in adverse credit reports by Chase?" *Id*.

4          Issue 1 was not decided in Johnson's favor. The arbitrator found that

5  "Johnson presented no evidence that his Ink account statements were not available

6  from March, 2017 at least <u>through Sept., 2017</u> on the separate account website

7  access that he had set up and then apparently forgot." *Id*. He did not find, as Chase

8  argues, that "Johnson had access to his billing statements online". Rather, he found

9  only that Johnson had "presented no evidence that his Ink account statements were

10 *not* available".

11 *Id*. Consequently, Johnson was not awarded late fees charged during that period,

12 which he had requested. (SGD ¶ 45).

13 **b. Johnson was entitled to credit repair as a consequence of credit reporting**

14 **after September 6, 2017, stemming from a mutual mistake on that date.**

15          With respect to the second issue, the arbitrator examined whether "[w]hen a

16 Chase representative contacted Johnson by telephone call on Sept. 6, 2017, was

17 there an agreement made that Johnson, in paying $111.49 to Chase, was paying off

18 the entire balance of his account and then closing the account with a $0 balance,

19 <u>such that no adverse credit report should have been made?</u>" (Arbitration Award).

20          Issue 2 was decided in Johnson's favor. The arbitrator concluded that "a

21 separate contract transaction occurred between the parties in Sept, 2017 involving

22 the closing of the Ink account and payment thereon. There was a mutual mistake of

23 fact between the parties <u>with Johnson understanding that he was paying the entire</u>

24 <u>balance</u> and Chase understanding that he was paying only the minimum payment."

25 *Id*.

26

27

28

CORRECTED OPPOSITION TO JPMORGAN CHASE BANK, N.A'S MOTION FOR SUMMARY JUDGMENT

Case 2:22-cv-06718-AB-MAA    Document 72    Filed 08/10/25    Page 15 of 29    Page ID
#:1083

**3. Even if collateral estoppel applied, the arbitrator's findings support that Chase's reporting was "inaccurate or incomplete".**

**a. Chase's reporting was incomplete and misleading because it omitted the existence of a bona fide dispute.**

Reported information is "misleading" if it fails "to report a bona fide dispute". *Davis, et al. v. PNC Bank, N.A., et al.*, No. 24-2564, at *1 (9th Cir. 2025) (vacating summary judgment where a furnisher reported a technically accurate balance but failed to report the bona fide dispute surrounding it); *see also Pastrano v. Ditech Fin., LLC*, No. EDCV 18-00659-AB (MRWx), 2018 WL 3343606, at *4 (C.D. Cal. July 3, 2018) (Birotte Jr., J.) (recognizing that "technically accurate" reporting can be incomplete if it omits a dispute).

Johnson prevailed in the arbitration, conclusively establishing that he had a meritorious—and necessarily, bona fide—dispute. (SGD ¶¶ 43–44). The equitable relief Johnson obtained was exactly what he had sought— and Chase had refused—in May 2018:

> **Johnson:** The balance is not the concern. I can pay the balance off now. I could have paid it off previously. The issue is that I have marks on my credit report and I want those resolved before I commit to paying off—that's not the issue. The issue is that I'm afraid I'm going to lose leverage with you guys to get the marks taken off my credit report. It's already been you know charged off to a third party—does that make sense?
>
> **Chase:** Right.
>
> **Johnson:** <u>If you can take the marks off the credit report, I will pay the balance right now.</u>

(SGD ¶¶ 46–47) (cleaned up) (emphasis added).

Chase was first put on notice, in May 21, 2018, of Johnson's dispute:

CORRECTED OPPOSITION TO JPMORGAN CHASE BANK, N.A'S MOTION FOR SUMMARY JUDGMENT

**Johnson:** I tried to cancel [the Ink account] or close it months, if not a year

ago. I think it's somehow still open though and I got a collections notice

from a third party collections agency recently. I'm also noticing a derogatory

mark on my credit report. So I just wanted to call to inquire about that.

(SGD ¶¶ 48–49) (cleaned up).

Chase omitted this dispute from its reporting, rendering it incomplete and

misleading. (SGD ¶¶ 50–51, 61–64).

