**Joshua Johnson**
1373 Caminito Halago
La Jolla, CA 92037
(336) 423-2594
josh@jj88.org
IN PRO PER



FILED
CLERK, U.S. DISTRICT COURT

8/10/2025

CENTRAL DISTRICT OF CALIFORNIA
BY ___RYO___ DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

JOSHUA JOHNSON,

    Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,

    Defendant.

Case No.: 2:22-cv-06718-AB-MAAx

The Hon. André Birotte Jr.
Courtroom: 7B

Magistrate Maria A. Audero
Courtoom: 690

**CORRECTED DECLARATION OF JOSHUA JOHNSON IN SUPPORT OF OPPOSITION TO JPMORGAN CHASE BANK'S MOTION FOR SUMMARY JUDGMENT**

1

# <u>DECLARATION OF JOSHUA JOHNSON</u>

I, Joshua Johnson, declare as follows:

1. I am the Plaintiff in this matter.

2. I have personal knowledge of the facts stated in this declaration and could testify competently to them if called upon to do so.

3. I make this declaration in support of my Opposition to JPMorgan Chase, N.A. ("Chase's") Motion for Summary Judgment.

4. Attached as **Exhibit A** is a true and correct copy of a email that I received from Chase on June 5, 2019.

5. I was the prevailing party in AAA consumer arbitration 01-20-0015-1734.

6. I was recorded by the AAA as the prevailing party AAA consumer arbitration 01-20-0015-1734 in the document located at https://www.adr.org/media/pwgfahhn/consumerreport_q1_2025_formatted_1.xlsx. I accessed this document on August 7, 2025 and confirmed that the row corresponding to arbitration 01-20-0015-1734, has "CONSUMER" listed in the column labeled "Prevailing Party".

7. During the arbitration, I requested compensation for late fees charged on my Ink account.

8. On May 30, 2018, I had a conversation via telephone with a Chase representative named Mannie.

9. Attached as **Exhibit B** are excerpted pages I cite from a transcript of a telephone conversation between me and a Chase representative that identified himself as Mannie, that occurred on May 30, 2018. I recognized the other speaker as Mannie based on how they identified themselves at the start of the call. The conversation was recorded by me on my phone. The

1  transcript was prepared on or around July 10, 2021 by Rev.com, Inc. I

2  carefully compared the transcript to the recording as well as my memory of

3  what was discussed on the call and made corrections. To the best of my

4  knowledge, Exhibit B is a true and correct of the relevant excerpted pages of

5  the transcript of the conversation. Inaudible or unclear portions are marked

6  "inaudible". I possess the original audio file, which has been produced in

7  this matter, and can provide it to the Court on request.

8  10. During the call, I told the Mannie that the balance wasn't the issue—I could

9  pay it immediately—but I wanted the derogatory marks on his credit report

10  removed first; I said I would pay the balance right away if the marks were

11  removed.

12  11. On May 21, 2018, I had a conversation via telephone with a Chase

13  representative.

14  12. Attached as **Exhibit C** are excerpted pages I cite from a transcript of a

15  telephone conversation between me and that Chase representative, that

16  occurred on May 21, 2018. I recognized the other speaker as a Chase

17  representative based on how they identified themselves at the start of the

18  call. The conversation was recorded by me on my phone. The transcript was

19  prepared on or around July 10, 2021 by Rev.com, Inc. I carefully compared

20  the transcript to the recording as well as my memory of what was discussed

21  on the call and made corrections. To the best of my knowledge, Exhibit C is

22  a true and correct of the relevant excerpted pages of the transcript of the

23  conversation. Inaudible or unclear portions are marked "inaudible". I possess

24  the original audio file, which has been produced in this matter, and can

25  provide it to the Court on request.

26

27

28

CORRECTED DECLARATION OF JOSHUA JOHNSON IN SUPPORT OF OPPOSITION TO JPMORGAN CHASE BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT

13. During the call, I informed the representative that I had tried to cancel or close his account months, if not a year earlier, but I believed the account was still open, and I had received a collections notice from a third-party.

14. Attached as **Exhibit D** are true and correct copies of the cover page, signature page/proof of service, and the excerpted pages I cite from Chase's Amended Responses to Plantiff's Requests for Production, Set One.

15. Attached as **Exhibit E** is a true and correct copy of the excerpted pages I cite from a document titled "Card Dispute Resolution Processing", dated January 8, 2020, that Chase produced in discovery, bearing Bates Nos. CHASE00680 through CHASE00840, which was also marked as Exhibit 2 at Barbara Burda's Rule 30(b)(6) deposition on October 23, 2023.

16. Attached as **Exhibit F** are true and correct copies of materials from the deposition of Barbara Burda, Chase's designated corporate representative, taken October 23, 2023 in Joshua Johnson v. JPMorgan Chase Bank, N.A., No. 2:22-cv-06718-AB-MAAx (C.D. Cal.): (1) the transcript cover page (reflecting Ms. Burda's 30(b)(6) capacity), (2) the court reporter's certification as required by Fed. R. Civ. P. 30(f)(1), and (3) the excerpted pages I cite. These pages were obtained directly from the certified transcript prepared by Michelle L. Goehring, and the copies are unaltered.

17. On June 12, 2018, I had a conversation over two phone calls with a Chase representative named Jeremiah Pressley.

18. ~~Attached as **Exhibit G** are excerpted pages I cite from a transcript of a telephone conversation between me and Jeremiah Pressley that occurred on June 12, 2018. I recognized the other speaker as Jeremiah Pressley based on~~

4

1  how they identified themselves at the start of the call. The conversation was

2  recorded by me on my phone. The transcript was produced by Chase on

3  [DATE] in American Arbitration Association ("AAA") Arbitration

4  01-20-0015-1734. I carefully compared the transcript to the recording as

5  well as my memory of what was discussed on the call. To the best of my

6  knowledge, Exhibit G is a true and correct of the relevant excerpted pages of

7  the transcript of the conversation. Inaudible or unclear portions are marked

8  "inaudible". I possess the original audio file, which has been produced in

9  this matter, and can provide it to the Court on request.

19. Attached as **Exhibit H** are excerpted pages I cite from a second telephone conversation between me and Jeremiah Pressley that occurred on June 12, 2018. I recognized the other speaker as Jeremiah Pressley based on how they identified themselves at the start of the call. The conversation was recorded by me on my phone. The transcript was produced by Chase in AAA Arbitration 01-20-0015-1734. I carefully compared the transcript to the recording as well as my memory of what was discussed on the call. To the best of my knowledge, Exhibit H is a true and correct of the relevant excerpted pages of the transcript of the conversation. Inaudible or unclear portions are marked "inaudible". I possess the original audio file, which has been produced in this matter, and can provide it to the Court on request.

20. I do not remember receiving the document attached to Robert Hyatt's Declaration in Support of Chase's Motion for Summary Judgment as Exhibit N and described as a "a true and correct copy of a letter from Equifax to Plaintiff dated September 11, 2020" prior to the arbitration.

21. Attached as **Exhibit I** is a true and correct copy of a letter which I received from Chase, via the CFPB's website, on October 14, 2020.

CORRECTED DECLARATION OF JOSHUA JOHNSON IN SUPPORT OF OPPOSITION TO JPMORGAN CHASE BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT

22. On April 29, 2021, I received an email from counsel for Chase stating that "FCRA preempts all other credit reporting related claims regardless of the name under which they are pled; Mr. Johnson declined to make a FCRA claim in his amended complaint and is therefore not entitled to such relief because such relief could not be awarded in court under these circumstances."

23. When I wrote that I admitted I was liable for my Ink account and hence the information reported to the CRAs by Chase was accurate, I meant only to admit that I opened the account and that all purchases were made by me.

24. I am not an attorney and had no prior legal experience before the arbitration 01-20-0015-1734.

25. Between May 21, 2018 and June 12, 2018, I had 10 phone calls with Chase representatives. Attached as **Exhibit J** are pages from the transcripts of each phone call. The conversations were recorded by me on my phone in North Carolina. I carefully compared the transcripts to the recordings as well as my memory of what was discussed on the calls. To the best of my knowledge, Exhibit J is a true and correct of the relevant excerpted pages of the transcript of the conversations. Inaudible or unclear portions are marked "inaudible". I possess the original audio files, which have been produced in this matter, and can provide them to the Court on request.

26. During those calls, I provided relevant information concerning my dispute. Specifically, I [TODO].

27. During those calls, I disputed the account's reported status, charged off balance, and payment history. Specifically, I [TODO].

28. Attached as **Exhibit K** is a true and correct copy of a document dated August 19, 2020, produced by Chase in discovery and bearing Bates Nos. CHASE00103 through CHASE00107. This document was also marked as

Exhibit 20 at the Rule 30(b)(6) deposition of Barbara Burda on October 23, 2023, and contains the text of a complaint that I submitted to the Consumer Financial Protection Bureau ("CFPB") on August 19, 2020.

29. Attached as **Exhibit L** is a true and correct copy of a Notice of Dispute & Intent to Arbitrate which I caused to be served on Chase by certified mail to its registered agent for service of process on August 25, 2020.

30. When I submitted my dispute via Equifax's website in August 2020, I did not have access to billing statement, to Chase's internal records, and relied solely on memory of events nearly three years prior.

31. Attached as **Exhibit M** are true and correct copies of the cover page, signature page/proof of service, and the excerpted pages I cite from Chase's Amended Responses to Plantiff's Interrogatories, Set One.

32. I did not receive the document attached as Ex. M to the Hyatt Declaration and identified as an "October 13, 2020 letter from Chase to Plaintiff" ("EO Letter") prior to its production in the arbitration. The document appears to be a draft of a letter that I did receive on October 14, 2020, which is Exhibit I.

33. Attached as **Exhibit N** are true and correct copies of materials from the deposition of Carla Wills, taken October 26, 2023 in Joshua Johnson v. JPMorgan Chase Bank, N.A., No. 2:22-cv-06718-AB-MAAx (C.D. Cal.): (1) the transcript cover page, (2) the court reporter's certification as required by Fed. R. Civ. P. 30(f)(1), and (3) the excerpted pages I cite. These pages were obtained directly from the certified transcript prepared by Holly A. Sonnenberg, and the copies are unaltered.

34. I am the plaintiff and now proceed *pro se*. While I was represented by counsel, my then-counsel, on my behalf, and counsel for Chase executed a document titled "Joint Stipulation re Employees with Information re 2020 Investigation" in this action. Attached as **Exhibit O** is a true and correct

CORRECTED DECLARATION OF JOSHUA JOHNSON IN SUPPORT OF OPPOSITION TO JPMORGAN
CHASE BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT

copy of that executed stipulation, which bears the case caption and the signatures of counsel for both parties dated August 9, 2023. I obtained this copy from my case file. It is unaltered.

35. Attached as **Exhibit P** are excerpted pages I cite from a transcript of a telephone conversation between me and a Chase representative that identified herself as Carla Wills, that occurred on October 20, 2020. I recognized the other speaker as Carla Wills based on how they identified themselves at the start of the call. The conversation was recorded by me on my phone. The transcript was prepared on or around July 10, 2021 by Rev.com, Inc. I carefully compared the transcript to the recording as well as my memory of what was discussed on the call and made corrections. To the best of my knowledge, Exhibit P is a true and correct of the relevant excerpted pages of the transcript of the conversation. Inaudible or unclear portions are marked "inaudible". I possess the original audio file, which has been produced in this matter, and can provide it to the Court on request.

36. During the call, Carla told me that, because over two years had passed, Chase could not go back and listen to "those calls" and so "there's no way to verify what you're actually saying".

37. Attached as **Exhibit Q** are true and correct copies of materials from my deposition, taken October 27, 2023 in Joshua Johnson v. JPMorgan Chase Bank, N.A., No. 2:22-cv-06718-AB-MAAx (C.D. Cal.): (1) the transcript cover page, (2) the court reporter's certification as required by Fed. R. Civ. P. 30(f)(1), and (3) the excerpted pages I cite. These pages were obtained directly from the certified transcript prepared by Diane Carver Mann, and the copies are unaltered.

CORRECTED DECLARATION OF JOSHUA JOHNSON IN SUPPORT OF OPPOSITION TO JPMORGAN CHASE BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT

38. Attached as **Exhibit R** is a true and correct copy of the cover page, signature page/proof of service, and the excerpted pages I cite from Chase's Amended Responses to Plantiff's Requests for Admission, Set One.

39. Attached as **Exhibit S** is a true and correct copy of the excerpted pages I cite from my Second Amended Rule 30(b)(6) Notice of Deposition, which was served on Chase on October 5, 2023.

40. Attached as **Exhibit T-1** is a true and correct copy of the first three pages of my Demand for Arbitration, which I caused to be served on Chase on August 3, 2022.

41. Attached as **Exhibit T-2** is a true and correct copy of Chase's objection to my August 3, 2022 Demand for Arbitration and the service page, sans attachments, which I received on August 18, 2022.

42. Attached as **Exhibit T-3** is a true and correct copy of a letter which I received from Sheri Eisner, Senior Vice President, General Counsel, JAMS in connection with my August 3, 2022 Demand for Arbitration, on September 16, 2022.

43. On or about September 6, 2017, I told Chase that I wanted to terminate my relationship with them concerning my Chase Ink credit card account and authorized a withdrawal of the entire outstanding balance on the Ink account from my bank account.

44. Prior to September 6, 2017, I received several messages from Chase, via email and in connection with my Ink account, stating that a "credit card payment is due in 10 days". Chase had previously agreed to provide me with such communications.

45. From September 6, 2017 through May 21, 2018, I did not receive any emails from Chase stating that a "credit card payment is due in 10 days".

CORRECTED DECLARATION OF JOSHUA JOHNSON IN SUPPORT OF OPPOSITION TO JPMORGAN CHASE BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT

46. From September 6, 2017 through May 21, 2018, I did not receive any other form of communication from Chase indicating that my Ink account was delinquent, that an amount was owed, that payment was due, or soon due.

47. On May 30, 2018 and August 19, 2020, I informed Chase that I was willing to resolve this dispute by paying $499, the entire amount allegedly owed, in exchange for the deletion of the account or correction of the reporting.

48. On December 22, 2020, December 30, 2020, and March 2, 2021, having paid $499 on August 26, 2020, I informed counsel for Chase that I was willing to resolve this dispute in exchange for the deletion of the account or correction of the reporting.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 10, 2025.

Joshua Johnson

/s/ Joshua Johnson

CORRECTED DECLARATION OF JOSHUA JOHNSON IN SUPPORT OF OPPOSITION TO JPMORGAN CHASE BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT

# EXHIBIT A

2018 Amendment Email



Joshua Johnson <josh@jj88.org>

---

## Important information regarding changes to your Chase account
1 message

---

**Chase** <Chase@e.chase.com>         <mark>Wed, Jun 5, 2019 at 10:18 AM</mark>
Reply-To: "Chase@e.chase.com" <Chase-HP2v40000016b28a5c42a9cbc84f4bbe5be50089@e.chase.com>
To: josh@jj88.org

---

| **Email Security Information:** |
| --- |
| **Email intended for: Joshua Johnson** |
| **Chase Freedom® credit card ending in 5301** |
| If you have concerns about the authenticity of this message, please visit chase.com/CustomerService for options on how to contact us. |

## Important Changes to Your Account Terms

**Notice:** Your Cardmember Agreement and associated Rewards Program Agreement (if any) were assigned to JPMorgan Chase Bank, N.A., as successor by merger to Chase Bank USA, N.A., on **05/18/2019**. Furthermore, beginning **05/18/2019** all references to Chase Bank USA, N.A. in your Guide to Benefits and any additional account agreements and documents shall be read as JPMorgan Chase Bank, N.A.

**Summary of changes to your account terms effective 8/8/2019.**
- The description of the Minimum Payment calculation found under your Cardmember Agreement Rates and Fees Table is changing to **a minimum of $35** and to include unique payment obligations in connection with Flexible Financing Offers.
- We are introducing two new features, My Chase Loan℠ and My Chase Plan℠, under which Flexible Financing Offers may be available to you from time to time, subject to the new rates and fees and Cardmember Agreement terms described below.
- A binding arbitration provision is added and the Military Lending Act Notice is revised accordingly. **YOU CAN REJECT THE BINDING ARBITRATION AGREEMENT. YOU MUST MAIL YOUR REJECTION TO US BY 8/7/2019. PLEASE SEE THE END OF THIS NOTICE FOR INSTRUCTIONS**

**Details on the changes to your account, effective 8/8/2019.**

1. Your Cardmember Agreement Rates and Fees Table is amended as follows:

| Revised Terms as of 8/8/2019 |
| --- |
| **INTEREST RATES AND INTEREST CHARGES** |

| | |
| --- | --- |
| ***My Chase Loan* Annual Percentage Rate (APR)** | **17.24%**. This APR will vary with the market based on the Prime Rate.ª<br><br>Promotional offers with fixed APRs and varying durations may be available from time to time on some accounts. |

8/7/25, 6:34 PM                    jj88.document 74    Filed 08/10/25 to your tage 13 of
Case 2:22-cv-06718-AB-MAA   Document 74   Filed 08/10/25   Page 13 of 212   Page ID
#:1145

| Paying interest | Your due date will be a minimum of 21 days after the close of each billing cycle. We will not charge you interest on new purchases if you pay your entire balance or Interest Saving Balance by the due date each month. We will begin charging interest on balance transfers and cash advances on the transaction date. |
| --- | --- |

| FEES | |
| --- | --- |
| *My Chase Plan* **Fee (fixed finance charge)** | **1.72%** of the amount of each purchase transaction selected to create a *My Chase Plan*. The *My Chase Plan* Fee will be determined at the time each *My Chase Plan* is created and will remain the same until the *My Chase Plan* balance is paid in full.c |

**ADDITIONAL INFORMATION ABOUT THESE CHANGES**

a ***My Chase Loan* APR:** We add **11.74%** to the Prime Rate to determine the *My Chase Loan* APR. Variable APRs are based on the highest U.S. prime rate published in the Money Rates section of *The Wall Street Journal* two business days (not weekends or federal holidays) before your statement closing date. The U.S. prime rate is currently **5.50%** as of **5/8/2019**. The daily periodic rate is **0.04723%**.

c ***My Chase Plan* Fee.** The *My Chase Plan* Fee is calculated at the time each plan is created and is based on the amount of each purchase transaction selected to create the plan, the number of billing periods you choose to pay the balance in full, and other factors. The monthly and aggregate dollar amount of your *My Chase Plan* Fee will be disclosed during the activation of each *My Chase Plan*.

2. The description of Minimum Payment found under your Cardmember Agreement Rates and Fees Table is changed to read as follows:

   **Minimum Payment:** We will calculate the minimum payment as:

   1) Any past-due amounts; **PLUS**
   2) Any special payment obligations in connection with Flexible Financing Offers which require repayment of the balance over a pre-selected number of billing periods; **PLUS**
   3) The larger of:
      a) $35 (or total amount you owe if less than $35); or
      b) The sum of:
         i. 1% of the new balance (excluding any Flexible Financing Offer balances which require special payment obligations to ensure repayment of the balance over a pre-selected number of billing periods), **PLUS**
         ii. any periodic interest charges and late fees we have billed you on the statement for which your minimum payment is calculated.

3. **IMPORTANT DEFINITIONS**
   The *Important Definitions* section of your Cardmember Agreement is amended to include two new terms, *Interest Saving Balance* and *Flexible Financing Offers*, as follows:

| TERM | WHAT IT MEANS |
| --- | --- |

| | |
|---|---|
| **Interest Saving Balance** | When you take advantage of Flexible Financing Offers, we will not charge you interest on new purchases if you pay your entire Interest Saving Balance by the due date each month.

If your Interest Saving Balance for any billing cycle is less than your minimum payment due, your Interest Saving Balance amount will reflect your minimum payment due to avoid a late fee. |
| **Flexible Financing Offers** | When you take advantage of Flexible Financing Offers, like those available with *My Chase Loan* and *My Chase Plan*, you can pay those balances over time based on their offer terms and still avoid additional interest charges on new purchases. |

## 4. USING YOUR CARD

We are adding *My Chase Loan* and *My Chase Plan* to your account. These are two new features under which Flexible Financing Offers may be available to you from time to time. Therefore, the *Using Your Card* section of your Cardmember Agreement is amended to include two new transaction types, *My Chase Loan* and *My Chase Plan* as follows:

| TRANSACTIONS | WHAT IT MEANS TO YOU | OUR RESPONSIBILITY |
|---|---|---|
| **My 🟦 Loan™** | If eligible, you may use the *My Chase Loan* feature to obtain cash as an electronic deposit into an eligible bank account held by a financial institution located in the United States by accepting a *My Chase Loan* offer. Each offer will include a *My Chase Loan* APR and the number of billing periods it will take to pay the *My Chase Loan* balance in full by making regular payments each monthly billing period.

Your ability to create a *My Chase Loan* balance is based on a variety of factors, such as your creditworthiness, your credit limit, and your past account behavior. You will not be able to create a *My Chase Loan* balance if you enroll in a debt management program or if your account is closed or in default.

*My Chase Loan* transactions are not Cash Advances or Balance Transfers. *My Chase Loan* provides Flexible Financing Offers. Therefore, when you have a *My Chase Loan* balance on your account, we will not charge you interest on new purchases if you pay your entire Interest Saving Balance by the due date each month. | At our discretion, we may make *My Chase Loan* available to you; we may decline a *My Chase Loan* transaction for any reason. |
| **My 🟦 Plan™** | If eligible, you may use the *My Chase Plan* feature through Chase.com or the Chase Mobile App to create, from recent eligible | At our discretion, we may make *My Chase Plan* available to you; |

purchase transactions, a *My Chase Plan* balance with set repayment terms, subject to the *My Chase Plan* Fee. From the available offers, you select how many billing periods it will take to pay the *My Chase Plan* balance in full by making regular payments each monthly billing period. For each billing period during which there is a balance in the *My Chase Plan*, you will be charged the *My Chase Plan* Fee, rather than interest under the Purchase APR.

An eligible purchase transaction for *My Chase Plan* is a purchase of at least a specified dollar amount but may not include certain purchase transactions, such as cash-like transactions and any fee owed to us, including Annual Membership Fees. Cash advance, balance transfer and *My Chase Loan* transactions are not eligible for *My Chase Plan*.

Your ability to create a *My Chase Plan* balance is based on a variety of factors, such as your creditworthiness, your credit limit, and your account behavior. You will not be able to create a *My Chase Plan* balance if you enroll in a debt management program or if your account is closed or in default.

When you have a *My Chase Plan* balance on your account, we will not charge you interest on new purchases if you pay your entire Interest Saving Balance by the due date each month.

we may decline a *My Chase Plan* transaction for any reason.

5. **PAYING US BACK**

- The second bullet under "What it Means to You" for the *Interest-Free Period on Purchases* within the *Paying Us Back* section of your Cardmember Agreement is amended to include a reference to Interest Saving Balance, as follows:

  - Your account is in an interest-free period when you pay your New Balance or Interest Saving Balance, as shown on your statement, every month by the due date and time. During this period, you will not pay interest on new purchases.

- The "What it Means to You" column for *Payment Allocation* under the *Paying Us Back* section of your Cardmember Agreement is amended in its entirety to read as follows:

  - When you make a payment, generally, we first apply your minimum payment to the monthly obligation for any Flexible Financing Offer balances with special payment obligations which require repayment of the balance over a pre-selected number of billing periods, and then to the balance on your monthly statement with the lowest APR.

  - Any payment above your minimum payment would generally then be applied to the balance on your monthly statement with the highest APR first.

- If you do not pay your New Balance or Interest Saving Balance, as shown on your statement, in full each month, you may not be able to avoid interest charges on new purchases.

### 6. ABOUT OUR RELATIONSHIP

- The *About Our Relationship* section of your Cardmember Agreement is amended to include a new section titled Binding Arbitration as follows:

| IMPORTANT INFORMATION | WHAT IT MEANS |
|---|---|
| **Binding Arbitration** | Unless you timely reject the agreement to arbitrate, disputes with us may be resolved by binding arbitration. With arbitration, you cannot go to court, have a jury trial or initiate or participate in a class action for your dispute(s) with us. In arbitration, disputes are resolved by an arbitrator, not a judge or jury, and procedures are simpler and more limited than rules applicable in court.<br><br>Please see the *Arbitration Agreement* section for more details, including instructions for how to reject the agreement to arbitrate. |

- The *Military Lending Act* Notice within the *About Our Relationship* section of your Cardmember Agreement is amended by replacing the second to last sentence with the following:

   If you are covered by the Military Lending Act, (i) then you are not bound by the Arbitration Agreement below, and (ii) notwithstanding anything to the contrary in this agreement, to the extent required by the Military Lending Act, nothing in this agreement will be deemed a waiver of the right to legal recourse under any otherwise applicable provision of state or federal law.

### 7. INTEREST CHARGES

With the introduction of *My Chase Loan*, the description of when we add transactions and fees to your daily balance within the *Interest Charges* section of your Cardmember Agreement is amended as follows:

"We add transactions and fees to your daily balance no earlier than:
- For new purchases, balance transfers, cash advances or *My Chase Loans* - the date of the transaction.
- For new cash advance checks or balance transfer checks - the date the payee deposits the check.
- Fees - either on the date of a related transaction, the date they are posted to your account, or the last day of the billing cycle, whichever we may choose."

### 8. ARBITRATION AGREEMENT

A new section titled *Arbitration Agreement* is hereby added to the end of the agreement as follows (following the section titled *Your Billing Rights*):

**ARBITRATION AGREEMENT**
**PLEASE REVIEW-IMPORTANT-AFFECTS YOUR LEGAL RIGHTS**

This arbitration agreement provides that all disputes between you and Chase must be resolved by BINDING ARBITRATION whenever you or we choose to submit or refer a dispute to arbitration. By accepting this arbitration agreement you GIVE UP YOUR RIGHT TO GO TO COURT

(except for matters that may be taken to a small claims court). Arbitration will proceed on an INDIVIDUAL BASIS, so class actions and similar proceedings will NOT be available to you.

YOU HAVE THE RIGHT TO REJECT THIS AGREEMENT TO ARBITRATION, BUT IF YOU WISH TO REJECT IT, YOU MUST DO SO PROMPTLY. If you do not reject this agreement to arbitration by **8/7/2019** in the manner set forth below, then:

* In arbitration, your rights will be determined by a NEUTRAL ARBITRATOR and NOT A JUDGE OR JURY.

* The procedures in arbitration are simpler and more limited than rules applicable in court.

* Arbitrator decisions are subject to VERY LIMITED REVIEW BY A COURT.

If you do not reject this agreement by **8/7/2019**, you or we may elect to resolve any Claim by arbitration.

For purposes of this agreement to arbitrate, "you" includes any co-applicant or authorized user on your account, or anyone else connected with you or claiming through you; and "we" or "us" includes JPMorgan Chase Bank, N.A. and Chase Bank USA, N.A., all of their parents, subsidiaries, affiliates, successors, predecessors, employees, and related persons or entities and all third parties who are regarded as agents or representatives of us in connection with the account, or the subject matter of the claim or dispute at issue.

All claims or disputes between you and us about or relating in any way to your account, any prior account, your cardmember agreement with us (including any future amendments), any prior cardmember agreement, or our relationship are referred to as "Claims" for purposes of this agreement to arbitrate. Claims include, for example, claims or disputes arising from or relating in any way to transactions involving your account; any interest, charges, or fees assessed on your account; any service(s) or programs related to your account; any communications related to your account; and any collection or credit reporting of your account. Claims also include claims or disputes arising from or relating in any way to advertising and solicitations, or the application for, approval, or establishment of your account. Claims are subject to arbitration regardless of whether they are based on contract, tort, statute, regulation, common law or equity, or whether they seek legal or equitable remedies. All Claims are subject to arbitration whether they arose in the past, may currently exist, or may arise in the future. Arbitration will apply even if your account is closed, sold, or assigned; you pay us in full any outstanding debt you owe; or you file for bankruptcy. In the event that your account is sold and/or assigned, we retain our right to elect arbitration of Claims by you and you retain your right to elect arbitration of Claims by us.

* If you are covered by the Military Lending Act, then you are not bound by this arbitration agreement, and to the extent required by the Military Lending Act, nothing in this agreement will be deemed a waiver of the right to legal recourse under any otherwise applicable provision of state or federal law.

The only other exception to the arbitration requirement is that you have the right to file and pursue a Claim in a small claims court instead of arbitration if the Claim is in that court's jurisdiction and proceeds on an individual basis.

If you initiate a Claim in arbitration, no changes to the terms of this agreement to arbitrate that are made after we receive your Claim will apply to that Claim.

This agreement to arbitrate is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*.

**Can I (the customer) reject this agreement to arbitrate?**

Yes. You have the right to reject this agreement to arbitrate if you notify us no later than **8/7/2019**. You must do so in writing by stating that you reject this agreement to arbitrate and include your name, account number, address and personal signature. Your notice must be mailed to us at P.O. Box 15298, Wilmington, DE 19850-5298. Rejection notices sent to any other address, or sent by electronic mail or communicated orally, will not be accepted or effective.

**What about class actions or representative actions?**

Individuals sometimes seek to bring lawsuits on behalf of other, similarly situated individuals. This is often called a class action. Class actions, other similar representative procedures, and consolidation of Claims (except for claimants on the same account) are *not* available under this agreement to arbitrate. Claims in arbitration will proceed only on an individual basis. Additionally, you may not join your claims with other persons on other accounts in the arbitration; each person must arbitrate his or her own claims separately.

UNLESS YOU REJECT THIS AGREEMENT TO ARBITRATE, YOU AND WE ARE WAIVING THE RIGHT TO ASSERT OR PARTICIPATE IN A CLASS ACTION, OR ANY REPRESENTATIVE OR CONSOLIDATED PROCEEDING IN COURT OR IN ARBITRATION.

The arbitrator shall have no authority to entertain any Claim as a class action or on any other similar representative basis, nor shall the arbitrator have any authority to consolidate Claims brought by separate claimants (except for claimants on the same account). To be clear, this means that the arbitrator also shall have no authority to make any award for the benefit of, or against, any person other than the individual who is the named party. If these terms prohibiting class, representative, or consolidation procedures are held to be legally unenforceable for any reason with respect to a Claim, then the Claim must be handled through litigation in court instead of by arbitration.

**How does arbitration work?**

Arbitration is different from a lawsuit in state or federal court. Arbitration is conducted by private organizations that specialize in alternative dispute resolution, and is conducted before a neutral arbitrator instead of a judge or jury. Arbitration procedures are generally simpler and more informal than court procedures. For example, discovery is more limited in arbitration than in court. Also, arbitrator decisions are subject to only limited review by courts. As discussed above, certain rights that you may have in court are not available in arbitration. At the same time, in arbitration you are entitled to recover attorneys' fees from us to the same extent as you would be in court.

