**DYKEMA GOSSETT LLP**
ABIRAMI GNANADESIGAN, State Bar No. 263375
*AGnanadesigan@dykema.com*
444 South Flower Street, Suite 2200
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JOSHUA JOHNSON, | Case No. 2:22-cv-06718-AB-MAAx |
| Plaintiff, | The Hon. André Birotte Jr. |
| | Courtroom  7B |
| v. | |
| | Magistrate Maria A. Audero |
| JPMORGAN CHASE BANK, N.A., | Courtroom: 690 |
| Defendant. | **DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF THOMAS TARTER** |
| | **Date:         January 30, 2026** |
| | **Time:         10:00 AM** |
| | **Location:    Dept 7B** |
| | Complaint Filed:    September 19, 2022 |

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

008241.002262 4904-0842-4325.3

1

DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF THOMAS TARTER

# **TABLE OF CONTENTS**

Page(s)

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 6

I.    INTRODUCTION ................................................................................. 6

II.    BACKGROUND AND SUMMARY OF TARTER'S OPINIONS ................. 8

   A.    Plaintiff's FCRA and CCRAA Allegations ............................................ 8

   B.    Tarter's Misunderstanding of the "Case Facts and Chronology" and the Undisputed Evidence ........................................................ 9

   C.    Tarter's Opinions and Expert Report ...................................... 11

III.    ARGUMENT ...................................................................................... 12

   A.    Legal Standard ........................................................................ 12

   B.    Tarter is Not Qualified to Testify About Alleged Violations of the FCRA or CCRAA .......................................................... 13

   C.    Tarter's Opinions on the Reasonableness of Chase's Investigation Lack Reliable Methodology ............................ 17

   D.    Tarter's Opinion on the Reasonableness of Chase's Investigation Is Based on Incomplete Data ....................................................... 19

   E.    Tarter's Conclusory and Speculative Opinions on Damages Lack Foundation and Reliable Methodology, Warranting Exclusion .......... 22

   F.    Tarter's Legal Opinions and Conclusions Must Be Excluded ............. 24

   G.    Courts Have Repeatedly Excluded Expert Opinions From Thomas Tarter as This Court Should Do Here ...................................... 25

IV.    CONCLUSION ................................................................................... 25

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF THOMAS TARTER

1
2

# <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Cases**

5
6

*640 Octavia, LLC v. Pieper*,
  2019 U.S. Dist. LEXIS 41903 (N.D. Cal. Mar. 14, 2019) ................................. 19

7
8

*Anderson v. Wells Fargo Bank, N.A.*,
  No. 3:16-cv-2514, 2018 WL 3426269 (N.D. Tx. July 13, 2018)..................... 25

9
10

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
  No. 314CV00751GPCAGS, 2019 WL 1369007 (S.D. Cal. Mar. 26, 2019) ..... 24

11
12

*In re C. R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*,
  No. MDL No. 2187, 2018 U.S. Dist. LEXIS 152147
  (S.D. W. Va. Sep. 4, 2018) .......................................................................... 24, 25

13
14

*Casella v. Equifax Credit Info. Serv.*,
  56 F.3d 469 (2d Cir. 1995) ................................................................................ 23

15
16

*City of Pomona v. SQM N. Am. Corp.*,
  750 F.3d 1036 (9th Cir. 2014) .......................................................................... 13

17
18

*Claar v. Burlington N. R.R.*,
  29 F.3d 499 (9th Cir. 1994) .............................................................................. 20

19
20

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) .................................................................... 7, 13, 15, 20

21
22

*Ellis v Penn. Higher Educ. Assistance Agency*,
  No. 07-cv-4498, 2008 WL 5458997 (C.D. Cal. 2008)..................................... 25

23

*Evans v. Mathis Funeral Home, Inc.*,
  996 F.2d 266 (11th Cir. 1993) .......................................................................... 23

24
25

*Garcia v. Los Banos Unified Sch.*,
  No. 1:04-cv-6059, 2006 WL 403844 (E.D. Cal. 2007)..................................... 13

26
27

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) .................................................................................. 19, 20

28

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

*Gorman v. Wolpoff & Abramson*,
584 F.3d. 1147 (9th Cir. 1009) .................................................................... 6

*Gustafson v. Experian Info. Solutions, Inc.*,
No. 2:14-cv-01453, 2015 U.S. Dist. LEXIS 71280
(C.D. Cal. June 2, 2015) ........................................................................... 25

*Ladner v. Equifax Credit Info. Servs., Inc.*,
828 F.Supp. 427 (S.D. Miss. 1993) ............................................................ 23

*Lucindo v. Nestle Purina Petcare Co.*,
217 F.Supp.3d 1098 (N.D. Cal. 2016) ....................................................... 14

*Malone v. Potter*,
2009 WL 10672523 (C.D. Cal. Feb 25, 2009) ........................................... 19

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
523 F.3d 1051 (9th Cir. 2008) ................................................................... 24

*Noah Ford v. I.Q. Data International, Inc.*,
Case No. C22-1791 TSZ (W.D. Wash. September 5, 2024) ....................... 25

*Pet Chalet, Inc. v. Cnty. of Riverside*,
2015 WL 13918085 (C.D. Cal. Sept. 10, 2015) ......................................... 19

*Powell v. Anheuser-Busch Inc.*,
2012 WL 12953439 (C.D. Cal. Sept. 24, 2012) ......................................... 19

*Primiano v. Cook*,
598 F.3d 558 (9th Cir. 2010) ..................................................................... 13

*Smith v. Pac. Bell Tel. Co.*,
649 F.Supp.2d 1073 (E.D. Cal. 2009) ........................................................ 24

*Taylor v. Ill. Cent. R.R. Co.*,
8 F.3d 584 (7th Cir. 1993) .......................................................................... 23

