**Joshua Johnson**
1373 Caminito Halago
La Jolla, CA 92037
(336) 423-2594
josh@jj88.org
IN PRO PER

FILED
CLERK, U.S. DISTRICT COURT

1/10/2026

CENTRAL DISTRICT OF CALIFORNIA
BY _____ RYO _____ DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

JOSHUA JOHNSON,

    Plaintiff,

  v.

JPMORGAN CHASE BANK, N.A.,

    Defendant.

Case No.: 2:22-cv-06718-AB-MAAx

**JOSHUA JOHNSON'S OPPOSITION TO JPMORGAN CHASE'S MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF THOMAS TARTER**

Judge:    Hon. André Birotte Jr.
Place:    Courtroom 7B
Date:    January 30, 2026
Time:    10:00 AM

## <u>TABLE OF CONTENTS</u>

**I. INTRODUCTION** ............................................................................ **3**

**II. EVIDENTIARY OBJECTIONS** ................................................ **3**

    A. Use of the Deposition Transcript is Barred by Rule 32(a)(5)(A) .................. 3

    B. Arbitration Transcript Lacks Foundation; Use is Barred by Agreement ........ 5

        1. Use Is Barred by the Parties' Express Non-Use Agreement ..................... 5

        2. The Transcript Lacks Foundation and Is Demonstrably Inaccurate .......... 6

        3. Ninth Circuit Precedent Requires Exclusion of the Transcript ................. 7

**III. LEGAL STANDARD** .................................................................. **8**

**IV. ARGUMENT** ................................................................................. **8**

    A. Tarter Is Qualified to Offer His Opinions ...................................................... 8

        1. Tarter is Qualified by His Extensive Knowledge and Experience ............ 9

        2. Courts Have Consistently Found Tarter Qualified .................................. 10

    B. Tarter's Opinions Rest on Sufficient Facts and Data .................................... 12

        1. Chase's Delay in Deposing Tarter Does Not Warrant Exclusion ........... 13

        2. Disputed Factual Assumptions Go To Weight, Not Admissibility ......... 13

    C. Tarter's Opinions Are Based on Reliable Principles, Reliably Applied ....... 14

        1. Courts Have Consistently Found Tarter's Methodology Reliable .......... 15

        2. Tarter's Methodology Is Reliable and Is Reliably Applied Here ............ 16

        3. Chase Misrepresents Tarter's Engagement With the Record ................... 18

    D. Tarter Does Not Offer Improper Legal Conclusions .................................... 19

        1. Tarter May Testify Regarding the Sufficiency of Chase's Investigation . 20

        2. Tarter May Testify About the Nature of Johnson's Damages ................. 20

**V. CONCLUSION** ........................................................................... **23**

JOSHUA JOHNSON'S OPPOSITION TO JPMORGAN CHASE'S MOTION TO EXCLUDE OPINIONS AND
TESTIMONY OF THOMAS TARTER

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I. INTRODUCTION**

Plaintiff Joshua Johnson ("Johnson") opposes Defendant JPMorgan Chase Bank, N.A.'s ("Chase") Motion to Exclude the Opinions and Testimony of Thomas Tarter ("Motion" or "Mot.") for three reasons. *First*, the Motion relies on evidence that is inadmissible. The use of the deposition of Thomas Tarter ("Tarter") is barred by Fed. R. Civ. P. 32(a)(5)(A) because the deposition was taken on less than 14 days' notice while a promptly filed motion for a protective order was pending. Similarly, use of an uncertified arbitration transcript is precluded by the parties' agreement limiting its use to prior arbitration proceedings. *Second*, Tarter is undeniably qualified under Federal Rule of Evidence 702. With over 50 years of experience in the banking industry, he possesses the specialized knowledge necessary to assist the jury. *Third*, Tarter's opinions are reliable and rooted in the record. Rather than offering "vague" conclusions, his report applies specific operational experience and regulatory guidance to the facts of this case to identify concrete failures in Chase's investigation. Chase's criticisms target the weight of the opinions, not their admissibility, and properly belong at trial.

**II. EVIDENTIARY OBJECTIONS**

**A. Use of the Deposition Transcript is Barred by Rule 32(a)(5)(A)**

Chase's motion repeatedly cites to the deposition transcript of Tarter. Use of this deposition is barred by Fed. R. Civ. P. 32, which states, in relevant part: "(a) *Using Depositions*. (1) *In General*. At a <u>hearing or trial, all or part of a deposition may be used against a party on these conditions</u>: ... (C) <u>the use is allowed by Rule 32(a)(2) through (8)</u>. ... (5) *Limitations on Use*. (A) *Deposition Taken on Short Notice*. <u>A deposition must not be used against a party who, having received less than 14 days' notice of the deposition, promptly moved for a protective order under Rule 26(c)(1)(B) requesting that it not be taken or be taken at a different</u>

time or place—and this motion was still pending when the deposition was taken." Fed. R. Civ. P. 32 (emphasis added).

Tarter completed his expert report on November 29, 2023. (Dkt. 105-2 (Report) at 1). Nearly two years later, on November 21, 2025, Johnson received notice that Tarter had been served with a subpoena *duces tecum* demanding his appearance at a deposition 13 days later, on December 4, 2025 at 10:00 a.m., and to bring various documents. (Dkt. 88-1 ¶ 3).

In addition to filing written objections to the short-notice deposition and to certain document requests, Johnson promptly met and conferred with opposing counsel and requested an informal discovery conference ("IDC") immediately thereafter. (Dkt. 90; Declaration of Joshua Johnson (Johnson Decl.) ¶ 4–5, Ex. A, B). On December 2, 2025, an IDC was held. On December 4, 2025 at 4:47 a.m., prior to the six-hour deposition, Johnson moved for a protective order under Rule 26(c)(1)(B) requesting that it not be taken. (Johnson Decl. ¶ 6, Ex. C).[1]

Because Johnson received only 13 days' notice of Tarter's deposition, moved for a protective order as quickly as possible while complying with the local rules, and because the motion was pending when the deposition was taken, it must not be used against Johnson. *See Liberty Mut. Ins. Grp. v. Panelized Structures, Inc.*, No.

