1  **DYKEMA GOSSETT LLP**
   ABIRAMI GNANADESIGAN, State Bar No. 263375
2  *AGnanadesigan@dykema.com*
   444 South Flower Street, Suite 2200
3  Los Angeles, California 90071
   Telephone: (213) 457-1800
4  Facsimile: (213) 457-1850

5  Attorneys for Defendant
   JPMORGAN CHASE BANK, N.A.
6

7              **UNITED STATES DISTRICT COURT**

8       **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

9

10 JOSHUA JOHNSON,                    Case No. 2:22-cv-06718-AB-MAAx

11         Plaintiff,                 The Hon. André Birotte Jr.
                                      Courtroom 7B
12     v.
                                      Magistrate Maria A. Audero
13 JPMORGAN CHASE BANK, N.A.,         Courtroom: 690

14         Defendant.                 **DEFENDANT JPMORGAN CHASE
                                      BANK, N.A.'S REPLY IN SUPPORT
15                                    OF MOTION TO EXCLUDE
                                      OPINIONS AND TESTIMONY OF
16                                    THOMAS TARTER**

17                                    **Date:        January 30, 2026**
                                      **Time:        10:00 AM**
18                                    **Location:    Dept 7B**

19
                                      Complaint Filed:   September 19, 2022
20

21

22

23

24

25

26

27

28

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

**DYKEMA GOSSETT LLP**
**444 SOUTH FLOWER STREET**
**SUITE 2200**
**LOS ANGELES, CALIFORNIA 90071**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................... 3

II.     MAGISTRATE JUDGE AUDERO TWICE REJECTED PLAINTIFF'S ARGUMENT REGARDING TARTER'S DEPOSITION BEING TAKEN ON SHORT NOTICE ................................... 3

III.    JOHNSON'S TESTIMONY AND THE ZOOM RECORDINGS FROM THE ARBITRATION PROCEEDINGS ARE ADMISSIBLE ........... 4

IV.     MR. TARTER IS UNQUALIFIED TO PROVIDE OPINIONS IN THIS MATTER .......................................................................................... 6

V.      MR. TARTER'S OPINIONS ARE UNRELIABLE BECAUSE HE DOES NOT SUFFICIENTLY EXPLAIN HIS METHODOLOGY OR THE BASIS FOR HIS OPINIONS ................................................................ 7

        A.      The Prior Cases that Plaintiff Cites Are Distinguishable ....................... 7

        B.      Tarter's Methodology Is Based, At Best, On a Misstatement of the Record .............................................................................................. 8

VI.     MR. TARTER'S TESTIMONY REGARDING LEGAL OPINIONS MUST BE EXCLUDED ........................................................................ 11

        A.      Tarter's Report and Testimony Impermissibly Opine on the Ultimate Issues of the Case .................................................................. 11

VII.    TARTER'S REPORT AND TESTIMONY IMPERMISSIBLY OPINE ON THE NATURE AND CAUSE OF PLAINTIFF'S DAMAGES ............. 13

VIII.   CONCLUSION ...................................................................................... 14

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**CASES**

4

*Anderson v. Wells Fargo Bank, N.A.*,

5

No. 3:16-CV-25140-N, 2018 WL 3426269 (N.D. Tex. July 13, 2018)..............7

6

*AT&T Corp. v. Public Serv. Enters. Of Pa., Inc.*,

7

2000 WL 387738 (E.D. Pa. Apr. 12, 2000).........................................................6

8

*Bailey v. Experian Info., Sols., Inc.*,

9

Case No. 1:21-cv-00465-BLW, 2023 U.S. Dist. LEXIS 175732 (D. Id. Sept. 28, 2023)

10

...............................................................................................................12, 13

11

*Brinkman v. Acct. Resol. Servs.*,

12

No. 8:20-CV-2453-VMC-AAS, 2021 WL 4340413 (M.D. Fla. Sept. 23, 2021)...........................................................................................................8, 12

