**DYKEMA GOSSETT LLP**
ABIRAMI GNANADESIGAN, State Bar No. 263375
*AGnanadesigan@dykema.com*
444 South Flower Street, Suite 2200
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JOSHUA JOHNSON, | Case No. 2:22-cv-06718-AB-MAAx |
| Plaintiff, | The Hon. André Birotte Jr.<br>Courtroom 7B |
| v. | Magistrate Judge Maria A. Audero<br>Courtroom: 690 |
| JPMORGAN CHASE BANK, N.A., | |
| Defendant. | **DEFENDANT JPMORGAN CHASE BANK, N.A.'S NOTICE OF LODGMENT OF OFFICIAL HEARING TRANSCRIPTS IN SUPPORT OF MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF THOMAS TARTER** |
| | **Date:      January 30, 2026**<br>**Time:      10:00 AM**<br>**Location:   Dept 7B** |
| | Complaint Filed:   September 19, 2022 |

*[Sidebar text, left margin:]* DYKEMA GOSSETT LLP — 444 SOUTH FLOWER STREET — SUITE 2200 — LOS ANGELES, CALIFORNIA 90071

008241.002262 4915-7345-2683.1

1

DEFENDANT JPMORGAN CHASE BANK, N.A.'S NOTICE OF LODGMENT OF OFFICIAL HEARING
TRANSCRIPTS ISO MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF THOMAS TARTER

Defendant JPMorgan Chase Bank, N.A. ("Defendant") hereby lodges the following Exhibits in support of its Motion to Exclude Opinions and Testimony of Thomas Tarter, namely:

1.    A true and correct copy of the relevant portions of the transcript from the June 8, 2021 Arbitration hearing is attached hereto as Exhibit C. The recording of this hearing was transcribed by Defendant and the relevant portions were filed on January 2, 2026. [Dkt. 105-1]. Defendant had the recording of this hearing transcribed by a certified court reporter from U.S. Legal Support and provides the official transcript for the Court's consideration.

2.    A true and correct copy of the relevant portions of the transcript from the July 15, 2021 Arbitration hearing is attached hereto as Exhibit D. The recording of this hearing was transcribed by Plaintiff and the relevant portions were filed on January 2, 2026. [Dkt. 105-1]. Defendant had the recording of this hearing transcribed by a certified court reporter from U.S. Legal Support and provides the official transcript for the Court's consideration.

DATED:  January 30, 2026         DYKEMA GOSSETT LLP

By: _____
ABIRAMI GNANADESIGAN
Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

008241.002262 4915-7345-2683.1

2

DEFENDANT JPMORGAN CHASE BANK, N.A.'S NOTICE OF LODGMENT OF OFFICIAL HEARING TRANSCRIPTS ISO MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF THOMAS TARTER

# Exhibit C

Johnson v Chase Hearing - 6_8_21
June 08, 2021

AMERICAN ARBITRATION ASSOCIATION


JOSHUA JOHNSON,

            Claimant,
                                        AAA Case:
vs.                                     01-20-0015-1734-2-PA

JPMORGAN CHASE BANK, N.A.,

            Respondent.
_____


    Videoconference Arbitration in the Above-Captioned Matter

                    Held before
            ARBITRATOR CHARLES HOLTON


                AUDIO RECORDING

                FILE NAME:
        Johnson v Chase Hearing - 6_8_21
        GMT20210715-150545_Recording_1920x1080

