**DYKEMA GOSSETT LLP**
ABIRAMI GNANADESIGAN (SBN 263375)
AGnanadesigan@dykema.com
444 South Flower Street, Suite 2200
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

**WOMBLE BOND DICKINSON (US) LLP**
TOMIO NARITA (SBN 156576)
Tomio.Narita@wbd-us.com
ALISA A. GIVENTAL (SBN 273551)
Alisa.Givental@wbd-us.com
50 California Street, Suite 2750
San Francisco, CA 94111
Telephone: (415) 433-1900

*Attorneys for Defendant*
JPMORGAN CHASE BANK, N.A.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

JOSHUA JOHNSON,

Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,

Defendant.

Case No.: 2:22-cv-06718-AB-MAA

The Hon. André Birotte Jr.
Courtroom 7B

Magistrate Maria A. Audero
Courtroom: 690

**DECLARATION OF ALISA A. GIVENTAL IN SUPPORT OF DFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION IN LIMINE NO. 11 –TO EXCLUDE ARGUMENT OR EVIDENCE RELATING TO TIME-BARRED CLAIMS**

**Date:** **April 17, 2026**
**Time:** **10:00 AM**
**Location:** **Dept 7B**

Complaint Filed: September 19, 2022

I, Alisa A. Givental, declare as follows:

1. I am an attorney duly licensed to practice before this Court. I am Senior Counsel at Womble Bond Dickinson (US) LLP, counsel of record for defendant JPMorgan Chase Bank, N.A. ("Chase") in this action. I make this declaration in support of Chase's Motion *in Limine* No. 11 – to Exclude Argument or Evidence Relating to Time-Barred Claims. I have personal knowledge of the facts set forth and could and would testify thereto if called upon to do so.

2. After my office was retained in connection with trial of this Action, we obtained copies of all discovery exchanged in this case. Attached hereto as **Exhibit A** is a true and correct copy of Plaintiff Joshua Johnson's Amended Responses to Defendant JPMorgan Chase Bank, N.A.'s Interrogatories, Set One.

I declare under penalty of perjury that the foregoing is true and correct. Executed at San Francisco, California this 20th day of March 2026.

By: *_/s/ Alisa A. Givental_*
Alisa A. Givental

# EXHIBIT A

Russell Law, P.C.
L. David Russell (SBN 260043)
1500 Rosecrans Ave, Suite 500
Manhattan Beach, CA 90266
Tel: (323) 638-7551
Fax: (323) 760-7458
david@russelllawpc.com

Attorneys for Plaintiff
JOSHUA JOHNSON

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| JOSHUA JOHNSON,<br>Plaintiff,<br>vs.<br>JPMORGAN CHASE BANK, N.A.,<br>Defendant. | CASE NO: 2:22-cv-06718-AB-MAAx<br>**PLAINTIFF JOSHUA JOHNSON'S AMENDED RESPONSES TO DEFENDANT JPMORGAN CHASE BANK, N.A'S INTERROGATORIES, SET ONE** |

**PROPOUNDING PARTY**: Defendant JPMORGAN CHASE BANK, N.A

**RESPONDING PARTY**: Plaintiff JOSHUA JOHNSON

**SET NUMBER**: ONE

Plaintiff Joshua Johnson ("Johnson") hereby objects and responds to Defendant JPMorgan Chase Bank, N.A's ("Defendant") Interrogatories, Set One as follows:

## PRELIMINARY STATEMENT

Johnson makes these responses solely for the purpose of this action. Johnson has not completed discovery in this action, or an investigation of all the facts underlying this lawsuit, or preparation of this case for trial. The responses contained herein are in a good faith effort to supply as much information as is presently known to Johnson. Further discovery and investigation may lead to the discovery of additional information responsive to these requests. Accordingly, the following responses are without prejudice to Johnson's right to produce evidence of any subsequently discovered information.

Any information provided in response to these requests is subject to any and all objections regarding competence, relevance, materiality, propriety and admissibility. The following responses are subject to all objections if offered in court, and all such objections are reserved and may be interposed at the time of trial or at any other time.

Johnson makes no incidental or implied admissions by these responses. Accordingly, JPMorgan Chase Bank, N.A shall not construe Johnson's responses or objections to these requests as an admission of the existence of any fact set forth or assumed by these requests, or that such responses constitute admissible evidence. The fact that Johnson has answered any request or any portion thereof is not intended to nor shall it be construed to be as a waiver of all or any part of any objection to any request.

## GENERAL OBJECTIONS

Johnson's responses to each request are subject to the general objections set forth below. These general objections form a part of the response to each request and are set forth here to avoid the duplication and repetition of restating them for each response.

1. Johnson objects to these requests to the extent they seek information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other applicable privileged or protected information. To the extent that the requests may be construed as seeking such privileged or protected information, Johnson hereby claims such privilege and invokes such privilege. The fact that Johnson does not specifically object to an individual request on the ground that it seeks such privileged or protected information is not a waiver of the protection afforded by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection.

2. Johnson objects to the extent that these requests seek information or documents from third parties or which is protected from compelled disclosure under the California Constitution, Article 1, Section 1, and the United States Constitution.

3. Johnson objects to the extent that these requests seek information that is irrelevant and/or not calculated to lead to the discovery of admissible evidence.

4. Johnson objects to the extent that the requests seek documents or information that are not in Johnson's possession, custody, or control.

The foregoing objections and qualifications apply to the responses contained herein and are incorporated by reference to the extent applicable to the specific responses set forth below as though fully set forth therein. The failure to mention any of the foregoing objections and qualifications in the specific responses set forth below shall not be deemed a waiver of such objection or qualification.

## RESPONSES AND OBJECTIONS

**SPECIAL INTERROGATORY NO. 1:**

Regarding YOUR First Claim for Relief in YOUR COMPLAINT:

(a) State all facts that YOU believe support this claim.

**RESPONSE TO SPECIAL INTERROGATORY NO. 1:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is

overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous.

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 1:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following:

Upon information and belief, Chase furnished information to a credit bureau 232 separate times, concerning the Ink account, via its regular monthly reporting, or via an AUD, or via an ACDV as enumerated below. Upon information and belief, per the subscriber agreement, each statement was held out to accurately reflect the "terms of and liability for the account", "[Johnson's performance and other conduct with

respect to the account", to be "substantiated by [Chase's] records", and to comply with the law, i.e., to not to be incomplete, inaccurate, unverifiable, or "materially misleading" with respect to Johnson's "creditworthiness".

| **False Contents** | **Date(s)** |
|---|---|
| The "current condition of [Johnson's account]" was "[greater than 30] days past the due date", the balance was more than $239.50, and a restatement of prior statements about preceding months of past due payments. | On or about August 25, 2017, October 25, 2017, November 25, 2017, December 25, 2017, January 25, 2018, February 25, 2018, and March 25, 2018. |
| The "[u]npaid balance" had been "reported as a loss (charge-off") and a restatement of prior statements about preceding months of past due payments. | On or about April 25, 2018, May 25, 2018, June 25, 2018, July 25, 2018, August 25, 2018, September 25, 2018, October 25, 2018, November 25, 2018, December 25, 2018, January 25, 2019, February 25, 2019, March 25, 2019, April 25, 2019, May 25, 2019, June 25, 2019, July 25, 2019, August 25, 2019, September 25, 2019, October 25, 2019, November 25, 2019, December 25, 2019, January 25, 2020, February 25, 2020, March 25, 2020, April 25, 2020, May 25, 2020, June 25, 2020, July 25, 2020, and August 25, 2020. |
| The "[a]ccount paid in full, was a charge-off", restated the final balance of $499, and a restatement of prior statements about preceding months of past due payments. | In or about August 2020, via an AUD. |
| See immediately above. | On or about September 8, 2020, via an ACDV. |
| See immediately above. | In or about October 2020, via an AUD. |
| See immediately above. | On or about October 25, 2020, November 25, 2020, December 25, 2020, January 25, 2021, February 25, 2021, March 25, 2021, April 25, 2021, May 25, 2021, June 25, 2021, July 25, 2021, August 25, 2021, September 25, 2021, October 25, 2021, November 25, 2021, December 25, 2021, January 25, 2022, and February 25, 2022. |

This information was false because:

- Chase falsely stated that payments were "past due". Payments were not "past" due because, under the terms of the parties' agreement, they were never "due" as Chase had not provided Johnson with statements containing a minimum payment due and a due date.

- Chase falsely stated that the balance was greater than $239.50. The balance was never greater than $239.50 (the alleged balance at the time of account closure), because the terms of the parties' agreement did not authorize Chase to charge late fees under the circumstances.

- Chase falsely implied that the information it furnished reflected "terms of" "the account" but Chase breached the terms agreement by failing to perform its contractual duties to provide paperless statements, online access, and payment due alerts.

- Chase falsely implied that the information reflected "[Johnson's performance and other conduct with respect to the account", i.e., that Johnson did not perform his duties under the agreement. Johnson performed his duties and went above and beyond and repeatedly notified Chase of its failure to perform.

- Chase falsely implied that the information was "substantiated by [Chase's] records". Chase's records do not substantiate Chase's performance nor Johnson's non-performance. With respect to the core allegation that statements were unavailable online, Chase's witness, Valerie Kopecki, stated that Chase "cannot prove or disprove" the allegation, and that Chase's account records did not contain evidence that statements were made available.

- Chase falsely implied that the information was not "materially

misleading" as to Johnson's creditworthiness by reporting that the account was an uncollectible "loss". This was misleading as it suggests that Chase tried to collect (it did not) and Johnson negligently or willfully missed payments repeatedly (he did not).

- Chase's reporting because Chase created the materially misleading impression that Plaintiff was a poor credit risk—a "deadbeat" who shirked his financial obligations and refused to pay his bills. Chase made the reporting misleading by omitting the facts (a) that based on Chase's conduct and representations to him, Plaintiff believed that he had paid off his entire balance before closing his account, (b) that the amount purportedly owed had never become due because Chase never provided a statement to Plaintiff, and (c) that Plaintiff was unable to verify whether there was actually a balance on the account because he could not access the relevant billing statements.

Chase failed to make Johnson aware the "account carried a balance" throughout its lifetime, including for the months where reported the account as delinquent. There was a bona fide dispute because:

The allegation was communicated to Chase within the four corners of the Equifax dispute.

