**Joshua Johnson**
1373 Caminito Halago
La Jolla, CA 92037
(336) 423-2594
josh@jj88.org
IN PRO PER

FILED
CLERK, U.S. DISTRICT COURT
3/21/2026
CENTRAL DISTRICT OF CALIFORNIA
BY _____jji_____ DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JOSHUA JOHNSON,<br><br>　Plaintiff,<br><br>　v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>　Defendant. | Case No.: 2:22-cv-06718-AB-MAAx<br><br>**PLAINTIFF JOSHUA JOHNSON'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 3 TO EXCLUDE EXECUTIVE OFFICE INVESTIGATION EVIDENCE**<br><br>Judge:　　Hon. André Birotte Jr.<br>Place:　　Courtroom 7B<br>Date:　　April 17, 2026<br>Time:　　10:00 AM |

1

**PLEASE TAKE NOTICE** that on April 17, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable André Birotte Jr., in Courtroom 7B of the United States District Court, Central District of California, First Street Courthouse, and United States Courthouse, 350 West 1st Street, Los Angeles, CA, 90012, Plaintiff Joshua Johnson will and hereby does move this court in limine pursuant to Federal Rules of Evidence 401, 402, 403, 801(c), 803(6), and 805 to exclude the October 14, 2020 Executive Office letter and evidence related to the Executive Office Investigation. This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and records on file herein, and any oral argument that may be presented at the hearing on this Motion. This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place via videoconference on March 6 and March 13, 2026. A proposed order is also submitted herewith.

**DATED:** March 21, 2026                          /s/ Joshua Johnson
                                                                          Joshua Johnson

PLAINTIFF JOSHUA JOHNSON'S NOTICE OF MOTION AND MOTION IN LIMINE TO EXCLUDE
EVIDENCE RELATED TO EXECUTIVE OFFICE INVESTIGATION

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Johnson seeks an order excluding the October 14, 2020 letter from Chase's Executive Office ("EO"), and the hearsay assertions contained therein, to the extent Chase offers them to prove that the various acts or events described in that 2020 letter actually occurred in 2017 and 2018. Separately, Chase should not be permitted to rely on the EO Letter, or any other documents that are products of, or relate exclusively to, the Executive Office Investigation, as proof of what Chase's employee(s) involved in the FCRA Investigation did, reviewed, or found.

## I. LEGAL STANDARD

Only relevant evidence is admissible; irrelevant evidence is not. *See* Fed. R. Evid. 402. "Evidence is relevant if: (a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. But even relevant evidence can be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Hearsay is a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).

The rule against hearsay does not apply to a record of an act or event if: "(A) the record was made at or near the time by — or from information transmitted by — someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of

information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6).

## II. BACKGROUND

### A. Chase conducted two separate, siloed investigations in 2020.

On August 19, 2020, Johnson filed a complaint against Chase with the Consumer Financial Protection Bureau ("CFPB") concerning his Chase Ink credit card account. On August 24, 2020, Johnson filed a dispute with Equifax concerning the same account, and Equifax notified Chase. On August 25, 2020, Johnson sent a "Notice of Dispute and Intent to Arbitrate" to Chase via certified mail.

Chase conducted two separate, siloed investigations into the CFPB complaint and the Equifax dispute. The investigation into Johnson's Equifax dispute was carried out by Chase's CBO Disputes team ("FCRA Investigation"), while the investigation into Johnson's CFPB complaint was carried out by Chase's Executive Office ("EO Investigation"). Dkt. 73 (RSGD No. 100). The FCRA Investigation concluded on September 8, 2020. The EO Investigation concluded on or about October 14, 2020, when Chase sent a letter to Johnson and the CFPB. Johnson Decl., Ex. A (EO Letter).

Because Chase did not respond to Johnson's Notice of Dispute, a formal Demand for Arbitration was then served, which Chase received through CT Corporation on October 13, 2020. *See* Johnson Decl., Ex. I; see also Johnson Decl., Ex. J (Notice of Dispute and Intent to Arbitrate).

### B. Chase's corporate representative testified that the EO Investigation had nothing to do with the FCRA Investigation.

At her deposition, Chase's corporate representative, Barbara Burda, was asked whether the two investigations were related in any way, and whether the EO Letter represented "the final product" of the "FCRA investigation that Chase conducted in August and September 2020". Burda testified that the investigations

PLAINTIFF JOSHUA JOHNSON'S NOTICE OF MOTION AND MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATED TO EXECUTIVE OFFICE INVESTIGATION

were distinct and that the EO Letter had "nothing to do" with the FCRA investigation. Dkt. 73 (RSGD No. 101).

