**Joshua Johnson**
1373 Caminito Halago
La Jolla, CA 92037
(336) 423-2594
josh@jj88.org
IN PRO PER



FILED
CLERK, U.S. DISTRICT COURT
3/22/2026
CENTRAL DISTRICT OF CALIFORNIA
BY_____jji_____DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JOSHUA JOHNSON,<br><br>    Plaintiff,<br><br>  v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>    Defendant. | Case No.: 2:22-cv-06718-AB-MAAx<br><br>**PLAINTIFF JOSHUA JOHNSON'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Judge:     Hon. André Birotte Jr.<br>Place:     Courtroom 7B |

PLAINTIFF JOSHUA JOHNSON'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

## MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Plaintiff Joshua Johnson ("Johnson") respectfully submits this Memorandum of Contentions of Fact and Law pursuant to this Court's Scheduling Order, Dkt. No. 83, and C.D. Cal. L.R. 16-4.

### I. CLAIMS

Johnson has pleaded and plans to pursue two claims against Defendant JPMorgan Chase Bank, N.A. ("Chase"). The first claim is that Chase violated section 1681s-2(b) of the Fair Credit Reporting Act ("FCRA"). The second claim is that Chase violated the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.25(a).

### II. ELEMENTS

### A. FCRA § 1681s-2(b)

To establish a violation of section 1681s-2(b) of the FCRA, Johnson bears the burden of proving, by a preponderance of the evidence, each of the following:

1. Chase is a furnisher of credit information;
2. Johnson notified a consumer reporting agency that he disputed the information that Chase furnished about him as inaccurate;
3. A consumer credit reporting agency notified Chase of the alleged inaccurate information that Johnson disputed;
4. The reporting by Chase was in fact inaccurate; and
5. Chase negligently or willfully failed to conduct a reasonable investigation into the dispute.

*See* Jury Instructions at 27, *Panchenko v. Comenity Cap. Bank*, No. 5:23-cv-04965-EKL (N.D. Cal. Nov. 6, 2025), Dkt. No. 226. Liability may arise where the disputed reporting cannot be verified. 15 U.S.C. § 1681s-2(b)(1)(E).

*Furnisher.* A furnisher is an entity that transmits information concerning a particular credit obligation owed by a particular consumer to consumer reporting agencies. *Id.* at 28.

*Inaccurate.* An item on a credit report can be inaccurate because it is patently incorrect, or because it is misleading in such a way that it can be expected to adversely affect credit decisions. *Id.* at 29.

*Reasonable investigation.* Chase's duty under section 1681s-2(b) of the FCRA to conduct a reasonable investigation of information disputed by Johnson is not triggered until a consumer reporting agency provides Chase with notice of Johnson's dispute. *Id.* at 30. A reasonable investigation requires an inquiry likely to turn up information about the underlying facts and positions of the parties. A cursory or sloppy review of the dispute, or merely rubber-stamping information that the furnisher previously submitted to a consumer reporting agency, is not a reasonable investigation. In determining whether Chase conducted a reasonable investigation, what Chase learned about the dispute from the consumer reporting agency may be considered. The reasonableness of an investigation turns on the process that the furnisher employed in light of the circumstances of the dispute. An investigation is not necessarily unreasonable solely because it results in a conclusion that turns out to be inaccurate. *Id.* at 31.

*Negligence and willfulness.* To prove a negligent violation of section 1681s-2(b) of the FCRA, Johnson must prove that Chase failed to use reasonable care in investigating the dispute from a consumer reporting agency. Reasonable care is the degree of care that a reasonably prudent person would use under similar circumstances. *Id.* at 33. To prove a willful violation of section 1681s-2(b) of the FCRA, Johnson must prove that Chase acted in knowing or reckless disregard of its obligations under the law. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, Chase ran a risk of violating the law substantially greater than the risk necessary to make the conduct negligent. *Id.* at 34.

## B. CCRAA § 1785.25(a)

To establish a violation of section 1785.25(a) of the CCRAA, Johnson must prove that Chase engaged in credit reporting which Chase knew, or should have

known, was inaccurate or incomplete. *See* Jury Instructions at 27, *Kim v. BMW Fin. Servs. N.A., LLC*, No. 2:14-cv-01752-BRO-JC (C.D. Cal. Aug. 28, 2015), Dkt. No. 145-1.

In order for an item on a credit report to be incomplete or inaccurate under the CCRAA, it must be patently incorrect or misleading in such a way that it can be expected to adversely affect credit decisions. *Id.* at 28.

