**Joshua Johnson**
1373 Caminito Halago
La Jolla, CA 92037
(336) 423-2594
josh@jj88.org
IN PRO PER

FILED

CLERK, U.S. DISTRICT COURT

3/28/26

CENTRAL DISTRICT OF CALIFORNIA

BY _____ CS _____ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JOSHUA JOHNSON, <br><br> Plaintiff, <br><br> v. <br><br> JPMORGAN CHASE BANK, N.A., <br><br> Defendant. | Case No.: 2:22-cv-06718-AB-MAAx <br><br> **PLAINTIFF JOSHUA JOHNSON'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF CREDIT-RELATED DAMAGES** <br><br> Judge: Hon. André Birotte Jr. <br> Place: Courtroom 7B <br> Date: April 17, 2026 <br> Time: 10:00 AM |

1

## I. Introduction

Chase asks this Court to bar Johnson from presenting any evidence that its false credit reporting damaged his credit, deterred him from obtaining a mortgage, or caused him financial harm. The motion should be denied. It rests on out-of-circuit authority that conflicts with binding Ninth Circuit law recognizing deterrence damages and it mischaracterizes the evidence: Johnson is not asking the jury to speculate about what might have happened—he applied for a mortgage, researched and visited specific properties, and was deterred from proceeding because of Chase's reporting. When that reporting was finally corrected five years after it first appeared on his credit report, his credit score jumped over 100 points overnight.

## II. Background

From the day Johnson opened his Chase Ink credit card in January 2017, the account was plagued by Chase's operational failures. Chase agreed to provide monthly statements online but never did, despite Johnson raising the issue repeatedly over the subsequent eight months. In September 2017, Johnson closed the account because of these failures and authorized Chase to withdraw the full balance. Chase withdrew $111.49 instead of $345.97 — leaving an undisclosed balance that, with unauthorized late fees and interest, ballooned to $499.53. Chase never sent Johnson a statement or payment alert for the remaining balance, having promised to do both. Instead, Chase reported the account to the credit bureaus as delinquent and ultimately charged off, causing Johnson's credit score to drop about 200 points to 619.

In August 2020, Johnson filed a dispute with Equifax and took several other steps to get Chase to correct its reporting—including paying the balance under protest, filing a CFPB complaint, and sending Chase a notice of intent to arbitrate. Chase did not fix the issue. (Johnson Decl., Ex. A). In parallel, Johnson applied for a mortgage loan with PenFed to purchase a home for approximately $350,000.

PLAINTIFF JOSHUA JOHNSON'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF CREDIT-RELATED DAMAGES

(Johnson Decl., Ex. B). He was actively preparing to make an offer—researching properties, visiting neighborhoods, and staging funds for a down payment. PenFed pulled his credit and opened a loan file. (Johnson Decl., Ex. C). Johnson ultimately decided not to proceed: applying for additional credit would trigger hard inquiries that would further damage his already-impaired score; Chase's own website advised consumers to "wait to apply for credit if you have a pending dispute"; and if he obtained a mortgage at a worse rate, he faced thousands in refinancing costs with no guarantee Chase would ever correct its reporting. (Johnson Decl., Ex. D, Johnson Decl., Ex. E).

Johnson spent the next eighteen months in arbitration to compel Chase to fix his credit. In March 2022, the arbitrator ordered Chase to remove all adverse credit references. When Chase complied, Johnson's credit score jumped over 100 points in a single day, but by then, mortgage rates and home prices had surged.



3

## III. Argument

### A. The Motion Is an Improper Attempt to Obtain Dispositive Relief

This Court's Trial Order warns that "[m]otions in limine should not be disguised motions for summary adjudication of issues" and that "[t]he Court may strike excessive or unvetted motions in limine." (Dkt. 27). Chase's motion violates that directive.

Chase does not seek to exclude discrete pieces of evidence on specific evidentiary grounds. It seeks a blanket order precluding Johnson from proving an entire element of his claims—damages—through any lay testimony, argument, or exhibits. That is summary adjudication, not a motion in limine. *See Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013) ("A motion in limine is not the proper vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing such motions has passed."); *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 968 (9th Cir. 2001) (treating a purported motion in limine as a dispositive ruling subject to de novo review).

### B. Binding Ninth Circuit Law Recognizes Deterrence Damages Without Requiring a Denial of Credit

Chase's motion rests on the premise that Johnson cannot prove credit-related damages because he did not complete a real estate transaction. Chase cites *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469 (2d Cir. 1995), and a handful of district court decisions following it. But *Casella* is a Second Circuit case, and the Ninth Circuit has expressly rejected the proposition on which Chase relies.

In *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995), the Ninth Circuit held that "no case has held that a denial of credit is a prerequisite to recovery under the FCRA." Courts within this circuit have consistently followed *Guimond* to recognize damages where a consumer was deterred from applying for or pursuing credit because of inaccurate reporting. *See,*

*e.g.*, *Johnson v. Wells Fargo Home Mortg., Inc.*, 558 F. Supp. 2d 1114, 1137 (D. Nev. 2008) ("[T]he Ninth Circuit has recognized a damage claim for lost opportunities, i.e., being deterred from applying for credit pending resolution of inaccurate reporting."); *Cairns v. GMAC Mortg. Corp.*, No. CIV 04-1840, 2007 WL 735564 (D. Ariz. Mar. 5, 2007) ("damages may flow from a consumer being deterred from exercising his or her right to apply for credit as a result of inaccurate reporting until the erroneous information is deleted"); *Martinez v. Am. Express Nat'l Bank*, No. CV218130, 2022 WL 16571194 (C.D. Cal. Nov. 1, 2022); *Long v. Pendrick Cap. Partners II, LLC*, 374 F. Supp. 3d 515 (D. Md. 2019) ("a plaintiff may be compensated if she is merely deterred from accessing the credit market because of inaccuracies on her credit report").

Most recently, in *Chavez v. Ford Motor Credit Co., LLC*, No. 1:23-CV-01205-SKO, 2025 WL 1001587 (E.D. Cal. Apr. 3, 2025), the court directly addressed a defendant's reliance on *Casella* to argue that lost mortgage opportunity damages were "too speculative" under the CCRAA, and held that "persuasive case authority within the Ninth Circuit holds just the opposite: that such damages can be compensable as actual harm."

Chase's cited cases are distinguishable on the same ground. In *Casella*, the plaintiff "presented no evidence that any potential creditor bank even received his credit report." 56 F.3d at 476. In *Byrd*, the plaintiff never "actually applied for and was denied credit." 2010 WL 2555119, at *3. In* Robbins*, the plaintiff "never even identified a particular property." 2017 WL 6513662, at* 18. Johnson, by contrast, applied for a mortgage with PenFed, had his credit pulled, received a loan number, identified specific properties in Pine Mountain Club, visited them in person, and had $45,000 set aside for a down payment. He acted and was deterred from completing the transaction because of Chase's reporting.

PLAINTIFF JOSHUA JOHNSON'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF CREDIT-RELATED DAMAGES

**C. Johnson's Testimony About His Own Credit Scores, Loan Application, and Decision-Making Is Based on Personal Knowledge**

Chase argues that any testimony linking its reporting to Johnson's credit damage requires expert analysis under Rule 702. That misframes what Johnson intends to testify about.

Johnson is not offering an opinion on credit scoring algorithms. He is testifying about facts within his personal knowledge: his credit scores before and after Chase's reporting; his mortgage application with PenFed; the FICO score PenFed provided him; the specific properties he researched and visited; his reasons for deciding not to proceed; and the change in his credit score when Chase's reporting was finally corrected. This is the kind of testimony Rule 602 permits.

As for causation, the evidence speaks plainly. Chase reported a fabricated delinquency history. Johnson's score dropped roughly 200 points. Chase's reporting was the only derogatory item on Johnson's credit. Chase's own credit monitoring tools identified "Late payments" as the sole "Poor" factor affecting his score, while his credit utilization, age of credit, and credit mix were all rated "Good." And when Chase's reporting was removed—with no other changes—his scores jumped over 100 points in a single day. A jury does not need an expert to connect those dots. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1174 (9th Cir. 2009) (causation and damages established where the only delinquency on plaintiff's credit report was the disputed account).

Nor does Johnson need an expert to explain why he was deterred. He knew his score was impaired. He knew, from Chase's own website, that applying for credit triggers hard inquiries that "lower your credit score" and that consumers with poor scores are "more likely to be affected by multiple hard inquiries." (Johnson Decl., Ex. F). He knew Chase advised consumers to "wait to apply for credit if you have a pending dispute."

PLAINTIFF JOSHUA JOHNSON'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF CREDIT-RELATED DAMAGES



(Johnson Decl., Ex. D). And he knew that taking a mortgage at a worse rate would mean thousands in additional interest and refinancing costs—with no guarantee that Chase would ever fix his credit. These are facts, not opinions. The weight to give them is for the jury.

**IV. Conclusion**

For the foregoing reasons, Chase's motion should be denied.

7

## CERTIFICATE OF COMPLIANCE

The undersigned, Plaintiff Joshua Johnson, certifies that this brief contains 1,466 words, which complies with the word limit of L.R. 11-6.1.

**DATED:** March 27, 2026                                    /s/ Joshua Johnson
                                                              Joshua Johnson

PLAINTIFF JOSHUA JOHNSON'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF CREDIT-RELATED DAMAGES