**Joshua Johnson**
1373 Caminito Halago
La Jolla, CA 92037
(336) 423-2594
josh@jj88.org
IN PRO PER

LODGED
CLERK, U.S. DISTRICT COURT

4/14/2026

CENTRAL DISTRICT OF CALIFORNIA
BY _____jji_____ DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

TOMIO B. NARITA (SBN 156576)
Tomio.Narita@wbd-us.com
ALISA A. GIVENTAL (SBN 273551)
Alisa.Givental@wbd-us.com
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2750
San Francisco, CA 94111
Telephone: (415) 433-1900
Facsimile: (415) 433-5530

ABIRAMI GNANADESIGAN (SNB 263375)
AGnanadesigan@dykema.com
DYKEMA GOSSETT LLP
444 South Flower Street, Suite 2200
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

Attorneys for JPMorgan Chase Bank, N.A.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA JOHNSON, | Case No. 2:22-cv-06718-AB-MAAx |
| PLAINTIFF, | **PROPOSED FINAL PRETRIAL CONFERENCE ORDER** |
| V. | |
| JPMORGAN CHASE BANK, N.A., | Trial Date: May 18, 2026 |
| | Final Pre-Trial Conference: April 17, 2026 |
| DEFENDANT. | Judge: Hon. André Birotte Jr. |

1

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

The parties were unable to agree on a joint submission. Chase's position, as Johnson understands it, is that most of the facts Johnson contends are admitted are not, and that the parties are so far apart on the elements of his claims that a joint submission would be more confusing than helpful. Plaintiff Joshua Johnson ("Johnson") disagrees and submits this Proposed Final Pretrial Conference Order.

TABLE OF CONTENTS

1.   THE PARTIES AND PLEADINGS...........................................................3

2.   JURISDICTION ....................................................................................3

3.   TRIAL DURATION...............................................................................3

4.   JURY TRIAL.........................................................................................3

5.   ADMITTED FACTS .............................................................................3

6.   STIPULATED FACTS........................................................................ 13

7.   PARTIES' CLAIMS AND DEFENSES ................................................ 14

8.   REMAINING TRIABLE ISSUES ....................................................... 28

9.   DISCOVERY...................................................................................... 29

10.  DISCLOSURES AND EXHIBIT LIST ............................................... 29

11.  WITNESS LISTS ............................................................................... 29

12.  MOTIONS IN LIMINE AND LAW AND MOTION MATTERS.......... 29

13.  BIFURCATION.................................................................................. 31

14.  ADMISSIONS ................................................................................... 32

2

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

Following pre-trial proceedings, pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16, IT IS ORDERED:

**1.    THE PARTIES AND PLEADINGS**

Johnson has pleaded and plans to pursue two claims against Chase: (1) that Chase violated section 1681s-2(b) of the Fair Credit Reporting Act ("FCRA"), and (2) that Chase violated section 1785.25(a) of the California Consumer Credit Reporting Agencies Act ("CCRAA"). No claims have been dismissed or abandoned.

**2.    JURISDICTION**

It is stipulated that subject matter jurisdiction over this action exists under 28 U.S.C. §§ 1331 and 1367(a), and venue is proper in this District and this Division pursuant to 28 U.S.C. § 1391(b)(2).

**3.    TRIAL DURATION**

The trial is estimated to take 3 days.

**4.    JURY TRIAL**

The trial is to be a jury trial. On March 27, 2026, Chase served and filed its proposed undisputed jury instructions [Dkt. 153], proposed disputed jury instructions [Dkt. 154], and proposed verdict form [Dkt. 151]. On April 3, 2026, Johnson served his proposed jury instructions on Chase in hopes that the parties could agree on a joint submission, and also served and filed his proposed verdict form. Despite meeting and conferring several times, the parties were unable to reach agreement. Accordingly, on April 14, 2026, Johnson served and filed his proposed jury instructions and this proposed order.

**5.    ADMITTED FACTS**

Johnson contends that the following facts are admitted and need no proof, based on Chase's admissions in its Answer to Johnson's Complaint ("Answer") [Dkt. 11], its Response to Johnson's Statement of Genuine Disputes ("RSGD") [Dkt.

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

77-1], and Exhibit A, Chase's Amended Responses to Johnson's Requests for Admission, Set One ("RFA").

1.  Chase is a national banking association, with its main office located in Columbus, Ohio. Chase regularly transacts business within the Central District of California. Answer ¶ 2, Dkt. 11.

2.  On August 24, 2020, Johnson filed a dispute with Equifax regarding Johnson's Chase Ink account (the "Ink Account"). Answer ¶ 8.

3.  On August 25, 2020, Equifax provided notification of the dispute to Chase. Answer ¶ 10.

4.  Chase submitted its response to Equifax on or about September 8, 2020. Answer ¶ 14.

5.  In approximately March [April] 2022, Chase removed all adverse credit references regarding Johnson arising out of the Ink Account. Answer ¶ 16.

6.  Chase is a furnisher of information to consumer reporting agencies for purposes of 15 U.S.C. § 1681s-2. RFA No. 5.

7.  Aside from the Ink Account, between 2009 and 2020, Johnson held four other credit card accounts with Chase. RFA No. 14.

8.  Aside from the Ink Account, those four other Chase credit card accounts were never reported as delinquent to any credit reporting agency. RFA No. 15.

9.  On May 30, 2018, Johnson had a conversation via telephone with a Chase representative. RSGD ¶ 46.

10. During the call, Johnson told the representative that the balance wasn't the issue—he could pay it immediately—but he wanted the derogatory marks on his credit report removed first; he said he would pay the balance right away if the marks were removed. RSGD ¶ 47.

4

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

11. On May 21, 2018, Johnson had a conversation via telephone with a Chase representative. RSGD ¶ 48.

12. During the call, Johnson informed the representative that he had tried to cancel or close his account months, if not a year earlier, but believed the account was still open, and had received a collections notice from a third-party. RSGD ¶ 49.

13. In response to Johnson's request for the production of all technical manuals, industry guidelines, regulatory guidance, and agreements between Chase and any CRAs related to the interpretation of any communications concerning the Ink Account, Chase directed Johnson to a single document titled "Card Dispute Resolution Processing" (the "Dispute Manual"). RSGD ¶ 50.

14. On September 8, 2020, Chase furnished information to Equifax regarding the Ink Account via the transmission of an ACDV response. RSGD ¶ 51.

15. On September 8, 2020, Chase furnished to Equifax that the status of the Ink Account was "Account paid in full, was a charge-off". RSGD ¶ 52.

16. On September 8, 2020, Chase furnished to Equifax that the Ink Account's original charge off amount was $499. RSGD ¶ 53.

17. On September 8, 2020, Chase furnished to Equifax that the Ink Account had been delinquent in November 2017. RSGD ¶ 54.

18. On September 8, 2020, Chase furnished to Equifax that the Ink Account had been delinquent in December 2017. RSGD ¶ 55.

19. On September 8, 2020, Chase furnished to Equifax that the Ink Account had been delinquent in January 2018. RSGD ¶ 56.

20. On September 8, 2020, Chase furnished to Equifax that the Ink Account had been delinquent in February 2018. RSGD ¶ 57.

5

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

21. On September 8, 2020, Chase furnished to Equifax that the Ink Account had been delinquent in March 2018. RSGD ¶ 58.

22. On September 8, 2020, Chase furnished to Equifax that the Ink Account had been delinquent in April 2018. RSGD ¶ 59.

23. On September 8, 2020, Chase furnished to Equifax that the Ink Account had been delinquent in May 2018. RSGD ¶ 60.

24. On September 8, 2020, Chase furnished to Equifax a Compliance Condition Code of "XA" in connection with the Ink Account. RSGD ¶ 61.

25. The Dispute Manual defines a Compliance Condition Code of "XA" as "Voluntary Closure + Resolved FCBA Dispute". RSGD ¶ 62.

26. The Dispute Manual defines a Compliance Condition Code of "XE" as "Voluntary Closure + FCRA Dispute Resolved-Customer Disagrees with Action". RSGD ¶ 63.

27. The Dispute Manual defines a Compliance Condition Code of "XC" as "FCRA Dispute Resolved-Customer Disagrees with Action". RSGD ¶ 64.

28. Chase furnishes account information to the CRAs on a monthly basis. RSGD ¶ 65.

29. Chase furnished information to the CRAs monthly regarding the Ink Account until March 2022. RSGD ¶ 66.

30. On June 12, 2018, Johnson had a conversation via telephone with a Chase representative regarding the Ink Account. RSGD ¶ 67.

31. During the call, the representative stated that there was a recording of the September 6, 2017 phone call. RSGD ¶ 68.

32. During the call, the representative stated that he listened to a recording of the September 6, 2017 phone call. RSGD ¶ 69.

6

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

33. During the call, the representative stated that Johnson had complained that he was not receiving billing statements for the Ink Account during the September 6, 2017 call. RSGD ¶ 70.

34. On October 14, 2020, Johnson received a response from Chase regarding his CFPB complaint. RSGD ¶ 72.

35. Between May 21, 2018 and June 12, 2018, Johnson had 10 phone calls with Chase representatives. RSGD ¶ 76.

36. On August 19, 2020, Johnson submitted a complaint concerning the Ink Account via the CFPB. RSGD ¶ 79.

37. In his CFPB complaint, Johnson reported that he paid the Ink Account in full, stopped using it, and observed an unexpected $500 charge-off and derogatory credit marks, despite receiving no notice from Chase. RSGD ¶ 80.

38. On August 25, 2020, Johnson served Chase with a written notice of dispute and intent to arbitrate. RSGD ¶ 81.

39. In his notice of dispute and intent to arbitrate, Johnson reported that he paid the Ink Account in full, stopped using it, and observed an unexpected $500 charge-off and derogatory credit marks, despite receiving no notice from Chase. RSGD ¶ 82.

40. Chase understood that Johnson's dispute included an allegation that there was an incorrect balance on the Ink Account. RSGD ¶ 83.

41. The FCRA relevant information that Chase received on the ACDV did not suggest the complaint was about fraud. RSGD ¶ 84.

42. The ACDV contains dispute code "021". RSGD ¶ 87.

43. The investigation was performed based on a dispute code "104". RSGD ¶ 86.

7

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

44. The Dispute Manual contains the written procedure that Chase had in place in August and September 2020 to conduct FCRA dispute investigations. RSGD ¶ 88.

45. The Dispute Manual defines dispute codes "019", "023", and "104". RSGD ¶ 89.

46. The Dispute Manual does not define dispute code "021". RSGD ¶ 90.

47. The document attached as Exhibit M to the Declaration of Robert Hyatt in support of Chase's motion for summary judgment [Dkt. 68-3] and identified as an "October 13, 2020 letter from Chase to Plaintiff" (the "EO Letter") states that it is from Chase's Executive Office. RSGD ¶ 93.

48. The EO Letter is the basis for Chase's determination, after its investigation of the dispute, that reporting the Account delinquent to CRAs was an accurate report of information. RSGD ¶ 94.

49. The EO Letter is the basis for Chase's determination, after its investigation of the dispute, that reporting the Account was a charge off to CRAs was an accurate report of information. RSGD ¶ 95.

50. The EO Letter is the basis for Chase's determination, after its investigation of the dispute, that reporting the Account was a charge off to CRAs was a complete report of information. RSGD ¶ 96.

51. The EO Letter, in conjunction with the Dispute Manual, forms the basis of Chase's contention that its investigation of the dispute was non-cursory. RSGD ¶ 97.

52. The EO Letter, in conjunction with the Dispute Manual, forms the basis of Chase's contention that its investigation of the dispute was reasonable. RSGD ¶ 98.

8

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

53. The investigation handled by Chase's Executive Office was separate from the FCRA/ACDV investigation conducted by the CBO Disputes team. RSGD ¶ 100.

54. When asked whether the document was "the final product" of the "FCRA investigation that Chase conducted in August and September 2020", Burda testified that the document had "nothing to do" with the FCRA investigation. RSGD ¶ 101.

55. Johnson did not receive the EO Letter prior to its production in the arbitration. RSGD ¶ 102.

56. The EO Letter bears Carla Wills' name. RSGD ¶ 103.

57. Carla Wills does not know whether she had seen the EO Letter before. RSGD ¶ 104.

58. Carla Wills does not know whether she was involved in preparing the EO Letter. RSGD ¶ 105.

59. Carla Wills does not know whether she provided any of the information that is included in the EO Letter. RSGD ¶ 106.

60. No current Chase employees recall the investigation into Johnson's notice of dispute, submitted to Equifax on or about August 25, 2020, concerning the accuracy of information Chase provided to Equifax. RSGD ¶ 107.

61. Chase is unaware of any current or former employees who recall the investigation into Johnson's notice of dispute, submitted to Equifax on or about August 25, 2020, concerning the accuracy of information Chase provided to Equifax. RSGD ¶ 108.

62. Burda did not try to identify the specialist who conducted the investigation before her deposition. RSGD ¶ 109.

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

63. Chase does not know the name of the specialist who conducted the investigation, whether that person still works for Chase, or if that person was on Burda's team. RSGD ¶ 110.

64. As part of its indirect dispute process, Chase does not contact the CRA to see if there is additional information. RSGD ¶ 111.

65. Reviewing recorded phone calls is not part of Chase's FCRA investigation process for an Automated Consumer Dispute Verification ("ACDV"). RSGD ¶ 112.

66. As part of its indirect dispute process, Chase does not contact the consumer to get more information, and Burda does not know why that is not part of the process. RSGD ¶ 113.

67. On October 20, 2020, Johnson had a conversation via telephone with Carla Wills. RSGD ¶ 114.

68. During the call, Carla told Johnson that, because over two years had passed, "we can't go back and listen to those calls" and so "there's no way to verify what you're actually saying". RSGD ¶ 115.

69. The EO Letter states "[d]ue to the amount of time that has passed, we are unable to review the calls". RSGD ¶ 116.

70. The EO Letter states "the calls we did find noted on your account cannot be reviewed due to the length of time that has passed". RSGD ¶ 117.

71. On August 3, 2022, Johnson caused to be served on Chase a demand for arbitration, with claims identical to those in the complaint in the instant lawsuit. RSGD ¶ 118.

72. On August 18, 2022, Johnson received Chase's objection to his August 3, 2022 Demand for Arbitration. RSGD ¶ 119.

10

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

73. On September 16, 2022, JAMS declined administration. RSGD ¶ 120.

74. Prior to September 6, 2017, Johnson received several messages from Chase, via email and in connection with the Ink Account, stating that a "credit card payment is due in 10 days". RSGD ¶ 122.

75. On May 30, 2018 and August 19, 2020, Johnson informed Chase or counsel for Chase that he was willing to resolve this dispute by paying $499, the entire amount allegedly owed, in exchange for the deletion of the account or correction of the reporting. RSGD ¶ 125.

76. On December 22 and 30, 2020, and March 2, 2021, after paying $499 on August 26, 2020, Johnson informed counsel for Chase that he was willing to resolve this dispute in exchange for deletion of the account or correction of the reporting. RSGD ¶ 126.

The following facts are asserted by Chase as admitted and requiring no proof based on the pleadings and discovery in this Action. Johnson objects that most of these do not appear in the pleadings or in his responses to Chase's statement of uncontroverted facts and are not admitted. Some may, but the lack of citations makes it impossible to verify.

On January 5, 2017, Plaintiff opened a Chase Ink credit card account ("Ink card").

On February 17, 2017, Plaintiff created an online profile using the username jsjohns3 in connection with the Chase business card account and signed up for paperless billing.

Chase emailed Plaintiff's notices that his Ink card statement was available on February 27, 2017, March 27, 2017, April 25, 2017, May 25, 2017, June 26, 2017, July 25, 2017, and August 25, 2017. Plaintiff received these emails.

Plaintiff did not attempt to access the online profile using the username jsjohns3 between April 5, 2017 and June 11, 2018.

11

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

On September 6, 2017, Chase called Plaintiff to request payment on his Ink card because Plaintiff's account carried an unpaid balance. On September 6, 2017 the balance on the account was $347.97 and the next minimum payment due was $111.49, which included the past due amount, interest, and late fees. Plaintiff made a telephonic payment in the amount of $111.49.

The account was closed at Plaintiff's request on September 15, 2017. After closing the Ink card account, Chase continued to email Plaintiff monthly billing statement notices until the account was charged-off on April 30, 2018.

Plaintiff moved to California in March 2019.

On August 24, 2020, Plaintiff submitted an online dispute with Equifax regarding his Ink card.

As part of the online dispute process, Plaintiff provided a narrative description of his dispute in a text box provided.

Plaintiff filed a demand for arbitration regarding his Ink card with the American Arbitration Association ("AAA"), Case No. 01-20-0015-1734, on September 30, 2020. While Plaintiffs original claim in the Arbitration was for "injunctive relief requiring Chase to correct his credit report," Plaintiff amended his claim "reciting a failure on the part of Chase to furnish agreed upon statements of account, failure of Chase to provide reasonable technical support regarding electronic statement delivery, failure of Chase to properly settle and close-out his account, and incorrect reporting by Chase that the Johnson account in question was delinquent." Despite raising the issue of incorrect credit reporting in his amended claim, Johnson stated that he was not pursuing a Fair Credit Reporting Act (FCRA) claim in the Arbitration. The Arbitration consisted of four days of evidentiary hearings, numerous conference calls to address motions, briefing, and evidentiary issues. On March 3, 2022, the arbitrator, Charles Holton, made his award.

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

Arbitrator Holton found that "a separate contract transaction occurred between the parties in Sept, 2017 involving the closing of the Ink account and payment thereon. There was a mutual mistake of fact between the parties with Johnson understanding that he was paying the entire balance and Chase understanding that he was paying only the minimum payment."

**6.**      <u>STIPULATED FACTS</u>

The parties have stipulated to the following facts, as reflected in Exhibit B (the "Joint Stipulation re Employees") and Exhibit C ("Joint Stipulation re Financial Condition"):

1.  Chase has no current employees with any recollection of the 2020 investigation relating to Johnson's Equifax dispute. Joint Stipulation re: Employees ¶ 1.

2.  Chase is unaware of any employees who have any recollection of the 2020 investigation. Joint Stipulation re: Employees ¶ 2.

3.  JPMorgan Chase & Co.'s 10-K filings for the years ending December 31, 2018, December 31, 2019, December 31, 2020, December 31, 2021, and December 31, 2022 are authentic and genuine. Joint Stipulation re: Financial Condition ¶ 1.

4.  JPMorgan Chase & Co.'s 10-Q filings for the periods ending June 30, 2020; September 30, 2020; March 31, 2021; June 30, 2021; September 30, 2021; March 31, 2022; June 30, 2022; September 30, 2022; and March 31, 2022 are authentic and genuine. Joint Stipulation re: Financial Condition ¶ 2.

5.  The "Consumer & Community Banking" sections of JPMorgan Chase & Co.'s 10-K filings for the years ending December 31, 2018, December 31, 2019, December 31, 2020, December 31, 2021, and December 31, 2022 accurately represent Defendant's financial condition across all of its lines of business,

13

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

including Card Services, at the time they were prepared. Joint Stipulation re: Financial Condition ¶ 3.

6. The "Consumer & Community Banking" sections of JPMorgan Chase & Co.'s 10-Q filings for the periods ending June 30, 2020; September 30, 2020; March 31, 2021; June 30, 2021; September 30, 2021; March 31, 2022; June 30, 2022; September 30, 2022; and March 31, 2022 accurately represent Defendant's financial condition across all of its lines of business, including Card Services, at the time they were prepared. Joint Stipulation re: Financial Condition ¶ 4.

**7.    PARTIES' CLAIMS AND DEFENSES**

**Plaintiff's Claims:**

**(a)    Johnson plans to pursue the following claims against Chase:**

**Claim 1:**    Chase negligently and willfully violated 15 U.S.C. § 1681s-2(b).

**Claim 2:**    Chase negligently and willfully committed multiple violations of Cal. Civ. Code § 1785.25(a).

**(b)    The elements required to establish Johnson's claims are:**

**Claim 1:**

**i. Duties of a furnisher under 15 U.S.C. § 1681s-2(b)**

After receiving notice of a dispute with regard to the completeness or accuracy of any information provided by the furnisher to a consumer reporting agency ("CRA"), the furnisher shall —

1. Conduct an investigation with respect to the disputed information;

2. Review all relevant information provided by the CRA;

3. Report the results of the investigation to the CRA; and

4. If an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation, for purposes of reporting to a CRA only, as appropriate, based on the results of the reinvestigation promptly—

14

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

a. Modify that item of information;

b. Delete that item of information; or,

c. Permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1)(A)–(E).

The investigation "may not be unreasonable." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009). An item of information can be inaccurate because it is "patently incorrect" or because it is "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Id*. at 1163. A furnisher's failure to report that an account is disputed, where the consumer has a "bona fide dispute", renders the reported information "incomplete or inaccurate." *Id*. at 1163–64. A "bona fide" dispute is one that "could materially alter how the reported debt is understood." *Id*. at 1163. The FCRA provides a private right of action for negligent or willful noncompliance with section 1681s-2(b). 15 U.S.C. §§ 1681n, 1681o.

**ii. Undisputed facts**

1. Chase is a furnisher of information to CRAs. RFA No. 5.

2. Johnson filed a dispute with Equifax, a CRA, on August 24, 2020 with regard to the completeness or accuracy of information relating to the Ink Account. Answer ¶ 8.

3. Equifax provided notice of the dispute to Chase on August 25, 2020. Answer ¶ 10.

4. Chase submitted its response to Equifax on September 8, 2020. Answer ¶ 14; RSGD ¶ 51.

**iii. Triable elements**

To prevail on his claim under 15 U.S.C. § 1681s-2(b), Johnson must prove:

1. Chase failed to conduct a reasonable investigation after receiving notice from Equifax;

15

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

2. Chase furnished information that was incomplete or inaccurate, including because it was patently incorrect, misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions, or omitted Johnson's bona fide dispute; and

3. Chase's violation caused Johnson damages.

**Claim 2:**

**iv. Duties of a furnisher under Cal. Civ. Code § 1785.25(a)**

"A person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a). The CCRAA provides a private right of action for negligent or willful noncompliance with Cal. Civ. Code § 1785.25(a). Cal. Civ. Code §§ 1785.25(g), 1785.31(a); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010).

**v. Undisputed facts**

Chase is a "person" under Cal. Civ. Code § 1785.25(a). RSGD ¶ 66.

**vi. Triable elements**

To prevail on his claim under Cal. Civ. Code § 1785.25(a), Johnson must show that:

1. Chase furnished information to a CRA that it knew or should have known the information was incomplete or inaccurate; and

2. Chase's violation(s) caused Johnson damages.

**(c)    The Key Evidence Plaintiff Relies on for Each Claim**

**Claim 1:**

**i. Chase failed to conduct a <u>reasonable</u> investigation after receiving notice from Equifax.**

*Chase was on notice of the nature of the dispute.* On August 24, 2020, Johnson filed a dispute with Equifax regarding the completeness or accuracy of

16

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

information relating to the Ink Account and Equifax thereafter provided notice of the dispute to Chase via an Automated Credit Dispute Verification ("ACDV") form. Key evidence regarding the notice includes an ACDV printout produced by Equifax, the testimony of Chase's Rule 30(b)(6) designee regarding the ACDV, and Chase's responses to Johnson's written discovery requests.

*Chase possessed relevant information bearing on the dispute.* Key evidence includes audio recordings of ten 2018 calls between Johnson and Chase concerning the account; Johnson's August 19, 2020 complaint to the Consumer Financial Protection Bureau ("CFPB") and related materials; Johnson's August 25, 2020 letter notifying Chase of his intent to arbitrate; Chase's internal records concerning the account, including "C3 memos" and "purge notes"; account statements produced by Chase; Johnson's payment history for his Chase Ink and Chase Sapphire accounts; the testimony of Chase's Rule 30(b)(6) designee; the testimony of Chase's corporate representative in a prior arbitration hearing; and Chase's responses to Johnson's written discovery requests.

*Chase failed to review the relevant information in its possession, failed to acquire relevant information not in its possession, and instead conducted a cursory investigation untethered to the nature of the dispute.* Key evidence includes the parties' stipulation that Chase has no current employees with any recollection of the 2020 investigation of Johnson's Equifax dispute, and is unaware of any employees with such recollection; Chase's internal records concerning the account; Chase's written policies and procedures governing dispute investigations; the testimony of Chase's Rule 30(b)(6) designee; the testimony of Chase's corporate representative in a prior arbitration hearing; and Chase's responses to Johnson's written discovery requests.

*Chase destroyed relevant information—after it was aware that the account was under dispute.* Key evidence includes Chase's internal records concerning the

17

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

account, the testimony of Chase's corporate representative in a prior arbitration hearing, a June 12, 2018 phone call, an October 19, 2020 phone call, an October 14, 2020 letter

*Chase's stated basis that its investigation was reasonable, and that the furnished information was accurate and complete, does not withstand scrutiny and is contradicted by Chase's own records and testimony.* Key evidence includes Chase's responses to Johnson's written discovery requests identifying an October 2020 letter drafted by Carla Wills as the basis for its determination that the information it continued to furnish after the investigation was accurate and complete, that October 2020 letter, and related testimony of the author of that letter, Carla Wills, as well as Rule 30(b)(6) designee.

*Chase could not verify the disputed information.* Key evidence includes an audio recording of an October 2020 phone call between Johnson and Wills, the testimony of Chase's corporate representative in a prior arbitration hearing, a legal memorandum submitted by counsel for Chase in that prior arbitration, the testimony of Chase's Rule 30(b)(6) designee concerning its unreliable system of record and its retention policies, and Chase's internal records concerning the account.

*An industry expert concluded that Chase's investigation was insufficient and departed from industry standards.* Key evidence includes the expert report and testimony of Johnson's retained expert, Thomas Tarter.

*A third-party factfinder, reviewing substantially the same information, reached the opposite conclusion.* A neutral arbitrator, presented with substantially the same information available to Chase during its investigation, ordered Chase to retract and remove all adverse credit references arising out of the Ink Account — evidence that a reasonable investigation would have led Chase to do the same rather than continue furnishing the disputed information. Key evidence includes the arbitration record and remedy, and Johnson's testimony regarding the overlap

18

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

between the arbitration evidence and the information available to Chase during its investigation.

**ii. Chase furnished information that was <u>incomplete</u> or <u>inaccurate</u>, including because it was <u>patently incorrect</u>, <u>misleading</u> in such a way and to such an extent that it can be expected to adversely affect credit decisions, or <u>omitted</u> Johnson's <u>bona fide dispute</u>.**

*Chase agreed to provide Johnson with online account access, online statements, emailed payment-due notices, and technical support.* Key evidence includes written agreements between Johnson and Chase entered into in 2017, contemporaneous emails from Chase, screenshots of Chase's website as it appeared in early 2017, Chase's 2021 admission regarding its online enrollment process as of early 2017, Johnson's testimony, Chase's responses to Johnson's written discovery requests, and admitted facts.

*Chase failed to provide Johnson with online account access, online statements, emailed payment-due notices after September 2017, or technical support.* Key evidence includes Johnson's testimony; Chase's records concerning the Ink and Sapphire accounts, including call and payment history for both; the absence of payment-due notices in Johnson's email records after September 2017; screenshots of Johnson's online access to Chase's website in 2018; the testimony of Chase's Rule 30(b)(6) designee, including the second amended notice of deposition; the testimony of Chase's corporate representative in a prior arbitration hearing; screenshots of Chase's website as it appeared in early 2017; Chase's 2021 admission regarding its online enrollment process as of early 2017; audio recordings of relevant 2018 calls between Johnson and Chase concerning the account; account statements produced by Chase, Chase's responses to Johnson's written discovery requests, and admitted facts.

*Johnson paid off and closed the account in September 2017.* Key evidence

19

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

includes Johnson's testimony, his payment history across all Chase credit card accounts dating to 2010, and his broader credit history dating to 2008 as reflected in his consumer credit reports.

*Chase failed to comply with Johnson's instructions to update his mailing address for notices.* Key evidence includes Johnson's testimony, Chase's internal records concerning the account, including "C3 memos" and "purge notes", and Johnson's Sapphire account statements.

*Chase charged unauthorized late fees before and after the account's closure.* Key evidence includes the evidence identified in the immediately preceding paragraphs, written agreements between Johnson and Chase entered into in 2017, and account statements produced by Chase.

*Following its investigation, Chase continued to report to consumer reporting agencies that the Ink Account had a delinquent payment history, had been charged off, and carried a past-due balance of $499 — and failed to report that the account was disputed.* Key evidence includes Chase's response to Equifax's ACDV notice, Johnson's consumer credit reports, Chase's internal records concerning the account, the testimony of Chase's Rule 30(b)(6) designee, Chase's responses to Johnson's written discovery requests, and certain admitted facts.

*The information that Chase furnished to the credit bureaus was misleading in such a way and to such an extent that it could be expected to adversely affect credit decisions.* Key evidence includes the expert report and testimony of Johnson's retained expert, Thomas Tarter, and statements made by Chase on its website.

*Johnson's dispute was bona fide — that is, one that could materially alter how the reported debt is understood.* Key evidence includes the evidence identified in the immediately preceding paragraphs, the expert report and testimony of Johnson's retained expert, Thomas Tarter, and the arbitration remedy.

**iii. Chase's violation caused Johnson damages.**

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

Chase's inaccurate and incomplete credit reporting caused Johnson harm. In addition to Johnson's consumer credit reports, credit scores, the testimony of Johnson, the testimony of Johnson's retained expert, Thomas Tarter, and representations made by Chase on its website regarding credit reporting, the following key evidence will be submitted at trial:

1. **Increased home insurance premiums:** Two separate letters from Amica Mutual Insurance Company, informing Johnson that he had not qualified for the best rate, in part because "consumers with a delinquent payment history experience more insurance losses".

2. **Increased auto insurance premiums:** Letter from Progressive Casualty Insurance Company, informing Johnson that "[w]e did not give you our lowest premium due, in part, to information contained in our credit history".

3. **Lost opportunity to purchase a home:** Johnson's Google search history from August and September of 2020, email correspondence with PenFed Credit Union in August 2020, email from Chase Credit Journey in September 2020, a screenshot of the PenFed loan center website showing the terms of Johnson's mortgage application with PenFed, a letter from PenFed regarding his mortgage application and credit score, a screenshot of his bank balance in October 2020, screenshots of text messages discussing specific properties in a small neighborhood outside of Los Angeles, MLS sales records concerning those properties, local and national home price appreciation data, published by the Federal Reserve, testimony of Johnson's friend, representations made on Chase's website regarding "hard inquiries" and advice concerning pending credit reporting disputes.

4. **Lost opportunity to refinance a home:** Mortgage interest rate data, segmented by credit score, published by the Federal Reserve; email sent to Chase in 2021, explaining the urgency of resolving this dispute, so that

21

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

Johnson could take advantage of low mortgage rates to refinance an adjustable-rate mortgage.

5. **Out-of-pocket expenses:** Spreadsheet and records submitted in January 2022 documenting out-of-pocket expenses incurred; email related to credit-monitoring services.

6. **Lost time spent addressing the credit reporting problem and lost wages:** Paystub from 2021, spreadsheet and records submitted in January 2022, testimony of Johnson's friend.

7. **Lost creditworthiness and credit reputation:** Johnson's consumer credit reports, credit scores.

8. **Non-economic damages and emotional distress:** Testimony of Johnson's friends, Johnson's medical records.

**iv. Chase's violation was <u>willful</u>.**

The key evidence described above in sections 7(c)(i)–(iii) is incorporated here by reference. Moreover, key evidence of willfulness includes Chase's dispute policies and procedures, and Chase's Rule 30(b)(6) designee's testimony regarding those policies and procedures. To support an award of punitive damages, Johnson will also present evidence of Chase's financial condition, via Chase's filings with the Securities and Exchange Commission, pursuant to the parties' relevant stipulation.

**<u>Claim 2:</u>**

**v. Chase furnished information to a CRA that it <u>knew or should have known</u> the information was <u>incomplete or inaccurate</u>.**

The key evidence described above in sections 7(c)(i)–(ii) is incorporated here by reference. Additional key evidence includes Chase's Rule 30(b)(6) designee's testimony regarding Chase's furnishing on a monthly basis through March 2022, and the EO Letter indicating that Chase furnishes information to four credit bureaus. Moreover, because a dispute with a credit bureau is not a precondition to liability

22

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

under the CCRAA, key evidence also includes information and knowledge obtained after Chase's investigation into the Equifax dispute completed, but before it deleted the Ink Account from Johnson's credit report in April 2022, including his complaint with the CFPB, Chase's investigation thereof, phone calls between Johnson and Chase that took place in October 2020, the October 14, 2020 letter, and the prior arbitration between the parties.

**vi. Chase's violation(s) caused Johnson <u>damages</u>.**

The key evidence described above in section 7(c)(iii) is incorporated here by reference.

**vii. Chase's violation(s) were <u>willful</u>.**

The key evidence described above in section 7(c)(iv) is incorporated here by reference.

**<u>Defendant's Affirmative Defenses:</u>**

(a)    Defendant plans to pursue the following affirmative defenses:

**<u>Defense 1:</u>**  Statute of Limitations Under the FCRA

Johnson objects to presentation of this defense at trial. Defense 1 should not be presented to the jury. *See* Plaintiff's Position re: Disputed Jury Instruction No. 46.

**<u>Defense 2:</u>**  Statute of Limitations Under the CCRAA

Johnson objects to presentation of this defense at trial. Defense 2 should not be presented to the jury. *See* Plaintiff's Position re: Disputed Jury Instruction No. 47.

**<u>Defense 3:</u>**  Mitigation of Damages

Johnson objects to presentation of this defense as a bar to liability at trial. Failure to mitigate may be asserted, at most, as a limitation on recoverable actual damages under the FCRA; there appears to be no controlling Ninth Circuit authority making it a complete affirmative defense to FCRA liability, and it should not apply to statutory damages under § 1681n.

**<u>Defense 4:</u>**  Mutual Mistake

23

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

Johnson objects to presentation of this defense at trial. Defense 4 should not be presented to the jury. *See* Plaintiff's Position re: Disputed Jury Instruction No. 49.

**Defense 5:**   Estoppel

Johnson objects to presentation of this defense at trial. In denying Chase's motion for summary judgment, the Court expressly rejected this defense, holding that "Chase's argument that these claims are collaterally estopped fails." Dkt. 80. That ruling is law of the case, and Chase should not be permitted to relitigate the same defense at trial.

**Defense 6:**   Waiver

Johnson objects to presentation of this defense at trial. Chase has pointed to no evidence in support.

**Defense 7:**   Laches

Johnson objects. Defense 7 should not be presented to the jury. *See* Plaintiff's Position re: Disputed Jury Instruction No. 51.

**Defense 8:**   Unclean Hands

Johnson objects. Defense 8 should not be presented to the jury. See Plaintiff's Position re: Disputed Jury Instruction No. 52.

**Non-affirmative defense** – safe harbor under Cal. Civ. Code § 1785.25(g)

Johnson objects to presentation of this defense at trial. This is, in fact, an affirmative defense and has been waived and forfeited. *See* Plaintiff's Position re: Disputed Jury Instruction No. 43.

(b)    The elements required to establish Defendant's affirmative defenses are:

**Defense 1:**

Plaintiff knew of the alleged FCRA violation before September 19, 2020.

**Defense 2:**

Plaintiff knew or should have known of an alleged CCRAA violation before September 19, 2020.

24

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

**Defense 3:**

1.  Plaintiff failed to use reasonable efforts to mitigate damages; and

2.  The amount by which damages would have been mitigated.

**Defense 4:**

1.  Both parties were mistaken about Plaintiff's intent and amount required to effectuate payment; and

2.  Chase would not have agreed to enter into the payoff agreement if it had known about the mistake.

**Defense 5:**

1.  The same party has taken two positions;

2.  The positions were taken in judicial or quasi-judicial administrative proceedings;

3.  The party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true);

4.  The two positions are totally inconsistent; and

5.  The first position was not taken as a result of ignorance, fraud, or mistake.

**Defense 6:**

1.  That Plaintiff knew Chase has obligations under the FCRA and CCRAA; and

2.  That Plaintiff freely and knowingly gave up his right to have Chase's liability under these laws decided.

**Defense 7:**

1.  Delay in asserting a right or a claim;

2.  The delay was not reasonable or excusable; and

3.  Prejudice to the party asserting the laches defense.

**Defense 8:**

Whether the particular misconduct is a bar to the alleged claim for relief

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

depends on (1) the nature of the misconduct, and (2) the relationship of the misconduct to the claimed injuries.

**Non-affirmative defense**

Chase may overcome liability for a violation of Section 1785.25(a) if Chase proves by a preponderance of the evidence that at the time of the failure to comply with Section 1785.25(a), it maintained reasonable procedures to comply with this provision.

(c)     The Key Evidence Chase Relies on for Each defense

Johnson objects that Chase's description of the "key evidence" for each defense is vague, conclusory, and argumentative. Chase identifies no actual evidence, only factual contentions. That prejudices Johnson by making it impossible to assess what proof Chase actually intends to offer, prepare focused objections and rebuttal, and narrow the issues for trial.

**Defense 1:**

Equifax notified Plaintiff on or about September 11, 2020 about the results of the dispute investigations by Chase and Equifax.

**Defense 2:**

Chase stopped monthly furnishing on Plaintiff's account in July 2018

Plaintiff was aware of the alleged inaccurate reporting by Chase as of at least August 24, 2020 when he disputed the reporting with Equifax

**Defense 3:**

Element 1 – Plaintiff failed to monitor his account despite available access to statements, failed to monitor email, phone, and letter communications from Chase regarding the status of his account, delayed paying off the account by over two years, thereby retaining an unpaid charge off notation on his credit instead of a paid charge off, delayed by over two years in disputing the reporting on the account, made inaccurate and confusing claims in the dispute he ultimately submitted (including

26

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

that the account was subject to account takeover and fraudulent transactions, that there were no communications from Chase, that Chase did not make statements available; and that he saw a $0 balance when he logged into his online account)

Element 2 – Had Plaintiff properly monitored his account, made timely payments, followed-up on Chase's communications, and cured the delinquency immediately upon discovery, he would not have incurred any of the damages he alleges.

**Defense 4:**

Both elements of this defense with respect to an alleged payoff by Plaintiff of the full account balance on September 6, 2017 were found to exist by the arbitrator in the prior arbitration action, wherein the arbitrator found that Plaintiff was mistaken in his belief that his payment was sufficient to cover the full balance on the account, and Chase was mistaken in believing that Plaintiff was attempting to make a minimum payment only.

**Defense 5:**

Elements 1-4 – Plaintiff is taking the position in this proceeding that the findings of the arbitrator were not binding on him, whereas the premise of the prior arbitration proceeding that he initiated was that the findings of the arbitrator would be binding on the parties

Element 5 – Plaintiff was aware that the outcome of the arbitration is binding.

**Defense 6:**

Elements 1-2 – In the arbitration proceeding Plaintiff knowingly withdrew a claim for violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)

**Defense 7:**

Elements 1-3 – Plaintiff's four-year delay between discovering allegedly inaccurate reporting to his credit and filing this action prejudiced Chase because many records relevant to Chase's defense are no longer available

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

**Defense 8:**

Element 1 – the Equifax Dispute was not submitted in good faith because Plaintiff (i) received the emails, (ii) acknowledged (in the Chase October 2020 calls and during the arbitration hearing) that Chase called him, (iii) he admitted he forgot the Ink Business online account and/or he was logging into the wrong account (the online account he used for his personal account) when seeking account information for the Ink Business card

Element 2 – The untruthful allegations in Plaintiff's dispute tainted the investigation of the dispute the reasonableness of which he now challenges

**Non-affirmative defense**

To the extent that factually accurate information furnished by Chase regarding Plaintiff's admitted failure to make a payment can be deemed inaccurate due to Plaintiff's nonreceipt of account statements, Chase's policies and procedure was to make payments available to all customers.

**8.**    REMAINING TRIABLE ISSUES

In view of the admitted facts and the elements required to establish the claims and affirmative defenses, the following issues remain to be tried:

The remaining triable issues according to Chase include whether Chase furnished any inaccurate information to any consumer reporting agency and if it did whether it knew or should have known the information was inaccurate, whether Chase received notice of a dispute alleging an actionable inaccuracy from a consumer reporting agency, whether Chase failed to conduct a reasonable investigation of the allegedly inaccurate information, whether Chase violated the CCRAA or FCRA negligently, willfully, or at all, whether any legal or affirmative defenses negate liability, and whether Plaintiff suffered any recoverable harm.

Johnson disagrees with Chase in a number of respects. First, limiting liability to "inaccurate" information is too narrow. It should be inaccurate, incomplete, or

28

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

cannot be verified. Second, the term "actionable inaccuracy" is undefined and not an element of the claim. *See* generally sections 7(b)(i) and 7(b)(vi) above.

**9.**    DISCOVERY

All discovery is complete.

**10.**    DISCLOSURES AND EXHIBIT LIST

All disclosures under Fed. R. Civ. P. 26(a)(3) have been made.

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1 ("Joint Exhibit List").  In view of the volume of exhibits marked by each party, the parties have incorporated in the attached "Joint Exhibit List" all agreements regarding admitted exhibits, and all objections, including the grounds therefor.

**11.**    WITNESS LISTS

Witness lists of the parties have been filed with the Court on March 20, 2026.

Only the witnesses identified on the lists will be permitted to testify (other than solely for impeachment). Johnson maintains his objection to Rob Wilkins testifying at trial. *See* Plaintiff's Motion in Limine No. 1.

**12.**    MOTIONS IN LIMINE AND LAW AND MOTION MATTERS

Motions *in limine* or law and motion matters were filed with the Court on March 20, 2026 and March 21, 2026. The parties have met and conferred on the motions *in limine*.

The following motions *in limine*, and no others, are pending or contemplated:

Johnson's Motion in Limine No. 1 – To Exclude Testimony of Rob Wilkins

Johnson's Motion in Limine No. 2 – To Exclude Evidence and Argument Regarding Statement Availability and Payment Notice

Johnson's Motion in Limine No. 3 – To Exclude Executive Office Investigation Evidence

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

Johnson's Motion in Limine No. 4 – To Exclude 6-8-21 and 7-15-21 Arbitration Recordings

Johnson's Motion in Limine No. 5 – To Exclude Deposition of Thomas Tarter

Chase's Motion in Limine No. 1 – To Exclude Speculative Evidence of Damages

Chase's Motion in Limine No. 2 – To Exclude Medical Records and Unsupported Causation Opinions Attributed to Same

Chase's Motion in Limine No. 3 – To Exclude Opinions and Testimony of Thomas Tarter on the Same Grounds as Pending Daubert Motion

Chase's Motion in Limine No. 4 – To Exclude Reference to Past Settlement Discussions

Chase's Motion in Limine No. 5 – To Exclude 2018 Audio Recordings

Chase's Motion in Limine No. 6 – To Exclude (Other Than for Purposes of Impeachment) Arbitration Materials From Being Offered as Substantive Evidence at Trial

Chase's Motion in Limine No. 7 – To Exclude Argument and Evidence re: Contract Claims

Chase's Motion in Limine No. 8 – To Exclude Evidence of Alleged Dispute Not Submitted Through Consumer Reporting Agencies

Chase's Motion in Limine No. 9 – To Exclude Argument and Evidence Re: Failure to Notify of Dispute

Chase's Motion in Limine No. 10 – To Exclude Evidence of Direct and CFPB Disputes

Chase's Motion in Limine No. 11 – To Exclude Evidence Related to Time-Barred Claims

Chase's Motion in Limine No. 12 – to Exclude Evidence Re: Violations of California Law Prior to Move to California

30

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

The parties advise the Court that the following law and motion matters may arise during trial:

Chase anticipates moving for non-suit pursuant to Fed. R. Civ. Pro. 50.

Johnson anticipates moving under Fed. R. Civ. P. 50(a), and if necessary, Fed. R. Civ. P.50(b), on any claim, defense, or issue for which the evidence warrants judgment as a matter of law.

**13.**   BIFURCATION

Chase notes that, to the extent that Plaintiff seeks punitive damages, the imposition of those damages would not be made by the jury. Punitive damages may only be awarded in an amount that the Court may allow. Thus, to the extent this may be construed as a request for bifurcation of issues, then Chase seeks bifurcation since any determination of punitive damage issues should be decided by the Court, not the jury. Similarly, Chase believes that its affirmative defenses of estoppel and unclean hands may be equitable defenses that are to be determined by the Court. Although Chase does not believe this requires a bifurcation of the trial, should the Court rule otherwise, then Chase requests bifurcation of these defenses. Chase will seek clarification of these issues with the Court at the Pretrial Conference.

Johnson objects regarding the request that punitive damages be decided by the Court. For the reasons explained in his Plaintiff's Position to Disputed Jury Instruction Nos. 41 and 42, punitive damages are for the jury to decide. Johnson also objects to bifurcation. Chase has not attempted to make the required showing that bifurcation would serve one of the enumerated grounds in Rule 42(b). Johnson also objects regarding estoppel and unclean hands. *See* Section 7. Johnson also objects with respect to the affirmative defenses of estoppel and unclean hands for the reasons stated above in Section 7.

31

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

**14.    ADMISSIONS**

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pre-Trial Order shall supersede the pleadings, and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

**IT IS SO ORDERED.**

DATED:                                          _____

                                          HONORABLE ANDRÉ BIROTTE JR.

                                          UNITED STATES DISTRICT COURT JUDGE

Approved as to form and content:

DATED: April 14, 2026                    Joshua Johnson

                                          /s/ Joshua Johnson

32

**PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

# EXHIBIT A

**DYKEMA GOSSETT** LLP
ASHLEY R. FICKEL, State Bar No. 237111
  *AFickel@dykema.com*
ROBERT A. HYATT, State Bar No. 166178
  *RHyatt@dykema.com*
444 South Flower, Suite 2200
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JOSHUA JOHNSON,<br><br>        Plaintiff,<br><br>    v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>        Defendant. | Case No. 2:22-cv-06718-AB-MAAx<br><br>The Hon. André Birotte Jr.<br>Courtroom 7B<br><br>Magistrate Maria A. Audero<br>Courtroom: 690<br><br>**DEFENDANT JPMORGAN CHASE BANK, N.A.'S AMENDED RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSION, SET ONE**<br><br>Complaint Filed: September 19, 2022 |

PROPOUNDING PARTY:      Plaintiff, JOSHUA JOHNSON

RESPONDING PARTY:      Defendant, JPMORGAN CHASE BANK, N.A.

SET NO.:      ONE

## PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 36(a)(4), Defendant JPMORGAN CHASE BANK, N.A. ("CHASE") submits the following amended responses and objections to Plaintiff JOSHUA JOHNSON'S ("Plaintiff") Request for Admission, Set One:

The following responses have been prepared prior to the completion of Chase's investigation, discovery, and preparation for trial in this action. The

responses are based solely on information, facts, and documents available and known to Chase as of the date of these responses. Investigation and discovery are continuing, and Chase reserves the right to amend, modify, or supplement its responses at any time prior to the trial of this action. Chase also reserves its right to rely upon or introduce into evidence any additional information, facts, or documents not contained in these responses.

These responses are made in a good faith effort to supply as much information as is presently known, but shall in no way lead to the prejudice of Chase in relation to further discovery, research, or analysis. Chase's responses to the Requests for Admission are for the purpose of discovery only, and are not an admission that any answer, fact, or document is relevant or admissible into evidence. Chase reserves the right to object to the relevance and admissibility of any answer, fact, or document and the truth or accuracy of any purported facts or characterizations contained in the Requests for Production themselves.

## OBJECTIONS TO DEFINITIONS

1.     The Definition of "Document" exceeds the scope of Fed. R. Civ. P. 34. Chase will apply the definition consistently with the scope of the rule and applicable law governing possession, custody, and control of materials sought in discovery.

2.     To the extent that "Document" is construed to include data from sources that are not "reasonably accessible" as defined by Fed. R. Civ. P. 26(b)(2)(B), Chase objects to such sources as being outside the scope of civil discovery.

3.     Chase objects to the definition of the term "Concerning" as vague, overly broad, and unduly burdensome, particularly where it is based on the terms "reflecting," "constituting," "evidencing," or "supporting" and therefore describes an indefinite class of documents. Chase will apply "Concerning" to mean materials that explicitly discuss or are reasonably identifiable by Chase with the subject matter of a request.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

2

**GENERAL OBJECTIONS**

The following general objections apply to, and are asserted with respect to, each of the Requests for Admission:

1.      The Requests for Admission seek documents outside the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1) and 36(a)(1).

2.      The Requests for Admission, including any purported instructions and definitions, impose obligations inconsistent with Fed. R. Civ. P. 26(b)(1).

3.      The Requests for Admission seek discovery of information protected against disclosure by the attorney-client privilege or attorney work-product doctrine. Fed. R. Civ. P. 26(b)(3)(A) and 26(b)(5).

4.      The Requests for Admission seek information unreasonably duplicative of information already in possession of Plaintiff.

5.      The Requests for Admission seek information obtainable from another source that is more convenient, less burdensome, or less expensive.

6.      The requests seek information that is confidential and/or proprietary and the parties need to meet and confer with respect to an appropriate protective order.

These general objections applies to each and every one of Plaintiff's Requests for Admission, Set One.

**RESPONSES TO REQUESTS FOR ADMISSION**

**REQUEST FOR ADMISSION NO. 1:**

Admit that when it investigated the DISPUTE, JPMorgan Chase Bank, N.A. did not consider whether reporting Plaintiff's Chase Ink credit card account as delinquent prior to September 2020 to CREDIT REPORTING AGENCIES created a misleading impression of Plaintiff's creditworthiness.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Denied as untrue. Chase does not "report" information to the CREDIT REPORTING AGENCIES. Chase objects to this request because Chase does not

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

3

have information or knowledge regarding how the information it furnishes to the CREDIT REPORTING AGENCIES was or is interpreted by others.

**REQUEST FOR ADMISSION NO. 2:**

Admit that when it investigated the DISPUTE, JPMorgan Chase Bank, N.A. did not consider whether reporting Plaintiff's Chase Ink credit card account as a charge-off to CREDIT REPORTING AGENCIES created a misleading impression of Plaintiff's creditworthiness.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Denied as untrue. Chase does not "report" information to the CREDIT REPORTING AGENCIES. Chase objects to this request because Chase does not have information or knowledge regarding how the information it furnishes to the CREDIT REPORTING AGENCIES was or is interpreted by others.

**REQUEST FOR ADMISSION NO. 3:**

Admit that JPMorgan Chase Bank, N.A.'s reporting of Plaintiff's Chase Ink credit card account to CREDIT REPORTING AGENCIES as delinquent would reasonably be expected to adversely affect credit decisions made concerning Plaintiff.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Denied as untrue. Chase does not "report" information to the CREDIT REPORTING AGENCIES. Chase objects to this request because Chase does not have information or knowledge regarding how the information it furnishes to the CREDIT REPORTING AGENCIES regarding the DISPUTE impacted credit decisions concerning Plaintiff.

**REQUEST FOR ADMISSION NO. 4:**

Admit that JPMorgan Chase Bank, N.A.'s reporting of Plaintiff's Chase Ink credit card account to CREDIT REPORTING AGENCIES as a charge-off would reasonably be expected to adversely affect credit decisions made concerning Plaintiff.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

4

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Denied as untrue.  Chase does not "report" information to the CREDIT REPORTING AGENCIES.  Chase objects to this request because Chase does not have information or knowledge regarding how the information it furnishes to the CREDIT REPORTING AGENCIES regarding the DISPUTE impacted credit decisions concerning Plaintiff.

**REQUEST FOR ADMISSION NO. 5:**

Admit that JPMorgan Chase Bank, N.A. is a furnisher of information to consumer reporting agencies for purposes of 15 U.S.C. § 1681s–2.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Admitted.

**REQUEST FOR ADMISSION NO. 6:**

Admit that in September 2017, Plaintiff contacted JPMorgan Chase Bank, N.A. to pay off the entire balance of his Chase Ink credit card account and terminate that account relationship with a $0 balance.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Denied as untrue.  As established in the Arbitration, a Chase representative contacted Plaintiff by telephone on September 6, 2017 regarding Plaintiff's Ink credit card account and the Arbitration Award contained a finding that Plaintiff acknowledges he owed $238.52 as of September 6, 2017 which remains unpaid.

**REQUEST FOR ADMISSION NO. 7:**

Admit that JPMorgan Chase Bank, N.A. never provided Plaintiff with a statement with the due date of the alleged amounts overdue on Plaintiff's Chase Ink credit card account prior to October 2020.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Denied as untrue.  Chase refers Plaintiff to the March 3, 2022 Arbitration Award entered in Case No. 01-2-0015-1734 before the American Arbitration Association (the "Arbitration"), which included a finding that "Chase presented

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

5

evidence that such [Chase Ink] statements were available on the Ink account access website. So, there was no showing of failure on the part of Chase to provide access to statements…"

**REQUEST FOR ADMISSION NO. 8:**

Admit that Plaintiff believed that he had paid off the entire balance on his Chase Ink credit card account before closing his account.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Chase objects to this request because it has no basis to admit or deny what Plaintiff believed. To the extent a response is required, denied as untrue.

**REQUEST FOR ADMISSION NO. 9:**

Admit that upon completion of its investigation of the DISPUTE, JPMorgan Chase Bank, N.A. was aware that Plaintiff claimed that in September 2017,

Plaintiff contacted JPMorgan Chase Bank, N.A. to pay off the entire balance of his Chase Ink credit card account and terminate that account relationship with a $0 Balance.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Denied as untrue.  As established in the Arbitration, a Chase representative contacted Plaintiff by telephone on September 6, 2017 regarding Plaintiff's Ink credit card account and the Arbitration Award contained a finding that Plaintiff acknowledges he owed $238.52 as of September 6, 2017 which remains unpaid.

**REQUEST FOR ADMISSION NO. 10:**

Admit that upon completion of its investigation of the DISPUTE, JPMorgan Chase Bank, N.A. was aware that Plaintiff claimed that JPMorgan Chase Bank, N.A. never provided Plaintiff with a statement with the due date of the alleged amounts overdue on Plaintiff's Chase Ink credit card account.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Chase admits only that in the DISPUTE, Plaintiff claimed that "Chase never sent a paper bill, never called, never emailed, or otherwise attempted to make

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

6

[Plaintiff] aware in any way that the account carried a balance while the account was open.  I regularly logged into my Chase account online and observed a $0 balance." Chase otherwise objects to this request on the grounds that Plaintiff previously raised this issue before Arbitrator Holton in the Arbitration and Plaintiff should therefore be estopped from pursuing discovery into these issues in this action. Following extensive document discovery, four days of evidentiary hearings, numerous conference calls with the Arbitrator, volumes of evidence, and at least ten legal briefs, the Arbitration Award contained the Arbitrator's finding that Plaintiff failed to carry his burden of proof and finding that "there was no showing of failure on the part of Chase to provide access to statements and promised tech support."

**REQUEST FOR ADMISSION NO. 11:**

Admit that upon completion of its investigation of the DISPUTE, JPMorgan Chase Bank, N.A. was aware that Plaintiff claimed that he was not aware of JPMorgan Chase Bank, N.A.'s failure to terminate Plaintiff's Chase Ink credit card account with a $0 balance because he was unable to access his account online or view billing statements.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Chase admits only that Plaintiff claimed in the DISPUTE that he "regularly logged into [his] Chase account online and observed a $0 balance," and as such, Chase was aware of that claim.  Chase otherwise objects to this request and any discovery in this proceeding on this topic for the reason that Plaintiff is estopped by the findings made by the Arbitrator in the Arbitration Award.  To the extent a response is required, it is denied.

**REQUEST FOR ADMISSION NO. 12:**

Admit that upon completion of its investigation of the DISPUTE, JPMorgan Chase Bank, N.A. was aware that Plaintiff claimed that he was not able to verify the allegedly overdue amount he owed on his Chase Ink credit card account because he was unable to access his account online or view billing statements.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

7

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Chase admits only that in the DISPUTE, Plaintiff claimed that "Chase never sent a paper bill, never called, never emailed, or otherwise attempted to make [Plaintiff] aware in any way that the account carried a balance while the account was open. I regularly logged into my Chase account online and observed a $0 balance." Chase otherwise objects to this request and any discovery in this proceeding on this topic for the reason that Plaintiff is estopped by the findings made by the Arbitrator in the Arbitration Award.

**REQUEST FOR ADMISSION NO. 13:**

Admit that upon completion of its investigation of the DISPUTE, JPMorgan Chase Bank, N.A. was aware that Plaintiff claimed that he believed he had paid off the entire balance on his Chase Ink credit card account before closing his account.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Denied as untrue. As established in the Arbitration, a Chase representative contacted Plaintiff by telephone on September 6, 2017 regarding Plaintiff's Ink credit card account and the Arbitration Award contained a finding that Plaintiff acknowledges he owed $238.52 as of September 6, 2017 which remains unpaid

**REQUEST FOR ADMISSION NO. 14:**

Admit that, aside from Plaintiff's Chase Ink credit card account, Plaintiff held four other credit card accounts with JPMorgan Chase Bank, N.A. between 2009 and 2020.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Admitted.

**REQUEST FOR ADMISSION NO. 15:**

Admit that, aside from Plaintiff's Chase Ink credit card account, the four other credit card accounts Plaintiff held with JPMorgan Chase Bank, N.A. between 2009 and 2020 were never reported as delinquent to any CREDIT REPORTING AGENCY.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

8

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Chase objects that this request is irrelevant, overbroad, unduly burdensome, and unlikely to lead to the discovery of admissible evidence as it is wholly unrelated to Plaintiff's Ink credit card account, which is the only account at issue.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Chase objects that this request is irrelevant, overbroad, unduly burdensome, and unlikely to lead to the discovery of admissible evidence as it is wholly unrelated to Plaintiff's Ink credit card account, which is the only account at issue.

Without waiving the foregoing objections, Chase admits this request.

**REQUEST FOR ADMISSION NO. 16:**

Admit that a notation was placed on Plaintiff's Chase Ink credit card account on September 6, 2017, indicating that Plaintiff complained that he had not been receiving billing statements from JPMorgan Chase Bank, N.A. with respect to his Chase Ink credit card account.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Chase objects to this request as vague and ambiguous, as the term "notation" is not defined and subject to multiple interpretations. Chase objects to this request on the basis that Plaintiff claimed in the DISPUTE that he had not been receiving billing statements and, as such, Chase was aware of that claim. Chase further objects to this request and any discovery in this proceeding on this topic for the reason that Plaintiff is estopped by the findings made by the Arbitrator in the Arbitration Award. To the extent a response is required, it is denied.

**REQUEST FOR ADMISSION NO. 17:**

Admit that when JPMorgan Chase Bank, N.A. investigated the DISPUTE, there was a notation on Plaintiff's Chase Ink credit card account indicating that on September 6, 2017, Plaintiff complained that he had not been receiving billing statements from JPMorgan Chase Bank, N.A. with respect to his Chase Ink credit card account.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

9

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Chase objects to this request as vague and ambiguous, as the term "notation" is not defined and subject to multiple interpretations.  Denied as untrue.

DATED:  July 26, 2023          DYKEMA GOSSETT LLP

By: _____
ASHLEY R. FICKEL
ROBERT A. HYATT
Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

10

**PROOF OF SERVICE**
*Joshua Johnson vs. JPMorgan Chase Bank, N.A.*
*USDC, Central District, Case No. 2:22-cv-06718-RSWL-MAA*

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 444 South Flower Street, Suite 2200, Los Angeles, California 90071.

On July 26, 2023, I served the foregoing document(s) described as:

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSION, SET ONE**

on the interested parties in this action as follows:

| | |
|---|---|
| L. David Russell, Esq.<br>RUSSELL LAW, PC<br>1500 Rosecrans Avenue, Suite 500<br>Manhattan Beach, CA 90266<br>Telephone:  (323) 638-7551<br>Facsimile:  (323) 760-7468<br>E-mail:      david@russelllawpc.com | ***Attorneys for Plaintiff***<br>***JOSHUA JOHNSON*** |

☒ **(BY ELECTRONIC SERVICE)**, I caused a copy of the documents to be sent from nleali@dykema.com to the persons at the email addresses listed in the service list.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ (Federal) I declare that I employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on July 26, 2023  at Los Angeles, California.

_____
Nanette Leali

008241.002262  4876-4139-7874.1

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

11

DEFENDANT JPMORGAN CHASE BANK, N.A.'S AMENDED RESPONSES TO PLAINTIFFS' REQUESTS FOR ADMISSION, SET ONE

# EXHIBIT B

**RUSSELL LAW, PC**
L. David Russell (Cal. Bar No. 260043)
david@russelllawpc.com
1500 Rosecrans Ave, Suite 500
Manhattan Beach, California 90266
Telephone: (323) 638-7551
Fax: (323) 760-7458

*Attorneys for Plaintiff Joshua Johnson*

**DYKEMA GOSSETT LLP**
ASHLEY R. FICKEL (Cal. Bar No. 237111)
AFickel@dykema.com
ROBERT A. HYATT (Cal. Bar No. 166178)
RHyatt@dykema.com
333 South Grand Avenue, Suite 2100
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850
*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSHUA JOHNSON, | No.: 2:22-cv-06718-RSWL-MAA |
| Plaintiff, | District Judge: Hon. André Birotte Jr. Magistrate Judge: Maria A. Audero |
| v. | **JOINT STIPULATION RE EMPLOYEES WITH INFORMATION RE 2020 INVESTIGATION** |
| JPMORGAN CHASE BANK, N.A., | |
| Defendant. | Action Filed:    Sept. 19, 2022 Trial Date:   March 12, 2024 |

1

JOINT STIPULATION

It is hereby Stipulated by and between the parties, Plaintiff Joshua Johnson ("Plaintiff") and Defendant JPMorgan Chase Bank, N.A. ("Defendant"), through their respective attorneys of record, as follows:

WHEREAS, Plaintiff served interrogatories and requests for production on Defendant requesting information regarding Defendant's employees (former and current) that investigated Plaintiff's notice of dispute submitted to Equifax on or about August 25, 2020 related to the accuracy of information Defendant submitted to Equifax, which Defendant received shortly thereafter (the "2020 Investigation");

WHEREAS, Defendant objected to providing that information, leading to meet-and-confer discussions among counsel and the presentation of the issue to Magistrate Judge Audero at IDC #1; and

WHEREAS, during meet-and confer discussions, Defendant represented that, after looking into the issue, it discovered that there were no current employees with any personal and first-hand recollection of the 2020 Investigation and that Chase did not plan on presenting testimony from any employees (current or former) involved in the 2020 Investigation in this case.

THEREFORE, Plaintiff and Defendant agree and stipulate that:

1.     None of Chase's current employees have any recollection of the 2020 Investigation.[1]

---

[1] Plaintiff still reserves the right to take the deposition of Chase employees, including Carla Wills, a current Chase employee whom Plaintiff believes may have been involved in the 2020 Investigation or may otherwise have discoverable information related to that investigation.

1

JOINT STIPULATION

2.    Chase is unaware of any employees who have any recollection of the 2020 Investigation.

3.    Chase will not present testimony from any employees (current or former) involved in the 2020 Investigation in any way, with the one exception that if Plaintiff calls a former employee as a trial witness, then Chase reserves their right to use that witness' testimony.

4.    Chase will provide a corporate representative as to Chase's business records concerning the 2020 Investigation.

**IT IS SO STIPULATED AND AGREED.**

DATED: July __ 2023

**RUSSELL LAW, PC**

*Attorneys for Plaintiff Joshua Johnson*

DATED: August 9, 2023

**DYKEMA GOSSETT LLP**

*Attorneys for Defendant JPMorgan Chase Bank, N.A*

# EXHIBIT C

**RUSSELL LAW, PC**
L. David Russell (Cal. Bar No. 260043)
david@russelllawpc.com
1500 Rosecrans Ave, Suite 500
Manhattan Beach, California 90266
Telephone: (323) 638-7551
Fax: (323) 760-7458

*Attorneys for Plaintiff Joshua Johnson*

**DYKEMA GOSSETT LLP**
ASHLEY R. FICKEL (Cal. Bar No. 237111)
AFickel@dykema.com
ROBERT A. HYATT (Cal. Bar No. 166178)
RHyatt@dykema.com
333 South Grand Avenue, Suite 2100
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850
*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>Defendant. | No.: 2:22-cv-06718-RSWL-MAA<br><br>District Judge: Hon. André Birotte Jr.<br>Magistrate Judge: Maria A. Audero<br><br>**JOINT STIPULATION RE FINANCIAL CONDITION EVIDENCE**<br><br>Action Filed:  Sept. 19, 2022<br>Trial Date:  March 12, 2024 |

1

JOINT STIPULATION

It is hereby Stipulated by and between the parties, Plaintiff Joshua Johnson ("Plaintiff") and Defendant JPMorgan Chase Bank, N.A. ("Defendant"), through their respective attorneys of record, as follows:

WHEREAS, Plaintiff served interrogatories and requests for production on Defendant requesting information regarding Defendant's financial condition;

WHEREAS, Defendant objected to providing that information, leading to meet-and-confer discussions among counsel and the presentation of the issue to Magistrate Judge Audero at IDC #1;

WHEREAS, Defendant represented that all information regarding the Defendant's financial condition was available in JPMorgan Chase & Co.'s 10-K and 10-Q filings under the sections titled "Community and Consumer Banking"; and

WHEREAS, these filings are available to the public on the U.S. Securities and Exchange Commission's ("SEC's") website,

THEREFORE, Plaintiff and Defendant agree and stipulate that:

1.    JPMorgan Chase & Co.'s 10-K filings for the years ending (a) December 31, 2018, (b) December 31, 2019, (c) December 31, 2020, (d) December 31, 2021, and (e) December 31, 2022, which are available on the SEC's website, are authentic and genuine.

2.    JPMorgan Chase & Co.'s 10-Q filings for the periods ending (a) June 30, 2020, (b) September 30, 2020, (c) March 31, 2021, (d) June 30, 2021,

(e) September 30, 2021, (f) March 31, 2022, (g) June 30, 2022, (h) September 30, 2022, and (i) March 31, 2022, which are available on the SEC's website, are authentic and genuine.

3.      The sections of JPMorgan Chase & Co.'s 10-K filings for the years ending (a) December 31, 2018, (b) December 31, 2019, (c) December 31, 2020, (d) December 31, 2021, and (e) December 31, 2022 titled "Consumer & Community Banking" reflect statements made by Defendant which accurately represent Defendant's financial condition across all of its lines of business, including Card Services, at the time they were prepared.

4.      The sections of JPMorgan Chase & Co.'s 10-Q filings for the periods ending (a) June 30, 2020, (b) September 30, 2020, (c) March 31, 2021, (d) June 30, 2021, (e) September 30, 2021, (f) March 31, 2022, (g) June 30, 2022, (h) September 30, 2022, and (i) March 31, 2022 titled "Consumer & Community Banking" reflect statements made by Defendant which accurately represent Defendant's financial condition across all of its lines of business, including Card Services, at the time they were prepared.

5.      The parties agree that they will meet and confer as needed before trial to update the stipulation to include future filings.

**IT IS SO STIPULATED AND AGREED.**

DATED: July __, 2023

**RUSSELL LAW, PC**

*Attorneys for Plaintiff Joshua Johnson*

2
JOINT STIPULATION

DATED:   August 9, 2023

**DYKEMA GOSSETT LLP**

*Attorneys for Defendant JPMorgan Chase Bank,*
N.A

---

3

JOINT STIPULATION