TOMIO B. NARITA (SBN 156576)
Tomio.Narita@wbd-us.com
ALISA A. GIVENTAL (SBN 273551)
Alisa.Givental@wbd-us.com
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone: (415) 433-1900
Facsimile: (415) 433-5530

ABIRAMI GNANADESIGAN (SNB 263375)
AGnanadesigan@dykema.com
DYKEMA GOSSETT LLP
444 South Flower Street, Suite 2200
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

Attorneys for JPMorgan Chase Bank, N.A.

**Joshua Johnson**
1373 Caminito Halago
La Jolla, CA 92037
(336) 423-2594
josh@jj88.org
IN PRO PER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA JOHNSON,<br><br>    PLAINTIFF,<br><br>    V.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>    DEFENDANT. | Case No. 2:22-cv-06718-AB-MAAx<br><br>**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**<br><br>Trial Date: August 3, 2026<br><br>Final Pre-Trial Conference: July 17, 2026<br><br>Judge: Hon. André Birotte Jr. |

Plaintiff Joshua Johnson ("Johnson") and defendant JPMorgan Chase Bank, N.A. ("Chase") jointly submit this Proposed Final Pretrial Conference Order.

1

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

TABLE OF CONTENTS

1.   THE PARTIES AND PLEADINGS ........................................................3

2.   JURISDICTION .................................................................................3

3.   TRIAL DURATION ............................................................................3

4.   JURY TRIAL......................................................................................3

5.   ADMITTED FACTS ...........................................................................4

6.   STIPULATED FACTS .......................................................................13

7.   PARTIES' CLAIMS AND DEFENSES................................................14

8.   REMAINING TRIABLE ISSUES .......................................................27

9.   DISCOVERY ....................................................................................28

10.  DISCLOSURES AND EXHIBIT LIST................................................28

11.  WITNESS LISTS ...............................................................................28

12.  MOTIONS IN LIMINE AND LAW AND MOTION
     MATTERS .......................................................................................28

13.  BIFURCATION.................................................................................30

14.  ADMISSIONS...................................................................................30

JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER

Following pre-trial proceedings, pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16, IT IS ORDERED:

## 1.   THE PARTIES AND PLEADINGS

The parties are plaintiff Joshua Johnson and defendant JPMorgan Chase Bank, N.A.

In the Complaint, Dkt. No. 1, Johnson has pleaded two claims against Chase: (1) that Chase violated section 1681s-2(b) of the Fair Credit Reporting Act ("FCRA"), and (2) that Chase violated section 1785.25(a) of the California Consumer Credit Reporting Agencies Act ("CCRAA"). Chase has answered the Complaint and denies the allegations. Dkt. No. 11.

No claims have been dismissed or abandoned.

## 2.   JURISDICTION

Johnson asserts that subject matter jurisdiction over this action exists under 28 U.S.C.1331, 15 U.S.C. § 1681s-2(b), and, 28 U.S.C. § 1367(a), and venue is proper in this District and this Division pursuant to 28 U.S.C. § 1391(b)(2).

## 3.   TRIAL DURATION

The trial is estimated to take 3 days.

## 4.   JURY TRIAL

The trial is to be a jury trial. In addition to this Joint Proposed Final Pretrial Conference Order, no later than June 5, 2026, Johnson and Chase shall serve and file:

- Motions in Limine and Oppositions to Motions in Limine
- Memoranda of Contentions of Fact and Law
- Witness Lists
- Joint Exhibit List
- Joint Status Report Regarding Settlement
- Amended Joint Proposed Jury Instructions
- Disputed Proposed Jury Instructions

3

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

- Joint/Disputed Proposed Verdict Forms
- Joint Proposed Statement of the Case
- Proposed Additional Voir Dire Questions

**5. ADMITTED FACTS**

The Parties agree that the following facts are admitted and require no proof:

1. Chase is a national banking association, with its main office located in Columbus, Ohio. Chase regularly transacts business within the Central District of California.

2. On January 5, 2017, Johnson opened a Chase Ink credit card account ("Ink card").

3. On or about February 16, 2017, Johnson received an email from Chase stating: "Thanks for choosing to go paperless. This email confirms your change from US Mail to paperless delivery for these account(s):  J. JOHNSON...0789  This means we'll no longer mail your statements and some account notices. We'll post them online and email you a reminder when they're ready."

4. On February 27, 2017, Johnson received an email from Chase stating: "We're writing to let you know the statement for your credit card account ending in 0789 is now available online.  To see your statement or download it as a PDF, log on to www.Chase.com. You can also make a payment online or set up an Account Alert so you'll receive a reminder when your payment is due.  Note: The account above is enrolled in Paperless Statements, so you won't receive a paper statement in the mail."

5. On March 8, 2017, Johnson received an email from Chase stating: "For credit card account ending in 0789: Your credit card payment is due in 10 days. This Alert was sent according to your settings."

6. Johnson made purchases using the Ink credit card account from January 14, 2017 through July 6, 2017.

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

7. On September 6, 2017, Chase called Johnson to request payment on his Ink card.

8.  After the call, on September 6, 2017, Johnson received an email, which did not mention "Chase Ink" and stated "Account Ending in 0256 … We are writing to confirm the following electronic payments you authorized to your credit card account during our recent phone conversation. […] Payment Amount […]$111.49."

9.  On June 12, 2018, Johnson had a telephone call with Chase in which he stated that "This is the first time I've been made aware that I had multiple accounts to be honest."

10. Johnson has resided in Los Angeles County, California since March 2019.

11. On August 24, 2020, Johnson submitted an online dispute with Equifax regarding his Ink Account.

12. As part of the online dispute process, Johnson provided a narrative description of his dispute in a text box provided.

13. On or about August 25, 2020, Equifax provided notification of the dispute to Chase.

14. Chase submitted its response to Equifax on or about September 8, 2020, and updated the information reported to Equifax.

15. In approximately March 2022, Chase removed all adverse credit references regarding Johnson arising out of the Ink Account.

16. Chase is a furnisher of information to consumer reporting agencies for purposes of 15 U.S.C. § 1681s-2.

17. Aside from the Ink Account, between 2009 and 2020, Johnson held four other credit card accounts with Chase.

Johnson contends that his RFA No. 15, asking Chase to admit that "Aside from the Ink Account, the four other credit card accounts Plaintiff held with Chase between 2009 and 2020 were never reported as delinquent to any credit reporting

5

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

agency," is an admitted fact requiring no proof because Chase admitted the request. Chase <u>disputes</u> that this is an admitted fact requiring no proof because its admission was subject to Chase's objection that "this request is irrelevant, overbroad, unduly burdensome, and unlikely to lead to the discovery of admissible evidence as it is wholly unrelated to Plaintiff's Ink credit card account, which is the only account at issue."

The parties <u>dispute</u> whether facts identified as "Undisputed" in connection with Chase's Motion for Summary Judgment, Dkt. No. 77-1 are also admitted for purposes of trial.[1] Johnson contends, and Chase disputes, that the following facts are

[1] <u>Johnson's argument:</u>

On August 26, 2025, in support of its motion for summary judgment, Chase filed a reply brief containing responses to additional material facts contained in Johnson's statement of genuine disputes. Dkt. No. 77-1. For certain facts, it stated plainly, without qualification or reservation, that those facts were "Undisputed".

Despite being filed nearly a year ago, Chase has—even to date—never claimed that those responses were submitted in error or withdrawn them. If Chase intended to dispute those facts, it knew how to do so, as it did clearly for numerous facts in ¶¶ 41-44, 74, 77-78, 121, 123-124. And if Chase intended to leave those facts undisputed for purposes of its motion, it also knew how to do that because Johnson's response to Chase's purported facts expressly noted several facts as "Undisputed for purposes of this motion", as allowed by the Federal Rules. *Garcia v. Vill. Red Rest. Corp.*, No. 15 CIV. 6292 (RWL), 2018 WL 1166723 (S.D.N.Y. Feb. 15, 2018) ("[t]he notes to Rule 56(g) expressly acknowledge that Rule 56 maintains the non-moving party's ability to concede a fact for purposes of summary judgment only, leaving open the ability to contest it at trial") (emphasis added).

This Court may, and should, consider each of those facts judicial admissions. *See Siam Numhong Prods. Co. v. Eastimpex*, 866 F. Supp. 445, 450 (N.D. Cal. 1994) ("A judicial admission may be contained in a statement of undisputed facts, an answer, a bill of particulars or any other pleading, or it may be contained in testimony such as a deposition."); *Terry v. Wasatch Advantage Grp., LLC*, No. 2:15-CV-00799-KJM-DB, 2024 WL 3471297 (E.D. Cal. July 18, 2024) (regarding "the statements from the defendants' responses to plaintiffs' statement of undisputed facts at summary judgment" which "were affirmative responses — stating the facts were 'Undisputed,'" as judicial admissions).

<u>Chase's Response:</u>

Johnson contends that Chase's failure to dispute the 69 "additional material facts" he proffered in support of his opposition to Chase's MSJ should be deemed binding judicial admissions for purposes of trial. Rule 56 does not allow this. It states that

6

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

admitted and need no proof, based on Chase's Response to Johnson's Statement of Genuine Disputes ("RSGD") [Dkt. No. 77-1]:

1. On May 30, 2018, Johnson had a conversation via telephone with a Chase representative. RSGD ¶ 46.

2. During the call, Johnson told the representative that the balance wasn't the issue—he could pay it immediately—but he wanted the derogatory marks on his credit report removed first; he said he would pay the balance right away if the marks were removed. RSGD ¶ 47.

3. On May 21, 2018, Johnson had a conversation via telephone with a Chase representative. RSGD ¶ 48.

4. During the call, Johnson informed the representative that he had tried to cancel or close his account months, if not a year earlier, but believed the account was still open, and had received a collections notice from a third-

---

failure to properly address a fact means the court "**may** …consider the fact undisputed **for purposes of the motion**," FRCP 56(e)(2), not that it "must" do so for all purposes. *See DCR Mktg. Inc. v. U.S. Alliance Grp., Inc.*, No. SACV 19-1897 JVS(DFMx), 2022 WL 16895117, at *2 (C.D. Cal. Aug. 18, 2022) (recognizing the Court's limited power in this regard).

Indeed, the exclusive mechanism for converting summary judgment concessions into facts established for trial is Rule 56(g) – "[i]f the court does not grant all the relief requested by the motion," the Court "**may** enter an order stating any material fact — … [is] established in the case." (Emphasis added). But when the Court denied the relief sought by Chase in the MSJ, the Court did not opt to enter any such order. Rule 56 does not grant the Court power to retroactively do so now.

The Rule 56 Advisory Committee notes confirm that "if summary judgment is denied, a party who failed to make a proper Rule 56 response or reply **remains free to contest the fact in further proceedings**." Committee Notes on Rules—2010 Amendment, Subdivision (e)(2) (emphasis added). And even when the Court may consider a fact undisputed for purposes of the MSJ, it "may choose not to consider the fact as undisputed, particularly if the court knows of record materials that show grounds for genuine dispute." *Id.*

Outside the MSJ context, there are substantial grounds to contest the precision, characterization, and relevance of many of the facts Johnson seeks to have deemed admitted. If the Court is inclined to consider Johnson's request to deem the proposed facts judicially admitted, Chase requests the opportunity to substantively address each of those facts outside this footnote.

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

party. RSGD ¶ 49.

5.  In response to Johnson's request for the production of all technical manuals, industry guidelines, regulatory guidance, and agreements between Chase and any CRAs related to the interpretation of any communications concerning the Ink Account, Chase directed Johnson to a single document titled "Card Dispute Resolution Processing" (the "Dispute Manual"). RSGD ¶ 50.

6.  On September 8, 2020, Chase furnished information to Equifax regarding the Ink Account via the transmission of an ACDV response. RSGD ¶ 51.

7.  On September 8, 2020, Chase furnished to Equifax that the status of the Ink Account was "Account paid in full, was a charge-off". RSGD ¶ 52.

8.  On September 8, 2020, Chase furnished to Equifax that the Ink Account's original charge off amount was $499. RSGD ¶ 53.

9.  On September 8, 2020, Chase furnished to Equifax that the Ink Account had been delinquent in November 2017. RSGD ¶ 54.

10. On September 8, 2020, Chase furnished to Equifax that the Ink Account had been delinquent in December 2017. RSGD ¶ 55.

11. On September 8, 2020, Chase furnished to Equifax that the Ink Account had been delinquent in January 2018. RSGD ¶ 56.

12. On September 8, 2020, Chase furnished to Equifax that the Ink Account had been delinquent in February 2018. RSGD ¶ 57.

13. On September 8, 2020, Chase furnished to Equifax that the Ink Account had been delinquent in March 2018. RSGD ¶ 58.

14. On September 8, 2020, Chase furnished to Equifax that the Ink Account had been delinquent in April 2018. RSGD ¶ 59.

15. On September 8, 2020, Chase furnished to Equifax that the Ink Account had been delinquent in May 2018. RSGD ¶ 60.

16. On September 8, 2020, Chase furnished to Equifax a Compliance Condition Code of "XA" in connection with the Ink Account. RSGD ¶ 61.

8

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

17. The Dispute Manual defines a Compliance Condition Code of "XA" as "Voluntary Closure + Resolved FCBA Dispute". RSGD ¶ 62.

18. The Dispute Manual defines a Compliance Condition Code of "XE" as "Voluntary Closure + FCRA Dispute Resolved-Customer Disagrees with Action". RSGD ¶ 63.

19. The Dispute Manual defines a Compliance Condition Code of "XC" as "FCRA Dispute Resolved-Customer Disagrees with Action". RSGD ¶ 64.

20. Chase furnishes account information to the CRAs on a monthly basis. RSGD ¶ 65.

21. Chase furnished information to the CRAs monthly regarding the Ink Account. RSGD ¶ 66.

22. Chase is a "person" under Cal. Civ. Code § 1785.25(a). RSGD ¶ 66.

23. On June 12, 2018, Johnson had a conversation via telephone with a Chase representative regarding the Ink Account. RSGD ¶ 67.

24. During the call, the representative stated that there was a recording of the September 6, 2017 phone call. RSGD ¶ 68.

25. During the call, the representative stated that he listened to a recording of the September 6, 2017 phone call. RSGD ¶ 69.

26. During the call, the representative stated that Johnson had complained that he was not receiving billing statements for his Ink Account during the September 6, 2017 call. RSGD ¶ 70.

27. On October 14, 2020, Johnson received a response from Chase regarding his CFPB complaint. RSGD ¶ 72.

28. Between May 21, 2018 and June 12, 2018, Johnson had 10 phone calls with Chase representatives. RSGD ¶ 76.

29. On August 19, 2020, Johnson submitted a complaint concerning his Ink Account via the CFPB. RSGD ¶ 79.

30. In his CFPB complaint, Johnson reported that he paid the Ink Account in full,

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

stopped using it, and observed an unexpected $500 charge-off and derogatory credit marks, despite receiving no notice from Chase. RSGD ¶ 80.

31. On August 25, 2020, Johnson served Chase with a written notice of dispute and intent to arbitrate. RSGD ¶ 81.

32. In his notice of dispute and intent to arbitrate, Johnson reported that he paid the Ink Account in full, stopped using it, and observed an unexpected $500 charge-off and derogatory credit marks, despite receiving no notice from Chase. RSGD ¶ 82.

33. Chase understood that Johnson's dispute included an allegation that there was an incorrect balance on the Ink Account. RSGD ¶ 83.

34. The FCRA relevant information that Chase received on the ACDV did not suggest the complaint was about fraud. RSGD ¶ 84.

35. The document that Hyatt swears is the ACDV contains dispute code "021". RSGD ¶ 87.

36. The investigation was performed based on a dispute code "104". RSGD ¶ 86.

37. The Dispute Manual contains the written procedure that Chase had in place in August and September 2020 to conduct FCRA dispute investigations. RSGD ¶ 88.

38. The Dispute Manual defines dispute codes "019", "023", and "104". RSGD ¶ 89.

39. The Dispute Manual does not define dispute code "021". RSGD ¶ 90.

40. The document attached as Ex. M to the Hyatt Declaration and identified as an "October 13, 2020 letter from Chase to Plaintiff" ("EO Letter") states that it is from Chase's Executive Office. RSGD ¶ 93.

41. The EO Letter is the basis for Chase's determination, after its investigation of the dispute, that reporting the Account delinquent to CRAs was an accurate report of information. RSGD ¶ 94.

42. The EO Letter is the basis for Chase's determination, after its investigation of

10

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

the dispute, that reporting the Account was a charge off to CRAs was an accurate report of information. RSGD ¶ 95.

43. The EO Letter is the basis for Chase's determination, after its investigation of the dispute, that reporting the Account was a charge off to CRAs was a complete report of information. RSGD ¶ 96.

44. The EO Letter, in conjunction with the Dispute Manual, forms the basis of Chase's contention that its investigation of the dispute was non-cursory. RSGD ¶ 97.

45. The EO Letter, in conjunction with the Dispute Manual, forms the basis of Chase's contention that its investigation of the dispute was reasonable. RSGD ¶ 98.

46. The investigation handled by Chase's Executive Office was separate from the FCRA/ACDV investigation conducted by the CBO Disputes team. RSGD ¶ 100.

47. When asked whether the document was "the final product" of the "FCRA investigation that Chase conducted in August and September 2020", Burda testified that the document had "nothing to do" with the FCRA investigation. RSGD ¶ 101.

48. Johnson did not receive the EO Letter prior to its production in the arbitration. RSGD ¶ 102.

49. The EO Letter bears Carla Wills' name. RSGD ¶ 103.

50. Carla Wills does not know whether she had seen the EO Letter before. RSGD ¶ 104.

51. Carla Wills does not know whether she was involved in preparing the EO Letter. RSGD ¶ 105.

52. Carla Wills does not know whether she provided any of the information that is included in the EO Letter. RSGD ¶ 106.

53. No current Chase employee recalls the investigation into Johnson's notice of

11

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

dispute, submitted to Equifax on or about August 25, 2020, concerning the accuracy of information Chase provided to Equifax. RSGD ¶ 107.

54. Chase is unaware of any current or former employees who recall the investigation into Johnson's notice of dispute, submitted to Equifax on or about August 25, 2020, concerning the accuracy of information Chase provided to Equifax. RSGD ¶ 108.

55. Burda did not try to identify the specialist who conducted the investigation before her deposition. RSGD ¶ 109.

56. Chase does not know the name of the specialist who conducted the investigation, whether that person still works for Chase, or if that person was on Burda's team. RSGD ¶ 110.

57. As part of its indirect dispute process, Chase does not contact the CRA to see if there is additional information. RSGD ¶ 111.

58. Reviewing recorded phone calls is not part of Chase's FCRA investigation process for an Automated Consumer Dispute Verification ("ACDV"). RSGD ¶ 112.

59. As part of its indirect dispute process, Chase does not contact the consumer to get more information, and Burda does not know why that is not part of the process. RSGD ¶ 113.

60. On October 20, 2020, Johnson had a conversation via telephone with Carla Wills. RSGD ¶ 114.

61. During the call, Carla told Johnson that, because over two years had passed, "we can't go back and listen to those calls" and so "there's no way to verify what you're actually saying". RSGD ¶ 115.

62. The EO Letter states "[d]ue to the amount of time that has passed, we are unable to review the calls". RSGD ¶ 116.

63. The EO Letter states "the calls we did find noted on your account cannot be reviewed due to the length of time that has passed". RSGD ¶ 117.

12

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

64. On August 3, 2022, Johnson caused to be served on Chase a demand for arbitration, with claims identical to those in the complaint in the instant lawsuit. RSGD ¶ 118.

65. On August 18, 2022, Johnson received Chase's objection to his August 3, 2022 Demand for Arbitration. RSGD ¶ 119.

66. On September 16, 2022, JAMS declined administration. RSGD ¶ 120.

67. Prior to September 6, 2017, Johnson received several messages from Chase, via email and in connection with his Ink Account, stating that a "credit card payment is due in 10 days". RSGD ¶ 122.

68. On May 30, 2018 and August 19, 2020, Johnson informed Chase or counsel for Chase that he was willing to resolve this dispute by paying $499, the entire amount allegedly owed, in exchange for the deletion of the account or correction of the reporting. RSGD ¶ 125.

69. On December 22 and 30, 2020, and March 2, 2021, having paid $499 on August 26, 2020, Johnson informed counsel for Chase that he was willing to resolve this dispute in exchange for the deletion of the account or correction of the reporting. RSGD ¶ 126.

## 6.  **STIPULATED FACTS**

The following facts, though stipulated by the parties, shall be without prejudice to any evidentiary objection:

1. None of Chase's current employees have any recollection of the 2020 investigation relating to Johnson's Equifax dispute.

2. Chase is unaware of any employees who have any recollection of the 2020 investigation.

3. JPMorgan Chase & Co.'s 10-K filings for the years ending December 31, 2018, December 31, 2019, December 31, 2020, December 31, 2021, and December 31, 2022 on the SEC's website are authentic and genuine.

4. JPMorgan Chase & Co.'s 10-Q filings for the periods ending June 30, 2020;

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

September 30, 2020; March 31, 2021; June 30, 2021; September 30, 2021; March 31, 2022; June 30, 2022; September 30, 2022; and March 31, 2022 on the SEC's website are authentic and genuine.

5. The "Consumer & Community Banking" sections of JPMorgan Chase & Co.'s 10-K filings for the years ending December 31, 2018, December 31, 2019, December 31, 2020, December 31, 2021, and December 31, 2022 accurately represent Defendant's financial condition across all of its lines of business, including Card Services, at the time they were prepared.

6. The "Consumer & Community Banking" sections of JPMorgan Chase & Co.'s 10-Q filings for the periods ending June 30, 2020; September 30, 2020; March 31, 2021; June 30, 2021; September 30, 2021; March 31, 2022; June 30, 2022; September 30, 2022; and March 31, 2022 accurately represent Defendant's financial condition across all of its lines of business, including Card Services, at the time they were prepared.

7.      **PARTIES' CLAIMS AND DEFENSES**

**Johnson's Claims:**

(a)      **Johnson plans to pursue the following claims against Chase:**

**Claim 1:**    Chase negligently and willfully violated 15 U.S.C. § 1681s-2(b).

**Claim 2:**    Chase negligently and willfully violated Cal. Civ. Code § 1785.25(a)[2]

---

[2] Johnson contends there were multiple monthly violations of Cal. Civ. Code § 1785.25(a) between November 2017 and April 2022.

14

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

**(b)      The elements required to establish Johnson's claims, according to Johnson, are:**

### Claim 1:[3]

1. Chase furnished information about Johnson to a consumer reporting agency.

2. A consumer reporting agency notified Chase that Johnson disputed the completeness or accuracy of that information.

3. The disputed information was inaccurate, incomplete, or could not be verified.

4. After receiving notice of the dispute from the consumer reporting agency, Chase failed to reasonably investigate the dispute or otherwise failed to comply with its duties under § 1681s-2(b)(1).

5. Chase's failure was negligent and caused Johnson to sustain actual damages, or was willful.

15 U.S.C. § 1681s-2(b); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009); *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022).

### Claim 2:[4]

1. Chase furnished information about Johnson to a consumer reporting agency.

---

[3] Chase disputes that Johnson accurately summarizes the elements of a claim under 15 U.S.C. § 1681s-2(b). Among other things, Johnson must prove that Johnson submitted a dispute to Equifax about the completeness or accuracy of information furnished by Chase and that the information Chase furnished was in fact inaccurate or incomplete before the reasonableness of its investigation is considered. See 15. U.S.C. § 1681s-2(b)(1); *Gross v. CitiMortgage, Inc.,* 33 F.4th 1246, 1251 (9th Cir. 2022); *see also:* Support for Chase's Instruction No. 29.

[4] Chase disputes that Johnson accurately summarizes the elements of a claim under Cal. Civ. Code § 1785.25(a). Johnson must prove that he was a California resident covered by the protections of the CCRAA at the time of the alleged violation and that the violation was willful or negligent. *See* e.g. Support for Chase's Proposed Instruction No. 30; Cal. Civ. Code §§ 1785.1(e), 1785.31(a); Chase's Motion in Limine No. 12, Dkt. No. 124-1.

15

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

2.  The information was inaccurate or incomplete.

3.  Chase knew or should have known the information was inaccurate or incomplete.

4.  Chase's furnishing of that information caused Johnson to suffer damages.

Cal. Civ. Code §§ 1785.25(a), 1785.25(g), 1785.31(a); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010).

**(c)    The Key Evidence Johnson Relies on for Each Claim[5]**

**<u>Claim 1:</u>**

**i. Chase failed to conduct a <u>reasonable</u> investigation after receiving <u>notice</u> from Equifax.**

*Chase was on notice of the nature of the dispute.* On August 24, 2020, Johnson filed a dispute with Equifax regarding the completeness or accuracy of information relating to the Ink Account, and that Equifax thereafter provided notice of the dispute to Chase via an Automated Credit Dispute Verification ("ACDV") form. Key evidence regarding the notice includes an ACDV printout produced by Equifax, the testimony of Chase's Rule 30(b)(6) designee regarding the ACDV, and Chase's responses to Johnson's written discovery requests.

*Chase possessed relevant information bearing on the dispute.* Key evidence includes audio recordings of ten 2018 calls between Johnson and Chase concerning the account; Johnson's August 19, 2020 complaint to the Consumer Financial

---

[5] Chase objects to Johnson's description and characterization as to much of the evidence being described (for example that the dispute Johnson submitted to Equifax was regarding information Chase furnished or that the third party fact-finder found in Johnson's favor in the arbitration), denies the existence of some of the evidence (for example call recordings from 2018 that were not available by the time Johnson submitted his dispute to Equifax), the relevance and/or admissibility of some of the evidence to the claims at issue (for example the dispute Johnson submitted to the CFPB and arbitration notice to the reasonableness of Chase's investigation of Johnson's Equifax dispute), the import of some of the evidence (for example the fact that no current employees are available to testify as evidencing a failure on Chase's part to take appropriate action rather than as a failure on Johnson's part to timely assert his claims), and the presentation of Johnson's arguments as evidence.

16

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

Protection Bureau ("CFPB") and related materials; Johnson's August 25, 2020 letter notifying Chase of his intent to arbitrate; Chase's internal records concerning the account, including "C3 memos" and "purge notes"; account statements produced by Chase; Johnson's payment history for his Chase Ink and Chase Sapphire accounts; the testimony of Chase's Rule 30(b)(6) designee; the testimony of Chase's corporate representative in a prior arbitration hearing; and Chase's responses to Johnson's written discovery requests.

*Chase failed to review the relevant information in its possession, failed to acquire relevant information not in its possession, and instead conducted a cursory investigation untethered to the nature of the dispute.* Key evidence includes the parties' stipulation that Chase has no current employees with any recollection of the 2020 investigation of Johnson's Equifax dispute, and is unaware of any employees with such recollection; Chase's internal records concerning the account; Chase's written policies and procedures governing dispute investigations; the testimony of Chase's Rule 30(b)(6) designee; the testimony of Chase's corporate representative in a prior arbitration hearing; and Chase's responses to Johnson's written discovery requests.

*Chase destroyed relevant information after it was aware that the account was under dispute.* Key evidence includes Chase's internal records concerning the account, the testimony of Chase's corporate representative in a prior arbitration hearing, a June 12, 2018 phone call, an October 19, 2020 phone call, an October 14, 2020 letter

*Chase's stated basis that its investigation was reasonable, and that the furnished information was accurate and complete, does not withstand scrutiny and is contradicted by Chase's own records and testimony.* Key evidence includes Chase's responses to Johnson's written discovery requests identifying an October 2020 letter drafted by Carla Wills as the basis for its determination that the information it continued to furnish after the investigation was accurate and complete, that October

17

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

2020 letter, and related testimony of the author of that letter, Carla Wills, as well as Rule 30(b)(6) designee.

*Chase could not verify the disputed information.* Key evidence includes an audio recording of an October 2020 phone call between Johnson and Wills, the testimony of Chase's corporate representative in a prior arbitration hearing, a legal memorandum submitted by counsel for Chase in that prior arbitration, the testimony of Chase's Rule 30(b)(6) designee concerning its unreliable system of record and its retention policies, and Chase's internal records concerning the account.

*An industry expert concluded that Chase's investigation was insufficient and departed from industry standards.* Key evidence includes the expert report and testimony of Johnson's retained expert, Thomas Tarter.

*A third-party factfinder, reviewing substantially the same information, reached the opposite conclusion.* A neutral arbitrator, presented with substantially the same information available to Chase during its investigation, ordered Chase to retract and remove all adverse credit references arising out of the Ink Account — evidence that a reasonable investigation would have led Chase to do the same rather than continue furnishing the disputed information. Key evidence includes the arbitration record and remedy, and Johnson's testimony regarding the overlap between the arbitration evidence and the information available to Chase during its investigation.

**ii. Chase furnished information that was <u>incomplete</u> or <u>inaccurate</u>, including because it was <u>patently incorrect</u>, <u>misleading</u> in such a way and to such an extent that it can be expected to adversely affect credit decisions, or <u>omitted</u> Johnson's <u>bona fide dispute</u>.**

*Chase agreed to provide Johnson with online account access, online statements, emailed payment-due notices, and technical support.* Key evidence includes written agreements between Johnson and Chase entered into in 2017, contemporaneous emails from Chase, screenshots of Chase's website as it appeared

18

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

in early 2017, Chase's 2021 admission regarding its online enrollment process as of early 2017, Johnson's testimony, Chase's responses to Johnson's written discovery requests, and admitted facts.

*Chase failed to provide Johnson with online account access, online statements, emailed payment-due notices after September 2017, or technical support.* Key evidence includes Johnson's testimony; Chase's records concerning the Ink and Sapphire accounts, including call and payment history for both; the absence of payment-due notices in Johnson's email records after September 2017; screenshots of Johnson's online access to Chase's website in 2018; the testimony of Chase's Rule 30(b)(6) designee, including the second amended notice of deposition; the testimony of Chase's corporate representative in a prior arbitration hearing; screenshots of Chase's website as it appeared in early 2017; Chase's 2021 admission regarding its online enrollment process as of early 2017; audio recordings of relevant 2018 calls between Johnson and Chase concerning the account; account statements produced by Chase, Chase's responses to Johnson's written discovery requests, and admitted facts.

*Johnson paid off and closed the account in September 2017.* Key evidence includes Johnson's testimony, his payment history across all Chase credit card accounts dating to 2010, and his broader credit history dating to 2008 as reflected in his consumer credit reports.

*Chase failed to comply with Johnson's instructions to update his mailing address for notices.* Key evidence includes Johnson's testimony, Chase's internal records concerning the account, including "C3 memos" and "purge notes", and Johnson's Sapphire account statements.

*Chase charged unauthorized late fees before and after the account's closure.* Key evidence includes the evidence identified in the immediately preceding paragraphs, written agreements between Johnson and Chase entered into in 2017, and account statements produced by Chase.

19

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

*Following its investigation, Chase continued to report to consumer reporting agencies that the Ink Account had a delinquent payment history, had been charged off, and carried a past-due balance of $499 — and failed to report that the account was disputed.* Key evidence includes Chase's response to Equifax's ACDV notice, Johnson's consumer credit reports, Chase's internal records concerning the account, the testimony of Chase's Rule 30(b)(6) designee, Chase's responses to Johnson's written discovery requests, and certain admitted facts.

*The information that Chase furnished to the credit bureaus was misleading in such a way and to such an extent that it could be expected to adversely affect credit decisions.* Key evidence includes the expert report and testimony of Johnson's retained expert, Thomas Tarter, and statements made by Chase on its website.

*Johnson's dispute was bona fide — that is, one that could materially alter how the reported debt is understood.* Key evidence includes the evidence identified in the immediately preceding paragraphs, the expert report and testimony of Johnson's retained expert, Thomas Tarter, and the arbitration remedy.

**iii. Chase's violation caused Johnson damages.**

Chase's inaccurate and incomplete credit reporting caused Johnson harm. In addition to Johnson's consumer credit reports, credit scores, the testimony of Johnson, the testimony of Johnson's retained expert, Thomas Tarter, and representations made by Chase on its website regarding credit reporting, the following key evidence will be submitted at trial:

1. **Increased home insurance premiums:** Two separate letters from Amica Mutual Insurance Company, informing Johnson that he had not qualified for the best rate, in part because "consumers with a delinquent payment history experience more insurance losses".

2. **Increased auto insurance premiums:** Letter from Progressive Casualty Insurance Company, informing Johnson that "[w]e did not give you our lowest premium due, in part, to information contained in our credit history".

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

3. **Lost opportunity to purchase a home:** Johnson's Google search history from August and September of 2020, email correspondence with PenFed Credit Union in August 2020, email from Chase Credit Journey in September 2020, a screenshot of the PenFed loan center website showing the terms of Johnson's mortgage application with PenFed, a letter from PenFed regarding his mortgage application and credit score, a screenshot of his bank balance in October 2020, screenshots of text messages discussing specific properties in a small neighborhood outside of Los Angeles, MLS sales records concerning those properties, local and national home price appreciation data, published by the Federal Reserve, testimony of Johnson's friend, representations made on Chase's website regarding "hard inquiries" and advice concerning pending credit reporting disputes.

4. **Lost opportunity to refinance a home:** Mortgage interest rate data, segmented by credit score, published by the Federal Reserve; email sent to Chase in 2021, explaining the urgency of resolving this dispute, so that Johnson could take advantage of low mortgage rates to refinance an adjustable-rate mortgage.

5. **Out-of-pocket expenses:** Spreadsheet and records submitted in January 2022 documenting out-of-pocket expenses incurred; email related to credit-monitoring services.

6. **Lost time spent addressing the credit reporting problem and lost wages:** Paystub from 2021, spreadsheet and records submitted in January 2022, testimony of Johnson's friend.

7. **Lost creditworthiness and credit reputation:** Johnson's consumer credit reports, credit scores.

8. **Non-economic damages and emotional distress:** Testimony of Johnson's friends, Johnson's medical records.

**iv. Chase's noncompliance was <u>willful</u>.**

The key evidence described above in sections 7(c)(i)–(iii) is incorporated here

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

by reference. Moreover, key evidence of willfulness includes Chase's dispute policies and procedures, and Chase's Rule 30(b)(6) designee's testimony regarding those policies and procedures. To support an award of punitive damages, Johnson will also present evidence of Chase's financial condition, via Chase's filings with the Securities and Exchange Commission, pursuant to the parties' relevant stipulation.

**Claim 2:**

**v. Chase furnished information to a CRA that it <u>knew or should have known</u> the information was <u>incomplete or inaccurate</u>.**

The key evidence described above in sections 7(c)(i)–(ii) is incorporated here by reference. Moreover, because a dispute with a credit bureau is not a precondition to liability under the CCRAA, key evidence also includes information and knowledge obtained after Chase's investigation into the Equifax dispute completed, but before it deleted the Ink Account from Johnson's credit report in April 2022, including his complaint with the CFPB, Chase's investigation thereof, phone calls between Johnson and Chase that took place in October 2020, the October 14, 2020 letter, and the prior arbitration between the parties.

**vi. Chase's violation caused Johnson <u>damages</u>.**

The key evidence described above in section 7(c)(iii) is incorporated here by reference.

**vii. Chase's noncompliance was <u>willful</u>.**

The key evidence described above in section 7(c)(iv) is incorporated here by reference.

22

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

**Defendant's Affirmative Defenses**:[6]

    **(a)**    **Defendant plans to pursue the following affirmative defenses:**

    **Defense 1:**  Statute of Limitations Under the FCRA

    **Defense 2:**  Statute of Limitations Under the CCRAA

    **Defense 3:**  Mitigation of Damages

    **Defense 4:**  Mutual Mistake

    **Defense 5:**  Waiver

    **Defense 6:**  Unclean Hands

    **Defense 7:**  Safe harbor under Cal. Civ. Code § 1785.25(g)

    **(b)**    **The elements required to establish Defendant's affirmative defenses are:**

    **Defense 1:** Statute of Limitations Under the FCRA

Chase contends Johnson's FCRA claim was not timely filed. To prove this defense, Chase must prove by a preponderance of the evidence that, before September 19, 2020, Johnson discovered, or a reasonably diligent plaintiff would have discovered, the facts constituting Chase's alleged FCRA violation.

    **Defense 2:** Statute of Limitations Under the CCRAA

Chase contends that Johnson's lawsuit for violation of the CCRAA was not filed within the time set by law. To succeed on this defense, Chase must prove that Johnson knew or should have known of an alleged CCRAA violation before March 24, 2020. If you find that Chase proved this defense by a preponderance of the

---

[6] Johnson objects to the presentation of each of these affirmative defenses at trial. *See* Johnson's Position re: Disputed Jury Instruction Nos. 47 (Defense No. 1 – Statute of Limitations Under the FCRA), 48 (Defense No. 2 – Statute of Limitations Under the CCRA), 50 (Defense No. 4 – Mutual Mistake), 51 (Defense No. 5 – Waiver), 52 (Defense No. 6 – Unclean Hands), and 43 (Defense No. 7 – safe harbor under Cal. Civ. Code § 1785.25(g). Johnson also objects to Defense No. 3 as a bar to liability at trial. Failure to mitigate may be asserted, at most, as a limitation on recoverable actual damages under the FCRA; there is no controlling Ninth Circuit authority making it an affirmative defense to FCRA liability, and it should not apply to statutory damages under § 1681n.

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

evidence, you cannot award any recovery for such a violation.

**Defense 3:** Mitigation of Damages

Johnson has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages. To establish this defense, Chase has the burden of proving by a preponderance of the evidence:

1. that Johnson failed to use reasonable efforts to mitigate damages; and

2. the amount by which damages would have been mitigated.

If you find that Chase proved this defense, you must reduce any award of damages by the amount of damages that would have been mitigated.

**Defense 4:** Mutual Mistake

Chase claims that there was no agreement that Johnson would pay off his Ink account on September 6, 2017 because both parties were mutually mistaken about Johnson's intent and the amount required to effectuate payoff. To succeed, Chase must prove both of the following:

1. That both parties were mistaken about Johnson's intent and amount required to effectuate payment; and

2. That Chase would not have agreed to enter into the payoff agreement if it had known about the mistake. If you decide that Chase has proved both of the above, then no agreement was created.

**Defense 5:** Waiver

Chase claims that it cannot be liable to Johnson under the FCRA and CCRAA because Johnson gave up his right to seek recovery under these theories. This is called a "waiver." To succeed, Chase must prove both of the following by clear and convincing evidence:

1. That Johnson knew Chase has obligations under the FCRA and CCRAA; and

2. That Johnson freely and knowingly gave up his right to have Chase's liability under these laws decided.

24

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

A waiver may be oral or written or may arise from conduct that shows that Johnson gave up that right. If Chase proves that Johnson gave up his right to sue Chase under the FCRA and CCRAA, then Chase cannot be liable to Johnson for a violation of these statutes.

**Defense 6:** Unclean Hands

In determining whether Chase conducted a reasonable investigation of Johnson's dispute, you may consider all relevant circumstances, including:

1. Whether Johnson waited an unreasonable length of time after learning of the alleged inaccuracy before submitting his dispute; and

2. Whether Johnson's delay in disputing contributed to the unavailability of records relevant to Chase's investigation.

If you find that Johnson's conduct impaired Chase's ability to investigate, you may consider that circumstance in evaluating whether Chase's investigation was reasonable under the circumstances presented to it at the time.

**Defense 7:** Safe harbor under Cal. Civ. Code § 1785.25(g)

Chase may overcome liability for a violation of Section 1785.25(a) if Chase proves by a preponderance of the evidence that at the time of the failure to comply with Section 1785.25(a), it maintained reasonable procedures to comply with this provision.

**(c)    The Key Evidence Chase Relies on for Each defense**

**Defense 1:** Statute of Limitations Under the FCRA

Equifax records establish that it notified Johnson about the results of the dispute investigations by Chase and Equifax in a letter dated September 11, 2020.

**Defense 2:** Statute of Limitations Under the CCRAA

Chase stopped monthly furnishing on Johnson's account in July 2018, as evidenced by Johnson's credit reports showing the date of account information as of July 2018 and Chase's records of monthly furnishing activity. Johnson was aware of the alleged inaccurate reporting by Chase as of at least May 2018, when he discussed

25

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

the reporting with Chase in a series of phone calls he intends to present as evidence at trial.

**Defense 3**: Mitigation of Damages

Element 1 – As evidenced by Johnson's anticipated testimony, email records, Chase call, letter, and payment records, Equifax dispute and reporting records, Johnson failed to monitor his account despite available access to statements, failed to monitor email, phone, and letter communications from Chase regarding the status of his account, failed to opt out of electronic statement delivery, delayed paying off the account by over two years, thereby retaining an unpaid charge off notation on his credit instead of a paid charge off, delayed by over two years in disputing the reporting on the account, made inaccurate and confusing claims in the dispute he ultimately submitted (including that the account was subject to account takeover and fraudulent transactions, that there were no communications from Chase, that Chase did not make statements available, and that he saw a $0 balance when he logged into his online account), and failed to avail himself of the option to have Equifax notate the nature of his dispute on the Chase account trade line.

Element 2 – Had Johnson properly monitored his account, made timely payments, followed-up on Chase's communications, and cured the delinquency immediately upon discovery, he would not have incurred any of the damages he alleges.

**Defense 4**: Mutual Mistake

Element 1 – Chase's account records for Johnson's account reflect that Johnson incurred over $300 in purchases and fees and paid only about $100, which was insufficient to pay off the account in full. To the extent that Johnson believed that $100 was sufficient, he was mistaken, as account records establish, and to the extent that Johnson communicated the intent to pay off the account in full, as he is expected to testify, Chase was mistaken about his intent to do so.

Element 2 – Chase's testimony will establish that had Chase's known that

26

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

Johnson believes he is paying the account off in full with $100, Chase would not have accepted the payment as a full payoff on the account, because it was objectively insufficient to do so.

**Defense 5**: Waiver

Elements 1-2 – In the arbitration proceeding Johnson knowingly withdrew a claim for violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

**Defense 6**: Unclean Hands

Elements 1-2 – Johnson's over two-year delay between discovering allegedly inaccurate reporting to his credit and submitting a dispute to Equifax, and then an additional two-year delay in filing this action prejudiced Chase because records relevant to Chase's investigation of Johnson's dispute and defense are no longer available, and witnesses with personal knowledge of what happened are no longer employed by Chase. Evidence includes the parties' stipulation that Chase has no current employees with any recollection of the 2020 investigation of Johnson's Equifax dispute, and Johnson's repeated accusations that key telephone recordings were purposefully destroyed while they were in fact no longer available due to Johnson's own delay in asserting his claims.

**Defense 7:** Safe harbor under Cal. Civ. Code § 1785.25(g)

To the extent that factually accurate information furnished by Chase regarding Johnson's admitted failure to make a payment can be deemed inaccurate due to Johnson's nonreceipt of account statements, Chase's policies and procedures were to make statements available to all customers; Johnson had the option of receiving paper statements; and for months made timely payments by verbally communicating with Chase the amounts he owed. All of these options evidence the intent to make statements available, as is contractually Chase's obligation under the parties' account agreement.

**8.      REMAINING TRIABLE ISSUES**

In view of the admitted facts and the elements required to establish the claims

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

and affirmative defenses, the following issues remain to be tried:

The remaining triable issues include whether Chase furnished any inaccurate or incomplete information to any consumer reporting agency and if it did whether it knew or should have known the information was inaccurate or incomplete, whether Chase received notice of a dispute alleging an actionable inaccuracy from a consumer reporting agency, whether Chase failed to conduct a reasonable investigation of the allegedly inaccurate or incomplete information, whether Chase violated the CCRAA or FCRA negligently, willfully, or at all, whether any legal or affirmative defenses negate liability, and whether Johnson suffered any recoverable harm.

**9.     DISCOVERY**

All discovery is complete.

**10.     DISCLOSURES AND EXHIBIT LIST**

All disclosures under Fed. R. Civ. P. 26(a)(3) have been made.

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1 ("Joint Exhibit List").

**11.     WITNESS LISTS**

Witness lists of the parties have been filed with the Court on March 20, 2026.

Only the witnesses identified on the lists will be permitted to testify (other than solely for impeachment).

Johnson maintains his objection to Rob Wilkins testifying at trial. *See* Johson's Motion in Limine No. 1.

**12.     MOTIONS IN LIMINE AND LAW AND MOTION MATTERS**

Motions *in limine* or law and motion matters were filed with the Court on March 20, 2026 and March 21, 2026.  The parties have met and conferred on the motions *in limine*.  The following motions *in limine*, and no others, are pending or contemplated:

- Johnson's Motion in Limine No. 1 – To Exclude Testimony of Rob

28

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

Wilkins

- Johnson's Motion in Limine No. 2 – To Exclude Evidence and Argument Regarding Statement Availability and Payment Notice
- Johnson's Motion in Limine No. 3 – To Exclude Executive Office Investigation Evidence
- Johnson's Motion in Limine No. 4 – To Exclude 6-8-21 and 7-15-21 Arbitration Recordings
- Johnson's Motion in Limine No. 5 – To Exclude Deposition of Thomas Tarter
- Chase's Motion in Limine No. 1 – To Exclude Speculative Evidence of Damages
- Chase's Motion in Limine No. 2 – To Exclude Medical Records and Unsupported Causation Opinions Attributed to Same
- Chase's Motion in Limine No. 3 – To Exclude Opinions and Testimony of Thomas Tarter on the Same Grounds as Pending Daubert Motion
- Chase's Motion in Limine No. 4 – To Exclude Reference to Past Settlement Discussions
- Chase's Motion in Limine No. 5 – To Exclude 2018 Audio Recordings
- Chase's Motion in Limine No. 6 – To Exclude (Other Than for Purposes of Impeachment) Arbitration Materials From Being Offered as Substantive Evidence at Trial
- Chase's Motion in Limine No. 7 – To Exclude Argument and Evidence re: Contract Claims
- Chase's Motion in Limine No. 8 – To Exclude Evidence of Alleged Dispute Not Submitted Through Consumer Reporting Agencies
- Chase's Motion in Limine No. 9 – To Exclude Argument and Evidence Re: Failure to Notify of Dispute
- Chase's Motion in Limine No. 10 – To Exclude Evidence of Direct and

29

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

CFPB Disputes

- Chase's Motion in Limine No. 11 – To Exclude Evidence Related to Time-Barred Claims
- Chase's Motion in Limine No. 12 – to Exclude Evidence Re: Violations of California Law Prior to Move to California

The parties advise the Court that the following law and motion matters may arise during trial:

Chase anticipates moving for non-suit pursuant to Fed. R. Civ. Pro. 50. Johnson anticipates that he may move, at the appropriate time, for judgment or findings as a matter of law on one or more elements of Johnson's claims.

## 13.   __BIFURCATION__

Chase notes that, to the extent that Johnson seeks punitive damages, the imposition of those damages would not be made by the jury. Punitive damages may only be awarded in an amount that the Court may allow. Thus, to the extent this may be construed as a request for bifurcation of issues, Chase seeks bifurcation since any determination of punitive damage issues should be decided by the Court, not the jury. Although Chase does not believe this requires a bifurcation of the trial, should the Court rule otherwise, then Chase requests bifurcation of these defenses. Chase will seek clarification of these issues with the Court at the Pretrial Conference.

Johnson objects regarding the request that punitive damages be decided by the Court. For the reasons explained in his Johnson's Position to Disputed Jury Instruction Nos. 41 and 42, punitive damages are for the jury to decide. Johnson also objects to bifurcation. Chase has not attempted to make the required showing that bifurcation would serve one of the enumerated grounds in Rule 42(b).

## 14.   __ADMISSIONS__

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pre-Trial Order shall supersede the pleadings, and govern the course of the trial of this cause,

30

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

unless modified to prevent manifest injustice.

**IT IS SO ORDERED.**

DATED:

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

Approved as to form and content:

DATED: June 5, 2026          **WOMBLE BOND DICKINSON (US) LLP**

By: */s/Alisa A. Givental*

Alisa A. Givental

Attorneys for Defendant

JPMORGAN CHASE BANK, N.A.

DATED: June 5, 2026          **JOSHUA JOHNSON**

By: _____
Joshua Johnson

31

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

## PROOF OF SERVICE

*Joshua Johnson vs. JPMorgan Chase Bank, N.A.*
*USDC, Central District, Case No. 2:22-cv-06718-AB-MAA*

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is 50 California Street, Suite 2800, San Francisco, California 94111.

On June 5, 2026, I served the following document(s) described as:

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**

on the interested parties in this action as follows:

Joshua Johnson                                   **PLAINTIFF PRO SE**
2201 5th St. Apt 208
Santa Monica, CA 90405

Tel:  (336) 423-2594
Email: josh@jj88.org

☒**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address alisa.givental@wbd-us.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 5, 2026, at Richmond, California.

_____
Alisa Givental

32

**JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER**