**DYKEMA GOSSETT LLP**
ABIRAMI GNANADESIGAN, State Bar No. 263375
*AGnanadesigan@dykema.com*
444 South Flower Street, Suite 2200
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

**WOMBLE BOND DICKINSON (US) LLP**
TOMIO NARITA (SBN 156576)
Tomio.Narita@wbd-us.com
ALISA A. GIVENTAL (SBN 273551)
Alisa.Givental@wbd-us.com
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone: (415) 433-1900

*Attorneys for Defendant*
JPMORGAN CHASE BANK, N.A.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JOSHUA JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>Defendant. | Case No.:  2:22-cv-06718-AB-MAA<br><br>The Hon. André Birotte Jr.<br>Courtroom 7B<br><br>Magistrate Maria A. Audero<br>Courtroom: 690<br><br>**AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS**<br><br>Complaint Filed: September 19, 2022 |

Plaintiff Joshua Johnson ("Johnson") and Defendant JPMorgan Chase Bank, N.A. ("Chase") hereby submit the following set of disputed proposed instructions ("Instructions," and each, an "Instruction").

DISPUTED PROPOSED JURY INSTRUCTIONS
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

| # | Title | Source[1] | Page |
|---|-------|-----------|------|
| | ***Closing Instructions*** | | |
| 19 | Corporations and Partnerships-Fair Treatment | Ninth Circuit Manual of Model Civil Jury Instructions, No. 4.1 (modified) | 1 |
| 20 | Liability of Banks – Scope of Authority Not in Issue | Ninth Circuit Manual of Model Civil Jury Instructions, No. 4.2 (modified) | 3 |
| 29 | Chase's – Claim for Violation of Fair Credit Reporting Act, Section 1681s-2(b) of Chapter 15 of the United States Code | 15. U.S.C. §§ 1681i(a-b), 1681s-2(b), 1681n, 1681o; *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022) (citing *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009) *Miller v. Westlake Servs*. LLC, 637 F. Supp. 3d 836, 848 (C.D. Cal. 2022) | 4 |
| 29 | Johnson's – Claim for Violation of Fair Credit Reporting Act, Section 1681s-2(b) of Chapter 15 of the United States Code | 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681i(a)(1)(A); Jury Instructions, *Kim v. BMW Fin. Servs. N.A., LLC*, No. CV 14-01752 BRO (SHx) (C.D. Cal. Aug. 28, 2015), ECF No. 145-1; *Seungtae Kim v. BMW Financial Services NA, LLC*, 142 F. Supp. 3d 935, 948 (C.D. Cal. 2015), aff'd, 702 F. App'x 561 (9th Cir. 2017) | 8 |
| 30 | Chase's – Claim for Violation of California Consumer Credit Reporting Agencies Act, Section 1785.25(a) of the California Civil Code | Cal. Civ. Code §§ 1785.25(a), 1785.31(a); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010) (quoting *Olson v. Six Rivers Nat'l Bank*, 111 Cal. App. 4th 1, 3, 3 Cal.Rptr.3d 301 (2003)); *see also Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1335 (9th Cir. 1995); *Cisneros v. U.D. Registry, Inc.*, 39 Cal. App. 4th 548, 570, 46 Cal.Rptr.2d 233 (1995); *Crawford v. Uber Techs., Inc.*, No. 17-CV-02664-RS, 2018 WL 1116725, at | 10 |

[1] There are no Ninth Circuit pattern instructions for Fair Credit Reporting Act ("FCRA") claims and there are no California pattern instructions for California Consumer Credit Reporting Agencies Act ("CCRAA" or "CCCRAA") claims. The treatise by O'Malley contains instructions for FCRA claims but they are inappropriate because they apply to consumer reporting agencies ("CRAs") and not furnishers of information to CRAs.

| | | | |
|---|---|---|---|
| | | *4 (N.D. Cal. Mar. 1, 2018) (citing *North Alaskan Salmon Co. v. Pillsbury,* 174 Cal. 1, 4 (1916)); Cal. Civ. Code §§ 1785.1(e), 1785.6; *see also: Michael Grecco Prods., Inc. v. NetEase Info. Tech. Corp.*, No. 18-3119 DSF (RAOX), 2018 WL 6443083, at *2 (C.D. Cal. Aug. 28, 2018) | |
| 30 | Johnson's – Claim for Violation of California Consumer Credit Reporting Agencies Act, Section 1785.25(a) of the California Civil Code | Cal. Civ. Code § 1785.25(a) | 15 |
| 32 | Chase's –Meaning of "Inaccuracy" | *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009); *Sepulvado v. CSC Credit Servs., Inc.,* 158 F.3d 890, 895 (5th Cir.1998); *Mehta v. Wells Fargo Bank, N.A.*, No. CV 17-02532-AB (SSX), 2018 WL 5880758, at *3 (C.D. Cal. Feb. 6, 2018) (citing *Biggs v. Experian Info. Sols., Inc.*, 209 F. Supp. 3d 1142, 1144 (N.D. Cal. 2016); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010); *Chiang v. Verizon New Eng. Inc.,* 595 F.3d 26, 38 (1st Cir.2010); *but see: Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1253 (9th Cir. 2022); *Roberts v. Carter-Young, Inc.,* 131 F.4th 241, 251 (4th Cir. 2025); *Sessa v. Trans Union, LLC*, 74 F.4th 38, 42 (2d Cir. 2023) (citing *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269 (2d Cir. 2023)); *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1369 (11th Cir. 2024); *Reyes v. Equifax Info. Servs., L.L.C.,* 140 F.4th 279, 288 (5th Cir. 2025); *Rozov v. Bank of Am., N.A.*, 2025 WL 1620921, at *3 (11th Cir. June 9, 2025); *Davis v. Trans Union, LLC*, No. 2:22-CV-05819-SPG-AS, 2025 WL 2851881, at *9 (C.D. Cal. July 22, 2025) (citing *Hebrank v. Early Warning Servs., LLC*, No. CV-24-03711-PHX-MTL, 2025 WL 1148801, at *3-4 (D. Ariz. Apr. 18, 2025) *Stone v. Equifax Info. Servs., LLC*, No. 2:24-cv-00195-GMN-EJY, 2025 WL 359327, at *3 (D. Nev. Jan. 30, 2025)) | 17 |

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS
2:22-CV-06718-AB-MAA

iii

**WBD (US) 4905-4121-8482**

| 32 | Johnson's – "Inaccurate or Incomplete" | *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1160 (9th Cir. 2009). *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1253 (9th Cir. 2022). | *24* |
| 33 | Right to Add Statement of Dispute | 15 U.S.C. §§ 1681i(a)(6)(A), 1681i(a)(6)(B), 1681i(b), 1681i(c); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) | *27* |
| 34 | Chase's – Meaning of "Reasonable Investigation" | *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009); *Gross v. CitiMortgage, Inc.,* 33 F.4th 1246, 1251 (9th Cir. 2022); *Krajewski v. Am. Honda Fin. Corp.,* 557 F.Supp.2d 596, 610 (E.D.Pa.2008); *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir.2005); *Maiteki v. Marten Transport Ltd.*, 828 F.3d 1272, 1275 (10th Cir. 2016); *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 432 (4th Cir. 2004) | 32 |
| 34 | Johnson's – Meaning of "Reasonable Investigation" | *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1160 (9th Cir. 2009) | 36 |
| 35 | Meaning of "Knew or Should Have Known" | 15 U.S.C. § 1681s-2(a)(1)(A), § 1681s-2(a)(1)(D); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010) (quoting *Olson v. Six Rivers Nat'l Bank*, 111 Cal. App. 4th 1, 3, 3 Cal.Rptr.3d 301 (2003)); *see also Guimond*, 45 F.3d at 1335 ("The CCRAA mirrors the provisions of the FCRA."); *Cisneros v. U.D. Registry, Inc.*, 39 Cal. App. 4th 548, 570, 46 Cal.Rptr.2d 233 (1995) | 38 |
| 36 | Conduct Not Actionable Under FCRA or CCRAA | 15 U.S.C. § 1681s-2(c-d); *Gorman*, F.3d at1154 (citing *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059–1060 (9th Cir.2002)); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010); *Asad v. Experian Info. Sols., Inc.*, 2024 U.S. Dist. LEXIS 51724 (C.D. Cal. Mar. 21, 2024); *Miller v. Westlake Servs. LLC,* 637 F. Supp. 3d 836, 848 (C.D. Cal. 2022) | 42 |
| 37 | Response to Indirect Dispute Not Actionable Under CCRAA | 15 U.S.C. § 1681t(b)(1)(F)(ii); *Wang v. Asset Acceptance, LLC,* 681 F. Supp. 2d 1143 (N.D. Cal. 2010); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 882 (9th Cir. 2010) | 47 |

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS
2:22-CV-06718-AB-MAA

iv

**WBD (US) 4905-4121-8482**

| 38 | "Subject to the Protections of the CCRAA" | *Crawford v. Uber Techs., Inc.*, No. 17-CV-02664-RS, 2018 WL 1116725, at *4 (N.D. Cal. Mar. 1, 2018) (citing *North Alaskan Salmon Co. v. Pillsbury,* 174 Cal. 1, 4 (1916)); Cal. Civ. Code § 1785.1(e) *id*. at § 1785.6; *see also: Michael Grecco Prods., Inc. v. NetEase Info. Tech. Corp.*, No. 18-3119 DSF (RAOX), 2018 WL 6443083, at *2 (C.D. Cal. Aug. 28, 2018) | 52 |
| 41 | Recovery for FCRA Violation | 15. U.S.C. § 1681n(a)(1)(A), 15 U.S.C. § 1681n(a)(2), § 1681o(a)(1) | 55 |
| 42 | Recovery for CCRAA Violation | Cal. Civ. Code § 1785.31(a)(1-2) | 63 |
| 43 | Safe Harbor Under the CCRAA (Defense) | *Robbins v. CitiMortgage, Inc.*, No. 16-CV-04732-LHK, 2017 WL 6513662, at *14 (N.D. Cal. Dec. 20, 2017) (quoting Cal. Civ. Code § 1785.25(g)). | 65 |
| 44 | Actual Damages | Ninth Circuit Manual of Model Civil Jury Instructions, Nos. 5.1-5.2 (modified) | 67 |
| 45 | Non-Recoverable Damages | *King v. Bank of Am., N.A.,* 2012 WL 4685993, at *6 (N.D. Cal. Oct. 1, 2012); *Robbins v. CitiMortgage, Inc.*, Case No. 16-CV-04732-LHK, 2017 WL 6513662, *17 (N.D. Cal. Dec. 20, 2017) (quoting *Navellier v. Sletten*, 262 F.3d 923, 939 (9th Cir. 2001), *Holland Livestock Ranch v. United States*, 655 F.2d 1002, 1006 (9th Cir. 1981)); *Noori v. Bank of Am.,* No. CV1501467ABAFMX, 2016 WL 3124628, at *5 (C.D. Cal. May 26, 2016), *aff'd in part, rev'd in part and remanded sub nom. Noori v. Bank of Am., N.A.*, 710 F. App'x 757 (9th Cir. 2018); *Grigoryan v. Experian Info. Sols., Inc.,* 84 F. Supp. 3d 1044, 1079, 1081-83  (C.D. Cal. 2014); *Mone v. Dranow*, 945 F.2d 306, 308 (9th Cir. 1991); *Dorian v. Cmty. Loan Servicing, LLC*, No. 22-CV-04372-DMR, 2023 WL 395790, at *6 (N.D. Cal. Jan. 25, 2023); *Boydstun v. U.S. Bank,* 726 F. App'x 601, 602 (9th Cir. 2018) (citing *Johnson v. Wells Fargo Home Mortg., Inc.*, 558 F.Supp.2d 1114, 1122, 1125 (D. Nev. 2008); *Lott v. BSI Fin. Serv., Inc.*, No. 5:23-CV-00269-SSS-SHKX, 2025 WL | 71 |

WBD (US) 4905-4121-8482

|    |                                              |                                                                                                                                                                                                                                                                                      |    |
|----|----------------------------------------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|----|
|    |                                              | 211971, at *7 (C.D. Cal. Jan. 6, 2025) (citing *Boydstun*, 726 F. App'x at 601; *Johnson,* 558 F. Supp. 2d at 1122); *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996)                                                                                   |    |
| 46 | Punitive Damages                             | 15 U.S.C. § 1681n(a); Cal. Civ. Code § 1785.31(a)(2)(B); Ninth Circuit Manual of Model Civil Jury Instructions, No. 5.5 (modified).                                                                                                                                                    | 76 |
| 47 | Statute of Limitations Under the FCRA (Defense) | 15 U.S.C. § 1681p(1); Drew v. Equifax Info. Sys., LLC, 690 F.3d 1100 (9th Cir. 2012)                                                                                                                                                                                              | 78 |
| 48 | Statute of Limitations Under the CCRAA (Defense) | Cal. Civ. Code § 1785.33                                                                                                                                                                                                                                                          | 84 |
| 50 | Mutual Mistake (Defense)                     | Judicial Counsel of California Civil Jury Instructions (2026 Edition), CACI No. 331, Affirmative Defense—Bilateral Mistake (modified) (citing Cal. Civ. Code § 1577); *Crocker-Anglo 146 Nat'l Bank v. Kuchman,* 224 Cal.App.2d 490, 496 (1964)                                      | 89 |
| 51 | Waiver (Defense)                             | Judicial Counsel of California Civil Jury Instructions (2026 Edition), CACI No. 336 (Modified); *Roesch v. De Mota*, 24 Cal.2d 563, 572 (1944)                                                                                                                                         | 92 |
| 52 | Unclean Hands (Defense)                      | *Salas v. Sierra Chem. Co.,* 59 Cal. 4th 407, 432 (2014); *Kendall-Jackson Winery, Ltd. v. Superior Ct.*, 76 Cal. App. 4th 970, 979 (1999), as modified on denial of reh'g (Jan. 3, 2000); *Padilla v. Experian Info. Sols., Inc.*, No. 23-CV-60669, 2023 WL 9228313, at *8 (S.D. Fla. Oct. 13, 2023); *Gray v. Experian Info. Sols., Inc.*, No. 6:25-CV-00290-PGB-UAM, 2025 WL 2223225, at *2 (M.D. Fla. June 11, 2025) | 94 |

## No. 19 – Corporate Entities – Fair Treatment

All parties are equal before the law and a bank is entitled to the same fair and conscientious consideration by you as any party.

### Source

Ninth Circuit Manual of Model Civil Jury Instructions, No. 4.1 (modified from: "4.1 Corporations and Partnerships—Fair Treatment [] All parties are equal before the law and a [corporation] [partnership] is entitled to the same fair and conscientious consideration by you as any party.")

### Support for Johnson's Opposition

Chase's proposed modification of Ninth Circuit Model Civil Jury Instruction 4.1 substituting "bank" for "corporation" is unnecessary. Chase is a corporation. Under the National Bank Act, a national banking association becomes "a body corporate" and is granted classic corporate powers, including the power to make contracts, sue and be sued, appoint directors and officers, and adopt bylaws. 12 U.S.C. § 24. The Ninth Circuit has described a national bank, quoting the Supreme Court, as a "corporate entit[y] chartered not by any State, but by the Comptroller of the Currency." *Rouse v. Wachovia Mortg., FSB*, 747 F.3d 707 (9th Cir. 2014) (quoting *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006)). The word "bank" describes the business Chase conducts; it does not negate Chase's corporate status. Because Instruction 4.1 is a fair-treatment instruction directed to artificial entities, the model wording "corporation" is legally appropriate here. Replacing "corporation" with "bank" is unnecessary.

### Support for Chase's Position

Johnson's objection argues the wrong question. Whether a national bank qualifies as a "corporate entity" under 12 U.S.C. § 24 is beside the point. The fair-treatment instruction exists to address juror bias — not to restate the defendant's form of organization. The jury will hear "bank" throughout this trial: in testimony,

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    1
2:22-CV-06718-AB-MAA

in documents, in oral arguments. Describing Chase as a "corporation" in an instruction designed to correct bias creates a mismatch that undermines the instruction's purpose.

The standard for a jury instruction is accuracy and fair presentation — not fidelity to model language. The Ninth Circuit's committee notes acknowledge that model instructions should be modified to fit the case, and Johnson cites no authority requiring verbatim adherence to model language. Both versions of the instruction are legally accurate. Banks are entitled to fair treatment, just as corporations are. The modification does not alter the legal proposition; it tailors the instruction to the case the jury is actually hearing. That is the point of modification.

Johnson's only objection is that the change is "unnecessary." That is not a legal standard. An instruction that accurately describes the entity that has been sued serves the instruction's purpose better than one that does not. The Court should adopt the modified instruction.

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    2
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

### No. 20 – Liability of Banks – Scope of Authority Not in Issue

Under the law, a bank is considered to be a person.  It can only act through its employees, agents, directors, or officers.  Therefore, a bank is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

### Source

Ninth Circuit Manual of Model Civil Jury Instructions, Nos. 4.2 (modified from: "4.2 Liability of Corporations—Scope of Authority Not in Issue [] Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.").

### Support for Johnson's Opposition

*See* Support for Johnson's opposition to Instruction No. 19.

### Support for Chase's Position

Johnson objects to the substitution of "bank" for "corporation" in Model Instruction No. 4.2. As stated in Support of Chase's Position on Instruction No. 19, whether a national bank qualifies as a "corporate entity" under 12 U.S.C. § 24 is beside the point. The only defendant in this case is a bank. This instruction explains how a bank acts and when it bears responsibility for the conduct of its employees and agents. The jury will be asked to apply it to a defendant they have heard called a bank throughout. Describing Chase as a "corporation" in an instruction about its liability introduces needless confusion that undermines the purpose of the instruction. The modification aligns the instruction's language with the trial the jury will have actually been sitting through. Johnson's objection should be overruled, and Chase's modified version of the Model Instruction should be adopted.

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    3
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

**Chase's Proposed No. 29 – Claim for Violation of Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)**

Johnson contends that Chase violated the Fair Credit Reporting Act ("FCRA"), specifically 15 U.S.C. § 1681s-2(b). Under the FCRA, if a consumer reporting agency such as Equifax receives a credit dispute from a consumer, it shall include all relevant information regarding the dispute that the agency has received from the consumer to the furnisher of the disputed information. To establish a violation of § 1681s-2(b) by a furnisher such as Chase, Johnson must prove each of the following by a preponderance of the evidence:

1. Johnson submitted a dispute to Equifax about the completeness or accuracy of information furnished about him by Chase;

2. Equifax notified Chase of that dispute;

3. The information Chase furnished was in fact "inaccurate or incomplete";

4. Chase failed to conduct a "reasonable investigation" of the dispute after receiving notice from Equifax; and

5. Chase's failure was negligent or willful.

**Source**

15. U.S.C. §§ 1681i(a-b), 1681s-2(b) ("(1) After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall— (A) conduct an investigation with respect to the disputed information"); 15. U.S.C. §§ 1681n, 1681o; *Gross v. CitiMortgage, Inc.,* 33 F.4th 1246, 1251 (9th Cir. 2022) ("if there is no inaccuracy, then the reasonableness of the investigation is not in play") (citing *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009) (the "investigation" must be at least "reasonable" and "non-cursory"); *Miller v. Westlake Servs. LLC,* 637 F. Supp. 3d 836, 848 (C.D. Cal.

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    4
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

2022) ("To succeed on her FCRA claim, Johnson must prove: (1) Chase is a 'furnisher'; (2) Johnson notified the CRA that Johnson disputed the reporting as inaccurate; (3) the CRA notified the furnisher of the alleged inaccurate information of the dispute; (4) the reporting was in fact inaccurate; and (5) Chase failed to conduct the investigation required by § 1681s-2(b)(1).").

### Support for Johnson's Opposition

*See* Support for Johnson's Instruction No. 29.

### Support for Chase's Position

Johnson's proposed instruction should not be adopted. It recites the statutory duties imposed on furnishers under 15 U.S.C. § 1681s-2(b) — what a furnisher "shall" do upon receiving notice of a dispute, but it does not instruct the jury on what Johnson must ***prove*** to establish liability and ignores decades of jurisprudence analyzing what that text requires in practice, including that the disputed information must be actually inaccurate or incomplete ***before*** the analysis reaches the investigation element, and that the investigation must meet a reasonableness standard. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010); *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022) ("In such lawsuits, before a court considers the reasonableness of the agency's procedures, the consumer must make a 'prima facie showing' of inaccuracy in the agency's reporting. [] This order of proof makes sense: if there is no inaccuracy, then the reasonableness of the investigation is not in play. On the flip side, if there is an inaccuracy, to succeed, the plaintiff must establish that the investigation was unreasonable. We join those circuits that have extended this logic to FCRA lawsuits against furnishers.") (internal citations omitted); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1155–57 (9th Cir. 2009).

By presenting the jury with bare statutory text, Johnson's instruction also requires the jury to interpret the law without the context necessary to do so. The

statute's reference to "reinvestigation" implies — without explanation — that a prior investigation had already taken place. The phrases "cannot be verified after any reinvestigation" and "for purposes of reporting to a consumer reporting agency only" are left undefined, as is the distinction between "deleting" and "permanently blocking" information from a credit file. Courts in this Circuit have not resolved what those phrases mean in isolation; they have instead interpreted section 1681s-2(b) as imposing a reasonableness requirement and treated the furnisher's appropriate response to a dispute as embedded within that standard. *See Gorman*, 584 F.3d at 1155–57. Johnson's instruction bypasses that framework and leaves the jury to work out the meaning of ambiguous statutory language on its own.

Johnson's version of the instruction also obscures the threshold requirement that the dispute must originate from a consumer reporting agency, not from the consumer directly. Johnson's instruction states that the furnisher's duties attach "[w]hen a furnisher receives notice of a dispute" — language that could lead a jury to conclude that a dispute submitted directly by the consumer triggers the same obligations. It does not. *See Gorman,* 584 F.3d at 1154 ("These duties arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)"). An instruction that blurs that distinction misstates a threshold element of the claim.

Finally, the instruction inserts the "promptly" requirement from the statute and proceeds to incorrectly state that the furnisher's investigation must be completed within 30 days of the furnisher receiving notice of the dispute, rather than within 30 days of the consumer reporting agency receiving notice of the dispute. *See* 15 U.S.C. § 1681s-2(b)(2). This is a misstatement of the law and unnecessary in the instruction because the promptness of Chase's response to the subject dispute is not in question.

---

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS      6
2:22-CV-06718-AB-MAA
**WBD (US) 4905-4121-8482**

Johnson argues his instruction should be used because it tracks the one given in *Kim v. BMW Financial Services*, 142 F. Supp. 3d 935, 948 (C.D. Cal. 2015), and because *Kim* was affirmed on appeal. But the Ninth Circuit's affirmance did not address the challenged aspects of that instruction, *Kim v. BMW Fin. Servs. NA LLC*, 702 F. App'x 561, 563 (9th Cir. 2017), and an unchallenged instruction that produces an affirmance is not authority that the instruction correctly states the law. Beyond that, *Kim* predates *Gross*, which confirms that inaccuracy is a predicate element and that the reasonableness standard governs furnisher investigations. Whatever Kim's instruction did or did not include, it cannot be squared with the Ninth Circuit's subsequent analysis in *Gross*, and this Court is not bound to replicate an instruction that has since been overtaken by circuit authority.

**Johnson's Proposed No. 29 – Duties of Furnishers of Credit Information under the Fair Credit Reporting Act**

Johnson claims Chase violated the Fair Credit Reporting Act.

Under the Fair Credit Reporting Act, Chase is a furnisher of information to consumer reporting agencies. When a furnisher receives notice of a dispute with regard to the completeness or accuracy of any information provided by the furnisher to a consumer reporting agency, the furnisher shall:

1. Conduct an investigation with respect to the disputed information;
2. Review all relevant information provided by the consumer reporting agency;
3. Report the results of the investigation to the consumer reporting agency; and
4. If an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation, for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
   a. Modify that item of information;
   b. Delete that item of information; or,
   c. Permanently block the reporting of that item of information.

The furnisher must complete its reinvestigation within 30 days of receiving notice from the consumer reporting agency.

**Source**

15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681i(a)(1)(A);  Jury Instructions, *Kim v. BMW Fin. Servs. N.A., LLC*, No. CV 14-01752 BRO (SHx) (C.D. Cal. Aug. 28, 2015), ECF No. 145-1; *Seungtae Kim v. BMW Financial Services NA, LLC*, 142 F. Supp. 3d 935, 948 (C.D. Cal. 2015), aff'd, 702 F. App'x 561 (9th Cir. 2017).

**Support for Johnson's Position**

Johnson's proposed instruction mirrors 15 U.S.C. § 1681s-2(b). It is identical to the instruction used in the most recent FCRA trial in this district. Jury

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                8
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

Instructions, *Kim v. BMW Fin. Servs. N.A., LLC*, No. CV 14-01752 BRO (SHx) (C.D. Cal. Aug. 28, 2015), ECF No. 145-1; *Seungtae Kim v. BMW Financial Services NA, LLC*, 142 F. Supp. 3d 935, 948 (C.D. Cal. 2015), aff'd, 702 F. App'x 561 (9th Cir. 2017). That instruction survived scrutiny by the Ninth Circuit, which found that "the district court fully instructed the jury on the elements of a claim under FCRA". *Id*.

Chase argues that this instruction "predates *Gross* and does not include an inaccuracy element as a predicate to § 1681s-2(b) liability". That is not true. The instruction given to the jury in *Kim* conditions liability on whether "an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified." That is what § 1681s-2(b) says, verbatim. Moreover, Chase's proposed instruction replaces, without explanation, the statutory phrase "inaccurate or incomplete *or cannot be verified after any reinvestigation*" with "inaccurate or incomplete".

### Support for Chase's Opposition

*See* Support for Chase's version of Instruction No. 29.

**<u>Chase's Proposed No. 30 – Claim for Violation of California Consumer Credit Reporting Agencies Act, California Civil Code Section 1785.25(a)</u>**

Johnson contends that Chase violated the California Consumer Credit Reporting Agencies Act (also referred to as "CCRAA"), specifically California Civil Code section 1785.25(a). To establish a violation of section 1785.25(a), Johnson must prove each of the following by a "preponderance of the evidence":

1. Chase furnished information about Johnson to a "consumer reporting agency"
2. The information furnished by Chase was "incomplete or inaccurate";
3. Chase "knew or should have known" the information was incomplete or inaccurate;
4. Johnson was "subject to the protections of the CCRAA" at the time of the alleged violation(s);
5. Johnson suffered "actual damages" as a result of Chase's violation(s);
6. The violation was "negligent" or "willful."

**<u>Source</u>**

Cal. Civ. Code §§ 1785.25(a), 1785.31(a); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010) ("[T]he CCRAA 'is substantially based on the [FCRA]. … Thus, "judicial interpretation of the federal provisions is persuasive authority and entitled to substantial weight when interpreting the California provisions.") (quoting *Olson v. Six Rivers Nat'l Bank*, 111 Cal. App. 4th 1, 3, 3 Cal.Rptr.3d 301 (2003)); *see also Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1335 (9th Cir. 1995) ("The CCRAA mirrors the provisions of the FCRA."); *Cisneros v. U.D. Registry, Inc.*, 39 Cal. App. 4th 548, 570, 46 Cal.Rptr.2d 233 (1995) (stating FCRA and CCRAA have similar requirements for a CRA to follow reasonable procedures to assure accuracy when preparing consumer credit reports); *Crawford v. Uber Techs., Inc.*, No. 17-CV-02664-RS, 2018 WL

1116725, at *4 (N.D. Cal. Mar. 1, 2018) ("California has a strong presumption against extraterritorial application of its laws." (citing *North Alaskan Salmon Co. v. Pillsbury,* 174 Cal. 1, 4 (1916)); Cal. Civ. Code §§ 1785.1(e), 1785.6; *see also: Michael Grecco Prods., Inc. v. NetEase Info. Tech. Corp.*, No. 18-3119 DSF (RAOX), 2018 WL 6443083, at *2 (C.D. Cal. Aug. 28, 2018) (recognizing that in the context of a copyright infringement claim, extraterritoriality is decided as an element of a claim rather than an issue of subject matter jurisdiction).

## Support for Johnson's Opposition

*See* support for Johnson's version of Instruction No. 30.

## Support for Chase's Position

Johnson's proposed single-sentence version of instruction no. 30 is imprecise and incomplete and should not be adopted. The phrase "engaged in credit reporting" is inaccurate: "credit reporting" is an activity of consumer reporting agencies, not furnishers. Section 1785.25(a) governs furnishers who knowingly or negligently furnish inaccurate or incomplete information to consumer reporting agencies. Furnishers like Chase are engaged in "furnishing" and consumer reporting agencies (like Equifax, Experian and TransUnion) are "engaged in credit reporting."

Beyond the imprecision, Johnson's instruction collapses what are properly distinct elements into a single sentence without asking the jury to find each separately. Johnson's proposed instruction omits actual damages entirely. That omission conflicts with the statute. Cal. Civ. Code § 1785.31(a) requires a plaintiff to prove actual damages as a predicate to recovery. An instruction that omits this element would permit the jury to award recovery without finding that Johnson suffered any harm — a result the statute does not permit.

His proposed instruction likewise omits the requirement that to prevail, he must prove a negligent or willful violation and that he was a California resident at the time of the violation. Chase's proposed instruction addresses these

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    11
2:22-CV-06718-AB-MAA
**WBD (US) 4905-4121-8482**

shortcomings. Johnson's criticism of Chase's instruction focuses on the "subject to protections of the CCRAA" element. The statutory source of this element is set out in Chase's Motion in Limine No. 12, which Chase incorporates here by reference. In brief: "California has a strong presumption against extraterritorial application of its laws." *Crawford v. Uber Techs., Inc.,* No. 17-CV-02664-RS, 2018 WL 1116725, at *4 (N.D. Cal. Mar. 1, 2018) (citing *North Alaskan Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916)). "However far the Legislature's power may theoretically extend, [it is] presume[d] the Legislature did not intend a statute to be 'operative, with respect to occurrences outside the state, ... unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history.' " *Sullivan v. Oracle Corp.,* 51 Cal. 4th 1191, 1207 (2011) (citations omitted); *In re Albert W.*, 240 Cal. App. 4th 411, 418 (2015) ("statutes do not apply extraterritorially absent an explicit legislative indication"). Where a California law "contains no language that indicates its protections should be extended to individuals in other states . . . basic principles of federalism prevent the extension of the California protections to people who do not live in California and have not suffered harm in the state." *Crawford,* 2018 WL 1116725, at *15 (citation omitted.)

The CCRAA contains no language that indicates its protections should be extended to individuals in other states. To the contrary, it expressly states it was enacted to "regulate consumer credit reporting agencies pursuant to this title in a manner which will ***best protect the interests of the people of the State of California***." Cal. Civ. Code § 1785.1(e) (emphasis added). The presumption against extraterritorial application applies.

Johnson alleges in the Complaint that he has resided in California since March 2019. Dkt. No. 1, ¶ 1. He opened the account in January 2017 while residing in North Carolina. Alleged violations occurring while he resided outside California

---

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    12
2:22-CV-06718-AB-MAA
**WBD (US) 4905-4121-8482**

are not actionable under the CCRAA, and the jury must be instructed accordingly. *See e.g. Michael Grecco Prods., Inc. v. NetEase Info. Tech. Corp.*, No. 18-3119 DSF (RAOX), 2018 WL 6443083, at *2 (C.D. Cal. Aug. 28, 2018) (recognizing that in the context of a copyright infringement claim, extraterritoriality is decided as an element of a claim rather than an issue of subject matter jurisdiction).

Johnson's reliance on *Fernandez v. CoreLogic Credco, LLC*, 593 F. Supp. 3d 974 (S.D. Cal. 2022), is misplaced. *Fernandez* recognized the same presumption against extraterritoriality that Chase invokes here, but reached a different result. Unlike here, in *Fernandez*, the Chase's principal place of business was alleged to be in California and all wrongful conduct was alleged to have emanated out of California. Chase is a national bank with its main office in Columbus, Ohio. *See* Dkt. No. 1, ¶ 2. The furnishing conduct Johnson challenges did not occur in California simply because Johnson later moved here. Under *Fernandez*'s own framework, the place of the wrong for Johnson's pre-residency claims is not California — and the CCRAA does not reach it.

Johnson's argument that "Chase's proposed phrase is vague, legally loaded, and would invite the jury to decide an issue of statutory interpretation," is misplaced. Contrary to his argument, the phrase is not vague for lack of definition – it is defined in Instruction No. 38, which explains that Johnson cannot invoke the protection of California law while not residing in California. The jury is not asked to interpret the statute but to make a factual finding about whether Johnson was a resident of California at the time of the alleged CCRAA violation. And, by proposing the jury instruction, Chase *is* – as Johnson suggests it should – asking the Court to make the legal ruling that the CCRAA does not apply extraterritorially, and then on that basis, instruct the jury that Johnson cannot seek recovery under the CCRAA for alleged violations that occurred while Johnson was residing outside the state.

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    13
2:22-CV-06718-AB-MAA

Finally, the Ninth Circuit's affirmance of the *Kim* judgment did not address the CCRAA instruction — there was no challenge to it on appeal. *Kim v. BMW Fin. Servs. NA LLC*, 702 F. App'x 561, 563 (9th Cir. 2017). Affirmance of a judgment does not validate every instruction given at trial, and silence on appeal is not endorsement. As already discussed, Johnson's proposed instruction does not faithfully mirror the statutory text and omits crucial elements.

Chase's version of the instruction should be given.

**Johnson's Proposed No. 30 – Duties of Furnishers of Credit Information under the California Consumer Credit Reporting Agencies Act**

Johnson also claims Chase violated the California Consumer Credit Reporting Agencies Act.

To prove a violation of the California Consumer Credit Reporting Agencies Act, Johnson must prove that Chase engaged in credit reporting which Chase knew, or should have known, was inaccurate or incomplete.

**Source**

Cal. Civ. Code § 1785.25(a).

**Support for Johnson's Position**

Johnson's proposed instruction mirrors 15 U.S.C. § 1681s-2(b). It is identical to the instruction used in the most recent CCRAA trial in this district. Jury Instructions, *Kim v. BMW Fin. Servs. N.A., LLC*, No. CV 14-01752 BRO (SHx) (C.D. Cal. Aug. 28, 2015), ECF No. 145-1; *Seungtae Kim v. BMW Financial Services NA, LLC*, 142 F. Supp. 3d 935, 948 (C.D. Cal. 2015), aff'd, 702 F. App'x 561 (9th Cir. 2017). That instruction survived scrutiny by the Ninth Circuit, which found that "the district court fully instructed the jury on the elements of a claim under FCRA". *Id.*

*"[S]ubject to the protections of the CCRAA".* Chase also argues that an "element" of a claim under Cal. Civ. Code § 1785.25(a) is that the consumer be "subject to protections of the CCRAA".

First, Chase's proposed element is nowhere to be found in Cal. Civ. Code § 1785.25(a), nor anywhere within the CCRAA, and Chase points to no authority holding that this is an element of a claim under section 1785.25(a). Section 1785.25(a) is framed around the furnisher, not the consumer. It contains no separate element requiring the consumer to prove California residency, a California mailing address, or any other geographic status at the time of the furnishing. It certainly

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    15
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

does not say that the consumer must prove that he was "subject to the protections of the CCRAA." Chase cites no authority holding that California residency is an element of a § 1785.25(a) claim. *See also Fernandez v. CoreLogic Credco, LLC*, 593 F. Supp. 3d 974 (S.D. Cal. 2022) (finding "no case law in support of [the] novel proposition that the CCRAA only affords protection to consumers with a California mailing address").

Second, Chase's proposed phrase is vague, legally loaded, and would invite the jury to decide an issue of statutory interpretation. Whether a statute reaches particular conduct is a legal question for the Court, not a free-floating factual element for the jury. If Chase contends that the CCRAA's territorial scope bars some part of Plaintiff's claim, Chase must ask the Court for that legal ruling. It is not proper to instruct the jury that Plaintiff must prove he was "subject to the protections of the CCRAA" without first defining what that phrase means and without identifying any statutory source for that purported element.

Third, Chase's authorities do not support the proposed element. Chase relies on general principles concerning the presumption against extraterritoriality, but those principles do not create a California-residency element in § 1785.25(a). Nor do Civil Code §§ 1785.1(e) or 1785.6 do so. Section 1785.1(e) is a statement of legislative purpose, not an operative element of a furnisher-liability claim. Section 1785.6 addresses when certain "notices and disclosures to consumers" are required to be made; it does not rewrite § 1785.25(a) or limit that furnisher-liability provision to California residents only. If the Legislature had intended California residency to be an element of § 1785.25(a), it knew how to say so. It did not.

### Support for Chase's Opposition

See support for Chase's version of Instruction No. 30.

**Chase's Proposed No. 32 – Meaning of "Inaccurate or Incomplete"**

An item on a credit report can be "inaccurate or incomplete" because it is patently incorrect, or because it is misleading in such a way that it can be expected to adversely affect credit decisions. To be actionable under the FCRA and CCRAA, the disputed item must involve information that is objectively and readily verifiable as mistake- or error-free based on information available to the furnisher at the time of the dispute. The alleged inaccuracy cannot turn on questions that can only be resolved by a court of law, such as legal defenses to payment, or that involve complex fact gathering, credibility determinations or in depth legal analysis.

**Source**

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) ("[A] credit entry can be 'incomplete or inaccurate' within the meaning of the FCRA 'because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'"), citing e.g. *Sepulvado v. CSC Credit Servs., Inc.,* 158 F.3d 890, 895 (5th Cir.1998); *Mehta v. Wells Fargo Bank, N.A*., No. CV 17-02532-AB (SSX), 2018 WL 5880758, at *3 (C.D. Cal. Feb. 6, 2018) (citing *Biggs v. Experian Info. Sols., Inc*., 209 F. Supp. 3d 1142, 1144 (N.D. Cal. 2016) (The alleged inaccuracy must be a factual inaccuracy; "the presentation of legal defenses to payment will not suffice."); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010) ("[C]ourts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims."); *Chiang v. Verizon New Eng. Inc.,* 595 F.3d 26, 38 (1st Cir.2010) ("[F]urnishers are 'neither qualified nor obligated to resolve' matters that 'turn[ ] on questions that can only be resolved by a court of law.' ")), *but see: Gross v. CitiMortgage, Inc*., 33 F.4th 1246, 1253 (9th Cir. 2022) (recognizing that the "FCRA does not categorically exempt legal issues from the investigations that furnishers must conduct."); *Roberts v.*

---

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                              17
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

*Carter-Young, Inc.,* 131 F.4th 241, 251 (4th Cir. 2025) ("The Second Circuit recently … held that 'reported information is actionably "inaccurate" only if that information is objectively and readily verifiable' as mistake- or error-free. …That makes sense. Furnishers are not tribunals. They have neither the resources nor the expertise to conduct the level of investigation that takes place in judicial proceedings or to make the kinds of determinations about disputes that courts make. But furnishers can investigate disputes about 'objectively and readily verifiable' information."), citing *Sessa v. Trans Union, LLC*, 74 F.4th 38, 42 (2d Cir. 2023) (citing *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269 (2d Cir. 2023)); *Roberts,* 131 F.4th at 251 ("Inaccuracy or incompleteness under the FCRA is not synonymous with legally recoverable or legally valid. For instance, a dispute that involves complex fact-gathering and in-depth legal analysis of the sort that courts would typically perform is not objectively and readily verifiable. A dispute that implicates unsettled questions of law and requires credibility determinations and quasi-discovery isn't either. Inaccuracies that are objectively and readily verifiable do not include claims of tortious conduct that require a furnisher to evaluate the subjective nature of the parties' actions—such as claims of fraud or retaliation."); *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1369 (11th Cir. 2024) ("in determining whether a claimed inaccuracy is potentially actionable under [§ 1681s-2], a court must determine, *inter alia*, whether the information in dispute is 'objectively and readily verifiable' "); *Reyes v. Equifax Info. Servs., L.L.C.,* 140 F.4th 279, 288 (5th Cir. 2025) ("the alleged inaccuracy reported by the consumer reporting agency must first be 'sufficiently objectively verifiable' to be actionable under the FCRA"); *Rozov v. Bank of Am., N.A.*, 2025 WL 1620921, at *3 (11th Cir. June 9, 2025); *Davis v. Trans Union, LLC*, No. 2:22-CV-05819-SPG-AS, 2025 WL 2851881, at *9 (C.D. Cal. July 22, 2025) ("in light of the weight of authority from other Circuits, the Court will instead apply the "objectively and readily verifiable"

---

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS          18
2:22-CV-06718-AB-MAA

test to analyze whether Johnsons' claimed inaccuracies are actionable.") (citing *Hebrank v. Early Warning Servs., LLC*, No. CV-24-03711-PHX-MTL, 2025 WL 1148801, at *3-4 (D. Ariz. Apr. 18, 2025) *Stone v. Equifax Info. Servs., LLC*, No. 2:24-cv-00195-GMN-EJY, 2025 WL 359327, at *3 (D. Nev. Jan. 30, 2025)).

<b><u>Support for Johnson's Opposition</u></b>

*See* Support for Johnson's version of Instruction No. 32.

<b><u>Support for Chase's Position</u></b>

**On "incomplete or inaccurate."** Johnson is correct that *Gorman* uses "incomplete or inaccurate" and that Chase's original instruction focused solely on "inaccurate." Chase's revised instruction corrects this and uses "inaccurate or incomplete" throughout, consistent with *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

**On the legal/factual distinction.** *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246 (9th Cir. 2022), criticized the legal/factual binary as "ambiguous, potentially unworkable," and rejected its operation as a categorical bar to FCRA claims involving legal questions. But *Gross* did not hold that the legal character of a dispute is always irrelevant, or that furnishers are required to investigate disputes that turn on contested legal questions. What *Gross* rejected was the shortcut of labeling a dispute "legal" to avoid investigation when a reasonable investigation would actually answer the question. Where the alleged inaccuracy genuinely turns on issues such as the legal effect of unsettled contract principles — that furnishers are institutionally incapable of resolving, the legal/factual distinction retains its force. *Gross* narrowed its application; it did not eliminate it. The instruction's reference to a legal defense to payment that turns on disputed issues of fact is consistent with *Gross* because it does not invoke the distinction as a categorical bar — it applies it to the specific character of this dispute, which turns on what was said and agreed in a September 2017 phone call, the credibility of competing

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS
2:22-CV-06718-AB-MAA

19

WBD (US) 4905-4121-8482

accounts, and the legal effect of an oral exchange. That is precisely the kind of dispute the surviving core of the legal/factual distinction was designed to address.

***"Objectively and readily verifiable" standard.*** The objectively and readily verifiable standard is the natural successor to *Gross*. By rejecting the legal/factual binary as "ambiguous, potentially unworkable," *Gross* identified precisely the need that objectively and readily verifiable fills: a framework for determining which disputes fall within the FCRA's reach. Rather than the legal/factual distinction this Circuit embraced and *Gross* identified as at times problematic, the question it asks is whether the answer can be confirmed or refuted from objective evidence available to the furnisher, without resort to the kind of inquiry only a court can perform.

The Ninth Circuit has not yet formally adopted the standard, but four circuits have. *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 251 (4th Cir. 2025); *Sessa v. Trans Union, LLC*, 74 F.4th 38, 42 (2d Cir. 2023); *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269 (2d Cir. 2023); *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1369 (11th Cir. 2024); *Reyes v. Equifax Info. Servs., L.L.C.*, 140 F.4th 279, 288 (5th Cir. 2025). District courts within the Ninth Circuit have begun applying it as persuasive authority. *Davis v. Trans Union, LLC*, No. 2:22-CV-05819-SPG-AS, 2025 WL 2851881, at *9 (C.D. Cal. July 22, 2025); *Hebrank v. Early Warning Servs., LLC*, No. CV-24-03711-PHX-MTL, 2025 WL 1148801, at *3–4 (D. Ariz. Apr. 18, 2025); *Stone v. Equifax Info. Servs., LLC*, No. 2:24-cv-00195-GMN-EJY, 2025 WL 359327, at *3 (D. Nev. Jan. 30, 2025). It is the framework most likely to be adopted in the Ninth Circuit for cases of this nature — and the most persuasive one available for the Court to apply here.

Johnson's jury-question argument rests on a non sequitur. The cases adopting the standard applied it as a legal-sufficiency inquiry, Johnson observes — so a jury cannot apply it. But none of those courts considered whether the standard is also

capable of jury application; they simply didn't face the question. And nothing about the standard's substance makes it jury-proof. The jury here will hear testimony about what records were available to Chase at the time of the dispute. Asking jurors to assess whether the evidence shows Chase had access to records sufficient for objective verification is asking them to resolve a factual question, not to issue a legal ruling. That is what juries do.

***On the bona fide dispute language.*** Neither the FCRA nor the CCRAA provides a private right of action for a furnisher's failure to report a dispute. Under the FCRA, that obligation arises under § 1681s-2(a)(3), which is expressly excluded from private enforcement. 15 U.S.C. § 1681s-2(c)(1); *Gorman*, 584 F.3d at 1162 ("Gorman has no private right of action under § 1681s–2(a)(3) to proceed against MBNA for its ***initial*** failure to notify the CRAs that he disputed the Four Peaks charges.") (emphasis added).

Under the CCRAA, the parallel obligation under California Civil Code § 1785.25(c) is expressly preempted by the FCRA. 15 U.S.C. § 1681t(b)(1)(F); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010). California district courts have consistently held that a failure-to-report-dispute claim cannot be repackaged as a § 1785.25(a) claim to avoid preemption. *See Faircloth v. AR Res., Inc.*, No. 19-CV-05830-JCS, 2020 WL 2747781, at *7 (N.D. Cal. May 27, 2020); *Wang v. Asset Acceptance LLC*, 681 F. Supp. 2d 1143, 1147–48 (N.D. Cal. 2010).

*Gorman* recognized a narrow path through this wall. A furnisher who fails to correct its initial failure to notify CRAs of a dispute pursuant to 15 U.S.C. § 1681s-2(a)(3) —may face liability under § 1681s-2(b)(1)(D). The Ninth Circuit adopted the Fourth Circuit's reasoning in *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142 (4th Cir. 2008), that Congress intended furnishers to review reports "not only for inaccuracies in the information reported but also for omissions that render

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    21
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

the reported information misleading," and that "[n]o court has ever suggested that a furnisher can excuse its failure to identify an inaccuracy when reporting pursuant to § 1681s–2(b) by arguing that it should have *already* reported the information accurately under § 1681s–2(a)." *Gorman*, 584 F.3d at 1163 (citing *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142 (4th Cir. 2008)) (emphasis in original). But both cases presuppose an antecedent section 1681s-2(a) obligation that the furnisher failed to discharge — something to correct in the first place. The "bona fide dispute" language Johnson quotes describes the merits standard for a claim that has already cleared those threshold requirements. It is not a standalone theory of liability that bypasses them.

In *Gorman*, the predicate arose from Regulation Z, 12 C.F.R. § 226.13, which imposed specific procedures for disputed charges under the Truth in Lending Act. *See Gorman*, 584 F.3d at 1161 n.15. The furnisher was alleged to have had a Regulation Z obligation to report the dispute under section 1681s-2(a)(3), failed to do so, and was then alleged to have compounded that failure by not correcting it during its section 1681s-2(b) investigation. The section 1681s-2(b)(1)(D) liability depended entirely on the existence of that antecedent obligation.

Johnson has no equivalent predicate. Since *Gorman*, section 1681s-2(a)(8) has created an additional path: a consumer may dispute accuracy directly with a furnisher, triggering a § 1681s-2(a) obligation that could carry through to section 1681s-2(b)(1)(D) liability if not corrected. But section 1681s-2(a)(8) requires a written dispute submitted to the furnisher's designated address. § 1681s-2(a)(8)(D). Johnson has not alleged, and the record does not show, that he submitted any such dispute. That ends the inquiry.

The broader statutory structure confirms it. When a CRA-initiated investigation fails to resolve a dispute, Congress provided a specific mechanism for noting the dispute on the credit report: the consumer files a brief statement under

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    22
2:22-CV-06718-AB-MAA
**WBD (US) 4905-4121-8482**

section 1681i(b), and the CRA must note it in any subsequent report. 15 U.S.C. § 1681i(c). At the close of investigation, the CRA must notify the consumer of precisely this right. 15 U.S.C. § 1681i(a)(6)(B)(iv). That mechanism makes sense only if the furnisher carries no independent obligation to note the dispute. If Johnson's reading were correct, section 1681i(b)-(c) would be superfluous — and Johnson's reading also produces an absurd result: a furnisher would be required to notify a CRA of a dispute the CRA had just originated and forwarded to the furnisher. The obligation for a furnisher to report a dispute makes sense when the dispute travels from consumer to furnisher and the CRA would otherwise have no way of knowing about it. It makes no sense when the CRA is the source, and failure to include a dispute itself does not render a report misleading if the consumer opts out of the right to impose the obligation on the CRA. *See Florence v. Experian Info. Sols., Inc.*, 775 F. App'x 308, 309 (9th Cir. 2019) ("Finally, the rereporting was not rendered materially misleading by the report's absence of a statement of dispute from the Florences. The FCRA states that, '[i]f the reinvestigation does not resolve the dispute, the consumer may file a brief statement setting forth the nature of the dispute.' 15 U.S.C. § 1681i(b). …After Experian finished the reinvestigations, the Florences did not submit any subsequent statement of dispute. Therefore, the absence of a statement of dispute does not make the rereporting materially misleading.").

Because no predicate obligation attached here and neither statute independently supports a bona fide dispute claim, Johnson's proposed instruction would invite the jury to award recovery for conduct that is not privately enforceable — precisely the result Motion in Limine No. 10 addresses.

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                23
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

**Johnson's Proposed No. 32 – "Inaccurate or Incomplete"**

An item on a credit report can be inaccurate because it is patently incorrect, or because it is misleading in such a way that it can be expected to adversely affect credit decisions. The failure to report a bona fide dispute, a dispute that could materially alter how the reported debt is understood, renders the reporting incomplete or inaccurate.

**Source**

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1160 (9th Cir. 2009). *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1253 (9th Cir. 2022).

**Support for Johnson's Position**

In the Ninth Circuit, "a credit entry can be 'incomplete or inaccurate' within the meaning of the FCRA 'because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009). Moreover, "the failure to report a bona fide dispute, a dispute that could materially alter how the reported debt is understood, [] gives rise to a furnisher's liability under § 1681s–2(b)." *Id*. This is exactly what Johnson's proposed instruction states. Nothing more, nothing less.

*Bona fide dispute.* Chase concedes that *Gorman* is law and that "a furnisher that fails to correct an initial omission after completing its § 1681s-2(b) investigation may face liability under § 1681s-2(b)(1)(D)" but argues that *Gorman* imposes a "threshold requirement — the consumer must have submitted a written direct dispute to the furnisher at the address designated for such disputes. 15 U.S.C. § 1681s-2(a)(8)(D)." *See also* Chase's Motion in Limine No. 10, fn. 2.

Chase is wrong. *Gorman* does not hold that § 1681s-2(a)(8)'s direct-dispute requirement operates as a precondition to a § 1681s-2(b) claim premised on a furnisher's failure to note a bona fide dispute. Chase cites no specific passage from

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                                    24
2:22-CV-06718-AB-MAA

Gorman in support of this argument nor any authority. Its proposed reading of Gorman is anachronistic. *Gorman* was decided in 2009 but the FCRA's direct-dispute provision in § 1681s-2(a)(8), added by the Fair and Accurate Credit Transactions Act of 2003, did not take effect until July 1, 2010. The Court in *Gorman* expressly stated that "[a]dditional amendments, not relevant here, were made by the Fair and Accurate Credit Transactions Act of 2003, Pub. L. No. 108-159, 117 Stat. 1952." *Id* (emphasis added).

*"Objectively and readily verifiable" standard.* Chase wants the jury to decide whether the "involve[d] information that [was] objectively and readily verifiable as mistake- or error-free based on information available to the furnisher at the time of the dispute". First, as of a week ago, it remains the case that "[t]he Ninth Circuit has not adopted the 'objectively and readily verifiable' standard." *Bullard v. Equifax Info. Servs. LLC*, 2026 WL 1481314 (D. Ariz. May 27, 2026). Chase's aspirational language is borrowed from a standard that has been adopted, in certain contexts, in other circuits. *See, e.g., Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 251 (4th Cir. 2025). Even Chase's out-of-circuit authorities do not support handing this issue to the jury. Every case Chase cites applied the standard as a Court-facing legal-sufficiency inquiry—on Rule 12(b)(6), Rule 12(c), or Rule 56—not as a factual element for jurors to decide. Here, the definition of "inaccurate or incomplete" is laid out in *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009.

Chase also wants the jury to decide whether the "alleged inaccuracy" "turn[s] on questions that can only be resolved by a court of law, such as legal defenses to payment, or that involve complex fact gathering, credibility determinations or in depth legal analysis." In support, Chase cites a number of old district court cases or out-of-circuit cases. Each of these predate *Gross*. In *Gross*, the Ninth Circuit held that the FCRA may "require furnishers to investigate, and even to highlight or

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                25
2:22-CV-06718-AB-MAA

resolve, questions of legal significance" and "does not categorically exempt legal issues from the investigations that furnishers must conduct". Moreover, even if Chase's proposed language were law (which it is not), it would also be a Court-facing inquiry. Jurors are obviously not qualified to decide whether a question "can only be resolved by a court of law".

## Support for Chase's Opposition

*See* Support for Chase's version of Instruction No. 32.

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    26
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

## No. 33 – Right to Add Statement of Dispute

Within 5 business days after the expiration of the 30-day period for investigation a consumer's dispute received through a consumer reporting agency, the consumer reporting agency shall provide written notice to the consumer of the results of the investigation by mail or, if authorized by the consumer for that purpose, by other means available to the agency. As part of or in addition to that notice, the consumer reporting agency will provide the consumer with:

1. A report reflecting the consumer's file as a result of the investigation;

2. A notice that, if requested by the consumer, a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer by the agency, including the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available; and,

3. A notice that if the investigation of the consumer's dispute does not resolve the dispute, the consumer may file a brief statement setting forth the nature of the dispute.

Whenever a statement of a dispute is filed, unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof.

### Source

15 U.S.C. § 1681i(a)(6)(A) ("A consumer reporting agency shall provide written notice to a consumer of the results of a reinvestigation under this subsection not later than 5 business days after the completion of the reinvestigation, by mail or, if authorized by the consumer for that purpose, by other means available to the agency."); 15 U.S.C. § 1681i(a)(6)(B) ("As part of, or in addition to, the notice

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    27
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

under subparagraph (A), a consumer reporting agency shall provide to a consumer … a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation;… a notice that, if requested by the consumer, a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer by the agency, including the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available;… a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the information"); 15 U.S.C. § 1681i(b) ("If the reinvestigation does not resolve the dispute, the consumer may file a brief statement setting forth the nature of the dispute."); 15 U.S.C. § 1681i(c) ("Whenever a statement of a dispute is filed, unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof."); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) ("Both the FCRA and CCRAA allow consumers who are dissatisfied by a reinvestigation to file a brief explanatory statement to be reported along with the disputed item. See 15 U.S.C. § 1681i(b)-(c); … 'In this way, potential creditors have both sides of the story and can reach an independent determination of how to treat a specific, disputed account.'") (internal citations omitted).

### **Support for Johnson's Opposition**

Chase's Proposed Instruction No. 33 should not be given. A jury instruction must fairly and adequately cover the issues presented, correctly state the law, and not mislead the jury. *Dang v. Cross*, 422 F.3d 800, 804 (9th Cir. 2005). And a party is not entitled to an instruction untethered to the claims, defenses, and evidence

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    28
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

actually before the jury. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Proposed Instruction No. 33 fails on each count, for four independent reasons.

First, the instruction describes a different statutory mechanism imposed on a different actor. Proposed Instruction No. 33 recites portions of 15 U.S.C. § 1681i(a)(6), (b), and (c). Those provisions impose duties on *consumer reporting agencies* following a CRA reinvestigation, and they describe a consumer's optional ability to file a brief explanatory statement with the CRA if the reinvestigation does not resolve the dispute. They impose no duty on Chase, which is a *furnisher*; they do not define any element of Plaintiff's claims; and they supply no affirmative defense.

Johnson's claims at trial are not based on any failure by a CRA. Johnson's claims concern Chase's own conduct as a furnisher: whether Chase, after receiving notice of Johnson's dispute via Equifax, conducted a reasonable investigation, and reported or verified information that was inaccurate, incomplete, or materially misleading—including by omitting the existence of a bona fide dispute. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154, 1157, 1162–63 (9th Cir. 2009).

Second, the instruction invites the jury to conflate two distinct concepts. It treats a consumer's optional statement of dispute filed with a CRA under § 1681i(b)–(c) as though it bore on a furnisher's separate duty not to report inaccurate, incomplete, or materially misleading information under § 1681s-2(b). It does not. That the FCRA permits a consumer, in some circumstances, to submit a brief statement to a CRA neither excuses a furnisher from accurately and completely responding to a dispute nor permits a furnisher to omit a bona fide dispute where that omission makes the reporting misleading. *Gorman* is directly on point: information may be "incomplete or inaccurate" where it is "patently incorrect" or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions," and the omission of a bona fide

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    29
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

dispute can render reporting misleading on that standard. *Gorman*, 584 F.3d at 1163. That theory has nothing to do with whether Johnson separately filed a post-reinvestigation statement with a CRA.

Third, the instruction is irrelevant and prejudicial because it implies an obligation Johnson never had. Johnson had no duty to file a § 1681i(b) statement in order to preserve a furnisher claim, prove inaccuracy or incompleteness, prove an unreasonable investigation, or recover damages. The statute provides that a consumer "may" file a statement; it does not require one. 15 U.S.C. § 1681i(b). There is no evidence Johnson filed such a statement, no claim that any CRA mishandled one, and no defense that turns on one. Instructing the jury on an optional, unused CRA procedure would invite it to fault Johnson for declining to take a step the law did not require and that forms no part of this case.

Chase's reliance on *Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876 (9th Cir. 2010), does not support the instruction. *Carvalho* was a CRA reinvestigation case; it explained that CRAs are not tribunals required to adjudicate legal defenses to a debt, *id*. at 891–92, and in that context observed that a dissatisfied consumer "may" file a brief explanatory statement with the CRA, *id*. at 892—describing a consumer election, not a precondition to a furnisher's duty to report accurately. *Carvalho* did not address a furnisher's liability for an unreasonable investigation or for reporting materially misleading information under § 1681s-2(b), and it did not limit *Gorman's* holding that omission of a bona fide dispute may render furnisher reporting incomplete or inaccurate.

Chase argues that "this instruction is also relevant to Chase's mitigation of damages defense" but Chase has not shown that such a statement would have changed any credit score, altered any automated credit decision, avoided any specific adverse action, or reduced damages by any measurable amount. The

proposed instruction would therefore invite the jury to treat an optional CRA procedure as a non-existent duty to mitigate and should be refused.

In sum, Proposed Instruction No. 33 states no element of Plaintiff's claim, states no defense, is unsupported by the evidence, and would mislead the jury by injecting a collateral CRA procedure into a furnisher-liability case. The Court should refuse it.

## **Support for Chase's Position**

Johnson seeks recovery from Chase for failure to notify Equifax that he disputes the accuracy of the information being reported about his account when – after Chase investigated Johnson's credit dispute that it received from Equifax – Chase provided Equifax with its response to that dispute. As explained in Chase's Opposition to Johnson's Proposed Instruction No. 32, discussing the meaning of "incomplete or inaccurate," there is no actionable obligation to provide such notice. As established by this instruction, if Johnson wanted his Chase trade line in Equifax's file to reflect that the reporting is disputed, Johnson had the right to require Equifax to report the dispute pursuant to 15 U.S.C. § 1681i(b-c). Chase objects to Johnson's version of Instruction No. 32, but if that instruction is given, the jury should also be instructed on the fact that Johnson need not have relied on Chase to notify Equifax of a dispute that Equifax had notified Chase about in the first place, and could have addressed any concerns with Equifax directly. To the extent that Johnson claims that he was damaged by Chase's failure to notify Equifax of the dispute, this instruction is also relevant to Chase's mitigation of damages defense, because any such damage could have been mitigated by Johnson's exercise of his right under 15 U.S.C. § 1681i(b).

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                                    31
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

### Chase's No. 34 – Meaning of "Reasonable Investigation"

A furnisher's investigation of a dispute received from a consumer reporting agency must be at least reasonable and non-cursory. Whether an investigation conducted by a furnisher in response to a consumer's notice of dispute is reasonable depends in large part on the allegations provided to the furnisher by the credit reporting agency. The pertinent question is whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute.

An investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate.

Johnson bears the burden of proving Chase's investigation was unreasonable.

### Source

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009) ("Requiring furnishers, on inquiry by a CRA, to conduct at least a reasonable, non-cursory investigation comports with the aim of the statute to "protect consumers from the transmission of inaccurate information about them.") (citation omitted); *Gross v. CitiMortgage, Inc.,* 33 F.4th 1246, 1251 (9th Cir. 2022) ("That 'investigation' must be at least 'reasonable' and 'noncursory.' ") (citing *Gorman,* 584 F.3d at 1157); *Gorman,* 584 F.3d at 1160 ("We agree that '[w]hether a reinvestigation conducted by a furnisher in response to a consumer's notice of dispute is reasonable ... depends in large part on ... the allegations provided to the furnisher by the credit reporting agency.' ") (quoting *Krajewski v. Am. Honda Fin. Corp.,* 557 F.Supp.2d 596, 610 (E.D.Pa.2008)); *Gorman,* 584 F.3d at 1157 ("The pertinent question is thus whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute.") (citing *Westra v. Credit Control of Pinellas,* 409 F.3d

825, 827 (7th Cir.2005) ("[The furnisher's] investigation in this case was reasonable given the scant information it received regarding the nature of [the consumer's] dispute.")); *Gross,* 33 F.4th 1246, 1252 ("Courts have also identified several factors that inform the reasonableness analysis, including: the furnisher's relationship to the debt and to the consumer; the level of detail in the credit reporting agency's notice of dispute; and the feasibility of implementing investigatory procedures, including training staff.") (citing *Gorman*, 584 F.3d at 1157; *Felts*, 893 F.3d at 1312; *Maiteki v. Marten Transport Ltd.*, 828 F.3d 1272, 1275 (10th Cir. 2016); *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 432 (4th Cir. 2004)); *Gorman,* 584 F.3d at 1161 ("We emphasize that the requirement that furnishers investigate consumer disputes is procedural. An investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate.")

### Support for Johnson's Opposition

*See* Support for Johnson's version of Instruction No. 34.

### Support for Chase's Position

*Gorman*'s central holding is not merely that furnishers must conduct a reasonable, non-cursory investigation — it is that reasonableness is measured against what the furnisher learned from the CRA's notice of dispute. The Ninth Circuit in *Gorman* confirms three separate times that the information the furnisher learns about the dispute from the CRA is the key factor to the reasonableness analysis:

(1) "We agree that '[w]hether a reinvestigation conducted by a furnisher in response to a consumer's notice of dispute is reasonable ... ***depends in large part on*** ... the allegations provided to the furnisher by the credit reporting agency.' " *Gorman*, 584 F.3d at 1160 (emphasis added) (quoting

*Krajewski v. Am. Honda Fin. Corp.,* 557 F.Supp.2d 596, 610 (E.D.Pa.2008)).

(2) "***The pertinent question*** is thus whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Gorman*, 584 F.3d at 1157 (emphasis added) (citing *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005)).

(3) "Gorman misreads *Johnson,* which recognized that the reasonableness of an investigation depends on the facts of the particular case, ***most importantly*** the CRA's description of the dispute in its notice." *Gorman*, 584 F.3d at 1160 (emphasis added) (citing *Johnson,* 357 F.3d at 431).

An instruction that omits this standard leaves the jury without the analytical framework the Ninth Circuit has prescribed. Johnson's instruction tells the jury that a reasonable investigation is required — and nothing more. That is not an instruction on the law; it is a restatement of the question.

Chase's second paragraph — that an investigation is not unreasonable merely because it reaches a conclusion unfavorable to the consumer — is drawn directly from *Gorman* and fills a gap Johnson's instruction creates. Without it, a jury may conflate the reasonableness of Chase's process with the outcome it produced. *Gorman* forecloses that conflation expressly, and the jury should be told so.

Johnson's instruction is so bare it would affirmatively mislead the jury by omission. Telling the jury only that the investigation must be "reasonable" and that a "superficial" one won't do gives them no standard to apply. Jurors left without guidance on what makes an investigation reasonable will supply their own — which may or may not track *Gorman*. The risk is not symmetrical: an uninstructed jury is more likely to ask whether Chase reached the right answer than whether its process was reasonable given what it learned from Equifax. That is precisely the

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    34
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

inquiry *Gorman* rejects.

*Kim* is inapposite. The Ninth Circuit affirmed only that the district court did not abuse its discretion in declining to give BMW's requested instruction — a ruling reviewed for abuse of discretion on a motion for new trial. *Kim v. BMW Fin. Servs. NA, LLC*, 702 F. App'x 561, 564 (9th Cir. 2017). That standard asks whether the instructions as a whole were "inadequate or misleading," not whether a more complete instruction would have been correct. The court said nothing about whether the *Gorman* elaboration accurately states the law, whether a court would err in giving it, or whether it would be preferable. Moreover, *Kim* is an unpublished memorandum disposition with no precedential value. Ninth Cir. R. 36-3. The question here is not whether Johnson's bare instruction clears the floor of adequacy — it may — but whether Chase's instruction more accurately guides the jury on the standard *Gorman* actually prescribed. *Kim* does not answer that question.

---

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    35
2:22-CV-06718-AB-MAA
**WBD (US) 4905-4121-8482**

**Johnson's No. 34 – Meaning of "Reasonable Investigation"**

To satisfy the requirements of Fair Credit Reporting Act, a furnisher's investigation of disputed derogatory credit information must be a reasonable investigation. A superficial or unreasonable investigation does not satisfy the Fair Credit Reporting Act's requirements.

**Source**

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1160 (9th Cir. 2009).

**Support for Johnson's Position**

Furnishers are required to conduct "a reasonable, non-cursory investigation". *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009); *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022) (the "'investigation' must be at least 'reasonable' and 'noncursory.'").

Johnson's proposed instruction closely tracks *Gorman* and is identical to the "reasonableness" instruction used in the most recent FCRA trial in this district. Jury Instructions, *Kim v. BMW Fin. Servs. N.A., LLC*, No. CV 14-01752 BRO (SHx) (C.D. Cal. Aug. 28, 2015), ECF No. 145-1; *Seungtae Kim v. BMW Financial Services NA, LLC*, 142 F. Supp. 3d 935, 948 (C.D. Cal. 2015), aff'd, 702 F. App'x 561 (9th Cir. 2017). That instruction survived scrutiny by the Ninth Circuit, which found that "the district court fully instructed the jury on the elements of a claim under FCRA". *Id*.

Chase proposes that the jury be told what it contends constitutes a "reasonable" investigation. But that is the province of the jury. Chase's proposed language is lifted from dicta in *Gorman*, and worse, elides an important footnote attached to that dicta ("the notice determines the nature of the dispute to be investigated" but does not "cabin[] the scope of the investigation once undertaken.")

In *Kim*, the Defendant proposed a instruction on reasonableness that is nearly

---

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                                      36
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

identical to the one proposed by Chase. When challenged in a Motion for New Trial, the district court found that "[w]hile the language in Defendant's proposed instruction reproduces language from the *Gorman* decision, the language appears as dicta" and "the Court did not err by declining to give a jury instruction defining 'reasonable' under the FCRA". *Kim v. BMW Fin. Servs. N.A., LLC*, No. CV 14-01752 BRO (SHx) (C.D. Cal. Aug. 28, 2015), ECF No. 145-1; *Seungtae Kim v. BMW Financial Services NA, LLC*, 142 F. Supp. 3d 935, 948 (C.D. Cal. 2015), aff'd, 702 F. App'x 561 (9th Cir. 2017). The Ninth Circuit agreed with the district court:

> [Defendant] contends that it is entitled to a new trial because the district court erred in refusing to give a requested jury instruction regarding the meaning of a "reasonable" investigation under FCRA. "We review challenges to the district court's formulation of the jury instructions for an abuse of discretion by determining whether the instructions, considered as a whole, were inadequate or misleading." Here, the district court fully instructed the jury on the elements of a claim under FCRA, including the requirement that any investigation be "reasonable." [Defendant] challenges not the accuracy of this instruction, but rather the district court's refusal to instruct the jury on additional language from the Gorman opinion. However, the instructions as a whole were not inadequate or misleading; they correctly described the requirement that any investigation be "reasonable." Accordingly, the district court did not abuse its discretion in declining to give [Defendant]'s requested instruction.

*Seungtae Kim v. BMW Financial Services NA, LLC*, 702 F. App'x 561 (9th Cir. 2017) (citations removed). Johnson's proposed instruction tracks Gorman and is identical to the instruction used in Kim.

### **Support for Chase's Opposition**

*See* Support Chase's version of Instruction No. 34.

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                                    37
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

## No. 35 – Meaning of "Knew or Should Have Known"

The phrase "knew or should have known" in reference to an "inaccuracy" means either having actual knowledge that the information is objectively not accurate or having specific knowledge, other than solely allegations by Johnson, that would cause a reasonable person to have substantial doubts about the accuracy of the information.

### Source

15 U.S.C. § 1681s-2(a)(1)(A) ("A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate."); § 1681s-2(a)(1)(D) ("For purposes of subparagraph (A), the term "reasonable cause to believe that the information is inaccurate" means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information."); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010) ("[T]he CCRAA 'is substantially based on the [FCRA]. … Thus, "judicial interpretation of the federal provisions is persuasive authority and entitled to substantial weight when interpreting the California provisions.") (quoting *Olson v. Six Rivers Nat'l Bank*, 111 Cal. App. 4th 1, 3, 3 Cal.Rptr.3d 301 (2003)); *see also Guimond*, 45 F.3d at 1335 ("The CCRAA mirrors the provisions of the FCRA.").

### Support for Johnson's Opposition

California Civil Code section 1785.25(a) provides that "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a).

Chase cites no case, state or federal, defining the phrase "knows or should know". None of the cases cites by Chase construe section 1785.25(a). Instead,

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                                     38
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

Chase provides a self-serving definition of a phrase used in a state statute, based an *altered* definition of a different phrase plucked from a different Federal statute, added by Congress over a decade after the California legislature enacted Cal. Civ. Code § 1785.25(a).

The "knows or should know the information is incomplete or inaccurate" term in the CCRAA was added in 1992. Act of Sept. 30, 1992, ch. 1194, § 11, 1992 Cal. Stat. (A.B. 1629). The "reasonable cause to believe that the information is inaccurate'" term—as well as the statutory definition—was added to the FCRA in 2003. Act of Dec. 4, 2003, Pub. L. No. 108-159, § 312(b)(1)–(2), 117 Stat. 1952, 1985. The intent of the California Legislature cannot be determined by a definition Congress added more than a decade later to a different phrase in a different federal statute enacted for a different purpose.

*Carvalho* and *Guimond* do not support Chase's interpretation. Neither case construed Civil Code section 1785.25(a). *Carvalho* addressed a CRA reinvestigation claim under section 1785.16 and used FCRA authority only to address inaccuracy. *Guimond* made only a general observation that the CCRAA mirrors the FCRA while discussing parallel CRA claims, and it expressly noted that the Johnson had not identified the specific CCRAA provision at issue. Neither case supports importing Congress's 2003 definition of a different phrase in a different federal subsection into California's earlier furnisher statute.

### **Support for Chase's Position**

The instruction is necessary because without it, the jury may conclude that Johnson's communications to Chase about his claim of inaccuracy were enough, standing alone, to charge Chase with knowledge. That is the argument Johnson will make, and it is wrong as a matter of law. The instruction corrects it.

The CCRAA provides that a person shall not furnish information to a consumer credit reporting agency if the person "knows or should know the

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    39
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a). That standard is objective. "Should know" asks what a reasonable person would have known — not whether the consumer repeated his objection often enough. Johnson's allegations, without more, do not satisfy an objective standard. A consumer's unilateral assertion that reported information is wrong does not make it so, and it does not give a furnisher reason to doubt its own records.

Johnson argues that the FCRA's express codification of this principle — that "reasonable cause to believe that the information is inaccurate" requires "specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts," 15 U.S.C. § 1681s-2(a)(1)(D) — cannot be imported into the CCRAA because Congress added that definition after California enacted § 1785.25(a). But the limitation Johnson wants to exclude — that a consumer's unilateral allegations are insufficient to establish a furnisher's knowledge of inaccuracy — is inherent in any objective knowledge standard. Congress codified what was already implicit; it did not create the rule.

Johnson is also correct that neither *Carvalho* nor *Guimond* addressed Section 1785.25(a) specifically. The principle those cases establish — that "judicial interpretation of the [FCRA] is persuasive authority and entitled to substantial weight when interpreting the [CCRAA]" because the CCRAA "'is substantially based on the [FCRA],'" *Carvalho*, 629 F.3d at 889 (quoting *Olson v. Six Rivers Nat'l Bank*, 111 Cal. App. 4th 1, 3 (2003) — is not limited to the subsections those cases happened to address. It is a general interpretive rule that Courts in this Circuit have applied to various aspects of the CCRAA analysis. *See e.g. Penney v. Experian Info. Sols., Inc.*, No. C 16-5695 SBA, 2017 WL 1078649, at *4 (N.D. Cal. Mar. 15, 2017) (citing to *Guimond* on finding no 1785.25(a) violation on the same basis as no FCRA violation); *Morgan v. LexisNexis Risk Sols. Inc.*, No. 1:25-CV-01188-KES-HBK, 2026 WL 1133267, at *7 (E.D. Cal. Apr. 27, 2026) (citing

*Guimond* and *Carvalho*: "Section 1785.25(a) similarly mirrors the FCRA as it 'prohibits knowingly furnishing 'incomplete or inaccurate' information to a consumer credit reporting agency.' "); *Wise v. Experian Info. Sols., Inc.*, No. CV 23-5513-KK-RAOX, 2024 WL 3337128, at *5 (C.D. Cal. June 18, 2024), appeal dismissed, No. 24-4147, 2024 WL 4512081 (9th Cir. Sept. 11, 2024) (same, citing *Olson v. Six Rivers Nat'l Bank*, 111 Cal. App. 4th 1, 12 (Cal. Ct. App. 2003)); *Duarte v. J.P. Morgan Chase Bank*, No. CV131105GHKMANX, 2014 WL 12561052, at *4, fn. 3 (C.D. Cal. Apr. 7, 2014) (citing to *Carvalho*, relies on FCRA cases as persuasive on what constitutes actual damages under CCRAA); *Newfield v. City Nat'l Bank, NA*, No. CV163833DSFJPRX, 2017 WL 540944, at *4 (C.D. Cal. Jan. 27, 2017) (citing to *Carvalho, Guimond, Olson* in granting summary judgment on permissible purpose claims under CCRAA based on outcome of analysis of parallel FCRA provisions).

Chase acknowledges that no California court has directly construed § 1785.25(a) to incorporate the FCRA's objective analysis. That gap cuts both ways. Johnson offers no authority construing § 1785.25(a) to require anything less than objective knowledge — and no authority holding that a consumer's unilateral allegations suffice. The Court is writing on a clean slate. The instruction proposed by Chase correctly states what the objective "should have known" standard has always meant, and the FCRA's express codification of that principle is persuasive confirmation. The instruction should be given.

## No. 36 – Conduct Not Actionable Under FCRA or CCRAA

Johnson may not seek damages under the FCRA or CCRAA based on Chase's handling of a dispute made directly to Chase (a "direct dispute") or Chase's handling of a dispute submitted to a third-party governmental agency such as the CFPB ("third-party dispute"). Johnson's claims are limited to Chase's investigation of the dispute it received from Equifax (the "indirect dispute").

### Source:

15 U.S.C. § 1681s-2(c-d); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 ("These duties arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b).") (citing *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059–1060 (9th Cir.2002)); *Gorman*, 584 F.3d at1154 ("§ 1681 s–2 limits this private right of action to claims arising under subsection (b)"); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010) (recognizing that section 1785.25(a) is the only substantive CCRAA furnisher provision specifically saved by the FCRA preemption); *Asad v. Experian Info. Sols., Inc.*, 2024 U.S. Dist. LEXIS 51724 (C.D. Cal. Mar. 21 , 2024); *Miller v. Westlake Servs. LLC,* 637 F. Supp. 3d 836, 848 (C.D. Cal. 2022).

### Support for Johnson's Opposition

Chase seeks an instruction that Plaintiff may not seek damages based on "Chase's handling of a dispute made directly to Chase (a 'direct dispute')". Chase's proposed instruction misstates the law, is argumentative, and will mislead the jury. The Defendant sought such an instruction in *Kim*. It fails here, for the same reason, namely that the instruction is unnecessary. As in *Kim*, "Defendant's proposed instruction [is] unnecessary because Plaintiff proceed[s] on a theory of FCRA liability based upon Defendant's responses to indirect disputes. Because the case law suggests Defendant should have considered information it received directly

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    42
2:22-CV-06718-AB-MAA

WBD (US) 4905-4121-8482

from Plaintiff that was relevant to the indirect disputes, Defendant's proposed instruction would [] risk[] confusing the jury and prejudicing Plaintiff." *Seungtae Kim v. BMW Fin. Servs. NA, LLC*, 142 F. Supp. 3d 935 (C.D. Cal. 2015) at 948 ("Direct Dispute Instruction"). See also Plaintiff's Opposition to Defendant's MIL No. 9.

There is no dispute that Chase's statutory obligations under the FCRA were triggered in August 2020 when Chase received notice from Equifax. Any information provided to Chase prior to, or during, that investigation, whether Chase reviewed that information, and whether Chase failed to retain that information—is relevant to the reasonableness of its investigation. See *Gorman* (the CRA's notice of dispute defines the nature of the dispute but does not "cabin[] the scope of the investigation once undertaken"); *Seungtae Kim v. BMW Financial Services NA, LLC*, 142 F. Supp. 3d 935, 948 (C.D. Cal. 2015), aff'd, 702 F. App'x 561 (9th Cir. 2017) (where a consumer had provided information directly to the furnisher relevant to the indirect dispute, the furnisher was obligated to consider it); *Miller v. Westlake Services LLC*, 637 F. Supp. 3d 836 (C.D. Cal. 2022) (failure to consult internal notes reflecting prior disputes, police reports, and investigative contacts supported a finding of unreasonableness); *Hinkle v. Midland Credit Management, Inc.*, 827 F.3d 1295, 1304 (11th Cir. 2016) (rejecting the argument that a furnisher may limit its investigation to what the CRA sent; holding that when a furnisher has dispute-related information beyond the ACDV, "it will often be reasonable" to review it).

Finally, California Civil Code section 1785.25(a) provides that "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a). Information that was provided to Chase directly by Johnson, by the CFPB, or by Equifax, as

well any information that Chase uncovered during in the context of those investigations, is plainly relevant to Chase's knowledge and therefore what it knew or should have known.

### Support for Chase's Position

Johnson's opposition conflates two distinct legal questions: what conduct is actionable, and what evidence bears on the reasonableness of an investigation once triggered. The instruction addresses the first. Johnson's cases go to the second. They do not conflict — and to the extent Johnson argues that direct dispute evidence is admissible at all, that is the subject of Chase's Motion in Limine No. 9.

On actionability, the law is settled. The FCRA limits private claims to subsection (b) — the duty to investigate disputes received from a CRA. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009) ("§ 1681s–2 limits this private right of action to claims arising under subsection (b)"; "notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)"), and the CCRAA direct dispute provision is preempted. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010). CFPB complaints fare no better — they are mechanisms for regulatory oversight, not statutory triggers for private liability.

Congress also addressed the knowledge question directly. Section 1681s-2(a)(1)(D) defines actionable knowledge to require "specific knowledge, other than solely allegations by the consumer." If direct dispute letters or CFPB complaints could establish "knowledge" for § 1785.25(a) purposes, that exclusion would have no practical effect — every non-actionable complaint could be repackaged as evidence of scienter, converting regulatory enforcement duties into private liability. That is the end-run Congress designed the statute to prevent.

Johnson's cases do not disturb this framework. Each is narrower than Johnson's parentheticals suggest. *Gorman*'s statement that CRA notice does not

---

"cabin[] the scope of the investigation once undertaken" addresses how broadly a furnisher must investigate after its statutory duty is triggered — not whether prior disputes independently inform the reasonableness analysis. The pertinent question under *Gorman* remains "whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." 584 F.3d at 1157. The ACDV defines the scope.

    *Kim* and *Miller* apply that same ACDV-anchored framework. Johnson's *Kim* parenthetical omits the court's limiting phrase: information is relevant to the indirect dispute investigation only if it bears on the nature of the dispute *as set forth in the ACDV* — not because it exists somewhere in Chase's files. *Seungtae Kim v. BMW Fin. Servs. NA, LLC*, 142 F. Supp. 3d 935, 948 (C.D. Cal. 2015), *aff'd*, 702 F. App'x 561 (9th Cir. 2017) ("'If Plaintiff provided Defendant with information relevant to the nature of the dispute, ***as set forth in the ACDV***, *Gorman* suggests that Defendant had an obligation to consider this information in conducting a reasonable investigation.") (citing *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 ("The pertinent question is thus whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute.")). *Miller* found an investigation unreasonable because analysts ignored information attached to or accessible during the ACDV review itself — not because the furnisher failed to canvass prior dispute history. *Miller v. Westlake Servs. LLC*, 637 F. Supp. 3d 836, 850–51 (C.D. Cal. 2022). *Hinkle* is out-of-circuit, confined to a down-the-line debt buyer with no account-level documentation, and its own reasoning turns on the same ACDV-framing principle. *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302, 1306 (11th Cir. 2016). None of these cases mandates allowing Johnson to use prior direct dispute evidence to establish liability for an indirect dispute investigation.

    Allowing the jury to hear evidence of direct disputes and CFPB complaints

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS       45
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

without limiting instruction would impose precisely the "notice equals liability" standard Congress rejected. As Chase argues in Motion in Limine No. 9, that evidence should be excluded entirely. Whether or not it comes in, the jury must be instructed that it cannot form the basis for liability.

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                 46
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

## No. 37 – Response to Indirect Dispute Not Actionable Under CCRAA

The information that Chase submits to a consumer reporting agency in response to an "indirect dispute" Chase receives from the consumer reporting agency is not actionable under section 1785.25(a) of the Civil Code.

### Source

15 U.S.C. § 1681t(b)(1)(F)(ii); *Wang v. Asset Acceptance, LLC,* 681 F. Supp. 2d 1143 (N.D. Cal. 2010); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 882 (9th Cir. 2010).

### Support for Johnson's Opposition

Section 1785.25(a) of the California Civil Code provides that "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Johnson's claim is that, from late 2017 through early 2022, Chase furnished the credit reporting agencies with information about his account that it knew or should have known was incomplete or inaccurate. Section 1785.25(a) is, as Chase concedes, the one furnisher provision Congress expressly exempted from FCRA preemption.

Chase's preemption argument does not reach that furnishing as a whole. Instead, it targets a single instance: the response Chase furnished in September 2020 after Equifax forwarded Johnson's indirect dispute in August 2020. Chase argues that this response is not information on a specific transaction or experience, and that a § 1785.25(a) claim based on it is really a relabeled and preempted § 1785.25(f) claim. Neither is right.

The first assertion—for which Chase cites no authority, controlling or persuasive, and none exists—confuses content with timing: "information on a specific transaction or experience" describes the consumer's own dealings with the furnisher, and information about Johnson's account qualifies whether it was

reported routinely or in response to a dispute.

The second assertion fails because § 1785.25(f) and § 1785.25(a) concern different duties. Section 1785.25(f) regulates the investigation a furnisher must perform after a dispute: investigate and report the results of the investigation to the agency. Section 1785.25(a) forbids furnishing information the furnisher knows or should know is false.

The provisions regulate different communications between a furnisher and CRAs. One provision regulates the reporting of the *results of an investigation*; the other regulates the furnishing of *inaccurate information about the account*. Those are not the same. That Chase furnished its response in the course of a § 1681s-2(b) investigation does not change which one governs: a claim that the response was inaccurate is a § 1785.25(a) claim, and (f) imposes no accuracy duty for it to be a relabeled version of.

Chase's argument appears to rest on a corrective duty borrowed from 15 U.S.C. § 1681s-2(b)(1)(E) that does not appear in § 1785.25(f). Subdivision (D) of section 1681s-2(b) requires a furnisher to "report the results of the investigation". Subdivision (E) *separately* requires the furnisher to "modify", "delete", or "permanently block" any inaccurate information. Years before Congress added the furnisher duties in 1996, the California legislature chose not to place a limited post-investigation corrective duty in § 1785.25(f). Instead, it placed a broader duty in § 1785.25(a), and Congress expressly saved from preemption.

*Wang* is not to the contrary. The court there declined to read § 1785.25(a) to cover a furnisher's failure to flag a dispute only because § 1785.25(c) imposed that precise duty, so the broad reading would have left (c) with nothing to do. *Wang v. Asset Acceptance, LLC*, 681 F. Supp. 2d 1143, 1147–48 (N.D. Cal. 2010). Nothing is rendered superfluous here: § 1785.25(f) regulates the investigation—a subject (a) does not reach—so reading (a) to cover this furnishing leaves (f) wholly intact, and

no CCRAA provision is duplicated. The overlap Chase identifies is overlap with the federal scheme—exactly what the preemption carve-out exists to protect. Chase does not dispute that its furnishing is otherwise actionable under § 1785.25(a), even though that furnishing overlaps U.S.C. § 1681s-2(a)(1)(A); the single response it carves out is no different. The only question is whether § 1785.25(a) reaches it, and it does. The instruction misstates the law and should not be given.

In *Panchenko*, the Court found that "even though Panchenko's claim is styled as a § 1785.25(a) claim, in substance, he is asserting that Comenity conducted an inadequate investigation under § 1785.25(f)." In addition to his § 1785.25(a) claim, Johnson also contends that Chase's 2020 investigation was inadequate, but this was properly pled and preserved under U.S.C. § 1681s-2(b).

## Support for Chase's Position

Johnson seeks to recover under section 1785.25(a) of the CCRAA based on information Chase submitted to Equifax in response to Johnson's dispute Equifax transmitted to Chase in 2020. His theory is that the response to Equifax was an inaccurate or incomplete transmission and that Chase knew or should have known as much. But that conduct – Chase's response to an indirect dispute — is not governed by section 1785.25(a). It is specifically governed by section 1785.25(f) of the CCRAA, which requires a furnisher who receives a CRA dispute notice to complete an investigation and "report to the consumer credit reporting agency the results of that investigation," and by section 1681s-2(b)(1)(C) of the FCRA, which imposes the same requirement. Johnson is already pursuing a claim under section 1681s-2(b) based on that investigation and report. He is, in other words, seeking to recover twice for the same conduct.

He cannot do so through section 1785.25(f) because that provision is preempted. The FCRA broadly preempts state law requirements governing the responsibilities of furnishers of information to consumer reporting agencies. 15

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    49
2:22-CV-06718-AB-MAA
**WBD (US) 4905-4121-8482**

U.S.C. § 1681t(b)(1)(F). Congress carved out one exception: claims brought under section 1785.25(a) survive preemption. *Id.* § 1681t(b)(1)(F)(ii). The Ninth Circuit has held that section 1785.25(a) is "the only substantive CCRAA furnisher provision specifically saved by the FCRA" — and that therefore a section 1785.25(f) claim "is preempted." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 888–89 (9th Cir. 2010). Johnson concedes as much: his investigation-related claim is brought under section 1681s-2(b), not section 1785.25(f).

However, Johnson attempts to work around FCRA preemption of section 1785.25(f) by recharacterizing the claim as arising under section 1785.25(a) — the one provision Congress spared. But the label does not control. *See Panchenko v. Comenity Cap. Bank*, No. 23-CV-04965-EKL, 2025 WL 2374109, at *8, fn. 8 (N.D. Cal. Aug. 13, 2025) (rejecting argument that furnisher's responses to credit bureau disputes are actionable if styled as a section 1785.25(a) claim because in substance plaintiff was asserting a claim under section 1785.25(f)).

The Court in *Wang v. Asset Acceptance* applied exactly this methodology. The plaintiff there attempted to pursue under section 1785.25(a) a claim squarely governed by section 1785.25(c) — arguing that a furnisher's failure to notify CRAs of disputed debts was actionable as "incomplete or inaccurate" information under the more general section 1785.25(a) prohibition. The court rejected that move: "the general obligation in section 1785.25(a) not to furnish CRAs with incomplete or inaccurate information cannot have been intended to include the obligation to notify CRAs of disputed debts. Otherwise, section 1785.25(c) would be superfluous and unnecessary." *Wang v. Asset Acceptance, LLC*, 681 F. Supp. 2d 1143, 1148 (N.D. Cal. 2010). "[W]hen properly construed," the claim in *Wang* "arises under section 1785.25(c) of the CCRAA, and since this provision is preempted by the FCRA, the Court must dismiss [it]." *Id.*

Johnson's claim is no different. When properly construed, his theory arises

---

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    50
2:22-CV-06718-AB-MAA

under the preempted section 1785.25(f), not the general section 1785.25(a) prohibition, because he is trying to recover for what Chase "report[ed] to the consumer credit reporting agency [about] the results of [its] investigation," as required pursuant to sections 1785.25(f), 1681s-2(b)(1)(C), and not what Chase voluntarily furnished pursuant to sections 1785.25(a). Reading section 1785.25(a)'s general prohibition to reach dispute-response submissions would render section 1785.25(f) superfluous, because every post-dispute report could be reframed as a general furnishing claim, and the preemption the Ninth Circuit confirmed in *Carvalho* would be nullified by relabeling. Courts do not read statutes to produce that result. *See Imperial Merch. Servs., Inc. v. Hunt,* 47 Cal. 4th 381, 390, 212 P.3d 736, 741 (2009) ("We do not presume that the Legislature performs idle acts, nor do we construe statutory provisions so as to render them superfluous.") (internal citations omitted).

### No. 38 – "Subject to the Protections of the CCRAA"

Johnson can only invoke the protections of the CCRAA, which is a California law, while residing in California. A visit to California is not sufficient to trigger protections of this law.

### Source

*Crawford v. Uber Techs., Inc.*, No. 17-CV-02664-RS, 2018 WL 1116725, at *4 (N.D. Cal. Mar. 1, 2018) ("California has a strong presumption against extraterritorial application of its laws.") (citing *North Alaskan Salmon Co. v. Pillsbury,* 174 Cal. 1, 4 (1916)); Cal. Civ. Code § 1785.1(e) (The CCRAA was expressly enacted to "regulate consumer credit reporting agencies pursuant to this title in a manner which will best protect the interests of the people of the State of California."); *see also: Michael Grecco Prods., Inc. v. NetEase Info. Tech. Corp.*, No. 18-3119 DSF (RAOX), 2018 WL 6443083, at *2 (C.D. Cal. Aug. 28, 2018) (recognizing that in the context of a copyright infringement claim, extraterritoriality is decided as an element of a claim rather than an issue of subject matter jurisdiction).

### Support for Johnson's Opposition

*See* Support for Johnson's version of Instruction No. 30. Section 1785.25(a) is framed around the furnisher, not the subject of the furnishing. It contains no seperate element requiring a consumer to prove California residency, a California mailing address, or any other geographic status at the time of the furnishing. Chase cites no authority holding that California residency (and it is unclear what residency test Chase even proposes) is an element of a § 1785.25(a) claim. *See also Fernandez v. CoreLogic Credco, LLC*, 593 F. Supp. 3d 974 (S.D. Cal. 2022) (finding "no case law in support of [the] novel proposition that the CCRAA only affords protection to consumers with a California mailing address").

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS         52
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

Moreover, even if Chase's novel legal theory were correct (which it is not), Chase has waived and forfeited this argument by failing to raise it prior to the close of discovery. It raises a factual predicate—when did Johnson become "resident" of California—for which Johnson could have and would have produced documentary evidence of during discovery (flight records, receipt of mail, etc.).

**Support for Chase's Position**

This instruction defines the residency requirement in element 5 of Instruction No. 30. The legal basis for that requirement is set out in Chase's Motion in Limine No. 12, which Chase incorporates here by reference.

In brief: "California has a strong presumption against extraterritorial application of its laws." *Crawford v. Uber Techs., Inc.,* No. 17-CV-02664-RS, 2018 WL 1116725, at *4 (N.D. Cal. Mar. 1, 2018) (citing *North Alaskan Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916)). "However far the Legislature's power may theoretically extend, [it is] presume[d] the Legislature did not intend a statute to be 'operative, with respect to occurrences outside the state, ... unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history.' " *Sullivan v. Oracle Corp.,* 51 Cal. 4th 1191, 1207 (2011) (citations omitted); *In re Albert W.*, 240 Cal. App. 4th 411, 418 (2015) ("statutes do not apply extraterritorially absent an explicit legislative indication"). Where a California law "contains no language that indicates its protections should be extended to individuals in other states . . . basic principles of federalism prevent the extension of the California protections to people who do not live in California and have not suffered harm in the state." *Crawford,* 2018 WL 1116725, at *15 (citation omitted.)

The CCRAA contains no language that indicates its protections should be extended to individuals in other states. To the contrary, it expressly states it was enacted to "regulate consumer credit reporting agencies pursuant to this title in a

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                53
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

manner which will ***best protect the interests of the people of the State of California***." Cal. Civ. Code § 1785.1(e) (emphasis added). The presumption against extraterritorial application applies.

Johnson alleges in the Complaint that he has resided in California since March 2019. Dkt. No. 1, ¶ 1. He opened the account in January 2017 while residing in North Carolina. Alleged violations occurring while he resided outside California are not actionable under the CCRAA, and the jury must be instructed accordingly. *See e.g. Michael Grecco Prods., Inc. v. NetEase Info. Tech. Corp.*, No. 18-3119 DSF (RAOX), 2018 WL 6443083, at *2 (C.D. Cal. Aug. 28, 2018) (recognizing that in the context of a copyright infringement claim, extraterritoriality is decided as an element of a claim rather than an issue of subject matter jurisdiction).

Johnson's reliance on *Fernandez v. CoreLogic Credco, LLC*, 593 F. Supp. 3d 974 (S.D. Cal. 2022), is misplaced. *Fernandez* recognized the same presumption against extraterritoriality that Chase invokes here, but reached a different result. Unlike here, in *Fernandez*, the Chase's principal place of business was alleged to be in California and all wrongful conduct was alleged to have emanated out of California. Chase is a national bank with its main office in Columbus, Ohio. *See* Dkt. No. 1, ¶ 2. The furnishing conduct Johnson challenges did not occur in California simply because Johnson later moved here. Under *Fernandez*'s own framework, the place of the wrong for Johnson's pre-residency claims is not California — and the CCRAA does not reach it.

Johnson's forfeiture argument fails. He cites no authority for it. Extraterritoriality goes to the substantive scope of the statute's liability provisions — it is not a procedural right subject to forfeiture by silence. A party's decision not to move for summary judgment on an issue forfeits nothing.

The instruction should be given.

## No. 41 – Recovery for FCRA Violation

If you find that Johnson has proven by a preponderance of the evidence that Chase negligently failed to conduct a reasonable investigation of a dispute it received about Johnson from a consumer reporting agency, Chase is liable to Johnson in the amount of any actual damages that Johnson sustained as a result of the failure.

If you find Johnson has proven by a preponderance of the evidence that Chase willfully failed to conduct a reasonable investigation of a dispute it received about Johnson from a consumer reporting agency, Chase is liable to Johnson in the amount of any actual damages that Johnson sustained as a result of the failure or damages of not less than $100 and not more than $1,000.  A finding that Chase's violation was willful also means you may award 'punitive damages.

### Source

15 U.S.C. § 1681n(a)(1)(A), 15 U.S.C. § 1681n(a)(2), § 1681o(a)(1)

### Support for Johnson's Position

The sentence in red should be included in the instruction. 15 U.S.C. § 1681n(a) was added in 1970. Despite numerous FCRA trials since that time, Chase cannot point to a single case where its argument was accepted. In fact, its exact argument appears to have first been rejected 50 years in *Collins v. Retail Credit Co.,* 410 F. Supp. 924, 932–33 (E.D. Mich. 1976 (phrase "such amount of punitive damages as the court may allow" did not require the judge, rather than the jury, to fix punitive damages); *see also Yohay v. City of Alexandria Emps. Credit Union, Inc.,* 827 F.2d 967, 972–73 (4th Cir. 1987), after recognizing that § 1681n allows punitive damages "as the court may allow," the Fourth Circuit held that the district court "correctly instructed the jury" that punitive damages could be awarded on a finding of willful or wanton disregard).

Modern FCRA cases follow the same framework. *See Ramirez v.*

---

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    55
2:22-CV-06718-AB-MAA

WBD (US) 4905-4121-8482

*TransUnion LLC*, 951 F.3d 1008, 1044–49 (9th Cir. 2020), rev'd in part on other grounds, 594 U.S. 413 (2021) (after recognizing § 1681n(a)(2)'s "as the court may allow" language, treating the FCRA punitive-damages award as a jury award subject to post-verdict judicial review and reduction, not as an issue withheld from the jury); *Williams v. First Advantage LNS Screening Sols. Inc.*, 947 F.3d 735, 746–61 (11th Cir. 2020) (reviewing FCRA punitive damages awarded by the jury, holding that punitive damages were "properly awarded," and reducing the amount on constitutional excessiveness grounds rather than suggesting that § 1681n(a)(2) required the court to determine punitive damages in the first instance); .

That is also how FCRA cases are actually tried in this district and this circuit. In *Kim*, the jury was instructed that a willful FCRA violation permitted punitive damages. *See* Jury Instructions, *Kim v. BMW Fin. Servs. N.A., LLC*, No. CV 14-01752 BRO (SHx) (C.D. Cal. Aug. 28, 2015), ECF No. 145-1 at 36; *Seungtae Kim v. BMW Financial Services NA, LLC*, 142 F. Supp. 3d 935, 948 (C.D. Cal. 2015), aff'd, 702 F. App'x 561 (9th Cir. 2017). More recently, in *Panchenko*, the most recent FCRA trial in the country, the jury was likewise instructed that a finding of willfulness permitted an award of punitive damages. *See Panchenko v. Comenity Cap. Bank*, No. 5:23-cv-04965-EKL, ECF No. 226 at 38 (N.D. Cal. Nov. 5, 2025).

Finally, Chase's contrary reading would also raise a serious Seventh Amendment problem. In *Feltner v. Columbia Pictures Television, Inc.*, the Supreme Court held that the Seventh Amendment required jury determination of statutory damages, including the amount, even though the statute provided for damages "as the court considers just" and referred to findings and discretion by "the court." 523 U.S. 340, 345–55 (1998). Feltner thus defeats any suggestion that the word "court," standing alone, ends the inquiry or silently removes legal damages from the jury. At minimum, § 1681n(a)(2)'s phrase "as the court may allow" should be read to preserve the Court's traditional post-verdict authority to review, reduce,

or disallow an excessive punitive award—not to withhold punitive damages from the jury in the first instance. That reading accords with the ordinary punitive-damages framework: punitive damages are awarded by civil juries, but courts retain authority to review the award for constitutional excessiveness and other legal limits. *See Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432, 437–39 (2001). The Court should follow that ordinary procedure here and instruct the jury that, if it finds Chase's violation was willful, it may award punitive damages.

### Support for Chase's Position

Johnson contends that instruction should reference recovery of punitive damages for a willful violation (identified in red), whereas Chase contends it should not because under the plain reading of the statute, punitive damages are decided by the Court.

The statute resolves this dispute on its face. Section 1681n(a) creates three categories of recovery for willful noncompliance: actual damages under subsection (1), punitive damages under subsection (2), and attorney's fees under subsection (3). Congress assigned the last two categories specifically to the court. Subsection (2) authorizes "such amount of punitive damages as the court may allow." Subsection (3) authorizes attorney's fees "as determined by the court." The jury's domain is subsection (1) — actual damages the consumer "sustained." That structure is not accidental. Under the presumption of consistent usage, identical actors perform identical functions throughout a text. *See Meza-Carmona v. Garland*, 113 F.4th 1163, 1167 (9th Cir. 2024). Congress used "court" twice in section 1681n(a) to denote the adjudicator of the discretionary, non-compensatory awards. The jury is not mentioned in either provision.

Johnson relies on *Collins v. Retail Credit Co.*, 410 F. Supp. 924 (E.D. Mich. 1976) as having addressed this question. *Collins* carries no weight. It is a fifty-year-old district court opinion from outside this circuit, decided on express first

---

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    57
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

impression, with no binding force in any court including the one that issued it.

More fundamentally, *Collins* did not decide the statutory question on its merits. The court acknowledged that congressional history was "inconclusive" and that it lacked "the benefit of prior judicial interpretations." *Id.* at 932. Faced with that uncertainty, the court did not engage in statutory analysis. Instead it submitted punitive damages to the jury for a reason having nothing to do with § 1681n(a)(2): the case involved a bifurcated complaint combining an FCRA willfulness claim with a common law libel claim, and the libel claim required jury submission of punitive damages. The court concluded it was "far more reasonable" to send both to the jury together "to avoid possible inconsistent verdicts and unworkable procedures." *Id.* at 933. That is a statement of procedural convenience, not a reading of the statute.

The court then interpreted "as the court may allow" as "the formal codification and reiteration of the Court's duty to review excessive verdicts." *Id.* But that reading renders the phrase surplusage — every court already possesses that duty under Rule 59 without any statutory command. Congress does not enact language merely to restate existing procedural rules. And the court itself was not confident in its interpretation: it concluded its analysis by acknowledging it did not have "definite answers to the novel legal questions raised by the parties regarding whether the court or the jury must initially decide the amount of punitive damages." *Id.* at 935. A court that admits it lacks definite answers to the very question it is deciding is not persuasive authority.

Johnson supplements *Collins* with four circuit court decisions in which FCRA punitive damages were submitted to a jury: *Yohay v. City of Alexandria Emps. Credit Union, Inc.,* 827 F.2d 967 (4th Cir. 1987); *Pinner v. Schmidt*, 805 F.2d 1258 (5th Cir. 1986); *Williams v. First Advantage LNS Screening Sols. Inc.,* 947 F.3d 735 (11th Cir. 2020); *Ramirez v. TransUnion LLC*, 951 F.3d 1008 (9th

Cir. 2020). None of them decides the question presented here. In each case, the parties submitted punitive damages to the jury without objection, and no court was asked whether § 1681n(a)(2)'s "as the court may allow" language assigns that determination to the bench rather than the jury. Courts do not decide questions that are not presented to them. The consistent silence across four circuits and four decades is not precedent; it is its absence.

*Yohay* illustrates the point. The Fourth Circuit affirmed the punitive award after noting that "the only factual questions presented to the jury" were willfulness and the amount of punitive damages — reflecting how the case was tried, not a statutory holding about how it had to be tried. 827 F.2d at 969. The court simultaneously quoted the proposition that "punitive damages awarded under section 1681n are within the discretion of the court." *Id.* at 972. Nobody flagged the tension perhaps because nobody raised it. *Pinner, Williams,* and *Ramirez* are no different: each affirmed or remitted a jury's punitive award without addressing whether submitting the amount to the jury in the first instance was the correct procedure under the statute. If anything, these cases cut against Johnson — in each one, the appellate court exercised independent authority to reduce the punitive award. Chase contends this judicial authority is exercised in the first instance under the plain language of the statute.

The Seventh Circuit's treatment of section 1681n points in the opposite direction from *Collins*. In *Rivera v. Allstate Insurance Co.*, 913 F.3d 603 (7th Cir. 2018), the jury awarded statutory damages on the plaintiffs' FCRA claims, but the district court separately awarded punitive damages on the plaintiffs' post-trial motion, exercising the authority that § 1681n(a)(2) vests in the court. *Id.* at 606. The Seventh Circuit quoted § 1681n(a)(2)'s "as the court may allow" language without any suggestion that the district court had misallocated the punitive determination, and vacated everything only on standing grounds. *Id. Rivera* thus

reflects a federal court doing exactly what Chase argues for: treating the jury's role as limited to statutory damages under subsection (a)(1) and reserving the punitive determination under subsection (a)(2) to the court.

*Van Straaten v. Shell Oil Products Co. LLC*, 678 F.3d 486 (7th Cir. 2012), reinforces the same premise from a different angle. The court rejected the plaintiff's argument that willfulness under § 1681n must be submitted to a jury, observing that the Supreme Court in *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007), "treated willfulness as a question of law and directed that judgment be entered in a defendant's favor without a trial." 678 F.3d at 491. Judge Cudahy's concurrence was explicit: "Following *Safeco*, this may be determined as a matter of law and without trial." *Id.* A district court in the same circuit has drawn the natural inference: "Although both sides assumed that willfulness is a question of fact for the jury, in *Van Straaten* . . . the court stated that *Safeco* 'treated willfulness as a question of law.' And questions of law are reserved for the court." *Humphrey v. Navient Sols., Inc.*, No. 16-CV-370-JDP, 2020 WL 91007, at *2 (W.D. Wis. Jan. 8, 2020).

Finally, the Seventh Amendment does not require submitting punitive damages to the jury, and *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998) does not hold otherwise. *Feltner* addressed whether the Seventh Amendment required jury determination of statutory damages under 17 U.S.C. § 504(c), which permitted a copyright owner to recover statutory damages "in a sum of not less than $500 or more than $20,000 as the court considers just." *Feltner,* 523 U.S. at 343. The Court first recognized that facially, the statute assigned the determination to a judge: "the word 'court' in this context appears to mean judge, not jury." *Id.* at 346. That in itself supports Chase's position — Congress used the same allocating language in section 1681n(a)(2), and *Feltner* confirms it means what it says.

In *Feltner*, this finding triggered discussion of the Seventh Amendment –

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    60
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

which preserves the right to a jury trial in suits at common law – for two reasons. First, because common law has been interpreted to apply "not only to common-law causes of action, but also to 'actions brought to enforce statutory rights *that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century*, as opposed to those customarily heard by courts of equity or admiralty.' " *Id.* at 348 (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989)) (emphasis added). And second, because "[u]nlike many of our recent Seventh Amendment cases, which have involved modern statutory rights unknown to 18th-century England, …in [the *Feltner*] case there are close analogues to actions seeking statutory damages" under the copyright law before the court, and in those analogue actions in England going back to the 17th century, "copyright suits for monetary damages were tried in courts of law, and thus before juries." Id. at 348-49. That history – direct, deep, and uncontested – is what drove the Seventh Amendment holding.

But, *Feltner* itself identified the outer boundary of its rule. In *Tull v. United States*, 481 U.S. 412 (1987), the Supreme Court held that while the Seventh Amendment guaranteed a jury trial on liability for civil penalties under the Clean Water Act, Congress could constitutionally authorize a judge to assess the amount. The Court in *Feltner* distinguished *Tull* on a single, precise ground: "In *Tull*, we were presented with no evidence that juries historically had determined the amount of civil penalties to be paid to the Government." *Id.* at 355. Where – as here – that historical record is absent, judicial assessment of the amount survives.

Here, under *Feltner*'s own methodology, the statutory text assigns the determination to the court; the Seventh Amendment question arises only if there is historical evidence that juries traditionally set this type of award. There is none.

The proper procedure under section 1681n(a), consistently with Supreme Court analysis in *Feltner* and *Tull*, is for the jury to find willfulness, and for the

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    61
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

Court to determine the punitive amount thereafter. The jury instruction on willfulness under Instruction No. 41 already captures the jury's role. Adding a reference to punitive damages would invite the jury to perform a function Congress assigned to the court, and would expose any award to challenge on that basis. The instruction as proposed correctly limits the jury's damages determination to the actual and statutory damages authorized by subsection (a)(1)(A).

## No. 42 – Recovery for CCRAA Violation

If you find that Johnson has proven by a preponderance of the evidence that Chase negligently or willfully furnished information about Johnson to consumer reporting agencies that it knew or should have known was inaccurate, Chase is liable to Johnson in the amount of any actual damages that Johnson sustained as a result.

### Source

Cal. Civ. Code § 1785.31(a)(1-2).

### Support for Johnson's Position

The following must be added: "A finding that Chase's violation was willful also means you may award 'punitive damages'". *See* Cal. Civ. Code § 1785.31(a)(2)(B). Section 1785.31(a) contains the same "as the court deems proper" language; consequently, Chase's textual argument fails for the same reasons explained above in Johnson's position regarding No. 41. The CCRAA was enacted in 1975, yet Chase fails to point to a single case adopting its argument. That is how the jury was instructed in *Kim*, the most recent CCRAA trial in this district, and how it is instructed as a matter of course in state court CCRAA trials. *See Kealy v. Ford Motor Credit Co.*, No. B286410 (Cal. Ct. App. July 15, 2019) (describing CCRAA jury verdict awarding punitive damages and reviewing that award on appeal); *Larios v. Specialized Loan Servicing LLC*, No. 18STCP02482 (L.A. Super. Ct.) (jury awarded actual and punitive damages on CCRAA claim).

### Support for Chase's Position

California Civil Code section 1785.31(a)(2) provides that a willful violation entitles the Johnson to: "(A) Actual damages … (B) Punitive damages of not less than one hundred dollars ($100) nor more than five thousand dollars ($5,000) for each violation *as the court deems proper*; (C) Any other relief *that the court deems proper*." (Emphasis added.)

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                63
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

The plain text assigns both punitive damages and other relief to the court. There should be no dispute that "any other relief that the court deems proper" under subsection (2)(C) is a matter for the court. *Shaw v. Superior Court*, 2 Cal. 5th 983, 999 (2017) (interpreting statutory language allowing "any remedy deemed warranted by the court" to reflect legislative intent that the remedy be decided by the court); *Montgomery v. Metro. Life Ins. Co.*, 403 F. Supp. 2d 1261, 1263 (N.D. Ga. 2005) (interpreting "the court may in its discretion order such other relief as it deems proper" to reflect that "the court is given discretion in determining whether a particular remedy ... is an appropriate remedy").

Under the presumption of consistent usage, "a word or phrase is presumed to bear the same meaning throughout a text." *Meza-Carmona v. Garland*, 113 F.4th 1163, 1167 (9th Cir. 2024) (quoting *United States v. Paulson*, 68 F.4th 528, 555 (9th Cir. 2023) (quoting Antonin Scalia & Brian A. Garner, Reading Law: The Interpretation of Legal Texts 170 (2012) (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005)). Subsection (2)(C) uses the identical phrase – "as the court deems proper" — for other relief, and subsection (2)(B) uses the same phrase one sentence earlier for punitive damages. The California Legislature's decision to use "as the court deems proper" twice in the same statutory subdivision, for two consecutive categories of relief, reflects a deliberate choice to assign both to the court.

Johnson cites no authority to overcome this reading. *Kealy v. Ford Motor Credit Co.,* No. B286410 (Cal. App. 2019), is an unpublished decision that carries no precedential weight and does not address the textual question Chase raises. *Larios v. Specialized Loan Servicing LLC, No*. 18STCP02482 (L.A. Super. Ct.), is a trial court verdict with no published opinion — also not precedential, and also silent on the statutory text. Neither case is authority for submitting punitive damages to the jury under the CCRAA. The Court should adopt Chase's proposal and reserve the punitive damages determination for the Court if the jury finds willfulness.

---

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS 64
2:22-CV-06718-AB-MAA
**WBD (US) 4905-4121-8482**

### No. 43 – Safe Harbor Under the CCRAA (Defense)

Chase may overcome liability for a violation of Section 1785.25(a) if Chase proves by a preponderance of the evidence that at the time of the failure to comply with Section 1785.25(a), it maintained reasonable procedures to comply with this provision.

### Source

*Robbins v. CitiMortgage, Inc.*, No. 16-CV-04732-LHK, 2017 WL 6513662, at *14 (N.D. Cal. Dec. 20, 2017) ("Safe Harbor: Still, even an otherwise successful CCRAA claim fails if the furnisher is covered by the CCRAA's safe harbor provision. The safe harbor provision protects a furnisher from liability for violating § 1785.25 if "the furnisher establishes by a preponderance of the evidence that, at the time of the failure to comply with [§ 1785.25], the furnisher maintained reasonable procedures to comply with [§ 1785.25].") (quoting Cal. Civ. Code § 1785.25(g)).

### Support for Johnson's Opposition

Chase's contention that § 1785.25(g) is not an affirmative defense cannot be reconciled with the most recent C.D. Cal. authority. In *Krejci v. National Credit Systems, Inc.*, the court expressly held that "The CCCRAA provides an affirmative defense" under § 1785.25(g), and analyzed that defense separately from the defendant's showing under § 1785.25(a).

Even according to the case law that Chase cites, *Saunders*, an affirmative defense "is a defense that does not negate the elements of the plaintiff's claim, but instead precludes liability even if all of the elements of the plaintiff's claim are proven." That is exactly what section 1785.25(g) does. It "protect[s] a furnisher from liability". It does not negate the "knows or should know" element of a section 1785.25(a) claim.

Because Chase never pleaded that affirmative defense or sought leave to

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                65
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

amend to add it, Chase may rely on it now only if it can show Johnson suffered no prejudice from the delay. That burden is squarely on Chase. *Garcia v. Salvation Army*, 918 F.3d 997, 1008–09 (9th Cir. 2019); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001); *Magana v. Commonwealth of the N. Mar. I.*, 107 F.3d 1436, 1446 (9th Cir. 1997).

Chase cannot meet its burden because it failed to assert this defense until years after the close of discovery. While Johnson propounded a single request for production of documents evidencing compliance with the CCRAA, the document produced does not mention the CCRAA once. General discovery into policies is not the same as fair notice that Chase would invoke a statutory safe harbor carrying its own burden of proof. Were he fairly noticed of this (claim-dispositive) defense, Johnson would have sought much more extensive discovery, e.g., by compelling production of said documents, propounding requests for admission, and exploring the topic deeply with Chase's corporate representative.

### **Support for Chase's Position**

Johnson argues Chase waived this defense by failing to plead it. Waiver requires a showing of prejudice Johnson cannot make. Johnson specifically requested "ALL DOCUMENTS evidencing CHASE's procedures AND policies RELATED to compliance with the CCRAA" in Request for Production No. 17. Those documents were produced and examined at Chase's deposition. Johnson therefore had the discovery relevant to this defense and cannot credibly claim he would have done something materially different had Chase formally pleaded it. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001); *Garcia v. Salvation Army*, 918 F.3d 997, 1008–09 (9th Cir. 2019).

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    66
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

### <u>No. 44 — Actual Damages</u>

It is the duty of the Court to instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for Johnson on Johnson's FCRA claim, you must determine Johnson's damages.  Johnson has the burden of proving damages by a preponderance of the evidence.  Damages means the amount of money that will reasonably and fairly compensate Johnson for any injury you find was caused by the Chase. You should consider the following:

The nature and extent of the injuries; and,

The mental, emotional, pain and suffering experienced;

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

Actual damages may include, but are not limited to, any of the following, to the extent you find they were caused by the Chase:

1. Harm to Johnson's creditworthiness or reputation;
2. Time spent correcting credit reporting errors;
3. Lost wages, including wages lost because of time spent dealing with Johnson's credit problems;
4. Deterrence from applying for credit as a result of inaccurate reporting until the erroneous information is deleted;
5. Loss of opportunity in the mortgage market; and
6. Emotional distress, including frustration, mental anguish, anxiety, and loss of sleep.

### <u>Source</u>

Ninth Circuit Manual of Model Civil Jury Instructions, Nos. 5.1-5.2

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    67
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

**Support for Chase's Opposition**

Chase opposes modification of the model instruction to include examples of what actual damages may include (shown in red).

Johnson's argument for an enumerated instruction mistakes the purpose of a damages charge. The jury does not need an instruction to tell it that emotional distress, sleepless nights, or difficulty obtaining credit are compensable — Johnson will describe those experiences from the witness stand, and the jury will evaluate them. What the jury *does* need is guidance on what the law prohibits it from awarding. A bare-bones instruction that defines actual damages and imposes the preponderance and non-speculation requirements is complete as a statement of what the jury must do. Instruction No. 45 completes the picture by identifying the categories the law forecloses.

Johnson's enumerated instruction does not add legal content — it adds advocacy. A list of six recoverable categories, read to the jury by the court, carries implicit judicial endorsement of each item as a legitimate target of compensation. That is not a neutral statement of law; it is a damages roadmap. Pattern instructions enumerate categories when the law's definition of compensable harm is non-obvious or counter-intuitive — lost profits in a copyright case, hypothetical license fees, corrective advertising costs. FCRA actual damages require no such guidance. The categories Johnson enumerates — emotional distress, harm to credit, time spent on the dispute — are exactly what any juror would expect a Johnson in this case to claim. The instruction adds nothing to the jury's understanding of the law and materially advantages Johnson's presentation of damages.

Chase's instruction, together with No. 45, gives the jury everything it needs: a definition of actual damages, the preponderance standard, the prohibition on speculation, and the legal limits on recoverable categories. That is the complete and balanced charge the law requires.

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    68
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

**Support for Johnson's Position**

The Ninth Circuit Manual of Model Civil Jury Instructions does not contain pattern instructions for FCRA claims, nor does the Judicial Council of California Civil Jury Instructions for CCRAA claims. However, federal pattern practice routinely instructs juries on the legally recoverable components or measures of actual damages; it does not confine the charge to the abstract phrase "actual damages" when governing law identifies the compensable categories. *See, e.g.,* Ninth Circuit Model Civ. Jury Instructions No. 17.33 (instructing the jury to consider willing-buyer/willing-seller license amount, lost-sales profits, and any other factors bearing on actual damages; the comment notes that actual damages may be measured as lost profits or hypothetical-license damages); No. 15.27 (instructing the jury to consider reputation injury, goodwill, lost profits, expense of preventing customer deception, and future corrective advertising for a Lanham Act claim). *See also Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 787 (9th Cir. 2006) (approving a jury instruction permitting actual damages to be measured by the reduction in fair-market value of the copyrighted work, including lost license fees, and holding that the instruction "properly state[d] the law of damages in a copyright infringement suit"); *Guardant Health, Inc. v. Natera, Inc.*, No. 3:21-cv-04062-EMC, ECF No. 736, at 8–9 (N.D. Cal. Oct. 25, 2024) (final jury instructions stating that Lanham Act actual damages may include the plaintiff's lost profits and the cost of corrective advertising reasonably required to correct deception caused by false advertising).

The enumerated categories of damages were pleaded and are recoverable under binding Ninth Circuit authority; the jury therefore should be instructed on them rather than left with the abstract phrase "actual damages." *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1166 (9th Cir. 2009) ("lost wages from the time spent dealing with his credit problems"); Cal. Civ. Code § 1785.31(a)(1) ("loss of wages"); *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1335

(9th Cir. 1995) ("deterre[nce] from applying for credit during the months pending resolution of this matter"); *Kim v. BMW Fin. Servs. NA LLC*, 702 F. App'x 561 (9th Cir. 2017) ("injury to creditworthiness or reputation").

See also *Panchenko v. Comenity Cap. Bank*, No. 23-CV-04965-EKL, 2025 WL 2374109 (N.D. Cal. Aug. 13, 2025) (plaintiff "produced evidence of other damages ... he states that the credit dispute process was time intensive and "interfered with [his] ability to look for a job.""); *Johnson v. Wells Fargo Home Mortg., Inc.*, 558 F. Supp. 2d 1114, 1137 (D. Nev. 2008) ("The Ninth Circuit has recognized that 'damages may flow from a consumer being deterred from exercising his or her right to apply for credit as a result of inaccurate reporting until the erroneous information is deleted'"); *Chavez v. Ford Motor Credit Co.*, LLC, No. 1:23-CV-01205-SKO, 2025 WL 1001587 (E.D. Cal. Apr. 3, 2025) ("persuasive case authority within the Ninth Circuit holds" that "loss of opportunity in the mortgage market ... can be compensable as actual harm"); *Miller v. Westlake Servs. LLC*, 637 F. Supp. 3d 836 (C.D. Cal. 2022) ("injury to reputation and creditworthiness"); *Fernandez v. CoreLogic Credco, LLC*, 593 F. Supp. 3d 974, 993 (S.D. Cal. 2022) ("time spent correcting credit reporting errors"); *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995) ("emotional distress", "frustration", "mental anguish"); *Fernandez v. CoreLogic Credco, LLC*, 593 F. Supp. 3d 974, 993 (S.D. Cal. 2022) ("anxiety" and "loss of sleep").

## No. 45 – Non-Recoverable Damages

Even if Johnson proves a violation of the FCRA or CCRAA, Johnson cannot recover for damages that are speculative, remote, imaginary, contingent, or merely possible but not assured. For example, a mere drop in Johnson's credit score without any damages actually incurred, such as a denial of credit, is insufficient to establish actual damages under either the FCRA or CCRAA.

Johnson also cannot recover for damages he incurred for lost investment or business opportunities. Emotional distress damages arising out of business-related credit loss are also not recoverable under the FCRA or CCRA.

Out-of-pocket expenses and lost wages incurred as a result of litigating this action or a prior arbitration are also not recoverable.

### Source

*King v. Bank of Am., N.A.,* 2012 WL 4685993, at *6 (N.D. Cal. Oct. 1, 2012) ("[A] mere drop in Johnson's credit score without any damages actually incurred would likely not satisfy the [FCRA's] actual damages requirement."). *Robbins v. CitiMortgage, Inc.*, Case No. 16-CV-04732-LHK, 2017 WL 6513662, *17 (N.D. Cal. Dec. 20, 2017) ("It is black-letter law that damages which are speculative, remote, imaginary, contingent or merely possible cannot serve as a legal basis for recovery.'") (quoting, inter alia, *Navellier v. Sletten*, 262 F.3d 923, 939 (9th Cir. 2001), and *Holland Livestock Ranch v. United States*, 655 F.2d 1002, 1006 (9th Cir. 1981)); *Noori v. Bank of Am.,* No. CV1501467ABAFMX, 2016 WL 3124628, at *5 (C.D. Cal. May 26, 2016), *aff'd in part, rev'd in part and remanded sub nom. Noori v. Bank of Am., N.A.*, 710 F. App'x 757 (9th Cir. 2018) ("Johnson's testimony is insufficient to establish that these alleged credit denials were caused by BofA's erroneous report because she has no first-hand knowledge of why the third parties denied her credit or lease applications. Were Johnson to testify that the third parties told her that they denied her denied credit because of the deceased report, such

testimony would be excluded as hearsay."); *Grigoryan v. Experian Info. Sols., Inc.,* 84 F. Supp. 3d 1044, 1079 (C.D. Cal. 2014) ("To the extent Grigoryan seeks damages based on lost real estate purchase opportunities or the inability to purchase a Dickies Barbecue franchise, moreover, the court agrees with Chases that these losses are not recoverable under the FCRA or CCPAA."); *id.* at 1081-83 (collecting cases granting summary judgment on FCRA claim where Johnson's "claimed damages flow[ed] from [the Plaintiff's] inability to supply credit to [his] real estate investment business"); *Mone v. Dranow*, 945 F.2d 306, 308 (9th Cir. 1991) (holding that "[r]eports used for 'business, commercial, or professional purposes' [were] not within the purview of" an earlier version of the FCRA); *Dorian v. Cmty. Loan Servicing, LLC*, No. 22-CV-04372-DMR, 2023 WL 395790, at *6 (N.D. Cal. Jan. 25, 2023); *Boydstun v. U.S. Bank,* 726 F. App'x 601, 602 (9th Cir. 2018) ("While the FCRA expressly provides for 'actual damages' for a negligent or willful violation, [15 U.S.C.] §§ 1681n and 1681o also expressly provide that a violator is liable 'to that consumer.' … Johnson must show Chase's violation resulted in damages to Johnson *as a consumer.*") (citing *Johnson v. Wells Fargo Home Mortg., Inc.*, 558 F.Supp.2d 1114, 1122 (D. Nev. 2008); Johnson, 558 F. Supp. 2d at 1125 ("In other words, a consumer must be an individual and cannot be a business or a group of people; however, it does not follow that every transaction initiated by an individual is a consumer transaction or that an individual is always acting in a consumer-capacity."); *Lott v. BSI Fin. Serv., Inc.,* No. 5:23-CV-00269-SSS-SHKX, 2025 WL 211971, at *7 (C.D. Cal. Jan. 6, 2025) ("The Court disagrees as to the third—that Lott can claim emotional distress damages as connected with the denial of a business loan.") (citing *Boydstun*, 726 F. App'x at 601; *Johnson,* 558 F. Supp. 2d at 1122); *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996) ("No authority suggests that a Johnson's time spent in litigation over trademark infringement is compensable as damages for the infringement.")

## Support for Johnson's Opposition

This proposed instruction should not be given to the jury because it misstates the law, it is duplicative of other instructions, is argumentative, and is a disguised motion for summary judgment that seeks to knock out entire categories of damages. Chase filed its motion for summary judgment and failed to raise any of these theories. If a motion in limine should not be a disguised motion for summary judgment, a jury instruction certainly should not. A motion for summary judgment requires a noticed motion, opposition, reply, and hearing.

On the merits, as discussed in Johnson's opposition to Chase's MIL No. 1, his opposition to Chase's MIL No. 7, and Johnson's Position on No. 44, many of the categories of damages that Chase says are non-recoverable are expressly recoverable under Ninth Circuit law. For example, Cal. Civ. Code § 1785.31(a)(1) refers to "loss of wages" and *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1166 (9th Cir. 2009) refers to "lost wages from the time spent dealing with his credit problems". Chase cites no authority for the carveout it seeks.

Moreover, No. 44 already states, based on Ninth Circuit Manual of Model Civil Jury Instructions, that "Your award must be based upon evidence and not upon speculation, guesswork or conjecture." There is no need to instruct the jury twice.

## Support for Chase's Position

Johnson's objections miss the mark on every point.

***The instruction is not duplicative.*** Instruction No. 44's direction that the jury's award must be "based upon evidence and not upon speculation, guesswork or conjecture" addresses the *quality of proof* required for any damages award. Instruction No. 45 addresses a different question entirely: which *categories* of loss are legally recoverable at all under the FCRA and CCRAA. A damages category can be supported by competent, non-speculative evidence and still be legally non-

---

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                          73
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

recoverable — because the statute does not cover it. The two instructions address different legal requirements and there is no duplication.

**The instruction is not argumentative.** It states settled legal principles drawn directly from Ninth Circuit and district court authority. That the instruction forecloses certain theories Johnson intends to pursue does not make it argumentative — it makes it necessary. Johnson's own damages disclosure confirms he intends to seek recovery for a credit score drop, as well as lost wages and out-of-pocket losses connected to litigating this action and the prior arbitration. *See* Dkt. No. 140, § III, ¶ 16. The instruction ensures the jury applies the correct legal framework to those claims.

**The instruction is not a disguised motion for summary judgment.** Johnson's characterization of the instruction as a "disguised motion for summary judgment" is rhetoric, not law. Jury instructions routinely define the boundaries of recoverable damages — that is their function. Every pattern instruction on actual damages does exactly that. The fact that the instruction forecloses theories Johnson intends to pursue reflects the state of the law, not procedural impropriety. Johnson cites no authority for the proposition that a damages instruction cannot be given because the Chase failed to raise the issue on summary judgment, because no such authority exists.

**On the merits, Johnson's Gorman citation does not support recovery of litigation-related lost wages.** Johnson invokes *Gorman*'s reference to "lost wages from the time spent dealing with his credit problems," 584 F.3d at 1166, but the *Gorman* court was describing something specific: wages Gorman lost "from the time spent dealing with his credit that he would have otherwise spent billing clients." *Id.* at 1153. That is pre-suit remediation time — time a self-employed attorney spent disputing the inaccurate reporting, communicating with creditors, and addressing the downstream consequences of the bad credit entry. It has nothing

to do with the cost of prosecuting a lawsuit or arbitration. Lost wages from litigation are governed by fee-shifting statutes and cost rules, not the FCRA's actual damages provision; to read *Gorman* otherwise would render the FCRA's attorney's fees provision partly redundant. *See* 15 U.S.C. § 1681o(a)(2). The Ninth Circuit has separately confirmed that "time spent in litigation" is not compensable as damages for the underlying wrong. *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996).

*California Civil Code § 1785.31(a)(1)* references "loss of wages" as a recoverable item under the CCRAA, but that provision does not override the causation requirement or extend recovery to wages lost in the course of litigating a dispute rather than dealing with its credit consequences. Johnson cites no authority holding otherwise.

## No. 46 – Punitive Damages

If you find for the plaintiff, you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish a defendant and to deter similar acts in the future. Punitive damages may not be awarded to compensate a plaintiff.

The plaintiff has the burden of proving by a preponderance of the evidence that punitive damages should be awarded and, if so, the amount of any such damages.

You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff.

If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party. In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct.

In addition, you may consider the relationship of any award of punitive damages to any actual harm inflicted on the plaintiff.

Punitive damages may be awarded even if you award plaintiff only nominal,

and not compensatory, damages.

## Source

15 U.S.C. § 1681n(a); Cal. Civ. Code § 1785.31(a)(2)(B); Ninth Circuit Manual of Model Civil Jury Instructions, No. 5.5 (modified).

## Support for Johnson's Position

*See* Johnson's positions regarded proposed instructions Nos. 41 and 42. Because punitive damages are available under both the FCRA and CCRAA, the jury must be instructed as to what punitive damages are.

## Support for Chase's Opposition

As explained in Chase's support for its version of instruction Nos. 41and 42 and opposition to Johnson's proposal that these instructions reference punitive damages, under both the FCRA and CCRAA, punitive damages are decided by the Court. *See* 15 U.S.C. § 1681n(a)(2), Cal. Civ. Code § 1785.31(a)(2)(B). Chase's positions on Johnson's arguments to the contrary are likewise addressed in Chase's briefing on instruction Nos. 41 and 42, which briefing is incorporated herein by reference. Because punitive damages are to be decided by the Court, this instruction is not necessary.

### No. 47 – Statute of Limitations Under the FCRA (Defense)

Chase contends Johnson's FCRA claim was not timely filed. To prove this defense, Chase must prove by a preponderance of the evidence that, before September 19, 2020, Johnson discovered, or a reasonably diligent Johnson would have discovered, the facts constituting Chase's alleged FCRA violation. Mere awareness of a disputed account or inaccurate reporting does not by itself establish discovery of the alleged violation.

### Source

15 U.S.C. § 1681p(1) ("An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of— (1) 2 years after the date of discovery by the Johnson of the violation that is the basis for such liability"); *Drew v. Equifax Info. Sys., LLC*, 690 F.3d 1100 (9th Cir. 2012).

### Support for Johnson's Position

Chase's instruction should not be given for a number of independent reasons. First, there is no dispute that Johnson disputed the account with Equifax on August 24, 2020 and that Chase was forwarded that dispute on the same day. Under the law, Chase had (at least) 30 days to conduct a reasonable investigation. 15 U.S.C. § 1681i(a)(1)(A). Thus, the alleged violation accrued at the earliest on September 23, 2020. Because the violation could not have occurred prior to September 19, 2020, the claim is timely as a matter of law.

Second, Chase waived and forfeited this theory by failing to give Johnson fair notice of it. In its Answer, Chase pleaded only that "[t]he Complaint is barred by the applicable statute of limitations", Dkt. 11, without any mention of a specific subsection or how Johnson supposedly discovered the violation prior to September 19, 2020. When Chase submitted its verified response to Johnson's Interrogatory

---

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    78
2:22-CV-06718-AB-MAA

WBD (US) 4905-4121-8482

No. 23, where Johnson asked Chase to enumerate all facts supported its affirmative defense, Chase similarly failed to point to any fact that indicated notice of the results of Chase's investigation. Instead, it simply stated that "Chase submitted the ACDV response [to Equifax] on September 8, 2020".

The theory that Chase actually pled, disclosed in discovery, and litigated through summary judgment—that the limitations clock started when Chase sent the results of its investigation to Equifax—was rejected by this Court in the section of its Order titled "Plaintiff's Claims Are Not Barred by the Statute of Limitations". *See* Dkt. 80 at 5 ("Chase argues that the statute of limitations began on September 8, 2020 because that is the date that Chase responded to Equifax that the information Plaintiff disputed regarding his Ink card was accurate ... Chase is incorrect that the statute of limitations began to run when it responded to Equifax. The statutes of limitations here are discovery provisions. ... Chase neither addresses, let alone establishes, that Plaintiff either did discover, or should have discovered, Chase's alleged violation when Chase communicated its results only to Equifax. Chase points to no particular date when Plaintiff discovered or should have discovered Chase's violation.")

Chase cannot now—long after the close of discovery—raise a new theory that Johnson received notice from Equifax on September 11, 2020. Chase writes that "Johnson contends he did not become aware of those results until later. It will be up to the jury to determine whether it finds Johnson's representation credible." If Johnson had fair notice that Chase had intended to present this theory to the jury, he would have sought discovery from Equifax to prove that the purported letter was never sent to him. *See Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 330 (9th Cir. 1995) (finding waiver where defendants waited years to assert an affirmative defense and the delay caused tangible prejudice).

Third, the sole piece of evidence that Chase has produced which it claims (without evidence) that Johnson received from Equifax, is legally incapable of constituting notice of the violation (Chase's allegedly unreasonable § 1681s-2(b) investigation). It is Equifax's letter about Equifax's reinvestigation—it says nothing about how Chase investigated, so it can't reveal that Chase's investigation was unreasonable. It reports a win, not a problem: "the results of the dispute... are complete" and the account "has been updated to report as paid in full," with a list of "modified" fields and no values, so it doesn't even disclose that the reporting stayed misleading. Moreover, the letter states that the reporting company, Chase, "certif[ied]" that they have followed Equifax's instructions and the law". Finally, as discussed above, no violation could have accrued until September 23, 2020. The letter was dated September 11, 2020.

Fourth, if the Court gives any statute-of-limitations instruction, it should also instruct on equitable tolling, or otherwise resolve tolling in Johnson's favor as a matter of law. Johnson diligently pursued the same claims by filing an arbitration demand on August 3, 2022 that was identical to the Complaint later filed here; Chase then asserted there was no agreement to arbitrate, the administrator declined to administer the matter, and Johnson filed this action on the next court day. SGD ¶ 118. Under equitable-tolling principles, a litigant is entitled to tolling where he has diligently pursued his rights and an extraordinary circumstance stood in his way and prevented timely filing. *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016). Chase should not be permitted to manufacture a delay to take advantage of a limitations period.

### Support for Chase's Position

There is no dispute that Johnson filed this action on September 19, 2022, and no dispute that the FCRA imposes a two-year limitations period running from the Johnson's discovery of the alleged violation. 15 U.S.C. § 1681p(1). September 19,

2020 is therefore the latest possible date on which Johnson could have discovered the alleged violation and still timely filed suit.

Johnson incorrectly argues that because "Chase had (at least) 30 days to conduct a reasonable investigation" (itself an inaccurate statement of the law), the "the alleged violation accrued at the earliest on September 23, 2020," when the 30-day period from Chase's receipt of his dispute expired. This is incorrect. The alleged violation is failure to conduct a reasonable investigation. Chase's investigation was reasonable, but if a jury were to find that it wasn't, the date of the violation would be on or before September 8, 2020 – the date of its response to Equifax regarding the dispute. The violation could not have occurred on September 23, 2020 because this was 15 days after the act that would constitute the violation occurred.

In its motion for summary judgment, Chase had assumed that Johnson discovered the violation on the date it became discoverable because Chase communicated the results of its investigation to Equifax. In ruling on summary judgment, the Court pointed out that there was no evidence of discovery by Johnson on the date the results were transmitted to Equifax, and, it is the date Johnson discovered or with reasonable diligence could have discovered the violation that starts the statute of limitations. *See Drew v. Equifax Info. Sys., LLC*, 690 F.3d 1100 (9th Cir. 2012). But the Court did not rule that Chase could not argue to the jury a slightly later date of discovery based on other records.

The evidence at trial will show that the results of Chase's investigation, as communicated by Equifax to Johnson, are dated September 11, 2020. Chase contends Johnson became aware of those results on or about September 11, 2020. Johnson contends he did not become aware of those results until later. It will be up to the jury to determine whether it finds Johnson's representation credible.

Johnson argues that the letter, even if received, "is legally incapable of

---

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    81
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

constituting notice of the violation (Chase's allegedly unreasonable § 1681s-2(b) investigation)" because the letter communicates the results of Equifax's investigation rather than Chase's. That is not true. Equifax was statutorily required to report the results of the investigation to Johnson within 5 days of its conclusion, see 15 U.S.C. 1681i(a), which includes the outcome of the dispute and the results of both investigations. But this issue is a red herring because whether or not Johnson learned about the alleged violation from Equifax's letter or otherwise, is precisely the question that Chase believes the jury should have the opportunity to decide.

Johnson next argues that he was on insufficient notice about this defense because he did not have the opportunity to seek discovery from Equifax to prove that the September 11, 2020 letter from Equifax was not sent. But no such discovery was ever plausible. The letter was produced (together with records indicating the letter was processed on that date) in response to a subpoena to Equifax seeking "Any and all Documents related to communications between Johnson and Equifax, Inc. regarding Johnson's August 2020 dispute pertaining to Johnson's Chase Ink credit card ending in 0256." Equifax authenticated the production as a business record maintained in the regular course of business with a custodian declaration (on which Johnson intends to rely to authenticate other Equifax records). Johnson had notice Equifax claims the letter was sent and did not engage in any efforts to challenge that claim while discovery was open.

Finally, the instruction does not foreclose Johnson's tolling argument — it presents the limitations question for the jury's resolution based on the evidence. If the Court determines that tolling applies as a matter of law, the instruction becomes moot. But that is a legal question for the Court, not a reason to withhold the instruction from the jury.

The Court should give Chase's version of the instruction. Johnson's version adds language instructing the jury that "mere awareness of a disputed account or

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    82
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

inaccurate reporting does not by itself establish discovery of the alleged violation" (shown in red). That distinction has no application here. The alleged violation is Chase's response to the Equifax dispute — not the existence of a disputed account or inaccurate reporting generally. A plaintiff who discovered Chase's dispute response discovered the alleged violation. Johnson's additional language would only mislead the jury into thinking there is a gap between the two where none exists.

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    83
2:22-CV-06718-AB-MAA
**WBD (US) 4905-4121-8482**

## No. 48 – Statute of Limitations Under the CCRAA (Defense)

Chase contends that Johnson's lawsuit for violation of the CCRAA was not filed within the time set by law. To succeed on this defense, Chase must prove that Johnson knew or should have known of an alleged CCRAA violation before March 24, 2020. If you find that Chase proved this defense by a preponderance of the evidence, you cannot award any recovery for such a violation.

### Source

Cal. Civ. Code § 1785.33 ("An action to enforce any liability created under this chapter may be brought in any appropriate court of competent jurisdiction within two years from the date the Johnson knew of, or should have known of, the violation of this title").

### Support for Johnson's Position

Chase's Instruction No. 48 should be refused because it is not an instruction on a preserved affirmative defense. "Fed. R. Civ. P. 8(c) determines whether the pleading of the limitations defense was sufficient. Rule 8(c) provides, in pertinent part, that 'a party shall set forth affirmatively . . . (a defense based upon the) statute of limitations.' The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Wyshak v. City Nat. Bank*, 607 F.2d 824 (9th Cir. 1979) (per curiam). "Fair notice . . . requires that the defendant state the nature and grounds for the affirmative defense." *Gomez v. J. Jacobo Farm Labor Contractor, Inc.*, 188 F. Supp. 3d at 992 (E.D. Cal. 2016) (cited source omitted). This require that the defendant provide "some factual basis" for its affirmative defenses. *Id*.

Here, Chase pleaded only that "[t]he Complaint is barred by the applicable statute of limitations." Dkt. 11. There was no mention of Cal. Civ. Code § 1785.33, much less the CCRAA, no mention of any partial bar to recovery (the Answer alleged a total bar), specific violations, or how Johnson could have possibly known

that Chase knew or should have known of those specific violations as required by § 1785.25.

Courts applying *Wyshak* distinguish between a limitations defense that merely says "applicable statute of limitations" and one that gives fair notice of the actual limitations bar asserted. A bare defense may be adequate where another filing identifies the statute and nature of the bar, but courts strike such defenses where the defendant does not identify the specific statute, the claim to which it applies, or how the limitations bar operates. *See Ross v. Morgan Stanley Smith Barney, LLC*, No. 2:12-cv-09687-ODW (JCx), 2013 WL 1344831, at *2–3 (C.D. Cal. Apr. 2, 2013) (granting motion to strike affirmative defenses where defendants' theories were unsupported by facts showing how and to which claims the defenses applied; explaining that *Wyshak* found fair notice because a memorandum identified the statute on which the limitations defense relied); *Figueroa v. Marshalls of CA, LLC*, No. CV11-06813-RGK (SPx), 2012 WL 1424400, at *2 (C.D. Cal. Apr. 23, 2012) (same); *Vogel v. Linden Optometry APC*, No. CV 13-00295 GAF (SHx), 2013 WL 1831686, at *3, 2013 U.S. Dist. LEXIS 64463 (C.D. Cal. Apr. 30, 2013) (applying *Wyshak* and explaining that *Wyshak* "implies that the fair notice threshold is low, but also that merely stating 'statute of limitations' would not have been sufficient"); *Kohler v. Staples the Office Superstore, LLC*, 291 F.R.D. 464, 470 (S.D. Cal. 2013) (striking affirmative defense alleging only that claims were "barred by the applicable statute of limitations"; distinguishing *Wyshak* because defendant identified no applicable statute and attached no supplemental briefing identifying one); *Dodson v. CSK Auto, Inc.*, No. 2:13-cv-00346-GEB-AC, 2013 WL 3942002, at *2 (E.D. Cal. July 30, 2013) (striking affirmative defense that claims were barred "in whole or in part, by the applicable statute of limitations"; holding that "[t]o state an affirmative

defense based on the running of the limitations period, Defendant must identify the statute of limitations on which it relies").

Under *Wyshak*, Chase could still save that generic pleading through later filings that gave fair notice. But Chase's later filings did not give notice of the theory is argues in Instruction No. 48; they gave notice of a different limitations defense.

Chase's interrogatory responses repeatedly framed limitations around one event: Chase completed its investigation on September 8, 2020, and Johnson filed more than two years later. When asked for facts supporting its limitations defense in Interrogatory No. 23, Chase listed no facts that would support its new theory.

Chase chose to lock in the same theory in its motion for summary judgment. Chase's limitations section argued that "September 8, 2020 is the relevant date" because that was when Chase responded to the Equifax dispute. Chase's CCRAA section did not assert a separate monthly-accrual or monthly-discovery theory; it said the CCRAA claim "mirrors" the FCRA claim and "fails on the same grounds." The Court understood Chase's defense the same way: "Chase argues that the statute of limitations began on September 8, 2020 because that is the date that Chase responded to Equifax."

The theory asserted in Instruction No. 48 is different. It asks whether Johnson knew or should have known of "an alleged CCRAA violation" before March 24, 2020, and if so, says the jury cannot award recovery for "such a violation.

Johnson is also prejudiced by this new defense. Were it disclosed prior to the close of discovery Johnson could have and would have sought targeted expert discovery on what a reasonably diligent consumer can actually discern from a credit report and a dispute response, about a furnisher's internal knowledge, interrogatories on the alleged cutoff date, accrual trigger, which violations defendant claims are time-barred, the factual basis for each barred category. *See*

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    86
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

*Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 330 (9th Cir. 1995) (finding waiver where defendants waited years to assert an affirmative defense and the delay caused tangible prejudice because, had the defense been timely raised, plaintiffs would have had notice and could have taken different litigation steps to protect their claims).

In sum, Chase failed to put Johnson on notice of this theory at any point prior to proposing this jury instruction in this four-year-old case and chose not to plead, disclose, or otherwise litigate it until the eve of trial. It is untimely, prejudicial, affirmatively waived, and should not be given.

**Support for Chase's Position**

There is no dispute that Johnson filed this action on September 19, 2022, and no dispute that the CCRAA imposes a two-year limitations period running from the date Johnson knew or should have known of the alleged violation. Cal. Civ. Code § 1785.33.

Johnson first contends he did not have fair notice of the defense because Chase did not specify Cal. Civ. Code § 1785.33 in its answer and cites to cases where courts struck generally pleaded statute of limitations defenses on this basis. But Johnson had not moved to strike the defense for insufficient pleading. His Complaint alleges two statutory claims, both with straightforward statute of limitations clauses that come up on a simple google search.

Johnson served discovery asking Chase to identify facts that support the defense and Chase provided the key fact in support of this defense – "Plaintiff spoke with Chase numerous times between May 21-June 18, 2018 regarding his account and the charge-off," which notably is not a fact that has any relevance to the FCRA claim, that was triggered by a dispute two years later.

Johnson also asked Chase to produce all credit reporting data Chase furnished to consumer reporting agencies and after the parties' resolved Chase's

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    87
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

objections to the breadth of the request, all data furnished on the subject account was produced. That data shows the reporting terminated in July 2018 – far outside the limitations period and many months before Johnson moved to California and thus subject to the protections of the CCRAA.

Johnson argues that with more notice of the defense he would have "sought targeted expert discovery on what a reasonably diligent consumer can actually discern from a credit report and a dispute response, about a furnisher's internal knowledge, interrogatories on the alleged cutoff date, accrual trigger, which violations defendant claims are time-barred, the factual basis for each barred category." As already stated, the records showing reporting data was produced and plainly available. And, an expert is unnecessary to demonstrate what a reasonably diligent consumer can discern from his credit report for two reasons: (1) if Johnson claims he could not discern the alleged inaccuracy (which would be demonstrably false based on the record), he could not prove harm from the violation, and (2) the jury is perfectly capable of judging what a reasonably diligent consumer could have discerned in Johnson's position.

Johnson also argues forfeiture because Chase did not raise the CCRAA statute of limitations in its summary judgment motion. That argument fails. Summary judgment is optional — a party's decision not to seek it on a particular issue forfeits nothing. There is no procedural rule requiring a Chase to raise a limitations defense on summary judgment or lose it, and Johnson cites no authority in support of this claim. The defense is preserved for trial, and the jury is entitled to evaluate the evidence Chase will present.

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                88
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

## No. 50 – Mutual Mistake (Defense)

Chase claims that there was no agreement that Johnson would pay off his Ink account on September 6, 2017 because both parties were mutually mistaken about Johnson's intent and the amount required to effectuate payoff. To succeed, Chase must prove both of the following:

1. That both parties were mistaken about Johnson's intent and amount required to effectuate payment; and

2. That Chase would not have agreed to enter into the payoff agreement if it had known about the mistake. If you decide that Chase has proved both of the above, then no agreement was created.

### Source

Judicial Counsel of California Civil Jury Instructions (2026 Edition), CACI No. 331, Affirmative Defense—Bilateral Mistake (modified) (citing Cal. Civ. Code § 1577); *Crocker-Anglo 146 Nat'l Bank v. Kuchman,* 224 Cal.App.2d 490, 496 (1964) (discussing mutual mistake of fact).

### Support for Johnson's Opposition

This instruction should not be given. Mutual mistake is a contract doctrine directed to contract formation or avoidance, see Cal. Civ. Code § 1577; *Crocker-Anglo Nat'l Bank v. Kuchman*, 224 Cal. App. 2d 490, 496 (1964), while Johnson's claims here are statutory claims under the FCRA and CCRAA, not contract claims. The relevant questions are whether Chase furnished inaccurate or materially misleading information and whether, after receiving notice of Johnson's dispute from a consumer reporting agency, Chase conducted the reasonable investigation required by 15 U.S.C. § 1681s-2(b). *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154–57, 1163 (9th Cir. 2009). Even if Chase proves there was a mutual mistake about a 2017 payment, that does not itself defeat liability under either statute. Many FCRA cases involve underlying events, including identity theft or

other third-party conduct, for which the furnisher is not directly liable; the furnisher's liability instead turns on whether it reasonably investigated the dispute after receiving notice from a consumer reporting agency. The same is true here. At most, Chase's mutual-mistake theory goes to the merits question whether Johnson can prove an actionable inaccuracy or an unreasonable investigation. To the extent Chase's theory merely argues that Johnson cannot prove those elements, it is not a true affirmative defense under Ninth Circuit law, but a denial of Johnson's prima facie case. *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002).

### **Support for Chase's Position**

Johnson's opposition misunderstands the role of mutual mistake in this case. Chase does not invoke the doctrine to excuse its investigation obligations. Chase invokes it to address a question that comes before those obligations arise: whether Chase furnished an inaccuracy in the first place.

Johnson's claimed inaccuracy is not that Chase furnished the wrong numbers. Chase furnished the balance that actually existed on the account — the balance remaining after a minimum payment was processed in September 2017. Johnson contends that balance should not have existed because he called to pay off the account. But whether Johnson had a right to have the account treated as paid off is a contract question, not an objective inaccuracy question. It turns entirely on whether a payoff agreement was formed. If both parties were mistaken in their understanding of what Johnson's call was intended to accomplish — Chase believed it was a minimum payment request, Johnson believed it was a payoff instruction, and neither party recognized the disconnect at the time — then no payoff agreement was formed, and the subsequent reporting of the remaining balance was not inaccurate.

Johnson's FCRA and CCRAA claims require him to show that Chase furnished information that was inaccurate or incomplete. A balance that correctly

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                    90
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

reflects the account's actual status is neither.

If the jury finds mutual mistake, it finds that no payoff agreement was ever formed. That finding means the reported balance was correct, which means Johnson cannot establish the predicate inaccuracy his claims require.

Johnson argues that even if there was mutual mistake, a reasonable investigation would have uncovered it. This argument assumes the existence of an inaccuracy to investigate. Without an actual inaccuracy, the analysis does not reach the reasonableness element of the FCRA claim. *Gross v. CitiMortgage, Inc.,* 33 F.4th 1246, 1251 (9th Cir. 2022) ("if there is no inaccuracy, then the reasonableness of the investigation is not in play").

Finally, Johnson argues that mutual mistake is not a true affirmative defense but merely a denial of his prima facie case, citing *Zivkovic v. S. Cal. Edison Co.,* 302 F.3d 1080, 1088 (9th Cir. 2002). He is partly right, but that concedes rather than defeats the instruction.

Johnson's inaccuracy claim rests on an embedded contract dispute — his contention that a payoff agreement was formed in September 2017 and Chase failed to honor it. Mutual mistake is an affirmative defense to that contract claim. It also negates the inaccuracy element of Johnson's statutory claims, but only because that element itself turns on resolving the contract question. The label does not determine whether the jury should be instructed on the doctrine. What matters is that the jury cannot evaluate Johnson's inaccuracy claim without first resolving whether a payoff agreement was formed. Mutual mistake is the legal framework for making that determination, and the jury is entitled to be instructed on it.

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                                91
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

## No. 51 – Waiver (Defense)

Chase claims that it cannot be liable to Johnson under the FCRA and CCRAA because Johnson gave up his right to seek recovery under these theories. This is called a "waiver." To succeed, Chase must prove both of the following by a preponderance of the evidence:

1. That Johnson knew Chase has obligations under the FCRA and CCRAA; and

2. That Johnson freely and knowingly gave up his right to have Chase's liability under these laws decided.

A waiver may be oral or written or may arise from conduct that shows that Johnson gave up that right. If Chase proves that Johnson gave up his right to sue Chase under the FCRA and CCRAA, then Chase cannot be liable to Johnson for a violation of these statutes.

### Source

Judicial Counsel of California Civil Jury Instructions (2026 Edition), CACI No. 336 (Modified); *Roesch v. De Mota*, 24 Cal.2d 563, 572 (1944) ("Waiver is the intentional relinquishment of a known right after knowledge of the facts.")

### Support for Johnson's Opposition

Chase claims that Johnson waived his right to sue Chase for violations of the FCRA and the CCRAA because he chose not to pursue those claims in a prior consumer arbitration.

Even if that were true (which it is not: the arbitrator refused Johnson's attempt to amend and add an FCRA claim), that is not waiver; it is a relabeled claim preclusion theory—which was not pled in Chase's Answer, is raised here for the first time in this four-year-old case, and prejudices Johnson.

As this Court held in its order denying Chase's motion for summary judgment and reiterated in its order denying Chase's motion for reconsideration of

that order: "by its own terms, the [parties' agreement] establish[es] that any arbitration conducted thereunder would have no preclusive effect as to any other claims." *See* Dkt. 80 at 4; Dkt. 184 at 3.

### Support for Chase's Position

Johnson waived his right to pursue FCRA and CCRAA claims against Chase by knowingly and voluntarily abandoning them in the prior arbitration. Waiver is "the intentional relinquishment of a known right after knowledge of the facts." *Roesch v. De Mota*, 24 Cal. 2d 563, 572 (1944). Both elements are satisfied here.

Johnson knew he had FCRA rights. His original arbitration claim sought injunctive relief requiring Chase to correct his credit report — the same injury he claims Chase's FCRA and CCRAA violations caused. After amending his claim to add allegations of incorrect credit reporting, Johnson affirmatively told the AAA and opposing counsel in writing, on April 2, 2021, that "he was not pursuing a Fair Credit Reporting Act (FCRA) claim in this arbitration." Dkt. No. 68-1, Exh. A, p. 1. That statement was not inadvertent. Johnson was actively litigating his claims, had already amended once with the arbitrator's permission, and chose not to pursue the FCRA path. He then filed this case asserting the same rights he disclaimed.

Johnson's opposition reframes this as claim preclusion — a doctrine the Court has already rejected. But waiver and preclusion are distinct. Preclusion asks whether a prior judgment bars relitigation. Waiver asks whether a party intentionally gave up a right before judgment. The Court's holding that the arbitration award has no preclusive effect on Johnson's FCRA and CCRAA claims does not address whether Johnson voluntarily relinquished those claims mid-proceeding. It doesn't. The Court's finding was that the anti-preclusion clause in the cardmember agreement stripped the award of res judicata effect; it says nothing about whether Johnson's own written disclaimer during the arbitration constituted an intentional relinquishment of a known right. That question is for the jury.

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                           93
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

**No. 52 – Unclean Hands / Reasonableness of Investigation Under the Circumstances**

In determining whether Chase conducted a reasonable investigation of Johnson's dispute, you may consider all relevant circumstances, including:

1. Whether Johnson waited an unreasonable length of time after learning of the alleged inaccuracy before submitting his dispute; and

2. Whether Johnson's delay in disputing contributed to the unavailability of records relevant to Chase's investigation.

If you find that Johnson's conduct impaired Chase's ability to investigate, you may consider that circumstance in evaluating whether Chase's investigation was reasonable under the circumstances presented to it at the time.

**Source**

*Salas v. Sierra Chem. Co.,* 59 Cal. 4th 407, 432 (2014) ("Generally, the equitable doctrine of unclean hands applies when a plaintiff has acted unconscionably, in bad faith, or inequitably in the matter in which the plaintiff seeks relief. 'The misconduct which brings the clean hands doctrine into operation must relate directly to the transaction concerning which the complaint is made, i.e., it must pertain to the very subject matter involved and affect the equitable relations between the litigants.' … If the required showing is made, unclean hands may be a complete defense to legal as well as equitable causes of action.") (internal citations omitted); *Kendall-Jackson Winery, Ltd. v. Superior Ct.*, 76 Cal. App. 4th 970, 979 (1999), as modified on denial of reh'g (Jan. 3, 2000) ("Whether the particular misconduct is a bar to the alleged claim for relief depends on (1) analogous case law, (2) the nature of the misconduct, and (3) the relationship of the misconduct to the claimed injuries. [Citations.]"); *Padilla v. Experian Info. Sols., Inc.*, No. 23-CV-60669, 2023 WL 9228313, at *8 (S.D. Fla. Oct. 13, 2023) (finding that the affirmative defense of unclean hands was an appropriate defense under FCRA and

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                           94
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

provided the Johnson with notice of the defense); *Gray v. Experian Info. Sols., Inc.*, No. 6:25-CV-00290-PGB-UAM, 2025 WL 2223225, at *2 (M.D. Fla. June 11, 2025) (District courts allow the affirmative defense of unclean hands in FCRA cases)

### Support for Johnson's Opposition

Chase's unclean-hands defense should be excluded because unclean hands is an equitable doctrine that applies only where the Johnson engaged in misconduct directly related to the very transaction or subject matter of the claim, such that it would be inequitable to grant relief. *Salas v. Sierra Chem. Co.*, 59 Cal. 4th 407, 429 (2014); *Kendall-Jackson Winery, Ltd. v. Superior Ct.*, 76 Cal. App. 4th 970, 979, 985 (1999). Here, Chase's theory is that Johnson's Equifax dispute was not submitted in good faith and affected Chase's investigation. But that contention goes, at most, to Chase's view of the facts surrounding reasonableness, causation, or credibility; it does not supply a proper complete defense to statutory FCRA/CCRAA liability.

Under California law, equitable defenses such as unclean hands may not be used to wholly defeat claims grounded in legislatively expressed public policy. Salas, 59 Cal. 4th at 429–30. At minimum, unclean hands should not be presented to the jury as a standalone affirmative defense. *See also Smith v. Experian Info. Sols. Inc.,* No. 2:24-cv-00408, slip op. at 4–5 (N.D. Ind. Apr. 1, 2025) (striking unclean-hands defense in FCRA case).

### Support for Chase's Position

Chase does not ask the jury to find unclean hands as a standalone affirmative defense that wholly defeats his statutory claims. The instruction asks the jury to do something far narrower: evaluate the reasonableness of Chase's investigation in light of all relevant circumstances, including circumstances Johnson's own conduct created. That is not an equitable defense to liability — it is a factual inquiry the FCRA

---

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                95
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

already requires.

Reasonableness is always evaluated in context. The context here includes the fact that Johnson waited more than two years after learning of the alleged inaccuracy before submitting his dispute, and did at a point when records relevant to the dispute were no longer available. Yet he has indicated the intent to argue to the jury that Chase's investigation was unreasonable for failure to maintain those records. Those facts are part of the evidentiary landscape Chase confronted when it investigated. The jury is entitled to consider them and should be instructed on the nature of the consideration that is appropriate.

The parties agree that the misconduct at issue must relate directly to the transaction concerning which the complaint is made and affect the equitable relations between the litigants. *Kendall-Jackson Winery, Ltd. v. Superior Ct.,* 76 Cal. App. 4th 970, 979 (1999); *Salas v. Sierra Chem. Co.,* 59 Cal. 4th 407, 432 (2014). That requirement is satisfied here. Johnson's delay is not collateral conduct unrelated to his claims — it is directly connected to the investigation he contends was deficient, because his delay is the reason the records Chase needed to investigate were no longer available. The causal relationship between Johnson's conduct and the claimed deficiency could not be more direct.

Johnson invokes *Salas* for the proposition that unclean hands cannot wholly defeat a claim grounded in legislatively expressed public policy. That principle is not implicated here for two independent reasons. First, *Salas* was an employment discrimination case under California's FEHA. Whether California's equitable limitations on defenses to California statutory claims govern a federal FCRA reasonableness analysis is a federal question, not a California equitable question. Second, and more fundamentally, the instruction does not invoke unclean hands to wholly defeat Johnson's FCRA claim. It directs the jury to consider relevant circumstances in evaluating one element of Johnson's federal claim. *Salas* says

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                96
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

nothing about that inquiry, and Johnson cites nothing that does.

Johnson's reliance on *Smith v. Experian Information Solutions, Inc.* fares no better. That court struck an unclean hands defense framed as a standalone affirmative defense capable of wholly defeating the plaintiff's statutory claims — precisely the framing Chase has not adopted here. The instruction Chase proposes does not ask the jury to find that Johnson takes nothing. It asks the jury to evaluate Chase's investigation honestly, in light of what Chase actually had available to work with.

Johnson cannot manufacture an FCRA violation by waiting until the records needed to resolve his dispute are gone and then faulting Chase for failing to consider those records. That is not a failure of reasonable investigation. It is the foreseeable consequence of Johnson's own conduct, and it is precisely the circumstance this instruction asks the jury to consider.

DATED: June 5, 2026

JOSHUA JOHNSON

By: _____
Joshua Johnson

DATED: June 5, 2026

**WOMBLE BOND DICKINSON (US) LLP**

By: */s/Alisa A. Givental*
Alisa A. Givental

Attorneys for Chase
JPMORGAN CHASE BANK, N.A.

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                 97
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482

## PROOF OF SERVICE

*Joshua Johnson vs. JPMorgan Chase Bank, N.A.*
*USDC, Central District, Case No. 2:22-cv-06718-AB-MAA*

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is 50 California Street, Suite 2800, San Francisco, California 94111.

On June 5, 2026, I served the following document(s) described as:

**AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS**

on the interested parties in this action as follows:

Joshua Johnson                     **PLAINTIFF PRO SE**
2201 5th St. Apt 208
Santa Monica, CA 90405

Tel:  (336) 423-2594
Email: josh@jj88.org

☒**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address alisa.givental@wbd-us.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 5, 2026, at Sonoma, California.

_____
Alisa Givental

AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS                     98
2:22-CV-06718-AB-MAA
WBD (US) 4905-4121-8482