UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA JOHNSON,<br><br>    PLAINTIFF,<br><br>    V.<br>JPMORGAN CHASE BANK, N.A.,<br><br>    DEFENDANT. | Case No. 2:22-cv-06718-AB-MAAx<br><br>**[JOINT PROPOSED] FINAL**<br>**PRETRIAL CONFERENCE ORDER**<br><br>Trial Date: August 3, 2026<br><br>Final Pre-Trial Conference: July 17, 2026<br><br>Judge: Hon. André Birotte Jr. |

Plaintiff Joshua Johnson ("Johnson") and defendant JPMorgan Chase Bank, N.A. ("Chase") jointly submit this Proposed Final Pretrial Conference Order.

1

**FINAL PRETRIAL CONFERENCE ORDER**

# TABLE OF CONTENTS

1.  THE PARTIES AND PLEADINGS ........................................................3

2.  JURISDICTION .................................................................................3

3.  TRIAL DURATION ............................................................................3

4.  JURY TRIAL .....................................................................................3

5.  ADMITTED FACTS ...........................................................................4

6.  STIPULATED FACTS ........................................................................6

7.  PARTIES' CLAIMS AND DEFENSES ..................................................7

8.  REMAINING TRIABLE ISSUES .......................................................20

9.  DISCOVERY ...................................................................................20

10.  DISCLOSURES AND EXHIBIT LIST ..................................................20

11.  WITNESS LISTS .............................................................................21

12.  MOTIONS IN LIMINE AND LAW AND MOTION
     MATTERS .......................................................................................21

13.  BIFURCATION................................................................................22

14.  ADMISSIONS..................................................................................23

2

Following pre-trial proceedings, pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16, **IT IS ORDERED**:

**1.    THE PARTIES AND PLEADINGS**

The parties are plaintiff Joshua Johnson and defendant JPMorgan Chase Bank, N.A.

In the Complaint, Johnson has pleaded two claims against Chase: (1) that Chase violated section 1681s-2(b) of the Fair Credit Reporting Act ("FCRA"), and (2) that Chase violated section 1785.25(a) of the California Consumer Credit Reporting Agencies Act ("CCRAA"). Chase has answered the Complaint and denies the allegations. Dkt. No. 11.

No claims have been dismissed or abandoned.

**2.    JURISDICTION**

Johnson asserts that subject matter jurisdiction over this action exists under 28 U.S.C.1331, 15 U.S.C. § 1681s-2(b), and, 28 U.S.C. § 1367(a), and venue is proper in this District and this Division pursuant to 28 U.S.C. § 1391(b)(2).

**3.    TRIAL DURATION**

Jury trial is set for: Monday September 14, 2026, 8:30 a.m.

Each side will have **4.5 hours** to present evidence, including both direct and cross examination of any witnesses. Each side will have **8 minutes** for opening statements and **20 minutes** for closing arguments. Plaintiff has **6 minutes** for rebuttal.

**4.    JURY TRIAL**

The trial is to be a jury trial. In addition to this Joint Proposed Final Pretrial Conference Order, no later than June 5, 2026, Johnson and Chase shall serve and file:

- Motions in Limine and Oppositions to Motions in Limine
- Memoranda of Contentions of Fact and Law
- Witness Lists

3

**FINAL PRETRIAL CONFERENCE ORDER**

- Joint Exhibit List

- Joint Status Report Regarding Settlement

- Amended Joint Proposed Jury Instructions

- Disputed Proposed Jury Instructions

- Joint/Disputed Proposed Verdict Forms

- Joint Proposed Statement of the Case

- Proposed Additional Voir Dire Questions

5. **ADMITTED FACTS**

The Parties agree that the following facts are admitted and require no proof:

1. Chase is a national banking association, with its main office located in Columbus, Ohio. Chase regularly transacts business within the Central District of California.

2. On January 5, 2017, Johnson opened a Chase Ink credit card account ("Ink card").

3. On or about February 16, 2017, Johnson received an email from Chase stating: "Thanks for choosing to go paperless. This email confirms your change from US Mail to paperless delivery for these account(s):  J. JOHNSON...0789  This means we'll no longer mail your statements and some account notices. We'll post them online and email you a reminder when they're ready."

4. On February 27, 2017, Johnson received an email from Chase stating: "We're writing to let you know the statement for your credit card account ending in 0789 is now available online.  To see your statement or download it as a PDF, log on to www.Chase.com. You can also make a payment online or set up an Account Alert so you'll receive a reminder when your payment is due.  Note: The account above is enrolled in Paperless Statements, so you won't receive a paper statement in the mail."

5. On March 8, 2017, Johnson received an email from Chase stating: "For credit card account ending in 0789: Your credit card payment is due in 10 days. This

4

**FINAL PRETRIAL CONFERENCE ORDER**

Alert was sent according to your settings."

6. Johnson made purchases using the Ink credit card account from January 14, 2017 through July 6, 2017.

7. On September 6, 2017, Chase called Johnson to request payment on his Ink card.

8. After the call, on September 6, 2017, Johnson received an email, which did not mention "Chase Ink" and stated "Account Ending in 0256 … We are writing to confirm the following electronic payments you authorized to your credit card account during our recent phone conversation. […] Payment Amount […]$111.49."

9. On June 12, 2018, Johnson had a telephone call with Chase in which he stated that "This is the first time I've been made aware that I had multiple accounts to be honest."

10. Johnson has resided in Los Angeles County, California since March 2019.

11. On August 24, 2020, Johnson submitted an online dispute with Equifax regarding his Ink Account.

12. As part of the online dispute process, Johnson provided a narrative description of his dispute in a text box provided.

13. On or about August 25, 2020, Equifax provided notification of the dispute to Chase.

14. Chase submitted its response to Equifax on or about September 8, 2020, and updated the information reported to Equifax.

15. In approximately March 2022, Chase removed all adverse credit references regarding Johnson arising out of the Ink Account.

16. Chase is a furnisher of information to consumer reporting agencies for purposes of 15 U.S.C. § 1681s-2.

17. Aside from the Ink Account, between 2009 and 2020, Johnson held four other credit card accounts with Chase.

5

**FINAL PRETRIAL CONFERENCE ORDER**

18. ==Aside from the Ink Account, the four other credit card accounts Plaintiff held with Chase between 2009 and 2020 were never reported as delinquent to any credit reporting agency.==[1]

The parties disagree about whether 69 facts that Chase identified as "Undisputed" in connection with Chase's Motion for Summary Judgment, Dkt. No. 77-1, are also admitted for purposes of trial. The Court did not decide that these facts were undisputed, and declines to do so now. Such facts are not admitted for purposes of trial. The Court has deleted such facts from the FPTCO, along with the footnote presenting the parties' arguments.

**6.      STIPULATED FACTS**

The following facts, though stipulated by the parties, shall be without prejudice to any evidentiary objection:

1. None of Chase's current employees have any recollection of the 2020 investigation relating to Johnson's Equifax dispute.
2. Chase is unaware of any employees who have any recollection of the 2020 investigation.
3. JPMorgan Chase & Co.'s 10-K filings for the years ending December 31, 2018, December 31, 2019, December 31, 2020, December 31, 2021, and December 31, 2022 on the SEC's website are authentic and genuine.
4. JPMorgan Chase & Co.'s 10-Q filings for the periods ending June 30, 2020; September 30, 2020; March 31, 2021; June 30, 2021; September 30, 2021; March 31, 2022; June 30, 2022; September 30, 2022; and March 31, 2022 on the SEC's website are authentic and genuine.
5. The "Consumer & Community Banking" sections of JPMorgan Chase & Co.'s 10-K filings for the years ending December 31, 2018, December 31, 2019,

---

[1] This fact is admitted based on Defendant's response to Plaintiff's RFA No. 15.

**FINAL PRETRIAL CONFERENCE ORDER**

December 31, 2020, December 31, 2021, and December 31, 2022 accurately represent Defendant's financial condition across all of its lines of business, including Card Services, at the time they were prepared.

6. The "Consumer & Community Banking" sections of JPMorgan Chase & Co.'s 10-Q filings for the periods ending June 30, 2020; September 30, 2020; March 31, 2021; June 30, 2021; September 30, 2021; March 31, 2022; June 30, 2022; September 30, 2022; and March 31, 2022 accurately represent Defendant's financial condition across all of its lines of business, including Card Services, at the time they were prepared.

7. **PARTIES' CLAIMS AND DEFENSES**

**Johnson's Claims:**

**(a)** **Johnson plans to pursue the following claims against Chase:**

**Claim 1:** Chase negligently and willfully violated 15 U.S.C. § 1681s-2(b).

**Claim 2:** Chase negligently and willfully violated Cal. Civ. Code § 1785.25(a)[2]

**(b)** **The elements required to establish Johnson's claims, according to Johnson, are:**

**Claim 1:[3]**

1. Chase furnished information about Johnson to a consumer reporting agency.

2. A consumer reporting agency notified Chase that Johnson disputed the completeness or accuracy of that information.

---

[2] Johnson contends there were multiple monthly violations of Cal. Civ. Code § 1785.25(a) between November 2017 and April 2022.

[3] Chase disputes that Johnson accurately summarizes the elements of a claim under 15 U.S.C. § 1681s-2(b). Among other things, Johnson must prove that Johnson submitted a dispute to Equifax about the completeness or accuracy of information furnished by Chase and that the information Chase furnished was in fact inaccurate or incomplete before the reasonableness of its investigation is considered. See 15. U.S.C. § 1681s-2(b)(1); *Gross v. CitiMortgage, Inc.,* 33 F.4th 1246, 1251 (9th Cir. 2022); *see also:* Support for Chase's Instruction No. 29.

7

**FINAL PRETRIAL CONFERENCE ORDER**

3. The disputed information was inaccurate, incomplete, or could not be verified.

4. After receiving notice of the dispute from the consumer reporting agency, Chase failed to reasonably investigate the dispute or otherwise failed to comply with its duties under § 1681s-2(b)(1).

5. Chase's failure was negligent and caused Johnson to sustain actual damages, or was willful.

15 U.S.C. § 1681s-2(b); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009); *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022).

**Claim 2:**[4]

1. Chase furnished information about Johnson to a consumer reporting agency.

2. The information was inaccurate or incomplete.

3. Chase knew or should have known the information was inaccurate or incomplete.

4. Chase's furnishing of that information caused Johnson to suffer damages.

Cal. Civ. Code §§ 1785.25(a), 1785.25(g), 1785.31(a); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010).

**(c)    The Key Evidence Johnson Relies on for Each Claim**[5]

---

[4] Chase disputes that Johnson accurately summarizes the elements of a claim under Cal. Civ. Code § 1785.25(a). Johnson must prove that he was a California resident covered by the protections of the CCRAA at the time of the alleged violation and that the violation was willful or negligent. *See* e.g. Support for Chase's Proposed Instruction No. 30; Cal. Civ. Code §§ 1785.1(e), 1785.31(a); Chase's Motion in Limine No. 12, Dkt. No. 124-1.

[5] Chase objects to Johnson's description and characterization as to much of the evidence being described (for example that the dispute Johnson submitted to Equifax was regarding information Chase furnished or that the third party fact-finder found in Johnson's favor in the arbitration), denies the existence of some of the evidence (for example call recordings from 2018 that were not available by the time Johnson submitted his dispute to Equifax), the relevance and/or admissibility of some of the evidence to the claims at issue (for example the dispute Johnson submitted to the

**FINAL PRETRIAL CONFERENCE ORDER**

**Claim 1:**

**i. Chase failed to conduct a <u>reasonable</u> investigation after receiving <u>notice</u> from Equifax.**

*Chase was on notice of the nature of the dispute.* On August 24, 2020, Johnson filed a dispute with Equifax regarding the completeness or accuracy of information relating to the Ink Account, and that Equifax thereafter provided notice of the dispute to Chase via an Automated Credit Dispute Verification ("ACDV") form. Key evidence regarding the notice includes an ACDV printout produced by Equifax, the testimony of Chase's Rule 30(b)(6) designee regarding the ACDV, and Chase's responses to Johnson's written discovery requests.

*Chase possessed relevant information bearing on the dispute.* Key evidence includes audio recordings of ten 2018 calls between Johnson and Chase concerning the account; Johnson's August 19, 2020 complaint to the Consumer Financial Protection Bureau ("CFPB") and related materials; Johnson's August 25, 2020 letter notifying Chase of his intent to arbitrate; Chase's internal records concerning the account, including "C3 memos" and "purge notes"; account statements produced by Chase; Johnson's payment history for his Chase Ink and Chase Sapphire accounts; the testimony of Chase's Rule 30(b)(6) designee; the testimony of Chase's corporate representative in a prior arbitration hearing; and Chase's responses to Johnson's written discovery requests.

*Chase failed to review the relevant information in its possession, failed to acquire relevant information not in its possession, and instead conducted a cursory investigation untethered to the nature of the dispute.* Key evidence includes the parties' stipulation that Chase has no current employees with any recollection of the

CFPB and arbitration notice to the reasonableness of Chase's investigation of Johnson's Equifax dispute), the import of some of the evidence (for example the fact that no current employees are available to testify as evidencing a failure on Chase's part to take appropriate action rather than as a failure on Johnson's part to timely assert his claims), and the presentation of Johnson's arguments as evidence.

**FINAL PRETRIAL CONFERENCE ORDER**

2020 investigation of Johnson's Equifax dispute, and is unaware of any employees with such recollection; Chase's internal records concerning the account; Chase's written policies and procedures governing dispute investigations; the testimony of Chase's Rule 30(b)(6) designee; the testimony of Chase's corporate representative in a prior arbitration hearing; and Chase's responses to Johnson's written discovery requests.

*Chase destroyed relevant information after it was aware that the account was under dispute.* Key evidence includes Chase's internal records concerning the account, the testimony of Chase's corporate representative in a prior arbitration hearing, a June 12, 2018 phone call, an October 19, 2020 phone call, an October 14, 2020 letter

*Chase's stated basis that its investigation was reasonable, and that the furnished information was accurate and complete, does not withstand scrutiny and is contradicted by Chase's own records and testimony.* Key evidence includes Chase's responses to Johnson's written discovery requests identifying an October 2020 letter drafted by Carla Wills as the basis for its determination that the information it continued to furnish after the investigation was accurate and complete, that October 2020 letter, and related testimony of the author of that letter, Carla Wills, as well as Rule 30(b)(6) designee.

*Chase could not verify the disputed information.* Key evidence includes an audio recording of an October 2020 phone call between Johnson and Wills, the testimony of Chase's corporate representative in a prior arbitration hearing, a legal memorandum submitted by counsel for Chase in that prior arbitration, the testimony of Chase's Rule 30(b)(6) designee concerning its unreliable system of record and its retention policies, and Chase's internal records concerning the account.

*An industry expert concluded that Chase's investigation was insufficient and departed from industry standards.* Key evidence includes the expert report and testimony of Johnson's retained expert, Thomas Tarter.

10

**FINAL PRETRIAL CONFERENCE ORDER**

*A third-party factfinder, reviewing substantially the same information, reached the opposite conclusion.* A neutral arbitrator, presented with substantially the same information available to Chase during its investigation, ordered Chase to retract and remove all adverse credit references arising out of the Ink Account — evidence that a reasonable investigation would have led Chase to do the same rather than continue furnishing the disputed information. Key evidence includes the arbitration record and remedy, and Johnson's testimony regarding the overlap between the arbitration evidence and the information available to Chase during its investigation.

**ii. Chase furnished information that was <u>incomplete</u> or <u>inaccurate</u>, including because it was <u>patently incorrect</u>, <u>misleading</u> in such a way and to such an extent that it can be expected to adversely affect credit decisions, or <u>omitted</u> Johnson's <u>bona fide dispute</u>.**

*Chase agreed to provide Johnson with online account access, online statements, emailed payment-due notices, and technical support.* Key evidence includes written agreements between Johnson and Chase entered into in 2017, contemporaneous emails from Chase, screenshots of Chase's website as it appeared in early 2017, Chase's 2021 admission regarding its online enrollment process as of early 2017, Johnson's testimony, Chase's responses to Johnson's written discovery requests, and admitted facts.

*Chase failed to provide Johnson with online account access, online statements, emailed payment-due notices after September 2017, or technical support.* Key evidence includes Johnson's testimony; Chase's records concerning the Ink and Sapphire accounts, including call and payment history for both; the absence of payment-due notices in Johnson's email records after September 2017; screenshots of Johnson's online access to Chase's website in 2018; the testimony of Chase's Rule 30(b)(6) designee, including the second amended notice of deposition; the testimony of Chase's corporate representative in a prior arbitration hearing;

11

**FINAL PRETRIAL CONFERENCE ORDER**

screenshots of Chase's website as it appeared in early 2017; Chase's 2021 admission regarding its online enrollment process as of early 2017; audio recordings of relevant 2018 calls between Johnson and Chase concerning the account; account statements produced by Chase, Chase's responses to Johnson's written discovery requests, and admitted facts.

*Johnson paid off and closed the account in September 2017.* Key evidence includes Johnson's testimony, his payment history across all Chase credit card accounts dating to 2010, and his broader credit history dating to 2008 as reflected in his consumer credit reports.

*Chase failed to comply with Johnson's instructions to update his mailing address for notices.* Key evidence includes Johnson's testimony, Chase's internal records concerning the account, including "C3 memos" and "purge notes", and Johnson's Sapphire account statements.

*Chase charged unauthorized late fees before and after the account's closure.* Key evidence includes the evidence identified in the immediately preceding paragraphs, written agreements between Johnson and Chase entered into in 2017, and account statements produced by Chase.

*Following its investigation, Chase continued to report to consumer reporting agencies that the Ink Account had a delinquent payment history, had been charged off, and carried a past-due balance of $499 — and failed to report that the account was disputed.* Key evidence includes Chase's response to Equifax's ACDV notice, Johnson's consumer credit reports, Chase's internal records concerning the account, the testimony of Chase's Rule 30(b)(6) designee, Chase's responses to Johnson's written discovery requests, and certain admitted facts.

*The information that Chase furnished to the credit bureaus was misleading in such a way and to such an extent that it could be expected to adversely affect credit decisions.* Key evidence includes the expert report and testimony of Johnson's retained expert, Thomas Tarter, and statements made by Chase on its website.

12

**FINAL PRETRIAL CONFERENCE ORDER**

*Johnson's dispute was bona fide — that is, one that could materially alter how the reported debt is understood.* Key evidence includes the evidence identified in the immediately preceding paragraphs, the expert report and testimony of Johnson's retained expert, Thomas Tarter, and the arbitration remedy.

**iii. Chase's violation caused Johnson damages.**

Chase's inaccurate and incomplete credit reporting caused Johnson harm. In addition to Johnson's consumer credit reports, credit scores, the testimony of Johnson, the testimony of Johnson's retained expert, Thomas Tarter, and representations made by Chase on its website regarding credit reporting, the following key evidence will be submitted at trial:

1. **Increased home insurance premiums:** Two separate letters from Amica Mutual Insurance Company, informing Johnson that he had not qualified for the best rate, in part because "consumers with a delinquent payment history experience more insurance losses".

2. **Increased auto insurance premiums:** Letter from Progressive Casualty Insurance Company, informing Johnson that "[w]e did not give you our lowest premium due, in part, to information contained in our credit history".

3. **Lost opportunity to purchase a home:** Johnson's Google search history from August and September of 2020, email correspondence with PenFed Credit Union in August 2020, email from Chase Credit Journey in September 2020, a screenshot of the PenFed loan center website showing the terms of Johnson's mortgage application with PenFed, a letter from PenFed regarding his mortgage application and credit score, a screenshot of his bank balance in October 2020, screenshots of text messages discussing specific properties in a small neighborhood outside of Los Angeles, MLS sales records concerning those properties, local and national home price appreciation data, published by the Federal Reserve, testimony of Johnson's friend, representations made on Chase's website regarding "hard inquiries" and advice concerning pending

13

**FINAL PRETRIAL CONFERENCE ORDER**

credit reporting disputes.

4. **Lost opportunity to refinance a home:** Mortgage interest rate data, segmented by credit score, published by the Federal Reserve; email sent to Chase in 2021, explaining the urgency of resolving this dispute, so that Johnson could take advantage of low mortgage rates to refinance an adjustable-rate mortgage.

5. **Out-of-pocket expenses:** Spreadsheet and records submitted in January 2022 documenting out-of-pocket expenses incurred; email related to credit-monitoring services.

6. **Lost time spent addressing the credit reporting problem and lost wages:** Paystub from 2021, spreadsheet and records submitted in January 2022, testimony of Johnson's friend.

7. **Lost creditworthiness and credit reputation:** Johnson's consumer credit reports, credit scores.

8. **Non-economic damages and emotional distress:** Testimony of Johnson's friends, Johnson's medical records.

**iv. Chase's noncompliance was <u>willful</u>.**

The key evidence described above in sections 7(c)(i)–(iii) is incorporated here by reference. Moreover, key evidence of willfulness includes Chase's dispute policies and procedures, and Chase's Rule 30(b)(6) designee's testimony regarding those policies and procedures. To support an award of punitive damages, Johnson will also present evidence of Chase's financial condition, via Chase's filings with the Securities and Exchange Commission, pursuant to the parties' relevant stipulation.

**<u>Claim 2:</u>**

**v. Chase furnished information to a CRA that it <u>knew or should have known</u> the information was <u>incomplete or inaccurate</u>.**

The key evidence described above in sections 7(c)(i)–(ii) is incorporated here by reference. Moreover, because a dispute with a credit bureau is not a precondition to liability under the CCRAA, key evidence also includes information and

14

**FINAL PRETRIAL CONFERENCE ORDER**

knowledge obtained after Chase's investigation into the Equifax dispute completed, but before it deleted the Ink Account from Johnson's credit report in April 2022, including his complaint with the CFPB, Chase's investigation thereof, phone calls between Johnson and Chase that took place in October 2020, the October 14, 2020 letter, and the prior arbitration between the parties.

**vi. Chase's violation caused Johnson <u>damages</u>.**

The key evidence described above in section 7(c)(iii) is incorporated here by reference.

**vii. Chase's noncompliance was <u>willful</u>.**

The key evidence described above in section 7(c)(iv) is incorporated here by reference.

**<u>Defendant's Affirmative Defenses</u>:**[6]

(a)    Defendant plans to pursue the following affirmative defenses:

**<u>Defense 1</u>:**  Statute of Limitations Under the FCRA

**<u>Defense 2</u>:**  Statute of Limitations Under the CCRAA

**<u>Defense 3</u>:**  Mitigation of Damages

**<u>Defense 4</u>:**  Mutual Mistake

**<u>Defense 5</u>:**  Waiver

**<u>Defense 6</u>:**  Unclean Hands

**<u>Defense 7</u>:**  Safe harbor under Cal. Civ. Code § 1785.25(g)

---

[6] Johnson objects to the presentation of each of these affirmative defenses at trial. *See* Johnson's Position re: Disputed Jury Instruction Nos. 47 (Defense No. 1 – Statute of Limitations Under the FCRA), 48 (Defense No. 2 – Statute of Limitations Under the CCRA), 50 (Defense No. 4 – Mutual Mistake), 51 (Defense No. 5 – Waiver), 52 (Defense No. 6 – Unclean Hands), and 43 (Defense No. 7 – safe harbor under Cal. Civ. Code § 1785.25(g). Johnson also objects to Defense No. 3 as a bar to liability at trial. Failure to mitigate may be asserted, at most, as a limitation on recoverable actual damages under the FCRA; there is no controlling Ninth Circuit authority making it an affirmative defense to FCRA liability, and it should not apply to statutory damages under § 1681n.

15

**FINAL PRETRIAL CONFERENCE ORDER**

**(b)** **The elements required to establish Defendant's affirmative defenses are:**

<u>**Defense 1:**</u> Statute of Limitations Under the FCRA

Chase contends Johnson's FCRA claim was not timely filed. To prove this defense, Chase must prove by a preponderance of the evidence that, before September 19, 2020, Johnson discovered, or a reasonably diligent plaintiff would have discovered, the facts constituting Chase's alleged FCRA violation.

<u>**Defense 2:**</u> Statute of Limitations Under the CCRAA

Chase contends that Johnson's lawsuit for violation of the CCRAA was not filed within the time set by law. To succeed on this defense, Chase must prove that Johnson knew or should have known of an alleged CCRAA violation before March 24, 2020. If you find that Chase proved this defense by a preponderance of the evidence, you cannot award any recovery for such a violation.

<u>**Defense 3:**</u> Mitigation of Damages

Johnson has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages. To establish this defense, Chase has the burden of proving by a preponderance of the evidence:

1.  that Johnson failed to use reasonable efforts to mitigate damages; and

2.  the amount by which damages would have been mitigated.

If you find that Chase proved this defense, you must reduce any award of damages by the amount of damages that would have been mitigated.

<u>**Defense 4:**</u> Mutual Mistake

Chase claims that there was no agreement that Johnson would pay off his Ink account on September 6, 2017 because both parties were mutually mistaken about Johnson's intent and the amount required to effectuate payoff. To succeed, Chase must prove both of the following:

1.  That both parties were mistaken about Johnson's intent and amount required to effectuate payment; and

16

<b>FINAL PRETRIAL CONFERENCE ORDER</b>

2. That Chase would not have agreed to enter into the payoff agreement if it had known about the mistake. If you decide that Chase has proved both of the above, then no agreement was created.

**Defense 5:** Waiver

Chase claims that it cannot be liable to Johnson under the FCRA and CCRAA because Johnson gave up his right to seek recovery under these theories. This is called a "waiver." To succeed, Chase must prove both of the following by clear and convincing evidence:

1. That Johnson knew Chase has obligations under the FCRA and CCRAA; and

2. That Johnson freely and knowingly gave up his right to have Chase's liability under these laws decided.

A waiver may be oral or written or may arise from conduct that shows that Johnson gave up that right. If Chase proves that Johnson gave up his right to sue Chase under the FCRA and CCRAA, then Chase cannot be liable to Johnson for a violation of these statutes.

**Defense 6:** Unclean Hands

In determining whether Chase conducted a reasonable investigation of Johnson's dispute, you may consider all relevant circumstances, including:

1. Whether Johnson waited an unreasonable length of time after learning of the alleged inaccuracy before submitting his dispute; and

2. Whether Johnson's delay in disputing contributed to the unavailability of records relevant to Chase's investigation.

If you find that Johnson's conduct impaired Chase's ability to investigate, you may consider that circumstance in evaluating whether Chase's investigation was reasonable under the circumstances presented to it at the time.

**Defense 7:** Safe harbor under Cal. Civ. Code § 1785.25(g)

Chase may overcome liability for a violation of Section 1785.25(a) if Chase

**FINAL PRETRIAL CONFERENCE ORDER**

proves by a preponderance of the evidence that at the time of the failure to comply with Section 1785.25(a), it maintained reasonable procedures to comply with this provision.

**(c)    The Key Evidence Chase Relies on for Each defense**

**<u>Defense 1</u>:** Statute of Limitations Under the FCRA

Equifax records establish that it notified Johnson about the results of the dispute investigations by Chase and Equifax in a letter dated September 11, 2020.

**<u>Defense 2</u>:** Statute of Limitations Under the CCRAA

Chase stopped monthly furnishing on Johnson's account in July 2018, as evidenced by Johnson's credit reports showing the date of account information as of July 2018 and Chase's records of monthly furnishing activity. Johnson was aware of the alleged inaccurate reporting by Chase as of at least May 2018, when he discussed the reporting with Chase in a series of phone calls he intends to present as evidence at trial.

**<u>Defense 3</u>**: Mitigation of Damages

Element 1 – As evidenced by Johnson's anticipated testimony, email records, Chase call, letter, and payment records, Equifax dispute and reporting records, Johnson failed to monitor his account despite available access to statements, failed to monitor email, phone, and letter communications from Chase regarding the status of his account, failed to opt out of electronic statement delivery, delayed paying off the account by over two years, thereby retaining an unpaid charge off notation on his credit instead of a paid charge off, delayed by over two years in disputing the reporting on the account, made inaccurate and confusing claims in the dispute he ultimately submitted (including that the account was subject to account takeover and fraudulent transactions, that there were no communications from Chase, that Chase did not make statements available, and that he saw a $0 balance when he logged into his online account), and failed to avail himself of the option to have Equifax notate the nature of his dispute on the Chase account trade line.

**FINAL PRETRIAL CONFERENCE ORDER**

Element 2 – Had Johnson properly monitored his account, made timely payments, followed-up on Chase's communications, and cured the delinquency immediately upon discovery, he would not have incurred any of the damages he alleges.

**Defense 4**: Mutual Mistake

Element 1 – Chase's account records for Johnson's account reflect that Johnson incurred over $300 in purchases and fees and paid only about $100, which was insufficient to pay off the account in full. To the extent that Johnson believed that $100 was sufficient, he was mistaken, as account records establish, and to the extent that Johnson communicated the intent to pay off the account in full, as he is expected to testify, Chase was mistaken about his intent to do so.

Element 2 – Chase's testimony will establish that had Chase's known that Johnson believes he is paying the account off in full with $100, Chase would not have accepted the payment as a full payoff on the account, because it was objectively insufficient to do so.

**Defense 5**: Waiver

Elements 1-2 – In the arbitration proceeding Johnson knowingly withdrew a claim for violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

**Defense 6**: Unclean Hands

Elements 1-2 – Johnson's over two-year delay between discovering allegedly inaccurate reporting to his credit and submitting a dispute to Equifax, and then an additional two-year delay in filing this action prejudiced Chase because records relevant to Chase's investigation of Johnson's dispute and defense are no longer available, and witnesses with personal knowledge of what happened are no longer employed by Chase. Evidence includes the parties' stipulation that Chase has no current employees with any recollection of the 2020 investigation of Johnson's Equifax dispute, and Johnson's repeated accusations that key telephone recordings were purposefully destroyed while they were in fact no longer available due to

19

**FINAL PRETRIAL CONFERENCE ORDER**

Johnson's own delay in asserting his claims.

**Defense 7:** Safe harbor under Cal. Civ. Code § 1785.25(g)

To the extent that factually accurate information furnished by Chase regarding Johnson's admitted failure to make a payment can be deemed inaccurate due to Johnson's nonreceipt of account statements, Chase's policies and procedures were to make statements available to all customers; Johnson had the option of receiving paper statements; and for months made timely payments by verbally communicating with Chase the amounts he owed. All of these options evidence the intent to make statements available, as is contractually Chase's obligation under the parties' account agreement.

**8. REMAINING TRIABLE ISSUES**

In view of the admitted facts and the elements required to establish the claims and affirmative defenses, the following issues remain to be tried:

The remaining triable issues include whether Chase furnished any inaccurate or incomplete information to any consumer reporting agency and if it did whether it knew or should have known the information was inaccurate or incomplete, whether Chase received notice of a dispute alleging an actionable inaccuracy from a consumer reporting agency, whether Chase failed to conduct a reasonable investigation of the allegedly inaccurate or incomplete information, whether Chase violated the CCRAA or FCRA negligently, willfully, or at all, whether any legal or affirmative defenses negate liability, and whether Johnson suffered any recoverable harm.

**9. DISCOVERY**

All discovery is complete.

**10. DISCLOSURES AND EXHIBIT LIST**

All disclosures under Fed. R. Civ. P. 26(a)(3) have been made.

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1 ("Joint Exhibit List").

**FINAL PRETRIAL CONFERENCE ORDER**

## 11.    <u>WITNESS LISTS</u>

Witness lists of the parties have been filed with the Court on March 20, 2026.

Only the witnesses identified on the lists will be permitted to testify (other than solely for impeachment).

Johnson maintains his objection to Rob Wilkins testifying at trial. *See* Johson's Motion in Limine No. 1.

## 12.    <u>MOTIONS IN LIMINE AND LAW AND MOTION MATTERS</u>

Motions *in limine* or law and motion matters were filed with the Court on March 20, 2026 and March 21, 2026.  The parties have met and conferred on the motions *in limine*.  The following motions *in limine*, and no others, are pending or contemplated:

- Johnson's Motion in Limine No. 1 – To Exclude Testimony of Rob Wilkins
- Johnson's Motion in Limine No. 2 – To Exclude Evidence and Argument Regarding Statement Availability and Payment Notice
- Johnson's Motion in Limine No. 3 – To Exclude Executive Office Investigation Evidence
- Johnson's Motion in Limine No. 4 – To Exclude 6-8-21 and 7-15-21 Arbitration Recordings
- Johnson's Motion in Limine No. 5 – To Exclude Deposition of Thomas Tarter
- Chase's Motion in Limine No. 1 – To Exclude Speculative Evidence of Damages
- Chase's Motion in Limine No. 2 – To Exclude Medical Records and Unsupported Causation Opinions Attributed to Same
- Chase's Motion in Limine No. 3 – To Exclude Opinions and Testimony of Thomas Tarter on the Same Grounds as Pending Daubert Motion
- Chase's Motion in Limine No. 4 – To Exclude Reference to Past

21

**FINAL PRETRIAL CONFERENCE ORDER**

Settlement Discussions

- Chase's Motion in Limine No. 5 – To Exclude 2018 Audio Recordings
- Chase's Motion in Limine No. 6 – To Exclude (Other Than for Purposes of Impeachment) Arbitration Materials From Being Offered as Substantive Evidence at Trial
- Chase's Motion in Limine No. 7 – To Exclude Argument and Evidence re: Contract Claims
- Chase's Motion in Limine No. 8 – To Exclude Evidence of Alleged Dispute Not Submitted Through Consumer Reporting Agencies
- Chase's Motion in Limine No. 9 – To Exclude Argument and Evidence Re: Failure to Notify of Dispute
- Chase's Motion in Limine No. 10 – To Exclude Evidence of Direct and CFPB Disputes
- Chase's Motion in Limine No. 11 – To Exclude Evidence Related to Time-Barred Claims
- Chase's Motion in Limine No. 12 – to Exclude Evidence Re: Violations of California Law Prior to Move to California

The parties advise the Court that the following law and motion matters may arise during trial:

Chase anticipates moving for non-suit pursuant to Fed. R. Civ. Pro. 50. Johnson anticipates that he may move, at the appropriate time, for judgment or findings as a matter of law on one or more elements of Johnson's claims.

## 13.  **BIFURCATION**

Chase notes that, to the extent that Johnson seeks punitive damages, the imposition of those damages would not be made by the jury. Punitive damages may only be awarded in an amount that the Court may allow. Thus, to the extent this may be construed as a request for bifurcation of issues, Chase seeks bifurcation since any determination of punitive damage issues should be decided by the Court, not the

**FINAL PRETRIAL CONFERENCE ORDER**

jury. Although Chase does not believe this requires a bifurcation of the trial, should the Court rule otherwise, then Chase requests bifurcation of these defenses. Chase will seek clarification of these issues with the Court at the Pretrial Conference.

Johnson objects regarding the request that punitive damages be decided by the Court. For the reasons explained in his Johnson's Position to Disputed Jury Instruction Nos. 41 and 42, punitive damages are for the jury to decide. Johnson also objects to bifurcation. Chase has not attempted to make the required showing that bifurcation would serve one of the enumerated grounds in Rule 42(b).

## 14.  **ADMISSIONS**

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pre-Trial Order shall supersede the pleadings, and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

**IT IS SO ORDERED.**

DATED: August 12, 2026

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

23

**FINAL PRETRIAL CONFERENCE ORDER**