**WOMBLE BOND DICKINSON (US) LLP**
TOMIO NARITA (SBN 156576)
Tomio.Narita@wbd-us.com
ALISA A. GIVENTAL (SBN 273551)
Alisa.Givental@wbd-us.com
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone: (415) 433-1900

**DYKEMA GOSSETT LLP**
ABIRAMI GNANADESIGAN, State Bar No. 263375
*AGnanadesigan@dykema.com*
444 South Flower Street, Suite 2200
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

JOSHUA JOHNSON,

Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,

Defendant.

Case No. 2:22-cv-06718-AB-MAAx

The Hon. André Birotte Jr.
Courtroom 7B

Magistrate Maria A. Audero
Courtroom: 690

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S TRIAL BRIEF**

Complaint Filed: September 19, 2022
Trial Date: September 14, 2026

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. Relevant Facts .......... 2

III. Chase Furnished Only Factually Accurate Information .......... 5

IV. Johnson's Alleged Excuses For Nonpayment Do Not Change The Result .......... 6

V. There Was No Objectively And Readily Verifiable Information Available For Chase To Conclude Johnson's Excuses For Payment Were True .......... 7

VI. Johnson Cannot Prove An Unreasonable Investigation .......... 10

VII. Chase Was Not Required To Furnish A Dispute Notice To The CRAs .......... 11

VIII. Conclusion .......... 12

## TABLE OF AUTHORITIES

**Cases**

*Adedamola Osuolale v. Experian Info. Sols. Inc.*,
No. CV 25-07118-MWF (PVCX), 2026 (C.D. Cal. Aug. 27, 2026) ........................ 8

*Biggs v. Experian Info. Sols.*, Inc.,
209 F. Supp. 3d 1142 (N.D. Cal. 2016) ........................ 7

*Carvalho v. Equifax Info. Servs., LLC*,
629 F.3d 876 (9th Cir. 2010) ........................ 6, 7

*Chiang v. Verizon New England Inc.*,
595 F.3d 26 (1st Cir. 2010) ........................ 6

*Davis v. Trans Union, LLC*,
No. 2:22-CV-05819-SPG-AS, 2025 (C.D. Cal. July 22, 2025) ........................ 8

*Gorman v. Wolpoff & Abramson, LLP*,
584 F.3d 1147 (9th Cir. 2009) ........................ 10, 11, 12

*Gross v. CitiMortgage, Inc.*,
33 F.4th 1246 (9th Cir. 2022) ........................ 5, 10

*Hebrank v. Early Warning Servs. LLC*,
No. CV-24-03711-PHX-MTL, 2025 (D. Ariz. Apr. 18, 2025) ........................ 8

*Holden v. Holiday Inn Club Vacations Inc.*,
98 F.4th 1359 (11th Cir. 2024) ........................ 8

*Mader v. Experian Info. Sols., Inc.*,
56 F.4th 264 (2d Cir. 2023) ........................ 8

*Mehta v. Wells Fargo Bank, N.A.*,
No. CV 17-02532-AB (SSX), 2018 (C.D. Cal. Feb. 6, 2018) ........................ 7

*Reyes v. Equifax Info. Servs., LLC*,
140 F.4th 279 (5th Cir. 2025) ........................ 8

*Roberts v. Carter-Young, Inc.*,
131 F.4th 241 (4th Cir. 2025) ........................ 6, 8, 9

*Sessa v. Trans Union, LLC*,
74 F.4th 38 (2d Cir. 2023) ........................ 8

*Ward v. Nat'l Credit Sys., Inc.*,
182 F.4th 918 (10th Cir. 2026) ........................ 2, 7, 9

*Westra v. Credit Control of Pinellas*,
409 F.3d 1825 (7th Cir.2005) ........................ 10

**Statutes**

15 U.S.C. § 1681s-2(a)(1)(D) ........ 2, 9
15 U.S.C. § 1681s-2(b) ........ 1, 12
15 U.S.C. § 1681s-2(b)(1)(A) ........ 10
Cal. Civ. Code § 1785.25(a) ........ 1
ECF 196, § 5 ........ 2

## I. INTRODUCTION

Plaintiff Joshua Johnson ("Johnson") opened a business credit card account ("Business Card") with JPMorgan Chase Bank, N.A. ("Chase") in 2017, used the Business Card for months, and then closed the account without paying the full balance. The small balance remaining on the Business Card was ultimately charged off by Chase and was reported by the consumer reporting agencies ("CRAs"). Although the reporting resulted from Johnson's own failure to pay what he owed, he blames Chase for the consequences of the reporting. He sues Chase under the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.25(a), and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b).

Both claims require Johnson to prove it was inaccurate for Chase to furnish the charged off balance as owed to a CRA. *See* § III *infra*. But the balance was incurred by Johnson, past due, and unpaid, and thus factually accurate as reported by the CRAs. There was no bona fide dispute about the information Chase furnished. *See* § VII *infra*. This simple fact resolves both claims in Chase's favor.

Johnson is not expected to dispute that he failed to pay the full balance. Instead, he will try to convince the jury that the factually accurate information furnished by Chase should nevertheless be deemed "inaccurate" because he had two excuses for the failure to pay: (1) he allegedly could not access his account statements online and (2) he allegedly attempted to pay off the balance during a September 2017 call.[1] But even if Johnson could prove he had an excuse for his failure to pay (he cannot), he cannot transform the accurate information Chase

[1] Johnson litigated these excuses in a separate arbitration proceeding that lasted four days under a breach of contract theory and he lost. ECF 68-1. This Court held the arbitration has no preclusive effect in his case because the arbitration agreement states: "No arbitration award or decision will have any preclusive effect on issues or claims in any subsequent proceedings ***beyond the Claims at issue***," and unlike the arbitration claims that were fundamentally contract claims, this case is not. ECF 80 at 4 (citations omitted) (italics emphasis added).

furnished into inaccurate information under the FCRA or CCRAA.[2] ECF 187, Chase Jury Instruction ("J.I.") # 32; *see* § IV *infra*. In other words, Johnson's alleged excuses for his failure to pay do not trump objective accuracy.

Johnson also cannot establish the requisite inaccuracy under the FCRA and the CCRAA because he cannot demonstrate Chase had the ability to confirm the alleged inaccuracy through objectively and readily verifiable information. ECF 187, Chase J.I. ## 32, 35; *Ward v. Nat'l Credit Sys., Inc.*, 182 F.4th 918, 937 (10th Cir. 2026) (reversing jury verdict; plaintiff failed to establish an objectively and readily verifiable inaccuracy); *see also* § V *infra*. Johnson did not assert his excuses for nonpayment at a time when they could have been objectively and readily verified by Chase. And the FCRA, and by extension the CCRAA, does not require furnishers to change factually accurate information solely based on the allegations of a consumer. *See* 15 U.S.C. § 1681s-2(a)(1)(D). Chase's investigation was also reasonable based on the information Johnson provided about the dispute and information available to Chase at the time of investigation. *See* § VI *infra*; ECF 187, Chase J.I. ## 29; 34.

While not discussed in this brief, the evidence at trial will also establish that Johnson has no damages traceable to Chase's alleged conduct, that Johnson failed to mitigate damages he seeks to recover, and that his claims are largely time-barred.

## II. Relevant Facts

On January 5, 2017, while residing in North Carolina, Johnson opened the Business Card account. ECF 196, § 5, Admitted Fact (A.F.) # 2. On February 16, 2017, Johnson changed to paperless billing, which meant Chase would post the monthly statements online and notify him by email when they became available through its online portal. *Id.* at # 2. He established online login credentials for the

[2] Even if it did, other than the presumptively precluded contract theories Johnson litigated in arbitration, *see* fn. 1, he asserts no basis for why nonreceipt of statements or a mistake about a payment eliminates his obligation to repay amounts he indisputably incurred.

Business Card on February 17, 2017. Trial Exhibit ("Tr. Exh.") # 306. (Johnson already had separate account login credentials for accessing his consumer accounts. *Id.* at 305.)

Johnson made purchases using the Business Card from January 14, 2017 through July 6, 2017, A.F. # 6, and he received monthly emails notifying him the account statements were available. *See e.g.* A.F. at # 4; Tr. Exhs. ## 53, 55, 59, 61, 64, 67, 73.

As of July 24, 2017, the account balance was $302.45, and a minimum payment of $65.49 was due on or before August 18, 2017. Tr. Exh. # 302, Bates CHASE00041. Johnson did not pay. The next statement reflected a balance (including interest and late charges) of $345.97 and a minimum payment of $111.49 (including the past due amount of $65.49) owed by September 18, 2017. *Id.* at Bates CHASE00045.

On September 6, 2017, Chase called Johnson to request payment. A.F. # 7. He authorized the minimum payment of $111.49. *See id.* at # 8. Chase confirmed receipt of $111.49 by email to Johnson on the same day. *Id.* Following the September 6, 2017 call, a balance of $234.48 remained unpaid. *See* Tr. Exh. # 302, Bates CHASE00045, CHASE00049.

Johnson closed the account on September 15, 2017. Thereafter, Chase continued to send Johnson monthly email notices when each month's statement became available online. Tr. Exhs. ## 79, 86, 94, 97, 102, 106, 110, 112. Johnson, however, did not make further payments. Each month, his balance accrued interest and late charges. *See id.* at CHASE00049, CHASE00053, CHASE00057, CHASE00061, CHASE00065, CHASE00069, CHASE00073, CHASE00077.

In addition, after the September 6, 2017 call, Chase attempted to reach Johnson by phone at least 9 times and sent him a notice – on April 6, 2018 – that the account was about to be charged off. *See* Tr. Exhs. ## 312, 325. On April 30, 2018, Chase charged off the account with a final balance of $499.53. *Id.* at CHASE00077;

Tr. Exh. # 308 at CHASE00143.

From approximately December 2017 until July 2018, Chase furnished information about the account to the consumer reporting agencies with its past-due status and charge off. Tr. Exh. 126. Thereafter Chase stopped furnishing any data.[3] *Id.*

In May 2018 and June 2018, after receiving a notice from a collection agency, Johnson contacted Chase about the Business Card. He claimed he had been unaware of the balance because the account was not showing when he logged into Chase's online portal. Tr. Exh. 337. But it appears he had not tried to log in using his business account login credentials. Indeed, he told Chase on June 12, 2018 he had no idea they existed.[4] *Id.*; A.F. # 9.

Johnson did not pay off the balance on the account or contact Chase again about the account between June 12, 2018 to August 26, 2020. *See* Tr. Exh. # 308.

In March 2019, Johnson moved to California. A.F. # 10.[5]

On August 24, 2020, Johnson submitted an online credit dispute about the Business Card to Equifax. *Id.* at # 11. As part of the online dispute process, Johnson provided a narrative description of his dispute in a text box. *Id.* at # 12. The narrative stated: "Chase never sent a paper bill, never called, never emailed, or otherwise attempted to make me aware in any way that the account carried a balance while the account was open. I regularly logged into my Chase account online and observed a $0 balance." Tr. Exh. # 320.

---

[3] Johnson's CCRAA claim for any reporting on or before March 24, 2020 is time-barred by the CCRAA's two-year statute of limitations. *See* ECF 187, J.I. No. 48. For this reason, any reporting up to July 2018 is not actionable in this case.

[4] In fact, as the agent he spoke with reminded him, he had successfully logged into the business profile on April 4, 2017. Tr. Exh. 337.

[5] Johnson was not subject to the protections of the CCRAA prior to moving to California and for this reason also cannot recover for any allegedly inaccurate information furnished prior to March 2019. *See* ECF 187, J.I. No. 38.

On or about August 25, 2020, Equifax provided notification of the dispute to Chase. A.F. # 13. Equifax summarized the dispute using a code "104 – Claims account take-over, fraudulent charges on account." Tr. Exh. # 320.

On August 26, 2020, before Chase had completed its investigation of his dispute, Johnson called Chase and paid off the balance on the Business Card. Tr. Exh. # 308 at CHASE0133.

Chase investigated the dispute and submitted its response to Equifax on September 8, 2020. A.F. # 14. As part of the response, Chase updated certain information, including by changing the balance owed to $0 because of the payment received from Johnson on August 26, 2020. *Id.; see also:* Tr. Exhs. ## 307, 320.

On September 30, 2020, Johnson initiated an arbitration proceeding with the American Arbitration Association against Chase. Tr. Exh. # 254. After extensive discovery and four days of hearings, on March 3, 2022, the arbitrator issued a ruling addressing the two theories of liability Johnson ultimately pursued. He found in relevant part that (1) "Johnson presented no evidence that his Ink account statements were not available from March 2017 at least through Sept., 2017 on the separate account website access that he had set up and then apparently forgot," and that (2) "there was a mutual mistake of fact between the parties with Johnson understanding that he was paying the entire balance and Chase understanding that he was paying only the minimum payment." ECF 68-1. No damages were awarded to Johnson. *Id.* The arbitrator's ruling was confirmed as a judgment in California State Court on May 9, 2025. *Id.*

**III. Chase Furnished Only Factually Accurate Information**

Both of Johnson's claims require proof that Chase furnished inaccurate information to a CRA. *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022) ("If there is no inaccuracy, then the reasonableness of the investigation is not in play."); Cal. Civ. Code § 1785.25(a) ("A person shall not furnish information …to any consumer credit reporting agency if the person knows or should know the

information is incomplete or inaccurate.”).

Both claims will fail because the information Chase furnished was accurate. Johnson does not dispute the transactions on the account. ECF 74, ¶ 23, or that he owed a balance of $345.97 as of September 6, 2017. On that date, only $111.49 in funds were applied to the account, leaving an unpaid balance of $234.48.

Johnson made no further payments (until he finally paid off the account in full on August 26, 2020). In the interim, up until July 2018, Chase furnished accurate information reflecting the balance owed, together with accruing interest and late fees, as increasingly past due. The furnishing of accurate information precludes liability under the FCRA or CCRAA.

**IV. Johnson’s Alleged Excuses For Nonpayment Do Not Change The Result**

Johnson contends the accurate information furnished about his account should be deemed inaccurate under the FCRA and CCRAA because he allegedly had two excuses for nonpayment. First, he allegedly believed his payment on September 6, 2017 was payment in full. Second, because Chase allegedly failed to make account statements available. Johnson effectively contends these excuses negate his obligation to pay such that it was “inaccurate” to furnish information reflecting the account with the unpaid balance owed.

Courts all over the country have rejected collateral attacks on contractual obligations to pay, finding them inactionable under the FCRA.[6] *E.g. Carvalho v.*

[6] This case law is being replaced with the “objectively and readily verifiable” standard discussed in the next section, but the outcome using either lines of case law is the same. Courts continue to recognize that furnishers are not tribunals required to decide disputes that have no objectively and readily verifiable answer. *See e.g. Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 251 (4th Cir. 2025) (“Furnishers are not tribunals. They have neither the resources nor the expertise to conduct the level of investigation that takes place in judicial proceedings or to make the kinds of determinations about disputes that courts make.”). It took two years of discovery and four days of hearings for an arbitrator to rule on Johnson’s breach of contract theories. Chase was not required to resolve the same contentions within the 30-day dispute window allotted by the FCRA.

*Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010) ("[C]ourts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims."); *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 38 (1st Cir. 2010) ("just as in suits against CRAs, a plaintiff's required showing is factual inaccuracy, rather than the existence of disputed legal questions," because "[l]ike CRAs, furnishers are 'neither qualified nor obligated to resolve' matters that 'turn[ ] on questions that can only be resolved by a court of law.'"); *Mehta v. Wells Fargo Bank, N.A.*, No. CV 17-02532-AB (SSX), 2018 WL 5880758, at *3 (C.D. Cal. Feb. 6, 2018) (citing *Biggs v. Experian Info. Sols.*, Inc., 209 F. Supp. 3d 1142, 1144 (N.D. Cal. 2016) (The alleged inaccuracy must be a factual inaccuracy; "the presentation of legal defenses to payment will not suffice."); *see also:* ECF 187, Chase J.I. # 32.

Johnson has not identified any case where a consumer established that he failed to receive a credit card statement, or that he was mistaken about the amount he had paid, and this was sufficient to prove that the charges he admittedly incurred on a credit card were no longer owed.

When this Court denied Chase's motion for summary judgment, it held that the outcome of the arbitration proceeding has no preclusive effect here *because* the claims in this case are not the same contract claims. *See* ECF 80, p. 4. Johnson cannot prove inaccuracy by relying on the breach of contract theories he already litigated. He has not stated any other basis for claiming his excuses for failure to pay have any impact on the accuracy of the information furnished by Chase. He cannot transform factually accurate information furnished by Chase into inaccurate information actionable under the FCRA or CCRAA.

**V. There Was No Objectively And Readily Verifiable Information Available For Chase To Conclude Johnson's Excuses For Payment Were True**

An emerging multi-circuit consensus holds that an alleged inaccuracy is not

actionable under the FCRA, and by extension the CCRAA,[7] unless it involves information that is "objectively and readily verifiable." *Ward v. Nat'l Credit Sys., Inc.,* 182 F.4th 918, 937 (10th Cir. July 20, 2026) (joining the Second, Fourth, Fifth, and Eleventh Circuits: "reported information is actionably 'inaccurate' only if that information is objectively and readily verifiable"); *Roberts v. Carter-Young, Inc.,* 131 F.4th 241, 251 (4th Cir. 2025) ("reported information is actionably 'inaccurate' only if that information is objectively and readily verifiable' as mistake- or error-free."); *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269–70 (2d Cir. 2023) (an unresolved legal question concerning the validity of a debt was not sufficiently objectively verifiable); *Reyes v. Equifax Info. Servs., LLC*, 140 F.4th 279, 287 (5th Cir. 2025) (same where the legal position on the debt's validity was "contested and unresolved"); *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1369 (11th Cir. 2024); *Sessa v. Trans Union, LLC*, 74 F.4th 38, 42 (2d Cir. 2023).

While the Ninth Circuit has not formally adopted this standard, courts in this Circuit, including this Court, have applied it. E.g. *Davis v. Trans Union, LLC*, No. 2:22-CV-05819-SPG-AS, 2025 WL 2851881, *9 (C.D. Cal. July 22, 2025) ("in light of the weight of authority from other Circuits, the Court will instead apply the 'objectively and readily verifiable' test to analyze whether plaintiffs' claimed inaccuracies are actionable."); *Adedamola Osuolale v. Experian Info. Sols. Inc.,* No. CV 25-07118-MWF (PVCX), 2026 WL 2536499, at *6 (C.D. Cal. Aug. 27, 2026) ("even assuming that either of Plaintiff's theories rendered MBFS's reporting inaccurate, neither inaccuracy involved 'the type of straightforward application of law to facts that [MBFS] could objectively and readily verify.'"); *id.* ("MBFS's allegedly inaccurate resolution of that dispute is not actionable because it is 'a contractual [and statutory] dispute without a straightforward answer.' ") (quoting *Holden,* 98 F.4th at 1368); *Hebrank v. Early Warning Servs. LLC*, No. CV-24-

[7] California courts interpret the CCRAA consistently with the FCRA. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890-91 (9th Cir. 2010).

03711-PHX-MTL, 2025 WL 1148801, at *4 (D. Ariz. Apr. 18, 2025) ("[T]he matters which Hebrank raises concern about are objectively and readily verifiable . . . .").

Johnson says the information furnished by Chase was inaccurate because Chase failed to make statements available to him online in 2017 and failed to comply with his payment instructions during the September 6, 2017 call.[8] By the time he challenged the accuracy of the reporting based on lack of access to statements online, in June 2018, his online access had been shut down, statements were in fact no longer available online, and there was no way for Chase to investigate the veracity of his claim about alleged lack of access back in 2017.[9] And Johnson waited until the 2020 arbitration before challenging the accuracy of the reporting based on the claim that he paid in full during the September 2017 call, which was long after the only evidence of what actually happened – the recording of that call – was unavailable. At all relevant times, the only record of Johnson's claimed excuses has been Johnson's unilateral representations.

Under the FCRA and the "objectively and readily verifiable" standard, furnishers are not required to remove factually accurate information on the basis of the consumer's statement alone. *Ward,* 182 F.4th 931–32 (A furnisher will have "reasonable cause to believe that the information is inaccurate" when it has "specific knowledge, ***other than solely allegations by the consumer***, that would cause a reasonable person to have substantial doubts about the accuracy of the information.") (citing 15 U.S.C. § 1681s-2(a)(1)(D) (emphasis added in opinion)); *id.* at 937 (reversing FCRA jury verdict; identity theft allegations required the furnisher to "subjectively assess … credibility," which "a furnisher is not qualified nor obligated to do… Thus, Ward cannot show the information was inaccurate under the

[8] Johnson relayed neither claim in his August 2020 dispute.

[9] At the time, it also became clear that Johnson was not logging into his online business profile where the statements had been available prior to charge off, so this excuse for nonpayment was meritless.

objectively-and-readily-verifiable standard."); *Roberts,* 131 F.4th at 251 ("[A] dispute that involves complex fact-gathering and in-depth legal analysis of the sort that courts would typically perform is not objectively and readily verifiable. A dispute that implicates unsettled questions of law and requires credibility determinations and quasi-discovery isn't either.").

Johnson cannot prove an actionable inaccuracy to support his FCRA and CCRAA claims because the alleged inaccuracy was not objectively and readily verifiable at any relevant time.

**VI. Johnson Cannot Prove An Unreasonable Investigation**

The claim under section 1681s-2(b) of the FCRA requires proof that Johnson communicated to a CRA that information Chase furnished was inaccurate, and that Chase conducted an unreasonable investigation of that dispute. 15 U.S.C. § 1681s-2(b)(1)(A); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009).

Whether an investigation is reasonable "depends in large part on ... the allegations provided to the furnisher by the credit reporting agency.' " *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1160 (9th Cir. 2009) (citation omitted); *Id.* at 1157 ("The pertinent question is thus whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute.") (citing *Westra v. Credit Control of Pinellas*, 409 F.3d 1825, 1827 (7th Cir.2005) ("[The furnisher's] investigation in this case was reasonable given the scant information it received regarding the nature of [the consumer's] dispute.")); *Gross*, 33 F.4th 1246, 1252 ("Courts have also identified several factors that inform the reasonableness analysis, including: the furnisher's relationship to the debt and to the consumer; the level of detail in the credit reporting agency's notice of dispute; and the feasibility of implementing investigatory procedures, including training staff.") (citations omitted).

Chase reasonably investigated the one dispute it received from Equifax about

the Business Account on August 25, 2020, A.F. # 13. Equifax coded it as a claim of "account take-over, fraudulent charges on account," with a narrative statement that: "Chase never sent a paper bill, never called, never emailed, or otherwise attempted to make me aware in any way that the account carried a balance while the account was open. I regularly logged into my Chase account online and observed a $0 balance." Tr. Exh. # 320.

Chase's fraud group investigated the account take-over claim and determined it was unsubstantiated, because the last payment on the account was made from a deposit account in Johnson's name and no charges were subsequently incurred. *See* Tr. Exh. # 307, 309. This outcome is not in dispute – Johnson concedes all the transactions on the account were his. *See* ECF 74, ¶ 23.

The narrative statement provided by Johnson was also meritless, but Chase thoroughly investigated the account reporting and appropriately updated it based on recent changes to the status of the account, including Johnson's recent payoff, and reached the only reasonable conclusion available given the information the dispute communicated.

## VII. Chase Was Not Required To Furnish A Dispute Notice To The CRAs

Johnson sues Chase in part for failure to furnish notice to Equifax that he was disputing the account when Chase responded to Johnson's Equifax dispute in September 2020.

Under *Gorman*, a consumer has "no private right of action under § 1681s–2(a)(3) to proceed against [the furnisher] for its ***initial failure*** to notify the CRAs that he disputed the Four Peaks charges." *Gorman*, 584 F.3d at 1162 (emphasis added). But, private liability may attach for failure to ***correct*** this ***initial omission*** upon investigation under 15 U.S.C. § 1681s-2(b). *Gorman*, 584 F.3d at 1164 ("A disputed credit file that ***lacks a notation of dispute*** may well be 'incomplete or inaccurate' within the meaning of the FCRA, and the furnisher has a privately enforceable obligation to ***correct*** the information ***after notice***.") (emphasis added); *id.* ("It is true,

as we have said, that a furnisher's initial failure to comply with this requirement is not privately enforceable. But as the Fourth Circuit noted, this does not excuse the furnisher's failure to correct the omission after investigating pursuant to § 1681s–2(b)") (citations omitted). *Gorman* also explained that only failure to furnish notice of a meritorious, bona fide dispute can be actionable. *Id.* at 1163.

The evidence at trial will establish that Chase had no obligation to do so for at least two reasons.

First, Johnson never submitted a direct dispute before the September 2020 indirect dispute. There was therefore no "initial failure" to furnish a dispute notice on the account under § 1681s-2(a)(3), and therefore nothing to "correct" under § 1681s-2(b). *See Gorman*, 584 F.3d at 1164.

Second, Johnson's dispute was not bona fide but demonstrably false. He did not receive paper bills because he elected paperless billing, he was sent numerous emails about his statements, and he ignored attempts to reach him by phone. His claim that he "regularly logged into [his] Chase account online and observed a $0 balance" is irreconcilable with the account records. *See* Tr. Exh. # 302. In short, the dispute narrative was false on its face, and a dispute built on demonstrably false premises is not a "bona fide dispute" that "could materially alter how the reported debt is understood." *Gorman,* 584 F.3d at 1163.

**VIII. Conclusion**

This case is not complicated. The information Chase furnished was accurate. The alleged inaccuracies Johnson identifies were not objectively and readily verifiable. The investigation Chase conducted was reasonable. And Johnson never communicated a cognizable dispute that would have required Chase to furnish to Equifax notice that the account was disputed. Chase anticipates the evidence at trial will bear this out on every claim.

DATED: September 8, 2026

**WOMBLE BOND DICKINSON (US) LLP**

By: */s/Alisa A. Givental*
Alisa A. Givental

Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Mercedes-Benz Financial Services USA LLC certifies that this brief contains 3,613 words, which complies with the word limit of L.R. 11-6.1.

DATED: September 8, 2026

**WOMBLE BOND DICKINSON (US) LLP**

By: */s/Alisa A. Givental*
Alisa A. Givental

Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

**PROOF OF SERVICE**

*Joshua Johnson vs. JPMorgan Chase Bank, N.A.*
*USDC, Central District, Case No. 2:22-cv-06718-AB-MAA*

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is 50 California Street, Suite 2800, San Francisco, California 94111.

On the date set forth below, I served the following document(s) described as:

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S TRIAL BRIEF**

on the interested parties in this action as follows:

Joshua Johnson
2201 5th St. Apt 208
Santa Monica, CA 90405

Tel: (336) 423-2594
Email: iosh@ii88.org

**PLAINTIFF PRO SE**

☒**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address alisa.givental@wbd-us.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 8, 2026, at Richmond, California.

Alisa Givental