**b. Chase's reporting was patently incorrect because it stated a balance of $499**

**instead of $238.52.**

"[A]n item on a credit report can be 'incomplete or inaccurate' within the

meaning of the FCRA's furnisher investigation provision, 15 U.S.C. §

1681s-2(b)(1)(D), 'because it is patently incorrect, or because it is misleading in

such a way and to such an extent that it can be expected to adversely affect credit

decisions.'" *Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876 (9th Cir.

2010), at *890-891.

The amount owed after September 6, 2017, and owing when the arbitrator

rendered his award on March 3, 2022, was $238.52. (Arbitration Award). Yet,

Chase reported that the account had been charged off with a balance of $499. (SGD

¶¶ 50–51, 53). Chase advances no argument and proffers no evidence to explain

this discrepancy.

**c. Chase's reporting was misleading because it suggested willful or negligent**

**non-payment over an extended period of time.**

The arbitrator credited Johnson's testimony that he intended to pay off and

close the account on September 6, 2017, noting there was "no good reason" for

him to make only the minimum payment when he had ample funds to clear the

balance. (Arbitration Award). Finding that a mutual mistake had occurred, the

arbitrator ordered removal of all adverse credit reporting. *Id*. Chase's reporting, by

contrast, suggests the opposite: willful or negligent non-payment over the course of

CORRECTED OPPOSITION TO JPMORGAN CHASE BANK, N.A'S MOTION FOR SUMMARY JUDGMENT

seven months. This was "misleading in such a way and to such an extent that it can
be expected to adversely affect credit decisions". *Carvalho*, at *890.

**d. Chase's reporting was, in the alternative, unverifiable because Chase
deleted the only evidence suitable to verify its accuracy.**

"Under the FCRA, a furnisher's investigation has three potential ending
points ... verification of accuracy, a determination of inaccuracy or incompleteness,
or a determination that the information cannot be verified." *Hinkle v. Midland
Credit Mgmt., Inc.*, 827 F.3d 1295, at *1302 (11th Cir. 2016) (cleaned up).

The award underscores the centrality of the September 6, 2017 oral
agreement to this dispute—yet the arbitrator observed that "we have no recording
of this call." (Arbitration Award).

When Johnson first disputed the reporting of his account in May 2018, there
was a recording of this call. (SGD ¶¶ 67–70). But, by late 2020, that recording was
no longer available for review. (SGD ¶ 93, 107, 114–117).

Chase was aware of this. The letter that Chase identifies as the basis for its
determination that its reporting was accurate expressly references a phone call on
September 6, 2017, but notes that it "cannot be reviewed due to the length of time
that has passed". *Id*. In a post-investigation conversation with Johnson, the author
of that letter, Carla Wills, admitted that Chase's reporting was unverifiable:

> **Wills:** I fully understand your concern but, you know, I mean since
> the time has passed if this was two, over two years ago, we can't go
> back and listen to those calls. <u>So there's no way to verify what you're
> actually saying.</u>

(SGD ¶ 114–115) (cleaned up) (emphasis added).

In sum, Chase possessed relevant information when it was first notified of
Johnson's dispute, but chose to delete it or otherwise render it unavailable to an
investigation—*while the account was under dispute*—rendering its reporting

CORRECTED OPPOSITION TO JPMORGAN CHASE BANK, N.A'S MOTION FOR SUMMARY JUDGMENT

1  unverifiable. Chase may set whatever retention policies it wants to, but it may not

2  report unverifiable information.

3  **e. With respect to accuracy, Chase's subjective intent is irrelevant.**

4        As discussed *supra*, the arbitrator found that "Johnson [understood] that he

5  was paying the entire balance and Chase [understood] that he was paying only the

6  minimum payment." (Arbitration Award). Chase argues that this supports a finding

7  of accuracy because the award establishes that its reporting was based on its

8  "understanding" of the September 6, 2017 agreement. This may have relevance to

9  whether Chase's investigation was reasonable, or to damages (i.e., whether Chase's

10  violation was willful or simply negligent), but it has nothing to do with whether the

11  reporting was accurate.

12  **B. Johnson's FCRA claim does not fail.**

13  **1. Johnson's FCRA claim is not barred by the statute of limitations.**

14        Because a "FCRA violation is tied to the reasonableness of the furnisher's

15  investigation rather than the accuracy of its results", the violation occurs upon the

16  completion of the unreasonable investigation. *Drew v. Equifax Info. Servs., LLC*,

17  690 F.3d 1100, at *1110 (9th Cir. 2012). Section 1681p(1) of the FCRA "sets the

18  statute of limitations at 2 years after the date of discovery or constructive discovery

19  by the plaintiff of the violation." *Id*. (cleaned up); *see also Syed v. M-I, LLC*, 853

20  F.3d 492 (9th Cir. 2017).[3]

21        Chase argues that the statute of limitations for Johnson's FCRA claim ran on

22  September 8, 2022 because that is two years after the "date that Chase responded

23  to Plaintiff's Equifax dispute". This cannot be true because Johnson is not Equifax

24  and it is entirely unclear how Johnson could divine from a communication between

25

26  [3] Chase's reliance on *Blackwell*, an unpublished, out-of-circuit case from 2008, is
    misplaced. The Ninth Circuit's subsequent and binding decision in *Drew* governs

27  this issue, establishing that the limitations period begins upon the plaintiff's
    discovery of the violation.

28

CORRECTED OPPOSITION TO JPMORGAN CHASE BANK, N.A'S MOTION FOR SUMMARY JUDGMENT

1    those parties that Chase's investigation was complete, much less that it had been

2    unreasonable. In support, Chase cites *Blackwell v. Capital One Bank*, 2008 WL

3    793476 (S.D. Ga. 2008).

4         Under *Drew* and *Syed*, the limitations period does not begin the day that the

5    furnisher responds to the CRAs with the results of its investigation (here,

6    September 8, 2020). It begins when the consumer learns, or should have learned,

7    that the investigation was unreasonable. *Blackwell* is contrary to *Drew* and also

8    unpersuasive because the statute says "discovery" and a consumer cannot discover

9    the results of the furnisher's investigation solely based on a communication

10   between the furnisher and the CRA that does not involve the consumer.

11        What Chase actually argues is that the clock started ticking when it

12   responded to Equifax on September 8, 2020. But it included two facts in its SUF

13   that relate to a purported response letter that Equifax allegedly sent to Johnson on

14   or around September 11, 2020. (SUF ¶¶ 22–23). SUF ¶ 22 is not cited in the MSJ

15   at all. SUF ¶ 23 is cited but does not advance or support any argument. Neither fact

16   is supported by evidence that could be made admissible at trial (SGD ¶¶ 22–23).

17        Chase's nonexistent argument regarding these facts warrants no

18   counterargument, but for sake of completeness: the purported response letter could

19   not have put Johnson on notice that Chase's investigation was unreasonable. It

20   refers to an Equifax reinvestigation rather than a Chase investigation, and

21   confusingly states that "[t]his item has been updated to report as paid in full" and

22   "FOLLOWING FIELDS HAVE BEEN MODIFIED: *BALANCE *PAST DUE

23   *CHARGE OFF AMOUNT *HIGH CREDIT *DATE OF LAST PAYMENT

24   *ACTIVITY DESIGNATOR *ADDITIONAL INFORMATION *ACCOUNT

25   HISTORY" without any indication as to what those fields were modified to. (Hyatt

26   Decl. Ex. N at 4. If anything, the letter suggests the disputed information was

27   corrected. Johnson does not remember receiving the letter. (SGD ¶ 71).

28

CORRECTED OPPOSITION TO JPMORGAN CHASE BANK, N.A'S MOTION FOR SUMMARY JUDGMENT

1   Finally, while Chase includes an extensive amount of factual and procedural

2   history, including noting the date of the filing of Johnson's complaint in this Court

3   on September 19, 2022, it neglects to mention that Johnson actually filed a demand

4   for arbitration on August 3, 2022. (SGD ¶ 118). Chase objected to arbitration, the

5   administrator declined, and Johnson filed his complaint on the next court day.

6   (SGD ¶¶ 119–120). Neither Chase's stated argument nor unstated argument are

7   persuasive, but even if they were, equitable tolling would push the complaint well

8   within the limitations period because Johnson was "unable to obtain vital

9   information bearing on the existence of his claim" until that date. *McLaren v.*

10  *ReconsTrust Co., N.A.*, No. 10CV2090 L NLS, 2012 WL 684747, at *3 (S.D. Cal.

11  Mar. 1, 2012).

12  **2. Johnson's *pro se* legal argument in a prior arbitration is not a binding**

13  **judicial admission.**

14  Chase notes that Johnson stated in an arbitration brief that "Claimant

15  [Plaintiff] admits (and Respondent [Chase] concurs) that he was liable for the

16  account, and hence the information reported to the CRAs by Respondent was

17  accurate". Chase argues "[t]his admission is fatal to Plaintiffs [sic] FCRA claim"

18  because "[b]y admitting that the information reported was accurate, Plaintiff is

19  admitting that he has no claim under FCRA." *Id*.

20  On August 19, 2020, Johnson submitted his CFPB complaint, and on

21  October 14, 2020, he received a response letter from Chase regarding his CFPB

22  complaint. (SGD ¶ 72).

23  On September 30, 2020, prior to the receipt of that letter, Chase was served

24  with Johnson's demand for arbitration. (SUF ¶ 24). On April 2, 2021, Johnson

25  amended his demand to be responsive to specific claims made by Chase in its

26  response letter. (SUF ¶ 25).

27  On April 29, 2021, counsel for Chase sent Johnson an email stating that

28  "FCRA preempts all other credit reporting related claims regardless of the name

20

CORRECTED OPPOSITION TO JPMORGAN CHASE BANK, N.A'S MOTION FOR SUMMARY JUDGMENT

under which they are pled; Mr. Johnson declined to make a FCRA claim in his
amended complaint and is therefore not entitled to such relief because such relief
could not be awarded in court under these circumstances." (SGD ¶ 73).

On June 7, 2021, Johnson submitted a pre-hearing brief, wherein he argued
that his breach-of-contract claim was not preempted by section 1681t(b)(1)(F) of
the FCRA because "he was liable for the account":

> Information is considered accurate if it "correctly [reflects] ... liability
> for the account." 12 C.F.R. § 1022.41(a); *Denan v. Trans Union LLC*,
> 959 F.3d 290 ([7th] Cir. 2020). ... Claimant admits (and Respondent
> concurs) that he was liable for the account, and hence the information
> reported to the CRAs by Respondent was accurate. Claimant's claim
> thus survives § 1681t(b)(1)(F), regardless of whether the total or
> statutory preemption approach is utilized, because it does not arise
> under a state statute and does not concern the reporting of inaccurate
> information.

(Hyatt Decl. Ex. P at 11–16).

By "liable for the account", Johnson meant only that he had opened the
account and that all purchases were made by him. (SGD ¶ 74). Johnson's statement
was a legal argument, advanced to counter Chase's preemption theory; it was not a
binding judicial admission of fact. Chase conflates these two distinct concepts. A
party's interpretation of a complex legal standard like FCRA "accuracy" in a brief
is fundamentally different from a formal admission of a concrete fact.

Johnson's legal conclusion followed a narrow definition of "accuracy"
articulated in *Denan v. Trans Union LLC*, 959 F.3d 290 (7th Cir. 2020) when
contrasting the obligations of CRAs to furnishers, with respect to disputes over the
underlying legal validity of a debt, which CRAs are not equipped to adjudicate:

> "Accuracy" for furnishers, however, means information that
> "correctly [r]eflects . liability for the account." 12 C.F.R. §

1   1022.41(a). Neither the FCRA nor its implementing regulations

2   impose a comparable duty upon consumer reporting agencies, much

3   less a duty to determine the legality of a disputed debt.

4   Johnson's legal argument was flawed. This was the first brief written by

5   Johnson, who is not an attorney, had no prior legal experience, was representing

6   himself in a consumer arbitration, and making a legal argument concerning a

7   complex legal topic. (SGD ¶ 75).

8   As the Ninth Circuit makes clear, such statements are not binding:

9   "[A]rguments in briefs are not evidence". *Comstock v. Humphries*, 786 F.3d 701,

10  709 (9th Cir. 2015). Chase cannot transform a *pro se* litigant's flawed legal

11  argument from an old arbitration brief into a dispositive factual admission to defeat

12  a federal claim.

13  **3. The information furnished by Chase was not accurate.**

14  Chase's argument fundamentally mischaracterizes its obligations under the

15  FCRA. It contends that: (a) its statutory duty was limited to investigating "the

16  disputed information"; (b) this information is confined to the contents of the

17  "Automated Credit Dispute Verification" ("ACDV"); (c) because the ACDV

18  indicated fraud (dispute code 104) and there was no fraud, Chase fulfilled its

19  obligations; and (d) Johnson's factual assertions were incorrect. This narrow

20  interpretation fails.

21  **a. The "disputed information" is not limited to the ACDV contents.**

22  Chase selectively quotes *Gorman* for the proposition that "[t]he pertinent

23  question is... whether the furnisher's procedures were reasonable in light of what it

24  learned about the nature of the dispute from the description in the CRA's notice of

25  dispute." *Id*. However, Chase omits the critical footnote attached to this sentence:

26  "In deciding that the notice determines the nature of the dispute to be investigated,

27  we do not suggest that it also cabins the scope of the investigation once

28  undertaken." *Gorman*.

Courts have consistently rejected Chase's cramped interpretation. "*Gorman* does not stand for the principle that a furnisher need only reasonably investigate the contents of the ACDV. <u>If Plaintiff provided Defendant with information relevant to the nature of the dispute, as set forth in the ACDV, *Gorman* suggests that Defendant had an obligation to consider this information in conducting a reasonable investigation</u>." *Seungtae Kim v. BMW Financial Services NA, LLC*, 142 F. Supp. 3d 935, at *948 (2015) (emphasis added); *see also Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, at *1306 (11th Cir. 2016) (holding that a furnisher cannot "truncate its investigation" based on limited notice from a CRA and must consider "dispute-related information beyond the information provided by the CRA").

**b. Chase was provided relevant information beyond the ACDV.**

Chase cannot claim ignorance of the dispute's nature because Johnson provided it with extensive dispute-related information before, during, and after Chase's investigation:

1. **May–June 2018:** Johnson had ten separate conversations with Chase representatives regarding the account, its payoff and closure, and the unexplained balance. (SGD ¶¶ 76–78).

2. **August 19, 2020:** Johnson filed a written complaint with the CFPB, which Chase received. (SGD ¶¶ 79–80).

3. **August 25, 2020:** Johnson served Chase with written notice of dispute and intent to arbitrate. (SGD ¶¶ 81–82).

**c. The ACDV itself put Chase on notice of the dispute's nature.**

Even accepting Chase's premise that the ACDV limits the investigation's scope, the ACDV itself revealed the dispute was not merely about fraud. Burda testified:

> Q: So did the dispute -- the dispute involve an allegation by Mr. Johnson that there was an incorrect balance on his account?

1    A: Based on the FCRA relevant information, yes.

2    ...

3    Q: And did the FCRA relevant information box here suggest that the

4    complaint was fraud?

5    A: No. The FCRA relevant information did not, but the dispute code

6    did.

7    (SGD ¶¶ 83–84) (emphasis added).

8    **d. Inconsistencies in Chase's evidence undermine its accuracy defense.**

9    Chase's accuracy defense rests on a fundamental contradiction. Burda

10   testified that the ACDV contained dispute code "104" (fraud), relying on what

11   appears to be a 2021 internal screen printout. (SGD ¶ 85). However, the document

12   that Chase's counsel swears is the actual ACDV—a "true and correct copy" of the

13   "Automated Consumer Dispute Verification... sent by Equifax to Chase"—contains

14   dispute code "021". (SGD ¶ 87).

15   Chase's dispute manual defines codes "019" and "023" but entirely omits

16   "021". (SGD ¶¶ 88–90). Chase's counsel was aware of this discrepancy before

17   filing their declaration, as this exchange from the deposition shows:

18   Q: Okay. So I have no idea what that, open paren, "(021)," close

19   paren, code there means. Do you have any idea what that means?

20   A: I believe that would be a dispute code.

21   Q: Could be. It's from Equifax, so I don't know.

22   (SGD ¶ 91).

23   This contradiction calls into question the authenticity of two of the most

24   critical pieces of evidence to both disputed elements of the FCRA violation—the

25   reasonableness of Chase's investigation (triggered by the ACDV request/notice)

26   and the accuracy of Chase's reporting (in its ACDV response). (EO, Section VI.C).

27

28

**e. Chase conflates "relevant information" with "disputed information".**

The FCRA distinguishes between "disputed information" and "relevant information" that must be reviewed:

> After receiving notice... of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the [furnisher] shall—
>
> (A) conduct an investigation with respect to the <u>disputed information</u>;
>
> (B) review all <u>relevant information</u> provided by the consumer reporting agency...

15 U.S.C. § 1681s-2(b)(1) (emphasis added).

Chase cannot shift its investigative burden to Johnson, who had no access to billing statements or Chase's internal records three years after account closure and relied solely on memory. (SGD ¶ 92). As the Eleventh Circuit held, "nothing in the FCRA permits a furnisher to shift its burden of 'reasonable investigation' to the consumer." *Hinkle*, 827 F.3d, at 1295.

**f. Chase's purported basis for its investigation's reasonableness has "nothing to do" with its investigation.**

Throughout its MSJ, Chase cites to facts in its SUF, which in turn references Exhibit M of the Hyatt Decl., identified by Hyatt as a "October 13, 2020 letter from Chase to Plaintiff". Indeed, Chase stated in its responses to Johnson's interrogatories that this document was the basis for Chase's determination that its reporting was accurate and complete. (SGD ¶¶ 94–96). It is also the basis for Chase's contention that its investigation was reasonable. (SGD ¶¶ 97–98).

In July 2023, Burda verified Chase's responses to Johnson's interrogatories (SGD ¶ 99). But then, in October 2023, she testified that this document had "nothing to do" with the investigation and appeared to have been produced in the context of a completely different investigation led by Carla Wills in Chase's

CORRECTED OPPOSITION TO JPMORGAN CHASE BANK, N.A'S MOTION FOR SUMMARY JUDGMENT

1  Executive Office in response to Johnson's CFPB complaint (who has no memory

2  of either investigation). (SGD ¶¶ 100–101).

3      Johnson never received the letter (SGD ¶ 102). It appears to be an

4  unauthenticated draft of a letter that Johnson did receive a day later, on October 14,

5  2020. Its author, Carla Wills, disclaimed knowledge of it during deposition. (SGD

6  ¶¶ 103–106).

7      In sum, Chase's narrow interpretation of its investigative duties lacks legal

8  support, and its factual assertions rest on contradictory and unauthenticated

9  evidence.

10  **4. Chase's investigation was not reasonable.**

11      Chase argues that its investigation of Johnson's dispute was reasonable

12  based on the information it received from Equifax in the ACDV. Chase contends

13  that the dispute, as transmitted by Equifax, characterized the issue as one of fraud,

14  leading Chase to investigate the matter as a potential fraud or identity theft case. *Id*.

15  Chase maintains that it correctly determined no fraudulent takeover had occurred

16  and that all of the "claims" made in the FCRA Relevant Information field of the

17  ACDV were false. *Id*. Chase's argument fails for many reasons.

18      *First*, as discussed *supra*, and as *Gorman* and *Kim* explain, the investigation

19  is not cabined by the ACDV—Johnson provided relevant information directly to

20  Chase that should have, but was not, reviewed. See *supra*, Section II.A. Moreover,

21  the ACDV *did* put Chase on notice of the nature of the dispute. (SGD ¶¶ 83–84).

22      *Second*, none of the evidence that Chase proffers in support of the

23  reasonableness of its investigation could be made admissible at trial. (EO, Sections

24  VI.A and VI.C). Chase has not produced an authentic copy of the ACDV that it

25  received from Equifax and seems to have investigated under the assumption of a

26  "104" dispute code when Equifax actually sent a "021" code. See *supra*, Section

27  II.B.3.d. The author of the document that Chase claims is the basis for its

28  determination that its reporting was accurate and complete, as well as for its

CORRECTED OPPOSITION TO JPMORGAN CHASE BANK, N.A'S MOTION FOR SUMMARY JUDGMENT

contention that its investigation was reasonable, disavowed all knowledge of it during her deposition and Chase's corporate representative testified plainly that it has "nothing to do" with the relevant investigation. See *supra*, Section II.B.3.f.

*Third*, Chase is aware of no employee, current or former, with personal knowledge of the investigation. (SGD ¶¶ 107–108). Chase does not know the name of, nor did it try to identify, the employee who conducted the investigation (SGD ¶¶ 109–110).

*Fourth*, Chase's procedures are unreasonable because they *never* contact the consumer or the CRA as a matter of policy and rely exclusively on their incomplete and unreliable "C3" system of record instead of looking at the underlying documents. (SGD ¶¶ 111–113; EO, Section VI.A (Objections to C3 Screens)).

*Fifth*, Chase deleted a key recording, making any investigation that did not result in an endpoint of reporting the account as "unverifiable" incorrect. *See supra*, Section II.B.3.d.

*Sixth*, Burda's testimony concerning what an investigator "would have" done based on their procedures is speculative and based on unreliable business records. (SGD ¶¶ 107–110).

The root cause was obvious based on the relevant information provided by Johnson alongside Chase's billing, payment, and call records. After all, an arbitrator, with access to less information than Chase, and four years removed, was able to come to the correct conclusion. See *supra*, Section II.A.2.

**C. Johnson's CCRAA claim does not fail.**

Chase argues that "[s]ince Plaintiffs [sic] CCRAA claim mirrors his FCRA claim, it fails on the same grounds". Johnson does not dispute *Carvalho*'s finding that "[t]he CCRAA's requirements of completeness and accuracy mirror those found in the FCRA" or that "cases decided under the FCRA are 'persuasive

CORRECTED OPPOSITION TO JPMORGAN CHASE BANK, N.A'S MOTION FOR SUMMARY JUDGMENT

1  authority and entitled to substantial weight when interpreting the California

2  provisions'".

3     The California Consumer Credit Reporting Agencies Act ("CCRAA")

4  differs from the FCRA in an important way in that it does not require CRA notice

5  to trigger statutory duties. "A person shall not furnish information...if the person

6  knows or should know the information is incomplete or inaccurate." Cal. Civ. Code

7  § 1785.25(a). *See Wang v. Asset Acceptance, LLC*, 681 F. Supp. 2d 1143, 1147–48

8  (N.D. Cal. 2010) (rejecting contention that "section 1785.25(a) includes a duty to

9  notify CRAs when consumers dispute debts").

10     As discussed *supra*, Chase's attempt to defeat Johnson's FCRA claim by

11  cabining its investigation to the four corners of the ACDV is unpersuasive. They

12  are irrelevant to the CCRAA claim. Chase had knowledge of the reporting's

13  incompleteness and inaccuracy based on direct communications from Johnson.

14  This knowledge began in mid-2018 and was continually reinforced until the

15  arbitration concluded in early 2022.

16  **VI. CONCLUSION**

17     Chase asks this Court to grant summary judgment on a record devoid of

18  admissible proof. Its motion is built on speculation, contradiction, and evidence its

19  own employees disavow. Having failed to produce a single piece of admissible

20  evidence to support the two central elements of its defense—the accuracy of its

21  reporting and the reasonableness of its investigation—Chase has failed to meet its

22  initial burden, and its motion must be denied.

23     The evidentiary failures are not technicalities; they are fatal to Chase's

24  motion. Chase proffers no witness with personal knowledge of the investigation. It

25  presents two contradictory versions of the notice it received from Equifax, one of

26  which contains a dispute code that does not even appear in its own manual. It bases

27  its reasonableness argument on a letter that its corporate representative testified

28  had "nothing to do" with the investigation at issue.

This evidentiary collapse leaves a long list of triable facts for a jury. A jury must decide whether Chase's reporting was inaccurate when it stated a balance of $499 instead of the $238.52 the arbitrator found was owed; whether it was misleading when it omitted the existence of a bona fide dispute; whether it was rendered unverifiable by Chase's destruction of a key call recording; and whether it was unreasonable for Chase to conduct a fraud-only investigation.

These are quintessential jury questions. Because Chase has supported its motion with nothing more than inadmissible documents and attorney argument, Johnson respectfully requests that the Court deny the motion in its entirety.

The undersigned, plaintiff Joshua Johnson, certifies that this brief contains 6852 words, which complies with the word limit of L.R. 11-6.1.


**DATED:** August 10, 2025                         Joshua Johnson

                                                                    /s/Joshua Johnson

CORRECTED OPPOSITION TO JPMORGAN CHASE BANK, N.A'S MOTION FOR SUMMARY JUDGMENT