Under this agreement to arbitrate, the party filing a Claim must select either Judicial Arbitration and Mediation Services ("JAMS") or the American Arbitration Association ("AAA") as the arbitration administrator. You can learn more about these organizations online, at the addresses provided

below. Each of these organizations will apply its code of procedures in effect at the time the arbitration claim is filed. If there is a conflict between that code of procedures and this arbitration provision and/or any sections of this agreement, this arbitration provision and/or this agreement will control. In the event that JAMS or the AAA is unable or unwilling to handle the Claim for any reason, then the matter shall be arbitrated instead by a neutral arbitrator selected by agreement of the parties (or, if the parties cannot agree, selected by a court in accordance with the Federal Arbitration Act).

A single arbitrator designated by the arbitration administrator will decide the Claim under applicable law. The arbitrator is bound by the terms of this agreement to arbitrate. All issues are for the arbitrator to decide, except that issues relating to the scope, enforceability, interpretation, formation, and validity of this arbitration agreement are for a court to decide. The arbitrator will honor all claims of privilege recognized by law. Subject to the prohibition on class, representative, and consolidation procedures set forth above, the arbitrator will have the power to award to a party any damages or other relief provided for under applicable law. That is, a party will be entitled to recover in arbitration any damages or other relief that it could recover if it prevailed in a court proceeding as an individual. No arbitration award or decision will have any preclusive effect on issues or claims in any subsequent proceedings beyond the Claims at issue. The arbitrator's authority is limited to claims between you and us, and the arbitrator can award damages or relief only to you, but not to or on behalf of anyone else.

Although under some laws we may have a right to an award of attorneys' fees and expenses if we prevail, we agree that we will not seek such an award.

If your Claim is for $10,000 or less, you may choose whether the arbitration will be conducted solely on the basis of documents, through a telephonic hearing, or in an in-person hearing. Any in-person hearing will take place in the federal judicial district that includes your address at the time the Claim is filed, unless the parties agree to a different place.

### Is the arbitrator's decision final? Is there an appeal process?

The arbitrator's decision will be final and binding on the parties. An arbitrator's award shall consist of a written statement setting forth the disposition of each Claim. At the request of any party, the arbitrator shall also set forth a written explanation of the essential findings and conclusions on which the award is based.

A party can file a written appeal to the arbitration administrator within 30 days after an award is issued. The appeal will proceed before a panel of three neutral arbitrators designated by the same arbitration administrator. That panel will consider all legal and factual issues anew, and make all decisions and awards by majority vote based on the documents and arbitration record without a hearing. Any review by a court shall be governed by the Federal Arbitration Act. Any final arbitration award will be binding on the named parties and enforceable by any court having jurisdiction.

### Who will pay for costs?

We will pay any costs that are required to be paid by us under the arbitration administrator's rules of procedure. Even if not otherwise required, we will reimburse you up to $500 for any initial arbitration filing fees you have paid. We will also pay any fees of the arbitrator and arbitration administrator for the first two days of any hearing. If you win the

arbitration, we will reimburse you for any fees you paid to the arbitration organization and/or arbitrator. All other fees will be allocated according to the arbitration administrator's rules and applicable law. If you consider that you are unable to afford any fees that would be yours to pay to the arbitration administrator, you may request that we pay or reimburse them, and we will consider your request in good faith.

You may represent yourself in arbitration, or you may be represented by a lawyer. Except as described above, you will be responsible for your own attorneys' fees and costs.

### How do I (the customer) file an arbitration claim?

Rules and forms may be obtained from, and Claims may be filed with, JAMS at (800) 352-5267 or jamsadr.com; or the AAA at (877) 495-4185 or www.adr.org. Both of these administrators have particular rules for arbitrations initiated by a consumer.

**ABOUT THIS MESSAGE:**
This service message gives you updates and information about your Chase relationship.

This email was sent from an unmonitored mailbox. Go to chase.com/CustomerService for options on how to contact us.

Your privacy is important to us. See our online Security Center to learn how to protect your information.

Chase Privacy Operations P.O. Box 659752, San Antonio, TX 78265-9752.

©2019 JPMorgan Chase & Co.

EM10496

# EXHIBIT B

May 30 2018 Mannie Call

# May 30, 2018: Manny

Josh (00:02):

Hello.

Manny (00:04):

Uh, hello. [inaudible 00:00:05] to Joshua Johnson?

Josh (00:06):

May I ask who's calling?

Manny (00:08):

Uh, this call is being monitored and recorded. My name is Manny. I'm an account manager here at Chase client services my ID is the letter Q-zero-two-six-eight-six-six for a Mr. Joshua, uh, Joshua Johnson.

Josh (00:14):

Hey, this is him.

Manny (00:14):

Oh it's him, oh thank you, thank you Mr. Johnson for taking my call here today. This is actually just, uh returning a phone call. I know that you, we spoke with you last week, uh, and you spoke with the supervisor in reference to, uh, your account, your Chase, I think it's a business account ending in 0256. Uh, you had your company speak to the manager in reference to the account status and currently where it's at at this time, uh, and the reason for our phone call today to see what we can do here to help you out in reference to [inaudible 00:00:49].

Josh (00:50):

Okay, cool. Um, give me just a minute to grab, uh, a pen and piece of paper.

Manny (00:53):

Okay.

Josh (01:41):

Okay, all right. Um, do you [crosstalk 00:01:46] need me, need me to fill you in on the context or-

Manny (01:49):

I'm going through the information here, um, of course was brought to my attention then, you're inquiring regarding the status of the account right now it is currently charged off. You did mention

1

Josh (07:01):

I completely agree, and, and one more, uh, piece of information related to that. So, I, I actually called, uh, about the account not showing up online because I thought that was strange. I called like in mid 2017 about this, um, and the rep at the time. [crosstalk 00:07:17] Yeah.

Manny (07:17):

But was it in September? I, I mean, just, I mean no, I know it was last year, I'm not sure if you might remember. But, I think that there was a contact that you have made in September, September 6th to be exact. You had made a payment of $111.49 over the phone with one of our, our front line specialists here. So pretty much the account was past due at the time you brought it up to date and current by paying the amount due, and I'm not sure if it was that conversation either bought it up to their attention, but um, I fully don't see too much other information other than the payment that you had set up for the amount due at that time. Um and there was just a remaining balance that remained outstanding after that $111.49 payment and then it just billed up. You know, that's pretty much what we can see here.

Josh (08:02):

Yeah so I'm not, I'm not sure exactly on the time line, whether it was September early, it was definitely 2017. Um, I can just tell you that the reason I called in the first place was because, um, somehow I was notified that there was like, like my account was past due. And you know, I go well why is it past due? You know like I have a $0 balance on my online account and so I proactively called Chase um, and found out there was a balance and you know paid whatever off that was due. After that I wasn't aware there was any more um, you know to pay.

Manny (08:43):

Right, right yeah and it looks to me from there, um, so as far as what we can do; I understand you definitely want to resolve it, get yourself balanced pretty much. And, and try to pay as much as possible on the account. Um from our side the only thing we can do is pretty much is request to have it reviewed. Um, what they look at is to determine any type of reversals or anything like that any type of update; because we would have to determine exactly what kind of notifications we sent out, if anything came back to us pretty much. Um, that you were not notified in balance, but I think that we understand the whole online situation. Um, now we can still resolve it, that's that's the good thing here.

Manny (09:26):

The thing is that it's because the last time we received a payment was back in September of last year. It's been so long, it's already been, it's already, already past the charge off date and now it's even it's being worked through the, the third party there uh, that it's been able to reach you which, uh, I believe is United Collection Bureau. Uh, they are currently the ones that are handling this now. They can offer to maybe do a settlement, uh, where they can try to uh, waive off a pretty big portion of

the balance and then you, you cover the rest pretty much and that will probably, you know take care
of the account. Is that something that you're willing to do?

Josh (10:01):

So, so. The balance is not the concern. Like, I can pay the balance off now. I could have paid it off
previously. The issue is that I have marks on my credit report, um, and so, like I want those resolved
before I commit to paying off like I, I that that's not the issue. The issue is that I'm afraid I'm gonna
lose leverage with you guys to to get the marks taken off my credit report. Um, I mean it's already
been you know charged off to a third party so...does that make sense?

Manny (10:38):

Right, so. [inaudible 00:10:43] [crosstalk 00:10:43]

Josh (10:42):

If you can take the marks off the credit report, I will pay the balance right now.

Manny (10:52):

Right, so I mean here's what we can do in reference to the situation. Of course you know, for our
side -- the collection side of the business, pretty much we're going to look at everything from the
beginning of where the situation started [inaudible 00:11:07]. As far as your credit is concerned, we
actually do have a specialist department that would be able to assist with that.

Manny (11:12):

Now my views are clear, gonna to go ahead and review the account and determine to see if there is
any type of bank error. And what I mean by that of course is like I did mention is any type of
returned mail or any type of letters that we sent to you, that came back returned to us or if we didn't
even attempt to reach you, or you know, situations like that. Um, we're gonna look into the
information but it, it's pretty much out of my circle of what I, I'm capable of doing even in our side,
in our department here. So what I can do, is I can actually connect you with a specialist from our
credit view department to go ahead and see if they can investigate, uh, see if they can make any
changes regarding the account. Is that something that you might be willing to do?

Josh (11:54):

Uh, sure. As long as it's not like re-hashing, you know the same stuff with people that I've talked to
previously. [inaudible 00:12:04] So had I talked to previous people, I'm not sure of which
departments right, but um they've used a term bank error, and so well there's no bank error because
uh, you're mailing address is correct, your email address is correct. Um, and I understand like bank
error means something like technical on your end, you know bank error is like this set of things that
means we can fix the credit report. Um, and so, so in my case, yes the email was correct and yes um,
the mailing address was correct but, as a, from the perspective of a consumer it's very bad to like

sign up for online statements and then not receive online statements from Chase. Like whether, like if your system is configured that that is not a bank error, um, like that probably needs to be fixed.

Manny (12:54):

Right and which is, which is the weird part then because like you did mention you called middle of last year to inquire about you know that that issue. Um, I don't see, I see the payments that you made in September. I'm trying to see if there's any other contact over the that was attempted during that time. Um, I mean I do see something in June prior to that payment. Um, that's probably the only thing that I can see. So if the issue was brought to our attention during that time, we're not sure exactly what, what, what done to resolve that and what happened.

Manny (13:28):

So we didn't receive any type of call back or anything like that. Now in situations like that, if that does happen, we do send out notifications via mail to let you know: hey, if you're kind of past due or just for example the most recent one that we sent was in April, uh, April 2nd to be exact to let you know hey if the payment of this amount is not made then your account will charge off at that time. You were saying that you didn't receive any of these letters, that, that we had sent out to you regarding your account status?

Josh (13:55):

Uh, that's, that's exactly right. I never, the, the only physical letter I've received in reference to the account um, is like a third party collection letter. Now you happen to know, so I did move maybe six months ago. Do you happen to know the mailing address that, uh, the letter in April was sent to?

Manny (14:15):

Um, so let me take a look and see here. Um, from what I can see, we did have the 308 S Blount St Apt 2113 is what we had when, when that letter was sent out the one for August. Uh, I mean not August, the one for April recently, um, the, the letters that were sent last year September you know right when it starting, you right when we started to miss payments, for the same address as well as 308 S Blount St Apt 2113. So that's the one we did have, so that's different to the one we have now but those, that's what the address was at that time.

Josh (14:57):

Okay. Um, yeah that might explain some of why I didn't receive the letters because I, I did move um addresses late 2017. Um, that wouldn't explain April but that would explain September for sure.

Manny (15:14):
Okay.

Josh (15:15):

# EXHIBIT C

May 21 2018 Melanie Call

# May 21, 2018: Melanie

Robot (00:08):

Welcome to Chase Card Services. Please enter the last four digits of your credit card account number. If you are calling to report your card lost, stolen or damaged, or to check the status of an application, press the pound key. [foreign language 00:00:22] Please enter the last four digits of your credit card account number. To better assist you, please enter the last four digits of the social security number on the account you are calling about. One moment while we connect you with a customer service specialist. This call will be monitored and recorded and your voice may be used for verification.

Robot (01:08):

This call will be monitored and recorded.

Melanie (01:11):

Thanks for calling Chase. My name is Melanie. May I have your name, please?

Josh (01:15):

Joshua Johnson.

Melanie (01:19):

Thank you, Mr. Johnson and how can I help you today?

Josh (01:21):

Um, yeah, so I opened a business card with Chase, um, a few years ago and it doesn't show up in my online account. I don't get, um statements in the mail about it or anything and I tried to cancel it or close it months if not a year ago. Um, I think it's somehow still open though and, um, I'm getting, uh, I got a, blugh, I got a collections notice, um, from like a third party collections agency, uh, recently. I'm also noticing a derogatory mark on my credit report. Um, so I just wanted recall to, uh, inquire about that.

Melanie (02:02):

Okay. Sorry to hear about that. Just a moment. Okay. I do see, but those tend to be in general by our, um, recoveries team. So let me go ahead and give you the number that you can call, um, so that they can address you concerns, okay?

Josh (02:16):

Okay. Thanks.

Melanie (02:18):

It's 1 (866) 335-4158.

Josh (02:28):

Okay. Thank you, so much.

Melanie (02:30):

You're welcome. Is there any other questions or concerns you might have had?

Josh (02:34):

Uh, no that's it.

Melanie (02:35):

All right then. It's my pleasure to assist you. Enjoy the rest of your day.

Josh (02:38):

All right. Appreciate you too. Bye now.

Melanie (02:40):

You're welcome.

Josh (02:41):

Okay.

# EXHIBIT D

Responses to RFP

**DYKEMA GOSSETT LLP**
ASHLEY R. FICKEL, State Bar No. 237111
  *AFickel@dykema.com*
ROBERT A. HYATT, State Bar No. 166178
  *RHyatt@dykema.com*
444 South Flower Street, Suite 2200
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

Attorneys for Defendant,
JPMORGAN CHASE BANK, N.A.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JOSHUA JOHNSON, | Case No. 2:22-cv-06718-AB-MAAx |
| Plaintiff, | The Hon. André Birotte Jr. Courtroom 7B |
| v. | Magistrate Maria A. Audero Courtroom: 690 |
| JPMORGAN CHASE BANK, N.A., | |
| Defendant. | **DEFENDANT JPMORGAN CHASE BANK, N.A.'S AMENDED RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE** |
| | Complaint Filed: September 19, 2022 |

PROPOUNDING PARTY:      Plaintiff, JOSHUA JOHNSON

RESPONDING PARTY:      Defendant, JPMORGAN CHASE BANK, N.A.

SET NO.:      ONE

## PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 34(b), Defendant JPMORGAN CHASE BANK, N.A. ("CHASE") submits the following amended responses and objections to Plaintiff JOSHUA JOHNSON'S ("Plaintiff") Request for Production of Documents, Set One:

The following responses have been prepared prior to the completion of

Chase's investigation, discovery, and preparation for trial in this action. The responses are based solely on information, facts, and documents available and known to Chase as of the date of these responses. Investigation and discovery are continuing, and Chase reserves the right to amend, modify, or supplement its responses at any time prior to the trial of this action. Chase also reserves its right to rely upon or introduce into evidence any additional information, facts, or documents not contained in these responses.

These responses are made in a good faith effort to supply as much information and documents as is presently known, but shall in no way lead to the prejudice of Chase in relation to further discovery, research, or analysis. Chase's responses to the Requests for Production are for the purpose of discovery only, and are not an admission that any response, fact, or document is relevant or admissible into evidence. Chase reserves the right to object to the relevance and admissibility of any response, fact, or document and the truth or accuracy of any purported facts or characterizations contained in the Requests for Production themselves.

## OBJECTIONS TO DEFINITIONS

1.    The Definition of "Document" exceeds the scope of Fed. R. Civ. P. 34. Chase will apply the definition consistently with the scope of the rule and applicable law governing possession, custody, and control of materials sought in discovery.

2.    To the extent that "Document" is construed to include data from sources that are not "reasonably accessible" as defined by Fed. R. Civ. P. 26(b)(2)(B), Chase objects to such sources as being outside the scope of civil discovery.

3.    Chase objects to the definition of the term "Concerning" as vague, overly broad, and unduly burdensome, particularly where it is based on the terms "reflecting," "constituting," "evidencing," or "supporting" and therefore describes an indefinite class of documents. Chase will apply "Concerning" to mean materials that explicitly discuss or are reasonably identifiable by Chase with the subject matter

2

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

1  of a request.

2  **GENERAL OBJECTIONS**

3  The following general objections apply to, and are asserted with respect to,

4  each of the Requests for Production:

5  1.    The Requests for Production seek documents outside the scope of

6  discovery permitted by Fed. R. Civ. P. 26(b)(1) and 34(a).

7  2.    The Requests for Production, including any purported instructions and

8  definitions, impose obligations inconsistent with Fed. R. Civ. P. 26(b)(1).

9  3.    The Requests for Production seek discovery of information protected

10  against disclosure by the attorney-client privilege or attorney work-product doctrine.

11  Fed. R. Civ. P. 26(b)(3)(A) and 26(b)(5).

12  4.    The Requests for Production seek information unreasonably duplicative

13  of information already in possession of Plaintiff.

14  5.    The Requests for Production seek information obtainable from another

15  source that is more convenient, less burdensome, or less expensive.

16  6.    The requests seek information that is confidential and/or proprietary

17  and the parties need to meet and confer with respect to an appropriate protective

18  order.

19  These general objections applies to each and every one of Plaintiff's Requests

20  for Production of Documents, Set One.

21  **RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS**

22  **REQUEST FOR PRODUCTION NO. 1:**

23  ALL DOCUMENTS RELATED to CHASE's determination that Plaintiff's

24  Chase Ink credit card account was delinquent.

25  **RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

26  Chase objects to this request on the grounds that it is overbroad and seeks

27  discovery of documents that are irrelevant and immaterial to this case and not

28  reasonably calculated to lead to the discovery of admissible evidence, because it

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

3

1  claim for investigations from 2017 through 2020 are barred by the statute of

2  limitations.  Chase objects to this request on the grounds that Plaintiff previously

3  raised this issue in the Arbitration before the American Arbitration Association

4  titled, In the matter of the Arbitration between Joshua Johnson vs. JPMorgan Chase

5  Bank N.A., case number 01-20-0015-1734 (the "Arbitration").  Plaintiff should be

6  estopped from pursuing discovery into these issues in this action as a final award

7  was entered following extensive document discovery, four days of evidentiary

8  hearings, numerous conference calls with the Arbitrator, volumes of evidence, and

9  at least ten legal briefs.  Chase further objects to producing documents already

10  within Plaintiff's possession, and/or equally available to Plaintiff.  Chase refers

11  Plaintiff to the documents produced in the Arbitration.

12        Without waiving the foregoing objections, Chase has produced documents

13  responsive to this request and has not withheld any documents based on the

14  foregoing objections.

15  **REQUEST FOR PRODUCTION NO. 7:**

16        ALL COMMUNICATIONS between CHASE AND CREDIT

17  REPORTING AGENCIES RELATED to Plaintiff's Chase Ink credit card account.

18  **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

19        Chase objects to this request on the grounds that it is overbroad and seeks

20  discovery of documents that are irrelevant and immaterial to this case and not

21  reasonably calculated to lead to the discovery of admissible evidence, because it

22  does not limit the request to communications related to the DISPUTE.

23        Without waiving the foregoing objections, Chase will produce a copy of the

24  ACDV response it submitted on September 8, 2020 in response to the DISPUTE

25  subject to entry of a protective order.

26  **AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

27        Chase objects to this request on the grounds that it is overbroad and seeks

28  discovery of documents that are irrelevant and immaterial to this case and not

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

9

reasonably calculated to lead to the discovery of admissible evidence, because it does not limit the request to communications related to the DISPUTE.

Without waiving the foregoing objections, Chase has produced all communications between Chase and Equifax related to the DISPUTE.

**REQUEST FOR PRODUCTION NO. 8:**

ALL credit reporting data furnished to CREDIT CONSUMER REPORTING AGENCIES from 2017 to the present RELATED to Plaintiff.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Chase objects to this request on the grounds that it is overbroad, unduly burdensome, and seeks discovery of documents that are irrelevant and immaterial to this case and not reasonably calculated to lead to the discovery of admissible evidence, because it does not limit the request to Plaintiff's Ink Business Card or information related to the DISPUTE.

**REQUEST FOR PRODUCTION NO. 9:**

DOCUMENTS sufficient to explain codes used to report information to CREDIT CONSUMER REPORTING AGENCIES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Chase objects to this request on the grounds that it is vague and ambiguous, it is overly broad and unduly burdensome, it seeks discovery of documents that are irrelevant and immaterial to this case and not reasonably calculated to lead to the discovery of admissible evidence; it seeks documents protected by the attorney-client privilege and work product doctrine; and it seeks confidential or proprietary documents.

**AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Chase objects to this request on the grounds that it is vague and ambiguous, it is overly broad and unduly burdensome, it seeks discovery of documents that are irrelevant and immaterial to this case and not reasonably calculated to lead to the discovery of admissible evidence; it seeks documents protected by the attorney-

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

1  client privilege and work product doctrine; and it seeks confidential or proprietary

2  documents.

3      Without waiving the foregoing objections, Chase directs Plaintiff to the

4  document entitled "Card Dispute Resolution Processing" (Bates Number

5  CHASE00161-CHASE01836).

6  **REQUEST FOR PRODUCTION NO. 10:**

7      All technical manuals, industry guidelines, regulatory guidance, AND

8  agreements between CHASE AND ANY CREDIT CONSUMER REPORTING

9  AGENCIES RELATED to the interpretation of ANY COMMUNICATIONS

10  RELATED to Plaintiff's Chase Ink credit card account.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

12      Chase objects to this request on the grounds that it is vague and ambiguous, it

13  is overly broad and unduly burdensome, it seeks discovery of documents that are

14  irrelevant and immaterial to this case and not reasonably calculated to lead to the

15  discovery of admissible evidence; it seeks documents protected by the attorney-

16  client privilege and work product doctrine; and it seeks confidential or proprietary

17  documents.

18  **AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

19      Chase objects to this request on the grounds that it is vague and ambiguous, it

20  is overly broad and unduly burdensome, it seeks discovery of documents that are

21  irrelevant and immaterial to this case and not reasonably calculated to lead to the

22  discovery of admissible evidence; it seeks documents protected by the attorney-

23  client privilege and work product doctrine; and it seeks confidential or proprietary

24  documents.

25      Without waiving the foregoing objections, Chase directs Plaintiff to the

26  document entitled "Card Dispute Resolution Processing" (Bates Number

27  CHASE00161-CHASE01836).

28

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DEFENDANT JPMORGAN CHASE BANK, N.A.'S AMENDED RESPONSES TO PLAINTIFFS' REQUESTS
FOR PRODUCTION OF DOCUMENTS, SET ONE

1  foreging objections and limitation.

2

3  DATED:  July 26, 2023              DYKEMA GOSSETT LLP

4

5                                    By:

6                                        ASHLEY R. FICKEL
                                         ROBERT A. HYATT
7                                        Attorneys for Defendant,
8                                        JPMorgan Chase Bank, N.A.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT JPMORGAN CHASE BANK, N.A.'S AMENDED RESPONSES TO PLAINTIFFS' REQUESTS
FOR PRODUCTION OF DOCUMENTS, SET ONE

**DYKEMA GOSSETT LLP**
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

# PROOF OF SERVICE

*Joshua Johnson vs. JPMorgan Chase Bank, N.A.*
*USDC, Central District, Case No. 2:22-cv-06718-RSWL-MAA*

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 444 South Flower Street, Suite 2200, Los Angeles, California 90071.

On July 26, 2023, I served the foregoing document(s) described as:

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S AMENDED RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS SET ONE**

on the interested parties in this action as follows:

| | |
|---|---|
| L. David Russell, Esq.<br>RUSSELL LAW, PC<br>1500 Rosecrans Avenue, Suite 500<br>Manhattan Beach, CA 90266<br>Telephone:  (323) 638-7551<br>Facsimile:  (323) 760-7468<br>E-mail:       david@russelllawpc.com | ***Attorneys for Plaintiff***<br>***JOSHUA JOHNSON*** |

☒　(**BY ELECTRONIC SERVICE**). I caused a copy of the documents to be sent from nleali@dykema.com to the persons at the email addresses listed in the service list. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒　(Federal) I declare that I employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on July 26, 2023  at Los Angeles, California.

_____
Nanette Leali

008241.002262  4887-3676-5810.1

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DEFENDANT JPMORGAN CHASE BANK, N.A.'S AMENDED RESPONSES TO PLAINTIFFS' REQUESTS
FOR PRODUCTION OF DOCUMENTS, SET ONE

# EXHIBIT E

Dispute Manual

PLTF - 30(B)(6)
10.23.23

**Exhibit 2**

Michelle L. Goehring

# Card Dispute Resolution Processing

Procedure Number: 37909
Publish Date: 01/08/2020

### Before you begin

- Important things to know
- Reasonable Investigation
- What's new

### How do I?

- Process a dispute
- Respond

  o Memo Account
  o Bankruptcy Matrix
  o Non-Bankruptcy Matrix
  o Process an ACDV
  o Process an AUD
  o Response Closing (Letter / Email)

### What is/are?

- Americans with Disabilities Act (ADA)
- Compliance Condition Code Priority
- Credit Bureau Reporting Suppressions
- Dispute Recognition (CCC)
- e-Oscar vs System Fields
- Non-Required Field Matrix

### When do I?

- Authorized Users
- Bankrupt Accounts
- Business Cards
- Charge-off Account Verification
- Customer Direct Complaints

- Customer Disputes Account
- Customer Ownership / Liability
- Date of First Delinquency Verification
- Deceased Processing
- Delinquency Disputes
- Disaster Relief
- Escalation Referrals
- High Credit Disputes
- Litigation Accounts
- Pre-Conversion, product change, and duplicate accounts

- Purged Accounts
- Redirect Dispute
- Reinsert Tradeline
- Research Previous Dispute Information
- Report Military / SCRA Accounts
- Reporting Verification Requests

- Security Fraud (SF) status accounts
- Settled Account Verification
- Special Comment Code (SCC)
- Sold Account Verification

- Tradeline Deletion Request
- Unique Direct Dispute Cases
- Verify Open / Closed Status

**9**  Verify account belongs to customer in ACDV based on name and Social Security number (SSN)

- Compare original column with E-Tool

- SSN that starts with 9 should be treated as no SSN

| Scenario | Action |
|---|---|
| Name matches and SSN matches | • Go to Step 11 |
| SSN matches and name is an acceptable variation | • Go to Step 11 |
| Name matches and SSN is similar (One digit off or transposed numbers) | • Submit Fraud Prevention Referral; go to next step |
| Name matches and SSN doesn't match | • This is wrong party. Delete tradeline; go to Response Processing |
| Primary Customer (PCM) SSN not on account / is all the same number / starts with a 9 and PCM disputing | • Submit Fraud Prevention Referral; go to next step |
| Secondary Customer (SCM) / Authorized User (AU) SSN not on account / all the same number or starts with a 9 and SCM / AU disputing | • Go to next step |
| SSN matches or is similar (One digit off or transposed numbers) and name doesn't match | • Route case to **Z Fraud** queue |
| Name and SSN doesn't match | • This is wrong party. Delete tradeline; go to Response Processing |
| Customer is authorized user or POA on account | • Review Authorized Users; go to Step 11 if needed |

**10**  Determine if working a business card account by reviewing the **TYPE** field on IAGI. If there is a **B** in this field, review Business Cards for important information regarding these

**11**  Determine if account is enrolled in Pre – Charge off settlements post 11/11/2018

- **If YES**:
  - o  **General specialist:** Refer to Escalation Criteria
  - o  **Escalation specialist:** Refer to Pre – Charge off settlements post 11/11/2018
- **If NO**: Go to next step

**12**  Investigate Indirect (ACDV) Disputes

Go to Top ⬆

## Investigate Indirect (ACDV) Disputes

Review dispute codes, FCRA relevant information and view images in the dispute to determine research that needs to be performed. For FCRA relevant information and ACDV images locate definition(s) that best describes the dispute

Multiple dispute codes must each be investigated along with the dispute code that best defines the ACDV Image and / or FCRA relevant information if present

| Code | Definition | CRA Expectations |
|------|-----------|------------------|
| 001 | Not his/hers | Provide or confirm complete ID |
| 002 | Belongs to another individual with same/similar name | Provide or confirm complete ID |
| 006 | Not aware of collection | Provide or confirm complete ID and verify Account Information |
| 010 | Settlement or partial payments accepted | Verify Special Comment Code |
| 012 | Claims paid the original creditor before collection status / paid before charge off | Verify Account Status, Payment Rating, Current Balance, Amount Past Due and Account History |
| 015 | Credit Limit / High Credit or Original Loan Amount incorrect | Verify Credit Limit / Highest Credit or Original Loan Amount |
| 019 | Included in the bankruptcy of another person | Verify Consumer Information Indicator |
| 023 | Claims account closed | Verify Compliance Condition Code, Special Comment Code and Date Closed |
| 024 | Claims account closed by consumer | Verify Compliance Condition Code and Date Closed |
| 031 | Contract cancelled or rescinded | Verify all Account Information |
| 037 | Account included in bankruptcy | Verify Consumer Information Indicator |
| 038 | Claims active military duty | Verify all Account Information |
| 039 | Insurance claim delayed | Verify Account Status, Payment Rating, Amount Past Due, Current Balance and Account History |
| 040 | Account involved in litigation | Provide or confirm complete ID and verify all account information |
| 041 | Claims Victim of Natural or Declared Disaster | Verify all Account Information |
| 100 | Claims account deferred | Verify Specialized Payment Indicator and Deferred Payment Start Date |
| 101 | Not liable for account. (i.e. ex-spouse, business) | If liable, provide or confirm complete ID |
| 102 | Account reaffirmed or not included in bankruptcy | Verify Consumer Information Indicator and Account Status |
| 103 | Claims true identity fraud, account fraudulently opened | Provide or confirm complete ID |
| 104 | Claims account take-over, fraudulent charges made on account | Verify Special Comment Code |
| 106 | Disputes present / previous Account Status / Payment Rating / Account History | Verify Account Status, Payment Rating and Account History |
| 108 | Disputes Portfolio Type Account Type or Terms Duration / Terms Frequency | Verify Portfolio Type, Account Type, Terms Duration and Terms Frequency |
| 110 | Claims company will change | Verify all account information |
| 111 | Claims company will delete | Verify all account information |
| 112 | Consumer states inaccurate information | Provide or confirm complete ID and account information |
| 114 | Dispute Date Opened, Date of Last Payment and / or Date Closed | Verify Date Opened, Date of Last Payment and / or Date Closed |
| 115 | Dispute Date of First delinquency | Verify Date of First Delinquency |
| 116 | Disputes Compliance Condition | Verify Compliance Condition Code |
| 117 | Disputes Special Comment Code and / or Narrative Remarks | Verify Special Comment Code and / or Narrative Remarks |
| 118 | Disputes Current Balance and / or Amount Past due | Verify Current Balance or Amount Past Due |

    CHASE00686

| Exclusion Codes | | Short Description | Details |
|---|---|---|---|
| Monthly Cycle | Intra-Cycle | | |
| PAGE | PAG2 | Primary Age < 18(19) or >125 yrs. old | • Accounts where the age of the primary user is less that 18 (19 in Alabama and Nebraska) or greater than 125 years |
| SCNM | SCN2 | Single letter last names; except 'O' | • Accounts with a Single Letter last name such as A, P, G, etc. The exception to the exclusion is the last name 'O' |
| STPN | STP2 | Code used during settlement to suppress reporting | • Period of time between when customer accepts settlement and makes final payment/account charge-off |
| STSN | STS2 | No account status | • No account status to report cycle |
| SUFX | SUF2 | Unidentifiable plastic | • Unable to calculate status as plastic number can't be identified |
| TMIN | TMI2 | Final Status (Terminated) (AU's not on Exclusion Report) | • Authorized or Joint users which have been previously reported as terminated (removed) |
| UAGE | UAG2 | Auth User age < 18(19) or >125 yrs. old (AU's not on Exclusion report) | • Auth Users age is less than 18 years (19 in Alabama and Nebraska) or greater than 125 years. Although the Auth user may be excluded, there is no accounting for this exclusion |
| XASC | XAS2 | Legal Status Code | • Account in Legal status LGLP or LGY9 |
| XATC | XAT2 | Test Accounts | • Accounts designated as Test Accounts are not eligible to be reported |
| XETC | XET2 | Employee Accounts | • Accounts designated as EMPLOYEES are not eligible to be reported |
| XVTC | XVT2 | VIP Type Accounts | • Accounts designated as VIPs are not eligible for reporting |

Go to Top ⬆

## Compliance Condition Code Priority

Table below is listed in order of priority in reporting to consumer reporting agencies. This is how C3 prioritizes display of compliance condition codes when they're applied to system of record (C3). First line is highest priority; last line is lowest priority

| C3 Status Code | Description | Compliance Condition Code |
|---|---|---|
| CLV1-CLV9 | Closed Account Voluntarily Closed 1-9 | XA |
| CLAF | Closed Account Annual Fee | |
| CLBO | Closed Account Better Offer | |
| CLIR | Closed Account Interest Rate | |
| CLMS | Closed Account Marital Status Change | |
| CLTC | Closed Account Too Many Cards | |
| CLUS | Closed Account Unsatisfactory Service | |
| CLCT | Closed Account Change in Terms | |
| CLPE | | |
| CLOR | | |
| These status codes are considered as voluntary closure (i.e., closed by the Cardmember) | | |

| C3 Status Code | Description | Compliance Condition Code |
|---|---|---|
| CL status and BUBR (as listed above) | Voluntary Closure + FCRA Dispute Resolved-Customer Disagrees with Action | XE |
| BUBR | FCRA Dispute Resolved-Customer Disagrees with Action | XC |
| CL status and BUCD (as listed above) | Voluntary Closure + FCRA Dispute Open | XD |
| BUCD | FCRA Dispute Open | XB |
| CL status and BUDR (as listed above) | Voluntary Closure + FCBA Dispute Resolved – Customer Disagrees | XE |
| BUDR | FCBA Dispute Resolved – Customer Disagrees | XG |
| CL status and BUBD (as listed above) | Voluntary Closure + FCBA Dispute Open | XJ |
| BUBD | FCBA Dispute Open | XF |
| CL status and DDY (as listed above) | Voluntary Closure + Merchant Transaction Dispute Resolved-Customer Disagrees | XE |
| DDY | Merchant Transaction Dispute Resolved-Customer Disagrees | XG |
| CL status and DICU (as listed above) | Voluntary Closure + Merchant Transaction Dispute Open | XJ |
| DICU | Merchant Transaction Dispute Open | XF |
| CL status and BUNB (as listed above) | Voluntary Closure + Resolved FCRA Dispute | XA |
| BUNB | Resolved FCRA Dispute | XH |
| CL status and BUDC (as listed above) | Voluntary Closure + Resolved FCBA Dispute | XA |
| BUDC | Resolved FCBA Dispute | XH |
| CL status and DIRS (as listed above) | Voluntary Closure + Resolved Merchant Transaction Dispute | XA |
| DIRS | Resolved Merchant Transaction Dispute | XH |

Go to Top ⬆

CONFIDENTIAL

# EXHIBIT F

Burda Deposition

# Deposition Transcript

Case Number: 2:22-cv-06718-RSWL-MAA

Date: October 23, 2023

In the matter of:

# JOHNSON v JPMORGAN CHASE BANK, N.A.

# BARBARA BURDA - 30(b)(6)

**CERTIFIED COPY**

Reported by:

Michelle L. Goehring

Notary Public

CONFIDENTIAL

Steno
Official Reporters

315 W 9th St.
Suite 807
Los Angeles, CA 90015
concierge@steno.com
(310) 573-8380
NV: FIRM #108F



```
 1              UNITED STATES DISTRICT COURT

 2            CENTRAL DISTRICT OF CALIFORNIA

 3                      -  -  -
   JOSHUA JOHNSON,            )
 4                           )  No.:
                             )  2:22-cv-06718-RSWL-MAA
 5          Plaintiff,       )
                             )
 6                           )  REMOTE VIDEOTAPED
                             )  DEPOSITION 30(B)(6) OF
 7                           )  BARBARA BURDA
          -vs-               )
 8                           )  Filed on Behalf of the
                             )  Plaintiff
 9                           )
                             )  Counsel of Record For
10   JPMORGAN CHASE BANK,    )  This Party:
     N.A.,                   )
11                           )  L. David Russell, Esq.
                                RUSSELL LAW, PC
12          Defendant.          1500 Rosecrans Avenue
                                Suite 500
13                              Manhattan Beach, CA
                                90266
14

15

16

17

18                      -  -  -
19

20            *** CONFIDENTIAL ***

21     REPRODUCTION OF THIS TRANSCRIPT IS PROHIBITED
     WITHOUT AUTHORIZATION FROM THE CERTIFYING
22   AGENCY

23

24

25
```

BARBARA BURDA - 30(B)(6) - CONFIDENTIAL                           JOB NO. 729375
OCTOBER 23, 2023

```
 1              REMOTE VIDEOTAPED DEPOSITION 30(B)(6)

 2    OF BARBARA BURDA, a witness herein, called by

 3    the Plaintiff, for examination, taken pursuant

 4    to the Rule 30(b)(6) of the Federal Rules of

 5    Civil Procedure by and before Michelle L.

 6    Goehring, a court reporter and a notary public

 7    in and for the Commonwealth of Pennsylvania,

 8    held remotely with all parties appearing from

 9    their respective locations, on Monday, October

10    23, 2023, at 9:32 a.m. Pacific Time

11    COUNSEL PRESENT:

12
      For the Plaintiff:
13

14    by L. David Russel, Esq.
      1500 Rosecrans Avenue
15    Suite 500
      Manhattan Beach, CA 90266
16    david@russelllaw.com

17    For the Defendant:

18    DYKEMA GOSSETT LLP
      by Robert A. Hyatt, Esq.
19    444 S. Flower Street
      Suite 2200
20    Los Angeles, CA 90071
      rhyatt@dykema.com

21

22    Also Present:      Autumn Taylor, Videographer

23                       Joshua Johnson, Plaintiff

24                       Andrew Cho, In-house counsel
                         for JPMorgan Chase Bank
25
```

```
 1                        _   _   _
                        I N D E X
 2
       WITNESS                              PAGE
 3
       BARBARA BURDA
 4
            By Mr. Russell                      6
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

BARBARA BURDA - 30(B)(6) - CONFIDENTIAL                    JOB NO. 729375
OCTOBER 23, 2023

```
 1                    E X H I B I T S

 2    EXHIBIT            DESCRIPTION            PAGE

 3    Exhibit 1    Notice of Deposition          13

 4    Exhibit 2    Card Dispute Resolution
                   Process                       22
 5
      Exhibit 3    AUD                            40
 6
      Exhibit 4    ACDV                           45
 7
      Exhibit 5    Bates Chase 154 - Excel        64
 8
      Exhibit 6    Bates Chase 129-147
 9                 Screenshots                    67

10    Exhibit 7    Billing Statement              83

11    Exhibit 8    Billing Statement              84

12    Exhibit 9    Billing Statement              85

13    Exhibit 10   Billing Statement              86

14    Exhibit 11   Billing Statement              87

15    Exhibit 12   Billing Statement              88

16    Exhibit 13   Billing Statement              88

17    Exhibit 14   Billing Statement              89

18    Exhibit 15   Billing Statement              90

19    Exhibit 16   Billing Statement              90

20    Exhibit 17   Billing Statement              91

21    Exhibit 18   10/13/20 Chase Letter          97

22    Exhibit 19   Defendant's Amended
                   Request to Plaintiff's
23                 Request for Admissions         98

24    Exhibit 20   Complaint Detail              100

25
```

1              P R O C E E D I N G S

2                    THE VIDEOGRAPHER:  Good

3      morning.  We are now on the record at 9:23 a.m.

4      Pacific Time on October 23, 2023 to begin the

5      deposition of Defendant's Corporate Rep in the

6      matter of Johnson versus JPMorgan Chase Bank

7      N.A.

8                 This case is venued in United States

9      District Court Central District of California.

10     The case number is 2:22-cv-06718-RSWL-MAA.

11                This deposition is taking place via

12     Steno connect.  The legal videographer is

13     Autumn Taylor here on behalf of Steno and the

14     court reporter is Shelly Goehring, also here on

15     behalf of Steno.

16                Will counsel please identify

17     yourselves and state whom you represent?

18                    MR. RUSSELL:  David Russel,

19     representing the Plaintiff, Joshua Johnson.

20                    MR. HYATT:  Robert Hyatt,

21     representing the deponent, Barbara Burda, and

22     Chase -- JPMorgan Chase Bank, N.A.

23                    THE VIDEOGRAPHER:  Thank you,

24     council.

25                Will the court reporter please swear

 1  in the witness?

 2          BARBARA BURDA, a witness herein,

 3  having been first duly sworn, was examined and

 4  testified as follows:

 5                  MR. RUSSELL:  For the record,

 6  I just wanted to put on that Mr. Cho, the

 7  in-house counsel for Chase, is on, as well as

 8  Mr. Johnson, the Plaintiff.

 9                  MR. HYATT:  I'm sorry, David.

10  I'm sorry to interrupt.  Before we begin, I

11  want to put on the record that Chase is

12  designating the deposition as Confidential.

13                  MR. RUSSELL:  Pursuant to the

14  protective order; correct?

15                  MR. HYATT:  Correct.

16                  MR. RUSSELL:  The Plaintiff,

17  you know, acknowledges the designation and will

18  reconfer as necessary once the transcript is

19  available, if we feel that there are portions

20  that are not actually confidential.

21                      EXAMINATION

22  BY MR. RUSSELL:

23      Q.   Ms. Burda, do you understand that

24  the oath you were given a moment ago by the

25  court reporter is the same oath that you would

BARBARA BURDA - 30(B)(6) - CONFIDENTIAL
OCTOBER 23, 2023
JOB NO. 729375

1       Q.      More than ten?

2       A.      I don't know.  I'm not sure.

3       Q.      Do you have a best estimate as to

4  approximately how many times you've provided a

5  declaration to Chase?

6       A.      I don't.

7       Q.      Is assisting with FCRA litigation

8  one of your responsibilities as the manager of

9  CBO disputes?

10      A.      Yes, it is.  It's required to

11  support the process.

12      Q.      And about how much time per month is

13  that -- assisting with the defense of these

14  legal actions take up?

15      A.      It varies.  It's not frequent.

16  Maybe two or three hours.

17      Q.      So, approximately, two or three

18  hours a month is dedicated to that legal

19  function?

20      A.      On average, if there's a case that I

21  have to testify for.  There's not a case that I

22  have to testify for every month.

23      Q.      And you're aware that you've been

24  designated as Chase's corporate representative

25  today; correct?

BARBARA BURDA - 30(B)(6) - CONFIDENTIAL
OCTOBER 23, 2023
JOB NO. 729375

```
 1        A.     Correct.

 2        Q.     And you understand you're speaking

 3    for the company; correct?

 4        A.     Correct.

 5        Q.     And throughout the deposition I'll

 6    always be asking for testimony on behalf of the

 7    company; do you understand?

 8        A.     Yes, I do.

 9               (Deposition Exhibit No. 1 was

10    marked for identification.)

11    BY MR. RUSSELL:

12        Q.     So I would like to mark as Exhibit 1

13    is the Second Amended Notice of Deposition of

14    Representatives of JPMorgan Chase Bank N.A.,

15    pursuant to Federal Rules of Civil Procedure

16    Rule 30(b)(6).

17               Ms. Burda, have you seen this

18    document before?

19        A.     Yes, I have.

20        Q.     And you're aware that there are

21    topics that are outlined throughout this

22    document?

23        A.     Yes, I am aware.

24        Q.     Are there any topics that you're not

25    prepared to provide testimony on?
```

```
 1                    MR. HYATT:  Objection, it's
 2    way overbroad.  You need to trim it down so she
 3    knows specifically what you're talking about.
 4    BY MR. RUSSELL:
 5         Q.    Ms. Burda, do you understand my
 6    question?
 7         A.    I don't really.  Could you restate
 8    that again?
 9         Q.    Sure.  So you see here on Page 3 of
10    the Notice of Deposition there's Topic No. 1;
11    correct?
12         A.    Yes.
13         Q.    And then if I go through -- do you
14    see there are topics and it goes to Topic 30 on
15    Page 7 of the deposition notice?  Do you see
16    that?
17         A.    I do see that.
18         Q.    Are there topics that you're not
19    prepared to provide testimony on behalf of
20    Chase for today?
21         A.    There are some topics that I do not
22    have knowledge on.
23         Q.    Do you know, right now, which topics
24    those are?
25         A.    I do.
```

1      Q.    Which topics?

2      A.    If you want to scroll down.

3      Q.    Sure.  I'll scroll slowly and you

4  can just tell me when to stop.

5      A.    Okay.  Keep going.

6              MR. HYATT:  And, David, I'll

7  just to let you know now, Chase objects to --

8  if you keep scrolling down -- to the online --

9  BY MR. RUSSELL:

10     Q.    Is this too fast, Ms. Burda?

11     A.    No.  You can keep going.

12             MR. HYATT:  So Chase objects

13  to any questioning about online access topics

14  19, 20, and 21, and I will direct the witness

15  not to answer any questions about those topics.

16  And the same objection for similar complaints

17  topics 22, 23, 24, 25 and 26.

18             Also the same objection for the

19  financial condition topics 27, 28, and 30.

20  BY MR. RUSSELL:

21     Q.    Ms. Burda, are there any topics that

22  you're not prepared to testify on today?

23     A.    The topics that we're just

24  mentioned.

25     Q.    Okay.  Do you have any personal

BARBARA BURDA - 30(B)(6) - CONFIDENTIAL                    JOB NO. 729375
OCTOBER 23, 2023

1    knowledge of those topics?

2        A.    No, I don't.

3                MR. HYATT:  Objection,

4    irrelevant.  You just said she's here as

5    Chase's corporate representative.

6                MR. RUSSELL:  Yeah, but,

7    Mr. Hyatt, you know the rules.  If she has

8    personal knowledge, she still has to answer the

9    question.  You can't just instruct her not to

10   answer.

11               MR. HYATT:  Well, she's not

12   going to answer on any of those topics because

13   they're irrelevant to the case or we've already

14   dealt with them.

15               MR. RUSSELL:  You know that's

16   not a proper instruction not to answer, but

17   let's -- we can get to that later.

18   BY MR. RUSSELL:

19       Q.    Ms. Burda, what did you do to

20   prepare for today's deposition?

21       A.    I read through the documentations

22   that were provided.

23       Q.    When you say read through the

24   documentations that were provided, what are you

25   referring to?

 1       A.    The Interrogatories, the

 2   documentations that were part of the

 3   Interrogatories.

 4       Q.    And when you say you read through

 5   the Interrogatories that Chase provided to

 6   Mr. Johnson or Mr. Johnson's -- let me strike

 7   that.

 8             Are you saying you reviewed

 9   Interrogatory responses?

10       A.    I reviewed the document that you

11   just had on the screen.

12       Q.    Okay.  So you've reviewed the topics

13   that --

14       A.    Yes.

15       Q.    Okay.  What other documents did you

16   review?

17       A.    I reviewed the documents that were

18   produced as part of the deposition.

19             MR. HYATT:  Let me just

20   interject to make it a little bit easier.

21   Ms. Burda reviewed the documents that Chase has

22   produced in this litigation.

23             MR. RUSSELL:  Okay.

24   BY MR. RUSSELL:

25       Q.    Ms. Burda, you reviewed the document

BARBARA BURDA - 30(B)(6) - CONFIDENTIAL                     JOB NO. 729375
OCTOBER 23, 2023

1       A.    We would review the information on

2   the ACDV, you know, what the originating column

3   reflected from the CRAs.  We would review our

4   system of record.  We would review any relevant

5   information that's on the system of record.

6             If the account had any type of fraud

7   component, it would be deferred to fraud for

8   their review.

9       Q.    When you say system of record, what

10  do you mean?

11      A.    That's our C3 system of record.

12  That's the formal system of record that we use

13  to validate information.

14      Q.    And is there a written policy for

15  how to conduct FCRA investigations that Chase

16  had in place in August and September 2022?

17      A.    Yes.  Our procedures.

18      Q.    And so does one specialist handle

19  each ACDV or does a team handle it?

20      A.    One specialist will handle an ACDV.

21                  (Deposition Exhibit No. 2 was

22  marked for identification.)

23  BY MR. RUSSELL:

24      Q.    So I want to mark as Exhibit 2 a

25  document produced by Chase in this litigation

1    that is Bates numbered Chase 680 through Chase

2    684.

3              Ms. Burda, are you familiar with

4    this document?  I'm sorry.  I couldn't hear

5    you.

6         A.    Yes, I am.

7         Q.    Is this the written procedure Chase

8    had in place in August and September 2020 to

9    conduct FCRA dispute investigations?

10        A.    Yes, it is.

11        Q.    Is this still the written process or

12   procedure that's still in place to conduct

13   these investigation?

14        A.    We've had several updates to our

15   procedures since this publish date of 1/8/2020.

16        Q.    So I'm going to Page 681 now,

17   Chase 681.  Could you tell me -- first, there's

18   a bullet point that says "Direct dispute

19   customer initiated with Chase."

20             Is that -- what is a direct dispute?

21   Is that basically it or is there any nuance to

22   that?

23        A.    A direct dispute would be the

24   customer initiating a dispute to a specific

25   P.O. Box about his credit bureau.

BARBARA BURDA - 30(B)(6) - CONFIDENTIAL
OCTOBER 23, 2023

JOB NO. 729375

1    Q.    And how about an indirect dispute?

2    A.    An indirect dispute is when we get

3    the ACDV from the CRAs in our queue.

4    Q.    So Mr. Johnson's FCRA complaint was

5    an indirect dispute; is that correct?

6    A.    That is correct.

7    Q.    Can a direct dispute be initiated on

8    the telephone?

9    A.    It can.  It can.  It can get

10   forwarded over for review.  But the FCRA

11   responsibility is the P.O. Box.

12   Q.    And is P.O. Box post office box?

13   A.    Yes, it is.

14   Q.    So if I go down further on

15   Chase 681, do you see where there's a heading

16   this says Reasonable Investigation?

17   A.    Yes, I do.

18   Q.    Is it your understanding that the

19   investigation of the FCRA dispute has to be

20   reasonable?

21   A.    Yes, it is.

22   Q.    What does Chase do to make sure

23   there's an reasonable investigation?

24   A.    Again, we follow our procedure steps

25   and our process and review our system of record

1        Q.    And do you know whether the CRA

2    forwards the complete customer complaint to

3    Chase or if they excerpt it?

4        A.    I don't know that.

5        Q.    Who would know that?

6        A.    I don't know.

7        Q.    So it's possible that the FCRA

8    relevant information that Chase receives is not

9    the entire consumer complaint that the CRA

10   receives?

11                  MR. HYATT:  Objection, calls

12   for speculation.  Lacks foundation.

13   BY MR. RUSSELL:

14       Q.    You can answer.

15       A.    I don't know.  I'm not sure what the

16   CRA process is.

17       Q.    So after reviewing the relevant FCRA

18   information, it says, "Review loan type

19   information" --

20       A.    Yes.

21       Q.    -- "to determine if request is for

22   another CBO area."

23             What does that mean?

24       A.    That means occasionally we may get a

25   dispute on ACDV from another line of business,

1   already know the account?

2         A.    Sometimes the account number doesn't

3   come up.  You know, showing more due diligence

4   to make sure we've got the right information.

5         Q.    So is that a cross-check that you

6   use every time you do an investigation or is

7   this something you only use in cases where you

8   don't know if you have the right account?

9         A.    Well, as we go through the steps, it

10  takes you to Step 4 -- if you go back up to

11  Step 3 -- yeah.  So determine the account

12  number is complete.  If no complete account

13  number, go to next step.

14            So if we couldn't locate the account

15  number, it was incomplete.  We would then go to

16  the next step which would be to determine if

17  the account can be found using the Social.

18        Q.    Step 5, "Determine if account had

19  fraud indicators on C3."

20            Do you see that?

21        A.    I do.

22        Q.    What are the fraud indictors you're

23  looking for on C3?

24        A.    These would be ID theft designation.

25        Q.    So what is the C3?

BARBARA BURDA - 30(B)(6) - CONFIDENTIAL
OCTOBER 23, 2023

JOB NO. 729375

1      A.      Our system of record.

2      Q.      So would that just be a complaint

3  somewhere in the system of record that the

4  account owner is complaining of fraud?

5      A.      In this particular step, this would

6  be specific where the customer has raised an

7  identify theft claim and it gets coded in a

8  certain way in the Fraud Department.

9      Q.      Where would they have raised the

10  identify theft claim?

11      A.      With the CRA.

12      Q.      Okay.

13      A.      Identify theft, actually.

14      Q.      Okay.  So then these steps then

15  continue all the way through -- for several

16  pages; fair to say?

17      A.      Yes.

18      Q.      So I'm back to Chase 682.  In the

19  middle of the page there's bolded text.  It

20  says, "In accordance with FCRA, CBO Dispute

21  Resolution will research every request that has

22  sufficient information to perform a Reasonable

23  Investigation.  In the event there is

24  insufficient information provided by the

25  Customer(s), a letter will be mailed requesting

 1   sorry -- the C3?

 2        A.    We would review information.

 3   Correct.

 4        Q.    Okay.  And does Chase -- for

 5   indirect disputes does Chase ever contact the

 6   consumer to ask -- to get more information?

 7        A.    No, we do not.

 8        Q.    Why not?

 9        A.    It's not part of our process.

10        Q.    Do you know why it wasn't included

11   as part of the process?

12        A.    I don't.

13        Q.    If the information provided by the

14   CRAs is confusing or the specialist doesn't

15   understand it, wouldn't it be helpful to

16   contact the consumer to ask them what their

17   dispute is?

18              MR. HYATT:  Objection, calls

19   for speculation.  Lacks foundation.  Improper

20   hypothetical.

21              You can answer if you understand.

22              THE WITNESS:  Well, we rely on

23   the ACDV information that's provided.

24   BY MR. RUSSELL:

25        Q.    In your experience, has a specialist

1    are there any other materials that are used to

2    train specialists?

3         A.    Not that I'm aware of.

4         Q.    When an ACDV is transmitted to

5    Chase, does Chase ever go back to the CRA to

6    see if there is additional information that

7    they can provide?

8         A.    No, we do not.

9         Q.    Why not?

10        A.    We rely on the ACDV information

11   provided.

12        Q.    How long does the investigation

13   process for a FCRA indirect dispute usually

14   take from start to finish?

15        A.    I don't know that information

16   because each case is different and each case

17   has some different complexities, so I don't

18   have that information.

19        Q.    Are some investigations completed in

20   a couple days?

21        A.    They can be if we rely on another

22   area to provide information.

23        Q.    What do you mean by rely on another

24   different area?

25        A.    We may need to rely on our fraud

```
 1        Q.    Do you know how many hours were

 2   spent actively investigating the dispute?

 3        A.    I don't know that.

 4        Q.    Who would know that?

 5        A.    I don't think anybody would know

 6   that.

 7        Q.    How many employees or -- let me

 8   strike that.

 9              How many specialists worked on

10   investigating Mr. Johnson's FCRA dispute?

11        A.    I'm aware of one on the CBO side.

12        Q.    And who was that?

13        A.    I don't have their name right here.

14   I would have to look at the ACDV.

15        Q.    And do you know -- is that employee

16   still a specialist with Chase?

17        A.    I don't know.  I would have to look

18   at the employee's name.

19        Q.    Do you know how many indirect ACDV

20   FCRA disputes Chase has in a year to

21   investigate?  How many -- let me strike that.

22              How many FCRA indirect disputes does

23   Chase receive each year?

24        A.    I don't have that information.

25        Q.    Who would have that information?
```

```
 1   right?

 2        A.    Yes.

 3        Q.    And then in 2017 for January,

 4   there's a B; do you see that?

 5        A.    I do see that.

 6        Q.    And what does that stand for?

 7        A.    That represents the month the

 8   account was opened.

 9        Q.    And dashes, does that indicate there

10   was no account that was created yet?

11        A.    Correct.

12              (Deposition Exhibit No. 4 was

13   marked for identification.)

14   BY MR. RUSSELL:

15        Q.    I've marked as Exhibit 4 a document

16   produced by Chase that's Bates numbered Chase

17   110 through Chase 112.

18              Ms. Burda, have you seen this

19   document before?

20        A.    I have.

21        Q.    What is it?

22        A.    It's an ACDV.

23        Q.    And does that reflect the

24   information Chase received from the CRA?

25        A.    It does.
```

BARBARA BURDA - 30(B)(6) - CONFIDENTIAL                    JOB NO. 729375
OCTOBER 23, 2023

1          Q.    So do you see where it says Response
2     Code?
3          A.    I do see that.
4          Q.    And it says, "23-Disputed
5     information accurate.  Updated account
6     information unrelated to the dispute."
7                Do you see that?
8          A.    I do see that.
9          Q.    Was that information provided by the
10    CRA?
11         A.    No.
12         Q.    That was information generated by
13    Chase?
14         A.    Yes.
15         Q.    So what information on this form was
16    provided by the CRA?
17         A.    The request data -- actually, the
18    dispute code, FCRA relevant information, the
19    consumer information data column, the account
20    status -- if you want to scroll down a little
21    bit.
22         Q.    Okay.
23         A.    Everything in Request Data column.
24         Q.    Okay.  Just so I understand, the
25    information that came from the -- actually, let

1    me rephrase that.

2              The row that says FCRA Relevant

3    Information, that all came from the CRA;

4    correct?

5        A.    That's my understanding.

6        Q.    And then below that, there's a

7    row -- in the table that says Consumer

8    Information, there's a row that says Request

9    Data and that whole -- sorry -- there's a

10   column that says Request Data and that entire

11   column came from the CRA, is that correct?

12       A.    That's correct.

13       Q.    And then there's another table that

14   says Account Information and there's a column

15   that says Request Data and all of that

16   information came from the CRA; is that correct?

17                  MR. HYATT:  I'm sorry,

18   counsel.  Excuse me.  Where does it say Account

19   Information?  I see Account Status.

20              Oh, up above it.  Okay.

21   BY MR. RUSSELL:

22       Q.    So just to ask that question again,

23   Ms. Burda.  So there's a table that says

24   Account Information; correct?

25       A.    Yes.

1          Q.    And the column that says Request

2    Data, that information all comes from the CRA?

3          A.    Correct.

4          Q.    Is there any additional information

5    on this ACDV that comes from the CRA?

6          A.    The account history that comes from

7    the CRA that shows requested, that is what the

8    CRA had on their file.

9          Q.    Okay.  So the table that says

10   Account History on Pages Chase 111 and

11   Chase 112, that also came from the CRA;

12   correct?

13         A.    Correct.

14         Q.    There's a date here at the bottom

15   that says date 9/8/2020; do you see that?

16         A.    I do see that.

17         Q.    And we're at the bottom of Chase

18   112, for the record.  What does that date

19   9/8/2020 refer to?

20         A.    Can you scroll up to the top?  I

21   believe that's their response date.  Yep.

22   That's our response date.

23         Q.    So what does that mean, response

24   date?

25         A.    That's the date that we responded to

1    the ACDV and back to the CRAs.

2         Q.    Do you know what date Chase received

3    this ACDV?

4         A.    Scroll down.  Let me see.

5               Right there.  Receive date.

6         Q.    So Chase received the ACDV on

7    August 24, 2020?

8         A.    Correct.

9         Q.    And then the response date, the

10   closeout date was September 8, 2020; correct?

11        A.    Correct.

12        Q.    So did the investigation take

13   about -- actually, do you know when the

14   investigation started for Mr. Johnson's

15   complaint?

16        A.    I don't.

17        Q.    Who would have that information?

18        A.    I don't know.

19        Q.    Would an investigation normally

20   start the day the ACDV was received by Chase?

21        A.    No.

22        Q.    How long would an ACDV usually sit

23   in a queue before a specialist would start

24   investigating it?

25        A.    It depends.

BARBARA BURDA - 30(B)(6) - CONFIDENTIAL
OCTOBER 23, 2023

```
 1          Q.    Would it normally be a week or two?

 2          A.    It could be.

 3          Q.    Is it fair to say it would at least

 4    take a few days?

 5          A.    Yes.  That's fair.

 6          Q.    And you don't know how long Chase

 7    actually investigated Mr. Johnson's FCRA

 8    complaint; correct?

 9          A.    I don't.

10          Q.    Do you know what specialist was

11    assigned the investigation?

12          A.    I don't.  It's redacted on there.

13          Q.    So it would be -- Under Submitted

14    By, normally it would say who actually --

15          A.    Yep.

16          Q.    -- who actually conducted the

17    investigation?

18          A.    Correct.

19          Q.    You don't know who investigated

20    Mr. Johnson's FCRA complaint?

21          A.    I don't.

22          Q.    Did you try to get the identity of

23    that person before your testimony today?

24          A.    I did not.

25          Q.    You didn't try to reach out to that
```

BARBARA BURDA - 30(B)(6) - CONFIDENTIAL
OCTOBER 23, 2023                                          JOB NO. 729375

1   person before your testimony today?

2                      MR. HYATT:  Objection, asked

3   and answered.

4                      THE WITNESS:  No.

5   BY MR. RUSSELL:

6        Q.    And you don't know whether that

7   specialist still works for Chase; is that

8   correct?

9        A.    That is correct.

10       Q.    Do you know if this specialist

11  worked on your team back in 2020?

12       A.    I don't know.

13       Q.    Do you recall, at all, being

14  personally involved in this investigation back

15  in 2020?

16       A.    No, I was not involved in this

17  investigation.

18       Q.    Besides the information that we've

19  gone over on the ACDV, is there anything else

20  that Chase received from the CRA related to

21  Mr. Johnson's dispute?

22       A.    Not that I can see.

23       Q.    And do you know whether the

24  information in the FCRA Relevant Information

25  box was everything that Mr. Johnson put in his

1    dispute to the CRA?

2              MR. HYATT:  Objection, calls

3    for speculation.

4    BY MR. RUSSELL:

5         Q.    Do you know, Ms. Burda?

6         A.    I only know what's on the ACDV.

7         Q.    You don't know if there was

8    additional information that Mr. Johnson

9    submitted to the CRA; correct?

10        A.    I don't know that.

11             MR. HYATT:  Objection, calls

12   for speculation.

13   BY MR. RUSSELL:

14        Q.    And so what exactly, in Chase's

15   view, was the FCRA dispute?  What information

16   was Mr. Johnson disputing?

17        A.    There's two things, the 104 dispute

18   code, and then we would have evaluated the

19   relevant information, as well.

20        Q.    So what's the 104 dispute code?

21        A.    Claims account takeover, fraudulent

22   charges on the account.

23        Q.    And did that dispute code come from

24   the CRA?

25        A.    Yes.

 1        Q.    Would Mr. Johnson have put that

 2    dispute code in or is that generated by the

 3    CRA?

 4                    MR. HYATT:  Objection, calls

 5    for speculation.

 6                    THE WITNESS:  I'm not sure.

 7    BY MR. RUSSELL:

 8        Q.    Do you know whether Mr. Johnson

 9    would have generated that dispute code?

10        A.    I don't know that.

11        Q.    Do you know whether that would have

12    been entered by the CRA?

13        A.    That's my understanding.

14        Q.    Your understanding is that the CRA

15    enters the information and not the consumer?

16                    MR. HYATT:  Objection, calls

17    for speculation.  Lacks foundation.

18                    THE WITNESS:  That is my

19    understanding.

20    BY MR. RUSSELL:

21        Q.    You can answer the question,

22    Ms. Burda.

23        A.    I'm not sure.

24        Q.    You don't know, one way or the

25    other?

1        A.     Correct.

2        Q.     Well, you said before that it was

3   your understanding that it was the CRA that put

4   that information in; correct?

5        A.     I did say that.

6        Q.     And what was that based on, your

7   understanding?

8        A.     Just based on how they provide the

9   information to us from the consumer.

10       Q.     And just -- from your experience,

11  you believe that it's extrapolated, the dispute

12  code is extrapolated from the consumer's -- the

13  information the consumer provides?

14              MR. HYATT:   Objection, lacks

15  foundation.  Calls for speculation.

16  BY MR. RUSSELL:

17       Q.     You can answer.

18       A.     I'm not sure.

19       Q.     Okay.  So that was -- in Chase's

20  view, that was one part of the disputed

21  information, the 104 code; correct?

22       A.     That's correct.

23       Q.     What's the other part of the

24  dispute?

25       A.     The FCRA relevant information.

BARBARA BURDA - 30(B)(6) - CONFIDENTIAL                    JOB NO. 729375
OCTOBER 23, 2023

1      Q.     So everything that's written in

2   there?

3      A.     Correct.

4      Q.     So did the dispute -- the dispute

5   involve an allegation by Mr. Johnson that there

6   was an incorrect balance on his account?

7      A.     Based on the FCRA relevant

8   information, yes.

9      Q.     And what did Chase do to investigate

10  the dispute in this case, in Mr. Johnson's

11  case?

12     A.     We would have followed our procedure

13  steps in our process.

14     Q.     You say would have followed the

15  procedure steps.  Do you know that Chase

16  actually followed those procedures and steps

17  here?

18     A.     Yes.  I believe they would have.

19     Q.     Have you talked to anyone who is

20  involved in this investigation?

21     A.     No, I have not.

22     Q.     So how do you know that those steps

23  were actually followed here?

24     A.     From the documentation on our system

25  of record.

BARBARA BURDA - 30(B)(6) - CONFIDENTIAL                    JOB NO. 729375
OCTOBER 23, 2023

```
 1          Q.    And what documentation are you
 2     relying on that allows you to draw that
 3     conclusion?
 4          A.    The memos that reflect the actions
 5     that were taken.
 6          Q.    And where are those memos?
 7          A.    On C3.
 8          Q.    Is there anything else that allows
 9     you to draw the conclusion that Chase followed
10     the procedures in the manual?
11          A.    No.  I would rely on the system of
12     record.
13          Q.    There's nothing on this document
14     that allows you to draw that conclusion; is
15     that correct?
16          A.    That's correct.
17          Q.    Do you know --
18          A.    Actually, I do want to restate
19     something.
20          Q.    Please.
21          A.    So this document does provide the
22     response that we sent to the CRAs through our
23     investigation, the response data.
24          Q.    And where is that?
25          A.    Under Response Data, it says,
```

1    Q.    And after the investigation, that

2  was changed to 64 account paid in full was a

3  chargeoff; is that correct?

4       A.    That is correct.

5       Q.    And that 64 account paid in full was

6  a charge off that was Chase's supplementation

7  or correction; is that correct?

8       A.    It's not a correction.  It's a

9  response to the current status of the account.

10      Q.    Okay.  That was Chase's -- that was

11 the end result of Chase's FCRA investigation

12 into Mr. Johnson?

13            MR. HYATT:  Objection, asked

14 and answered.  Misstates her testimony.

15 BY MR. RUSSELL:

16      Q.    You can answer.

17      A.    This reflects the account status at

18 the time that we completed our investigation

19 and responded to the ACDV.

20      Q.    Thank you.

21            Okay.  Besides the things --

22 besides -- so those things you're relying on

23 for your conclusion that Chase followed the

24 procedures in that policy handbook when

25 conducting its investigation here; correct?

1               MR. HYATT:  Objection,

2    misstates her testimony.

3    BY MR. RUSSELL:

4        Q.    Ms. Burda, what are you relying on

5    when you're telling me that you think Chase

6    followed its procedures in the manual?

7        A.    We rely on the system of record

8    information and the memos at the time that we

9    responded.

10       Q.    Okay.  Just the C3 information,

11   then; correct?

12       A.    Yes.

13              MR. HYATT:  Objection,

14   misstates her testimony.  She just talked about

15   the ACDV response and how she was able to get

16   information from there also.

17              MR. RUSSELL:  Mr. Hyatt, I'm

18   going to ask you to state your objection and

19   not coach the witness.  I've gotten responses

20   here.  We don't need more coaching.

21   BY MR. RUSSELL:

22       Q.    Ms. Burda, do you know if any

23   documents were generated during the Johnson

24   FCRA investigation?

25       A.    I'm not sure I understand the

1   question.

2        Q.    As the specialist conducted the

3   investigation, would he have generated any data

4   or documents during that investigation process?

5        A.    Not in the ACDV process.

6        Q.    Would anything that was created be

7   maintained in the C3?

8        A.    Yes, it would be.

9        Q.    Do you know whether Chase had any

10  recorded phone calls with Mr. Johnson, whether

11  they had maintained any at the time of the FCRA

12  investigation?

13       A.    I don't know that.

14       Q.    Who would know that?

15       A.    I don't know.

16       Q.    Do you know if Chase reviewed any

17  recorded calls with Mr. Johnson?

18       A.    I don't know that.

19       Q.    Would that have been part of the

20  normal FCRA investigation process?

21       A.    Not for an ACDV.

22       Q.    Why not?

23       A.    It's not part of our process or our

24  procedure steps.

25       Q.    Why isn't it included as part of

BARBARA BURDA - 30(B)(6) - CONFIDENTIAL                    JOB NO. 729375
OCTOBER 23, 2023

1    your process or procedure steps?

2         A.    Because we rely on the information

3    on our system of record.

4         Q.    Who enters the information on your

5    system of record?

6         A.    Anyone that would take a phone call.

7         Q.    Have you ever found information that

8    was entered on the system of record was

9    inaccurate?

10        A.    I think it's fair to say that there

11   has sometimes been mistakes in documentation.

12        Q.    So sometimes information is entered

13   in the system of record is inaccurate; correct?

14                  MR. HYATT:   Objection, calls

15   for speculation.   Overbroad.

16   BY MR. RUSSELL:

17        Q.    You can answer.

18        A.    There could be a comment that was

19   misstated.

20        Q.    In your experience, have you seen

21   inaccuracies in the system of record in the

22   information entered?   Yes or no.

23        A.    I have not, no.

24        Q.    Are you aware of inaccuracies in the

25   information entered in the system of record?

BARBARA BURDA - 30(B)(6) - CONFIDENTIAL                    JOB NO. 729375
OCTOBER 23, 2023

```
 1          Q.    Okay.  Do you know what document
 2    that was?  Was it another spreadsheet?
 3          A.    No.  It was the actual screen shots.
 4          Q.    Okay.  Why don't we take a
 5    five-minute break.
 6          A.    Okay.
 7                THE VIDEOGRAPHER:  We are now
 8    off the record.  The time is 10:55 a.m.
 9    Pacific.
10                (Short recess was taken.)
11                THE VIDEOGRAPHER:  We're now
12    on the record.  The time is 11:01 a.m. Pacific.
13                (Deposition Exhibit No. 6 was
14    marked for identification.)
15    BY MR. RUSSELL:
16          Q.    I'm going to introduce what I'll
17    mark as Chase -- or Exhibit 6.  It's Bates
18    numbered Chase 129 through Chase 147.
19                Ms. Burda, have you seen this
20    document before?
21          A.    I have.
22          Q.    And are these the memos that you
23    were referring to earlier that you said you
24    reviewed before this deposition?
25          A.    That's correct.
```

 1          Q.    Okay.  Now, what in these memos

 2   leads you to believe that the processes in the

 3   Chase/FRCA procedure manual was followed?

 4          A.    If you take a look at 9820 comment

 5   there.

 6          Q.    So we're on Chase 129; is that

 7   correct?

 8          A.    Yeah.  You have to look a little bit

 9   farther up, though.

10          Q.    Okay.

11          A.    So on 9820 at 8:10, do you see the

12   comment, "ACDV control, investigation performed

13   based on dispute code 104"?

14                  MR. RUSSELL:  Sorry.  One

15   second.  We just lost Mr. Hyatt.

16          Let's just wait until he gets back.

17                  THE WITNESS:  Oh, okay.  Thank

18   you.  I didn't even realize that.

19                  (Discussion held off the

20   record.)

21                  THE VIDEOGRAPHER:  Okay.  We

22   are now off the record.  The time is 11:05 a.m.

23   Pacific.

24                  (Short recess was taken.)

25                  THE VIDEOGRAPHER:  We are now

BARBARA BURDA - 30(B)(6) - CONFIDENTIAL                    JOB NO. 729375
OCTOBER 23, 2023

1        Q.    We're looking at it.

2        A.    Oh, sorry.  I got you.  Yes, I was

3   going to walk through the memos.  Correct.

4        Q.    Correct.  So where we left off, I

5   believe there was a memo or an annotation on

6   this first page, Chase 129, that was part of

7   the basis for this conclusion; is that right?

8        A.    Yes.

9        Q.    And what were you saying then before

10  we left off?

11       A.    I was saying that our processor, as

12  you can see, there's an ACDV control number.

13  That's the Automated Consumer Dispute

14  Verification form that came in through the

15  credit bureau with the control number that's

16  attached to it.

17             Our investigation performed was

18  based on dispute code of 104, which is where

19  the customer or the bureau put a 104 claims on

20  the account.  It was a takeover/fraudulent

21  charge on the account.

22             Our procedure steps would then

23  verify some conditions on the account, special

24  comment code, other relevant information and

25  attachments reviewed, so FCRA comments, images

BARBARA BURDA - 30(B)(6) - CONFIDENTIAL                    JOB NO. 729375
OCTOBER 23, 2023

1      Q.    So is there anything else in

2  Exhibit 6 that led you to conclude that the

3  specialist who was working on this followed the

4  steps in the FCRA manual?

5      A.    No.  This is the majority.

6      Q.    Okay.  So to go back to Chase 129,

7  it says, "Investigation performed based on

8  dispute codes."

9          Do you see that?

10     A.    Yes.

11     Q.    So what dispute codes were

12  investigated?  Can you tell from this memo?

13     A.    I can.  104, which is what was on

14  the ACDV.  So that's what came through the

15  CRAs, the 104.

16     Q.    And is the specialist supposed to

17  investigate any other codes when a code comes

18  through?

19     A.    They are required to investigate the

20  code that's present on the ACDV and anything

21  that's in the relevant information or on image.

22  You know, if there was anything that would

23  stand out in an image or relevant information.

24     Q.    Okay.  So do you know -- so the

25  first sentence is that the investigation was

1    performed on dispute codes 104.  Claims account

2    take-over, fraudulent charges made on account;

3    correct?

4         A.    Correct.

5         Q.    Is there any information here on

6    what was done to perform that investigation?

7         A.    If you scroll down, this was

8    forwarded to our fraud department because of

9    that dispute code which is fraud related.  We

10   would have relied on their information and

11   their investigation for us to move forward.

12        Q.    Okay.

13        A.    Scroll down a little --

14        Q.    So on Page Chase 130, is that where

15   the information was or back on Chase 129?

16        A.    I'm looking.  I think you have to go

17   back farther.

18        Q.    This is the first document.

19        A.    Yeah.  There's other C3 documents,

20   though, that will show fraud's memos.

21        Q.    Okay.

22        A.    Yeah.  Maybe go one more page back,

23   if you can.  There you go.

24        Q.    So here is Chase 131.

25        A.    Yeah.  Right at the top there it

1   says ILSPT ACDV.  This is our fraud department,

2   our specialty fraud department.  "Liability

3   found, payment verified to DDA in primary care

4   members name.  FNCORR documents," which is

5   where it would have been documented,

6   "liabilities found."

7             So we would have relied on that memo

8   from our fraud department and their

9   investigation to move forward.

10       Q.    And did the FCRA relevant

11   information box here suggest that the complaint

12   was fraud?

13       A.    No.  The FCRA relevant information

14   did not, but the dispute code did.

15       Q.    Were there other dispute codes,

16   then, that would have been investigated in a

17   case like this that weren't from the CRA?

18       A.    Based on that comment, we would have

19   reviewed the balance, the chargeoff

20   information, the account status to make sure

21   that that was accurately reflected.

22       Q.    Do you know if that was done in this

23   investigation?

24       A.    I do, based on the comments on the

25   first page.  If you want to go back up to what

```
 1          Q.    Was this case escalated?

 2          A.    Not from my area.

 3          Q.    Was it escalated from any other

 4     area?

 5          A.    I did see that it was escalated from

 6     an executive office, from our executive office.

 7          Q.    Where did you see that?

 8          A.    If you want to pull up the memos.

 9          Q.    Exhibit 6?

10          A.    Yes.  Escalating complaints case

11     review was complete.  And if you want to go

12     back a couple more pages, you can also see that

13     our escalated office also reviewed the

14     information.

15          Q.    Okay.  So on Page 129, can you point

16     me to where it says escalated?

17          A.    Yeah.  9920, "Escalated complaints

18     case review is complete."

19          Q.    So who would it have been escalated

20     to?

21          A.    This complaint was excalated -- our

22     escalated office got the complaint, from what I

23     saw.

24          Q.    Okay.  And so the escalated case

25     review completed on September 9, 2020?
```

1    working on the CRA investigation?

2         A.    I'm not sure.  I don't know when

3    that information -- no, I'm not sure.

4         Q.    Okay.  So do you see here on

5    Row 1191 there's an entry for May 21, 2018; do

6    you see that?

7         A.    Not really.  It's really hard to see

8    that.  I can't.  Sorry.

9              What's the date you have on there?

10        Q.    2018-5-21.

11        A.    I do see that, May 27, 2018.  Yes.

12        Q.    Okay.  Would that information have

13   been available to processors working on the

14   FCRA investigation?

15        A.    It might have, in 2020, have been

16   there.

17        Q.    So why wouldn't it have been

18   there -- well, why is it possible it wouldn't

19   have been there in 2020?

20        A.    Because of the length of time that

21   has passed between this comment and the

22   investigation.  Some of those comments may --

23   and I don't know the criteria -- may have

24   purged off the system.

25        Q.    Okay.  How long does it take for

BARBARA BURDA - 30(B)(6) - CONFIDENTIAL
OCTOBER 23, 2023

JOB NO. 729375

1    comments to purge off the system?

2        A.    I don't have any idea.

3        Q.    When undertaking a CRA

4    investigation, do processors ever go and see if

5    there are purged comments relevant to the

6    investigation?

7        A.    If they were aware of relevant

8    comments, they would.

9        Q.    How would they be aware of relevant

10   comments if they've been purged?

11       A.    If they would indicate in the

12   comments that are available, you know,

13   documentation that would suggest something is

14   not present.

15       Q.    And would that information be in the

16   FCRA relevant box in the ACDV?

17       A.    I'm not sure I understand.

18       Q.    Well, what would allow a processor

19   to know there's a purge comment they need to

20   look for?

21       A.    They wouldn't necessarily know that.

22       Q.    Okay.  And so if you look over here,

23   I've highlighted some rows that I believe

24   indicate what the memo was on May 21, 2018.

25            Do you know if the investigator

 1   working on Mr. Johnson's FCRA dispute had

 2   access to this memo?

 3        A.    I don't know.  I would have to look

 4   if it's on the memos that we provided.

 5        Q.    Okay.

 6        A.    On that other exhibit.

 7        Q.    And if it had been purged, would the

 8   FCRA investigator have had access to this

 9   comment?

10        A.    No.

11        Q.    Would the Chase investigator working

12   on the FCRA investigation of Mr. Johnson's

13   account, would they have had access to

14   information regarding other accounts

15   Mr. Johnson had with Chase?

16        A.    They would have had access to that,

17   yes.

18        Q.    Do you know in this investigation if

19   they reviewed those other account documents?

20        A.    No, they would not have.

21        Q.    Why not?

22        A.    Because it was not part of the steps

23   of our process.  We review the account number

24   that the ACDV came in on.

25                  (Deposition Exhibit No. 18 was

1   marked for identification.)

2   BY MR. RUSSELL:

3        Q.     I've just marked as Exhibit 18 a

4   document Bates numbered Chase 113 through 114.

5              Ms. Burda, have you seen this

6   document before?

7        A.     I have.

8        Q.     And what is this document?

9        A.     This looks like a document from our

10  executive office to our customer.

11       Q.     Okay.  And does this letter have

12  anything to do with the FCRA investigation that

13  was conducted on Mr. Johnson's account?

14       A.     I don't have firsthand knowledge of

15  information on the letter itself except for

16  what I'm reading.

17              But, yes, it does have the

18  information on when we reviewed Mr. Johnson's

19  account.

20       Q.     Is this the final analysis of what

21  the investigation showed?

22              MR. HYATT:  Objection, it's

23  unclear as to what investigation that you're

24  referring to.

25              MR. RUSSELL:  I'll restate.

BARBARA BURDA - 30(B)(6) - CONFIDENTIAL                    JOB NO. 729375
OCTOBER 23, 2023

```
 1    BY MR. RUSSELL:

 2         Q.    The FCRA investigation that Chase

 3    conducted in August and September of 2020, was

 4    this the final product of that investigation?

 5         A.    This was the results of the

 6    investigation from the August review the

 7    executive office asked for the credit bureau

 8    team to review.

 9         Q.    So this has nothing to do with the

10    FCRA investigation; correct?

11         A.    You mean the ACDV?

12         Q.    Exactly.

13         A.    No, it does not.

14         Q.    Are you aware of the current balance

15    on Mr. Johnson's Chase Ink Business credit card

16    account?

17         A.    I am.

18         Q.    What's the balance?

19         A.    Zero.

20               (Deposition Exhibit No. 19 was

21    marked for identification.)

22    BY MR. RUSSELL:

23         Q.    So I'm going to mark as Exhibit 19

24    Responses to Request for Admission that Chase

25    provided.
```

BARBARA BURDA - 30(B)(6) - CONFIDENTIAL                    JOB NO. 729375
OCTOBER 23, 2023

1    balance is zero as of current.

2         Q.    Okay.  So when was there a balance

3    of the $238 and 52 cents; do you know?

4         A.    No, I don't.

5         Q.    How often does Chase report accounts

6    to CRAs?

7                   MR. HYATT:  Objection,

8    overbroad.  Irrelevant.

9    BY MR. RUSSELL:

10        Q.    You can answer the question.

11        A.    We furnish monthly to the CRAs.

12        Q.    And did Chase furnish monthly to the

13   CRAs on Mr. Johnson's Business Ink account?

14        A.    Yes, they did.

15        Q.    Can we take a ten-minute break so I

16   can go over my notes?

17        A.    Sure.

18                   THE VIDEOGRAPHER:  We are now

19   off the record.  The time is 12:45 p.m.

20   Pacific.

21                   (Short recess was taken.)

22                   THE VIDEOGRAPHER:  We are now

23   on the record.  The time is 12:59 p.m. Pacific.

24                   (Deposition Exhibit No. 20 was

25   marked for identification.)

BARBARA BURDA - 30(B)(6) - CONFIDENTIAL                    JOB NO. 729375
OCTOBER 23, 2023

1    via e-mail?

2                         MR. HYATT:   Objection,

3    irrelevant.

4    BY MR. RUSSELL:

5            Q.     You can answer.

6            A.     That's my understanding.

7            Q.     Is statement nondelivery a bank

8    error that would require a credit reporting

9    correction?

10           A.     I'm not sure.

11           Q.     Who would know that?

12           A.     I don't know.

13           Q.     Is payment misposting a bank error

14   that would require a credit reporting

15   correction?

16           A.     That's outside my areas of

17   expertise.

18           Q.     So you don't know?

19           A.     I don't know.

20           Q.     Do you know who would know?

21           A.     I don't.

22           Q.     Did Chase investigate nondelivery or

23   misposting as part of the FCRA investigation?

24           A.     We reviewed the memos on the account

25   that reflected the information about the

```
 1   COMMONWEALTH OF PENNSYLVANIA          )
                                           ) SS
 2   COUNTY OF ALLEGHENY                   )

 3                        CERTIFICATE

 4        I, Michelle L. Goehring, a notary public
     in and for the Commonwealth of Pennsylvania, do
 5   hereby certify that the witness, BARBARA BURDA,
     was by me first duly sworn to testify the
 6   truth, the whole truth, and nothing but the
     truth; that the foregoing deposition was taken
 7   at the time and place stated herein; and that
     the said deposition was recorded
 8   stenographically by me and then reduced to
     typewriting under my direction, and constitutes
 9   a true record of the testimony given by said
     witness.

10
          I further certify that the inspection,
11   reading and signing of said deposition were
     waived by counsel for the respective parties
12   and by the witness.

13        I further certify that I am not a
     relative, employee or attorney of any of the
14   parties, or a relative or employee of either
     counsel, and that I am in no way interested
15   directly or indirectly in this action.

16        IN WITNESS WHEREOF, I have hereunto set my
     hand and affixed my seal of office this 5th day
17   of November, 2023.

18
                 Michelle L. Goehring
19
                 Michelle L. Goehring, Notary Public
20               Court Reporter
                 My Commission Expires: July 12, 2025
21               Commission No. 1317058

22

23

24

25
```

# EXHIBIT H

June 12 2018 Jeremiah Call 2

**Phone Call Part 2**
**06/12/2018**

1             AMERICAN ARBITRATION ASSOCIATION

2

3    JOSHUA JOHNSON,

4              Claimant,

5    -vs-                    AAA Case: 01-20-0015-1734-2-PA

6

7    JPMORGAN CHASE BANK, N.A.,

8              Respondent.

9    _____/

10   PAGE 1 TO 17

11

12       Phone call part 2 between Jeremy (from Chase) and

13       Joshua Johnson,

14       Commenced on June 12, 2018,

15       Transcribed by Caitlyn Hartley, RPR, CSR-8887.

16

17

18

19

20

21

22

23

24

25



**Phone Call Part 2**
**06/12/2018**                                    Pages 2..5

Page 2

1  Phone call (part 2)
2  Held on June 12, 2018
3
4
5  PHONE CALL WITH MR. JOHNSON BY CHASE EMPLOYEE:
6    A. Hello?
7    Q. Hello this is Jeremy (inaudible) with Chase
8  Credit Bureau Unit. May I speak with Joshua Johnson?
9    A. Hey yeah this is him. Let me just (inaudible).
10   Q. Sure. While you're doing that I just need to
11  mention this phone call may be monitored or recorded for
12  quality assurances for you.
13   A. Sure.
14   Q. Okay.
15   A. All right go ahead sorry.
16   Q. That's no problem. I just found the call. There
17  was actually a call on September 6th, 2017 and it was
18  really -- all the call was was a lot of questions on how
19  to make a payment for the business card and the Sapphire
20  account. You did actually mention one thing when she
21  said two accounts (inaudible) want to check on to make a
22  payment on, you didn't (inaudible) making payments from
23  the business card and, you know, they mentioned oh are
24  we sending it to -- is this your, you know, correct
25  email address; you said correct and they said check the

Page 3

1  spam folder but we can get the payment so you're caught
2  up now. (Inaudible) the Sapphire but you had a business
3  meeting so she said, oh it will just take a moment of
4  your time so we can get one last payment and then you
5  didn't speak about anything further about online things,
6  which really (inaudible) the calls usually just focus on
7  taking (inaudible) if you have any customer service
8  questions you could get transferred. We could get you
9  to customer service, so unfortunately like I said there
10  was nothing actually there that I can use to help with
11  this situation to say, oh we gave the wrong information
12  about a user ID or something like that. You know, so
13  unfortunately, that was kind of a dead end, but the
14  overall view like I said I looked over everything just
15  to see if there was any research that I could have done
16  but all of (inaudible) when we looked at the account we
17  can see that these alerts had gone out and the
18  information was right and the payments were just not
19  received during that time. I know you said the money
20  was no issue (inaudible), you know, if you knew it was a
21  different account at the time you would have just paid
22  it, but (inaudible) and we do have to report accurately
23  and make sure (inaudible).
24   A. Okay. So let me make sure I -- let me recap.
25   Q. Sure. Sure.

Page 4

1    A. So you found audio of the September 6th
2  conversation -- I think you said September 6th
3  conversation that I had and there was no mention of a --
4  of the -- I'm not sure I got everything. You said there
5  was or was not a mention of the Chase business Inc not
6  showing up in my account or me not receiving statements
7  or?
8    Q. Yeah, there's no conversation about like the
9  profile at all. You did mention that there were, you
10  know, that you weren't receiving statements especially
11  since you have paperless statements and they verified
12  your email address and you said yes. Then they advised
13  you to, you know, to check -- make sure you check your
14  spam, make sure it's not going there, and (inaudible) at
15  this point, you know, payments to get you caught up on
16  the business card. So then there was no follow-up
17  questions after that going into like services online to
18  go into that any further (sic).
19   A. Okay but I did make a payment then, right?
20   Q. Yes, you did make a payment at that point on
21  September 6th so that was when, kind of looking at the
22  history that's when I saw (inaudible) a call there
23  because, you know, payment was made, it was transferred
24  (inaudible) past due which led to the charge off.
25   A. Okay. I'm just processing this sorry.

Page 5

1    Q. You're fine.
2    A. Okay. So it still sounds to me like a big part
3  of the problem here is that I had two accounts, right?
4  I wasn't aware of them for whatever reason. You know --
5    Q. The only way those can be created is by you
6  through the Chase website.
7    A. Right. Yeah I'm sure that's the case or I'm sure
8  you guys didn't create it on behalf of me or something.
9    Q. (Inaudible).
10   A. But I have -- so, you know, when I log into the
11  Chase business Inc to that account, the accounts don't
12  show up. And your explanation makes sense, right, you
13  know, the account has since been charged off, so it's
14  not going to show up there but your website is really
15  buggy, right? Like it's not, you know, I've tried to
16  update my mailing list sometimes and I'll get an error
17  saying -- I don't know what it says but basically the
18  website doesn't quite work. So I'm kind of skeptical
19  that -- I know that I never logged into -- well okay
20  here's the question for you: Can you see if I ever
21  logged into this second account after it was created on
22  the 4th?
23   Q. Yeah, the last login was April 7th -- if you
24  don't mind actually if I go back I might be able to see
25  (inaudible) but it was either April 4th or April 7th

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313.567.8100

JOHNSON00127

**Phone Call Part 2**
06/12/2018
Pages 14..17

Page 14

1   Q. Oh yeah. Just a second here. It's 866 -- sorry.
2   I was giving you the payments number. The executive
3   office is 847-787-5509.
4   **A. Okay that was 1-847-787-5509?**
5   Q. Perfect. You got it.
6   **A. Okay.**
7   Q. I can give you the address too. Did you want the
8   address or did you just want to send a fax?
9   **A. The address please.**
10  Q. Yeah. Okay. So this will be, you know,
11  executive office 3415 Vision Drive, V-I-S-I-O-N, Drive.
12  That's Columbus, Ohio, OH, 43219-6009. And with this
13  address we have actually one more line. Mailstop,
14  mailstop is one word, OH 4-7120. I'll repeat that for
15  you.
16  **A. Okay. It's 3415 Vision Drive, Columbus, Ohio**
17  **43219-6009 and then on the final line mailstop, one**
18  **word, hyphen OH 4-7120.**
19  Q. (Inaudible) instead of a hyphen between the
20  mailstop and the OH 4 then the hyphen but otherwise it's
21  perfect.
22  **A. Okay. And so if I contact them, so I can just**
23  **send a fax or a letter requesting some conversation and**
24  **when do you think like what's the turn around time for**
25  **that do you think?**

Page 15

1   Q. They're very quick. They're usually within --
2   they're usually within like they will get it and they'll
3   work that right away so I would just ask if you can get
4   a phone call back with that being your correspondence so
5   that way they can get you in. They're pretty good with
6   those. If there's no request for a phone call
7   (inaudible), you know, (inaudible) get a letter back to
8   you but usually (inaudible). So yeah I would request
9   for a -- you'd like a call to (inaudible) and they'll
10  get back to you within a few business days.
11  **A. Okay. And do you have any idea what my odds are**
12  **if I contact this office?**
13  Q. Well like I said everything that I've looked at
14  unfortunately they wouldn't be able to do but like I
15  said (inaudible) department to go to.
16  **A. Okay. All right. And what was your name again?**
17  Q. Sure yeah absolutely my name is Jeremy
18  (inaudible).
19  **A. And which department are you in? I'm just**
20  **keeping notes on my calls.**
21  Q. Sure absolutely. It's nice to be organized,
22  right? That way (inaudible) you have it all straight.
23  I'm in our credit bureau specialist.
24  **A. Okay. All right well thank you Jeremy. I**
25  **appreciate your time.**

Page 16

1   Q. It was my pleasure to go through that with you,
2   Mr. Johnson. And I wish you good luck and I hope you
3   have a great rest of your day, okay?
4   **A. All right. Same to you. Take care.**
5   Q. Thank you. Bye bye.
6       (Phone call concluded.)

Page 17

1   STATE OF MICHIGAN        )
2                            )
3   COUNTY OF WASHTENAW      )
4
5   CERTIFICATE OF NOTARY PUBLIC AND COURT REPORTER
6       I, Caitlyn Hartley, do hereby certify that the
7   foregoing audio sent to me was duly recorded by me
8   stenographically and by me later reduced to typewritten
9   form by means of computer-aided transcription; and I
10  certify that this is a true and correct transcript of my
11  stenographic notes so taken.
12      I further certify that I am neither of counsel to
13  either party nor interested in the event of this cause.
14
15
16
17  Caitlyn Hartley, RPR, CSR-8887
18  Notary Public,
19  Washtenaw County, Michigan
20  My Commission expires: August 15, 2021
21
22
23
24
25

HANSON RENAISSANCE
Court Reporters & Video
hansonreporting.com
313.567.8100

JOHNSON00130

# EXHIBIT I

October 14 2020 CFPB Letter

**Executive Office**
3415 Vision Drive OH4-7120
Columbus, OH 43219

October 14, 2020

Joshua S. Johnson
311 S. Swall Dr., Apt. 204
Los Angeles, CA 90048-6802

**The account is valid and we have updated the credit reporting**

Reference Number:     ECW200819-04763

Dear Joshua S. Johnson:

We are responding to your inquiry about the credit reporting for your credit card account ending in 0256. We appreciate the opportunity to assist you.

We reviewed your account and found that updates were needed for the reporting to the credit reporting agencies. We have sent the updated information to the agencies for their records. The account should show:

- The account closure date was updated to September 15, 2017
- The payment history for March 2018 to show as 151-180 days late
- The payment history for April 2018 to show as 181-210 days late

Allow sufficient time for the updates, then request a new copy of your credit report. If you find an error, let the specific agency know. Here's the contact information for the four credit reporting agencies:

| Equifax | Experian | Innovis | TransUnion |
|---|---|---|---|
| PO Box 740256 | PO Box 9701 | PO Box 1640 | PO Box 2000 |
| Atlanta, GA 30374-0256 | Allen, TX 75013 | Pittsburgh, PA 15230-1640 | Chester, PA 19022-2000 |
| 1-866-349-5191 | 1-800-493-1058 | 1-800-540-2505 | 1-800-916-8800 |
| equifax.com | experian.com | innovis.com | transunion.com |

We found that we are reporting all the other information about your account accurately to the credit reporting agencies. Because the information we send to the credit reporting agencies must accurately reflect your account activity and status, we can't comply with your request for any additional updates.

We reviewed your account and determined it's valid. Here's what we found during our review:

- Payments to the account were made from a checking account in your name

For the above reason, the account isn't fraudulent, and you are liable for the balance.

**We called you about your account**
We made 11 calls to you between September 6, 2017, and May 23, 2018, and we made contact with you 3 times. Due to the amount of time that has passed, we are unable to review the calls. We sent you the enclosed letters dated June 1, 2017, August 2, 2017, September 5, 2017, April 2, 2018, and June 6, 2018, to share with you that a payment was missed or a notification of a possible change in the status of the account.

Your account was enrolled to receive paperless statements on February 17, 2017, and only customers can enroll their account in paperless statements. We have confirmed that the statement notifications were successfully sent to your email and were not returned as being undeliverable. We have enclosed your 2017 and 2018 billing statements for review.

We apologize for any confusion or frustration you experienced in trying to resolve your concern. We were unable to locate any recent calls about your account and the calls we did find noted on your account cannot be reviewed due to the length of time that has passed.

If you have questions about this issue, please call Carla at 1-877-805-8049, extension 1050023663. We accept operator relay calls. Our office is available to help, if needed, Monday through Friday from 8 a.m. to 6 p.m. Eastern Time.

Sincerely,

Card Executive Office
1-800-242-7399
1-847-787-5509 Fax; it's free from any Chase branch
chase.com

cc:            Consumer Financial Protection Bureau, Complaint ID 200819-5382344

Enclosures:  Letters dated June 1, 2017, August 2, 2017, September 5, 2017
             Letters dated April 2, 2018, and June 6, 2018
             Billing statements for 2017 and 2018

Esta comunicación contiene información importante acerca de la cuenta. Si tiene alguna pregunta o necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-800-242-7399, de lunes a viernes de 8 a.m. a 6 p.m., hora del Este.

Other than providing the credit reporting agencies with requests for the changes, deletions, or entries described above, we're not responsible for the actions or omissions of the credit reporting agencies. We can't guarantee, warrant, or take responsibility for the performance of any credit reporting agency in changing, deleting, or making entries in relation to any derogatory credit information.

JOHNSON01487

# EXHIBIT J

All 2018 Calls

## May 21, 2018: Melanie

Robot (00:08):

Welcome to Chase Card Services. Please enter the last four digits of your credit card account number. If you are calling to report your card lost, stolen or damaged, or to check the status of an application, press the pound key. [foreign language 00:00:22] Please enter the last four digits of your credit card account number. To better assist you, please enter the last four digits of the social security number on the account you are calling about. One moment while we connect you with a customer service specialist. This call will be monitored and recorded and your voice may be used for verification.

Robot (01:08):

This call will be monitored and recorded.

Melanie (01:11):

Thanks for calling Chase. My name is Melanie. May I have your name, please?

Josh (01:15):

Joshua Johnson.

Melanie (01:19):

Thank you, Mr. Johnson and how can I help you today?

Josh (01:21):

Um, yeah, so I opened a business card with Chase, um, a few years ago and it doesn't show up in my online account. I don't get, um statements in the mail about it or anything and I tried to cancel it or close it months if not a year ago. Um, I think it's somehow still open though and, um, I'm getting, uh, I got a, blugh, I got a collections notice, um, from like a third party collections agency, uh, recently. I'm also noticing a derogatory mark on my credit report. Um, so I just wanted recall to, uh, inquire about that.

Melanie (02:02):

Okay. Sorry to hear about that. Just a moment. Okay. I do see, but those tend to be in general by our, um, recoveries team. So let me go ahead and give you the number that you can call, um, so that they can address you concerns, okay?

Josh (02:16):

Okay. Thanks.

1

# May 21, 2018: Percy, Catherine

Chase (00:04):

...for calling Chase Services Recovery Department. This call will be monitored or recorded.

Percy (00:13):

Thank you for calling Chase Card Services, you're speaking to Percy. My ID is U438163. This call will be monitored or recorded. Can you please help me with your 16 digit credit card number?

Josh (00:28):

I don't have the credit card number.

Percy (00:29):

That's okay, I can try to bring up the information with your socials.

Josh (00:34):

Do you need the last four digits or the entire number?

Percy (00:37):

Um, in order for me to retrieve information I'll need the entire nu... socials.

Josh (00:41):

[SSN].

Percy (00:44):

Thank you, please give me a minute here while I retrieve information. And... any chance would you happen to know the last four digits of the credit card number you're calling about?

Josh (01:01):

I do not.

Percy (01:05):

'Kay, and uh, and what's your name, please?

Josh (01:10):

Joshua Johnson.

Percy (01:12):

1

Um, so that, that's issue... there's kind of two related issues. So that's, that's one issue, okay? And then, uh, the second issue i- is related to the same account. Um, I got a letter from a collections agency uh, earlier this week um, saying I owe like 500 dollars to Chase and it was in reference to this account, um, and then I also checked my credit report and saw that, you know, there's a derogatory mark for like, like 120, 180 day late payment. Um, or that it's never been made and then I also noticed that the uh, counter to what the reps last year said, um, there are two derogatory marks on my report for late payments in 2017.

Josh (08:52):

Um, so, so both of these are, you know the late payments in 2017 and then uh, the fact that the account's been closed or charged off now because of the payment that was never received. Both of those are symptoms of the same root cause, which is, I have no way o- of knowing um, what money I ever owe you guys. Uh, like I don't get statements, the card doesn't show up in my online account. I complained about this, um, and so, it's not fair (laughs) for you guys to mark, you know, to put derogatory marks on my credit uh, report, when you don't notify me that, that I owe you money. Like, I've h- again, I've had Chase accounts for ten years. I've never had a- like, I've never have a problem with paying the bills because when they're due, I pay them.

Josh (09:40):

Um, the problem is, is... I don't know if it's a technical glitch, where it doesn't show up as an account. Um, but the problem is that I just- I don't receive statements from you guys. Um, and so, like resolution to me here is getting these marks, uh, removed from my credit report.

Catherine (09:59):

Okay, and just um, it looks like you made two payments. You made one in June of 2017 and then you called in on- uh, September of 2017 and you made a payment for $111.49. At that time you were aware that you weren't getting statements, you weren't able to view them online?

Josh (10:17):

That's correct.

Catherine (10:19):

And then I mean, you made $111.49 and you still had a balance. The due balance was $345.97. Were you aware you still had a balance on the account?

Josh (10:27):

Uh, I was not.

Catherine (10:30):

And you made the payment?

5

Josh (10:32):

Uh, th- that's correct, I-

Catherine (10:33):

How, how did you know to make that amount?

Josh (10:36):

So, I don't have a log of the call back then, um, I can just tell you my history, which is like, when there's a bill due I pay it in full. Um, I have plenty of money, I don't like, pay partial bills. So it, the only possible explanation for making a partial payment would be that was what I- was represented to me on the phone is, is what I needed to pay. Does that, does that make sense?

Catherine (11:02):

I'm not seeing any, yeah, I'm just not seeing any kind of bank error here. You get your statements online, uh, we have your email address. I'm not showing any kind of returns or anything. I'm showing you updated the address back in the beginning of this year.

Josh (11:19):

Um, I didn't explicitly update y- my mailing address. Uh, I had moved in the last, maybe six months. Um, I'm sure you got a notice from USPS. Ah, y- y- you said that I, I've been getting online statements though, th- tha- that's not true. Um, I- I, that's the problem here is I- I've never received a statement, um, online from you guys with regards to this account. Whereas I do receive statements for my other Chase credit cards.

Catherine (11:48):

Yeah, I'm showing that we just have that for online. I don't know if you need to check your spam or trash, I don't know.

Josh (11:56):

Yeah, I mean, I'm looking through my email right now. You know, I'm looking for Chase Business Ink and I have, I have two emails from Chase Ink. Um, I've got an email on January 9th, which is welcome to Ink Business Preferred, and then one on the 13th of January from last year, thank you for choosing Business Ink Preferred. And those are the only two uh, emails from Chase Ink that I, that I have.

Catherine (12:31):

And what's your email address?

Josh (12:33):

My email is josh@jj88.org. And, and that email, you know, it, it hasn't changed in, in years.

6

Catherine (12:44):

Yes. [inaudible 00:12:45]. So last time we spoke to you was back in September, you haven't called in all this time? It's been almost a year.

Josh (12:57):

I haven't been using the card. So I had no reason to believe that, that there would be um, uh, charges. I mean, th- the first, the, the first very first time I was aware that there was an issue was uh, when I received this collections notice in the mail, um, earlier this week.

Catherine (13:19):

I'm just not seeing any kind of bank error, I'm not showing a bank error, just efforts for us to collect.

Josh (13:28):

So, the fact that I signed up for online billing and I can't see my account, I have no way to pay the account online. I can't see the account listed here. If that- I'm looking at my online account right now, I see three credit cards. I see a Southwest Rapid Rewards, current balance zero. Chase Freedom, current balance zero. Chase Sapphire, current balance, zero. I don't see a Chase Business Ink. And, and again, this is an issue I called about in the past, and, and has not been corrected by you guys.

Catherine (13:56):

Well when did you call, because the last we spoke to you was back in September when you made a payment for 111.45. That's the only time we ever spoke to you.

Josh (14:04):

I've called at least twice about it and, and both, and both times would have been in tw- in 2017. Um, September sounds roughly right, but I'm, you know, I don't know. And again, the r-

Catherine (14:13):

The 6th is when you spoke to somebody.

Josh (14:13):

I'm sorry?

Catherine (14:21):

September the 6th is when you called in and made that payment.

Josh (14:24):

Yeah, that, that sounds about right an- and it, that was probably one of the-

# May 21, 2018: Anon, Linda

Josh (00:00):

Any what?

Anon (00:01):

If you also have any middle initials.

Josh (00:04):

S for Stanfield.

Anon (00:07):

Okay. Thank you. And, uh, Mr. Johnson, uh, do you have the last four digits of your credit card number?

Josh (00:14):

I do not.

Anon (00:23):

And, uh, if I may have the last four digits of your Social Security number, Mr. Johnson.

Josh (00:29):

4910.

Anon (00:33):

Thank you for verifying. Allow me just one moment, okay? And again, my ask you the purpose of the call. What exactly are you calling about?

Josh (00:46):

Uh, sure. So I have, um ... Oh, just a second. Um, I opened a business credit card with Chase, um, several years ago, and, um, it does not show up in my online chase account. Um, so when I log into my Chase account online I see, um, like a, you know, a zero dollar balance for any credit card that I have through Chase with the exception of this one, um, however. And, and I called maybe a year ago to, to intend to close the account and also to get it to show up in my online account. Um, I don't receive statements, uh, in the mail either.

Josh (01:28):

Anyway, um, I got a collections notice, uh, in the mail recently, um, and I've also noticed derogatory marks on my credit report. Um, so I just, I wanted to, uh, attempt to get those things resolved.

Josh (17:05):

So this has been an issue since I opened the card. Um, I called Chase several time about this, about the fact that I was not receiving statements, about the fact that, uh, the credit card account doesn't show up online and my only way to pay the bill was over the phone. Um, I've tried with no avail to get this to show up, uh, you know, online on the account.

Linda (17:23):

Mm-hmm (affirmative).

Josh (17:24):

Um, months a, months ago this resulted in a few late payments because I don't know ... I don't receive a bill from you guys for that account. Um, so, you know, when I found out about this I paid it as soon as possible over the phone, um, and confirmed with the rep that, that that late payment wouldn't show up, you know, on my report.

Josh (17:44):

Um, anyway, so that's maybe six months ago. So, so I also requested at the time that the account be closed. Um, so fast forward to, to today. Um, I get a collections notice from some agency for a Chase account. Uh, I check my credit report and not only do I see that there is, uh, like a balance due on this Chase credit card account and it's, you know, past due 120 [inaudible 00:18:12] some days, I've also got late reports from 2017, uh, when I called Chase and con- and attempted to confirm that there would not be these, um, marks.

Josh (18:25):

So, uh, yeah, so my goal in talking to you, um, is to get these marks removed. Um, you know, I ... The problem is not with me paying the bill. The problem is with, with Chase making it clear to me that I owe you guys money (laughs) when I don't receive statements in the mail. It doesn't show up on the account.

Linda (18:45):

Mm-hmm (affirmative).

Josh (18:45):

Um, and I've requested that, that the card be closed. Does that make sense to you?

Linda (18:52):

Well, yes. And, uh, you ... When, you told us you don't want to have this reported, what was our response? What, uh, did we tell you?

Josh (19:04):

I'm also looking on the account and I see that we've tried several times to reach out to you. We had communication with you back in September where you made small, a small payment, and, uh, let me get the list. September and there were several points where we tried calling. There was no, no contact with you. And so, I don't see anywhere on here where you called in for any type of, uh, problem with the account. Uh, let me see here. Uh-

Josh (21:07):

So, so, so, uh, I 100% called and I'm positive of that because there was no other way for me to make a payment for one other than by calling Chase.

Linda (21:15):

Mm-hmm (affirmative). That was back in September when you made your last payment.

Josh (21:21):

Yeah, that timeline. Yeah, that sounds about right.

Linda (21:28):

Mm-hmm (affirmative). Mm-hmm (affirmative). So, I mean, you were clearly aware that you had a balance left on the account. I mean, you chose not to pay it. So-

Josh (21:32):

Clearly aware when?

Linda (21:32):

... I mean, there's nothing ...

Josh (21:34):

I'm not clearly aware.

Linda (21:40):

... [crosstalk 00:21:40].

Josh (21:40):

I wasn't. It ... No. At no point have I ever been clearly aware there was a balance left on the account. (laughs) At any, any point has Chase-

Linda (21:49):

[crosstalk 00:21:49] small payment.

Josh (21:49):

# May 21, 2018: Jayshwan, Tom

Robot (00:00):

... you for calling to Chase Card Services Recovery Department. This call will be monitored or recorded. Your call is important to us. Please wait on the line for the-

Jayshwan (00:16):

Thank you for calling Chase Card Services. My name is [Jayshwan 00:00:19]. My ID is [inaudible 00:00:21] 95778. This call is being monitored and recorded. May I have your 16 digit account number, please?

Josh (00:29):

I only know the last four digits.

Jayshwan (00:33):

And the last four digits, sir?

Josh (00:41):

Ze-... O256.

Jayshwan (00:41):

0256. Okay. Please can you help me with your Social Security number [inaudible 00:00:44].

Josh (00:45):

[SSN].

Jayshwan (00:45):

I'll repeat that. That's [SSN].

Josh (00:45):

That's correct.

Jayshwan (00:59):

[inaudible 00:00:59]. Okay? Thank you. (silence). Thank you very much for your patience. I'm sorry for keeping you waiting for a long time. May I have your name, please?

Josh (00:59):

Josh.

1

because I signed up for paperless statements and, and, um, uh, paying through, through the online system.

Josh (08:24):

So, I called, um, several times about this in 2017. Um, there was, like, a couple of late payments that resulted, uh, due to not being able to see the account online. Um, and so, uh, either Chase called me or I called Chase and, you know, payments were made over the phone. Um, anyway, um, so I haven't been using the credit card for, um, you know, six months or more. So, uh, it's kind of been out of sight. And I guess last week, I got a, uh, physical piece of mail from a collection agency saying I owe Chase $500 or so, uh, in reference to this account. And so, that's kinda what initiated me calling you guys about this.

Josh (09:12):

Um, so, uh, my email address is correct. Um, and this was one thing that when I talked to the previous, uh, representative, we, we, like... I, I don't think I had all the information. So, um, previously I told her that I wasn't getting any statement emails from Chase. Um, so that's not completely, uh, accurate, so I looked through my emails. So what I actually got from you guys was, um, basically every month, I get several emails from Chase saying, "Your credit card account statement is available online." So I get one of these emails for each of my credit card accounts. So, um, like, they'll say, "The statement for your credit account ending in, uh, 1234 is now available online. Go to chase.com to view it." There's no reference to, you know, the amounts owed or whether there is an, an amount that's owed.

Josh (10:11):

Um, so, yeah. So, I've been getting these emails. I'll go to chase.com and, um, there's a $0 balance listed for all the accounts that, that appear. Um, so, y- yeah. So, again, the problem is that I have not been receiving any sort of statements from you guys. I've been getting emails from you guys saying the statement for my credit account is available online, uh, which is not true. Uh, you know, when I log into my account, I see a-

Tom (10:41):

Well, yeah. Because the, the... Yeah. 'Cause the account's charged off. And so, once the account's charged off, you know, you no longer have access to being able to see that online anymore.

Josh (10:52):

Sure. So, a-... So, what... So, that makes sense and that's what the last rep said too. Um, but the key point here is that this hasn't been an issue only since the card, the card was charged off. Um, I have not been able to view the Business Ink card through my online account since I opened the card in early 2017. And I called Chase in reference to this problem several times in, in 2017.

Tom (11:13):

# <u>May 23, 2018: Catherine</u>

Josh (<u>00:04</u>):

Hello?

Catherine (<u>00:04</u>):

Good afternoon. May I speak to Joshua Johnson?

Josh (<u>00:07</u>):

May I ask who's calling?

Catherine (<u>00:09</u>):

Yeah, this is Catherine, supervisor.

Josh (<u>00:13</u>):

Hey, how are you?

Catherine (<u>00:13</u>):

And this call will be recorded or monitored.

Catherine (<u>00:14</u>):

Hello, are you Joshua Johnson?

Josh (<u>00:16</u>):

Yes.

Catherine (<u>00:17</u>):

Hello sir. Uh, I do you have to give you my ID. [inaudible 00:00:20] 5-5-3-3-7-6.

Josh (<u>00:22</u>):

Okay, uh-

Catherine (<u>00:23</u>):

And I'm calling-

Josh (<u>00:24</u>):

Just let me get a piece of paper real quick.

1

# June 7, 2018: Stephanie, Albina, Felicia

Robot (00:07):

Welcome to Chase Card Services Pay by Phone System. Please enter the last four digits of your credit card account number.

Robot (00:16):

[Spanish 00:00:16].

Robot (00:31):

Please hold while I transfer your call. This call will be monitored or recorded. Please have your account number ready so we may better assist you.

Robot (00:43):

Thank you for calling the Chase Card Services Recovery Department. This call will be monitored or recorded.

Stephanie (00:49):

Thank you for calling Chase Card Services, my name is Stephanie. My ID is 3325806. This call will be monitored or recorded. May I know the credit card number please?

Josh (01:07):

Uh, I don't know the full number, but the last four digits are 0-2-5-6.

Stephanie (01:12):

And is the account under your name, sir?

Josh (01:14):

Yes, it is.

Stephanie (01:17):

Okay. Can you help me with your full social security? I can bring it up with that.

Josh (01:34):

[SSN].

Stephanie (02:07):

You said [SSN]?

1

# June 7, 2018: Sabitha, Vanessa, Felicia

Robot (00:07):

Welcome to Chase Card Services pay by phone system. Please enter the last four digits of your credit card account number. [Spanish 00:00:17].

Robot (00:30):

Please hold while I transfer your call. This call will be monitored or recorded. Please have your account number ready so we may better assist you.

Robot (00:42):

Thank you for calling the Chase Card Services recovery department. This call will be monitored or recorded.

Sabitha (00:58):

Thank you for calling Chase [inaudible 00:00:59]. My name is Sabitha [inaudible 00:00:59] and this call will be monitored or recorded. May I have your 16 digit credit card number please?

Josh (01:05):

I don't know the full number. I know the last four digits which are 0256.

Sabitha (01:10):

0256, thank you. May I have your social security number please?

Josh (01:14):

[SSN].

Sabitha (01:20):

[SSN]-

Josh (01:22):

No. [SSN].

Sabitha (01:28):

Thank you. 0256, right? May I have your name please?

Josh (01:49):

Joshua Johnson.

# May 30, 2018: Manny

Josh (00:02):

Hello.

Manny (00:04):

Uh, hello. [inaudible 00:00:05] to Joshua Johnson?

Josh (00:06):

May I ask who's calling?

Manny (00:08):

Uh, this call is being monitored and recorded. My name is Manny. I'm an account manager here at Chase client services my ID is the letter Q-zero-two-six-eight-six-six for a Mr. Joshua, uh, Joshua Johnson.

Josh (00:14):

Hey, this is him.

Manny (00:14):

Oh it's him, oh thank you, thank you Mr. Johnson for taking my call here today. This is actually just, uh returning a phone call. I know that you, we spoke with you last week, uh, and you spoke with the supervisor in reference to, uh, your account, your Chase, I think it's a business account ending in 0256. Uh, you had your company speak to the manager in reference to the account status and currently where it's at at this time, uh, and the reason for our phone call today to see what we can do here to help you out in reference to [inaudible 00:00:49].

Josh (00:50):

Okay, cool. Um, give me just a minute to grab, uh, a pen and piece of paper.

Manny (00:53):

Okay.

Josh (01:41):

Okay, all right. Um, do you [crosstalk 00:01:46] need me, need me to fill you in on the context or-

Manny (01:49):

I'm going through the information here, um, of course was brought to my attention then, you're inquiring regarding the status of the account right now it is currently charged off. You did mention

1

1          AMERICAN ARBITRATION ASSOCIATION

2

3    JOSHUA JOHNSON,

4              Claimant,

5     -vs-                    AAA Case: 01-20-0015-1734-2-PA

6

7    JPMORGAN CHASE BANK, N.A.,

8              Respondent.

9    _____/

10   PAGE 1 TO 17

11

12       Phone call part 2 between Jeremy (from Chase) and

13       Joshua Johnson,

14       Commenced on June 12, 2018,

15       Transcribed by Caitlyn Hartley, RPR, CSR-8887.

16

17

18

19

20

21

22

23

24

25



1              AMERICAN ARBITRATION ASSOCIATION

2

3    JOSHUA JOHNSON,

4              Claimant,

5     -vs-                    AAA Case: 01-20-0015-1734-2-PA

6

7    JPMORGAN CHASE BANK, N.A.,

8              Respondent.

9    _____/

10   PAGE 1 TO 17

11

12      Phone call part one between Jeremy (from Chase)

13      and Joshua Johnson,

14      Commenced on June 12, 2018,

15      Transcribed by Caitlyn Hartley, RPR, CSR-8887.

16

17

18

19

20

21

22

23

24

25



# EXHIBIT K

CFPB Complaint



B. BURDA - 30(B)(6)
10.23.23
**Exhibit 20**
Michelle L. Goehring

 An official website of the United States Government



‹ Active complaints

# 200819-5382344

## Primary consumer information

**FULL NAME**
Joshua Stanfield Johnson

**PHONE**
█████2594

**EMAIL ADDRESS**
josh@jj88.org

**ADDRESS**
311 S Swall Dr Apt 204
Los Angeles, California 90048
United States

### Methods of identification provided by the consumer

**DATE OF BIRTH**
1988-███

**NAME AS IT APPEARS ON CREDIT REPORT**
Joshua Johnson

**SOCIAL SECURITY NUMBER (LAST FOUR)**
4910

## Product information

R0000103
**CONFIDENTIAL**          CHASE00103

**PRODUCT OR SERVICE**

Credit reporting, credit repair
services, or other personal
consumer reports (Credit
reporting)

**ISSUE**

Incorrect information on your
report
Account status incorrect

**FCRA CONSENT PROVIDED**

Yes

**CONSUMER IDENTIFIED
COMPANY NAME**

CHASE JP MORGAN

# What happened

R0000104
CONFIDENTIAL                                                        CHASE00104

I opened a second Chase credit card in late 2017. I used the card for a few months, paying off the balance in entirety each month, and then ceased usage of the card entirely. The revolving credit account now appears on my credit report, showing that the account was "charged off", with a final balance of $500, and several missed payments. Chase never sent a paper bill, never called, never emailed, or otherwise attempted to make me aware in any way that the account carried a balance while the account was open (and, if any transactions were made, I did not make them). I regularly logged into my Chase account online and regularly observed a balance of $0. I have spent many hours on the phone with Chase over the years attempting to resolve this, to no avail. I'm unable to attach any documentation showing the balance of $0 as the account is closed and I'm no longer able to log in.

**ALREADY ATTEMPTED TO FIX THIS ISSUE WITH THE COMPANY?**

Yes

**ATTACHMENTS**

equifax_credit_report.pdf (354.2 KB)

Download all attachments

---

# Desired resolution

---

All derogatory marks related to the account removed from my credit report (all three bureaus).

---

R0000105
**CONFIDENTIAL**                                                                  CHASE00105

# Response recipients

**SUBMITTED BY**

Primary consumer

**WHO WILL RECEIVE RESPONSES?**

Primary consumer

# What is the company's response?  Response definitions

○ In progress

○ Closed with explanation

○ Closed with monetary relief

○ Closed with non-monetary relief

○ Alerted CFPB

○ Duplicate CFPB complaint reported

○ Incorrect company

○ Sent to regulator

CONFIDENTIAL                                   CHASE00106

**COMPLAINT STATUS**

**COMPLAINT STATUS**

Pending Action By Company

**SENT TO COMPANY**

08/19/2020 14:40 ET

**DUE DATE**

09/03/2020

**ACTIONS**

✎ Respond

🖶 Print

Terms of service (terms-of-service)

🇺🇸   An official website of the United States Government

R0000107
CHASE00107

**CONFIDENTIAL**

# EXHIBIT L

Notice of Dispute

# NOTICE OF DISPUTE & INTENT TO ARBITRATE

08/25/2020

JPMorgan CHASE Bank
JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
c/o CT Corporation System, 818 W. 7th St STE 930
Los Angeles, CA 90017

**Re: Joshua Johnson Dispute**

Claim ID:                            JPM200824-1

Claimant's Name:                     Joshua Johnson

Claimant's Address:

Claimant's Email:                    

Claimant's Phone:

To Whom it May Concern:
I am writing to inform you of the following dispute:

**A. Description of Dispute**

I opened a Chase credit card in late 2017. I used the card for a few months, paying off the balance in entirety each month, and then ceased usage of the card entirely. The revolving credit account now appears on my credit report, showing that the account was "charged off", with a final balance of $500, and several missed payments (the only derogatory mark on my report in ~15 years).

Chase never sent a paper bill, never called, never emailed, or otherwise attempted to make me aware in any way that the account carried a balance while the account was open. I regularly logged into my Chase account online and regularly observed a balance of $0. I don't even know what transactions were purportedly made, as I never received any statement from Chase.

I have spent many hours on the phone with Chase over the years attempting to resolve this, to no avail. I'm unable to attach any documentation showing the balance of $0 as the account is closed and I'm no longer able to log in.

My social security number is 

Claimant identified the follo
Put incorrect info on my credit report

**B. Request for Relief (if blank, TBD)**

**C. Requested Monetary Relief (if blank, TBD)**

- Requested Refund: $0.00
- Requested Debt Relief: $500.00
- Credit report corrected/repaired

**D. Next Steps**

This Notice of Dispute was generated through the FairShake platform. If this dispute has not been resolved within your contractual pre-arbitration notice period, if any, I may automatically file a Demand For Arbitration with the American Arbitration Association or JAMS (as applicable) through the FairShake platform.

Sincerely,

Joshua Johnson
josh@jj88.org

JOHNSON07688

# EXHIBIT M

Responses to Interrogatories

1  **DYKEMA GOSSETT** LLP
   ASHLEY R. FICKEL, State Bar No. 237111
2    *AFickel@dykema.com*
   ROBERT A. HYATT, State Bar No. 166178
3    *RHyatt@dykema.com*
   444 South Flower, Suite 2200
4  Los Angeles, California 90071
   Telephone: (213) 457-1800
5  Facsimile: (213) 457-1850

6  Attorneys for Defendant,
   JPMORGAN CHASE BANK, N.A.

7

8              **UNITED STATES DISTRICT COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10

11 JOSHUA JOHNSON,                    Case No. 2:22-cv-06718-AB-MAAx

12          Plaintiff,                The Hon. André Birotte Jr.
                                      Courtroom 7B
13      v.
                                      Magistrate Maria A. Audero
14 JPMORGAN CHASE BANK, N.A.,         Courtroom: 690

15          Defendant.               **DEFENDANT JPMORGAN CHASE
                                     BANK, N.A.'S AMENDED
16                                   RESPONSES TO PLAINTIFF'S
                                     INTERROGATORIES, SET ONE**
17
                                     Complaint Filed: September 19, 2022
18

19 PROPOUNDING PARTY:      Plaintiff, JOSHUA JOHNSON

20 RESPONDING PARTY:       Defendant, JPMORGAN CHASE BANK, N.A.

21 SET NO.:                ONE

22              **PRELIMINARY STATEMENT**

23      Pursuant to Fed. R. Civ. P. 33(b), Defendant JPMORGAN CHASE BANK,

24 N.A. ("CHASE") submits the following amended answers and objections to Plaintiff

25 JOSHUA JOHNSON'S ("Plaintiff") Interrogatories, Set One:

26      The following answers have been prepared prior to the completion of Chase's

27 investigation, discovery, and preparation for trial in this action. The answers are

28 based solely on information, facts, and documents available and known to Chase as

of the date of these answers.  Investigation and discovery are continuing, and Chase reserves the right to amend, modify, or supplement its answers at any time prior to the trial of this action.  Chase also reserves its right to rely upon or introduce into evidence any additional information, facts, or documents not contained in these answers.

These answers are made in a good faith effort to supply as much information as is presently known, but shall in no way lead to the prejudice of Chase in relation to further discovery, research, or analysis.  Chase's answers to the Interrogatories are for the purpose of discovery only, and are not an admission that any answer, fact, or document is relevant or admissible into evidence.  Chase reserves the right to object to the relevance and admissibility of any answer, fact, or document and the truth or accuracy of any purported facts or characterizations contained in the Interrogatories themselves.

## OBJECTIONS TO DEFINITIONS

1.      The Definition of "Document" exceeds the scope of Fed. R. Civ. P. 34. Chase will apply the definition consistently with the scope of the rule and applicable law governing possession, custody, and control of materials sought in discovery.

2.      To the extent that "Document" is construed to include data from sources that are not "reasonably accessible" as defined by Fed. R. Civ. P. 26(b)(2)(B), Chase objects to such sources as being outside the scope of civil discovery.

3.      Chase objects to the definition of the term "Concerning" as vague, overly broad, and unduly burdensome, particularly where it is based on the terms "reflecting," "constituting," "evidencing," or "supporting" and therefore describes an indefinite class of documents. Chase will apply "Concerning" to mean materials that explicitly discuss or are reasonably identifiable by Chase with the subject matter of a request.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DEFENDANT JPMORGAN CHASE BANK, N.A.'S AMENDED RESPONSES TO PLAINTIFF'S INTERROGATORIES,
SET ONE

**DYKEMA GOSSETT LLP**
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

## GENERAL OBJECTIONS

The following general objections apply to, and are asserted with respect to, each of the Interrogatories:

1.    The Interrogatories seek documents outside the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1) and 33(a)(2).

2.    The Interrogatories, including any purported instructions and definitions, impose obligations inconsistent with Fed. R. Civ. P. 26(b)(1).

3.    The Interrogatories seek discovery of information protected against disclosure by the attorney-client privilege or attorney work-product doctrine.  Fed. R. Civ. P. 26(b)(3)(A) and 26(b)(5).

4.    The Interrogatories seek information unreasonably duplicative of information already in possession of Plaintiff.

5.    The Interrogatories seek information obtainable from another source that is more convenient, less burdensome, or less expensive.

6.    The Interrogatories seek information that is confidential and/or proprietary and the parties need to meet and confer with respect to an appropriate protective order.

These general objections applies to each and every one of Plaintiff's Interrogatories, Set One.

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

State the basis for CHASE's determination, after its investigation of the DISPUTE, that reporting Plaintiff's Chase Ink credit card account as delinquent to CREDIT REPORTING AGENCIES prior to September 2020 was an accurate report of information.

### RESPONSE TO INTERROGATORY NO. 1:

Chase objects to this interrogatory, because Chase completed its investigation into the Dispute on September 8, 2020 and this action was not commenced within 2

years and therefore, on information and belief, is untimely and barred by the statute of limitations. Chase objects to this Interrogatory as vague and ambiguous, because Chase does not "report" information to the credit reporting agencies, but instead furnishes information to the credit reporting agencies. Chase objects to this Interrogatory as vague and ambiguous as the term "delinquent" is undefined and subject to multiple interpretations. Chase objects to this Interrogatory, because the Dispute and Chase's response to the Dispute did not use the term "delinquent."

Chase objects to this interrogatory on the basis that Plaintiff previously fully raised these issues in the Arbitration before the American Arbitration Association titled, *In the matter of the Arbitration between Joshua Johnson vs. JPMorgan Chase Bank N.A.*, case number 01-20-0015-1734 (the "Arbitration"). Plaintiff's Amended Claim in the Arbitration asserted incorrect reporting by Chase that the account was delinquent. Following extensive document discovery, four days of evidentiary hearings, numerous conference calls with the Arbitrator, volumes of evidence, and at least ten legal briefs, Arbitrator Charles R. Holton issued an Arbitration Award on March 3, 2022 (the "Arbitration Award") finding that Johnson failed to carry the burden of proof and that "Johnson presented no evidence that his Ink account statements were not available from March, 2017 at least through Sept., 2017 on the separate account website access that he had set up and then apparently forgot. Chase presented evidence that such statements were available on the Ink account access website. So, there was no showing of failure on the part of Chase to provide access to statements . . ." A copy of the Arbitration Award is produced herewith.

Subject to and without waiving its objections, Chase responds that following its investigation of Plaintiff's Dispute, Chase properly furnished to Equifax that the status of Plaintiff's Chase Ink credit card account was "Account paid in full, was a charge off."

**AMENDED RESPONSE TO INTERROGATORY NO. 1:**

Chase objects to this interrogatory, because Chase completed its investigation

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

into the Dispute on September 8, 2020 and this action was not commenced within 2 years and therefore, on information and belief, is untimely and barred by the statute of limitations. Chase objects to this Interrogatory as vague and ambiguous, because Chase does not "report" information to the credit reporting agencies, but instead furnishes information to the credit reporting agencies. Chase objects to this Interrogatory as vague and ambiguous as the term "delinquent" is undefined and subject to multiple interpretations. Chase objects to this Interrogatory, because the Dispute and Chase's response to the Dispute did not use the term "delinquent."

Chase objects to this interrogatory on the basis that Plaintiff previously fully raised these issues in the Arbitration before the American Arbitration Association titled, *In the matter of the Arbitration between Joshua Johnson vs. JPMorgan Chase Bank N.A.*, case number 01-20-0015-1734 (the "Arbitration"). Plaintiff's Amended Claim in the Arbitration asserted incorrect reporting by Chase that the account was delinquent. Following extensive document discovery, four days of evidentiary hearings, numerous conference calls with the Arbitrator, volumes of evidence, and at least ten legal briefs, Arbitrator Charles R. Holton issued an Arbitration Award on March 3, 2022 (the "Arbitration Award") finding that Johnson failed to carry the burden of proof and that "Johnson presented no evidence that his Ink account statements were not available from March, 2017 at least through Sept., 2017 on the separate account website access that he had set up and then apparently forgot. Chase presented evidence that such statements were available on the Ink account access website. So, there was no showing of failure on the part of Chase to provide access to statements . . ." A copy of the Arbitration Award is produced herewith.

Subject to and without waiving its objections, pursuant to Federal Rule of Civil Procedure 33(d)(1) Chase directs Plaintiff to the previously produced document marked CHASE00113-00114.

**INTERROGATORY NO. 2:**

State the basis for CHASE's determination, after its investigation of the

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

1  DISPUTE, that reporting Plaintiff's Chase Ink credit card account as delinquent to

2  CREDIT REPORTING AGENCIES prior to September 2020 was a complete report

3  of information.

4  **RESPONSE TO INTERROGATORY NO. 2:**

5         Chase objects to this interrogatory, because Chase completed its investigation

6  into the Dispute on September 8, 2020 and this action was not commenced within 2

7  years and therefore, on information and belief, is untimely and barred by the statute

8  of limitations.  Chase further to this Interrogatory as vague and ambiguous, because

9  Chase does not "report" information to the credit reporting agencies, but instead

10  furnishes information to the credit reporting agencies.  Chase objects to this

11  Interrogatory as vague and ambiguous as the term "delinquent" is undefined and

12  subject to multiple interpretations.  Chase objects to this Interrogatory, because the

13  Dispute and Chase's response to the Dispute did not use the term "delinquent."

14  Subject to and without waiving its objections, Chase refers Plaintiff to its Answer to

15  Interrogatory No. 1.

16  **AMENDED RESPONSE TO INTERROGATORY NO. 2:**

17         Chase objects to this interrogatory, because Chase completed its investigation

18  into the Dispute on September 8, 2020 and this action was not commenced within 2

19  years and therefore, on information and belief, is untimely and barred by the statute

20  of limitations.  Chase further to this Interrogatory as vague and ambiguous, because

21  Chase does not "report" information to the credit reporting agencies, but instead

22  furnishes information to the credit reporting agencies.  Chase objects to this

23  Interrogatory as vague and ambiguous as the term "delinquent" is undefined and

24  subject to multiple interpretations.  Chase objects to this Interrogatory, because the

25  Dispute and Chase's response to the Dispute did not use the term "delinquent."

26         Subject to and without waiving its objections, pursuant to Federal Rule of

27  Civil Procedure 33(d)(1) Chase directs Plaintiff to the previously produced

28  document marked CHASE00113-00114.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

6

**INTERROGATORY NO. 3:**

State the basis for CHASE's determination, after its investigation of the DISPUTE, that reporting that Plaintiff's Chase Ink credit card account "was a charge-off" to CREDIT REPORTING AGENCIES was an accurate report of information.

**RESPONSE TO INTERROGATORY NO. 3:**

Chase objects to this interrogatory, because Chase completed its investigation into the Dispute on September 8, 2020 and this action was not commenced within 2 years and therefore, on information and belief, is untimely and barred by the statute of limitations. Chase objects to this Interrogatory as vague and ambiguous, because Chase does not "report" information to the credit reporting agencies, but instead furnishes information to the credit reporting agencies.

Chase objects to this interrogatory because the Arbitration Award contained findings that Plaintiff failed to carry the burden of proof to show "failure on the part of Chase to provide access to statements" and that "a separate contract transaction occurred between the parties in Sept, 2017 involving the closing of the Ink account and payment thereon. There was a mutual mistake of fact between the parties with Johnson understanding that he was paying the entire balance and Chase understanding that he was paying only the minimum payment. The equitable remedy which I hereby apply is to order that Chase retract and cause to be removed any and all adverse credit references regarding Johnson arising out of the Ink business credit card account within 30 days of payment by Johnson to Chase or its attorney of $238.52 *which Johnson acknowledges he owed as of Sept.6 2017 and which remains unpaid*." (emphasis added). Further answering, Chase states that Johnson has still not paid the $238.52 to Chase or its attorney.

Subject to and without waiving its objections, Chase refers Plaintiff to its Answer to Interrogatory No. 1.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

7

**AMENDED RESPONSE TO INTERROGATORY NO. 3:**

1 
2          Chase objects to this interrogatory, because Chase completed its investigation

3 into the Dispute on September 8, 2020 and this action was not commenced within 2

4 years and therefore, on information and belief, is untimely and barred by the statute

5 of limitations.  Chase objects to this Interrogatory as vague and ambiguous, because

6 Chase does not "report" information to the credit reporting agencies, but instead

7 furnishes information to the credit reporting agencies.

8          Chase objects to this interrogatory because the Arbitration Award contained

9 findings that Plaintiff failed to carry the burden of proof to show "failure on the part

10 of Chase to provide access to statements" and that "a separate contract transaction

11 occurred between the parties in Sept, 2017 involving the closing of the Ink account

12 and payment thereon.  There was a mutual mistake of fact between the parties with

13 Johnson understanding that he was paying the entire balance and Chase

14 understanding that he was paying only the minimum payment. The equitable remedy

15 which I hereby apply is to order that Chase retract and cause to be removed any and

16 all adverse credit references regarding Johnson arising out of the Ink business credit

17 card account within 30 days of payment by Johnson to Chase or its attorney of

18 $238.52 *which Johnson acknowledges he owed as of Sept.6 2017 and which*

19 *remains unpaid*."  (emphasis added).  Further answering, Chase states that Johnson

20 has still not paid the $238.52 to Chase or its attorney.

21          Subject to and without waiving its objections, pursuant to Federal Rule of

22 Civil Procedure 33(d)(1) Chase directs Plaintiff to the previously produced

23 document marked CHASE00113-00114.

**INTERROGATORY NO. 4:**

25          State the basis for CHASE's determination, after its investigation of the

26 DISPUTE, that reporting that Plaintiff's Chase Ink credit card account "was a

27 charge-off" to CREDIT REPORTING AGENCIES was a complete report of

28 information.

8

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

**RESPONSE TO INTERROGATORY NO. 4:**

Chase objects to this interrogatory, because Chase completed its investigation into the Dispute on September 8, 2020 and this action was not commenced within 2 years and therefore, on information and belief, is untimely and barred by the statute of limitations.  Chase objects to this Interrogatory as vague and ambiguous, because Chase does not "report" information to the credit reporting agencies, but instead furnishes information to the credit reporting agencies.

Subject to and without waiving its objections, Chase refers Plaintiff to its Answer to Interrogatory No. 1.

**AMENDED RESPONSE TO INTERROGATORY NO. 4:**

Chase objects to this interrogatory, because Chase completed its investigation into the Dispute on September 8, 2020 and this action was not commenced within 2 years and therefore, on information and belief, is untimely and barred by the statute of limitations.  Chase objects to this Interrogatory as vague and ambiguous, because Chase does not "report" information to the credit reporting agencies, but instead furnishes information to the credit reporting agencies.

Subject to and without waiving its objections, pursuant to Federal Rule of Civil Procedure 33(d)(1) Chase directs Plaintiff to the previously produced document marked CHASE00113-00114.

**INTERROGATORY NO. 5:**

State all information CHASE considered as part of its investigation into the DISPUTE.

**RESPONSE TO INTERROGATORY NO. 5:**

Chase objects to this interrogatory, because Chase completed its investigation into the Dispute on September 8, 2020 and this action was not commenced within 2 years and therefore, on information and belief, is untimely and barred by the statute of limitations.  Chase objects to this interrogatory as vague and ambiguous as the term "considered" is undefined and subject to multiple interpretations.  Chase

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

**RESPONSE TO INTERROGATORY NO. 8:**

Chase objects to this interrogatory, because Chase completed its investigation into the Dispute on September 8, 2020 and this action was not commenced within 2 years and therefore, on information and belief, is untimely and barred by the statute of limitations.  Chase objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine.  Chase objects to this interrogatory as irrelevant and unduly burdensome and duplicative of the issues raised in the Arbitration.

**AMENDED RESPONSE TO INTERROGATORY NO. 8:**

Chase objects to this interrogatory, because Chase completed its investigation into the Dispute on September 8, 2020 and this action was not commenced within 2 years and therefore, on information and belief, is untimely and barred by the statute of limitations.  Chase objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine.  Chase objects to this interrogatory as irrelevant and unduly burdensome and duplicative of the issues raised in the Arbitration.

Chase and Plaintiff have stipulated regarding discovery responses related to Chase employees.  Chase directs Plaintiff to the JOINT STIPULATION RE EMPLOYEES WITH INFORMATION RE 2020 INVESTIGATION.

**INTERROGATORY NO. 9:**

State the basis for CHASE's contention that its investigation of the DISPUTE was reasonable.

**RESPONSE TO INTERROGATORY NO. 9:**

Chase objects to this interrogatory, because Chase completed its investigation into the Dispute on September 8, 2020 and this action was not commenced within 2 years and therefore, on information and belief, is untimely and barred by the statute of limitations.  Chase objects to this interrogatory as vague and ambiguous as it does not specify where or if Chase has made this "contention".  Chase objects to this

interrogatory on the grounds that Plaintiff previously raised the issues set forth in the Dispute before Arbitrator Holton in the Arbitration and Plaintiff should therefore be estopped from pursuing discovery into these issues in this action.  The Dispute stated that "Chase never sent a paper bill, never called, never emailed, or otherwise attempted to make me aware in any way that the account carried a balance while the account was open. I regularly logged into my Chase account online and observed a $0 balance."  Following extensive document discovery, four days of evidentiary hearings, numerous conference calls with the Arbitrator, volumes of evidence, and at least ten legal briefs, the Arbitration Award contained the Arbitrator's finding that Plaintiff failed to carry his burden of proof and finding that "there was no showing of failure on the part of Chase to provide access to statements and promised tech support."

**AMENDED RESPONSE TO INTERROGATORY NO. 9:**

Chase objects to this interrogatory, because Chase completed its investigation into the Dispute on September 8, 2020 and this action was not commenced within 2 years and therefore, on information and belief, is untimely and barred by the statute of limitations.  Chase objects to this interrogatory as vague and ambiguous as it does not specify where or if Chase has made this "contention".  Chase objects to this interrogatory on the grounds that Plaintiff previously raised the issues set forth in the Dispute before Arbitrator Holton in the Arbitration and Plaintiff should therefore be estopped from pursuing discovery into these issues in this action.  The Dispute stated that "Chase never sent a paper bill, never called, never emailed, or otherwise attempted to make me aware in any way that the account carried a balance while the account was open. I regularly logged into my Chase account online and observed a $0 balance."  Following extensive document discovery, four days of evidentiary hearings, numerous conference calls with the Arbitrator, volumes of evidence, and at least ten legal briefs, the Arbitration Award contained the Arbitrator's finding that Plaintiff failed to carry his burden of proof and finding that "there was no showing

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

1   of failure on the part of Chase to provide access to statements and promised tech

2   support."

3         Subject to and without waiving its objections, pursuant to Federal Rule of

4   Civil Procedure 33(d)(1) Chase directs Plaintiff to the previously produced

5   document marked CHASE00113-00114 and the document entitled "Card Dispute

6   Resolution Processing" (Bates Number  CHASE00161-CHASE01836).

7   **INTERROGATORY NO. 10**:

8         State the basis for CHASE's contention that its investigation of the

9   DISPUTE was non-cursory.

10  **RESPONSE TO INTERROGATORY NO. 10:**

11        Chase objects to this interrogatory, because Chase completed its investigation

12  into the Dispute on September 8, 2020 and this action was not commenced within 2

13  years and therefore, on information and belief, is untimely and barred by the statute

14  of limitations.  Chase objects to this interrogatory as vague and ambiguous as it does

15  not specify where or if Chase has made this "contention".  Chase further objects that

16  Plaintiff should be estopped from pursuing discovery into this issue in this

17  proceeding for the reasons set forth in Chase's answer to Interrogatory No. 9 and

18  refers Plaintiff to its Answer to Interrogatory No. 9.

19  **AMENDED RESPONSE TO INTERROGATORY NO. 10:**

20        Chase objects to this interrogatory, because Chase completed its investigation

21  into the Dispute on September 8, 2020 and this action was not commenced within 2

22  years and therefore, on information and belief, is untimely and barred by the statute

23  of limitations.  Chase objects to this interrogatory as vague and ambiguous as it does

24  not specify where or if Chase has made this "contention".  Chase further objects that

25  Plaintiff should be estopped from pursuing discovery into this issue in this

26  proceeding for the reasons set forth in Chase's answer to Interrogatory No. 9 and

27  refers Plaintiff to its Answer to Interrogatory No. 9.

28        Subject to and without waiving its objections, pursuant to Federal Rule of

1  Civil Procedure 33(d)(1) Chase directs Plaintiff to the previously produced

2  document marked CHASE00113-00114 and and the document entitled "Card

3  Dispute Resolution Processing" (Bates Number  CHASE00161-CHASE01836).

4  **INTERROGATORY NO. 11:**

5       Describe in detail how, as part of its investigation of the DISPUTE, CHASE

6  investigated Plaintiff's claim that in September 2017, Plaintiff contacted CHASE to

7  pay off the entire balance of his Plaintiff's Chase Ink credit card account and

8  terminate that account relationship with a $0 balance.

9  **RESPONSE TO INTERROGATORY NO. 11:**

10 Chase objects to this interrogatory, because Chase completed its investigation into

11 the Dispute on September 8, 2020 and this action was not commenced within 2

12 years and therefore, on information and belief, is untimely and barred by the statute

13 of limitations.  Chase objects to this interrogatory because Plaintiff did not raise this

14 claim in the Dispute.  Chase objects to this interrogatory on the grounds that

15 Plaintiff previously raised the issues set forth in the Dispute before Arbitrator

16 Holton in the Arbitration.  Chase further objects because Plaintiff should be

17 estopped from pursuing discovery into this issue in this proceeding for the reasons

18 set forth in Chase's response to Interrogatory No. 9."

19 **AMENDED RESPONSE TO INTERROGATORY NO. 11:**

20      Chase objects to this interrogatory, because Chase completed its investigation

21 into the Dispute on September 8, 2020 and this action was not commenced within 2

22 years and therefore, on information and belief, is untimely and barred by the statute

23 of limitations.  Chase objects to this interrogatory because Plaintiff did not raise this

24 claim in the Dispute.  Chase objects to this interrogatory on the grounds that

25 Plaintiff previously raised the issues set forth in the Dispute before Arbitrator

26 Holton in the Arbitration.  Chase further objects because Plaintiff should be

27 estopped from pursuing discovery into this issue in this proceeding for the reasons

28 set forth in Chase's response to Interrogatory No. 9."

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

1  Numbers CHASE00161-CHASE01836.

2

3  DATED:  July 26, 2023          DYKEMA GOSSETT LLP

4

5

6  By: _____

7  ASHLEY R. FICKEL
   ROBERT A. HYATT
8  Attorneys for Defendant,
   JPMorgan Chase Bank, N.A.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DEFENDANT JPMORGAN CHASE BANK, N.A.'S AMENDED RESPONSES TO PLAINTIFF'S
INTERROGATORIES,
SET ONE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DYKEMA GOSSETT LLP**
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

**VERIFICATION**

I, Barbara Burda, DECLARE:

I am an Associate Account Manager II at JPMorgan Chase Bank, N.A.  I have read the foregoing ***DEFENDANT JPMORGAN CHASE BANK, N.A.'S AMENDED RESPONSES TO PLAINTIFF'S INTERROGATORIES, SET ONE***, and know its contents.

I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.  The matters stated in the foregoing document are true of my own knowledge based on my review of documents, except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

Executed on July  22  , 2023, in   Itasca, Ilinois

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Barbara Burda

Barbara Burda

_____

008241.002262  4880-2478-5774.1

33

DEFENDANT JPMORGAN CHASE BANK, N.A.'S AMENDED RESPONSES TO PLAINTIFF'S
INTERROGATORIES,
SET ONE

**PROOF OF SERVICE**
*Joshua Johnson vs. JPMorgan Chase Bank, N.A.*
*USDC, Central District, Case No. 2:22-cv-06718-RSWL-MAA*

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 444 South Flower Street, Suite 2200, Los Angeles, California 90071.

On July 26, 2023, I served the foregoing document(s) described as:

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S AMENDED RESPONSES TO PLAINTIFF'S INTERROGATORIES, SET ONE**

on the interested parties in this action as follows:

| | |
|---|---|
| L. David Russell, Esq.<br>RUSSELL LAW, PC<br>1500 Rosecrans Avenue, Suite 500<br>Manhattan Beach, CA 90266<br>Telephone:  (323) 638-7551<br>Facsimile:  (323) 760-7468<br>E-mail:      david@russelllawpc.com | ***Attorneys for Plaintiff***<br>***JOSHUA JOHNSON*** |

☒   (**BY ELECTRONIC SERVICE**), I caused a copy of the documents to be sent from nleali@dykema.com to the persons at the email addresses listed in the service list.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒   (Federal) I declare that I employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on July 26, 2023  at Los Angeles, California.

_____
Nanette Leali

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DEFENDANT JPMORGAN CHASE BANK, N.A.'S AMENDED RESPONSES TO PLAINTIFF'S
INTERROGATORIES, SET ONE

# EXHIBIT N

Wills Deposition

# Deposition Transcript

Case Number: 2:22-cv-06718-RSWL-MAA

Date: October 26, 2023

In the matter of:

# JOHNSON v JPMORGAN CHASE BANK, N.A.

# CARLA WILLS

**CERTIFIED COPY**

Reported by:

Holly A. Sonnenberg
RPR



Steno
Official Reporters

315 W 9th St.
Suite 807
Los Angeles, CA 90015
concierge@steno.com
(310) 573-8380
NV: FIRM #108F

```
 1                    UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF CALIFORNIA
 2

 3                                  No. 2:22-cv-06718-RSWL-MAA

 4     JOSHUA JOHNSON,

 5                    Plaintiff,

 6     vs.

 7     JP MORGAN CHASE BANK, N.A.,

 8                    Defendant.

 9     ------------------------------------
       VIDEOTAPED
10     DEPOSITION OF:      CARLA WILLS,
                           Taken on behalf of the Plaintiff
11
       DATE TAKEN:         October 26, 2023
12
       TIME:              9:30 a.m.
13
       PLACE:             Via Zoom
14
       REPORTED BY:       HOLLY A. SONNENBERG, RPR
15                         Registered Professional Reporter

16

17

18

19

20

21

22

23

24

25
```

CARLA WILLS                                                      JOB NO. 732581
OCTOBER 26, 2023

```
 1   A P P E A R A N C E S:

 2    MR. L. DAVID RUSSELL
      Russell Law, PC
 3    Attorneys at Law
      1500 Rosecrans Avenue
 4    Suite 500
      Manhattan Beach, California  90266
 5          Appearing on behalf of the Plaintiff;

 6    MR. ROBERT HYATT
      Dykema Gossett
 7    Attorneys at Law
      333 South Grand Avenue
 8    Suite 2100
      Los Angeles, California  90071;

 9
      Videographer:
10    Ms. Jane Phillip
      Steno
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                          I N D E X

 2    ALL WITNESSES:                                   PAGE:

 3        CARLA WILLS for Plaintiff:
      Direct Examination by MR. RUSSELL:                 4
 4
                           EXHIBITS
 5
      IDENTIFICATION                                   PAGE:
 6
      Plaintiff's Exhibit 21:                            4
 7        Bates Nos. 103-107

 8    Plaintiff's Exhibit 22:                            4
          Bates Nos. 198-201
 9
      Plaintiff's Exhibit 23:                            4
10        Bates Nos. 112-117

11    Plaintiff's Exhibit 24:                            4
          Bates Nos. 120-121
12
      Plaintiff's Exhibit 25:                            4
13        Bates Nos. 113-114

14    Plaintiff's Exhibit 26:                            4
          Bates Nos. 1646-1647
15
      Plaintiff's Exhibit 27:                            4
16        Bates Nos. 226-234

17    Plaintiff's Exhibit 28:                            4
          Bates Nos. 680-840
18    ****confidential****

19    Plaintiff's Exhibit 29:                            4
          Declaration of Carla Wills
20
      Exhibits were premarked prior to deposition
21    By counsel

22
      CERTIFICATE OF OATH                               34
23
      CERTIFICATE OF REPORTER                           35
24

25
```

1          (Whereupon, Plaintiff's Exhibits 21 through 29

2     were premarked for identification by Mr. Russell.)

3          THE VIDEOGRAPHER:  Good morning.  We are on

4     the record at 9:56 a.m. Pacific Time, on October 26,

5     2023, to begin the deposition of Carla Wills, in the

6     matter of Johnson versus JP Morgan Chase Bank North

7     America.  This case is venued in United States District

8     Court, Central District of California.  The case number

9     is 222 dash CV dash 06718 dash RSWL dash MAA.

10    This deposition is taking place via Zoom.

11         The legal videographer is Jane Phillip, here on

12    behalf of Steno, and the court reporter is Holly

13    Sonnenberg, also here on behalf of Steno.  Would counsel

14    please identify yourselves and state whom you represent.

15         MR. RUSSELL:  David Russell, appearing for the

16    Plaintiff, Joshua Johnson, and Mr. Johnson is also

17    present via Zoom today.

18         MR. HYATT:  Robert Hyatt for the deponent and

19    for JP Morgan Chase Bank NA.

20         THE VIDEOGRAPHER:  Thank you, Counsel.  Would

21    the reporter please swear in the witness?

22         (Whereupon, Carla Wills, having first been duly

23    sworn, testified as follows:

24              DIRECT EXAMINATION

25              BY MR. RUSSELL:

CARLA WILLS
OCTOBER 26, 2023

JOB NO. 732581

1    Q.       Good morning, Ms. Wills.  Could you please state

2    and spell your name for the record?

3    A.       Good morning.  My name is Carla, C-A-R-L-A, last

4    name Wills, W-I-L-L-S.

5    Q.       Thank you.  Do you understand that the oath you

6    were given a moment ago by the court reporter is the

7    same oath that you would be given if you were testifying

8    in court?

9    A.       Yes.

10   Q.       Do you understand that the oath you were given

11   carries with it the duty to testify truthfully under the

12   penalty of perjury?

13   A.       Yes.

14   Q.       Are you aware of any reason why you would not be

15   able to provide truthful testimony here today?

16   A.       No.

17   Q.       Are you aware of any reason why you would not be

18   able to provide accurate testimony here today?

19   A.       No.

20   Q.       In the last 24 hours, have you taken any

21   medication that would interfere with your ability to

22   testify here today?

23   A.       No.

24   Q.       What is your highest level of education?

25   A.       I have an associate's degree in accounting.

CARLA WILLS
OCTOBER 26, 2023

JOB NO. 732581

```
 1   gave when you would call a Chase customer regarding an
 2   investigation?
 3           MR. HYATT:  Objection.  Calls for speculation.
 4   Lacks foundation.
 5           MR. RUSSELL:
 6   Q.      You can answer.
 7   A.      Normally, when I call somebody, I say something
 8   similar to this or would leave a voicemail similar to
 9   this.
10   Q.      Do you know whether, when you call consumers,
11   your number is flagged as spam?
12   A.      I'm not sure.  I have had customers say that it
13   is, and I have had other customers say that it's not.
14   Q.      Do you remember if Mr. Johnson told you that
15   your number had been flagged as spam for him?
16           MR. HYATT:  Objection.  Misstates the testimony.
17           MR. RUSSELL:
18   Q.      You can answer.
19   A.      No.  I do not recall.
20   Q.      So I have marked, as Exhibit 23, a document
21   produced by Chase in this litigation, Bates No. Chase
22   115 through Chase 117.  Ms. Wills, is this an E-mail
23   chain that you were on?
24   A.      It has my name on it, but to confirm, it doesn't
25   show my E-mail address, so I can't really confirm that
```

CARLA WILLS
OCTOBER 26, 2023

JOB NO. 732581

1   it is.  I mean, it has my name on it, but it doesn't

2   have my E-mail address.

3   Q.      You don't remember receiving this E-mail?

4   A.      No.

5   Q.      So the E-mail is from OTPCDV Escalation.  Do you

6   see that?

7   A.      Yes.

8   Q.      What is OTPCDV Escalation?

9   A.      I'm not sure what OTPCDV's -- OTP stands for,

10  but based on the CDV Escalations, I'm not sure if it's

11  even a mailbox that's still used, but we would reach

12  out -- we normally reach out to CDV and request that

13  they verify a recording on customers' accounts.

14  Q.      What is "CDV"?

15  A.      I do not know.

16  Q.      What does CDV do?

17  A.      So they send -- they review -- to my knowledge

18  what they to is they verify that the information that we

19  are reporting to the credit bureaus matches our records.

20  Q.      And this E-mail says, "To Wills," comma, "Carla

21  L."  Do you see that?

22  A.      Yes.

23  Q.      Does your middle name start with an L?

24  A.      It does.

25  Q.      What is your middle name?

1    payment history of March and April, 2018, and Novus, no

2    update was required.

3    Q.      Thank you.  And is your recollection at all

4    refreshed about whether you received this E-mail back in

5    August 25, 2020?

6    A.      No.

7    Q.      Now, I have marked -- I believe it's Exhibit 23

8    (sic) -- a document produced by Chase in this

9    litigation, Bates Chase No. 120 through 121?

10          MR. HYATT:  I believe it's 24, David.

11          MR. RUSSELL:

12   Q.      Sorry.  So it's 24.  A document that's Bates No.

13   120 through 121.  Ms. Wills, I'm happy to scroll through

14   this, so you can see the whole document.  My question

15   is, once you have had a chance to review it, if you

16   recognize this document?

17   A.      No.  I don't recognize it.

18   Q.      Do you know who Luke S. Williams is?  His name

19   is on the page that's Bates No. 121.

20   A.      No.

21   Q.      Do you know what "CCB Collections" is?

22   A.      Yes.

23   Q.      What is CCB Collections?

24   A.      It's our collections department that we reach

25   out to when we have any inquiries regarding collection

1    Exhibit 24, can you explain to me what this document is?

2          MR. HYATT:  Objection.  Lacks foundation.  Calls

3    for speculation.

4          MR. RUSSELL:

5    Q.       I will rephrase the question.  Do you know what

6    this E-mail is?

7    A.       Yes.  It's an E-mail from our collections

8    department.

9    Q.       Do you know why they sent you this E-mail?

10   A.       No.

11   Q.       Do you know whether you requested this E-mail

12   from the collections department?

13   A.       I don't know.

14   Q.       I'm going to the page that's Bates numbered

15   Chase 121.  Do you see, under "Additional Information,"

16   there are two bullet points?

17   A.       Yes.

18   Q.       The first bullet point says, "Please continue to

19   work with CDV regarding any credit bureau concerns, as

20   this is outside of CSD scope."  Do you see that?

21   A.       Yes.

22   Q.       Do you know whether you continued to work with

23   CDV regarding any credit bureau concerns after receiving

24   this E-mail?

25         MR. HYATT:  Objection.  Calls for speculation,

CARLA WILLS
OCTOBER 26, 2023

JOB NO. 732581

1    Q.        I have marked, as Exhibit 25, a document

2    produced by Chase, Bates numbered -- sorry.  Bates

3    numbered Chase 113 through 114, and, Ms. Wills, I'm

4    happy to scroll through this as slowly as you need, but

5    my question is going to be have you seen this document

6    before?

7    A.        I do not know.

8    Q.        You don't know, one way or the other, whether

9    you have seen this document before?

10   A.        Correct.  I don't know.

11   Q.        If you were involved in an investigation of a

12   CFPB account regarding Mr. Johnson's account, is this

13   the type of document you would review or see in?

14          MR. HYATT:  Objection.  Calls for speculation.

15   Lacks foundation.  Improper hypothetical.

16          MR. RUSSELL:

17   Q.        Are you able to answer that question, Ms. Wills?

18   A.        Can you please restate the question?

19   Q.        This document we have marked as Exhibit 25 --

20   you see this document, correct?

21   A.        Yes.

22   Q.        If you were involved in a CFPB investigation of

23   Mr. Johnson's, Inc., credit card account, is this the

24   type of document that you would have seen?

25          MR. HYATT:  Same objections.

```
 1            MR. RUSSELL:

 2   Q.      Are you able to answer that question?

 3   A.      I would have only seen a document like this if a

 4   previous case was worked.  This appears to be a response

 5   letter from my department.

 6   Q.      Do you remember if you were involved in

 7   preparing the response letter?

 8            MR. HYATT:  Objection.  Calls for speculation.

 9   Misstates testimony.  Lacks foundation.

10            MR. RUSSELL:

11   Q.      You can answer.

12   A.      No.  I do not remember.

13   Q.      Do you remember if you provided any of the

14   information that is included in this response?

15   A.      I do not remember.

16   Q.      As part of your position as a specialist, you

17   gather this type of information for responses to CFPB

18   disputes?

19            MR. HYATT:  Objection.  Vague and ambiguous as

20   to "this type of information."

21            MR. RUSSELL:

22   Q.      You can respond, or answer.

23   A.      I'm not sure.

24   Q.      Marked as exhibit 26 is a document that's been

25   produced in this litigation Bates No. Johnson 1646
```

```
 1                        CERTIFICATE OF OATH

 2    STATE OF FLORIDA
      COUNTY OF BREVARD
 3

 4            I, the undersigned notary authority, certify

 5    that CARLA WILLS, personally known to me and/or provided

 6    photo identification in the aforesaid proceedings,

 7    appeared before me and were duly sworn under oath.

 8

 9            Witness my hand and official seal this 30th day

10    of October, 2023.

11

12

13

14                        _Hally Sonnenberg_____
                          Holly A. Sonnenberg, RPR
15                        Registered Professional Reporter
                          Commission #HH110082
16                        My Commission Expires 3/28/25

17

18

19

20

21

22

23

24

25
```

1                  CERTIFICATE OF REPORTER

2     STATE OF FLORIDA
      COUNTY OF BREVARD

3

4         I, HOLLY A. SONNENBERG, Shorthand Reporter,

5     certify that I was authorized to and did

6     stenographically report the deposition of CARLA WILLS,

7     that a review of the transcript was not requested, and

8     that pages 1 through 33, inclusive, are a true and

9     accurate record of my stenographic notes.

10        I further certify that I am not a relative,

11    employee, attorney, or counsel to any party, nor to the

12    attorneys of said action, nor in any way interested in

13    the outcome thereof.

14        Dated this 30th day of October, 2023.

15

16

17    _____
      Holly A. Sonnenberg, RPR

18    Registered Professional Reporter

19

20

21

22

23

24

25

# EXHIBIT O

Stipulation re Employees

1

2  **RUSSELL LAW, PC**
   L. David Russell (Cal. Bar No. 260043)

3  david@russelllawpc.com
   1500 Rosecrans Ave, Suite 500

4  Manhattan Beach, California 90266
   Telephone: (323) 638-7551

5  Fax: (323) 760-7458

6  *Attorneys for Plaintiff Joshua Johnson*

7

8  **DYKEMA GOSSETT LLP**
   ASHLEY R. FICKEL (Cal. Bar No. 237111)

9  AFickel@dykema.com
   ROBERT A. HYATT (Cal. Bar No. 166178)

10 RHyatt@dykema.com

11 333 South Grand Avenue, Suite 2100
   Los Angeles, California 90071

12 Telephone: (213) 457-1800

13 Facsimile: (213) 457-1850
   *Attorneys for Defendant JPMorgan Chase Bank, N.A.*

14

15                **UNITED STATES DISTRICT COURT**

16                **CENTRAL DISTRICT OF CALIFORNIA**

17 JOSHUA JOHNSON,                        No.: 2:22-cv-06718-RSWL-MAA

18                                        District Judge: Hon. André Birotte Jr.

19                Plaintiff,              Magistrate Judge: Maria A. Audero

20    v.                                 **JOINT STIPULATION RE**
                                          **EMPLOYEES WITH**
21                                        **INFORMATION RE 2020**
   JPMORGAN CHASE BANK, N.A.,             **INVESTIGATION**
22

23                                        Action Filed:      Sept. 19, 2022
                Defendant.                Trial Date:   March 12, 2024
24

25

26

27

28

---

1

JOINT STIPULATION

1    It is hereby Stipulated by and between the parties, Plaintiff Joshua

2    Johnson ("Plaintiff") and Defendant JPMorgan Chase Bank, N.A. ("Defendant"),

3    through their respective attorneys of record, as follows:

4

5    WHEREAS, Plaintiff served interrogatories and requests for production on

6    Defendant requesting information regarding Defendant's employees (former and

7    current) that investigated Plaintiff's notice of dispute submitted to Equifax on or

8    about August 25, 2020 related to the accuracy of information Defendant

9    submitted to Equifax, which Defendant received shortly thereafter (the "2020

10   Investigation");

11

12   WHEREAS, Defendant objected to providing that information, leading to

13   meet-and-confer discussions among counsel and the presentation of the issue to

14   Magistrate Judge Audero at IDC #1; and

15

16   WHEREAS, during meet-and confer discussions, Defendant represented

17   that, after looking into the issue, it discovered that there were no current

18   employees with any personal and first-hand recollection of the 2020

19   Investigation and that Chase did not plan on presenting testimony from any

20   employees (current or former) involved in the 2020 Investigation in this case.

21

22   THEREFORE, Plaintiff and Defendant agree and stipulate that:

23

24   1.    None of Chase's current employees have any recollection of the

25   2020 Investigation.[1]

26

27   ─────────────────────

[1] Plaintiff still reserves the right to take the deposition of Chase employees,
including Carla Wills, a current Chase employee whom Plaintiff believes may

28   have been involved in the 2020 Investigation or may otherwise have discoverable
information related to that investigation.

1

JOINT STIPULATION

2.     Chase is unaware of any employees who have any recollection of the 2020 Investigation.

3.     Chase will not present testimony from any employees (current or former) involved in the 2020 Investigation in any way, with the one exception that if Plaintiff calls a former employee as a trial witness, then Chase reserves their right to use that witness' testimony.

4.     Chase will provide a corporate representative as to Chase's business records concerning the 2020 Investigation.

**IT IS SO STIPULATED AND AGREED.**

DATED: July __ 2023

**RUSSELL LAW, PC**

*Attorneys for Plaintiff Joshua Johnson*

DATED: August 9, 2023

**DYKEMA GOSSETT LLP**

*Attorneys for Defendant JPMorgan Chase Bank*, N.A

JOINT STIPULATION

# EXHIBIT P

Oct 20 2020 Call

**Karla Willis**
**10/20/2020**

1             AMERICAN ARBITRATION ASSOCIATION

2    JOSHUA JOHNSON,

3              Claimant,

4      -vs-

5                    AAA Case No. 01-20-0015-1734-2-PA

6

7    JPMORGAN CHASE BANK, N.A.,

8              Respondent.

9    _____/

10   PAGE 1 TO 16

11

12       The 10/20/20 Phone Call With Karla Willis,

13       Held via phone,

14       Took place on October 20, 2020,

15       Transcribed by Caitlyn Hartley, RPR, CSR-8887.

16

17

18

19

20

21

22

23

24

25



Karla Willis
10/20/2020

Pages 2..5

1  Phone call
2  October 20, 2020
3
4
5      MR. JOHNSON:  Hello?
6      MS. WILLIS:  Hello, may I speak with Josh
7  Johnson?
8      MR. JOHNSON:  This is him.
9  PHONE CALL WITH MS. WILLIS:
10     Q. Hi this is Karla Willis calling from Chase credit
11  card executive office.
12     **A. Hey, how are you?**
13     Q. I'm doing well thank you.  I just want to briefly
14  make sure you're aware that I'm calling on a line that
15  may be monitored or recorded.  We've been playing phone
16  tag so I'm happy, you know, that we've finally got in
17  touch with each other.  It sounds like you had some
18  questions regarding the letter that was sent to you?
19     **A. Yeah.  Thanks for getting in touch with me.  Let**
20  **me turn down the TV just a minute.**
21     Q. Okay.
22     **A. Okay.  Let me grab my notes too.**
23     Q. Okay.
24     **A. Okay.  Are you still there?**
25     Q. Yeah I'm still here.

1      **A. Okay.  I've got my notes up.  Yeah I've got some**
2   **questions about the letter.  I'll just start from the**
3   **top 'cause I'm not sure what your colleague passed**
4   **along, if that's okay?**
5      Q. Okay.  All they just said is that you had
6   questions regarding the letter in the note and then
7   requested that I contact you.  So they didn't provide me
8   any specific information, I apologize.
9      **A. No worries.  No that's fine.  Yeah.  So the**
10  **letter there's a couple things to note here.  So the**
11  **first is I think there's like a few pieces to the**
12  **letter, right, like one of them is that there were a**
13  **number of pieces of snail mail that were supposedly sent**
14  **to me.  Those were attached in the letter.  And so I**
15  **never received any of those letters.  And it looks like**
16  **the reason is the mailing address is incorrect.  So they**
17  **were all addressed to 308 South Blount Street and I -- I**
18  **did not live at that address at any time close to when**
19  **those letters were sent.  So that's one thing worth**
20  **noting.**
21      **The other is like the other salient point is so**
22  **my original complaint here is that -- well, let me slow**
23  **down here actually.  Yeah another thing that the letter**
24  **notes is that my account was enrolled to receive**
25  **paperless statements and it says Chase confirmed that**

1  **the statement notifications were successfully sent to**
2  **your email.  So that is true I was signed up to receive**
3  **paperless statements and I actually went back through my**
4  **email and, you know, I found the emails from Chase and I**
5  **definitely did get those emails.  The problem there is**
6  **that the emails don't contain any sort of balance**
7  **information.  The emails simply say you have -- your**
8  **statement is available online to check out.  And so the**
9  **problem is the website was showing a zero dollar balance**
10  **so, you know, I'd get the email saying, stating it was**
11  **ready.  I would -- it would instruct me to log into the**
12  **website.  I would click through and then I would see a**
13  **zero dollar balance and so, you know, I didn't do**
14  **anything.  And yes, couple that with the incorrect**
15  **mailing address and there was, you know, I didn't --**
16  **there was no -- no notification of any balance.**
17      Q. Okay.  As far as the mailing address, you know,
18  it's your responsibility to update it on your account.
19  We can only send mail to the address we have on file, so
20  if you ever move or your address is changed even if it's
21  temporarily, that -- you would need to contact us.  We,
22  you know, there's no way of us knowing that you moved.
23      And as far as the statements, you know, you would
24  have not seen a zero balance online if we were sending
25  you statements each month saying that there was a

1  balance due.
2      **A. No that's incorrect 'cause the email does not say**
3   **there's a balance due.**
4      Q. I didn't -- I didn't say that.  I said if you --
5   you said that, you know, you would log online and it
6   would tell you that there's no balance on the account or
7   a zero balance due.  If we're sending you statements, a
8   notification that you have a statement if you log on,
9   you would be able to see the balance that was billed to
10  your account.  There's no way it would, you know, report
11  a zero balance if there were charges on your account.
12  Now maybe a zero balance due if there was no payment
13  required yet, but if you had a balance due, it would
14  definitely show that online at Chase.com or on the
15  mobile app.
16      **A. So, you know, I know what I saw and it said a**
17  **zero dollar balance.  I can only speculate why that was**
18  **the case.  So my guess -- my guess is that this was a**
19  **business card whereas I previously had a personal Chase**
20  **checking card.  And so based on calls with Chase that I**
21  **made previously around the time, I suspect that there**
22  **was some sort of IT bug, snafu or something that**
23  **prevented the personal and the business accounts from**
24  **being linked and my guess is that that's why there was a**
25  **zero dollar balance.  But I can guarantee you that the**

**Karla Willis**
**10/20/2020**                                    **Pages 6..9**

Page 6

1 flow from me as a consumer was I would receive the email
2 saying a statement is available. I would click the link
3 to log in, and then the website would show a zero dollar
4 balance. And I promise you that is the case.
5    Q. I mean do you have any, you know, proof that was
6 the case or did somebody here tell you that there was
7 something wrong with your online profile?
8    A. So I definitely called about the issue. So
9 there's a reference on a letter to Chase making contact
10 with me several times and so I do remember those calls.
11 Or at least some of those calls. It sounds like contact
12 was made three times and there's no record of, you know,
13 the actual contact but I do remember at least a couple
14 of calls and the call would come in and the call was you
15 owe a balance on your account. And I went, what? How
16 do I have a balance? You know, it's been displaying a
17 zero dollar balance. And so I believe on the call I
18 directly paid the balance that was available, complained
19 about the fact that I could see a zero dollar balance on
20 the website and you, know, I think hours on the phone
21 and I was never able to get a resolution. But yeah I
22 don't know that I have -- I can look. I don't think
23 that I have a screenshot at the time because I didn't,
24 you know, anticipate two years later kind of being in
25 this boat but I definitely made calls to Chase at the

Page 7

1 time to try and rectify that.
2    Q. Okay. And they would have said that you had a
3 balance on your account at the time. And --
4    A. Right.
5    Q. -- if it was --
6    A. I'm sorry go ahead.
7    Q. You would have been advised if there was a
8 balance on your account if, you know, somebody contacted
9 you. 'Cause I do see that, you know, we did attempt to
10 contact you regarding the missed payments and if
11 somebody, you know, if we did speak with you, somebody
12 would have made you aware that there was actually a
13 payment due or, you know, missed payments.
14    A. Yes, I agree. I acknowledge that. And if
15 contact was made with me and a balance was explained,
16 which happened at least once, I made the payment right
17 there on the phone. I was confused but I made it and
18 that's why the letter references payments to the account
19 being paid from a checking account in my name. Those
20 were made over phone calls, you know, in response to
21 Chase, a Chase call.
22    Q. Now I fully understand your concern but, you
23 know, I mean since the time has passed if this was two
24 -- over two years ago, we can't go back and listen to
25 those calls. So there's no way to verify what you're

Page 8

1 actually saying. When I reviewed your online profile it
2 showed that it was active.
3    A. Yeah. I mean I don't -- it seems somewhat silly
4 for me to require proof when, you know, it's --
5    Q. Well there's nothing noted to your account.
6    A. That's --
7    Q. If you had an issue --
8    A. Yeah so I definitely made the call complaining
9 about this. If it hasn't been -- if it wasn't notated
10 on my account two years ago, that's not my fault that's
11 the fault of the customer service rep that received the
12 call. Because it absolutely should have been noted. I
13 definitely have called about this, you know, previously.
14    Q. You know, I definitely understand your position
15 but we're not able to make any updates to the account
16 and it would remain as it is.
17    A. Why?
18    Q. Because it was actually late (sic) we cannot make
19 -- any update would be considered a courtesy update. It
20 shows that your statements were received.
21    A. They were not. Are you not --
22    Q. Okay even though -- okay. You received a
23 notification that your statement was available. You're
24 saying you just looked at your online account so even if
25 there was an online issue -- issue with your online

Page 9

1 account like you're saying, your statement still would
2 have showed a balance.
3    A. No I'm telling you I'd log onto the website --
4    Q. I --
5    A. -- not only did it display a zero dollar balance
6 there were no transactions. I believe --
7    Q. Did you --
8    A. -- there was a problem on your end linking the
9 personal business accounts unless you're calling me a
10 liar I'm --
11    Q. I'm not calling you a liar, but I'm saying that
12 your statements would be available for you to view.
13    A. And I'm saying that --
14    Q. If you did not --
15    A. They were not available for me to view.
16    Q. Did it -- and so did you request that they be
17 sent to you then?
18    A. I called Chase on the phone to alert them of this
19 problem two years ago. It should have been resolved
20 then. It was not. The fact that it was not noted on my
21 account is not my -- it's not my fault.
22    Q. I definitely understand your position, however...
23 I mean we can't fix a problem if we don't know that it's
24 still ongoing. We can't send you a statement or
25 anything to your address that, you know, if we don't

Karla Willis
10/20/2020                                      Pages 14..16

Page 14

1  and profiles and they weren't linked.
2     **A. Yes, that is what I'm saying. When I called**
3  **Chase two years ago after the account had been charged**
4  **off, when I called Chase and complained about again**
5  **about the online billing issue, they eventually said oh**
6  **well there's this other user ID that was like auto**
7  **generated that you didn't create. We're going to reset**
8  **your password for that, log in with that. And so that**
9  **shows the business account. So the account was not --**
10 **like I would click through the statement, log in with my**
11 **user name and password, and only the personal account --**
12    Q. We would not generate an online user ID or
13 account number that's -- or excuse me, online user ID.
14 You would do -- you would have to do that. Only you can
15 enroll an online account. You know, if you've already
16 enrolled, we can verify yea, you know, this is the user
17 ID you set up or we could reset the password for you.
18 You know, but we can't go without your permission and go
19 set up an online account.
20    **A. I don't --**
21    Q. And you would have had to --
22    **A. -- but --**
23    Q. And you would have had to be able to log into
24 that online account to enroll in paperless statements.
25    **A. Yeah I don't know the details. I'm sure what**

Page 15

1  **you're saying is true. It's been two years. You know,**
2  **the fact remains that I logged on to the website and saw**
3  **a zero dollar balance and that's that. I have flawless**
4  **credit history going back 13 years with the exception of**
5  **like this thing. I have -- I've had a positive bank**
6  **balance and been gainfully employed the entire time.**
7  **It's absolutely ridiculous that I would somehow skip on**
8  **a $500 credit card debt. It doesn't make any sense.**
9     Q. I definitely understand your position but we are
10 not able to make any updates. Any updates at this point
11 would be considered a courtesy update and we do not make
12 courtesy updates. So our position is going to remain
13 the same on this. We are not going to delete the
14 account from reporting or update the reporting.
15    **A. Okay well I'll just -- I'll go through -- I've**
16 **already started the arbitration process so I'll go**
17 **through that. We'll see what happens.**
18    Q. Okay. Well thank you for your time. Enjoy the
19 rest of your day. Good bye.
20       (Audio concluded.)
21
22
23
24
25

Page 16

1  STATE OF MICHIGAN          )
2                             )
3  COUNTY OF WASHTENAW        )
4
5  CERTIFICATE OF NOTARY PUBLIC AND COURT REPORTER
6     I, Caitlyn Hartley, do hereby certify that the
7  foregoing audio sent to me was recorded by me
8  stenographically and by me later reduced to typewritten
9  form by means of computer-aided transcription; and I
10 certify that this is a true and correct transcript of my
11 stenographic notes so taken.
12    I further certify that I am neither of counsel to
13 either party nor interested in the event of this cause.
14
15
16
17 Caitlyn Hartley, RPR, CSR-8887
18 Notary Public,
19 Washtenaw County, Michigan
20 My Commission expires: August 15, 2021
21
22
23
24
25

# EXHIBIT Q

Johnson Deposition



CERTIFIED COPY

In the Matter Of:

**JOSHUA JOHNSON vs JPMORGAN CHASE BANK, N.A.**

Joshua Johnson

October 27, 2023

Job No. 11899 ( J. Johnson )

# Express Deposition Services

## A Legal Support Network Company

1                    UNITED STATES DISTRICT COURT

2           CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

3

4

5

6    JOSHUA JOHNSON,                          )
                                              )
7                           PLAINTIFF,        )
                 VS.                          )      CASE NO.
8                                             )  2:22-cv-06718
     JPMORGAN CHASE BANK, N.A.,               )  -AB-MAAx
9                                             )
                            DEFENDANT.        )
10   _____)

11

12

13

14

15               DEPOSITION OF JOSHUA JOHNSON

16                FRIDAY, OCTOBER 27, 2023

17                     12:07 P.M.

18                LOS ANGELES, CALIFORNIA

19

20

21

22   REPORTED BY: DIANE CARVER MANN, CLR, CSR NO. 6008

23   JOB NO.: 11899

24

25

JOSHUA JOHNSON                                                    Page 2

1                DEPOSITION OF JOSHUA JOHNSON, TAKEN ON BEHALF OF

2      DEFENDANT AT 444 FLOWER STREET, LOS ANGELES, CALIFORNIA,

3      COMMENCING AT 12:07 P.M., ON FRIDAY, OCTOBER 27, 2023,

4      BEFORE DIANE CARVER MANN, CSR NO. 6008.

5

6      APPEARANCES OF COUNSEL

7

8      FOR THE PLAINTIFF:

9                          RUSSELL LAW PC
                           BY: L. DAVID RUSSELL, ESQ.
10                         1500 ROSECRANS AVENUE, SUITE 500
                           MANHATTAN BEACH, CALIFORNIA 90266
11                         323.638.7551
                           DAVID@RUSSELLLAWPC.COM
12

13     FOR THE DEFENDANT:

14                         DYKEMA GOSSET PLLC
                           BY: ROBERT A. HYATT, ESQ.
15                         444 SOUTH FLOWER STREET, SUITE 2200
                           LOS ANGELES, CALIFORNIA 90071
16                         213.457.1800
                           RHYATT@DYKEMA.COM
17              `

18

19

20

21

22

23

24

25

JOSHUA JOHNSON                                    Page 3

```
 1                      I N D E X

 2

 3    WITNESS                 EXAMINATION              PAGE

 4    JOSHUA JOHNSON

 5                      BY MR. HYATT                    6

 6

 7

 8                    E X H I B I T S

 9        (ALL EXHIBITS MARKED ARE TO BE KEPT CONFIDENTIAL)

10

11    EXHIBIT NO.   PAGE      DESCRIPTION

12    Exhibit A      10       JOHNSON 995, EMAIL DATED
                              JANUARY 9TH, 2017
13
      Exhibit B      11       JOHNSON 1004, EMAIL DATED
14                            FEBRUARY 16TH, 2017

15    Exhibit C      14       JOHNSON 7877, EMAIL DATED
                              FEBRUARY 17, 2017
16
      Exhibit D      21       JOHNSON 1006, EMAIL DATED
17                            FEBRUARY 27TH, 2017

18    Exhibit E      21       JOHNSON 1007, EMAIL DATED
                              MARCH 8TH, 2017
19
      Exhibit F      22       JOHNSON 1036 AND 1037, EMAIL
20                            DATED JUNE 16TH, 2017

21    Exhibit G      26       JOHNSON 1041, EMAIL DATED
                              JUNE 26TH, 2017
22
      Exhibit H      26       JOHNSON 1042, EMAIL DATED
23                            JULY 28TH, 2017

24    Exhibit I      42       JOHNSON 1051, EMAIL DATED
                              SEPTEMBER 6TH, 2017
25    \\\
```

```
 1                    `E X H I B I T S (CONTINUED)

 2

 3    EXHIBIT NO.     PAGE        DESCRIPTION

 4    Exhibit J       47          JOHNSON 1064, EMAIL DATED
                                  SEPTEMBER 26TH, 2017
 5
      Exhibit K       47          JOHNSON 1075, EMAIL DATED
 6                                OCTOBER 25TH, 2017

 7    Exhibit L       47          JOHNSON 1092, EMAIL
                                  DATED DECEMBER 27TH, 2017
 8
      Exhibit M       57          EQUIFAX SUPPLEMENTAL 5 THROUGH 8,
 9                                AUTOMATED CONSUMER DISPUTE
                                  VERIFICATION
10
      Exhibit N       81          EQUIFAX SUPPLEMENTAL 9 THROUGH 42
11
      Exhibit O       99          INITIAL DISCLOSURES SUBMITTED
12
      Exhibit P       117         CRMLS PRODUCTION
13
      Exhibit Q-1     119         JOHNSON 11 SUMMARY RE APPLICATION
14
      Exhibit Q-2     123         SUBPOENAED RECORDS FROM
15                                ONE MEDICAL GROUP

16    Exhibit R       125         RECORDS SUBPOENAED FROM
                                  DANIEL NORMAN, MD
17
      Exhibit S       127         INTAKE QUESTIONNAIRE - DR. SHAH
18
      Exhibit T       133         TRILOK SHAH, MD 6, CREATED
19                                APRIL 28TH, 2021

20    Exhibit U       136         TRILOK SHAH, MD 10 THROUGH 11

21    Exhibit V       140         TRILOK SHAH, MD 12 THROUGH 15

22    Exhibit W       144         TRILOK SHAH, MD 22

23    Exhibit X       145         TRILOK SHAH, MD 37

24    \\\

25    \\\
```

```
 1                  E X H I B I T S (CONTINUED)

 2

 3    EXHIBIT NO.    PAGE      DESCRIPTION

 4    Exhibit Y      146       TRILOK SHAH, MD 48

 5    Exhibit Z      147       TRILOK SHAH, MD 60

 6    Exhibit AA     151       MOTION FOR SANCTIONS

 7    Exhibit BB     152       JOHNSON 1639

 8

 9             QUESTIONS INSTRUCTED NOT TO ANSWER
                            (NONE)
10
                      INFORMATION REQUESTED
11                          (NONE)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1            And so it says that you logged into your online
2    profile in order to make a payment.  Do you recall why
3    you did that?
4        A    Yes.
5        Q    Okay.  Why?
6        A    It had been, I think, roughly a month since I
7    had opened the credit card account, and I had been using
8    the credit card to make transactions, so I presumed that
9    a payment was due.
10       Q    All right.  And you never received a paper
11   statement that first month?
12       A    I may have received a statement the very first
13   month before switching to paperless.  I don't recall
14   either way.
15       Q    Okay.  Just to make it a little cleaner on the
16   record, so you have no recollection either way whether
17   you received a paper statement or not?
18            MR. RUSSELL:  Objection.  Vague and ambiguous.
19            THE WITNESS:  I don't remember receiving a
20   paper statement.
21   BY MR. HYATT:
22       Q    Okay.  So your best recollection right now is
23   you logged in because about a month had gone by and you
24   had been using the card and you just wanted to check to
25   see what was due?

1      Q     Exhibit C, a closing argument.  So looking at

2  Johnson 7880 and Paragraph 7, where it says, "Final

3  payment attempt," do you see where I'm talking about?

4      A     Yes.

5      Q     All right.  If you would just take a second and

6  read to yourself that Paragraph 7.

7      A     Yes.

8      Q     Okay.  So is it true that on September 6th,

9  2017 Chase called you about a payment that was due on

10  your open Ink credit card account?

11      A     Yes.

12      Q     All right.  Now, I know during the arbitration

13  you must have talked about this call a lot.  I'm sure

14  you've thought about it a lot.  What I'd like to know is

15  your best recollection about that phone call on

16  September 6th, 2017.  Is there anything specifically

17  that you remember about that phone call?

18      A     What do you mean by "specifically"?

19      Q     I said, "You are wearing a black dress."

20            She said, "No, I'm not.  It's blue."  Right?

21            I'm asking for specific dialogue that occurred

22  during the phone conversation.

23      A     Specific dialogue.  I do not remember words

24  that were said.  I remember the intent of the

25  conversation.

1    letter which you said was around May of 2018, so in

2    between those two dates.

3        A    Not in between, but immediately in response to

4    receiving the letter, I contacted Chase.

5        Q    Okay.  I'm asking, but in between you did not

6    contact Chase about your Ink account; is that correct?

7        A    No.

8        Q    It's not correct?  So you did contact them

9    about your Ink account?

10       A    I did not contact Chase between those two dates

11   about the Ink account.

12       Q    Okay.

13       A    Sorry.

14       Q    No.  We do this all the time, and you've got to

15   be precise on the record, and it's not how people talk.

16       A    Understood.

17       Q    So it ends up sounding funny.

18           MR. HYATT:  Okay.  All right.  Let's go off the

19   record for a minute.

20                    (Pause in proceedings.)

21           MR. HYATT:  Okay.  Let's go back on the record.

22           So after a discussion off the record we've

23   decided that all exhibits to this deposition should be

24   marked "Confidential."

25           So let's mark this next in order.  I believe

1   it's Exhibit M?

2                (Whereupon, Deposition Exhibit M

3                was marked for identification.)

4   BY MR. HYATT:

5       Q    All right.  And Josh, I believe you said during

6   the break that you've seen this before.  It's the

7   automated -- strike that.

8           We subpoenaed records from Equifax, and this is

9   part of their production, Automated Consumer Dispute

10  Verification that's been marked Equifax Supplemental 5

11  through 8.  And so, Josh, please feel free to take a

12  minute to look through that if you'd like.  Just let me

13  know when you're done.

14      A    Yep, done.

15      Q    Okay.  So I need you to describe for me how you

16  do an Equifax dispute, because I have no idea.  So I

17  went online, you know.  I looked at -- there seems to be

18  an online form to fill out, but I don't know if that's

19  the only avenue to do it.  And so just so you know where

20  I'm going -- right? -- if you look at the top of Page

21  Equifax Supplemental 5, on the right-hand side it says,

22  "Dispute 1."

23          Do you see where I'm looking?

24      A    Yep.

25      Q    Okay.  So I have no idea what that, open paren,

1    "(021)," close paren, code there means.  Do you have any

2    idea what that means?

3       A    I believe that would be a dispute code.

4       Q    Could be.  It's from Equifax, so I don't know.

5            So it goes on to say, "Claims account takeover

6    fradulent (sic)."  I believe they meant to say

7    "fraudulent," but, "fradulent charges made on account,

8    verify special comment code."

9            Now, we're going to go through this.  But when

10   you did your dispute with Equifax, did you write down

11   and transmit to them that language that I just read

12   that's in Dispute 1 there on Equifax Supplemental 5?

13      A    No.

14      Q    Okay.  Now, going down a couple of boxes, where

15   it says, "FCRA relevant information," do you see where

16   I'm talking about?

17      A    Yes.

18      Q    The text that's in that box, besides the "FCRA

19   relevant information" heading, do you in writing

20   transmit that somehow to Equifax, those specific words

21   that are printed there?

22      A    I don't know.  The reason I don't know is that

23   I filled out a written text box at Equifax.com to

24   initiate a dispute.

25            (Phone interruption in proceedings.)

1          Did you have an understanding of that Equifax
2    would respond to your dispute?
3        A    No.  Chase and I were playing phone tag from
4    August through October.
5        Q    But Chase isn't Equifax, and you made the
6    dispute to Equifax.  Did you expect to receive any
7    response from Equifax?
8        A    I don't remember what I thought in 2020.
9        Q    Okay.  And so would it be correct to say that,
10   as you're sitting here now, you have no recollection of
11   whether or not there was a time limit for Equifax to
12   respond to you about the dispute?
13       A    I mean, I know now.  What did I know in 2020?
14   I don't remember.
15       Q    Okay.  When you submitted the dispute
16   August 24th of 2020, were you living in Los Angeles?
17       A    Yes.  Santa Monica.
18       Q    Okay.  Well, it is a separate city, so you're
19   right.
20            When you --
21       A    Actually, Los Angeles.  Los Angeles.
22       Q    Okay.  So when you moved from North Carolina to
23   California, did you take any steps to make sure your
24   mail got to you in California?
25       A    Yes.

JOSHUA JOHNSON                                          Page 158

1    STATE OF CALIFORNIA            )

2    COUNTY OF SAN BERNARDINO        )      ss.

3

4       I, Diane Carver Mann, C.S.R. NO. 6008, in and for

5    the State of California, do hereby certify:

6            That prior to being examined, the witness named

7    in the foregoing deposition was by me duly sworn to

8    testify to the truth, the whole truth, and nothing but

9    the truth;

10            That said deposition was taken down by me in

11   shorthand at the time and place therein named and

12   thereafter reduced to typewriting under my direction,

13   and the same is a true, correct, and complete transcript

14   of said proceedings;

15            That if the foregoing pertains to the original

16   transcript of a deposition in a Federal Case, before

17   completion of the proceedings, review of the transcript

18   { } was { } was not required.

19            I further certify that I am not interested in

20   the event of the action.

21      Witness my hand this 7th day of November, 2023.

22

23

24   _____

                Certified Shorthand Reporter
25                for the State of California

# EXHIBIT R

Amended Responses to Johnson RFAs

BPRUSA - 30(B)(6)
10.23.23

**Exhibit 19**

Michelle L. Goehring

**DYKEMA GOSSETT LLP**
ASHLEY R. FICKEL, State Bar No. 237111
  *AFickel@dykema.com*
ROBERT A. HYATT, State Bar No. 166178
  *RHyatt@dykema.com*
444 South Flower, Suite 2200
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| JOSHUA JOHNSON, | Case No. 2:22-cv-06718-AB-MAAx |
| Plaintiff, | The Hon. André Birotte Jr. Courtroom 7B |
| v. | Magistrate Maria A. Audero Courtroom: 690 |
| JPMORGAN CHASE BANK, N.A., | |
| Defendant. | **DEFENDANT JPMORGAN CHASE BANK, N.A.'S AMENDED RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSION, SET ONE** |
| | Complaint Filed: September 19, 2022 |

PROPOUNDING PARTY:     Plaintiff, JOSHUA JOHNSON

RESPONDING PARTY:     Defendant, JPMORGAN CHASE BANK, N.A.

SET NO.:     ONE

### PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 36(a)(4), Defendant JPMORGAN CHASE BANK, N.A. ("CHASE") submits the following amended responses and objections to Plaintiff JOSHUA JOHNSON'S ("Plaintiff") Request for Admission, Set One:

The following responses have been prepared prior to the completion of Chase's investigation, discovery, and preparation for trial in this action. The

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

responses are based solely on information, facts, and documents available and known to Chase as of the date of these responses. Investigation and discovery are continuing, and Chase reserves the right to amend, modify, or supplement its responses at any time prior to the trial of this action. Chase also reserves its right to rely upon or introduce into evidence any additional information, facts, or documents not contained in these responses.

These responses are made in a good faith effort to supply as much information as is presently known, but shall in no way lead to the prejudice of Chase in relation to further discovery, research, or analysis. Chase's responses to the Requests for Admission are for the purpose of discovery only, and are not an admission that any answer, fact, or document is relevant or admissible into evidence. Chase reserves the right to object to the relevance and admissibility of any answer, fact, or document and the truth or accuracy of any purported facts or characterizations contained in the Requests for Production themselves.

## OBJECTIONS TO DEFINITIONS

1.    The Definition of "Document" exceeds the scope of Fed. R. Civ. P. 34. Chase will apply the definition consistently with the scope of the rule and applicable law governing possession, custody, and control of materials sought in discovery.

2.    To the extent that "Document" is construed to include data from sources that are not "reasonably accessible" as defined by Fed. R. Civ. P. 26(b)(2)(B), Chase objects to such sources as being outside the scope of civil discovery.

3.    Chase objects to the definition of the term "Concerning" as vague, overly broad, and unduly burdensome, particularly where it is based on the terms "reflecting," "constituting," "evidencing," or "supporting" and therefore describes an indefinite class of documents. Chase will apply "Concerning" to mean materials that explicitly discuss or are reasonably identifiable by Chase with the subject matter of a request.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

## GENERAL OBJECTIONS

The following general objections apply to, and are asserted with respect to, each of the Requests for Admission:

1. The Requests for Admission seek documents outside the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1) and 36(a)(1).

2. The Requests for Admission, including any purported instructions and definitions, impose obligations inconsistent with Fed. R. Civ. P. 26(b)(1).

3. The Requests for Admission seek discovery of information protected against disclosure by the attorney-client privilege or attorney work-product doctrine. Fed. R. Civ. P. 26(b)(3)(A) and 26(b)(5).

4. The Requests for Admission seek information unreasonably duplicative of information already in possession of Plaintiff.

5. The Requests for Admission seek information obtainable from another source that is more convenient, less burdensome, or less expensive.

6. The requests seek information that is confidential and/or proprietary and the parties need to meet and confer with respect to an appropriate protective order.

These general objections applies to each and every one of Plaintiff's Requests for Admission, Set One.

## RESPONSES TO REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that when it investigated the DISPUTE, JPMorgan Chase Bank, N.A. did not consider whether reporting Plaintiff's Chase Ink credit card account as delinquent prior to September 2020 to CREDIT REPORTING AGENCIES created a misleading impression of Plaintiff's creditworthiness.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Denied as untrue. Chase does not "report" information to the CREDIT REPORTING AGENCIES. Chase objects to this request because Chase does not

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

3

1 have information or knowledge regarding how the information it furnishes to the

2 CREDIT REPORTING AGENCIES was or is interpreted by others.

3 **REQUEST FOR ADMISSION NO. 2:**

4     Admit that when it investigated the DISPUTE, JPMorgan Chase Bank, N.A.

5 did not consider whether reporting Plaintiff's Chase Ink credit card account as a

6 charge-off to CREDIT REPORTING AGENCIES created a misleading

7 impression of Plaintiff's creditworthiness.

8 **RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

9     Denied as untrue. Chase does not "report" information to the CREDIT

10 REPORTING AGENCIES. Chase objects to this request because Chase does not

11 have information or knowledge regarding how the information it furnishes to the

12 CREDIT REPORTING AGENCIES was or is interpreted by others.

13 **REQUEST FOR ADMISSION NO. 3:**

14     Admit that JPMorgan Chase Bank, N.A.'s reporting of Plaintiff's Chase Ink

15 credit card account to CREDIT REPORTING AGENCIES as delinquent would

16 reasonably be expected to adversely affect credit decisions made concerning

17 Plaintiff.

18 **RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

19     Denied as untrue. Chase does not "report" information to the CREDIT

20 REPORTING AGENCIES. Chase objects to this request because Chase does not

21 have information or knowledge regarding how the information it furnishes to the

22 CREDIT REPORTING AGENCIES regarding the DISPUTE impacted credit

23 decisions concerning Plaintiff.

24 **REQUEST FOR ADMISSION NO. 4:**

25     Admit that JPMorgan Chase Bank, N.A.'s reporting of Plaintiff's Chase Ink

26 credit card account to CREDIT REPORTING AGENCIES as a charge-off would

27 reasonably be expected to adversely affect credit decisions made concerning

28 Plaintiff.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

4

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Denied as untrue.  Chase does not "report" information to the CREDIT REPORTING AGENCIES.  Chase objects to this request because Chase does not have information or knowledge regarding how the information it furnishes to the CREDIT REPORTING AGENCIES regarding the DISPUTE impacted credit decisions concerning Plaintiff.

**REQUEST FOR ADMISSION NO. 5:**

Admit that JPMorgan Chase Bank, N.A. is a furnisher of information to consumer reporting agencies for purposes of 15 U.S.C. § 1681s–2.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Admitted.

**REQUEST FOR ADMISSION NO. 6:**

Admit that in September 2017, Plaintiff contacted JPMorgan Chase Bank, N.A. to pay off the entire balance of his Chase Ink credit card account and terminate that account relationship with a $0 balance.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Denied as untrue.  As established in the Arbitration, a Chase representative contacted Plaintiff by telephone on September 6, 2017 regarding Plaintiff's Ink credit card account and the Arbitration Award contained a finding that Plaintiff acknowledges he owed $238.52 as of September 6, 2017 which remains unpaid.

**REQUEST FOR ADMISSION NO. 7:**

Admit that JPMorgan Chase Bank, N.A. never provided Plaintiff with a statement with the due date of the alleged amounts overdue on Plaintiff's Chase Ink credit card account prior to October 2020.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Denied as untrue.  Chase refers Plaintiff to the March 3, 2022 Arbitration Award entered in Case No. 01-2-0015-1734 before the American Arbitration Association (the "Arbitration"), which included a finding that "Chase presented

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

5

# PROOF OF SERVICE
*Joshua Johnson vs. JPMorgan Chase Bank, N.A.*
*USDC, Central District, Case No. 2:22-cv-06718-RSWL-MAA*

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 444 South Flower Street, Suite 2200, Los Angeles, California 90071.

On July 26, 2023, I served the foregoing document(s) described as:

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSION, SET ONE**

on the interested parties in this action as follows:

| | |
|---|---|
| L. David Russell, Esq.<br>RUSSELL LAW, PC<br>1500 Rosecrans Avenue, Suite 500<br>Manhattan Beach, CA 90266<br>Telephone: (323) 638-7551<br>Facsimile: (323) 760-7468<br>E-mail: david@russelllawpc.com | ***Attorneys for Plaintiff***<br>***JOSHUA JOHNSON*** |

☒ (**BY ELECTRONIC SERVICE**), I caused a copy of the documents to be sent from nleali@dykema.com to the persons at the email addresses listed in the service list. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ (Federal) I declare that I employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on July 26, 2023 at Los Angeles, California.

———

_____
Nanette Leali

008241.002262  4876-4139-7874.1

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DEFENDANT JPMORGAN CHASE BANK, N.A.'S AMENDED RESPONSES TO PLAINTIFFS' REQUESTS FOR ADMISSION, SET ONE

# EXHIBIT S

Second Amended Rule 30(b)(6) Notice of Deposition

1

2
**RUSSELL LAW, PC**
L. David Russell (Cal. Bar No. 260043)
3
david@russelllawpc.com
1500 Rosecrans Ave, Suite 500
4
Manhattan Beach, California 90266
Telephone: (323) 638-7551
5
Fax: (323) 760-7458
6

7
*Attorneys for Plaintiff Joshua Johnson*

8

9
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
10

11

12
JOSHUA JOHNSON,                          No.: 2:22-cv-06718-RSWL-MAA

13

14
                    Plaintiff,           **SECOND AMENDED NOTICE**
                                         **OF DEPOSITION OF**
15
        v.                               **REPRESENTATIVES OF**
                                         **JPMORGAN CHASE BANK, N.A.**
16
                                         **PURSUANT TO FED. R. CIV. P.**
JPMORGAN CHASE BANK, N.A.,               **30(B)(6)**
17

18
                    Defendant.           Deposition:
19
                                         Date:  October 23, 2023
20
                                         Time: 9:30 a.m.
                                         Place: Remote Deposition
21

22

23

24

25

26

27

28

PLAINTIFF'S RULE 30(B)(6) DEPOSITION NOTICE

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

    **PLEASE TAKE NOTICE** that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, the undersigned counsel for plaintiff JOSHUA JOHNSON ("Plaintiff"), will take by oral examination under oath, on October 23, 2023, commencing at 9:30 am., of the person(s) designated by defendant JPMORGAN CHASE BANK, N.A. ("Defendant" or "Chase"), via virtual deposition using Steno, Zoom, or similar remote platform, and/or via videoconferencing programs.

    The deposition will be taken before a court reporter authorized to administer oaths by the laws of the State of California, and testimony will be recorded stenographically.  The deposition also shall be recorded by audio and videotape. Plaintiff reserves the right to use any part or all of the deposition, including but not limited to the audio or video recording thereof, at trial or at any other hearing in this action in lieu of live testimony of the deponent, as provided in Rule 32 of the Federal Rules of Civil Procedure. The deposition will continue day-to-day until completed, weekends and holidays excepted, unless otherwise agreed by counsel.

    In accordance with Rule 30(b)(6), Plaintiff requests that Defendant prepare its designee(s) to testify "as to matters known or reasonably available to" Defendant regarding the Areas of Examination listed below. Plaintiff also requests that Defendant provide written notice at least five (5) business days before the deposition of the name and employment position of each person designated to testify on Defendant's behalf, identifying the matters set forth below.

//

//

//

//

**Topic No. 18:**

Chase's document retention policies with respects to documents generated and/or reviewed when investigating consumer disputes it receives from consumer reporting agencies.

**Online Access**

**Topic No. 19:**

Procedures regarding merging or linking Chase business and personal banking/credit card accounts in 2017.

**Topic No. 20:**

The procedure for customers to access closed and charged off accounts online, including whether charged off accounts are removed from online access.

**Topic No. 21:**

Procedures for sending "payment due" alerts to Chase Ink Card holders, including whether "payment due" notices were sent to Plaintiff for his Chase Ink Card account.

**Similar Complaints**

**Topic No. 22**:

Prior complaints from 2020 to the present where Chase's customers claimed that Chase inaccurately reported their accounts as chargeoffs.

**Topic No. 23**:

Prior complaints from 2020 to the present where Chase's customers claimed that they could not access the balance of their accounts.

**Topic No. 24**:

Prior complaints from 2020 to the present where Chase's customers claimed that they tried to pay off their entire balance but instead only a minimum payment was applied to their accounts.

**Topic No. 25**:

       Chase's document retention policies in connection with online communications with its customers, from 2018 to the present.

**Topic No. 26**:

       Chase's internal policies and procedures of documenting and investigating customer account inquiries, from 2018 to the present.

**Topics re Chase's Financial Condition / Net Worth**

**Topic No. 27:**

       Defendant's current net worth and financial condition.

**Topic No. 28:**

       The creation of JPMorgan Chase & Co.'s 10-K filings for the years ending (a) December 31, 2018, (b) December 31, 2019, (c) December 31, 2020, (d) December 31, 2021, and (e) December 31, 2022

**Topic No. 30:**

       The creation of JPMorgan Chase & Co.'s 10-Q filings for the periods ending (a) June 30, 2020, (b) September 30, 2020, (c) March 31, 2021, (d) June 30, 2021, (e) September 30, 2021, (f) March 31, 2022, (g) June 30, 2022, (h) September 30, 2022, and (i) March 31, 2022

October 5, 2023             Respectfully submitted,

                                */s/ L. David Russell*

                                **RUSSELL LAW, PC**

                                *Attorneys for Plaintiff Joshua Johnson*

PLAINTIFF'S RULE 30(B)(6) DEPOSITION NOTICE

# **CERTIFICATE OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is 1500 Rosecrans Avenue, Suite 500, Manhattan Beach, CA 90266.

On October 5, 2023, I served the within document(s): **SECOND AMENDED NOTICE OF DEPOSITION OF REPRESENTATIVES OF JPMORGAN CHASE BANK, N.A. PURSUANT TO FED. R. CIV. P. 30(B)(6).**

By transmitting the document(s) listed above, electronically, via the e-mail addresses set for below.

DYKEMA GOSSETT LLP
ASHLEY R. FICKEL, State Bar No. 237111
AFickel@dykema.com
ROBERT A. HYATT, State Bar No. 166178
RHyatt@dykema.com
333 South Grand Avenue, Suite 2100
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 5, 2023

/s/ L. David Russell

L. David Russell

PLAINTIFF'S RULE 30(B)(6) DEPOSITION NOTICE

# EXHIBIT T-1

August 3 2022 Demand

**Demand For Arbitration - Joshua Johnson vs. #5218008140**

**Submission Date: 8/3/2022**

## 1. JAMS Local Center

JAMS resolution center          Arbitration Rules
Century City, California        JAMS Comprehensive Arbitration Rules and Procedures

## Filing & submission fees

### Standard Arbitration

⊙ Consumer pays no more than $250. Company pays the balance of filing fee.

---

**Claimant(s)**

1. Joshua Johnson
2201 5th St Apt 208
90405 Santa Monica CA
336-423-2594
josh@jj88.org

**Claimant Representatives**

A. David Russell
Russell Law, PC
260043CA
1500 Rosecrans Avenue, Suite 500
90266 Manhattan Beach CA
3236387551
david@russelllawpc.com

---

**Respondent(s)**

1.JPMorgan Chase Bank, N.A.
1111 Polaris Parkway
43240 Columbus OH

**Respondent Representatives**

---

## 4. Nature of Dispute

Please see attached document

- **Arbitration Demand [FINAL].pdf** Claims/Responses/Counterclaims

### 5. Agreement

06/05/2019 Email from Chase (Chase@.chase.com) to Joshua Johnson (josh@jj88.org), Paragraph 8.

- **Freedom Arbitration Agreement.pdf** Other

### 6. Consumer & Employment

⊙ YES, this is a CONSUMER ARBITRATION

### 7. Submission information

Name L. David Russell
Address 1500 Rosecrans Avenue, Suite 500
Zip Code 90266
City Manhattan Beach
State CA
Phone 6192090495
E-mail david@russelllawpc.com
☑ I Agree to the Terms of Service

1

2
**RUSSELL LAW, PC**
L. David Russell (Cal. Bar No. 260043)
david@russelllawpc.com
1500 Rosecrans Ave, Suite 500
Manhattan Beach, California 90266
Telephone: (323) 638-7551
Fax: (323) 760-7458

3

4

5

6

7
*Attorneys for Claimant Joshua Johnson*

8

9

**JAMS ARBITRATION**

10

11
JOSHUA JOHNSON, an individual,

12

13
                    Claimant,

14
          v.

15

16
JPMorgan Chase Bank, N.A., and
DOES 1-10, inclusive;

17

18
                    Respondents.

19

20

21

22

23

**REF NO.:**

**ARBITRATION DEMAND FOR:**

1.  **FCRA Private Remedy for Furnisher Reinvestigation Obligations in Response to a Consumer Reporting Agency Request [15 U.S.C. §§ 1681n, 1681o, 1681s-2(b)]**

2.  **CCRAA Private Remedy for Transmitting Incorrect and Inaccurate Information [Cal. Civil Code § 1785.25(a))]**

24

25

26

27

28

# EXHIBIT T-2

August 18 2022 Chase Objection

JAMS ARBITRATION

Joshua Johnson,

      Claimant,                     JAMS Case No.: 5210000148

vs.

JPMorgan Chase Bank, N.A.,

      Respondent.

---

L. David Russell
**Russell Law, PC**
*Attorneys for Joshua Johnson*
1500 Rosecrans Ave., Ste. 500
Manhattan Beach, CA 90266
(323) 760-7458
david@russelllawpc.com

Ashley R. Fickel
**DYKEMA GOSSETT LLC**
*Attorneys for JPMorgan Chase Bank, N.A.*
333 S. Grand Ave., Ste. 2100
Los Angeles, CA 90071
213-457-1800
aficket@dykema.com

---

## JPMORGAN CHASE BANK, N.A.'S
## OBJECTION TO DEMAND FOR ARBITRATION AND REQUEST
## FOR ARBITRATION TO BE STRICKEN / DISMISSED

JPMorgan Chase Bank, N.A. ("Chase") objects to Claimant Joshua Johnson's claim and, pursuant to JAMS Rule 18, requests that JAMS decline administration. There is no agreement between the parties for arbitration. Claimant Johnson's claim should be dismissed and stricken. In support of this objection and request, Chase states as follows:

1.    Claimant commenced an arbitration with the American Arbitration Association ("AAA") Case No 01-20-0015-1734 on October 7, 2020. The claim concerned Claimant's Chase Ink business credit card account, and alleged damages suffered by Claimant from Chase's purportedly false credit reporting.

2.    Arbitrator Charles Holton was appointed on January 4, 2021.

3.      During the course of those proceedings Claimant Johnson objected to arbitration of AAA Case No. 01-20-0015-1734 pursuant to and governed by the terms of the arbitration clause Claimant submitted to his October 7, 2020 claim.

4.      On July 15, 2021, Claimant Johnson proffered an arbitration agreement from the Chase Online Services Agreement, which agreement differed from the one attached to his October 7, 2020 AAA claim.  Arbitrator Holton heard argument from Claimant Johnson and Chase and thereafter determined that the arbitration agreement from the Online Services Agreement (the "OSA") applied to the arbitration of AAA Case No. 01-20-0015-1734.

5.      Arbitrator Holton rendered his Final Award in AAA Arbitration Case No. 01-20-0015-1734 on March 3, 2022.  A true and correct copy of the March 3, 2022 Final Award is attached as Exhibit A.  Arbitrator Holton stated in the Award, "There was a mutual mistake of fact between the parties with Johnson understanding that he was paying the entire balance and Chase understanding that he was paying only the minimum payment.. The equitable remedy which I hereby apply is to order that Chase retract and cause to be removed any and all adverse credit references regarding Johnson arising out of the Ink business credit card account within 30 days of payment by Johnson to Chase or its attorney of the $238.52 **which Johnson acknowledges he owed as of Sept. 6, 2017 and which remains unpaid**.  No damages or other remedies are awarded." (emphasis added).

6.      The **OSA** contains no appellate rights.  A true and correct copy of the OSA is attached as Exhibit B.

7.      On or about March 22, 2022, Claimant Johnson commenced a matter with AAA, which purports to be an appeal of Arbitrator Holton's final award in AAA Case No. 01-20-0015-1734:

008241.002262 4892-2883-6142.1

AAA Case Number: **02**-20-0015-1734 (APPEAL)

Joshua Johnson

-vs-

JPMorgan Chase Bank N.A.

Claimant Johnson contemporaneously filed with the AAA two irrelevant and otherwise inapplicable arbitration agreements containing appellate rights, including the arbitration agreement from his Chase Freedom credit card ending in 5301, the same agreement as put forth in the instant JAMS matter.

8.     Having specifically advocated against the application of the arbitration agreement attached to his original AAA claim on October 7, 2020 [Case No. 01-20-0015-1734] and having argued instead for the application of the OSA, Claimant Johnson may not rely on any appellate rights contained in that rejected arbitration agreement to support his purported AAA appeal.

9.     The dispute in AAA Arbitration Case No. 01-20-0015-1734 did not arise from Johnson's use of his Chase Freedom credit card ending in 5301.

10.     On May 27, 2022, Chase filed a Petition to Confirm March 3, 2022 Arbitration Award and Complaint for Declaratory Relief (the "Petition") in the Los Angeles County Superior Court, case no. 22STCP02017.  A true and correct copy of the petition is attached as Exhibit C.

11.     Through the Petition, Chase seeks to have the Court confirm the March 3, 2022 Award, and for a declaration that Johnson does not have any appellate rights regarding the Award.

12.     After answering the Petition, Claimant now brings the instant Demand for Arbitration with JAMS on an identical nexus of facts that were considered in the AAA arbitration, and the purported AAA Appeal.

13.     Claimant proffers the arbitration agreement associated with his Chase Freedom credit card account ending in 5301 in support of his demand for arbitration.  However, the claim

008241.002262 4892-2883-6142.1

is solely based on purportedly false credit reporting regarding Claimant's Chase Ink business credit card account, the very issue heard and decided during the AAA arbitration.

14.     Because the instant dispute did not arise from Johnson's use of his Freedom Card, the Freedom Card Arbitration agreement provides no basis for the instant Demand for Arbitration. Assuming arguendo that the agreement applies to this arbitration, the agreement states that only a court may determine if the arbitration agreement applies:  "**All issues are for the arbitrator to decide, except that issues relating to the scope, enforceability, interpretation, formation, and validity of this arbitration agreement are for a court to decide**."  Claimant's Arbitration Demand, Exhibit "Important Information regarding  changes to your Chase account", par. 8 under "How does arbitration work?" (emphasis added).  Chase asserts that the Freedom Card Arbitration Agreement does not support Claimant's Demand for Arbitration, and that any dispute over this issue must be decided by a court.  Since Chase has put this issue before the Los Angeles County Superior Court in case no. 22STCP02017, JAMS is without jurisdiction to decide whether the Freedom Card Arbitration Agreement can support Claimant's Demand for Arbitration.

15.     In the alternative, Claimant Johnson should be estopped with proceeding with this Demand for Arbitration because it raises identical factual issues as the prior AAA arbitration. Johnson is precluded from making the claims he asserts because he has already admitted through the course of the AAA arbitration that he had an unpaid balance on his Chase Ink business credit card that remained unpaid through the AAA arbitration.  Johnson's claims for violation of FCRA and CCRAA based on inaccurate reporting regarding his Ink card cannot stand.

Because there is no agreement between the parties for JAMS to administer this Demand for Arbitration, Claimant Johnson has no right to proceed and JAMS is without jurisdiction to

require any payments, appoint any arbitrator(s) or to pursue any act in administration of this claim.

Chase requests that JAMS strike and dismiss this claim.

**DYKEMA GOSSETT PLLC**
*Attorneys for Respondent,*
*JPMorgan Chase Bank, N.A.*

4

## PROOF OF SERVICE

**Joshua Johnson v. JPMorgan Chase Bank, N.A.**
**JAMS Reference #5210000148**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 333 South Grand Avenue, Suite 2100, Los Angeles, California 90071.

On August 18, 2022, I served true copies of the following document(s) described as **JPMORGAN CHASE BANK, N.A.'S OBJECTION TO DEMAND FOR ARBITRATION AND REQUEST FOR ARBITRATION TO BE STRICKEN/DISMISSED** on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

☒**BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with the practice of Dykema Gossett LLP for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.  I am a resident or employed in the county where the mailing occurred.  The envelope was placed in the mail at Los Angeles, California.

☒**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address AFeygin@dykema.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 18, 2022, at Los Angeles, California.

_____
Anna Feygin

008241.002262 4892-2883-6142.1

# EXHIBIT T-3

September 16 2022 JAMS Letter



NOTICE TO ALL PARTIES                                                        September 16, 2022

       RE:    Johnson, Joshua vs. JPMorgan Chase Bank, N.A. – 5210000148

Dear Parties:

JAMS has received and reviewed Respondent's Objection to Demand for Arbitration and Request for Arbitration to be Stricken / Dismissed, and Claimant's response thereto.

The parties' submissions raise numerous issues. This letter addresses the issues most relevant to JAMS' administration of this matter.

Claimant seeks arbitration under his Chase Freedom cardmember agreement. Claimant's statement of claims references his Chase Ink credit card account. Respondent contends the Chase Freedom cardmember agreement does not apply to this dispute and "does not support Claimant's Demand for Arbitration." Objection, no. 14. The Chase Freedom cardmember agreement states, "All issues are for the arbitrator to decide, except that issues relating to the scope, enforceability, interpretation, formation, and validity of this arbitration agreement are for a court to decide." Freedom cardmember agreement, p. 8. Respondent argues this clause requires a court, not an arbitrator, to decide any further issue about whether the Freedom cardmember agreement supports Claimant's Demand for Arbitration.

Claimant argues that Respondent "is not challenging 'the scope, enforceability, interpretation, formation, and validity of this arbitration agreement'." Response, p. 3. "[T]he scope of the arbitration clause is clear and cannot reasonably be subjected to multiple interpretations." *Ibid.* The clause covers "all disputes" with Respondent and thus Respondent cannot argue the clause "is somehow not broad enough" to encompass the present dispute. Response, p. 1. Instead, Respondent's objection represents an arbitrability dispute which, under JAMS Rule 11(b), "can only be raised to the Arbitrator." Response, p. 3.

JAMS Rule 2(a) states, "The Parties may agree on any procedures not specified herein or in lieu of these Rules that are consistent with the applicable law and JAMS policies . . . . The Party-agreed procedures shall be enforceable as if contained in these Rules." As discussed above, the parties' arbitration agreement calls for a court to decide issues concerning the scope and interpretation of the agreement. This includes Respondent's contention that the agreement does not support the Demand and Claimant's contention that the scope "is clear and cannot reasonably be subjected to multiple interpretations." Thus, while JAMS Rule 11(b) calls for the

Johnson, Joshua vs. JPMorgan Chase Bank, N.A. – 5210000148
September 16, 2022
P a g e  | **2**

arbitrator to hear and decide as a preliminary matter issues concerning the scope and interpretation of the agreement, that provision of the JAMS Rules does not apply under the Freedom agreement.  Therefore, in light of Respondent's objection, JAMS is unable to proceed with administration at this time.  If a court orders the parties to proceed at JAMS, or if the parties agree to proceed here, JAMS will resume administration.

Any request for summary disposition under JAMS Rule 18 would be for an arbitrator to decide.

Sincerely,

*/s/ Sheri Eisner*

Sheri Eisner
Senior Vice President, General Counsel
Co-Chair, JAMS National Arbitration Committee