*Thomas J. Kline, Inc. v. Lorrilard, Inc.*,
878 F.2d 791 (4th Cir. 1989) ...................................................................... 15

*Tinsley v. TRW, Inc.*,
879 F.Supp. 550 (D. Md. 1995) .................................................................. 23

*Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co.*,
958 F.2d 1169 (1st Cir. 1992) .................................................................... 16

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

008241.002262 4904-0842-4325.3

4

DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
EXCLUDE OPINIONS AND TESTIMONY OF THOMAS TARTER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

*U.S. v. Chang*,
    207 F.3d 1169 (9th Cir. 2000) ............................................................... 14

*United States v. Bilzerian*,
    926 F. 2d 1285 (2d Cir. 1991) ................................................................ 24

*United States v. Gaybor*,
    106 F. App'x 561 (9th Cir. 2004) ........................................................... 23

*United States v. Hanna*,
    293 F.3d 1080 (9th Cir. 2002) ............................................................... 24

**Statutes**

15 U.S.C §1681s-2(b)(1)(A) ....................................................................... 6

California Consumer Credit Reporting Agencies Act ................................. 6

Fair Credit Reporting Act ..................................................................... 6, 14

DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
EXCLUDE OPINIONS AND TESTIMONY OF THOMAS TARTER

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff offers his proposed expert, Thomas Tarter, to serve as a conduit to present Mr. Johnson's arguments and theories with the aura of expertise, but with the biases of an advocate. Rule 702 prevents this tactic. It is clear Mr. Tarter, who for the majority of his career (32 years) has worked as consumer side plaintiff's expert in cases against financial institutions, has no business providing any opinion, let alone an expert opinion, about Mr. Johnson's claims that Chase violated the Fair Credit Reporting Act and its California equivalent, the California Consumer Credit Reporting Agencies Act:

- While Mr. Tarter spent 24 years (1969 – 1993) employed by small regional banks in various positions, his testimony firmly establishes that he lacks the most basic knowledge, skill, experience, training or education with respect to modern day state of the art banking practices essential for the provision of expert testimony and opinions regarding the reasonableness of practices and procedures furnishers like Chase should utilize to comply with the reasonable investigation requirements of 15 U.S.C §1681s-2(b)(1)(A) and *Gorman v. Wolpoff & Abramson*, 584 F.3d. 1147 (9th Cir. 1009).

- It would be charitable at best to say that that Mr. Tarter employed *a* "methodology" to support his opinions. To the extent a methodology may be discerned, it is that Chase's reinvestigation efforts did not comply when compared to vaguely defined banking industry standards, which approach (particularly considering Tarter's antiquated work experience) is inherently unreliable.

- Tarter's factual assumptions are either incomplete, inaccurate, or contradicted by undisputed evidence – primarily Plaintiff's sworn testimony from AAA Arbitration Case No. 01-20-0015-1734-2 (the "Arbitration"), which evidence/ testimony was not provided by Plaintiff to his expert, and which Tarter saw

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

for the first time at his December 4, 2025 deposition.

- Although listed as an *expert* to testify about Plaintiff's economic and non-economic damages, Mr. Tarter has no such expertise. Because Plaintiff did not provide Tarter with any evidence of specific credit applications and/or declinations (because they do not exist), Tarter's damages testimony is riddled with unsubstantiated abstractions like "chilling effect" (a purported reason why Plaintiff made no applications), "expectancy" and "high probability." These "opinions" are the definition of speculative (lacking record support). And, because he is not a medical professional, Mr. Tarter's opinions regarding non-economic (emotional harm) damages are *per se* inadmissible.

- While the foregoing provide reason enough to exclude Mr. Tarter as an expert, there is one more and, perhaps, more compelling reason Tarter should be excluded from providing testimony. He actually destroyed his file – including the "Chase produced documents" and "Mr. Johnson produced documents" referenced in his Report – and, resultantly, Tarter brought virtually nothing with him to his deposition as commanded by Chase's subpoena. Indeed, Tarter had no recollection of what specific Chase or Plaintiff documents he reviewed and Chase could not cross examine him on that topic. While Tarter suggested he could improvise his expert testimony – "[A]t trial … any document would be produced and * * * I could at that moment re-collect and have my memory … refreshed" – it is simply beyond specious to suggest that such extemporaneous expert testimony meets the standards of *Daubert*. (Declaration of Abirami Gnanadesigan ("Gnanadesigan Decl."), Exh. B, Thomas Tarter Deposition, ("Tarter Dep.") 96: 7-23).

- Mr. Tarter's entire Report is otherwise riddled with legal conclusions that must be precluded.

///

008241.002262 4904-0842-4325.3

7

DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF THOMAS TARTER

Numerous courts have excluded Mr. Tarter from providing expert opinion testimony and Chase respectfully requests that this Court do the same.

## II.    BACKGROUND AND SUMMARY OF TARTER'S OPINIONS

### A.    Plaintiff's FCRA and CCRAA Allegations

On August 24, 2020, Plaintiff submitted an online dispute with Equifax regarding his Ink card (Statement of Undisputed Facts, Dkt. 68-2 ("Facts"), No. 10). As part of the online dispute process, Plaintiff provided a narrative description of his dispute in a text box provided. (Facts, No. 11). Equifax transmitted an Automated Consumer Dispute Verification ("ACDV") to Chase in order for Chase to investigate the disputed information. (Facts, No. 12). Equifax described the dispute as "claims account take-over, fraudulent [sic] charges on account." (Facts, No. 13). Equifax also included in the FCRA Relevant Information field on the ACDV, Plaintiff's written text: "Chase never sent a paper bill, never called, never emailed, or otherwise attempted to make me aware in any way that the account carried a balance while the account was open. I regularly logged into my Chase account online and observed a $0 balance." (Facts, No. 14). Plaintiff asserts that Chase did not conduct a reasonable investigation of his Equifax Dispute, wherein he disputed information furnished by Chase to the bureaus relating to his Ink Card. (Complaint, ¶ 8).[1]

///

///

---

[1] In his Complaint Plaintiff expanded on the actual language of the dispute by asserting: "Plaintiff disputed Chase's reporting [sic] … that Plaintiff's Chase Ink credit card account was delinquent without reporting … that (a) in September 2017, Plaintiff contacted Chase to pay off the entire balance of his account and terminate his account relationship with a $0 balance…." This language appears nowhere in the Equifax Dispute.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

**B.    Tarter's Misunderstanding of the "Case Facts and Chronology" and the Undisputed Evidence**

Before addressing the unsubstantiated nature of Tarter's "opinions," Chase respectfully submits this Court should be informed of the divergence between Tarter's understanding of certain key  "case facts" and the reality of the evidence:[2]

| Tarter's Case Facts And Chronology | Evidence |
| --- | --- |
| Mr. Johnson was unable to use the online system to either access his Ink credit card statements and/or to make payments. | Tarter's understanding is directly rebutted by Plaintiff's sworn testimony in the Arbitration. Johnson testified that there were two Chase online accounts and he did not know if he was logging into the wrong account and seeing a zero dollar balance." (Gnanadesigan Decl., Exh. C, June 8 Transcript pp. 11-12; 54 and 55). Plaintiff also testified he "no longer became aware" (i.e., he forgot) of the credentials he created to access the Ink Card Account. (Gnanadesigan Decl., Exh. D, July 15 Transcript pp. 30-31). Tarter did list the March 3, 2022 Arbitration Award (the "Award") in the list of |

[2] This divergence arises in large part because Plaintiff never provided Tarter transcripts from the four days of testimony from the Arbitration occurring on June 8, 2021, July 15, 2021, September 17, 2021 and September 29, 2021. The June 8 recording of the hearing was transcribed by Chase. Plaintiff transcribed the July 15 hearing.  Chase is having these hearings transcribed by a court reporter. The last two days of hearing were transcribed by a court reporter.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF THOMAS TARTER

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

| | |
|---|---|
| | documents he destroyed. In the Award, now a Judgment, Arbitrator Holton held that Johnson's difficulty in logging in to his account may have been the result of forgetting that he created a separate User ID and the separate account existed. (Facts No., 29, Arbitration Award, p. 2). Tarter was not aware of Johnson's testimony. (Gnanadesigan Decl., Exh. B, Tarter Dep., 67: 23 – 69:24). |
| On September 6, 2017, Chase contacts Mr. Johnson, via a telephone call, to demand payment on his Ink Card Account. Mr. Johnson requests that the Chase agent pay off the entire balance he owed Chase on the Ink Card Account, but the Chase agent only paid the minimum due ($111.49) leaving a $238.52 balance, which was unknown to Mr. Johnson. | The issue of the September 6, 2017 call was submitted to and decided by the Arbitrator. Chase testified that Plaintiff sought only to pay the minimum. Johnson testified he sought to pay the entire balance. The Arbitrator decided that both parties were mistaken. (Facts No., 29, Arbitration Award, p. 2). And Award was confirmed as a judgment of the Los Angeles County Superior Court by order dated May 9, 2025. (Facts No., 37). No expert, let alone Tarter, should include a "case fact" (i.e., that Johnson was right and that Chase was wrong) directly contrary to a binding Judgment. |

008241.002262 4904-0842-4325.3

10

DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF THOMAS TARTER

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

| | |
|---|---|
| On September 15, 2017, Mr. Johnson calls Chase requesting Chase to close his Ink Credit Account and terminate the relationship with a zero-dollar balance. Mr. Johnson was not informed that he still owed $238.52 on the Ink Card Account. | There is no evidence relative to a call on September 15, 2017. |
| Between September 15, 2017 and April 2, 2018, Chase does not make contact with Mr. Johnson by phone, letter, or email to inform him that of the balance. | Johnson testified that he received statement notification emails after September 15, 2017. (Gnanadesigan Decl. , Exh. E, September 17, 2021 Transcript, pp. 200). |

## C.    Tarter's Opinions and Expert Report

Plaintiff engaged Thomas Tarter, a professional plaintiff's expert and former banker who has not worked in the banking industry since 1993, to opine primarily[3]

_____

[3] Earlier in his report Tarter also stated that he was retained to formulate opinions regarding "banking industry standards that come into play when a customer requests that a credit card account be paid off and terminated."  (Gnanadesigan Decl., Exh. A, Tarter Report, p. 4).  This is an FCRA case and Chase's actions relating to closure of Plaintiff's Ink Card account are not at issue – particularly where the issue was decided in the Arbitration. But more to the point -- because Plaintiff's Equifax Dispute related solely to Chase's alleged lack of communications with Plaintiff while his "account was open," Tarter should not be permitted to testify about issues that exceed the scope of the Equifax Dispute.

that: "(1) Chase's investigation of Mr. Johnson's FCRA complaint was not reasonable; (2) Chase's credit bureau reporting [sic], which failed to acknowledged [sic] that it was possible that it made an error, mistake or a misunderstanding occurred, was not industry standard; and (3) Mr. Johnson suffered damages…in an amount that should be quantified by the jury." (Gnanadesigan Decl., Exh. A, Tarter Report, p. 30). Mr. Tarter's purported experience is based entirely on his professional background which includes a decades-old banking career and testimony as a purported consumer advocate. (Gnanadesigan Decl., Exh. A, Tarter Report, see exhibit A to Tarter Report). Mr. Tarter lacks the relevant work experience, training, or education to qualify as an expert on furnisher investigations or policies and procedures governing furnisher investigations.

Mr. Tarter similarly lacks the expertise necessary to assist a jury in assessing damages for credit injury or emotional harm. He has no training or experience relevant to assessing damages in general, or in Plaintiff's case in particular. Mr. Tartar has never worked and has no training as an accountant, lender, or financial planner. Nor does he have any training (let alone a degree or credentials) as a psychiatrist or medical professional. (*Id.*).

Finally, Plaintiff has expressed his intention to call Mr. Tarter as an expert at trial, but Mr. Tarter admitted that although he was never advised as such, he assumed this matter had concluded, and that he destroyed his expert file in conjunction with this case. (Gnanadesigan Decl., Exh. B, Tarter Dep., 38:19-40:11) Mr. Tarter's opinions are based on an incomplete record, and in fact, he has no recollection of what case-specific documents he reviewed to write his report. (Gnanadesigan Decl., Exh. B, Tarter Dep., 83:3-85:22).

## III.    ARGUMENT

### A.    Legal Standard

Expert testimony is admissible if (1) the witness is qualified to testify as an expert, (2) the expert's specialized knowledge "will help the trier of fact to

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

understand the evidence or to determine a fact at issue," (3) "the testimony is based on sufficient facts or data," (4) "the testimony is the product of reliable principles and methods," (5) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Fed. R. Evid. 702. "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 597 (1993). The party seeking to admit expert testimony bears the burden to establish by a preponderance of the evidence that the testimony is admissible. *Id.* at 592 n. 10. Expert testimony "'is reliable if the knowledge underlying it has reliable basis in the knowledge and experiences of the relevant discipline.'" *City of Pomona v. SQM N. Am. Corp.,* 750 F.3d 1036, 1044 (9th Cir. 2014) (quoting *Primiano v. Cook,* 598 F.3d 558, 565 (9th Cir. 2010)).

As detailed below, Mr. Tarter is simply not qualified to render any opinions regarding the accuracy of the information furnished by Chase, the reasonableness of Chase's investigation, and/or Plaintiff's purported damages. Furthermore, his scant analysis does not even rise to the level of a reliable methodology and what little assessment he did was based on an incomplete record. Finally, his opinions are improper legal or unsupported factual conclusions that would not aid the trier of fact in this case. Accordingly, the Court should exclude his testimony.

## B.    Tarter is Not Qualified to Testify About Alleged Violations of the FCRA or CCRAA

A witness' qualification as an expert can only be determined by comparing the specific subject matter of the proposed testimony to the area in which the witness has superior knowledge, skill, experience, or education. *Garcia v. Los Banos Unified Sch.,* No. 1:04-cv-6059, 2006 WL 403844, at *20 (E.D. Cal. 2007) (noting that expertise in mediating personnel disputes does not qualify a witness as an expert regarding the adequacy of an employer's response to a sexual harassment

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

008241.002262 4904-0842-4325.3

13

DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
EXCLUDE OPINIONS AND TESTIMONY OF THOMAS TARTER

complaint); *U.S. v. Chang,* 207 F.3d 1169, 1172-73 (9th Cir. 2000) (A witness that was "extremely qualified" in international finance was not qualified to testify as to the authenticity of specific security instruments); *Lucindo v. Nestle Purina Petcare Co.,* 217 F.Supp.3d 1098, 1107 (N.D. Cal. 2016) (excluding expert testimony where the expert had no specialized knowledge on the adequacy of the defendant's testing procedures).

Two things are clear from a review of Tarter's Report and his answers to questions at his deposition. He was employed in the banking industry from 1969 – 1993 and in the 32 years since then he has been a professional consumer plaintiff's expert.

Mr. Tarter proclaims himself an expert regarding the reasonableness of furnisher investigations under the Fair Credit Reporting Act, but merely being employed by a bank does not qualify someone with such expertise. There are many jobs at banks (president, credit risk professional, loan officer, teller, underwriter, loan officer and even janitor) that do not necessarily instill superior knowledge, skill, or experience regarding investigation of consumer complaints. There is nothing in the qualifications section of Mr. Tarter's Report nor in his resume reflecting any experience conducting investigations related to customer disputes filed with consumer credit reporting agencies such that he could be considered an expert. There is nothing in his Report describing his specific education or experience with FCRA compliance, and he has not published any articles regarding FCRA compliance. (Gnanadesigan Decl., Exh. A, See exhibit A to Tarter Report). His deposition clarified that his work experience related to matters involving (i) *consumer and commercial credit transactions* (financing transactions and work relating to consumer loan portfolios involving mortgages and auto-related financing) (Gnanadesigan Decl., Exh. B, Tarter Dep., 14:17-24), (i) *work as a senior credit officer* (setting policies and reviewing credit reports and procedures and risk management  pertaining to the extension of consumer credit) (Gnanadesigan Decl.,

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

Exh. B, Tarter Dep., 15:9-12), (iii) *work as a regional vice president* (working again with consumer and commercial credit and the development of policies and procedures relating to those sort of transactions) (Gnanadesigan Decl., Exh. B, Tarter Dep., 16:6-12), (iv) and *president and CEO* (recruiting staff, working with regulators to obtain approval, reviewing policies and procedures pertaining to the origination and approval of extensions of credit as well as credit reporting, SBA lending, mortgage lending and duties related to acquisitions of other banks) (Gnanadesigan Decl., Exh. B, Tarter Dep., 17: 4-18:24). In fact, it appears that the majority of Tarter's experience with consumer dispute investigations would best be described as remote as an officer of various banks thirty years ago:

> Q. In your time at San Juan Bank of California were you ever responsible for conducting investigations as to consumer credit disputes?
>
> A. Rarely. But I was involved with setting policies and procedures from a supervisorial perspective. (Gnanadesigan Decl., Exh. B, Tarter Dep., 21:17-19)
>
> Q. During your time at the Bank of Los Angeles, were you ever responsible for conducting investigations as to consumer credit disputes?
>
> A. Yes, ma'am. I was the chief executive officer of the bank, and I provided – or made sure we had policies and procedures that were extensive. (Gnanadesigan Decl., Exh. B, Tarter Dep., 23: 8-11)

The sort of policies and procedures Tarter implemented are discussed below, but it goes without saying that general unrelated banking experience dating back to the 1990's  - when modern day banking practices and technology had not yet been developed and online banking services looked vastly different - is clearly insufficient.

Tarter's most recent experience related to the FCRA and CCRAA is limited to unspecified litigation through his company The Andela Consulting Group, Inc., where he exclusively serves in a pro-plaintiff capacity. (Gnanadesigan Decl., Exh. B, Tarter Dep., 25:18-26:20). Experience as a professional expert is not a sufficient qualification. *See Daubert,* 43 F.3d at 1317. *Thomas J. Kline, Inc. v. Lorrilard, Inc.,*

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF THOMAS TARTER

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

878 F.2d 791, 799 (4th Cir. 1989) is instructive. In that case, the plaintiff called an "expert" who would testify that a certain credit practice was tantamount to price discrimination. But the witness was not an economist, she had no experience in making credit decisions, and she had done no research or writing in the subject matter of her testimony. Indeed, her only stated qualification was that she was employed by a company who hired out experts to testify in sophisticated financial litigation. The court of appeals understandably concluded that this was not enough. It declared that "[a]lthough the spirit of the Rules of Evidence is to eschew excessive restrictions on the admissibility of testimony, the plain language of the Rules maintains some limitations on expressions of opinion." It further stated that while it could not conclude that the witness's status as a professional expert alone required exclusion of her testimony, "it would be absurd to conclude that one can become an expert simply by accumulating experience in testifying." *See also Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co.*, 958 F.2d 1169 (1st Cir. 1992) (no error in excluding testimony concerning mechanical defects in a crane; the witness was a civil, rather than mechanical, engineer with no experience or training regarding the design and manufacture of cranes, and he had a "hired gun" background as an instant expert in an astonishing number of other areas that suggested he would not possess the professional safeguards ensuring objectivity). Mr. Tarter's experience over the last three decades consists almost exclusively of providing expert opinions for Plaintiffs involved in litigation against financial institutions. His apparent recycling of generic opinions notwithstanding the factual differences from case to case is apparent in the mistaken references in his report to Citibank, an institution that has nothing to do with this case. (See Gnanadesigan Decl., Exh. A, Tarter Report, p. 16, "if a consumer disputes the accuracy of the payment history on their Chase credit card to Trans Union, Trans Union will send an ACDV to Chase informing Citibank of the consumer's dispute and Citibank will respond to that dispute by returning the ACDV to Trans Union."). This alone warrants Tarter's

exclusion.

### C. Tarter's Opinions on the Reasonableness of Chase's Investigation Lack Reliable Methodology

Completely absent from Tarter's report and testimony is the basic "*how and why*" he formed his opinions. For example and simply put:

1.  Here is what Chase did to investigate the Equifax Dispute

2.  Here is what Chase should have done when it investigated the Equifax Dispute.

3. Chase's investigation of the Equifax Dispute was defective because….

Plaintiff was provided a copy of Chase's then applicable 161 page Card Dispute Resolution Processing manual, but rather than discuss the processes and procedures disclosed Tarter merely referenced the fact that it was something he allegedly reviewed. Tarter's report is riddled and punctuated with conclusory statements and vague references to "banking industry standards" or just "industry standards" without explaining what specific standard Chase allegedly violated or how any violation occurred. (See for example, Gnanadesigan Decl., Exh. A, Tarter Report, p. 2,  4, 19). In the section of his report titled "Banking Industry Standards and Practices," Mr. Tarter references the Federal Deposit Insurance Corporation, DOS Manual of Examination Policies (the "FDIC Exam Manual") in passing, but does not point to any specific provision that Chase violated,  nor does he discuss how and why this manual contains the relevant standard for a FCRA investigation.[4] In fact, in

---

[4] What Tarter refers to as the FDIC Exam Manual may be found here: https://www.fdic.gov/risk-management-manual-examination-policies. The manual contains several links and portals which generally detail how bank examiners assess banks for safety, soundness, and compliance, focusing on ratings to gauge risk and solvency of loan portfolios, bank management and securities (such as the adequacy

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

the remainder of the Report there is no mention whatsoever of the FDIC Manual or its applicability to the facts of this case. Tarter also references the Consumer Data Industry Association's Credit Reporting Resource Guide ("Metro 2") which he claims informs a credit furnisher's process for filling out the response of Automated Credit Dispute Verifications sent regarding customer disputes. (Gnanadesigan Decl., Exh. A, Tarter Report, p. 15). But again, Tarter does not provide any discussion about what Chase should have done per Metro 2, or what it allegedly failed to do.[5]

Instead of applying the industry standards he cites, Tarter seems to rely exclusively on his experience to conclude that Chase's investigation was not reasonable. For example, Tarter states:

- "It has been my direct experience that financial institutions are well aware of their liability as well as their accountability and responsibility for correcting credit card payment errors and mistakes as well as promptly and timely correcting trade line credit reporting in credit card account relationships." (Gnanadesigan Decl., Exh. A, Tarter Report, p. 18).

- "It has been my direct experience that bank customers should not be expected (forced) to have to undertake Herculean efforts after informing their financial institution of payment errors and inaccurate credit reporting, such as having to hire an attorney. Here, Chase, based on the chronology and facts set forth

---

of capital, asset quality, earnings, and liquidity). It remains a mystery after Tarter's deposition what any of this has to do with the reasonableness of Chase's investigation of the Equifax Dispute.

[5] General information about the Metro 2® may be found here: https://www.cdiaonline.org/resources/furnishers-of-data-overview/metro2-information.  As with the FDIC Exam Manual, absent from Tarter's Report and testimony is any elucidation of how Chase's investigation did not measure up to applicable standards. Indeed, it is not even clear that Tarter has access to the Metro 2® because he did not testify or provide proof that he is an approved user (i.e., you have to pay for it) for purposes of this case.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

above, clearly did not act consistent with the industry standards." (Gnanadesigan Decl., Exh. A, Tarter Report, p. 19).

- "It has been my direct experience that financial institution personnel (at all levels) are generally trained to recognize the fundamental concept of good faith and fair dealing and that they have an obligation of good faith and in their job performance and how they act in the ordinary course of business with bank customers. That did not occur with Mr. Johnson. Chase never acknowledged that an error, mistake, and/or misunderstanding may have happened." (Gnanadesigan Decl., Exh. A, Tarter Report, p. 23).

Where a witness "relies solely on [her] experience to explain the conclusions [s]he drew from the discovery in the case without explaining why and how [s]he came to [her] conclusions," the witness's testimony should be excluded under Rule 702. *640 Octavia, LLC v. Pieper,* 2019 U.S. Dist. LEXIS 41903, at *6 (N.D. Cal. Mar. 14, 2019); *see also Powell v. Anheuser-Busch Inc.,* 2012 WL 12953439, at *6 (C.D. Cal. Sept. 24, 2012) (excluding expert witness whose opinions were based solely on experience); *Pet Chalet, Inc. v. Cnty. of Riverside,* 2015 WL 13918085, at *3 (C.D. Cal. Sept. 10, 2015) (excluding expert testimony regarding industry standards based solely on witness's experience); *Malone v. Potter,* 2009 WL 10672523, at *4 (C.D. Cal. Feb 25, 2009) (excluding expert testimony regarding defendant's policies and procedures based solely on expertise explaining how experience provided a reliable basis for his opinions). Tarter sets forth the above-referenced opinions without even attempting to explain how his experience provides a basis for those opinions. Based on the foregoing, Tarter's conclusion that Chase's investigation was unreasonable is connected to the existing data only by Tarter's *ipse dixit,* warranting exclusion. *See Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997).

### D.    Tarter's Opinion on the Reasonableness of Chase's Investigation Is Based on Incomplete Data

Tarter's opinion rests on the conclusion that "there was no interdepartmental

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

008241.002262 4904-0842-4325.3

communication speaking directly with the investigator or the collectors or other departments." (Gnanadesigan Decl., Exh. B, Tarter Dep., 57:4-7) Notwithstanding his passing references to impressive sounding documents such as the FDIC Exam Manual and the Metro 2®, Tarter points to neither these documents nor any statute or regulation as support for his conclusion – instead, testifying it is "Just a good business practice." (Gnanadesigan Decl., Exh. B, Tarter Dep., 58:20-59:2).

This testimony is not only based on antiquated experience from the time when Tarter was an employee of several small California based regional banks, [6] but it is also based on an incomplete record and inaccurate assumptions. Expert testimony must be excluded if based upon unreliable data. *GE v. Joiner,* 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered); *Claar v. Burlington N. R.R.,* 29 F.3d 499, 503 (9th Cir. 1994) (Holding that expert opinion lacked a factual basis as the expert did not conduct validating tests and merely formed an initial

---

[6] It is apparent that Tarter's perception of a "good business practice" is drawn from his experience back in the day (pre 1993) working as an employee of small California based regional banks. When asked if he was involved back then in the creation of policies and procedures regarding the reasonableness of investigations as to credit disputes Tarter testified: "[T]here would be a memorandum or some form of written communication that would be maintained and established by the bank and placed in a file. And you can easily see who they contacted, what was said, and what the question was that was of potentially concern or a verification of a relationship. And at that time, since it was largely done on a personal basis, it was important that people would know who was contacted and what was said." (Gnanadesigan Decl., Exh. B, Tarter Dep., 22:19- 23:3)

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF THOMAS TARTER

1    tentative hypotheses);

2        Mr. Tarter bases his opinions that (1) Chase's investigation of Mr. Johnson's

3    FCRA complaint was not reasonable; and (2) Chase's credit bureau reporting [sic],

4    which failed to acknowledged [sic] that it was possible that it made an error, mistake

5    or a misunderstanding occurred, was not industry standard, on the following

6    assumptions:

7    •    "Between September 15, 2017 and April 2, 2018, Chase does not make
         contact [with] Mr. Johnson by phone, letter, or email to inform him of the
8        balance" on his Ink credit card. (Gnanadesigan Decl., Exh. A, Tarter Report,
9        p. 10).

10   •    "Mr. Johnson was unable to use the online system to either access his Ink
         credit card statements and/or to make payments." (Gnanadesigan Decl., Exh.
11       A, Tarter Report, p. 10).

12

13       But as noted, the evidence shows that Plaintiff did receive notifications and

14   correspondence for his payment obligations. Chase verified that it had made 11 calls

15   to Plaintiff between September 6, 2017, and May 23, 2018. (Facts, No. 20). Chase

16   also verified that it had sent several letters to Plaintiff at his address/email address of

17   record stating that a payment was missed or notification of a possible change in

18   status of the account. *Id.* In addition, Chase confirmed that Plaintiff had enrolled in

19   paperless statements, and that statement notifications were successfully sent

20   monthly. *Id.* Mr. Johnson also testified in the prior Arbitration that he forgot about

21   his credentials for is online account which he established for access to his paperless

22   credit card statements and that he may have been accessing the wrong online

23   account when trying to view his Ink card records. (Gnanadesigan Decl., Exh. C,

24   June 8 Transcript pp. 11-12 and 54-55; and Exh. D, July 15 Transcript pp. 30-31).

25       Mr. Tarter also bases his opinions on the assumption that there were

26   "inaccuracies related to Mr. Johnson's Chase Ink Card tradeline." (Gnanadesigan

27   Decl., Exh. A, Tarter Report, p. 11). However, Plaintiff admitted in his June 7 brief

28   in the Arbitration that he was liable for the account, and hence the information

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

reported to the CRAs by Chase was accurate. (Facts No. 28). Tarter has no recollection as to whether he reviewed communications between Plaintiff and Chase regarding the availability of online statements or account statements sent to Plaintiff, and his Report does not specify whether they were considered in his analysis. (Gnanadesigan Decl., Exh. B, Tarter Dep., 83:3-85:22; Expert Report Section Re Documents Reviewed). Mr. Tarter admits that he never received or reviewed Plaintiff's testimony in the arbitration, and as such, he did not consider this key evidence in formulating his opinions. (Gnanadesigan Decl., Exh. B, Tarter Dep., 36:21-25).

Finally, in forming his opinions, Mr. Tarter fails to meaningfully address the detailed testimony from Chase's corporate representative, Barbara Burda, who testified as to the thorough investigation taken as reflected in Chase's business records. Plaintiff acknowledged that Chase produced a copy of its then applicable (publish date of 01/08/2020) 161 page Card Dispute Resolution Processing manual relating to containing the written procedure that Chase had in place in August and September 2020 for conducting FCRA dispute investigations, but Tarter makes no mention or reference to this written procedure or Burda's testimony. Tarter's disregard for this uncontroverted evidence, outlining Chase's extensive investigation process, wholly undermines Tarter's conclusions that Chase's investigation was unreasonable and that Chase's credit reporting did not follow his concept of industry standards.

### E.    Tarter's Conclusory and Speculative Opinions on Damages Lack Foundation and Reliable Methodology, Warranting Exclusion

Mr. Tarter asserts that Plaintiff suffered economic damages due to Chase's reporting but conducts no economic analysis at all. He fails to thoroughly examine Plaintiff's credit history, debt-to income ratio, or other pertinent financial metrics that could have impacted Plaintiff's alleged economic damages including increased cost of credit, lowered credit score, and loss of credit availability. Tarter seeks to

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

008241.002262 4904-0842-4325.3

22

DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF THOMAS TARTER

offer an opinion that Chase's alleged FCRA violation resulted in a mortgage denial, but Tarter ignores Plaintiff's significant admissions that he never actually applied for a loan or placed an offer on a home that was rejected. (Gnanadesigan Decl., Exh. B, Tarter Dep., 51:12-23; 52:17-53:20). Such damages are speculative and not recoverable. *See Casella v. Equifax Credit Info. Serv.,* 56 F.3d 469, 475 (2d Cir. 1995) ( a plaintiff cannot recover lost opportunity damages based on a loss of a home loan where the plaintiff did not actually apply for the loan); *Tinsley v. TRW, Inc.,* 879 F.Supp. 550, 552 (D. Md. 1995); *Ladner v. Equifax Credit Info. Servs., Inc.,* 828 F.Supp. 427, 431-32 (S.D. Miss. 1993).

Mr. Tarter also offers a wide range of opinions concerning general generic harms suffered by victims of credit reporting inaccuracies including a "chilling effect," expenditure of time and energy, and credit stigma. Generic opinions of this nature, which are little more than observations requiring no expertise, are not helpful to the trier of fact. Courts have routinely excluded similar testimony. *See, e.g.*, *Taylor v. Ill. Cent. R.R. Co.*, 8 F.3d 584, 585-86 (7th Cir. 1993) ("This issue … boils down to whether a pile of large rocks is harder to stand on than a pile of smaller rocks. Notwithstanding [the expert's] lengthy experience in the railway industry, any lay juror could understand this issue without the assistance of expert testimony."); *United States v. Gaybor*, 106 F. App'x 561, 562-63 (9th Cir. 2004) (affirming exclusion of expert where "proffered testimony regarding the effect of Gaybor's inattentiveness and the armored car's convex mirrors, did not concern subjects requiring 'expert illumination'"); *Evans v. Mathis Funeral Home, Inc.*, 996 F.2d 266, 268 (11th Cir. 1993) (affirming exclusion of expert testimony describing factors leading to a fall as "(1) the uneven risers and treads, (2) the brick patio and steps, (3) the height of the handrail, and (4) the dim light").

Further, as he concedes, Tarter lacks any experience or expertise in medicine, psychiatry, psychology, or mental health. (Gnanadesigan Decl., Exh. A, Tarter Report, p. 26). As such, he is not qualified to provide a medical opinion on

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

emotional harm Plaintiff allegedly suffered as a result of Chase's actions. Tarter's lay opinion would not be helpful to a jury who could make this determination on its own, and should be excluded. *See e.g., United States v. Hanna,* 293 F.3d 1080, 1085-1086 (9th Cir. 2002).

### F.    Tarter's Legal Opinions and Conclusions Must Be Excluded

Tarter should be precluded from offering any legal opinions and conclusions on the ultimate issues presented in Plaintiff's complaint. Tarter's expert report is riddled with legal conclusions that are ultimately meant for the jury to decide, including regarding:

- The sufficiency of Chase's FCRA investigation. (Gnanadesigan Decl., Exh. A, Tarter Report, p. 17).
- Chase's duty of care (Gnanadesigan Decl., Exh. A, Tarter Report, p. 2)
- The nature of Plaintiff's damages (Gnanadesigan Decl., Exh. A, Tarter Report, p. 2, 25-30).

Courts have long held that "an expert witness cannot give an opinion as to her legal conclusion, i.e. an opinion on an ultimate issue of law." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.,* 523 F.3d 1051, 1058-59 (9th Cir. 2008); *Smith v. Pac. Bell Tel. Co.,* 649 F.Supp.2d 1073, 1089-90, 1097-98 (E.D. Cal. 2009). Such testimony is improper under Fed. R. Evid. 702 because it "usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *See United States v. Bilzerian,* 926 F. 2d 1285, 1294 (2d Cir. 1991). Consequently, to the extent that an expert purports to offer a legal opinion on an ultimate issue, such testimony must be excluded. *Bona Fide Conglomerate, Inc. v. SourceAmerica,* No. 314CV00751GPCAGS, 2019 WL 1369007, at *3 (S.D. Cal. Mar. 26, 2019); *In re C. R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig*, No. MDL No. 2187, 2018 U.S. Dist. LEXIS 152147, at *10-11 (S.D. W. Va. Sep. 4, 2018) (excluding expert testimony that opined a parties actions were "reasonable and appropriate"), ("opinions that state a legal standard usurp the

008241.002262 4904-0842-4325.3

24

DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF THOMAS TARTER

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

1  jury's role and will not be accepted at trial"). *Id.*

2       Tarter's attempt to recharacterize his legal assessments as business opinions

3  fails. (Gnanadesigan Decl., Exh. A, Tarter Report, p. 9, 16). This Court should

4  exclude Tarter's legal opinions regarding the sufficiency of Chase's investigation

5  under the FCRA, Chase's duty of care, and the nature and availability of Plaintiff's

6  damages.

7      **G.**    **Courts Have Repeatedly Excluded Expert Opinions From Thomas**

8          **Tarter as This Court Should Do Here**

9       Courts have repeatedly excluded Mr. Tarter's conclusory opinions regarding a

10  defendant's failure to comply with vague "industry standards." *See Gustafson v.*

11  *Experian Info. Solutions, Inc.,* No. 2:14-cv-01453, 2015 U.S. Dist. LEXIS 71280

12  (C.D. Cal. June 2, 2015) (finding Tarter's testimony was inadmissible as it consisted

13  of improper legal conclusions and failed to specify what information he relied on in

14  reaching his conclusions); *Ellis v Penn. Higher Educ. Assistance Agency,* No. 07-cv-

15  4498, 2008 WL 5458997, at *6 (C.D. Cal. 2008) (excluding Tarter's opinion as to

16  what a reasonable investigation under the FCRA entails); *Anderson v. Wells Fargo*

17  *Bank, N.A.,* No. 3:16-cv-2514, 2018 WL 3426269, at *19 (N.D. Tx. July 13, 2018)

18  (excluding Tarter's impermissible legal opinions and purported

19  medical/psychological damages); *Noah Ford v. I.Q. Data International, Inc.,* Case

20  No. C22-1791 TSZ (W.D. Wash. September 5, 2024) (granting motion to exclude

21  Tarter's testimony regarding the FCRA finding Tarter is not qualified to testify

22  about the legal standards of, alleged violations of, or defenses to this statute and

23  others). Similarly, and for the reasons described in detail above, Tarter's opinions

24  should be excluded here.

25  **IV.**   **CONCLUSION**

26       Mr. Tarter lacks the necessary expertise to offer his opinions, failed to

27  articulate any methodology for his opinion (let alone adequate and reliable

28  methodologies), and grounded his opinions in factual assumptions contradicted by

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
EXCLUDE OPINIONS AND TESTIMONY OF THOMAS TARTER

1    the record. He also destroyed his file rendering his December 4, 2025 cross

2    examination almost a nullity. The result is a speculative advocacy pieced with no

3    relation to the record evidence, which is replete with improper legal conclusions and

4    general abstract musings or factual recitations that will not assist the trier of fact.

5    Mr. Tarter's opinions are improper and should be precluded from this case.

6

7    DATED:  January 2, 2026              DYKEMA GOSSETT LLP

8

9

10   By:  _____

11        ABIRAMI GNANADESIGAN
         Attorneys for Defendant
12        JPMORGAN CHASE BANK, N.A.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
EXCLUDE OPINIONS AND TESTIMONY OF THOMAS TARTER

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant JPMorgan Chase Bank, N.A., certifies that this brief contains 5,607 words, which complies with the word limit of L.R. 11-6.1.


DATED:  January 2, 2026                DYKEMA GOSSETT LLP


By: _____
ABIRAMI GNANADESIGAN
Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

008241.002262 4904-0842-4325.3

27

**PROOF OF SERVICE**
*Joshua Johnson vs. JPMorgan Chase Bank, N.A.*
*USDC, Central District, Case No. 2:22-cv-06718-AB-MAA*

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 444 South Flower Street, Suite 2200, Los Angeles, California 90071.

On the date set forth below, I served the foregoing document(s) described as:

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF THOMAS TARTER**

on the interested parties in this action as follows:

Joshua Johnson                          **PLAINTIFF PRO SE**
2201 5th St. Apt 208
Santa Monica, CA 90405

Tel: (336) 423-2594
Email: iosh@ii88.org

☒**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Dykema Gossett LLP for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Los Angeles, California.

☒**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address MMendoza@dykema.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 2, 2026, at Los Angeles, California.

_____
Mitzi Mendoza

DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF THOMAS TARTER

**DYKEMA GOSSETT LLP**
**444 SOUTH FLOWER STREET**
**SUITE 2200**
**LOS ANGELES, CALIFORNIA 90071**