---

[1] On December 8, 2025, this Court denied Chase's ex parte application for an order extending the expert discovery deadline beyond December 5, 2025: "For the reasons explained in Plaintiff's opposition, Defendant has not shown the diligence required to support an ex parte application, nor the good cause required to extend the expert discovery deadline ... the Court vacated the stay on May 27, 2025 (see Dkt. No. 65), thus resuming Defendant's opportunity to conduct discovery, yet Defendant did not pursue the desired expert discovery until it served its subpoena on November 20, 2025." (Dkt. 94).

1  2:10-cv-01951-JCM-PAL, 2011 WL 6780875, at *3, *7 (D. Nev. Dec. 27, 2011);

2  *Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*, No. 1:17-cv-00519-

3  DCN, 2021 WL 2444157, at *6–7 (D. Idaho June 15, 2021) ("Even if the Court

4  would have exercised its discretion to allow the short-noticed depositions to move

5  forward had it had time to address the [motion] before the depositions took place,

6  the Court lacked such discretion once the depositions started."); *Automated*

7  *Transactions LLC v. First Niagara Fin. Grp., Inc.*, No. 10-CV-00407, 2011 WL

8  13213256, at *2 (W.D.N.Y. May 10, 2011) (rejecting argument that Rule

9  32(a)(5)(A) is discretionary and holding that "the clear language of Rule 32(a)(5)(A)

10  ... leaves [the Court] with no discretion, reasonable or otherwise"). Accordingly, this

11  Court should strike or disregard the deposition transcript and any argument that

12  depends on it.

13  **B. Arbitration Transcript Lacks Foundation; Use is Barred by Agreement**

14  **1. Use Is Barred by the Parties' Express Non-Use Agreement**

15      Chase's motion also relies on an uncertified transcript of the first day of the

16  arbitration hearing, which took place on June 8, 2021. (Mot. at 9–11). On that date,

17  Johnson emailed counsel for Chase, Joseph Hickey ("Hickey"), to request

18  permission to "record[] the audio of the Zoom [arbitration] hearing" "in the event

19  that post-hearing briefs are necessary." (Johnson Decl. ¶ 7, Ex. D). Chase agreed.

20  Then, during the hearing, Chase solicited and obtained an agreement from Johnson

21  that there was "absolutely no use for any recording being used outside of these

22  proceedings":

23      Hickey: I was talking to Andy [inside counsel for Chase] during our

24      break. We would appreciate it – we don't mind the recording being

25      taken, but I approached Josh before about keeping stuff confidential.

26      <u>There is absolutely no use for any recording being used outside of these</u>

27      <u>proceedings</u>. And we would like that understood.

28

...

Arbitrator: I think we have agreement that <u>the recording will not be
used beyond this proceeding in any off-shoot from this proceeding</u>.

(Johnson Decl. ¶ 8, Ex. E).

On July 14, 2021, Hickey stated via email that Chase would be recording the
second day of the arbitration hearing. Johnson objected on the grounds that the
"[d]eadline for a stenographic recording" had passed. On July 15, 2021, at the second
day of the arbitration hearing, Johnson maintained his objection, explaining that the
difference was that "[t]here were constraints placed on the recording as far as the
sharing of parties." (Johnson Decl. ¶ 9, Ex. F). Hickey confirmed the arrangement:
"if I may reply to the constraints for the Mr. Johnson's recording, the first hearing
certainly applied here as well. <u>We're not going to share it outside of this proceeding</u>."
*Id*. (emphasis added).

## 2. The Transcript Lacks Foundation and Is Demonstrably Inaccurate

Also on July 15, 2021, Hickey informed Johnson and the arbitrator that
"Sheila" had created a transcript of the June 8, 2021 hearing for "dinner and a drink",
not a court reporter, and acknowledged its unreliability: "It <u>may not be accurate</u>. If
you have an issue, just go and listen to it. So what Sheila and our Chicago office did,
she did a very credible job and I offered dinner and a drink, but it's with that
understanding." (Johnson Decl. ¶ 10, Ex. F (emphasis added)).

More importantly, the transcript actually is inaccurate. Chase excerpted,
highlighted, and relies upon a passage from page 11 wherein Johnson allegedly
states "there was a separate account that was extensively linked to this card" to
advance an argument that Johnson set up a separate online account for the credit card
at issue and simply failed to access it. (Mot. at 9). But "extensively" should be
"ostensibly", which reverses the meaning. (Dkt. 105-2 at 101; Johnson Decl. ¶ 11).
Because the recording is in Chase's sole possession and was not produced during

discovery, Johnson was not afforded an opportunity to cross-examine "Sheila" and is unable to review the entirety of the cited excerpts for other errors. (Johnson Decl. ¶ 12).

**3. Ninth Circuit Precedent Requires Exclusion of the Transcript**

When current counsel for Chase, Abi Gnanadesigan ("Gnanadesigan"), presented the transcript during Tarter's deposition, Johnson objected on the record. (Johnson Decl. ¶ 10, Ex. G).

Chase could have obtained a certified transcript but chose not to, yet now seeks to use this admittedly unreliable version against Johnson. Nearly four years after the hearing, Chase claims that it "is having these hearings transcribed by a court reporter." (Mot. at 9 n.2).

The Ninth Circuit enforces ADR confidentiality/non-use agreements by excluding evidence derived from the ADR proceeding. In *Facebook, Inc. v. Pac. Nw. Software, Inc.*, the district court excluded evidence of "what was said and not said during the mediation," and the Ninth Circuit held the district court "was right to exclude" that evidence because the parties' confidentiality agreement provided that "[n]o aspect of the mediation shall be relied upon or introduced as evidence in any arbitral, judicial, or other proceeding." 640 F.3d 1034, 1041 (9th Cir. 2011). *See also Johnson v. America Online, Inc.*, 280 F. Supp. 2d 1018, 1027 (N.D. Cal. 2003) (granting a motion to strike where a party attached and relied on mediation materials subject to a confidentiality agreement); *Mitchell Health Techs., Inc. v. Naturewell, Inc.*, No. 02-C-0439-C, 2002 WL 32356855, at 1–2 (W.D. Wis. Dec. 2, 2002) (order granting motion to strike where "plaintiffs disclosed testimony covered by a confidential arbitration agreement").

Chase's reliance on the June 8, 2021 arbitration transcript should be barred because it lacks foundation and violates the parties' express non-use agreement. Chase solicited—and obtained—an on-the-record agreement that there was

"absolutely no use for any recording being used outside of these proceedings," and the arbitrator confirmed the parties' agreement that "the recording will not be used beyond this proceeding in any off-shoot from this proceeding." Accordingly, the Court should strike (or at minimum disregard) the transcript and any argument that depends on it.

## III. LEGAL STANDARD

Under Rule 702, an expert may testify if (a) their "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," (b) "the testimony is based on sufficient facts or data," (c) the testimony is grounded in "reliable principles and methods," and (d) the principles and methods are "reliably applied" to the facts. Fed. R. Evid. 702.

"The Rule 702 inquiry is 'flexible' and 'must be tied to the facts of a particular case.'" *United States v. Alatorre*, 222 F.3d 1098, 1102 (9th Cir. 2000) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993). District courts have "broad latitude" not only "in determining whether an expert's testimony is reliable," but also "in deciding how to determine the testimony's reliability." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004). The district court's role is to "screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014).

## IV. ARGUMENT

### A. Tarter Is Qualified to Offer His Opinions

As set forth below, Tarter is eminently qualified to offer the opinions contained in his expert report based on his extensive knowledge and experience in the banking industry, and courts have consistently found him qualified to testify on

1  the precise topics at issue in this case. Chase's arguments to the contrary
2  mischaracterize both Tarter's qualifications and the relevant case law.

3  **1. Tarter is Qualified by His Extensive Knowledge and Experience**

4      "An expert should be qualified 'by knowledge, skill, experience, training, or
5  education." Fed. R. Evid. 702. Here, Tarter is qualified because he has over 50 years
6  of experience in banking, including service as a bank CEO, senior credit officer, and
7  regional vice president, with direct involvement in credit card operations, dispute
8  resolution, and policy development. (Dkt. 105-2 (Report) at 4–7, 34–57). Chase's
9  arguments to the contrary are unsupported by the record and many are contradicted
10 by its own motion. Each is addressed in turn.

11     First, Chase's argument that Tarter "lacks the relevant work experience,
12 training, or education to qualify as an expert on furnisher investigations or policies
13 and procedures governing furnisher investigations" is facially contradicted by his
14 deposition testimony (cited in Chase's motion), wherein, with respect to
15 "investigations as to consumer credit disputes", he testified that he was "involved
16 with setting policies and procedures from a supervisorial perspective". (Mot. at
17 12:9–11, 15:11–18).

18     Second, Chase claims that Tarter "has never worked and has no training as an
19 accountant, *lender*, or financial planner" (Mot. at 12:15–16 (emphasis added)). In
20 his aforementioned testimony (again, quoted directly in the motion), he states that
21 he "was the chief executive officer of the bank". A "bank" is "an establishment for
22 the custody, loan, exchange, or issue of money, for the extension of credit, and for
23 facilitating the transmission of funds." MERRIAM-WEBSTER'S COLLEGIATE
24 DICTIONARY s.v. "bank" (11th ed. 2003) (emphasis added).

25     Third, Chase states that "it goes without saying" that general unrelated
26 banking experience dating back to the 1990's - when modern day banking practices
27 and technology had not yet been developed and online banking services looked

28

JOSHUA JOHNSON'S OPPOSITION TO JPMORGAN CHASE'S MOTION TO EXCLUDE OPINIONS AND
TESTIMONY OF THOMAS TARTER

vastly different - is clearly insufficient". (Mot. at 15:20–23). Technology may have changed; if anything, banking standards have tightened. Chase fails to identify a single change relevant to the facts of this case.

Fourth, Chase says that "in the 32 years" since founding Andela Consulting Group, "[Tarter] has been a professional consumer plaintiff's expert". (Mot. at 14:8–10). But Tarter's curriculum vitae states that, in addition to serving as an expert witness, he provides "management, financial, and advisory services involving corporate governance, commercial and consumer credit, credit damages, credit cards, deposit accounts, management, court approved directorships, court approved financial advisor and financial institution matters." Chase cites *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799 (4th Cir. 1989) and *Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co.*, 958 F.2d 1169 (1st Cir. 1992). (Mot. at 15:28–16:16), both of which are inapplicable. The former involves a non-economist testifying as to economics and the latter involves a non-mechanical engineer testifying as to mechanical engineering. Here, we have an ex-bank CEO testifying as to banking. These are not the same.

**2. Courts Have Consistently Found Tarter Qualified**

Chase cites four cases in support of its argument that "Courts have repeatedly excluded Mr. Tarter's conclusory opinions regarding a defendant's failure to comply with vague 'industry standards.'" (Mot. at 25:7–10).

The lead case Chase cites in support of its argument is *Gustafson v. Experian Info. Sols. Inc.*, No. 2:14-CV-01453-ODW EX, 2015 WL 3477071 (C.D. Cal. June 2, 2015). In that decade-old case, the Court found a declaration submitted by Tarter, concerning a highly technical violation of the FCRA known as delinquency "double-counting", to be conclusory. *Id.* The instant case case does not involve a double-counting violation; more importantly, as explained *infra*, the bases for Tarter's

1  opinions are contained in his report, were subject to cross-examination by Chase at
2  his deposition, and will be again at trial.

3      The other referenced cases fare no better. In *Ellis v. Pennsylvania Higher*
4  *Educ. Assistance Agency*, No. CV 07-04498DDPCTX, 2008 WL 5458997 (C.D.
5  Cal. Oct. 3, 2008), the Court "exclud[ed] [Tarter's] opinion as to what a reasonable
6  investigation would have been" because it "appeared to rest on the conclusion that
7  the investigation was inadequate because it did not result in a correction". *Id*. Unlike
8  this 17-year-old case, and as discussed *infra*, Tarter's report here describes, with
9  specificity, why Chase's investigation was inadequate. Notably, the Court in *Ellis*
10 found that "Tarter is qualified as an expert in the field of credit scoring and credit
11 stigma", his "methodology is reliable", and was "reliably applied". *Id*. In *Anderson*
12 *v. Wells Fargo Bank, N.A.*, No. 3:16-CV-2514-N, 2018 WL 3426269 (N.D. Tex.
13 July 13, 2018), the Court found that "Tarter is not qualified to testify regarding the
14 [Plaintiff's] purported medical or psychological damages". *Id*. Here, Tarter has not
15 been retained to testify as to such. Similar to the *Ellis* Court, the Court in *Anderson*
16 found that "Tarter is, however, qualified to testify with respect to the [Plaintiff's]
17 remaining damages, including items such as cost of credit and loss of credit
18 expectancy. Tarter's Report sets forth in detail his extensive experience of over 40
19 years in bankruptcy, consumer credit, loan servicing, debt collection, credit scoring,
20 and computation of credit damages." *Id*.

21     Finally, in *Ford v. I.Q. Data Int'l, Inc.*, No. C22-1791 TSZ, 2024 WL 4069177
22 (W.D. Wash. Sept. 5, 2024), the Court solely excluded testimony concerning legal
23 conclusions and otherwise found that "Tarter has significant experience working in
24 the financial and credit reporting industry" that "provides him with a reliable basis
25 from which he may opine". *Id*.

26     Tarter has testified in well over 300 cases. (Report). Consistent with the cases
27 cited by Chase, numerous courts—including in decisions rendered as recently as
28

JOSHUA JOHNSON'S OPPOSITION TO JPMORGAN CHASE'S MOTION TO EXCLUDE OPINIONS AND
TESTIMONY OF THOMAS TARTER

September 2025, and in cases affirmed by the Ninth Circuit—have found Tarter qualified to opine on the matters at issue here. See *Oestreicher v. Flagstar Bank*, No. 23-CV-0239 (RER) (LKE), 2025 WL 3755609 at *5 (E.D.N.Y. Sept. 29, 2025) ("Tarter has over fifty years of experience in banking, consumer credit, [and] credit damages"); *Seungtae Kim v. BMW Fin. Servs. NA, LLC*, 142 F. Supp. 3d 935 (C.D. Cal. 2015), aff'd sub nom. *Kim v. BMW Fin. Servs. NA LLC*, 702 F. App'x 561 (9th Cir. 2017) (holding that the jury could rely on Tarter's expert testimony that the derogatory tradeline was a "very serious" derogatory and that similar derogatories lower credit scores, affect employment prospects, and raise insurance costs); *Downs v. River City Group, LLC*, 2015 U.S. Dist. LEXIS 18217, at *19-20 (D. Nev. Feb. 13, 2015) (examining Tarter's qualifications and experience including, *inter alia*, "Tarter has worked for banks and financial institutions for more than forty years, has been involved in lending disputes, and has conducted audits 'pertaining to suspicious circumstances involving consumer credit disputes, dispute resolution, loan commitments, underwriting and due diligence, loan servicing, mortgage broker relationships, bank and financial service industry practices.'").

## B. Tarter's Opinions Rest on Sufficient Facts and Data

Chase's attacks on the factual foundation of Tarter's opinions are unavailing. Tarter reviewed the discovery materials in this case, cited the documents he relied upon in his report, and applied his decades of banking experience to render well-supported opinions. Chase's complaints—that Tarter did not retain copies of documents already in Chase's possession, and that Chase disagrees with certain factual assumptions—are matters that go, at best, to the weight of testimony rather than its admissibility.

"Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc.*, 43

F.3d 1311, 1315 (9th Cir. 1995). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, … not exclusion." *Primiano v. Cook*, 598 F.3d 558 (9th Cir. 2010).

### 1. Chase's Delay in Deposing Tarter Does Not Warrant Exclusion

Chase contends that Tarter "has no recollection of what case-specific documents he reviewed to write his report" and that Tarter "destroyed his file," purportedly rendering the cross-examination at his deposition on December 4, 2025 "almost a nullity." (Mot. at 12:22–23, 26:1–2).

Tarter's report was provided to Chase on December 5, 2023, and at that time Tarter was supplied with copies of materials produced by the parties during discovery; Chase inexplicably waited two years to depose Tarter. All documents relied on—and indeed all documents reviewed—were in Chase's possession before his report was produced. They are also enumerated in his report. (Report at 7–8). Chase's quibble appears to be regarding two categories: "Chase produced Documents" and "Johnson produced Documents". This simply refers to documents produced in discovery. If Chase wished to validate the specific documents in these categories, Johnson would have been willing to provide counsel with the Dropbox file folder containing all documents provided to Tarter, which remains unmodified. (Johnson Decl. ¶ 13). Chase's contention also mischaracterizes what Tarter testified to—when presented with specific documents during his deposition, Tarter answered directly as to whether he had reviewed that specific document.

### 2. Disputed Factual Assumptions Go To Weight, Not Admissibility

Chase argues that "Tarter's factual assumptions are either incomplete, inaccurate, or contradicted by undisputed evidence". (Mot. at 6:25–26). However, mere disagreement with an expert's assumptions is not a basis to exclude expert testimony. *Unknown Party v. Ariz. Bd. of Regents*, 641 F. Supp. 3d 702, 727 (D. Ariz. 2022). Nor does reliance on assumptions supplied by a party bar admissibility.

*SiteLock LLC v. GoDaddy.com LLC*, 562 F. Supp. 3d 283, 329 (D. Ariz. 2022) (quoting *United States v. Pac. Health Corp.*, No. CV 12-00960-RSWL-AJWx, 2018 WL 1026361, at *4 (C.D. Cal. 2018)). Instead, challenges to an expert's factual basis go to weight, not admissibility. *Pelican Int'l, Inc. v. Hobie Cat Co.*, 655 F. Supp. 3d 1002, 1034 (S.D. Cal. 2023); *In re Qualcomm Antitrust Litig.*, 328 F.R.D. 280, 305 (N.D. Cal. 2018) (collecting cases).

Chase's criticisms rest on isolated facts which are one-sided, false, unsupported and incomplete. Each is based either on Chase's statement of (purportedly) uncontroverted facts (rejected via the Court's denial of summary judgment), on a mischaracterization of the arbitration hearing transcript (the use of which is barred), or on the arbitration award (which has no preclusive effect, per this Court's denial of summary judgment). (Dkt. 80 at 4). A Rule 702 motion should not be a disguised motion for summary adjudication and disputed factual issues do not provide grounds for excluding expert testimony. At best, Chase's motion raises issues going to the weight of the evidence, not its admissibility.

## C. Tarter's Opinions Are Based on Reliable Principles, Reliably Applied

Rule 702 requires that (1) the expert's testimony be based on sufficient facts and data; (2) the expert's testimony be the product of reliable principles and methods; and (3) the expert apply the principles and methods reliably to the facts of the case. See Fed. R. Evid. 702. "[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999). "In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

Chase advances several arguments to challenge the reliability of Tarter's opinions. First, Chase argues that Tarter's report and testimony omit the basic "how and why" he formed his opinions. (Mot. at 17:4–5). Second, it argues that Tarter's

references to industry standards, including an FDIC manual and "Metro 2" guide, are vague and unapplied. (Mot. at 17:14, 19–21; 18:3–7). Third, it argues that Tarter failed to engage with key evidence—particularly Chase's dispute procedures and the testimony of Chase's corporate representative describing Chase's investigation process. (Mot. at 22:10–13). None of these arguments have merit.

**1. Courts Have Consistently Found Tarter's Methodology Reliable**

Owing to Tarter's extensive experience as an expert witness, courts have been repeatedly presented with—and rejected—the arguments Chase makes in its motion. As one court stated, with respect to this same argument concerning Tarter:

> A trial court "is not required to rigidly apply the specific factors relating to expert scientific evidence to cases involving expert specialized knowledge evidence." For specialized non-scientific testimony like Tarter's, the district court therefore exercises its gate-keeping function by analyzing the expert's reliability, which "depends heavily on the <u>knowledge</u> and <u>experience</u> of the expert, rather than the methodology or theory behind" the testimony. ...
>
> <u>[Defendant] argues that Tarter's opinions are not based on reliable methods because his conclusions were based largely on personal opinions rather than objective methodology</u>. Moreover, [Defendant] argues that Tarter's legal conclusions constitute improper expert witness testimony. Finally, [Defendant] argues that Tarter's expert testimony will not help the jury determine facts at issue. <u>The court disagrees</u>.

*Downs v. River City Grp.*, LLC, No. 3:11-CV-00885-LRH, 2015 WL 631294 (D. Nev. Feb. 13, 2015) (citing *United States v. Hankey*, 203 F.3d 1160, 1168–69 (9th Cir.2000)) (citations omitted) (emphasis added). As discussed *supra*, Tarter has extensive knowledge and experience in the relevant topics.

Recently, the Eastern District of New York rejected a bank's argument that Tarter's opinion was "unsupported by reliable methodology" because his "report does not cite formal industry publications or regulatory guidance." *Oestreicher v. Flagstar Bank*, No. 23-CV-0239 (RER) (LKE), 2025 WL 3755609 (E.D.N.Y. Sept. 29, 2025). Many other court have held similarly. In *Anderson v. Wells Fargo Bank, N.A.*, No. 3:16-CV-2514-N, 2018 WL 3426269 (N.D. Tex. July 13, 2018), the Court found that "in nonscientific cases such as this one, 'the relevant reliability concerns may focus on an expert's personal knowledge or experience.'" and Tarter's methodology was "sufficiently reliable." *See also Ellis v. Pennsylvania Higher Educ. Assistance Agency*, No. CV 07-04498DDPCTX, 2008 WL 5458997, at *5 (C.D. Cal. Oct. 3, 2008) ("Tarter's methodology is reliable, and was reliably applied"); *Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222 (C.D. Cal. 2007) ("[Tarter's] report complies with Federal Rule of Evidence 702", "is the product of reliable principles and methods", and he "has applied those principles and methods reliably to the facts"); *see also* Brinkman v. Acct. Resol. Servs., No. 8:20-CV-2453-VMC-AAS, 2021 WL 4340413, at *3 (M.D. Fla. Sept. 23, 2021) (finding that a banking expert's "methodology of analyzing a data furnisher's policies and actions by comparing them to standard industry practices is reliable, so long as he is able to explain the basis for his knowledge of industry standards").

**2. Tarter's Methodology Is Reliable and Is Reliably Applied Here**

Chase argues that Tarter's report and testimony lack articulated reasoning. To the contrary, Tarter applies a case-specific, step-by-step analysis in his report.

First, Tarter begins by explaining the Credit Reporting Agency ("CRA") dispute workflow and what the furnisher is expected to do when it receives notice via an Automated Credit Dispute Verification ("ACDV"). (Report at 15–16).

Second, he states the operational expectation that, in order to complete a "final credit reporting decision," a furnisher must draw on the full set of reasonably

available internal resources, rather than a narrow slice of information. (Report at 15–16 ["[i]n the ordinary course of business, furnishers are expected to utilize all reasonable available resources"]; *Id*. at 15–16 n.11 ["all of the disputing consumer's existing credit and deposit accounts with the furnisher, collection notes and information required to be contained in the furnisher's central information system"]).

Third, he supports this with specific regulatory guidance from the Consumer Financial Protection Bureau ("CFPB"), admonishing furnishers to "direct[] dispute-handling agents to compare the disputed information to all available information in all systems of record that could contain information relevant to a consumer's dispute". (Report at 8; Tarter Dep. 62:1–16). *See* Supervisory Highlights: Consumer Reporting Special Edition, 82 Fed. Reg. 16,808 (Apr. 6, 2017) (FR Doc. No. 2017-06904).

Fourth, he identifies specific investigative steps Chase performed and specific steps it failed to perform—with pinpoint citations to the deposition of Chase's corporate representative. Tarter documents that "Chase's investigation of the FCRA complaint was deficient in at least the following ways": "Chase's investigation likely took only a few days. (Burda Dep. 49)", "Chase failed to investigate or validate where the $499 balance came from. (Burda Dep. 77)", "Chase failed to recover purged comments in its system of record relevant to Mr. Johnson's complaint. (Burda Dep. 95)", "Chase failed to review Mr. Johnson's CFPB complaint. (Burda Dep. 101-103)" "Chase failed to consider whether the information reported regarding Mr. Johnson's account was misleading. (Burda Dep. 104)" (Report at 17 (citations in original)).

In short, Tarter traces his conclusions to the record: what the dispute required Chase to verify, what Chase actually did, and why its conduct fell short.

### 3. Chase Misrepresents Tarter's Engagement With the Record

Chase claims that "Mr. Tarter fails to meaningfully address the detailed testimony from Chase's corporate representative, Barbara Burda", "Tarter makes no mention or reference to [Chase's] written procedure or Burda's testimony", and "Tarter's disregard for this uncontroverted evidence ... wholly undermines Tarter's conclusions". (Mot. at 22:10–11, 16–19 (emphasis added)).

This is patently false. As discussed in the immediately preceding subsection, when discussing the deficiencies in Chase's investigation, Tarter repeatedly references Burda's deposition testimony. Burda was testifying regarding Chase's written procedure (exhibit 2 at her deposition). (Report at 17).

Chase attempts to manufacture an admissibility issue by arguing Tarter fails to point to any violation of any specific provision of the Federal Deposit Insurance Corporation, DOS Manual of Examination Policies (the "FDIC Manual") or the Consumer Data Industry Association's Credit Reporting Resource Guide ("CRRG"). But neither contains, nor is held out to contain, an investigative procedure. The former is referenced as background information. The latter is a technical/interpretive manual containing "standardized requirements and guidelines for furnishers to report information". *Davis v. Trans Union, LLC*, No. 2:22-CV-05819-SPG-AS, 2025 WL 2851881 (C.D. Cal. July 22, 2025); *see also Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749 (9th Cir. 2018) ("[f]urnishers generally report their data to CRAs using an agreed-upon format, known as Metro 2. Furnishers' Metro 2 reporting requirements are specified in the Credit Reporting Resource Guide (CRRG), which is published by the Consumer Data Industry Association (CDIA), a CRA trade association.").

Chase points to no written industry standard that Tarter should have considered and its argument rests on a false premise unsupported by any authority:

---

JOSHUA JOHNSON'S OPPOSITION TO JPMORGAN CHASE'S MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF THOMAS TARTER

that an expert must cite chapter-and-verse from formal written standards documents
or be excluded.

Finally, Federal Rule of Civil Procedure 26(a)(2)(B) "contemplates that the
expert will supplement, elaborate upon, and explain his report in his oral testimony."
*Lewert v. Boiron, Inc.*, 212 F. Supp. 3d 917 (C.D. Cal. 2016) (*citing Fahmy v. Jay
Z*, No. 2:07-cv-05715, 2015 WL 5680299, at *6 (C.D. Cal. Sept. 24, 2015)), aff'd,
742 F. App'x 282 (9th Cir. 2018); *Powers v. McDonough*, No. 2:22-cv-08357-DOC-
KS, 2024 WL 3491008 (C.D. Cal. July 19, 2024) (accord).

Chase's criticisms go to weight, not admissibility, and are more appropriately
addressed via cross-examination (which it squandered via its short-notice
deposition) or via a rebuttal expert (which it failed to retain).

**D. Tarter Does Not Offer Improper Legal Conclusions**

Chase argues that Tarter "should be precluded from offering any legal
opinions and conclusions on the ultimate issues presented in Plaintiff's complaint",
specifically, (1) the "sufficiency of Chase's FCRA investigation", (2) "Chase's
"duty of care" regarding account statements, and (3) the "nature of Plaintiff's
damages". (Mot. at 24:6–14).

With respect to account statements, Tarter will testify as to industry standards,
not to a legal duty of care. Tarter was not retained to, and will not, testify as to
medical or psychological damages. The other arguments are addressed below.

**1. Tarter May Testify Regarding the Sufficiency of Chase's Investigation**

With respect to the sufficiency of Chase's investigation, "[a]n opinion is not
objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). In
an FCRA action, an expert may testify as to whether an investigation was reasonable,
as long as the expert is qualified and the opinion reliable. *Morris v. Equifax Info.
Servs. LLC*, 2007 U.S. Dist. LEXIS 26319, *6 (S.D. Tex. Apr. 10, 2007). An opinion
as to the reasonableness of an investigation is reliable as long as the expert specifies

the systems and procedures that are inadequate, laying the foundation for the conclusion in more than a conclusory manner. See *id*. at *10. See also, *Shames-Yeakel v. Citizens Fin. Bank*, 677 F. Supp. 2d 994, 998 (N.D. Ill. 2009) (an expert in a FCRA action may testify as to whether the bank's investigation was "reasonable and conducted properly").

That is in line with the general rule that an expert may testify concerning reasonableness when based on specialized knowledge and so long as the reasons underlying the conclusion are explained. *See Hangarter v. Paul Revere Life Ins. Co.*, 236 F.Supp.2d 1069, 1089 (N.D. Cal. 2002) (expert may testify concerning the reasonableness of an insurer's investigation of a claim as falling below industry standards); *Richman v. Sheahan*, 415 F.Supp.2d 929, 947-948 (N.D. Ill. 2006), affirmed in part, reversed in part on other grounds, *Richman v. Sheahan*, 512 F.3d 876 (7th Cir. Ill. 2008) (expert may conclude as to reasonableness as long as the reasons underlying the conclusion are explained); *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. Miss. 2003) (expert opinion testimony about reasonableness allowed when based on specialized knowledge). Tarter's report provides sufficient reasons underlying his conclusions.

**2. Tarter May Testify About the Nature of Johnson's Damages**

Concerning the "nature" of Johnson's damages, Tarter was retained by Johnson to provide expert testimony on "how and why inaccurate and materially misleading negative credit card account trade line reporting can affect a person" and "how Chase's actions and conduct damaged and harmed Mr. Johnson". (Report at 4).

Under the FCRA, "[a]ctual damages may include damages for humiliation, mental distress, and injury to reputation and creditworthiness, even if the plaintiff has suffered no out-of-pocket losses." *Seungtae Kim v. BMW Fin. Servs. NA, LLC*, 142 F. Supp. 3d 935, 944 (C.D. Cal. 2015), aff'd sub nom. *Kim v. BMW Fin. Servs.*

*NA LLC*, 702 F. App'x 561 (9th Cir. 2017). Contrary to Chase's citation to 30-year-old Second Circuit case, in the Ninth Circuit, "a denial of credit is" not "a prerequisite to recovery under the FCRA." *Cook v. Mountain America Federal Credit Union*, No. 2:18-cv-01548-HRH, (D. Ariz. Aug. 29, 2019) (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)).

Tarter testified at trial in *Kim*, and the trial court upheld the verdict, finding that "the jury also could have relied on the expert testimony of Thomas A. Tarter to conclude that "derogatories similar to the one at issue lead to lower credit scores, affect one's ability to obtain employment, and raise insurance costs" and "Plaintiff's creditworthiness was harmed". *See also Ellis v. Pennsylvania Higher Educ. Assistance Agency*, No. CV 07-04498DDPCTX, 2008 WL 5458997, at *5 (C.D. Cal. Oct. 3, 2008) ("Tarter is qualified as an expert in the field of credit scoring and credit stigma"); *Nelson v. Equifax Info. Servs.*, LLC, 522 F. Supp. 2d 1222 (C.D. Cal. 2007) (permitting Tarter to testify with respect to credit damages); *Cappuccio v. Prime Cap. Funding, LLC*, No. CIVA07-4627, 2008 WL 7700925, at *1 (E.D. Pa. Sept. 16, 2008) (Tarter's testimony regarding Plaintiff's actual damages and negative impact on Plaintiff's credit score is within his ken and relevant to the question of Plaintiff's damages); *Ma v. Equifax Info. Servs., LLC*, 288 F. Supp. 3d 1360, 1366 (N.D. Ga. 2017) (expert is "qualified to talk about damages typically suffered by victims of credit reporting inaccuracies"); *Oatway v. Experian Info. Sols., Inc.*, No. 2:24-CV-00523-LK, 2025 WL 2689029 (W.D. Wash. Sept. 19, 2025) (expert "is qualified to speak, in general terms and as found relevant at trial, about the sort of damages that are typically caused by errors on consumer reports").

Chase complains that Tarter "fails to thoroughly examine Plaintiff's credit history, debt-to income ratio [sic], or other pertinent financial metrics that could have impacted Plaintiff's alleged economic damages including increased cost of credit, lowered credit score, and loss of credit availability". (Mot. at 22:25–28). But Chase

chose not to cross-examine Tarter on these topics, and Tarter did consider Johnson's credit report containing this information. Johnson has had only a single delinquent account (the account at issue here). Moreover, Tarter was provided with corroborating record evidence that the reporting information caused harm:

1. A document from Johnson's home insurance company, dated November 2, 2017, stating that "Your rate was determined in part by your insurance score. Had your score been higher, you may have qualified for a lower rate. The following characteristics influence your score: ... Accounts Reported Unsatisfactory Within 6 Months ... Our score considers if any of the accounts on your credit report have been reported as delinquent within the past 6 months." (Report at 10).

2. A Chase account statement, dated January 24, 2018, indicating "Points forfeited this statement period" of "89,724" (valued at $850). (Report at 10).

3. Chase account statements indicating that Johnson was charged $261 in late fees and interest after September 2017. (Report at 10).

4. A letter from Johnson's car insurance company, from May 2018, stating "We did not give you our lowest possible premium due to the following information that we evaluated from your credit history: ... You had a payment past due in the last 7 years." (Report at 11).

5. A document from Johnson's home insurance company, dated November 1, 2018, stating the same as the November 2, 2017 letter. (Report at 11).

6. A screenshot from Johnson's mortgage lender indicating a pending mortgage pre-approval for a "primary home" with a "contract closing date" of November 16, 2020. (Johnson Decl. ¶ 14).

7. A letter from Johnson's mortgage lender, dated September 2, 2020, stating that "[y]our credit score can affect whether you can get a loan and how much

you will have to pay for that loan", and showing that Johnson's credit score

remained severely depressed, years after the initial reporting. (Report at 11).

## V. CONCLUSION

For the foregoing reasons, Johnson respectfully requests that the Court deny

Chase's motion in its entirety, strike or disregard the deposition transcript of Tarter,

and strike or disregard the arbitration hearing transcript.

**DATED:** January 9, 2026                                  Joshua Johnson

                                                            /s/ Joshua Johnson

# TABLE OF AUTHORITIES

**Cases**

- *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256 (2d Cir. 2002) — 8
- *Anderson v. Wells Fargo Bank, N.A.*, No. 3:16-CV-2514-N, 2018 WL 3426269 (N.D. Tex. July 13, 2018) — 11, 13, 16
- *Automated Transactions LLC v. First Niagara Fin. Grp., Inc.*, No. 10-CV-00407, 2011 WL 13213256 (W.D.N.Y. May 10, 2011) — 5
- *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18 (2d Cir. 1996) — 8
- *Brinkman v. Acct. Resol. Servs.*, No. 8:20-CV-2453-VMC-AAS, 2021 WL 4340413 (M.D. Fla. Sept. 23, 2021) — 16
- *Cappuccio v. Prime Cap. Funding, LLC*, No. CIVA07-4627, 2008 WL 7700925 (E.D. Pa. Sept. 16, 2008) — 21
- *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036 (9th Cir. 2014) — 8
- *Cook v. Mountain America Federal Credit Union*, No. 2:18-cv-01548-HRH, (D. Ariz. Aug. 29, 2019) — 21
- *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311 (9th Cir. 1995) — 12
- *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) — 8
- *Davis v. Trans Union, LLC*, No. 2:22-CV-05819-SPG-AS, 2025 WL 2851881 (C.D. Cal. July 22, 2025) — 18
- *Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*, No. 1:17-cv-00519-DCN, 2021 WL 2444157 (D. Idaho June 15, 2021) — 5
- *Downs v. River City Grp., LLC*, No. 3:11-CV-00885-LRH, 2015 WL 631294 (D. Nev. Feb. 13, 2015) — 12, 15
- *Ellis v. Pennsylvania Higher Educ. Assistance Agency*, No. CV 07-04498DDPCTX, 2008 WL 5458997 (C.D. Cal. Oct. 3, 2008) — 11, 16, 21
- *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034 (9th Cir. 2011) — 7

- *Fahmy v. Jay Z*, No. 2:07-cv-05715, 2015 WL 5680299 (C.D. Cal. Sept. 24, 2015), aff'd, 742 F. App'x 282 (9th Cir. 2018) — 19

- *Ford v. I.Q. Data Int'l, Inc.*, No. C22-1791 TSZ, 2024 WL 4069177 (W.D. Wash. Sept. 5, 2024) — 11

- *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995) — 21

- *Gustafson v. Experian Info. Sols. Inc.*, No. 2:14-CV-01453-ODW EX, 2015 WL 3477071 (C.D. Cal. June 2, 2015) — 10

- *Hangarter v. Paul Revere Life Ins. Co.*, 236 F. Supp. 2d 1069 (N.D. Cal. 2002) — 20

- *In re Qualcomm Antitrust Litig.*, 328 F.R.D. 280 (N.D. Cal. 2018) — 14

- *Johnson v. America Online, Inc.*, 280 F. Supp. 2d 1018 (N.D. Cal. 2003) — 7

- *Kim v. BMW Fin. Servs. NA LLC*, 702 F. App'x 561 (9th Cir. 2017) — 12, 21

- *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) — 14

- *Lewert v. Boiron, Inc.*, 212 F. Supp. 3d 917 (C.D. Cal. 2016) — 19

- *Liberty Mut. Ins. Grp. v. Panelized Structures, Inc.*, No. 2:10-cv-01951-JCM-PAL, 2011 WL 6780875 (D. Nev. Dec. 27, 2011) — 4, 5

- *Ma v. Equifax Info. Servs., LLC*, 288 F. Supp. 3d 1360 (N.D. Ga. 2017) — 21

- *Mitchell Health Techs., Inc. v. Naturewell, Inc.*, No. 02-C-0439-C, 2002 WL 32356855 (W.D. Wis. Dec. 2, 2002) — 7

- *Morris v. Equifax Info. Servs. LLC*, 2007 U.S. Dist. LEXIS 26319 (S.D. Tex. Apr. 10, 2007) — 20

- *Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222 (C.D. Cal. 2007) — 16, 21

- *Oatway v. Experian Info. Sols., Inc.*, No. 2:24-CV-00523-LK, 2025 WL 2689029 (W.D. Wash. Sept. 19, 2025) — 21, 22
- *Oestreicher v. Flagstar Bank*, No. 23-CV-0239 (RER) (LKE), 2025 WL 3755609 (E.D.N.Y. Sept. 29, 2025) — 11, 12, 16
- *Pelican Int'l, Inc. v. Hobie Cat Co.*, 655 F. Supp. 3d 1002 (S.D. Cal. 2023) — 14
- *Powers v. McDonough*, No. 2:22-cv-08357-DOC-KS, 2024 WL 3491008 (C.D. Cal. July 19, 2024) — 19
- *Primiano v. Cook*, 598 F.3d 558 (9th Cir. 2010) — 13
- *Richman v. Sheahan*, 415 F. Supp. 2d 929 (N.D. Ill. 2006) — 20
- *Richman v. Sheahan*, 512 F.3d 876 (7th Cir. 2008) — 20
- *Seungtae Kim v. BMW Fin. Servs. NA, LLC*, 142 F. Supp. 3d 935 (C.D. Cal. 2015) — 12, 21
- *Shames-Yeakel v. Citizens Fin. Bank*, 677 F. Supp. 2d 994 (N.D. Ill. 2009) — 20
- *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749 (9th Cir. 2018) — 18
- *SiteLock LLC v. GoDaddy.com LLC*, 562 F. Supp. 3d 283 (D. Ariz. 2022) — 13
- *Thomas J. Kline, Inc. v. Lorrilard, Inc.*, 878 F.2d 791 (4th Cir. 1989) — 10
- *Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co.*, 958 F.2d 1169 (1st Cir. 1992) — 10
- *United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000) — 15, 16
- *United States v. Pac. Health Corp.*, No. CV 12-00960-RSWL-AJWx, 2018 WL 1026361 (C.D. Cal. 2018) — 13, 14
- *United States v. Williams*, 343 F.3d 423 (5th Cir. 2003) — 20
- *Unknown Party v. Ariz. Bd. of Regents*, 641 F. Supp. 3d 702 (D. Ariz. 2022) — 13

**Statutes, Rules & Regulations**

- Fed. R. Civ. P. 26 — 3, 4, 19

- Fed. R. Civ. P. 32 — 3, 4, 5

- Fed. R. Evid. 702 — 8, 9, 14, 16

- Fed. R. Evid. 704 — 20

**Other Authorities**

- Merriam-Webster's Collegiate Dictionary (11th ed. 2003) — 9

- Supervisory Highlights: Consumer Reporting Special Edition, 82 Fed. Reg. 16,808 (Apr. 6, 2017) — 17

JOSHUA JOHNSON'S OPPOSITION TO JPMORGAN CHASE'S MOTION TO EXCLUDE OPINIONS AND
TESTIMONY OF THOMAS TARTER

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, Plaintiff Joshua Johnson, certifies that this brief contains 6,184 words, which complies with the word limit of L.R. 11-6.1.

DATED: January 9, 2026                                    Joshua Johnson

                                                          <u>/s/ Joshua Johnson</u>

28