13

14

*Cramer v. Equifax Information Services.*,

No. 4:18-CV-1078 CAS, 2019 WL 4468945 (E.D. Mo. Sept. 18, 2019)..........12

15

*Downs v. River City Group, LLC*,

16

2015 U.S. Dist. LEXIS 18217 (D. Nev. Feb 13, 2015)......................................6

17

*Downs v. River City Grp., LLC*,

18

No. 3:11-CV-00885-LRH, 2015 WL 631294 (D. Nev. Feb. 13, 2025)..............7

19

*Ellis v. Pennsylvania Higher Educ. Assistance Agency*,

20

No. CV 07-04498DDPCTX, 2008 WL 5458997 (C.D. Cal. Oct. 3, 2008).........7

21

*Grijalva v. ADP Screening and Selection Sysc. Inc.*,

22

No. CV-22-00206-TUC-JCH, 2024 WL 728709 (D. Ariz. Feb. 22, 2024).......12

23

*Hangarter v. Provident Life and Acc., Ins. Co.*,

24

373 F.3d 998, 1016-17 (9th Cir. 2004)..............................................................11

25

*Kim v. BMW Fin. Servs. NA., LLC*,

142 F. Supp. 2d 935 (C.D. Cal. 2015)................................................................6

26

27

*Magallon v. Robert Half Int'l, Inc.*,

743 F.Supp.3d 1237 ...........................................................................................12

28

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

008241.002262  4909-3867-0728.3

1

*Malverty v. Equifax Info. Svcs., LLC*,
    Case No. 8:17-CV-1617-T-27AEP, 2019 WL 5549146 (M.D. Fla. Oct. 28, 2019) ................................................................................................ 12

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
    523 F.3d 1051, 1058-59 (9th Cir. 2008) ............................................. 11

*Nelson v. Equifax Info. Servs., LLC*,
    522 F.Supp. 2d 1222 (C.D. Cal. 2007) ................................................ 7

*Oestreicher v. Flagstar Bank*,
    *No. 23-CV-0239, 2025 WL 3755609 at \*5 (E.D.N.Y. Sept. 29, 2025)* ....... 6

*Rebel Oil Co., v. Atl. Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995) ............................................................. 11

*S.E.C. v. Cornerstone Acquisition and Mgmt., Co. LLC.*,
    Case No. 22-cv-765-JLS (VET), 2025 WL 276318 (S.D. Cal. Jan. 23, 2025) .......................................................................................... 11, 12

*Zariskie v. Fed. Nat'l Mortgage Assn.*,
    No. CV-13-02260-PHX-SRB, 2016 WL 3653512 (D. Ariz. April 22, 2016) ................................................................................................ 12

**RULES**

Fed. R. Civ. Proc. 45 ........................................................................... 3

Local Rule 30 ....................................................................................... 3

Local Rule 72-2.1 ................................................................................ 4

**STATUTES**

U.S.C. §636(b)(1)(A) .......................................................................... 4

Fair Credit Reporting Act ................................................................... 12

FCRA ........................................................................................... passim

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

008241.002262 4909-3867-0728.3

2

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

## I.  <u>INTRODUCTION</u>

Plaintiff Joshua Johnson's ("Plaintiff") Opposition to JPMorgan Chase Bank, N.A.'s ("Chase") Motion to Exclude Testimony and Opinions of Thomas Tarter ("Opposition") does not change that Mr. Tarter remains unqualified to testify about modern day consumer complaint investigations or Plaintiff's alleged damages, and that he failed to use reliable methodology to substantiate his opinions. Plaintiff spends much of his Opposition trying to convince the Court to exclude relevant evidence on faulty procedural grounds, but as explained in detail below, his arguments fail. As such, and for the reasons stated in Chase's moving papers, Tarter's opinions should be excluded in their entirety.

## II.  <u>MAGISTRATE JUDGE AUDERO TWICE REJECTED PLAINTIFF'S ARGUMENT REGARDING TARTER'S DEPOSITION BEING TAKEN ON SHORT NOTICE</u>

Plaintiff tried and failed two times to argue that Tarter's deposition was being taken on short notice and that the deposition could not be used against him in this litigation.[1] Plaintiff first raised this argument at an Informal Discovery Conference

---

[1] While this issue was already decided by Judge Audero, the deposition was not taken on short notice because Mr. Tarter was subpoenaed on November 20, 2025 for a December 4, 2025 deposition (14 days notice). A true and correct copy of the proof of service is attached as Exhibit 1 to the Declaration of Abirami Gnanadesigan. Plaintiff was served with notice of the deposition subpoena on November 21, 2025. Prior notice to Plaintiff was not required. *See* the Advisory Committee Notes for Fed. R. Civ. Proc. 45: "Such additional notice is not needed with respect to a deposition because of the requirement of notice imposed by Rule 30 or 31. But when production or inspection is sought independently of a deposition, other parties may need notice in order to monitor the discovery and in order to pursue access to any information that may or should be produced."

before Magistrate Judge Audero on December 2, 2025. Judge Audero ordered that the deposition of Mr. Tarter proceed as noticed on December 4, 2025. On the morning of December 4, 2025, hours before the deposition was set to begin, Plaintiff served Chase's counsel with a Motion for Protective Order on the same grounds. It is unclear when the Motion for Protective Order was submitted for filing because Plaintiff is not a registered CM/ECF user, but it appeared on the docket along with a Notice of Errata on December 10, 2025 [Dkts. 97, 100]. The Motion for Protective Order was denied on December 15, 2025. [Dkt. 101].

Plaintiff cannot be permitted to get a third bite at the apple. As stated in this Court's Standing Order "The Magistrate Judge's decision is final, subject to modification by the District Court Judge only where the Magistrate Judge's order is clearly erroneous or contrary to law. See U.S.C. §636(b)(1)(A). Any motion for review of a Magistrate Judge's decision must comply with Local Rule 72-2.1." If Plaintiff wanted this Court to review Judge Audero's ruling, he was required to file a motion for review by December 29, 2025. Plaintiff made no such motion. Thus, Judge Audero's determination that the deposition was properly noticed for December 4, 2025 is final. Plaintiff has no grounds for contesting Chase's use of the deposition transcript of Mr. Tarter, and his continued attempts to exclude the deposition testimony are telling.

## III.  JOHNSON'S TESTIMONY AND THE ZOOM RECORDINGS FROM THE ARBITRATION PROCEEDINGS ARE ADMISSIBLE

Plaintiff's arguments concerning the admissibility of the hearing transcripts and recordings from the Arbitration hold no weight. Johnson recorded the June 8, 2021 hearing on his phone. The remaining hearings were recorded (video and audio) by the AAA. For ease of reference and use by the parties during the arbitration, Chase transcribed the June 8 hearing. Johnson then transcribed the July 15, 2021 hearing for the same reason. Chase is having the hearings transcribed officially by U.S. Legal Support, and will submit the same during the week of January 19, 2026 when

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071



DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

available.

Finally, Plaintiff's argument regarding the confidentiality of the *transcripts* from the Arbitration is baseless. Plaintiff is the one who requested that he be permitted to record the June 8, 2021 hearing and the agreement only applies to his recording made that day:

| | | |
|---|---|---|
| | Johnson | Can I say something that actually I should have disclosed this at the beginning. So Joe and I discussed, since I don't have anybody with me to like take notes that I would record this and send it to the parties at the end. So I've been recording this on my phone. I forgot to mention that totally. If nobody consents, I guess I can remove it now. But I'd like to ask for that. |
| | Arbitrator | Joe, is that okay with you? |
| | Hickey | It's fine. |
| | Arbitrator | Okay. You should have asked. I could have recorded it easily on the Zoom but have not done so, but if you're satisfied that the recording you're getting is accurate, can hear it well enough, then that's fine. The Zoom recording would actually show the screen too. But it's – I don't want to start in the middle doing that. Okay. Um. I was going to ask something else. Let me think what it was. Oh. I've got a hard stop today at about five minutes until four. So hopefully we will be done by that time. But I just want to let you know that. Okay. See you back at 1:30 Eastern time. |
| 02:11:15 | | **[BREAK TAKEN]** |

Moreover, the Parties only agreed to keep the *recording* of the June 8th hearing confidential – not a transcript of that hearing and certainly not the recordings and transcriptions of the other hearings:

| | |
|---|---|
| Hickey | One thing before we start again, I was talking to Andy during our break. We would appreciate it – we don't mind the recording being taken, but I approached Josh before about keeping stuff confidential. There is absolutely no use for any recording being used outside of these proceedings. And we would like that understood. |
| Arbitrator | Okay. Are you agreeable to that, Josh, that the recording will be limited to this proceeding and anything that may flow from this proceeding? |
| Johnson | I agree with the recording, not anything else. |
| Arbitrator | I'm sorry, I don't understand your limitation. |
| Johnson | Yes, I will specifically not share the recording with anyone outside of this. I otherwise am free to take advantage of the private but not confidential aspect of arbitration. |

| Arbitrator | Okay. I think that the concern only was with regard to the recording. So that's fine then, I think we have agreement that the recording will not be used beyond this proceeding in any off-shoot from this proceeding. |
| --- | --- |

Because there is no confidentiality agreement extending to the use of a transcript from the June 8, 2021 hearing or the recordings and transcripts of the remaining hearings, those transcripts and recordings are admissible here. *See AT&T Corp. v. Public Serv. Enters. Of Pa., Inc.,* 2000 WL 387738, at *2 (E.D. Pa. Apr. 12, 2000) (rejecting defendants' argument that the arbitration transcript was confidential and refusing to enjoin post-arbitration complaint to enforce judgment).

## IV.    MR. TARTER IS UNQUALIFIED TO PROVIDE OPINIONS IN THIS MATTER

Chase does not argue that Mr. Tarter lacks general banking experience. But his experience, largely as a remote officer at various small regional banks decades ago and more recently as a professional expert witness, does not render him qualified to testify regarding the modern-day investigation of consumer complaints.

The cases that Plaintiff cites where Courts have found Tarter qualified to testify are distinguishable.[2] In *Oestreicher v. Flagstar Bank, No.* 23-CV-0239 (RER (LKE), 2025 WL 3755609 at *5 (E.D.N.Y. Sept. 29, 2025), the Court found that Tarter's opinions were based on his experience with mortgage credit reporting and loan forbearance, and that his lack of pandemic-specific work did not render him unqualified. This case had nothing to do with Tarter's qualifications evaluating the standards applicable to a furnisher's investigation of consumer complaints under the

---

[2] In *Kim v. BMW Fin. Servs. NA., LLC,* 142 F. Supp. 3d 935 (C.D. Cal. 2015) the Court did allow Mr. Tarter to testify, but on a motion in limine, limited Mr. Tarter's testimony for reasons not stated in the record.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

FCRA. Chase also notes that Tarter's improper legal conclusions were excluded by the *Ostreicher* Court as they should be here. *Id.* at 11. Similarly, *Downs v. River City Group, LLC,* 2015 U.S. Dist. LEXIS 18217, at *19-20 (D. Nev. Feb 13, 2015) concerned a plaintiff's claim against Wells Fargo for its alleged attempts to foreclose on property before the payment of mortgage insurance – it had nothing to do with the FCRA or the methodology used to evaluate an investigation of a consumer complaint. Tarter's apparent qualification to testify in that case has no bearing here.

## V.    MR. TARTER'S OPINIONS ARE UNRELIABLE BECAUSE HE DOES NOT SUFFICIENTLY EXPLAIN HIS METHODOLOGY OR THE BASIS FOR HIS OPINIONS

### A.    The Prior Cases that Plaintiff Cites Are Distinguishable

Similarly, none of Tarter's prior cases that Plaintiff cites support his argument that Tarter used a reliable methodology here. As described above, *Downs v. River City Grp., LLC,* No. 3:11-CV-00885-LRH, 2015 WL 631294 (D. Nev. Feb. 13, 2025) concerned a plaintiff's claim against Wells Fargo for its alleged attempts to foreclose on property before the payment of mortgage insurance – it had nothing to do with the FCRA or the methodology used to evaluate a furnisher's investigation. In *Anderson v. Wells Fargo Bank, N.A.,* No. 3:16-CV-25140-N, 2018 WL 3426269 (N.D. Tex. July 13, 2018), the Court found that Mr. Tarter's methodology was sufficient because he "reviewed thousands of pages of documents in preparation of the Report." Here, to the contrary, Mr. Tarter destroyed his file in connection with this matter and has no independent recollection as to what documents he relied upon to form his opinions. In *Ellis v. Pennsylvania Higher Educ. Assistance Agency,* No. CV 07-04498DDPCTX, 2008 WL 5458997, at *5 (C.D. Cal. Oct. 3, 2008), Tarter specifically explained how credit stigma is calculated and that the amount reflected a correlation used by bankers. In this case, Tarter does not describe what standard he used in evaluating the reasonableness of Chase's investigation, he simply cites generally to various treatises and manuals. In *Nelson v. Equifax Info. Servs., LLC,* 522

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

F.Supp. 2d 1222 (C.D. Cal. 2007) Tarter provided testimony regarding how negative credit items could reduce a consumer's credit score resulting in a higher cost of credit, and in doing so the Court found that he applied principles and methods reliably to the facts. Here, Tarter's testimony is speculative at best, describing generally a "chilling effect," "expectancy" and "high probability" because there simply is no record evidence of applications for credit, rejections of credit applications and higher costs of credit. Finally *Brinkman v. Acct. Resol. Servs.,* No. 8:20-CV-2453-VMC-AAS, 2021 WL 4340413, at *3 (M.D. Fla. Sept. 23, 2021) does not even involve Mr. Tarter – he was never designated as an expert in that case.

Chase is not arguing that Mr. Tarter has *never* applied proper methodology to form opinions in any case. But Mr. Tarter did not do so here.

## B.    Tarter's Methodology Is Based, At Best, On a Misstatement of the Record

Plaintiff claims that Tarter's report provides a step-by-step analysis supporting his conclusions, but that is far from the truth. As stated in Chase's moving papers, Tarter's report and his testimony omit the "*how and why"* he formed his opinions. Tarter makes no substantive reference to Chase's then applicable Card Dispute Resolution Processing manual, and only makes general statements about the FDIC Exam Manual, Metro 2, and guidance from the Consumer Financial Protection Bureau, without applying the standards therein to the facts of this case.

Plaintiff also argues that Mr. Tarter traces his conclusions regarding what steps Chase took and failed to take to the record by referring to the deposition testimony of Barbara Burda. But Mr. Tarter's minimal references to Ms. Burda's testimony are misleading, incomplete, and do not support Mr. Tarter's findings.

Tarter states that he relies on Burda's testimony that Chase's investigation likely took only a few days. But Ms. Burda actually testified that she did not know how long the investigation took, that it could have taken a week or two, and that it would have taken *at least* a few days.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

1  Q:    How long would an ACDV usually sit in a queue before a specialist

2  would start investigating it?

3  A:    It depends.

4  Q.    Would it normally be a week or two?

5  A:    It could be.

6  Q:    Is it fair to say it would at least take a few days?

7  A:    Yes. That's fair.

8  (Deposition of Barbara Burda ("Burda Dep.") 49:22-50:5)

9  Not only is Mr. Tarter's reference misleading, he fails to describe how long a

10  FCRA investigation should take and why Chase's investigation should have taken

11  longer than a few days.

12  Mr. Tarter also relies on Burda's purported testimony that Chase failed to

13  investigate or validate where the $499 balance came from. But he omits the portion

14  of Burda's testimony that discusses what Chase did investigate and validate:

15  Q:    Was there any investigation as to how the account balance accrued?

16  A:    We were responding to the information on the ACDV as to the accuracy

17  of what was reflected at that moment. So we did validate that the balance was charged

18  off. We did validate that the customer did make the payment on the account to bring

19  that account balance to zero. And we validated those other components based on those

20  disputes.

21  (Burda Dep.: 76:21-77:5)

22  Not only is the $499 balance not an issue to be investigated in the Equifax

23  Dispute, but Mr. Tarter's Report provides an incomplete picture of Ms. Burda's

24  testimony and fails to describe why the investigation Chase did conduct did not meet

25  industry standard.

26  Mr. Tarter relies on Burda's purported testimony that Chase failed to recover

27  purged comments in its system of record relevant to Mr. Johnson's Complaint. But

28  Ms. Burda actually testified that the relevant comments may have been available in

1  2020 when the investigation took place:

2      Q:    This is data from the C3 system that's in the spreadsheet; correct?

3      A:    That's my understanding….

4      Q:    Would that information have been available to the processors working

5  on the FCRA investigation?

6      A:    It might have, in 2020, have been there.

7      Q:    Why wouldn't it have been there – well, why is it possible it wouldn't

8  have been there in 2020?

9      A:    Because of the length of time that has passed between this comment and

10  the investigation. Some of those comments may – and I don't know the criteria- may

11  have been purged off the system.

12      (Burda Dep.: 93:15-94:24)

13      Tarter conveniently omits the full scope of Ms. Burda's testimony because the

14  record does not establish that the relevant comments were purged at the time of the

15  investigation. Even if they were purged at the time of the investigation of the Equifax

16  Dispute, Tarter does not explain why routine document purging after the passage of

17  time does not meet industry standard.

18      Finally, Mr. Tarter relies on Burda's purported testimony that Chase failed to

19  consider whether the information furnished regarding Mr. Johnson's account was

20  misleading. But that is the exact opposite of how she actually testified:

21      Q:    Did Chase determine that the information it reported [sic] to Equifax

22  regarding Mr. Johnson's account was misleading?

23      A:    No. We did not determine it was misleading.

24      Q:    Did Chase investigate whether it was misleading?

25      A:    We investigated the information on ACDV and the accuracy based on

26  our system of record.

27      Q:    So you investigated whether it was innaccurate; is that correct?

28      A:    Yes. That's correct.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

1    (Burda Dep.: 104:13-25)

2    Chase necessarily considered whether the information furnished regarding Mr.

3    Johnson's account was misleading because it determined the accuracy of that

4    information.

5    Tarter's reliance on an incomplete record and misleading characterization of

6    the limited record is alone sufficient grounds to exclude his testimony. "When an

7    expert opinion is not supported by sufficient facts to validate it in the eyes of the law,

8    or when indisputable record facts contradict or otherwise render the opinion

9    unreasonable, it cannot support a jury's verdict." *Rebel Oil Co., v. Atl. Richfield Co.,*

10    51 F.3d 1421, 1436 (9th Cir. 1995).

## VI.    MR. TARTER'S TESTIMONY REGARDING LEGAL OPINIONS MUST BE EXCLUDED

13    As a threshold mater, Plaintiff's Opposition fails to persuasively argue that Mr.

14    Tarter should be permitted to include legal citations and legal analysis in his expert

15    report or testimony. In fact, Plaintiff concedes that Tarter will not testify as to "a legal

16    duty of care" (Opposition, p. 19).

### A.    Tarter's Report and Testimony Impermissibly Opine on the Ultimate Issues of the Case

19    Plaintiff claims that Tarter should be permitted to testify as to the ultimate

20    issues of whether Chase's investigation was reasonable and regarding Chase's intent

21    in terms of willfulness or punitive damages, but he is wrong. The Ninth Circuit has

22    confirmed "that an expert may not address whether certain facts mean a party as

23    satisfied an element of the party's claim." *S.E.C. v. Cornerstone Acquisition and*

24    *Mgmt., Co. LLC.*, Case No. 22-cv-765-JLS (VET), 2025 WL 276318 at *12 (S.D. Cal.

25    Jan. 23, 2025) (citing *Hangarter v. Provident Life and Acc., Ins. Co.,* 373 F.3d 998,

26    1016-17 (9th Cir. 2004); *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.,* 523 F.3d

27    1051, 1058-59 (9th Cir. 2008)). For example, in *Cornerstone,* the Court excluded

28    expert testimony because the expert was "not testifying about Defendant's deviation

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

from an industry standard or referencing law that is ancillary to the ultimate issue, but testifying that certain facts mean the SEC has satisfied an element of their claim against Defendants." 2025 WL 276318 at *12.

Here, the Court should exclude Tarter's testimony because he is attempting to do exactly what the Federal Rules and the Ninth Circuit forbid – testify on ultimate issues of the case. As Tarter's report demonstrates, he is opining on the FCRA claims' ultimate issues, which are the reasonableness of Chase's investigation into Plaintiff's disputes and Chase's intent with regard to its investigation. (*See* i.e., Tarter Report p. 13 "compliance with the Fair Credit Reporting Act ("FCRA") was compromised; p. 13 "punishing the credit card accountholder by not promptly and timely correcting its materially inaccurate and misleading negative trade line reporting is a clear example of "bad faith", as well as being downright punitive…" ; p. 17  discussing Tarter's opinion as to why Chase's investigation was not reasonable under the FCRA).

This is plainly impermissible. In fact, multiple courts have held that it is unreasonable for an expert in an FCRA case to testify as to the reasonableness of an investigation or the reasonableness of procedures. *Magallon v. Robert Half Int'l, Inc.,* 743 F.Supp.3d 1237, 1249 (exclude expert opinion on reasonableness of procedures under FCRA as an ultimate issue); *Zariskie v. Fed. Nat'l Mortgage Assn.,* No. CV-13-02260-PHX-SRB, 2016 WL 3653512 at *2 (D. Ariz. April 22, 2016) (same); *Bailey v. Experian Info., Sols., Inc.,* Case No. 1:21-cv-00465-BLW, 2023 U.S. Dist. LEXIS 175732, at *21 (D. Id. Sept. 28, 2023) (same in a case involving Tarter); *Grijalva v. ADP Screening and Selection Sysc. Inc.,* No. CV-22-00206-TUC-JCH, 2024 WL 728709 at *2 (D. Ariz. Feb. 22, 2024) (excluding expert opinion on reasonableness of FCRA statute interpretation as a legal conclusion); *Malverty v. Equifax Info. Svcs., LLC,* Case No. 8:17-CV-1617-T-27AEP, 2019 WL 5549146 at *2-3 (M.D. Fla. Oct. 28, 2019) (excluding expert opinion on reasonableness of FCRA investigation as ultimate issue); *Brinkman v. Acct. Resol. Servs.,* No. 8:20-CV-2453-VMC-AAS- 2021 WL 4340413, at *4 (M.D. Fla. Sept. 23, 2021) (same); *Cramer v.*

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

1  *Equifax Information Services.,* No. 4:18-CV-1078 CAS, 2019 WL 4468945 at *4

2  (E.D. Mo. Sept. 18, 2019) (same). The Court should make the same finding here and

3  exclude Mr. Tarter's testimony regarding ultimate issues that are for the jury to

4  decide.

5  **VII.    TARTER'S REPORT AND TESTIMONY IMPERMISSIBLY OPINE**

6  **ON THE NATURE AND CAUSE OF PLAINTIFF'S DAMAGES**

7  Plaintiff  also concedes that Tarter will not testify as to Plaintiff's medical or

8  psychological damages. (Opposition, p. 19). But while Plaintiff contends that Mr.

9  Tarter sufficiently considered evidence related to Plaintiff's other damages in

10  providing his opinions (which Chase disputes), Tarter's damages opinions should be

11  excluded because he is not qualified and they would not assist the jury. In *Bailey v.*

12  *Experian Info., Sols., Inc.,* 2023 U.S. Dist. LEXIS 175732, at *15-19, the Court

13  determined that Mr. Tarter could not provide opinions on harms that are commonly

14  experienced by consumers because of innaccurate credit reporting, the impact of any

15  innaccurate credit reporting on Plaintiff's credit score, or that any innaccurate credit

16  reporting was the sole cause of any adverse lending decisions experienced by Plaintiff.

17  The facts here are parallel and the Court should exclude or limit Tarter's testimony in

18  the same manner.

19  / / /

20  / / /

21  / / /

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DEFENDANT JPMORGAN CHASE BANK, N.A.'S REPLY IN SUPPORT OF MOTION TO EXCLUDE
OPINIONS AND TESTIMONY OF THOMAS TARTER

## VIII. <u>CONCLUSION</u>

For the reasons described above and in Chase's moving papers, Mr. Tarter is unqualified to testify as an expert and his opinions are the product of unsubstantiated and unreliable methodology, if any. As a result, Chase's *Daubert* Motion should be granted.

DATED: January 16, 2026          DYKEMA GOSSETT LLP

By: _____
ABIRAMI GNANADESIGAN
Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant JPMorgan Chase Bank, N.A., certifies that this brief contains 3,284 words, which complies with the word limit of L.R. 11-6.1.


DATED:  January 16, 2026          DYKEMA GOSSETT LLP


By: _____
ABIRAMI GNANADESIGAN
Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

**PROOF OF SERVICE**
*Joshua Johnson vs. JPMorgan Chase Bank, N.A.*
*USDC, Central District, Case No. 2:22-cv-06718-AB-MAA*

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 444 South Flower Street, Suite 2200, Los Angeles, California 90071.

On the date set forth below, I served the foregoing document(s) described as **DEFENDANT JPMORGAN CHASE BANK, N.A.'S REPLY IN SUPPORT OF MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF THOMAS TARTER** on the interested parties in this action as follows:

Joshua Johnson                                              **PLAINTIFF PRO SE**
2201 5th St. Apt 208
Santa Monica, CA 90405

Tel:  (336) 423-2594
Email: iosh@ii88.org

☒**BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Dykema Gossett LLP for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Los Angeles, California.

☒**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address MMendoza@dykema.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 16, 2026, at Los Angeles, California.

_____
Mitzi Mendoza

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071