            DATE TAKEN:   June 8, 2021


Transcribed By:  JANENE CLEARY, Michigan CSR No. 16359

Johnson v Chase Hearing - 6_8_21
June 08, 2021

| | |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | MR. JOHNSON:  Hello.  Hello.  Hello. |
| 3 | MR. CHO:  Good morning. |
| 4 | THE ARBITRATOR:  Hi, Mr. Johnson.  I'm glad you made |
| 5 | it on.  Did you have any difficulty? |
| 6 | MR. JOHNSON:  Hi there.  Yeah.  I don't think so.  I |
| 7 | think I'm good to go. |
| 8 | THE ARBITRATOR:  Oh, Excellent. |
| 9 | MR. JOHNSON:  Can you hear me? |
| 10 | THE ARBITRATOR:  Okay.  All right.  Well, I think |
| 11 | we're waiting on counsel, and we can get going. |
| 12 | While we're waiting, Mr. Johnson, I expect you will |
| 13 | have some exhibits you want to show to me.  Are you familiar |
| 14 | with how to share screen on a Zoom call? |
| 15 | MR. JOHNSON:  It's -- it's been a minute, but I |
| 16 | think -- |
| 17 | THE ARBITRATOR:  On mute. |
| 18 | MR. JOHNSON:  I got to figure -- figure the mute out |
| 19 | first.  Yeah.  I should be able to -- to handle it. |
| 20 | THE ARBITRATOR:  Okay.  Great. |
| 21 | MR. JOHNSON:  Let me do a dry run here. |
| 22 | THE ARBITRATOR:  Yeah. |
| 23 | MR. JOHNSON:  Okay.  I need to leave the app.  I'll be |
| 24 | right back. |
| 25 | THE ARBITRATOR:  Okay. |

Johnson v Chase Hearing - 6_8_21
June 08, 2021

```
 1              MR. JOHNSON:  How's this?  Can you see my screen?

 2              THE ARBITRATOR:  Yeah.  That came up fine.

 3              MR. JOHNSON:  All right.  Great.

 4              THE ARBITRATOR:  Mr. Cho, have you been in

 5   communication with Mr. -- oh, there he is.  Never mind.

 6              MR. CHO:  Oh, he's here.  Good.

 7              THE ARBITRATOR:  Good morning, Mr. Hickey.

 8              Is everybody here that we are expecting to be

 9   participating, or, let me ask it this way, is there anybody not

10   here that we need to wait for?  Okay.  Great.

11              Mr. Johnson, at the walkthrough that we did yesterday

12   afternoon, Mr. Cho, whom you see there on the screen, introduced

13   himself and mentioned that he had been a former student at Duke

14   Law School, and may have been a student of mine back in 2005.

15              Is that what you said, Mr. Cho?

16              MR. CHO:  Yes.  That's when I graduated.

17              THE ARBITRATOR:  Okay.  I don't remember him, and he's

18   not sure if he remembers me, but I wanted to communicate that on

19   to you just to make sure that you did not have any objection or

20   concern about that.  We have not had any contact since his time

21   at Duke Law School.  I was teaching only as an adjunct professor

22   at that time, was not a full time professor.

23              Do you have any problem with that?

24              MR. JOHNSON:  Well, I went to NC State, so I won't

25   hold the -- that against Steve, but, no, no objection.
```

Johnson v Chase Hearing - 6_8_21
June 08, 2021

```
 1              THE ARBITRATOR:  Okay.  Great.  Let me make a note.

 2              Okay.  Mr. Johnson, I know you're not a lawyer, but

 3  you've certainly demonstrated some good organizational skills

 4  and putting things together.  But I -- I don't know if you ever

 5  conducted or attended an arbitration hearing before.

 6              MR. JOHNSON:  I have not.

 7              THE ARBITRATOR:  Okay.  Well, let me give you a little

 8  bit of explanation, and this will, perhaps, help the other

 9  witnesses who are on as well.  We will proceed pretty much as we

10  would if this were a trial in court.  That is, Mr. Johnson,

11  you're the claimant.  You're the one making the claim.  You have

12  the burden of proof to go forward first, presenting your

13  evidence to support that claim.  And with -- I -- it looks like

14  you're going to be your only witness; is that correct?

15              MR. JOHNSON:  That's right.

16              THE ARBITRATOR:  Okay.  Well, after -- after you

17  testify -- and I will swear all of the witnesses.  We'll

18  probably just do that at one time in just a moment.  After you

19  testify, Mr. Hickey, as the attorney for JPMorgan Chase, will

20  have the opportunity to cross-examine you.  And, likewise, then,

21  when he puts on his witnesses, as -- if -- if that happens, you

22  will have the opportunity to cross-examine each of those

23  witnesses.

24              One thing that I want to mention to you that's hard

25  because I know you haven't been trained as a lawyer, questions
```

Johnson v Chase Hearing - 6_8_21
June 08, 2021

1          MR. HICKEY:  Yes.

2          MR. JOHNSON:  There's also notations that I added

3    there that -- that weren't in there, right, that's just kind of

4    my -- my opinion, I guess.

5          THE ARBITRATOR:  Your commentary.  I understand.

6          MR. JOHNSON:  Yeah.

7          MR. HICKEY:  Is it listed as commentary?

8          MR. JOHNSON:  It's -- should be clear from the -- the

9    columns, but if it's not, when I start going, you know --

10         THE ARBITRATOR:  You can highlight it or something

11   like that, turn it into italics or something.  Okay.

12         Anything else before we start?  Well, I see

13   Ms. Kopecki and Ms. Wade.  I understand the two of you will be

14   witnesses.

15         Mr. Cho, you're not going to testify; is that correct?

16         MR. CHO:  That's correct.

17         THE ARBITRATOR:  Okay.

18         MR. CHO:  I'm here to observe.

19         THE ARBITRATOR:  Okay.  And, Mr. Johnson, I assume you

20   are.

21         So let me ask Mr. Johnson, Ms. Wade, and Ms. Kopecki

22   to raise your right hand, and I'll administer an oath to you.

23         Do you solemnly swear that the testimony you're about

24   to give in this hearing will be the truth, and the whole truth,

25   and nothing but the truth?

Johnson v Chase Hearing - 6_8_21
June 08, 2021

```
 1              MR. JOHNSON:  Yes.

 2              MS. KOPECKI:  I do.

 3              MS. WADE:  I do.

 4              MR. JOHNSON:  I do.

 5              (Witnesses were sworn.)

 6              THE ARBITRATOR:  Very good.  All right.

 7              Well, Mr. Johnson, the case is with you, do proceed as

 8   you see fit.

 9                         JOSHUA JOHNSON

10   was called as a witness and, after having been first duly sworn,

11   testified as follows:

12              MR. JOHNSON:  Okay.  So I have a -- a bit of an

13   opening statement that I'd like to read first, if that's all

14   right.

15              THE ARBITRATOR:  That's fine.  And -- and I would say

16   that I have read through everything that both sides have

17   submitted up to this point.  I -- I haven't paid close attention

18   to the exhibit materials, but I have read the prehearing briefs

19   and reread the amended pleadings.

20              MR. JOHNSON:  Okay.  Actually, let me close -- I -- I

21   think my camera's bugging out here.  Okay.  Okay.  So everything

22   I want to present is -- I'll show my screen with the exception

23   of -- of this statement.  So just want to kind of start out and

24   give a summary, I think, of the case as I see it.  Some of this,

25   you know, like you said, Mr. Holton, you've -- you've already, I
```

Johnson v Chase Hearing - 6_8_21
June 08, 2021

1  think, seen the -- the briefs and the complaint, some of this

2  may -- may be redundant, but I'll just go ahead with what I've

3  got written.

4          So I opened a credit card account with Chase in 2017.

5  I opened it because Chase advertised a promotion of some sort,

6  if I remember, I think, $500 in -- in some sort of reward points

7  in exchange for spending a certain amount of money on the card.

8  So open the card.

9          At that point, I had been a Chase customer for seven

10 years.  I had an excellent credit score.  And so the two of us,

11 Chase and myself, we agreed to a express written contract, which

12 is the business card agreement that's entered -- entered into

13 evidence.

14         So in that contract, Chase, it -- it made a number of

15 promises.  Chase promised that I would receive monthly billing

16 statements.  Separately, Chase explained that those statements

17 were the official record for the -- for the account, as opposed

18 to telephone statements.  Chase also promised that they would

19 apply payments to my account as requested.

20         So Chase did not live up to those obligations.  I had

21 trouble receiving statements shortly after I opened the card.

22 And -- and although I had no contractual obligation to, I made a

23 good faith effort to discuss my inability to view those

24 statements with Chase.  Chase was not helpful.

25         So eventually, I grew frustrated with my continued

Johnson v Chase Hearing - 6_8_21
June 08, 2021

1    inability to view statements.  I knew they were the official

2    record, and I was worried that I would damage my excellent

3    credit given how difficult it was to remember what I owed and

4    when I owed on the card with -- with no -- no record.

5            So on the phone with Chase, after this period of

6    frustration, I asked that -- I instructed Chase to pay the

7    balance in full on the card and to close the account.  I don't

8    remember the -- you know, the -- the exact language that was

9    discussed on the call, but that was certainly the -- the intent.

10           In, actuality, Chase closed the account, but

11   inexplicably left a -- only a partial payment applied to the

12   card, which was the minimum payment due.  So there's a balance

13   of about $250 that was left on the account.

14           And then, about eight months later, after thinking

15   that I had kind of washed my hands of this, I discovered that

16   the account had been accruing late fees and interest, about

17   $250, in fact, and my credit score, which was previously

18   excellent, was barely high enough to qualify for a mortgage.  So

19   because of Chase's broken promises that it made in the contract,

20   my credit was ruined over a $250 debt.  That's over a debt that

21   I would have paid immediately and without question had I known

22   that it existed prior to the -- the credit damage.

23           So because of the poor credit, I -- I made decisions.

24   I chose not to pursue real estate investments that I almost

25   certainly would have done were it not for Chase's impact on my

Johnson v Chase Hearing - 6_8_21
June 08, 2021

1  fashion?

2          MR. JOHNSON:  So there was a -- there -- there were

3  two periods while the account was open, -- and -- and I will

4  say, this is not from memory, this is based on the record.

5  There was a --

6          THE ARBITRATOR:  Okay.

7          MR. JOHNSON:  -- a period, from January until April,

8  where, I'll be honest, I'm not sure --

9          THE ARBITRATOR:  Is this 2017?

10          MR. JOHNSON:  2017.  Yeah.

11          THE ARBITRATOR:  So you -- you made payments in that

12  time, but you're not sure based upon what?

13          MR. JOHNSON:  So all the payments that were made, with

14  the exception of one in the record where it's ambiguous, were

15  made by telephone.  And so if I made them by telephone, I would

16  have or -- or could have been told the balance over the phone.

17  And those calls were inbound.  So my recollection is that Chase

18  proactively called me and said, you owe this balance, and then I

19  paid on the phone.

20          THE ARBITRATOR:  So in that period, January to April

21  2017, you're not sure whether or not you either received or saw

22  actual statements summarizing the charges?

23          MR. JOHNSON:  So I do not -- I do not recollect ever

24  seeing a statement for this account.  I don't recollect it now.

25  And that's consistent with my statements two, three years ago,

Johnson v Chase Hearing - 6_8_21
June 08, 2021

1  in 2018, when I presumably had a stronger memory of -- of 2017.

2  There's a separate issue here, which is in my original claim,

3  across all the claims, I said that I -- I saw a $0 balance when

4  I logged in.

5       At the time I made that statement, I don't remember if

6  it was clear that there were actually -- there were apparently

7  two Chase online accounts.  There was one that had two of my

8  Chase credit cards, and there was separate account that was

9  ostensibly linked to this card.  And in hindsight, I don't know

10 if I was logging into the wrong account and seeing zero dollars,

11 and it was linked to a different card, all I can say

12 definitively is that I have no recollection of ever receiving a

13 statement.

14       And there's evidence from April forward that I could

15 not have received a statement, that it was impossible for me to

16 have done that.

17       THE ARBITRATOR:  Okay.  So you did have the -- the

18 capacity, I guess would be the right word, to log into a Chase

19 account website, but you're not sure whether you ever logged

20 into the website that was related to this particular business

21 card; is that what you're saying?

22       MR. JOHNSON:  Yes.  I cannot say that definitively.

23 What I believe happened was that I logged in and I didn't see

24 any -- I -- I believe I logged in, I logged into the correct

25 account, and I just did not see the card present.  I've got a

Johnson v Chase Hearing - 6_8_21
June 08, 2021

1           MR. JOHNSON:  Okay.  So I don't know the specifics as

2  far as logging in versus logging into the wrong account and

3  see -- seeing a $0 a balance.  I don't know.  The only thing I

4  know for certain is that I could not see statements, and I tried

5  to during that period.  And beyond that, like, it's -- I -- I

6  know you're both looking for specificity, but I -- I don't know.

7           THE ARBITRATOR:  Okay.  How many different Chase

8  accounts did you have in that time period, from April to

9  September 2017?

10          MR. JOHNSON:  Accounts, as in credit card accounts, or

11 as in --

12          THE ARBITRATOR:  Yes.  Well -- well, accounts for

13 Chase to which you might log in, let's put it that way, whether

14 credit card, or checking, or whatever.

15          MR. JOHNSON:  Just -- well, I have -- I have -- I know

16 after the fact that I have two Chase online accounts for which

17 personal was linked to one, and this card is linked to another.

18 At the time, I don't know if I knew that.  Clearly, I created

19 one way back in January.  I -- I don't know.  I -- I have no

20 idea.

21          THE ARBITRATOR:  Okay.

22          MR. JOHNSON:  This was why --

23          THE ARBITRATOR:  Did you have a --

24          MR. JOHNSON:  -- I was seeking technical support.  I

25 didn't know.

Johnson v Chase Hearing - 6_8_21
June 08, 2021

1            THE ARBITRATOR:  Did you have a checking account or

2    any other type of account besides credit card with them?

3            MR. JOHNSON:  Nope.

4            THE ARBITRATOR:  Do you know if you used different

5    passwords for the two accounts that you did have, the personal

6    and the business?

7            MR. JOHNSON:  No.  I -- I really have no recollection.

8    I use a password manager and, you know, use it to that, so I --

9    I don't know.

10           THE ARBITRATOR:  Okay.  Okay.

11           Go ahead, Mr. Hickey.

12           MR. HICKEY:  Thank you.

13           MR. JOHNSON:  Well, you know, I'm a software engineer.

14    I -- I think it's unlikely that I failed to figure out how to

15    log in in such a way that someone else would have figured out

16    who I got.

17           MR. HICKEY:  Okay.  Thank you.

18    BY MR. HICKEY:

19       Q.  So looking at -- if we can go back to the e-mails,

20    Josh.  If you can go to Page 263.  Okay.  So this is an e-mail

21    to you from Chase.  And so what did you -- you changed your

22    address with Chase online?

23       A.  So, again, I am as much in the dark about this stuff

24    as everybody else is, with the exception of my efforts to view

25    the statements.  And, so, based on the record, I assume that on

1                    CERTIFICATE OF TRANSCRIBER

2

3

4         I, JANENE CLEARY, Michigan CSR No. 16359, do hereby

5    certify that I was authorized to transcribe the foregoing

6    recorded proceeding; and that the transcript is a true and

7    accurate transcription, to the best of my ability, taken while

8    listening to the provided recording.

9

10        I FURTHER CERTIFY that I am not of counsel or attorney

11   for either or any of the parties to said proceedings, nor in any

12   way interested in the events of this cause, and that I am not

13   related to any of the parties thereto.

15        Dated this 20th day of JANUARY, 2026.

16

17                    _Janene Cleary_

18        _____

19        JANENE CLEARY, Michigan CSR No. 16359

20

21

22

23

24

25

# Exhibit D

GMT20210715-150545_Recording_1920x1080
July 15, 2021

AMERICAN ARBITRATION ASSOCIATION


JOSHUA JOHNSON,

              Claimant,

vs.                                          AAA Case:
                                             01-20-0015-1734-2-PA

JPMORGAN CHASE BANK, N.A.,

              Respondent.
_____



                         AUDIO RECORDING

                   VIDEOCONFERENCE ARBITRATION

         FILE NAME: GMT20210715-150545_Recording_1920x1080

                      DATE: JULY 15, 2021












Transcribed By:  JANENE CLEARY, Michigan CSR No. 16359

GMT20210715-150545_Recording_1920x1080
July 15, 2021

P R O C E E D I N G S

1

2          THE ARBITRATOR:  And it's recording now.

3          Mr. Hickey has asked for access to the recording.

4          Mr. Johnson, what do you say about that at this point

5    in time?

6          MR. JOHNSON:  I maintain my objection.

7          THE ARBITRATOR:  Okay.  And what's the basis if you

8    already recorded the first hearing anyway?

9          MR. JOHNSON:  Yeah.  So my basis is -- so the first

10   recording was under different circumstances.  There were

11   constraints placed on the recording as far as the sharing of

12   parties.  Frankly, I don't think it's in my advantage to have it

13   recorded because I think it will be used in an attempt to vacate

14   a potential award or on an appeal, and I don't think that's in

15   my favor.  And so that's -- that's the honest answer why.

16         MR. HICKEY:  But -- and if I may reply?  The

17   constraints for the -- Mr. Johnson's recording the first hearing

18   certainly apply here as well.  We're not going to share it

19   outside of this proceeding.  That's not our intent.

20         And I know Mr. Johnson is concerned about appeals and

21   actions to vacate any award.  I think that, being a litigator,

22   which Mr. Johnson is not, but he certainly has demonstrated a

23   particular skill set that would make him a very good one, that's

24   always a risk in virtually every proceeding.  So the fact that,

25   you know, I don't plan -- I don't think Chase plans to move to

GMT20210715-150545_Recording_1920x1080
July 15, 2021

1  vacate anything or appeal anything at this point because there's

2  no ruling.  But I think it's always good to have as much of a

3  record as possible, and that's why I'm glad he actually recorded

4  the first one.  So that's all I'll say.  We're not --

5          THE ARBITRATOR:  Okay.  Am I correct in understanding

6  that a transcript of the first hearing has been prepared?

7          MR. HICKEY:  Our word processing has gone through it.

8  And took them more than a few days to go through it.  Because I

9  wanted to review -- it occurred to me last week, I was like, I

10  do not intend to recross on areas where I'm satisfied with the

11  cross-exam from the first hearing or Mr. Johnson's direct

12  testimony.  So, in fact, I have a very limited area of -- of

13  coverage with him today, so...

14          THE ARBITRATOR:  Are you willing to provide a copy of

15  that transcript to Mr. Johnson and to me?

16          MR. HICKEY:  Sure.  Yeah.  And with the understanding

17  it's our word processing.  And, you know -- and -- but the

18  benefit is, you can also listen to the audio.  You know, there

19  may be a misspelling or there may be -- you know, it may not be

20  accurate.  But if you have an issue, just go and listen to it.

21          So what Sheila in our Chicago office did -- she did a

22  very credible job, and I owe her dinner and a drink.  But

23  it's -- with that understanding, yeah, we'll provide it.

24          THE ARBITRATOR:  Okay.  Please plan to do so this

25  week.  Was there any effort to only selectively transcribe the

GMT20210715-150545_Recording_1920x1080
July 15, 2021

1  call besides yourself; is that correct?

2         MR. JOHNSON:  There was a -- so that's actually a

3  point of confusion too.  I wasn't clear with -- as far as the

4  Chase witnesses.  I don't know if it's direct or cross.  Am I

5  allowed to just ask the questions that I want of the Chase

6  witnesses even though they're on Chase's witness list and not

7  mine?

8         THE ARBITRATOR:  Yes.  You can call them as a witness

9  in your case if you wish.

10        Have -- let me ask -- have -- I know -- I swore those

11 witnesses who were here at the last time.

12        Were -- Ms. Wade, Ms. Kopecki, were both of you sworn?

13        MS. KOPECKI:  Yes.

14        MS. WADE:  Yes.

15        THE ARBITRATOR:  Okay.  And, Mr. Johnson, you were

16 sworn.  I'll just remind all three of you that your oaths have

17 shelf life, and they remain in effect under penalty of perjury.

18        So with that, go ahead, Mr. Hickey.

19        MR. HICKEY:  Okay.  I would just like to clarify that

20 Ms. Kopecki and Ms. Wade have been brought here for very

21 specific purposes.  Ms. Kopecki has been brought here to talk

22 about the -- the C3s or the system notes.  We've done our best

23 to procure information relating to this account.  The -- the --

24 again, it started at the 0789, 1787, and the 0256 account.  So

25 she is here to testify about the system notes and the purge

GMT20210715-150545_Recording_1920x1080
July 15, 2021

1  notes and the other information relating to Chase's activity

2  relating to the account communications with Mr. Johnson.

3          It appears that one of the things he has from before

4  is the recordation of calls.  Chase has a shelf life on the

5  calls that it -- it does record calls, but it also does not

6  preserve all calls.  That's why the only call that we had

7  related to this account, the 0256 account, was from August 26th,

8  2020.  Ms. Kopecki is here to talk about, you know, her

9  interpretation of the system notes, about what happened in

10 connection with the -- the various communications, like a

11 call-in, an outbound call, or an incoming call, things like

12 that.

13          And Ms. Wade is here even though -- again, the

14 confusion over the FCRA, and he -- he's conceded here that the

15 information provided was accurate.  So whether here or

16 elsewhere, that would preclude him from bringing a -- a claim

17 under the FCRA because that is an admission that would be

18 binding forever.  But she's here to show Chase's good faith

19 efforts to investigate the -- the Equifax dispute.

20          And she's also -- we've seen more than several

21 submissions of essentially the same complaint by Josh, so she's

22 here also to talk about the executive office element of the --

23 the complaint.  So there's a very -- two limited silos about

24 that.

25          And beyond that, I don't know, and I will ask the

GMT20210715-150545_Recording_1920x1080
July 15, 2021

 1  witnesses to testify truthfully if -- if Josh asks the question

 2  of -- of them, that, you know, I don't know that, that's not my

 3  area of expertise, and that -- that's not why I've been called

 4  here today.  I mean, we have not been asked to provide, like,

 5  a -- a representative with knowledge of certain areas.  So I --

 6  I just want it understood that there may be areas that they

 7  cannot fill in the blanks.  I think that they'll do their level

 8  best to testify with the knowledge that they've gained from

 9  review of Chase records here.

10          But, Josh, you may ask questions where -- you know, --

11  the fact -- we could -- we could have provided 20 witnesses.

12  But, again, the issues here, again, are -- I made my statement

13  about that, but --

14          THE ARBITRATOR:  I understand.  And no witness is

15  going to be expected to say something other than what they know

16  of their own knowledge and not --

17          MR. HICKEY:  Right.  So we don't want any -- any

18  aspersions being passed, any -- you know, this is malevolent,

19  this is awful, it's misfeasance.  So I'm like, we're entitled to

20  bring the witnesses we want to defend the claim that has been

21  stated, and that's --

22          THE ARBITRATOR:  Let's not get -- let's not get ahead

23  of ourselves.  We -- I -- I think we understand.  Go ahead.

24  Let's get into the evidence.  Come on, guys.

25          MR. HICKEY:  I'm getting calendar invites.  I'm sorry.

GMT20210715-150545_Recording_1920x1080
July 15, 2021

1  credit card, which I believe was a Chase Freedom card that

2  hasn't been referenced.

3          And so the flow was in 2010, I got this Chase credit

4  card.  It's not linked to an online profile at all.  I would get

5  statements by mail -- via -- paper statements by -- by mail as

6  the default.  And, so, I had to do (indiscernible) enrolling for

7  online access.  So the first step in enrolling is to go to

8  Chase.com, like, register.  You provide an account number.  You

9  provide a user ID.  And it creates this profile.  And then the

10  profile is linked to that specific credit card.

11          My recollection is that I did that once in 2010 and

12  for the personal credit cards that I opened subsequent to 2010,

13  of which there were -- there were several -- I think, four or

14  five -- and, again, by "credit card" in this context, I am not

15  referring to a -- credit card accounts, I should say.  Meaning,

16  I opened a Chase Freedom credit card account.  I opened a Chase

17  Sapphire credit card account.  The account numbers can change.

18          I opened four or five of those between 2010 and 2017,

19  prior to the opening of the bank account.  I do -- I do not

20  think the subsequent cards required any action on my part to

21  have them linked to that online profile that was created in

22  2010.

23          THE ARBITRATOR:  Okay.  Let -- excuse me a minute.

24  Just so I can make sense of what you're saying and -- and what

25  Joe previously brought out, what is the relevance to the issues

GMT20210715-150545_Recording_1920x1080
July 15, 2021

1  in this case -- and I'm going to ask this of both of you -- of

2  the online profile?  What difference does it make?

3         MR. JOHNSON:  What difference does -- does what make?

4         THE ARBITRATOR:  Does it make?  Why are we talking so

5  much about the online profile?  I'm not understanding the

6  significance of it to the issues in this case.

7         MR. JOHNSON:  Okay.  So here's why it's relevant.  So

8  I think the fact that this is digital confuses everyone.  So

9  imagine a locked security deposit box.  I have a key.  I can

10  open the box.

11         So in Chase's case, as we know today, I have the

12  equivalent of two security boxes with different keys, okay?  The

13  relevance here is -- is I contend an audio recording show that,

14  at one point in time, I effectively created the second locked

15  box.  And then for -- for whatever reason -- never got an

16  explanation -- it appears that I no longer became aware that

17  that lockbox existed.

18         And so for a long period of time in 2017, I was

19  attempting to open the lockbox that had existed since 2010 that

20  I was aware of, and expecting to find information related to the

21  Chase Ink credit card, specifically statements in that box, and

22  they were never in that box.  And the reason, we actually don't

23  know.  It -- it could be possible that the reason they weren't

24  in that box is because they were being delivered to the other

25  security deposit box.  It's also possible that Chase was not

GMT20210715-150545_Recording_1920x1080
July 15, 2021

1                    CERTIFICATE OF TRANSCRIBER

2

3

4        I, JANENE CLEARY, Michigan CSR No. 16359, do hereby

5    certify that I was authorized to transcribe the foregoing

6    recorded proceeding; and that the transcript is a true and

7    accurate transcription, to the best of my ability, taken while

8    listening to the provided recording.

9

10        I FURTHER CERTIFY that I am not of counsel or attorney

11    for either or any of the parties to said proceedings, nor in any

12    way interested in the events of this cause, and that I am not

13    related to any of the parties thereto.

14

15        Dated this 20th day of JANUARY, 2026

16

17

18    _____

19        JANENE CLEARY, Michigan CSR No. 16359

20

21

22

23

24

25

**PROOF OF SERVICE**

*Joshua Johnson vs. JPMorgan Chase Bank, N.A.*
*USDC, Central District, Case No. 2:22-cv-06718-AB-MAA*

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 444 South Flower Street, Suite 2200, Los Angeles, California 90071.

On the date set forth below, I served the foregoing document(s) described as **DEFENDANT JPMORGAN CHASE BANK, N.A.'S NOTICE OF LODGMENT OF DOCUMENTS IN SUPPORT OF MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF THOMAS TARTER** on the interested parties in this action as follows:

Joshua Johnson                                          **PLAINTIFF PRO SE**
2201 5th Street, Apt. 208
Santa Monica, CA 90405

Tel: (336) 423-2594
Email: iosh@ii88.org

☒     **BY OVERNIGHT SERVICE:** I enclosed the documents in an envelope/package provided by an overnight delivery carrier and addressed to the persons at the addresses above. I placed the prepaid envelope/package, for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☒     **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address MMendoza@dykema.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on January 30, 2026, at Los Angeles, California.

_____
Mitzi Mendoza

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

DEFENDANT JPMORGAN CHASE BANK, N.A.'S NOTICE OF LODGMENT OF OFFICIAL HEARING TRANSCRIPTS ISO MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF THOMAS TARTER