The details of the allegation were presented with as much specificity as possible, given that Johnson was not in possession of material facts known to Chase, e.g., his account records and statements, by Johnson numerous times through the investigation's closure on September 8, 2020:

- On February 17, 2017, the first day in which he was unable to access the account.

- On further phone calls prior to the account's closure, e.g., on March 21, 2017, April 4, 2017, June 13, 2017, September 6, 2017, and September 15, 2017.

- Between May 21, 2018 and June 12, 2018, on 14 phone calls.

- On or about August 20, 2020, when Johnson disputed Chase's reporting via the EO.

- On or about August 25, 2020, when Johnson disputed Chase's reporting via a CFPB dispute.

- On or about August 25, 2020, when Johnson disputed Chase's reporting via a notice of intent to arbitrate.

While Johnson presented Chase with specific examples of means by which Chase failed to make him aware of a balance and which should have been investigated, Chase did not need Johnson to provide examples, as they knew each of the limited number of mechanisms by which a customer may access account information because designed those mechanisms. Chase was also aware of its contractual obligations to provide online access, statements, and payment due alerts, having drafted the adhesion contracts, and having account records of their existence.

Chase was in unique possession of specific information about Johnson, lending credence to Johnson's allegation that he had not made a negligent mistake:

- Chase knew that Johnson complained that he was unable to access statements for his Ink account prior to account closure, because of an account notation recorded on September 6 noting Johnson's complaint that he was "NOT

RECEIVING" statements.

- Chase knew the alleged delinquency was anomalous, as indicated by Chase's May 30, 2018 notation that "CUSTOMER IS PAY-IN-FULL CUSOTMER ACCORDING TO [his Sapphire account]".

- Chase knew the purported final payment of the minimum payment due rather than the entire balance on September 6, 2017 was anomalous, because it was in possession of statements and payment records showing that, between 2016 and 2018, Johnson (1) used a Sapphire account and an Ink account, (2) before September 2017, Johnson made 12 payments totaling $11,532.38 across his Sapphire and Ink accounts, none of which were for the minimum payment due, and (3) after September 2017, Johnson made 6 payments totaling $15,128.59 for his Sapphire account, none of which were for the minimum payment due.

- Chase had access to Johnson's credit history with Chase, which was perfect despite spanning multiple credit cards over a decade, before and after the Ink account's lifetime.

- Chase had access to Johnson's perfect credit history with outside creditors, also spanning over a decade.

- Chase knew that Johnson demonstrated a lack of negligence by enrolling in payment due alerts. Chase also knew that it did not send payment due alerts after account closure.

- Chase knew that it sent a single letter to Johnson after account closure. Chase also knew that Johnson could not have received this letter because it did not

correctly update his mailing address. Chase's May 30, 2018 notation that "CUSTOMERS [current Sapphire account] WAS PAID OFF IN FEBRUARY 2018 AND ADDRESS WAS CHANGED FOR THAT ACCOUNT BUT NOT FOR [allegedly delinquent Ink account]".

- Chase knew that its collection calls to Johnson may have been flagged as "spam".

- Chase knew that Johnson would not have known that the single voicemail it left was from Chase, because the voicemail would have been extremely non-descript.

- Chase knew that Johnson's exclusively phone-based payments for the Ink card were anomalous because it was in possession of payment history for his Sapphire card indicating exclusive online payments.

- Chase knew that, during the Ink account's lifetime, Johnson had called Chase an unusual number of times with respect to the account because it was in possession of call history. Despite the fact that the produced account records are known to be incomplete and an unknown number of records have been destroyed by Chase, Johnson spoke to Chase regarding the account via telephone on February 17, 2017, March 21, 2017, April 4, 2017, June 13, 2017, September 6, 2017, September 15, 2017.

- Chase knew that Johnson demonstrated a lack of negligence by changing his mailing address for his Ink and Sapphire accounts on April 4, 2017 despite being enrolled in paperless statements.

Chase knew that its online enrollment and account linking processes were cumbersome and error-prone for customers and agents alike, that it lacked a policy of notifying customers on account closure calls of a remaining balance, and that its record destruction policies led to incomplete records.

Chase knew that its Chase's records could not substantiate Chase's performance. Chase knew that its account records did not contain evidence that statements were made available. Chase's witness, Valerie Kopecki, stated that, in general, Chase "cannot prove or disprove" any customer allegation that statements were not made available online.

Chase was uniquely aware of the way in which a credit bureau would interpret its reporting, holding them out to be reflect the "terms of and liability for the account", to reflect "[Johnson's performance and other conduct with respect to the account", and not to be "materially misleading" with respect to Johnson's "creditworthiness", and that the evidence in its possession did not support this.

Chase knew that the issues that it did investigate were completely unrelated to Johnson's allegation and therefore the investigation produced zero evidence contrary to Johnson's allegation:

- Chase determined that "[p]ayments to the account were made from a checking account in your name […] For the above reason, the account isn't fraudulent, and you are liable for the balance". These payments were exclusively made via the telephone, which Johnson never disputed.

- Chase determined that "[Johnson's] account was enrolled to receive paperless statements on February 17, 2017, and only customers can enroll their

account in paperless statements". Johnson never disputed that he opted to receive paperless statements.

- Chase determined that "We have confirmed that the statement notifications were successfully sent to your email and were not returned as being undeliverable". Johnson never alleged statements notification non-receipt, he alleged statement non-receipt.

While discovery continues, there is no indication in any Chase's account records, internal notes, internal emails, or any other document produced by Chase that indicates that this relevant information was reviewed by Chase in the context of the 2020 investigation. Chase has stipulated that no employee has any memory. Chase has admitted that these items were not investigated because they were not considered part of the dispute.

**SPECIAL INTERROGATORY NO. 2:**

Regarding YOUR Second Claim for Relief in YOUR COMPLAINT:

(a) State all facts that YOU believe support this claim.

**RESPONSE TO SPECIAL INTERROGATORY NO. 2:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that

it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous.

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 2:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following: Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following: Upon information and belief, Chase furnished information to a credit bureau 232 separate times, concerning the Ink account, via its regular monthly reporting, or via an AUD, or via an ACDV as enumerated below. Upon information and belief, per the subscriber agreement, each statement was held out to accurately reflect the "terms of and liability for the account", "[Johnson's performance and other conduct with respect to the account", to be "substantiated by [Chase's] records", and to comply with the law, i.e., to not to be incomplete, inaccurate, unverifiable, or "materially misleading" with respect to Johnson's "creditworthiness".

| **False Contents** | **Date(s)** |
|---|---|

| | |
|---|---|
| The "current condition of [Johnson's account]" was "[greater than 30] days past the due date", the balance was more than $239.50, and a restatement of prior statements about preceding months of past due payments. | On or about August 25, 2017, October 25, 2017, November 25, 2017, December 25, 2017, January 25, 2018, February 25, 2018, and March 25, 2018. |
| The "[u]npaid balance" had been "reported as a loss (charge-off") and a restatement of prior statements about preceding months of past due payments. | On or about April 25, 2018, May 25, 2018, June 25, 2018, July 25, 2018, August 25, 2018, September 25, 2018, October 25, 2018, November 25, 2018, December 25, 2018, January 25, 2019, February 25, 2019, March 25, 2019, April 25, 2019, May 25, 2019, June 25, 2019, July 25, 2019, August 25, 2019, September 25, 2019, October 25, 2019, November 25, 2019, December 25, 2019, January 25, 2020, February 25, 2020, March 25, 2020, April 25, 2020, May 25, 2020, June 25, 2020, July 25, 2020, and August 25, 2020. |
| The "[a]ccount paid in full, was a charge-off", restated the final balance of $499, and a restatement of prior statements about preceding months of past due payments. | In or about August 2020, via an AUD. |
| See immediately above. | On or about September 8, 2020, via an ACDV. |
| See immediately above. | In or about October 2020, via an AUD. |
| See immediately above. | On or about October 25, 2020, November 25, 2020, December 25, 2020, January 25, 2021, February 25, 2021, March 25, 2021, April 25, 2021, May 25, 2021, June 25, 2021, July 25, 2021, August 25, 2021, September 25, 2021, October 25, 2021, November 25, 2021, December 25, 2021, January 25, 2022, and February 25, 2022. |

This information was false because:

- Chase falsely stated that payments were "past due". Payments were not "past" due because, under the terms of the parties' agreement, they were never "due" as Chase had not provided Johnson with statements containing a minimum payment due and a due date.

- Chase falsely stated that the balance was greater than $239.50. The balance was never greater than $239.50 (the alleged balance at the time of account closure), because the terms of the parties' agreement did not authorize Chase to charge late fees under the circumstances.

- Chase falsely implied that the information it furnished reflected "terms of" "the account" but Chase breached the terms agreement by failing to perform its contractual duties to provide paperless statements, online access, and payment due alerts.

- Chase falsely implied that the information reflected "[Johnson's performance and other conduct with respect to the account", i.e., that Johnson did not perform his duties under the agreement. Johnson performed his duties and went above and beyond and repeatedly notified Chase of its failure to perform.

- Chase falsely implied that the information was "substantiated by [Chase's] records". Chase's records do not substantiate Chase's performance nor Johnson's non-performance. With respect to the core allegation that statements were unavailable online, Chase's witness, Valerie Kopecki, stated that Chase "cannot prove or disprove" the allegation, and that Chase's account records did not contain evidence that statements were made available.

- Chase falsely implied that the information was not "materially misleading" as to Johnson's creditworthiness by reporting that the account was an uncollectible "loss". This was misleading as it suggests that Chase tried to collect (it did not) and Johnson negligently or willfully missed payments repeatedly (he did not).

- Chase's reporting because Chase created the materially misleading

impression that Plaintiff was a poor credit risk—a "deadbeat" who shirked his financial obligations and refused to pay his bills. Chase made the reporting misleading by omitting the facts (a) that based on Chase's conduct and representations to him, Plaintiff believed that he had paid off his entire balance before closing his account, (b) that the amount purportedly owed had never become due because Chase never provided a statement to Plaintiff, and (c) that Plaintiff was unable to verify whether there was actually a balance on the account because he could not access the relevant billing statements.

Chase failed to make Johnson aware the "account carried a balance" throughout its lifetime, including for the months where reported the account as delinquent. There was a bona fide dispute because:

The allegation was communicated to Chase within the four corners of the Equifax dispute.

The details of the allegation were presented with as much specificity as possible, given that Johnson was not in possession of material facts known to Chase, e.g., his account records and statements, by Johnson numerous times through the investigation's closure on September 8, 2020:

- On February 17, 2017, the first day in which he was unable to access the account.

- On further phone calls prior to the account's closure, e.g., on March 21, 2017, April 4, 2017, June 13, 2017, September 6, 2017, and September 15, 2017.

- Between May 21, 2018 and June 12, 2018, on 14 phone calls.

- On or about August 20, 2020, when Johnson disputed Chase's reporting via the EO.

- On or about August 25, 2020, when Johnson disputed Chase's reporting via a CFPB dispute.

- On or about August 25, 2020, when Johnson disputed Chase's reporting via a notice of intent to arbitrate.

While Johnson presented Chase with specific examples of means by which Chase failed to make him aware of a balance and which should have been investigated, Chase did not need Johnson to provide examples, as they knew each of the limited number of mechanisms by which a customer may access account information because designed those mechanisms. Chase was also aware of its contractual obligations to provide online access, statements, and payment due alerts, having drafted the adhesion contracts, and having account records of their existence.

Chase was in unique possession of specific information about Johnson, lending credence to Johnson's allegation that he had not made a negligent mistake:

- Chase knew that Johnson complained that he was unable to access statements for his Ink account prior to account closure, because of an account notation recorded on September 6 noting Johnson's complaint that he was "NOT RECEIVING" statements.

- Chase knew the alleged delinquency was anomalous, as indicated by

Chase's May 30, 2018 notation that "CUSTOMER IS PAY-IN-FULL CUSOTMER ACCORDING TO [his Sapphire account]".

- Chase knew the purported final payment of the minimum payment due rather than the entire balance on September 6, 2017 was anomalous, because it was in possession of statements and payment records showing that, between 2016 and 2018, Johnson (1) used a Sapphire account and an Ink account, (2) before September 2017, Johnson made 12 payments totaling $11,532.38 across his Sapphire and Ink accounts, none of which were for the minimum payment due, and (3) after September 2017, Johnson made 6 payments totaling $15,128.59 for his Sapphire account, none of which were for the minimum payment due.

- Chase had access to Johnson's credit history with Chase, which was perfect despite spanning multiple credit cards over a decade, before and after the Ink account's lifetime.

- Chase had access to Johnson's perfect credit history with outside creditors, also spanning over a decade.

- Chase knew that Johnson demonstrated a lack of negligence by enrolling in payment due alerts. Chase also knew that it did not send payment due alerts after account closure.

- Chase knew that it sent a single letter to Johnson after account closure. Chase also knew that Johnson could not have received this letter because it did not correctly update his mailing address. Chase's May 30, 2018 notation that "CUSTOMERS [current Sapphire account] WAS PAID OFF IN FEBRUARY 2018 AND ADDRESS WAS CHANGED FOR THAT ACCOUNT BUT NOT FOR

[allegedly delinquent Ink account]".

- Chase knew that its collection calls to Johnson may have been flagged as "spam".

- Chase knew that Johnson would not have known that the single voicemail it left was from Chase, because the voicemail would have been extremely non-descript.

- Chase knew that Johnson's exclusively phone-based payments for the Ink card were anomalous because it was in possession of payment history for his Sapphire card indicating exclusive online payments.

- Chase knew that, during the Ink account's lifetime, Johnson had called Chase an unusual number of times with respect to the account because it was in possession of call history. Despite the fact that the produced account records are known to be incomplete and an unknown number of records have been destroyed by Chase, Johnson spoke to Chase regarding the account via telephone on February 17, 2017, March 21, 2017, April 4, 2017, June 13, 2017, September 6, 2017, September 15, 2017.

- Chase knew that Johnson demonstrated a lack of negligence by changing his mailing address for his Ink and Sapphire accounts on April 4, 2017 despite being enrolled in paperless statements.

Chase knew that its online enrollment and account linking processes were cumbersome and error-prone for customers and agents alike, that it lacked a policy of notifying customers on account closure calls of a remaining balance, and that its

record destruction policies led to incomplete records.

Chase knew that its Chase's records could not substantiate Chase's performance. Chase knew that its account records did not contain evidence that statements were made available. Chase's witness, Valerie Kopecki, stated that, in general, Chase "cannot prove or disprove" any customer allegation that statements were not made available online.

Chase was uniquely aware of the way in which a credit bureau would interpret its reporting, holding them out to be reflect the "terms of and liability for the account", to reflect "[Johnson's performance and other conduct with respect to the account", and not to be "materially misleading" with respect to Johnson's "creditworthiness", and that the evidence in its possession did not support this.

Chase knew that the issues that it did investigate were completely unrelated to Johnson's allegation and therefore the investigation produced zero evidence contrary to Johnson's allegation:

- Chase determined that "[p]ayments to the account were made from a checking account in your name […] For the above reason, the account isn't fraudulent, and you are liable for the balance". These payments were exclusively made via the telephone, which Johnson never disputed.

- Chase determined that "[Johnson's] account was enrolled to receive paperless statements on February 17, 2017, and only customers can enroll their account in paperless statements". Johnson never disputed that he opted to receive paperless statements.

- Chase determined that "We have confirmed that the statement notifications were successfully sent to your email and were not returned as being undeliverable". Johnson never alleged statements notification non-receipt, he alleged statement non-receipt.

While discovery continues, there is no indication in any Chase's account records, internal notes, internal emails, or any other document produced by Chase that indicates that this relevant information was reviewed by Chase in the context of the 2020 investigation. Chase has stipulated that no employee has any memory. Chase has admitted that these items were not investigated because they were not considered part of the dispute.

**SPECIAL INTERROGATORY NO. 3:**

Regarding YOUR contention in paragraph 8 of the COMPLAINT that "there was a bona fide dispute regarding this reporting ...":

(a) State all facts that YOU believe support this contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 3:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson

further objects as the request is vague and ambiguous.

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 3:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following:

Plaintiff disputed Chase's reporting that Plaintiff's Chase Ink credit card account was delinquent and was a charge-off, without reporting that there was a bona fide dispute regarding this reporting and that Plaintiff had meritorious defenses, including that (a) in September 2017, Plaintiff contacted Chase to pay off the entire balance of his account and terminate his account relationship with a $0 balance and (b) Plaintiff's payments had never come due because Chase never provided him a statement with the due date. Indeed, as Plaintiff repeatedly communicated to Chase's representatives and technical support professionals prior to requesting that the account relationship be terminated, he was unable to access his account online or view billing statements, so he was not aware of Chase's failure to terminate the account relationship, and once he discovered Chase's false reporting.

Chase failed to make Johnson aware the "account carried a balance" throughout its lifetime, including for the months where reported the account as delinquent. There was a bona fide dispute because:

The allegation was communicated to Chase within the four corners of the Equifax dispute.

The details of the allegation were presented with as much specificity as possible, given that Johnson was not in possession of material facts known to Chase, e.g., his account records and statements, by Johnson numerous times through the investigation's closure on September 8, 2020:

- On February 17, 2017, the first day in which he was unable to access the account.

- On further phone calls prior to the account's closure, e.g., on March 21, 2017, April 4, 2017, June 13, 2017, September 6, 2017, and September 15, 2017.

- Between May 21, 2018 and June 12, 2018, on 14 phone calls.

- On or about August 20, 2020, when Johnson disputed Chase's reporting via the EO.

- On or about August 25, 2020, when Johnson disputed Chase's reporting via a CFPB dispute.

- On or about August 25, 2020, when Johnson disputed Chase's reporting via a notice of intent to arbitrate.

While Johnson presented Chase with specific examples of means by which Chase failed to make him aware of a balance and which should have been investigated, Chase did not need Johnson to provide examples, as they knew each of the limited number of mechanisms by which a customer may access account information because designed those mechanisms. Chase was also aware of its contractual obligations to provide online access, statements, and payment due alerts, having drafted the adhesion contracts, and having account records of their existence.

Chase was in unique possession of specific information about Johnson, lending credence to Johnson's allegation that he had not made a negligent mistake:

- Chase knew that Johnson complained that he was unable to access statements for his Ink account prior to account closure, because of an account notation recorded on September 6 noting Johnson's complaint that he was "NOT RECEIVING" statements.

- Chase knew the alleged delinquency was anomalous, as indicated by Chase's May 30, 2018 notation that "CUSTOMER IS PAY-IN-FULL CUSOTMER ACCORDING TO [his Sapphire account]".

- Chase knew the purported final payment of the minimum payment due rather than the entire balance on September 6, 2017 was anomalous, because it was in possession of statements and payment records showing that, between 2016 and 2018, Johnson (1) used a Sapphire account and an Ink account, (2) before September 2017, Johnson made 12 payments totaling $11,532.38 across his Sapphire and Ink accounts, none of which were for the minimum payment due, and (3) after September 2017, Johnson made 6 payments totaling $15,128.59 for his Sapphire account, none of which were for the minimum payment due.

- Chase had access to Johnson's credit history with Chase, which was perfect despite spanning multiple credit cards over a decade, before and after the Ink account's lifetime.

- Chase had access to Johnson's perfect credit history with outside creditors, also spanning over a decade.

- Chase knew that Johnson demonstrated a lack of negligence by enrolling in payment due alerts. Chase also knew that it did not send payment due alerts after account closure.

- Chase knew that it sent a single letter to Johnson after account closure. Chase also knew that Johnson could not have received this letter because it did not correctly update his mailing address. Chase's May 30, 2018 notation that "CUSTOMERS [current Sapphire account] WAS PAID OFF IN FEBRUARY 2018 AND ADDRESS WAS CHANGED FOR THAT ACCOUNT BUT NOT FOR [allegedly delinquent Ink account]".

- Chase knew that its collection calls to Johnson may have been flagged as "spam".

- Chase knew that Johnson would not have known that the single voicemail it left was from Chase, because the voicemail would have been extremely non-descript.

- Chase knew that Johnson's exclusively phone-based payments for the Ink card were anomalous because it was in possession of payment history for his Sapphire card indicating exclusive online payments.

- Chase knew that, during the Ink account's lifetime, Johnson had called Chase an unusual number of times with respect to the account because it was in possession of call history. Despite the fact that the produced account records are known to be incomplete and an unknown number of records have been destroyed by Chase, Johnson spoke to Chase regarding the account via telephone on February 17, 2017, March 21, 2017, April 4, 2017, June 13, 2017, September 6, 2017, September 15, 2017.

- Chase knew that Johnson demonstrated a lack of negligence by changing his mailing address for his Ink and Sapphire accounts on April 4, 2017 despite being enrolled in paperless statements.

Chase knew that its online enrollment and account linking processes were cumbersome and error-prone for customers and agents alike, that it lacked a policy of notifying customers on account closure calls of a remaining balance, and that its record destruction policies led to incomplete records.

Chase knew that its Chase's records could not substantiate Chase's performance. Chase knew that its account records did not contain evidence that statements were made available. Chase's witness, Valerie Kopecki, stated that, in general, Chase "cannot prove or disprove" any customer allegation that statements were not made available online.

Chase was uniquely aware of the way in which a credit bureau would interpret its reporting, holding them out to be reflect the "terms of and liability for the account", to reflect "[Johnson's performance and other conduct with respect to the account", and not to be "materially misleading" with respect to Johnson's "creditworthiness", and that the evidence in its possession did not support this.

Chase knew that the issues that it did investigate were completely unrelated to Johnson's allegation and therefore the investigation produced zero evidence contrary to Johnson's allegation:

- Chase determined that "[p]ayments to the account were made from a checking account in your name […] For the above reason, the account isn't fraudulent, and you are liable for the balance". These payments were exclusively made via the telephone, which Johnson never disputed.

- Chase determined that "[Johnson's] account was enrolled to receive paperless statements on February 17, 2017, and only customers can enroll their account in paperless statements". Johnson never disputed that he opted to receive paperless statements.

- Chase determined that "We have confirmed that the statement notifications were successfully sent to your email and were not returned as being undeliverable". Johnson never alleged statements notification non-receipt, he alleged statement non-receipt.

While discovery continues, there is no indication in any Chase's account records, internal notes, internal emails, or any other document produced by Chase that indicates that this relevant information was reviewed by Chase in the context of the 2020 investigation. Chase has stipulated that no employee has any memory. Chase has admitted that these items were not investigated because they were not considered part of the dispute.

**SPECIAL INTERROGATORY NO. 4:**

Regarding YOUR contention in paragraph 8 of the COMPLAINT that "in

September 2017, Plaintiff contacted Chase to pay off the entire balance of his account and terminate his account relationship with a $0 balance ...":

(a) State all facts that YOU believe support this contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 4:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous.

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 4:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following:

- Chase's account records indicate that, in September 2017, Johnson spoke to Chase via telephone and made a payment of $111.14. Chase's account records indicate that, in September 2017, Johnson's account was closed at his request.

- Johnson's call records indicate a call occurred on September 15, 2017 with a duration of 12 minutes. Chase's does not require that its agents disclose the existence of a balance on an account closure call.

- Because he was unable to access his account balance online, view transactions online, or access statements online, Johnson could not have known the current balance, statement balance, minimum payment amount, or past due amount to be anything other than what he was told by Chase via telephone.

- Johnson had no reason to pay less than the entire balance. Johnson had ample ability to make a $345.97 payment. The difference between the minimum payment amount and the entire balance was $234.48.

- A minimum payment was anomalous. Between 2016 and 2018, Johnson used a Sapphire account and an Ink account. Before September 2017, Johnson made 12 payments totaling $11,532.38 across his Sapphire and Ink accounts, none of which were for the minimum payment due. After September 2017, Johnson made 6 payments totaling $15,128.59 for his Sapphire account, none of which were for the minimum payment due.

- Johnson's specific reason for terminating his account relationship was to reduce the risk of credit damage due to miscommunication and late payments.

- Chase's call center employees are incompetent and poorly trained.

Furthermore:

- Johnson instructed Chase to withdraw the entire balance.

- Chase sent a payment receipt, but this receipt did not specify whether the amount was for the minimum payment due or the entire balance. Johnson could not confirm because he had no access to statements.

- After account closure, Johnson stopped receiving payment due alerts from Chase.

- After account closure, Chase stopped receiving collection letters from Chase.

- After account closure, Chase did not make contact with Johnson via telephone to indicate that a balance remained.

- After account closure, Chase did not leave a voicemail indicating that a balance remained.

- After account closure, Johnson did not receive any secure messages from Chase indicating that a balanced remained.

**SPECIAL INTERROGATORY NO. 5:**

Regarding YOUR contention in paragraph 8 of the COMPLAINT that "Plaintiff's payments had never come due because Chase never provided him a

statement with the due date."

(a) State all facts that YOU believe support this contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 5:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous.

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 5:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following:

In 2017, Chase's computer system was subject to technical limitations. For certain accounts to be available for online access via an existing user ID, customers were instructed to call Chase and to create a temporary profile for the sole purpose of enabling an agent to "unlink" the business account from the temporary profile and "link" it to the existing profile.

On or about February 17, 2017, Johnson agreed to receive statements electronically via his forepus1 profile. He called Chase and—pursuant to the agent's oral instructions and Chase's written note that "[t]o see both business and personal accounts using the same User ID and Password, enroll your business account(s) first, then contact your banker or call 1-877-CHASEPC"—he created a temporary profile with the user ID "jsjohns3". Chase, however, failed to make the Ink account available online, under either profile.

Under the terms of the parties' agreement, statements were the "official record" of Johnson's account, containing a list of transactions, minimum payment due, and due date.

Johnson logged into both Chase accounts and was unable to access his billing statements for the Ink credit card. He followed up with Chase multiple times and they were unable to resolve the issue.

**SPECIAL INTERROGATORY NO. 6:**

Regarding YOUR contentions in paragraph 8 of the COMPLAINT that "Plaintiff repeatedly communicated to Chase's representatives and technical support professionals ... he was unable to access his account online or view billing statements ..."

(a) State all facts that YOU believe support this contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 6:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous.

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 6:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following:

Chase's account records indicate that Johnson called Chase via telephone concerning the Ink account on January 29, 2017, February 17, 2017, March 21,

2017, April 4, 2017, June 13, 2017, and September 15, 2017.

Chase's account records, and call audio from June 12, 2018, indicate that on September 6, 2017, Chase called Johnson, the agent noted Johnson's complaint that he was unable to access statements for his Ink account, and the agent suggested that Johnson check his email spam folder. Johnson closed his account a week later.

**SPECIAL INTERROGATORY NO. 7:**

Regarding YOUR contention in paragraph 8 of the COMPLAINT that Chase falsely reported information regarding YOUR Chase Ink credit card account:

(a) State all facts that YOU believe support this contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 7:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous.

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 7:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide

a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following:

Upon information and belief, Chase furnished information to a credit bureau 232 separate times, concerning the Ink account, via its regular monthly reporting, or via an AUD, or via an ACDV as enumerated below. Upon information and belief, per the subscriber agreement, each statement was held out to accurately reflect the "terms of and liability for the account", "[Johnson's performance and other conduct with respect to the account", to be "substantiated by [Chase's] records", and to comply with the law, i.e., to not to be incomplete, inaccurate, unverifiable, or "materially misleading" with respect to Johnson's "creditworthiness".

| **False Contents** | **Date(s)** |
|---|---|
| The "current condition of [Johnson's account]" was "[greater than 30] days past the due date", the balance was more than $239.50, and a restatement of prior statements about preceding months of past due payments. | On or about August 25, 2017, October 25, 2017, November 25, 2017, December 25, 2017, January 25, 2018, February 25, 2018, and March 25, 2018. |
| The "[u]npaid balance" had been "reported as a loss (charge-off") and a restatement of prior statements about preceding months of past due payments. | On or about April 25, 2018, May 25, 2018, June 25, 2018, July 25, 2018, August 25, 2018, September 25, 2018, October 25, 2018, November 25, 2018, December 25, 2018, January 25, 2019, February 25, 2019, March 25, 2019, April 25, 2019, May 25, 2019, June 25, 2019, July 25, 2019, August 25, 2019, September 25, 2019, October 25, 2019, November 25, 2019, December 25, 2019, January 25, 2020, February 25, |

| | |
|---|---|
| | 2020, March 25, 2020, April 25, 2020, May 25, 2020, June 25, 2020, July 25, 2020, and August 25, 2020. |
| The "[a]ccount paid in full, was a charge-off", restated the final balance of $499, and a restatement of prior statements about preceding months of past due payments. | In or about August 2020, via an AUD. |
| See immediately above. | On or about September 8, 2020, via an ACDV. |
| See immediately above. | In or about October 2020, via an AUD. |
| See immediately above. | On or about October 25, 2020, November 25, 2020, December 25, 2020, January 25, 2021, February 25, 2021, March 25, 2021, April 25, 2021, May 25, 2021, June 25, 2021, July 25, 2021, August 25, 2021, September 25, 2021, October 25, 2021, November 25, 2021, December 25, 2021, January 25, 2022, and February 25, 2022. |

This information was false because:

- Chase falsely stated that payments were "past due". Payments were not "past" due because, under the terms of the parties' agreement, they were never "due" as Chase had not provided Johnson with statements containing a minimum payment due and a due date.

- Chase falsely stated that the balance was greater than $239.50. The balance was never greater than $239.50 (the alleged balance at the time of account closure), because the terms of the parties' agreement did not authorize Chase to charge late fees under the circumstances.

- Chase falsely implied that the information it furnished reflected "terms of" "the account" but Chase breached the terms agreement by failing to perform its contractual duties to provide paperless statements, online access, and payment due alerts.

- Chase falsely implied that the information reflected "[Johnson's performance and other conduct with respect to the account", i.e., that Johnson did not perform his duties under the agreement. Johnson performed his duties and went above and beyond and repeatedly notified Chase of its failure to perform.

- Chase falsely implied that the information was "substantiated by [Chase's] records". Chase's records do not substantiate Chase's performance nor Johnson's non-performance. With respect to the core allegation that statements were unavailable online, Chase's witness, Valerie Kopecki, stated that Chase "cannot prove or disprove" the allegation, and that Chase's account records did not contain evidence that statements were made available.

- Chase falsely implied that the information was not "materially misleading" as to Johnson's creditworthiness by reporting that the account was an uncollectible "loss". This was misleading as it suggests that Chase tried to collect (it did not) and Johnson negligently or willfully missed payments repeatedly (he did not).

- Chase's reporting because Chase created the materially misleading impression that Plaintiff was a poor credit risk—a "deadbeat" who shirked his financial obligations and refused to pay his bills. Chase made the reporting misleading by omitting the facts (a) that based on Chase's conduct and representations to him, Plaintiff believed that he had paid off his entire balance before closing his account, (b) that the amount purportedly owed had never become due because Chase never provided a statement to Plaintiff, and (c) that Plaintiff was unable to verify whether there was actually a balance on the account because he could not access the relevant billing statements.

**SPECIAL INTERROGATORY NO. 8:**

Regarding YOUR contention in paragraph 9 of the COMPLAINT that "... based on Chase's conduct and representations to him, Plaintiff believed that he had paid off his entire balance before closing his account..

(a) State all facts that YOU believe support this contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 8:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects as the request is vague and ambiguous. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine.

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 8:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects as the request is vague and ambiguous. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Subject to Johnson's

reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following:

- Chase's account records indicate that, in September 2017, Johnson spoke to Chase via telephone and made a payment of $111.14. Chase's account records indicate that, in September 2017, Johnson's account was closed at his request.

- Johnson's call records indicate a call occurred on September 15, 2017 with a duration of 12 minutes. Chase's does not require that its agents disclose the existence of a balance on an account closure call.

- Because he was unable to access his account balance online, view transactions online, or access statements online, Johnson could not have known the current balance, statement balance, minimum payment amount, or past due amount to be anything other than what he was told by Chase via telephone.

- Johnson had no reason to pay less than the entire balance. Johnson had ample ability to make a $345.97 payment. The difference between the minimum payment amount and the entire balance was $234.48.

- A minimum payment was anomalous. Between 2016 and 2018, Johnson used a Sapphire account and an Ink account. Before September 2017, Johnson made 12 payments totaling $11,532.38 across his Sapphire and Ink accounts, none of which were for the minimum payment due. After September 2017, Johnson made 6 payments totaling $15,128.59 for his Sapphire account, none of which were for the minimum payment due.

- Johnson's specific reason for terminating his account relationship was to reduce the risk of credit damage due to miscommunication and late payments.

- Chase's call center employees are incompetent and poorly trained.

**SPECIAL INTERROGATORY NO. 9:**

Regarding YOUR contention in paragraph 9 of the COMPLAINT that "... the amount purportedly owed had never become due because Chase never provided a statement to Plaintiff..

(a) State all facts that YOU believe support this contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 9:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous.

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 9:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c)

identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following:

In 2017, Chase's computer system was subject to technical limitations. For certain accounts to be available for online access via an existing user ID, customers were instructed to call Chase and to create a temporary profile for the sole purpose of enabling an agent to "unlink" the business account from the temporary profile and "link" it to the existing profile.

On or about February 17, 2017, Johnson agreed to receive statements electronically via his forepus1 profile. He called Chase and—pursuant to the agent's oral instructions and Chase's written note that "[t]o see both business and personal accounts using the same User ID and Password, enroll your business account(s) first, then contact your banker or call 1-877-CHASEPC"—he created a temporary profile with the user ID "jsjohns3". Chase, however, failed to make the Ink account available online, under either profile.

Under the terms of the parties' agreement, statements were the "official record" of Johnson's account, containing a list of transactions, minimum payment due, and due date.

Johnson logged into both Chase accounts and was unable to access his billing statements for the Ink credit card. He followed up with Chase multiple times and

they were unable to resolve the issue.

**SPECIAL INTERROGATORY NO. 10:**

Regarding YOUR contention in paragraph 9 of the COMPLAINT that "... Plaintiff was unable to verify whether there was actually a balance on the account because he could not access the relevant billing statements ...."

(a) State all facts that YOU believe support this contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 10**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party.

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 10**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide

a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following:

In 2017, Chase's computer system was subject to technical limitations. For certain accounts to be available for online access via an existing user ID, customers were instructed to call Chase and to create a temporary profile for the sole purpose of enabling an agent to "unlink" the business account from the temporary profile and "link" it to the existing profile.

On or about February 17, 2017, Johnson agreed to receive statements electronically via his forepus1 profile. He called Chase and—pursuant to the agent's oral instructions and Chase's written note that "[t]o see both business and personal accounts using the same User ID and Password, enroll your business account(s) first, then contact your banker or call 1-877-CHASEPC"—he created a temporary profile with the user ID "jsjohns3". Chase, however, failed to make the Ink account available online, under either profile.

Under the terms of the parties' agreement, statements were the "official record" of Johnson's account, containing a list of transactions, minimum payment due, and due date.

Johnson logged into both Chase accounts and was unable to access his billing statements for the Ink credit card. He followed up with Chase multiple times and they were unable to resolve the issue.

**SPECIAL INTERROGATORY NO. 11:**

Regarding YOUR contention in paragraph 11 of the COMPLAINT that "... the original information was incomplete, inaccurate, and incapable of verification

(a) State all facts that YOU believe support this contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 11:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party.

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 11:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide

a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following:

Upon information and belief, Chase furnished information to a credit bureau 232 separate times, concerning the Ink account, via its regular monthly reporting, or via an AUD, or via an ACDV as enumerated below. Upon information and belief, per the subscriber agreement, each statement was held out to accurately reflect the "terms of and liability for the account", "[Johnson's performance and other conduct with respect to the account", to be "substantiated by [Chase's] records", and to comply with the law, i.e., to not to be incomplete, inaccurate, unverifiable, or "materially misleading" with respect to Johnson's "creditworthiness".

| **False Contents** | **Date(s)** |
|---|---|
| The "current condition of [Johnson's account]" was "[greater than 30] days past the due date", the balance was more than $239.50, and a restatement of prior statements about preceding months of past due payments. | On or about August 25, 2017, October 25, 2017, November 25, 2017, December 25, 2017, January 25, 2018, February 25, 2018, and March 25, 2018. |
| The "[u]npaid balance" had been "reported as a loss (charge-off") and a restatement of prior statements about preceding months of past due payments. | On or about April 25, 2018, May 25, 2018, June 25, 2018, July 25, 2018, August 25, 2018, September 25, 2018, October 25, 2018, November 25, 2018, December 25, 2018, January 25, 2019, February 25, 2019, March 25, 2019, April 25, 2019, May 25, 2019, June 25, |

| | |
|---|---|
| | 2019, July 25, 2019, August 25, 2019, September 25, 2019, October 25, 2019, November 25, 2019, December 25, 2019, January 25, 2020, February 25, 2020, March 25, 2020, April 25, 2020, May 25, 2020, June 25, 2020, July 25, 2020, and August 25, 2020. |
| The "[a]ccount paid in full, was a charge-off", restated the final balance of $499, and a restatement of prior statements about preceding months of past due payments. | In or about August 2020, via an AUD. |
| See immediately above. | On or about September 8, 2020, via an ACDV. |
| See immediately above. | In or about October 2020, via an AUD. |
| See immediately above. | On or about October 25, 2020, November 25, 2020, December 25, 2020, January 25, 2021, February 25, 2021, March 25, 2021, April 25, 2021, May 25, 2021, June 25, 2021, July 25, 2021, August 25, 2021, September 25, 2021, October 25, 2021, November 25, 2021, December 25, 2021, January 25, 2022, and February 25, 2022. |

This information was false because:

- Chase falsely stated that payments were "past due". Payments were not "past" due because, under the terms of the parties' agreement, they were never "due" as Chase had not provided Johnson with statements containing a minimum payment due and a due date.

- Chase falsely stated that the balance was greater than $239.50. The balance was never greater than $239.50 (the alleged balance at the time of account closure), because the terms of the parties' agreement did not authorize Chase to charge late fees under the circumstances.

- Chase falsely implied that the information it furnished reflected "terms of" "the account" but Chase breached the terms agreement by failing to perform its

contractual duties to provide paperless statements, online access, and payment due alerts.

- Chase falsely implied that the information reflected "[Johnson's performance and other conduct with respect to the account", i.e., that Johnson did not perform his duties under the agreement. Johnson performed his duties and went above and beyond and repeatedly notified Chase of its failure to perform.

- Chase falsely implied that the information was "substantiated by [Chase's] records". Chase's records do not substantiate Chase's performance nor Johnson's non-performance. With respect to the core allegation that statements were unavailable online, Chase's witness, Valerie Kopecki, stated that Chase "cannot prove or disprove" the allegation, and that Chase's account records did not contain evidence that statements were made available.

- Chase falsely implied that the information was not "materially misleading" as to Johnson's creditworthiness by reporting that the account was an uncollectible "loss". This was misleading as it suggests that Chase tried to collect (it did not) and Johnson negligently or willfully missed payments repeatedly (he did not).

- Chase's reporting because Chase created the materially misleading impression that Plaintiff was a poor credit risk—a "deadbeat" who shirked his financial obligations and refused to pay his bills. Chase made the reporting misleading by omitting the facts (a) that based on Chase's conduct and representations to him, Plaintiff believed that he had paid off his entire balance before closing his account, (b) that the amount purportedly owed had never become due because Chase never provided a statement to Plaintiff, and (c) that Plaintiff was unable to verify whether there was actually a balance on the account because he could not access the

relevant billing statements.

**SPECIAL INTERROGATORY NO. 12:**

Regarding YOUR contention in paragraph 12 of the COMPLAINT that "Chase, however, failed to conduct a reasonable investigation or review all relevant information.":

(a) State all facts that YOU believe support this contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 12:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party.

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 12:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide

a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following:

Upon information and belief, Chase furnished information to a credit bureau 232 separate times, concerning the Ink account, via its regular monthly reporting, or via an AUD, or via an ACDV as enumerated below. Upon information and belief, per the subscriber agreement, each statement was held out to accurately reflect the "terms of and liability for the account", "[Johnson's performance and other conduct with respect to the account", to be "substantiated by [Chase's] records", and to comply with the law, i.e., to not to be incomplete, inaccurate, unverifiable, or "materially misleading" with respect to Johnson's "creditworthiness".

| **False Contents** | **Date(s)** |
|---|---|
| The "current condition of [Johnson's account]" was "[greater than 30] days past the due date", the balance was more than $239.50, and a restatement of prior statements about preceding months of past due payments. | On or about August 25, 2017, October 25, 2017, November 25, 2017, December 25, 2017, January 25, 2018, February 25, 2018, and March 25, 2018. |
| The "[u]npaid balance" had been "reported as a loss (charge-off") and a restatement of prior statements about preceding months of past due payments. | On or about April 25, 2018, May 25, 2018, June 25, 2018, July 25, 2018, August 25, 2018, September 25, 2018, October 25, 2018, November 25, 2018, December 25, 2018, January 25, 2019, February 25, 2019, March 25, 2019, April 25, 2019, May 25, 2019, June 25, |

| | |
|---|---|
| | 2019, July 25, 2019, August 25, 2019, September 25, 2019, October 25, 2019, November 25, 2019, December 25, 2019, January 25, 2020, February 25, 2020, March 25, 2020, April 25, 2020, May 25, 2020, June 25, 2020, July 25, 2020, and August 25, 2020. |
| The "[a]ccount paid in full, was a charge-off", restated the final balance of $499, and a restatement of prior statements about preceding months of past due payments. | In or about August 2020, via an AUD. |
| See immediately above. | On or about September 8, 2020, via an ACDV. |
| See immediately above. | In or about October 2020, via an AUD. |
| See immediately above. | On or about October 25, 2020, November 25, 2020, December 25, 2020, January 25, 2021, February 25, 2021, March 25, 2021, April 25, 2021, May 25, 2021, June 25, 2021, July 25, 2021, August 25, 2021, September 25, 2021, October 25, 2021, November 25, 2021, December 25, 2021, January 25, 2022, and February 25, 2022. |

This information was false because:

- Chase falsely stated that payments were "past due". Payments were not "past" due because, under the terms of the parties' agreement, they were never "due" as Chase had not provided Johnson with statements containing a minimum payment due and a due date.

- Chase falsely stated that the balance was greater than $239.50. The balance was never greater than $239.50 (the alleged balance at the time of account closure), because the terms of the parties' agreement did not authorize Chase to charge late fees under the circumstances.

- Chase falsely implied that the information it furnished reflected "terms of" "the account" but Chase breached the terms agreement by failing to perform its

contractual duties to provide paperless statements, online access, and payment due alerts.

- Chase falsely implied that the information reflected "[Johnson's performance and other conduct with respect to the account", i.e., that Johnson did not perform his duties under the agreement. Johnson performed his duties and went above and beyond and repeatedly notified Chase of its failure to perform.

- Chase falsely implied that the information was "substantiated by [Chase's] records". Chase's records do not substantiate Chase's performance nor Johnson's non-performance. With respect to the core allegation that statements were unavailable online, Chase's witness, Valerie Kopecki, stated that Chase "cannot prove or disprove" the allegation, and that Chase's account records did not contain evidence that statements were made available.

- Chase falsely implied that the information was not "materially misleading" as to Johnson's creditworthiness by reporting that the account was an uncollectible "loss". This was misleading as it suggests that Chase tried to collect (it did not) and Johnson negligently or willfully missed payments repeatedly (he did not).

- Chase's reporting because Chase created the materially misleading impression that Plaintiff was a poor credit risk—a "deadbeat" who shirked his financial obligations and refused to pay his bills. Chase made the reporting misleading by omitting the facts (a) that based on Chase's conduct and representations to him, Plaintiff believed that he had paid off his entire balance before closing his account, (b) that the amount purportedly owed had never become due because Chase never provided a statement to Plaintiff, and (c) that Plaintiff was unable to verify whether there was actually a balance on the account because he could not access the

relevant billing statements.

- The investigation only lasted a few days.
- No Chase witnesses have any recollection of the investigation.

**SPECIAL INTERROGATORY NO. 13:**

What is the basis for YOUR information and belief that "Chase failed to review any of this relevant information, despite the fact that it was in its possession" as alleged in paragraph 12 of the COMPLAINT?

**RESPONSE TO SPECIAL INTERROGATORY NO. 13:**

Johnson objects to this interrogatory on the grounds that it contains subparts or is impermissibly compound. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party.

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 13:**

Johnson objects to this interrogatory on the grounds that it contains subparts or is impermissibly compound. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following:

Upon information and belief, Chase furnished information to a credit bureau 232 separate times, concerning the Ink account, via its regular monthly reporting, or via an AUD, or via an ACDV as enumerated below. Upon information and belief, per the subscriber agreement, each statement was held out to accurately reflect the "terms

of and liability for the account", "[Johnson's performance and other conduct with respect to the account", to be "substantiated by [Chase's] records", and to comply with the law, i.e., to not to be incomplete, inaccurate, unverifiable, or "materially misleading" with respect to Johnson's "creditworthiness".

| **False Contents** | **Date(s)** |
|---|---|
| The "current condition of [Johnson's account]" was "[greater than 30] days past the due date", the balance was more than $239.50, and a restatement of prior statements about preceding months of past due payments. | On or about August 25, 2017, October 25, 2017, November 25, 2017, December 25, 2017, January 25, 2018, February 25, 2018, and March 25, 2018. |
| The "[u]npaid balance" had been "reported as a loss (charge-off") and a restatement of prior statements about preceding months of past due payments. | On or about April 25, 2018, May 25, 2018, June 25, 2018, July 25, 2018, August 25, 2018, September 25, 2018, October 25, 2018, November 25, 2018, December 25, 2018, January 25, 2019, February 25, 2019, March 25, 2019, April 25, 2019, May 25, 2019, June 25, 2019, July 25, 2019, August 25, 2019, September 25, 2019, October 25, 2019, November 25, 2019, December 25, 2019, January 25, 2020, February 25, 2020, March 25, 2020, April 25, 2020, May 25, 2020, June 25, 2020, July 25, 2020, and August 25, 2020. |
| The "[a]ccount paid in full, was a charge-off", restated the final balance of $499, and a restatement of prior statements about preceding months of past due payments. | In or about August 2020, via an AUD. |
| See immediately above. | On or about September 8, 2020, via an ACDV. |
| See immediately above. | In or about October 2020, via an AUD. |
| See immediately above. | On or about October 25, 2020, November 25, 2020, December 25, 2020, January 25, 2021, February 25, 2021, March 25, 2021, April 25, 2021, May 25, 2021, June 25, 2021, July 25, 2021, August 25, 2021, September 25, 2021, October 25, 2021, November 25, 2021, December 25, 2021, January 25, 2022, and February 25, 2022. |

This information was false because:

- Chase falsely stated that payments were "past due". Payments were not "past" due because, under the terms of the parties' agreement, they were never "due" as Chase had not provided Johnson with statements containing a minimum payment due and a due date.

- Chase falsely stated that the balance was greater than $239.50. The balance was never greater than $239.50 (the alleged balance at the time of account closure), because the terms of the parties' agreement did not authorize Chase to charge late fees under the circumstances.

- Chase falsely implied that the information it furnished reflected "terms of" "the account" but Chase breached the terms agreement by failing to perform its contractual duties to provide paperless statements, online access, and payment due alerts.

- Chase falsely implied that the information reflected "[Johnson's performance and other conduct with respect to the account", i.e., that Johnson did not perform his duties under the agreement. Johnson performed his duties and went above and beyond and repeatedly notified Chase of its failure to perform.

- Chase falsely implied that the information was "substantiated by [Chase's] records". Chase's records do not substantiate Chase's performance nor Johnson's non-performance. With respect to the core allegation that statements were unavailable online, Chase's witness, Valerie Kopecki, stated that Chase "cannot prove or disprove" the allegation, and that Chase's account records did not contain evidence that statements were made available.

- Chase falsely implied that the information was not "materially

misleading” as to Johnson’s creditworthiness by reporting that the account was an uncollectible “loss”. This was misleading as it suggests that Chase tried to collect (it did not) and Johnson negligently or willfully missed payments repeatedly (he did not).

- Chase’s reporting because Chase created the materially misleading impression that Plaintiff was a poor credit risk—a “deadbeat” who shirked his financial obligations and refused to pay his bills. Chase made the reporting misleading by omitting the facts (a) that based on Chase’s conduct and representations to him, Plaintiff believed that he had paid off his entire balance before closing his account, (b) that the amount purportedly owed had never become due because Chase never provided a statement to Plaintiff, and (c) that Plaintiff was unable to verify whether there was actually a balance on the account because he could not access the relevant billing statements.

- The investigation only lasted a few days.

- No Chase witnesses have any recollection of the investigation.

**SPECIAL INTERROGATORY NO. 14:**

What is the basis for YOUR contention in paragraph 12 of the COMPLAINT that Chase’s investigation was merely perfunctory?

**RESPONSE TO SPECIAL INTERROGATORY NO. 14:**

Johnson objects to this request on the grounds that it is vague and ambiguous. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party.

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 14:**

Johnson objects to this request on the grounds that it is vague and ambiguous. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following:

Upon information and belief, Chase furnished information to a credit bureau 232 separate times, concerning the Ink account, via its regular monthly reporting, or via an AUD, or via an ACDV as enumerated below. Upon information and belief, per the subscriber agreement, each statement was held out to accurately reflect the "terms of and liability for the account", "[Johnson's performance and other conduct with respect to the account", to be "substantiated by [Chase's] records", and to comply with the law, i.e., to not to be incomplete, inaccurate, unverifiable, or "materially misleading" with respect to Johnson's "creditworthiness".

| **False Contents** | **Date(s)** |
|---|---|
| The "current condition of [Johnson's account]" was "[greater than 30] days past the due date", the balance was more than $239.50, and a restatement of prior statements about preceding months of past due payments. | On or about August 25, 2017, October 25, 2017, November 25, 2017, December 25, 2017, January 25, 2018, February 25, 2018, and March 25, 2018. |
| The "[u]npaid balance" had been "reported as a loss (charge-off") and a restatement of prior statements about preceding months of past due payments. | On or about April 25, 2018, May 25, 2018, June 25, 2018, July 25, 2018, August 25, 2018, September 25, 2018, October 25, 2018, November 25, 2018, December 25, 2018, January 25, 2019, February 25, 2019, March 25, 2019, April 25, 2019, May 25, 2019, June 25, 2019, July 25, 2019, August 25, 2019, September 25, 2019, October 25, 2019, November 25, 2019, December 25, 2019, January 25, 2020, February 25, 2020, March 25, 2020, April 25, 2020, May 25, 2020, June 25, 2020, July 25, 2020, and August 25, 2020. |

| | |
|---|---|
| The "[a]ccount paid in full, was a charge-off", restated the final balance of $499, and a restatement of prior statements about preceding months of past due payments. | In or about August 2020, via an AUD. |
| See immediately above. | On or about September 8, 2020, via an ACDV. |
| See immediately above. | In or about October 2020, via an AUD. |
| See immediately above. | On or about October 25, 2020, November 25, 2020, December 25, 2020, January 25, 2021, February 25, 2021, March 25, 2021, April 25, 2021, May 25, 2021, June 25, 2021, July 25, 2021, August 25, 2021, September 25, 2021, October 25, 2021, November 25, 2021, December 25, 2021, January 25, 2022, and February 25, 2022. |

This information was false because:

- Chase falsely stated that payments were "past due". Payments were not "past" due because, under the terms of the parties' agreement, they were never "due" as Chase had not provided Johnson with statements containing a minimum payment due and a due date.

- Chase falsely stated that the balance was greater than $239.50. The balance was never greater than $239.50 (the alleged balance at the time of account closure), because the terms of the parties' agreement did not authorize Chase to charge late fees under the circumstances.

- Chase falsely implied that the information it furnished reflected "terms of" "the account" but Chase breached the terms agreement by failing to perform its contractual duties to provide paperless statements, online access, and payment due alerts.

- Chase falsely implied that the information reflected "[Johnson's

performance and other conduct with respect to the account", i.e., that Johnson did not perform his duties under the agreement. Johnson performed his duties and went above and beyond and repeatedly notified Chase of its failure to perform.

- Chase falsely implied that the information was "substantiated by [Chase's] records". Chase's records do not substantiate Chase's performance nor Johnson's non-performance. With respect to the core allegation that statements were unavailable online, Chase's witness, Valerie Kopecki, stated that Chase "cannot prove or disprove" the allegation, and that Chase's account records did not contain evidence that statements were made available.

- Chase falsely implied that the information was not "materially misleading" as to Johnson's creditworthiness by reporting that the account was an uncollectible "loss". This was misleading as it suggests that Chase tried to collect (it did not) and Johnson negligently or willfully missed payments repeatedly (he did not).

- Chase's reporting because Chase created the materially misleading impression that Plaintiff was a poor credit risk—a "deadbeat" who shirked his financial obligations and refused to pay his bills. Chase made the reporting misleading by omitting the facts (a) that based on Chase's conduct and representations to him, Plaintiff believed that he had paid off his entire balance before closing his account, (b) that the amount purportedly owed had never become due because Chase never provided a statement to Plaintiff, and (c) that Plaintiff was unable to verify whether there was actually a balance on the account because he could not access the relevant billing statements.

The investigation only took a few days.

No Chase witnesses have any recollection of the investigation.

**SPECIAL INTERROGATORY NO. 15:**

What is the basis for YOUR contention in paragraph 14 of the COMPLAINT that "... this information was not accurate or verified..."?

**RESPONSE TO SPECIAL INTERROGATORY NO. 15:**

Johnson objects to this request on the grounds that it is vague and ambiguous. Johnson additionally objects to this request on the grounds that it is overly broad and burdensome. In addition, Johnson objects to this interrogatory on the grounds that it contains subparts or is impermissibly compound. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party.

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 15:**

Johnson objects to this request on the grounds that it is vague and ambiguous. Johnson additionally objects to this request on the grounds that it is overly broad and burdensome. In addition, Johnson objects to this interrogatory on the grounds that it contains subparts or is impermissibly compound. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following:

Upon information and belief, Chase furnished information to a credit bureau 232 separate times, concerning the Ink account, via its regular monthly reporting, or via an AUD, or via an ACDV as enumerated below. Upon information and belief, per the subscriber agreement, each statement was held out to accurately reflect the "terms of and liability for the account", "[Johnson's performance and other conduct with

respect to the account", to be "substantiated by [Chase's] records", and to comply with the law, i.e., to not to be incomplete, inaccurate, unverifiable, or "materially misleading" with respect to Johnson's "creditworthiness".

| **False Contents** | **Date(s)** |
|---|---|
| The "current condition of [Johnson's account]" was "[greater than 30] days past the due date", the balance was more than $239.50, and a restatement of prior statements about preceding months of past due payments. | On or about August 25, 2017, October 25, 2017, November 25, 2017, December 25, 2017, January 25, 2018, February 25, 2018, and March 25, 2018. |
| The "[u]npaid balance" had been "reported as a loss (charge-off") and a restatement of prior statements about preceding months of past due payments. | On or about April 25, 2018, May 25, 2018, June 25, 2018, July 25, 2018, August 25, 2018, September 25, 2018, October 25, 2018, November 25, 2018, December 25, 2018, January 25, 2019, February 25, 2019, March 25, 2019, April 25, 2019, May 25, 2019, June 25, 2019, July 25, 2019, August 25, 2019, September 25, 2019, October 25, 2019, November 25, 2019, December 25, 2019, January 25, 2020, February 25, 2020, March 25, 2020, April 25, 2020, May 25, 2020, June 25, 2020, July 25, 2020, and August 25, 2020. |
| The "[a]ccount paid in full, was a charge-off", restated the final balance of $499, and a restatement of prior statements about preceding months of past due payments. | In or about August 2020, via an AUD. |
| See immediately above. | On or about September 8, 2020, via an ACDV. |
| See immediately above. | In or about October 2020, via an AUD. |
| See immediately above. | On or about October 25, 2020, November 25, 2020, December 25, 2020, January 25, 2021, February 25, 2021, March 25, 2021, April 25, 2021, May 25, 2021, June 25, 2021, July 25, 2021, August 25, 2021, September 25, 2021, October 25, 2021, November 25, 2021, December 25, 2021, January 25, 2022, and February 25, 2022. |

This information was false because:

- Chase falsely stated that payments were “past due”. Payments were not “past” due because, under the terms of the parties’ agreement, they were never “due” as Chase had not provided Johnson with statements containing a minimum payment due and a due date.

- Chase falsely stated that the balance was greater than $239.50. The balance was never greater than $239.50 (the alleged balance at the time of account closure), because the terms of the parties’ agreement did not authorize Chase to charge late fees under the circumstances.

- Chase falsely implied that the information it furnished reflected “terms of” “the account” but Chase breached the terms agreement by failing to perform its contractual duties to provide paperless statements, online access, and payment due alerts.

- Chase falsely implied that the information reflected “[Johnson’s performance and other conduct with respect to the account”, i.e., that Johnson did not perform his duties under the agreement. Johnson performed his duties and went above and beyond and repeatedly notified Chase of its failure to perform.

- Chase falsely implied that the information was “substantiated by [Chase’s] records”. Chase’s records do not substantiate Chase’s performance nor Johnson’s non-performance. With respect to the core allegation that statements were unavailable online, Chase’s witness, Valerie Kopecki, stated that Chase “cannot prove or disprove” the allegation, and that Chase’s account records did not contain evidence that statements were made available.

- Chase falsely implied that the information was not “materially

misleading" as to Johnson's creditworthiness by reporting that the account was an uncollectible "loss". This was misleading as it suggests that Chase tried to collect (it did not) and Johnson negligently or willfully missed payments repeatedly (he did not).

- Chase's reporting because Chase created the materially misleading impression that Plaintiff was a poor credit risk—a "deadbeat" who shirked his financial obligations and refused to pay his bills. Chase made the reporting misleading by omitting the facts (a) that based on Chase's conduct and representations to him, Plaintiff believed that he had paid off his entire balance before closing his account, (b) that the amount purportedly owed had never become due because Chase never provided a statement to Plaintiff, and (c) that Plaintiff was unable to verify whether there was actually a balance on the account because he could not access the relevant billing statements.

**<u>SPECIAL INTERROGATORY NO. 16:</u>**

Regarding YOUR contention in paragraph 14 of the COMPLAINT that "Plaintiff only learned about Chase's failure to correct the misleading entries on or around mid-October 2020":

(a) State all facts that YOU believe support this contention.

**<u>RESPONSE TO SPECIAL INTERROGATORY NO. 16:</u>**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that

it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party.

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 16:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following:

After Johnson lodged his dispute with Equifax, Chase attempted to contact Johnson, but had difficulty contacting him due to issues with its phone system ("we just switched phone systems […] they are not working […] I wasn't getting the notification for a voicemail like normal" on August 27, 2020 voicemail, erroneous "no longer in service message on September 3, 2020, erroneous "no longer in service message on September 15, 2020).

On or about October 14, 2020, Johnson received a letter informing him that Chase “reviewed your account and found that updates were needed for the reporting to the credit reporting agencies”, asking him to “[a]llow sufficient time for the updates, then request a new copy of your credit report”, and “[i]f you have questions about this issue, please call Carla at 1-877-805-8049”.

Johnson made contact with Chase on October 14, 2020 and was told Carla was out of office. On October 19, 2020, Johnson made contact with Chase again, and was told the Carla was out of office.

On October 20, 2020, Carla called Johnson, and the investigation was discussed.

**SPECIAL INTERROGATORY NO. 17:**

Did YOU investigate any reporting of YOUR credit regarding YOUR Chase Ink credit card prior to filing a Demand for Arbitration on or about September 30, 2020?

**RESPONSE TO SPECIAL INTERROGATORY NO. 17:**

Johnson objects to this request on the grounds that it is vague and ambiguous. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party.

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 17:**

Johnson objects to this request on the grounds that it is vague and ambiguous. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party. Subject to Johnson's reasonable interpretation of the

request and without waiving said objections, Johnson responds, Johnson, and the following: Yes.

**SPECIAL INTERROGATORY NO. 18:**

If YOUR response to Interrogatory 17 is affirmative, state in detail all facts regarding YOUR investigation of any reporting of YOUR credit regarding YOUR Chase Ink credit card prior to filing a Demand for Arbitration on or about September 30, 2020.

**RESPONSE TO SPECIAL INTERROGATORY NO. 18:**

Johnson objects to this request on the grounds that it is vague and ambiguous. Moreover, Johnson objects to this interrogatory on the grounds that it contains subparts or is impermissibly compound. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party .

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 18:**

Johnson objects to this request on the grounds that it is vague and ambiguous. Moreover, Johnson objects to this interrogatory on the grounds that it contains subparts or is impermissibly compound. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party . Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following:

Limiting the relevant time period from January 1, 2020 to September 30, 2020, Johnson's investigation was limited to reviewing his previously obtained credit report.

**SPECIAL INTERROGATORY NO. 19:**

Regarding YOUR contention in paragraph 16 of the COMPLAINT that "... Plaintiff was damaged by Chase's actions in numerous ways":

(a) State all facts that YOU believe support this contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 19:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party.

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 19:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that

it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following:

In late 2020, Johnson was prepared to purchase a home in Pine Mountain Club, CA, and sought a mortgage. Johnson was "pre-approved", but at a worse rate, because of the credit damage caused by Chase. Johnson did not move forward with purchasing the home because he was afraid that if he did not fix his credit then, he would be locked into a 30-year mortgage rate at an unfairly low rate. By the time his credit was repaired in early 2022, mortgage rates had skyrocketed from below 3% to above 7%, and Johnson's liquid funds had been depleted from the lost earnings and out-of-pocket expenses accrued fighting Chase to repair his credit, and he no longer had the funds to afford a home. Furthermore, Johnson was reticent to even apply for a mortgage due to the impact of hard inquiries.

Johnson lost access to credit on the best terms he would have otherwise qualified for, was deterred from buying a home in Pine Mountain Club, CA, refinancing his condo in Raleigh, NC, suffered emotional distress, suffered raised home insurance rates, raised car insurance rates, hedonic damages, lost time and earnings attempting to have his credit repaired, accrued out-of-pocket expenses while attempting to have his credit, and credit-related damages for which discovery continues (reputation, capacity, etc.).

**SPECIAL INTERROGATORY NO. 20:**

Regarding YOUR contention in paragraph 16 of the COMPLAINT that "...

Chase's misreporting caused his credit score to drop approximately 200 points":

(a) State all facts that YOU believe support this contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 20:**

Johnson objects to this request on the grounds that it is overly broad and burdensome. In addition, Johnson objects to this interrogatory on the grounds that it contains subparts or is impermissibly compound. Johnson additionally objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party .

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 20:**

Johnson objects to this request on the grounds that it is overly broad and burdensome. In addition, Johnson objects to this interrogatory on the grounds that it contains subparts or is impermissibly compound. Johnson additionally objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party . Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following: Pursuant to FRCP 33(d), Johnson refers to the following documents: JOHNSON236-590, 1639-1647, 7940-8194.

**SPECIAL INTERROGATORY NO. 21:**

Regarding YOUR contention in paragraph 16 of the COMPLAINT that "Plaintiff's credit score and report were passed to at least forty (40) third parties, including a landlord who inquired about it and a mortgage lender":

(a) State all facts that YOU believe support this contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 21:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party.

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 21:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another

party. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following: Pursuant to FRCP 33(d), Johnson refers to the following documents: JOHNSON236-590, 1639-1647, 7940-8194.

**SPECIAL INTERROGATORY NO. 22:**

Regarding YOUR contention in paragraph 16 of the COMPLAINT that "... because of the Chase credit report, Plaintiff's home and automobile insurance rates increased":

(a) State all facts that YOU believe support this contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 22:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party.

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 22:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is

overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following: Pursuant to FRCP 33(d), Johnson refers to the following documents: JOHNSON236-590, 1639-1647, 7940-8194.

**SPECIAL INTERROGATORY NO. 23:**

Regarding YOUR contention in paragraph 16 of the COMPLAINT that "... because of the Chase credit report, Plaintiff was deterred from purchasing properties because he was unable to secure a favorable mortgage rate":

(a) State all facts that YOU believe support this contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 23:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for

information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party.

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 23:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following:

In late 2020, Johnson was prepared to purchase a home in Pine Mountain Club, CA, and sought a mortgage. Johnson was "pre-approved", but at a worse rate, because of the credit damage caused by Chase. Johnson did not move forward with purchasing the home because he was afraid that if he did not fix his credit then, he would be locked into a 30-year mortgage rate at an unfairly low rate. By the time his

credit was repaired in early 2022, mortgage rates had skyrocketed from below 3% to above 7%, and Johnson's liquid funds had been depleted from the lost earnings and out-of-pocket expenses accrued fighting Chase to repair his credit, and he no longer had the funds to afford a home. Furthermore, Johnson was reticent to even apply for a mortgage due to the impact of hard inquiries.

**SPECIAL INTERROGATORY NO. 24:**

Regarding YOUR contention in paragraph 16 of the COMPLAINT that "Plaintiff had investigated and intended to purchase properties in the second half of 2020, but did not do so when he learned that he was only approved for higher mortgage rates reserved for credit risks":

(a) State all facts that YOU believe support this contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 24:**

Johnson objects to this request on the grounds that it is overly broad and burdensome. Moreover, Johnson objects to this interrogatory on the grounds that it contains subparts or is impermissibly compound. Johnson additionally objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party .

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 24:**

Johnson objects to this request on the grounds that it is overly broad and burdensome. Moreover, Johnson objects to this interrogatory on the grounds that it contains subparts or is impermissibly compound. Johnson additionally objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson objects to this request because it exceeds FRCP

33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party . Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following:

In late 2020, Johnson was prepared to purchase a home in Pine Mountain Club, CA, and sought a mortgage. Johnson was "pre-approved", but at a worse rate, because of the credit damage caused by Chase. Johnson did not move forward with purchasing the home because he was afraid that if he did not fix his credit then, he would be locked into a 30-year mortgage rate at an unfairly low rate. By the time his credit was repaired in early 2022, mortgage rates had skyrocketed from below 3% to above 7%, and Johnson's liquid funds had been depleted from the lost earnings and out-of-pocket expenses accrued fighting Chase to repair his credit, and he no longer had the funds to afford a home. Furthermore, Johnson was reticent to even apply for a mortgage due to the impact of hard inquiries.

**SPECIAL INTERROGATORY NO. 25:**

Regarding YOUR contention in paragraph 16 of the COMPLAINT that "Plaintiff suffered from severe emotional distress due to the damage to creditworthiness, reputation, and his sense of well-being":

(a) State all facts that YOU believe support this contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 25:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for

information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party.

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 25:**

(a) Pursuant to FRCP 33(a)(1), this subpart counts as a separate interrogatory and Johnson objects as such. Johnson objects to this request on the grounds that it is overly broad and burdensome, in that the request requires Johnson to (a) inventory all evidence he intends to present at trial, (b) review all facts in the case and provide a commentary to support his evaluation of Chase's anticipated evidence, and (c) identify all facts based not only upon knowledge, but also upon simply information and belief. Johnson further objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson further objects that it calls for information protected by the Attorney Work Product doctrine. Johnson further objects as the request is vague and ambiguous. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party. Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following:

Johnson valued his reputation, access to credit, and had worked over a decade to build his credit. He had knowledge of the damage caused by Chase. He knew his credit reports and scores had been provided to third parties. He knew that the damage would persist for nearly a decade. He knew that mortage rates were at historic lows. He did not know when or how much his credit would improve over

time. He believed that repair was uncertain and expensive in terms of time and money. He did not know the extent to which the credit damage would interfere with his ability to secure housing for himself and a future family, to obtain employment, or to obtain loans.

His attempts to repair his credit from 2020 through 2022 resulted in low liquid funds, extremely limited time, lost earnings, and damaged his personal relationships, including with his girlfriend.

Johnson no longer uses credit cards.

All of this caused or exacerbated diagnosed insomnia, hair loss, a circadian rhythm disorder, and an acute depression episode in 2021.

**SPECIAL INTERROGATORY NO. 26:**

Regarding YOUR contention in paragraph 18 of the COMPLAINT that "... Plaintiff repeatedly communicated to Chase's representatives and technical support professionals, he was unable to access his account online or view billing statements...":

(a) State all facts that YOU believe support this contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 26:**

Johnson objects to this request on the grounds that it is overly broad and burdensome. In addition, Johnson objects to this interrogatory on the grounds that it contains subparts or is impermissibly compound. Johnson additionally objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party .

**AMENDED RESPONSE TO SPECIAL INTERROGATORY NO. 26:**

Johnson objects to this request on the grounds that it is overly broad and burdensome. In addition, Johnson objects to this interrogatory on the grounds that it contains subparts or is impermissibly compound. Johnson additionally objects to this request on the grounds that it calls for information equally available to the propounding party. Johnson objects to this request because it exceeds FRCP 33(a)(1)'s limitation that a party may not serve more than 25 written interrogatories, including all discrete subparts, on another party . Subject to Johnson's reasonable interpretation of the request and without waiving said objections, Johnson responds, Johnson, and the following:

Chase's account records indicate that Johnson called Chase via telephone concerning the Ink account on January 29, 2017, February 17, 2017, March 21, 2017, April 4, 2017, June 13, 2017, and September 15, 2017.

Chase's account records, and call audio from June 12, 2018, indicate that on September 6, 2017, Chase called Johnson, the agent noted Johnson's complaint that he was unable to access statements for his Ink account, and the agent suggested that Johnson check his email spam folder. Johnson closed his account a week later.

DATED: October 4, 2023

RUSSELL LAW, P.C.

/s/ L. David Russell
L. David Russell
Attorneys for Plaintiff
JOSHUA JOHNSON

# VERIFICATION

I, Joshua Johnson, am a party to this action or otherwise authorized to make this declaration. I have read the foregoing PLAINTIFF JOSHUA JOHNSON'S AMENDED RESPONSES TO DEFENDANT JPMORGAN CHASE BANK, N.A'S INTERROGATORIES, SET ONE and know its contents. The facts stated therein are true of my own knowledge except as to those matters which are stated on information and belief, as to those matters, I am informed and believe that they are true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on 10/4/2023 at San Diego, CA.

DocuSigned by:
7EFC8C80A9CC450...

# PROOF OF SERVICE

*Joshua Johnson vs. JPMorgan Chase Bank, N.A.*
*USDC, Central District, Case No. 2:22-cv-06718-AB-MAA*

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is 50 California Street, Suite 2750, San Francisco, California 94111.

On the date set forth below, I served the foregoing document(s) described as:

**DECLARATION OF ALISA A. GIVENTAL IN SUPPORT OF DFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION IN LIMINE NO. 11 –TO EXCLUDE ARGUMENT OR EVIDENCE RELATING TO TIME-BARRED CLAIMS**

on the interested parties in this action as follows:

Joshua Johnson
2201 5th St. Apt 208
Santa Monica, CA 90405

Tel: (336) 423-2594
Email: josh@jj88.org

**PLAINTIFF PRO SE**

☒**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address alisa.givental@wbd-us.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 20, 2026, at San Francisco, California.

Alisa Givental