> Q.    The FCRA investigation that Chase conducted in August and September of 2020, was this the final product of that investigation?
>
> A.    This was the results of the investigation from the August review the executive office asked for the credit bureau team to review.
>
> Q.    So this has nothing to do with the FCRA investigation; correct?
>
> A.    You mean the ACDV?
>
> Q.    Exactly.
>
> A.    No, it does not.

Johnson Decl., Ex. K (Burda Dep. 97:21–98:13).

**C. The EO Letter lacks foundation because its purported author could not authenticate it.**

The EO Letter bears the name of Carla Wills, who left Johnson several voicemails in 2020, and with whom Johnson had a conversation via telephone on October 20, 2020, concerning the EO Investigation and EO Letter. Dkt. 73 (RSGD No. 103); Dkt. 73 (RSGD No. 114).

Wills admitted at her deposition that she did not know whether she had seen the EO Letter before, that she did not know whether she was involved in preparing the EO Letter, and that she did not know whether she provided any of the information that is included in the EO Letter. Dkt. 73 (RSGD Nos. 104–106); Johnson Decl., Ex. H (Wills Dep. 23:1-10, 24:6-15).

**D. The EO Letter contains assertions regarding events in 2017 and 2018.**

The EO Letter, drafted in 2020, contains a number of assertions regarding acts and events that allegedly took place in 2017 or 2018, e.g.:

- "[Chase] made 11 calls to [Johnson] between September 6, 2017 and May 23, 2018"
- "[Chase] made contact with [Johnson] 3 times"

5

- "[Chase] sent [Johnson] the enclosed letters dated June 1, 2017, August 2, 2017, September 5, 2017, April 2, 2018 and June 6, 2018"
- "[S]tatement notifications were successfully sent to [Johnson's] email"
- "[S]tatement notifications ... were not returned as being undeliverable"

## III. ARGUMENT

### A. The EO Letter is not an admissible business record.

The EO Letter was not created in the ordinary course of Chase's banking business or as part of any regularly conducted account servicing activity. Rather, it was a special, post-dispute letter generated by Chase's Executive Office in response to Johnson's complaint filed with the regulatory body charged with policing Chase, and after Chase had already received Johnson's arbitration demand through CT Corporation on October 13, 2020. Documents prepared in response to a specific dispute, rather than as part of routine business operations, do not carry the indicia of reliability that justify Rule 803(6). *See Palmer v. Hoffman*, 318 U.S. 109, 113–15 (1943); *Clark v. City of Los Angeles*, 650 F.2d 1033, 1036–37 (9th Cir. 1981); *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1258–60 (9th Cir. 1984).

Furthermore, Chase's own witnesses could not establish a reliable foundation for the document. Burda testified the EO Investigation had "nothing to do" with the FCRA investigation, and Wills could not say whether she had seen the EO Letter before, whether she was involved in preparing it, or whether she supplied any of the information in it.

For those reasons, Chase cannot satisfy Rule 803(6)'s requirements that the record be kept in the course of a regularly conducted activity, that making such a record be a regular practice of that activity, and that the source of information and method or circumstances of preparation not indicate a lack of trustworthiness. Fed. R. Evid. 803(6)(B), (C), (E).

**B. The EO Letter contains inadmissible hearsay.**

In order for a record of an act or event to be excluded from the rule against hearsay, the record must be "made at or near the time by — or from information transmitted by — someone with knowledge". Fed. R. Evid. 803(6)(A).

Here, the EO Letter was drafted in 2020, yet contains factual assertions that —in 2017 and 2018—Chase made calls, made contact with Johnson, sent letters, enrolled the account in paperless statements, successfully sent statement notifications to Johnson's email, and did not receive those notifications back as undeliverable. The letter was not made at or near the time of those events. Moreover, because the EO Letter is, at most, a later-created narrative summary of earlier information, each layer of hearsay must independently satisfy an exception. Fed. R. Evid. 805. All of this is underscored by the statements in the letter that "the calls we found noted to your account we are unable to review due to the length of time that has passed".

Chase should not be permitted to use a post-dispute EO letter to prove that the underlying events actually occurred. If Chase wants to prove those facts, it must do so through admissible underlying records or witness testimony, not through the EO Letter.

**C. The EO Investigation is irrelevant to Chase's FCRA defense.**

Chase's corporate representative admitted that the EO Investigation had "nothing to do" with the FCRA Investigation. Chase therefore should not be permitted to conflate the two. To be sure, information conveyed to Chase during the EO Investigation may be relevant insofar as it put Chase on notice of matters bearing on Johnson's dispute. But Chase chose to conduct separate, siloed investigations. Having done so, Chase cannot use the October 14, 2020 EO Letter, or acts taken by EO personnel in the course of that separate investigation, as proof of what Chase's FCRA investigators actually did, reviewed, or considered.

PLAINTIFF JOSHUA JOHNSON'S NOTICE OF MOTION AND MOTION IN LIMINE TO EXCLUDE
EVIDENCE RELATED TO EXECUTIVE OFFICE INVESTIGATION

**D. Chase has repeatedly conflated the EO Investigation with the FCRA Investigation to bolster its deficient FCRA Investigation.**

In Chase's Motion for Summary Judgment, Chase stated that, in conducting its investigation of Johnson's Equifax dispute, it "determined that payments to the account were made using a checking account in Plaintiff's name." Dkt. 68 at 10. That is, arguably, supported by the record.

But then Chase went further, stating: "In conducting its investigation of the dispute as detailed in the ACDV … Chase verified that it had made 11 calls to Plaintiff between September 6, 2017, and May 23, 2018 … Chase also verified that it had sent several letters to Plaintiff at his address/email address of record stating that a payment was missed or notification of a possible change in status of the account. Id. In addition, Chase confirmed that Plaintiff had enrolled in paperless statements, and that statement notifications were successfully sent monthly. Id. Based on the ACDV transmitted by Equifax, Chase determined that the information disputed by Plaintiff was accurate, the account had not been fraudulently taken over and Plaintiff received notifications and correspondence for his payment obligations." *Id.*

Those assertions are lifted straight from the October 14, 2020 EO Letter. *See* Dkt. 68-2 (SUF No. 20) (citing the EO Letter). As Burda testified, on behalf of Chase, that document has "nothing to do" with the FCRA Investigation.

Thus, Chase has already attempted to use the EO Letter, and facts purportedly developed in the separate EO Investigation, to imply that those were steps taken by the personnel who conducted the separate FCRA Investigation. Allowing Chase to continue to blur that distinction at trial would confuse the issues, mislead the jury, and waste time litigating a collateral investigation that Chase has already admitted was separate. Fed. R. Evid. 401, 402, 403.

## IV. CONCLUSION

Plaintiff Johnson respectfully requests that the Court enter an order prohibiting Chase from using the Executive Office letter or any other documents that are products of, or relate exclusively to, the Executive Office Investigation, to prove that the various acts or events described therein actually occurred in 2017 and 2018, and further prohibiting Chase from relying on such documents, or acts taken by EO personnel, as proof of what Chase's separate investigation under 15 U.S.C. § 1681s-2(b) actually entailed.

Specifically, the following items on the Joint Exhibit List are products of, or relate exclusively to, the Executive Office Investigation: Ex. 319 (EO Letter, October 14, 2020) (Johnson Decl., Ex. A); Ex. 318 (EO Draft Letter [CHASE00113–00114]) (Johnson Decl., Ex. G); Ex. 122 (Complaint Information Screen [CHASE00118–00119]) (Johnson Decl., Ex. B); Ex. 123 (EO Care Notes [CHASE00155–00156]) (Johnson Decl., Ex. C); Ex. 124 (EO Care Notes [JOHNSON01319–01320]) (Johnson Decl., Ex. D); Ex. 315 (Wills Email, August 25, 2020 [CHASE00115–00117]) (Johnson Decl., Ex. E); Ex. 316 (Wills Email, August 27, 2020 [CHASE00120–00121]) (Johnson Decl., Ex. F); and Ex. 314 (CFPB Complaint Detail [CHASE00103–00107]).

9

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, Plaintiff Joshua Johnson, certifies that this brief contains 2,178 words, which complies with the word limit of L.R. 11-6.1.

**DATED:** March 21, 2026                                    /s/ Joshua Johnson

                                                                          Joshua Johnson

PLAINTIFF JOSHUA JOHNSON'S NOTICE OF MOTION AND MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATED TO EXECUTIVE OFFICE INVESTIGATION