A person who furnishes inaccurate or incomplete information to a consumer credit reporting agency is liable for failure to comply with the CCRAA, unless the furnisher establishes by a preponderance of the evidence that, at the time of the failure to comply, the furnisher maintained reasonable procedures to comply. *Id.* at 28.

## III. KEY EVIDENCE IN SUPPORT OF CLAIMS

Johnson will introduce the following categories of key evidence in support of his claim that Chase violated section 1681s-2(b) of the FCRA and his claim that Chase violated section 1785.25(a) of the CCRAA:

1. admission that Chase is a furnisher of information;
2. admission that Johnson notified Equifax that he disputed the information that Chase furnished about him as inaccurate;
3. admission that Equifax notified Chase of the alleged inaccurate information that Johnson disputed;
4. evidence that Chase failed to provide online account access, to make statements available, to send notices that an alleged payment was due, and to provide technical support;
5. evidence that, in 2017, Chase received repeated notice from Johnson regarding the issues in (4);
6. evidence that Chase failed to comply with Johnson's payment instructions;
7. evidence that Chase charged unauthorized late fees and interest;

8. evidence that Chase reported, on numerous occasions between 2017 and 2022, to four credit reporting agencies, that Johnson's account had a balance inflated by approximately 100%, was delinquent in multiple months, and as a charge-off;

9. evidence that Chase failed to report to the credit reporting agencies that Johnson had a bona fide dispute regarding the account;

10. evidence that Chase received repeated notice from Johnson regarding the issues in (4) and the reporting in (8), in 2018, 2020, 2021, and 2022;

11. evidence that Chase recorded Johnson's notice in its internal systems;

12. evidence that Chase never investigated whether it had provided online account access, made statements available, why a past due balance had accrued, or failed to comply with Johnson's payment instructions;

13. evidence that Chase repeatedly refused to correct its inaccurate credit reporting in 2018, 2020, and 2021;

14. evidence that Chase destroyed relevant evidence after being on notice of the dispute;

15. evidence that Chase's policies and procedures are recklessly violative of the law;

16. evidence that Chase's credit reporting resulted in Johnson's credit scores dropping approximately 200 points causing non-economic damages and economic damages, including increased home and car insurance rates, lost opportunity to finance a purchase of a home at the best rate, lost opportunity to refinance his home at the best rate, deterrence from the credit markets, out-of-pocket expenses, and lost wages from the multiple years spent dealing with his credit problems prior to litigation; and

17. evidence that Chase knew that its credit reporting was misleading in such a way that it can be expected to adversely affect credit decisions.

## IV. KEY EVIDENCE IN OPPOSITION TO AFFIRMATIVE DEFENSES

Johnson will introduce the following categories of key evidence in opposition to Chase's affirmative defenses:

1. *Wrongful acts of third parties.* Evidence that any inaccuracy or incompleteness in the credit reporting originated from Chase's own operational failures (failure to provide statements, withdrawal error, failure to send payment-due alerts) and Chase's own furnishing decisions, not from the acts of any third party; evidence that Chase, not any third party, controlled what information was reported to the CRAs and chose to continue reporting disputed information it admitted it could not verify.

2. *Failure to mitigate.* Evidence that Johnson made at least eight attempts to resolve the matter without seeking money damages between May 2018 and March 2021; evidence that Johnson paid the disputed balance under protest in August 2020; evidence that Johnson filed disputes with Equifax, complaints with the CFPB, and contacted Chase's Executive Office; evidence that Johnson's decision to defer a home purchase pending credit repair was itself a reasonable mitigation measure to avoid locking in a worse interest rate and incurring unnecessary transaction costs.

3. *Mistake.* Evidence that Chase received repeated notice from Johnson in 2017, 2018, 2020, 2021, and 2022 regarding the inaccuracies, recorded those notices in its internal systems, yet never investigated or corrected its reporting.

4. *Intervening/superseding causes.* Evidence that Johnson's credit scores dropped approximately 200 points in direct temporal correlation with Chase's inaccurate reporting, and that the trade line deletion in March 2022 was followed by score improvement.

5. *Waiver.* Evidence that Johnson consistently and continuously disputed Chase's reporting from 2017 through 2022, never acquiesced to the accuracy

6

of the reported information, and never voluntarily relinquished any right to challenge the reporting.

6. *Estoppel.* Evidence that Johnson never made any representation to Chase that he accepted the accuracy of the reported information or that he would refrain from pursuing his claims, and that Chase cannot identify any detrimental reliance on any such representation.

7. *Unclean hands.* Evidence that Johnson made good-faith efforts to resolve the account issues, provided payment instructions, repeatedly notified Chase of its errors, and cooperated with dispute processes

8. *Laches.* Evidence that Johnson disputed the inaccurate reporting continuously from 2017 through the filing of this action in 2022, causing no unreasonable or prejudicial delay, and that Chase itself destroyed relevant evidence despite being on notice of the dispute.

9. *Statute of limitations.* Evidence that Chase continued to furnish inaccurate information on numerous occasions between 2017 and 2022, that each furnishing constitutes a separate violation, and that the claims are based on conduct within the applicable limitations periods preceding the filing of this action.

## V. ANTICIPATED EVIDENTIARY ISSUES

On March 13, 2026, via email, Chase identified the following contemplated motions *in limine*:

1. "Testimony of Thomas Tartar [sic] on the same basis as the Daubert motion, because the motion is still undecided";

2. "Evidence of calls recorded by Plaintiff based on lack of authenticity foundation, hearsay, and lack of consent";

3. "Evidence or argument that Chase violated the CCRAA on or before August 24, 2020 based on the two-year statute of limitations";

PLAINTIFF JOSHUA JOHNSON'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

4. "Evidence or argument related to the accuracy of reporting by Chase prior to March 29, 2019 on the ground that the CCRAA does not apply extraterritorially";

5. "Evidence or argument from the arbitration proceedings, other than for the purpose of impeachment";

6. "Evidence or argument concerning speculative credit harm, including hypothetical credit opportunities not pursued, unsupported credit denials, or lay testimony purporting to attribute credit impact to Chase's reporting";

7. "Evidence or argument regarding an FCRA violation based on a dispute description not in the ACDV received by Chase from Equifax";

8. "Evidence or argument regarding harm from engaging in litigation and credit-related damages after deletion of the trade line in March 2022";

9. "Evidence or argument regarding settlement discussions as confidential, protected, not probative of fault, and prejudicial";

10. "Evidence and argument regarding breach of contractual obligations, including acceptance of payoff of $111.49, promise to link accounts, and obligation to make statements available, on the basis that these issues were already litigated in arbitration and would be prejudicial to relitigate, cumulative, and confusing to the jury";

11. "Evidence or argument based on failure to report a dispute, on the ground that this is a Cal. Civ. Code section 1785.25(c) obligation preempted by the FCRA";

12. "Evidence or argument regarding direct disputes and CFPB complaint communications and investigations, on the basis that Congress did not create a private right of action for such disputes and that such evidence would be irrelevant, confusing to the jury, and prejudicial"; and

13. "Evidence or argument concerning Plaintiff's medical records, on the ground that no expert will be presented to explain them and the records do not link

8

PLAINTIFF JOSHUA JOHNSON'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

any medical condition to inaccurate reporting or failure to investigate, creating an unfair and prejudicial inference the records themselves cannot establish".

Johnson previously served and filed motions *in limine* to exclude:

1. the deposition of Johnson's expert witness, Thomas Tarter;
2. June 8, 2021 and July 15, 2021 recordings of a prior arbitration hearing;
3. certain evidence related to Chase's Executive Office investigation;
4. evidence and argument regarding statement availability and payment obligation notice; and
5. testimony of Rob Wilkins.

Johnson opposes all identified motions in limine contemplated by Chase. Chase opposes each of Johnson's motions in limine.

## VI. ISSUES OF LAW

Johnson expects the issues of law germane to the case to be disputed:

1. the extent to which the information conveyed by Johnson to Chase, outside of the four corners of the notice sent from Equifax to Chase, bears on the reasonableness of Chase's investigation;
2. the interpretation of this Court's conclusion that "the Arbitration Award has no preclusive effect on Plaintiff's FCRA and CCRAA claims";
3. causation concerning credit damages, real estate damages;
4. the recoverability of lost wages.

## VII. JURY TRIAL

All issues are triable to a jury as a matter of right. A timely demand for jury has been made.

## VIII. ATTORNEYS' FEES

Attorneys' fees are recoverable under 15 U.S.C. § 1681n(a)(3) (willful violation of the FCRA), under 15 U.S.C. § 1681o(a)(2) (negligent violation of the FCRA), Cal. Civ. Code § 1785.31(d) (prevailing plaintiff), and Cal. Civ. Code § 1785.31(a)(1) (same).

**DATED:** March 22, 2026

/s/ Joshua Johnson

Joshua Johnson

PLAINTIFF JOSHUA JOHNSON'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW