**Joshua Johnson**
1957 Diamond St
San Diego, CA 92109
(336) 423-2594
josh@jj88.org
PRO SE

FILED
CLERK, U.S. DISTRICT COURT
SEP 07 2026
CENTRAL DISTRICT OF CALIFORNIA
BY: GK DEPUTY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| JOSHUA JOHNSON,<br>Plaintiff,<br>v.<br>JPMORGAN CHASE BANK, N.A.,<br>Defendant. | Case No.: 2:22-cv-06718-AB-MAAx<br><br>**PLAINTIFF'S EX PARTE APPLICATION FOR AN ORDER ENFORCING THE FINAL PRETRIAL ORDER AND FOR TRIAL CONTINUANCE**<br><br>Judge: Hon. André Birotte Jr.<br>Place: Courtroom 7B |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Plaintiff Joshua Johnson ("Johnson") respectfully applies ex parte for an order enforcing the Final Pretrial Order entered on August 12, 2026 (Dkt. 196), precluding David Rivera from testifying at trial, and continuing trial for one week, from September 14 to September 21, 2026, under L.R. 40-1.

This application is brought ex parte because trial is set for September 14, 2026. (Dkt. 193 at 2.) Defendant JPMorgan Chase Bank, N.A. ("Chase") disclosed Rivera as a proposed replacement witness on August 19, 2026, and its counsel terminated his August 31 deposition before Johnson could complete his examination. A ruling is needed before trial to resolve whether Rivera may testify and to permit orderly trial preparation; the ordinary notice period would extend beyond the trial date.

Johnson provided notice of this application to Defendant's counsel, Tomio Narita ("Narita"), by email on August 31, 2026, describing the relief requested and the grounds for the application. On September 1, 2026, Narita stated that Defendant would oppose the application. (Declaration of Joshua Johnson ("Johnson Decl.") ¶ 4.) Since August 31, 2026, Johnson has also spoken by telephone several times with Chase's counsel, Alisa Givental, about the general substance of the application. Defendant is advised that, under the Court's procedures, any opposition must be filed within 48 hours (two court days) after service of this application.

Pursuant to Local Rule 7-19, Narita's contact information is as follows: 50 California Street, Suite 2800, San Francisco, CA 94111; tomio.Narita@wbd-us.com; (415) 765-6274.

**DATED:** September 7, 2026

Joshua Johnson

/s/ Joshua Johnson

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The Final Pretrial Order provides that only the witnesses identified on the parties' witness lists will be permitted to testify and that it may be modified only to prevent manifest injustice. David Rivera is on neither list.

The proposed substitution of Rivera is Chase's second attempt to replace its corporate representative. This Court permitted the first—Rob Wilkins for Barbara Burda, who Chase represented had left the company—on the condition that Johnson could depose Wilkins, at Chase's expense, before trial. Eight days after that ruling, and one week after the Final Pretrial Order was entered, Chase announced by email that Wilkins was "leaving" and that Rivera would testify in his place. Chase has not moved to amend the Final Pretrial Order. It has not shown that Wilkins has actually left; its counsel has instead given shifting accounts of his status, including counsel's statement on the record that he had "no idea" whether Wilkins remained employed. When Johnson deposed Rivera, counsel for Chase terminated the deposition after about 40 minutes and directed the witness to leave.

Trial is scheduled to begin on September 14, 2026. Johnson does not know who, if anyone, Chase will call as its corporate representative. Because the Final Pretrial Order has been entered, that question is governed by Rule 16(e)—not the Rule 37(c) analysis that resolved the first substitution—and Chase cannot meet the manifest injustice standard. Johnson therefore moves to enforce the Final Pretrial Order as entered and to preclude Rivera from testifying at trial.

## II. LEGAL STANDARD

Ex parte relief requires irreparable prejudice from ordinary motion procedures and an emergency the applicant did not create, or that resulted from excusable neglect. *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488, 492–93 (C.D. Cal. 1995). For the reasons stated below, ordinary motion

procedures would cause irreparable prejudice, and Johnson did not create the emergency.

Rule 16(e) permits modification of a final pretrial order "only to prevent manifest injustice." Fed. R. Civ. P. 16(e). This is "the highest standard in the Federal Rules of Civil Procedure." *Cawley v. American Financial Security Life Insurance Co.*, 2026 WL 799690, at *4 (D. Ariz. Mar. 23, 2026) (quoting *McBroom v. Ethicon, Inc.*, 341 F.R.D. 40, 42 (D. Ariz. 2022)).

The party seeking amendment bears "the burden of showing that an amendment to the pretrial order [is] necessary to prevent 'manifest injustice.'" *Galdamez v. Potter*, 415 F.3d 1015, 1020 (9th Cir. 2005). "In evaluating a motion to amend the pretrial order, a district court should consider four factors: (1) the degree of prejudice or surprise to the [non-moving party] if the order is modified; (2) the ability of the [non-moving party] to cure the prejudice; (3) any impact of modification on the orderly and efficient conduct of the trial; and (4) any willfulness or bad faith by the party seeking modification." *Id.*

## III. BACKGROUND

### A. Deposition of Barbara Burda

On October 23, 2023, Johnson deposed Barbara Burda pursuant to Rule 30(b)(6). (Ex. A, Burda Dep. 12:23–13:16.) On October 31, 2023, fact discovery closed. (Dkt. 27 at 3.)

On March 13, 2026, counsel for Chase stated via email that Chase intended to replace Burda with Wilkins: "We only have one witness to add to the [witness] list - Rob Wilkins; he will be replacing our 36(b)(6) [sic] witness, who is not available for trial." (Ex. B at 1.)

### B. Disclosure of Rob Wilkins

On March 20, 2026, pursuant to this Court's November 14, 2025 Scheduling Order and L.R. 16-5, both parties submitted their witness lists. (Dkt. 83 at 2; Dkt.

126 at 1; Dkt. 143 at 1.) Both parties identified Wilkins as a trial witness, and each allocated 1.5 hours for direct examination of Wilkins. (Dkt. 126 at 3; Dkt. 143 at 2.)

On March 21, 2026, Johnson served his Motion in Limine No. 1 to Preclude Testimony of Rob Wilkins ("Johnson's MIL"), arguing that Wilkins should be prohibited from testifying at trial because Chase had not timely identified him as required by Rule 26(e)(1)(A). (Dkt. 135 at 1–2.)

On March 27, 2026, Chase served its opposition to Johnson's MIL and confirmed that "Chase is now substituting in Wilkins as its corporate representative for trial because Burda is no longer employed by Chase." (Dkt. 145 at 2, 6.)

**C. Final Pretrial Conference, MIL Order, and Final Pretrial Order**

On July 17, 2026, this Court held the Final Pretrial Conference and heard oral argument from the parties concerning Johnson's MIL. At the conference, Chase represented several times that Wilkins would testify at trial. (Ex. C, July 17, 2026 Tr. 24:15–25, 27:16–23, 31:1–32:23.)

On August 11, 2026, this Court entered its Order re Motions in Limine ("MIL Order"). (Dkt. 195.) With respect to Johnson's MIL, the Court stated:

> Plaintiff argues that Defendant did not timely disclose Wilkins, its Rule 30(b)(6) witness. Defendant argues that it previously disclosed Barbara Burda as its Rule 30(b)(6) witness, and states that she left the company so Defendant needed to replace her with a different person.
>
> Courts do tend to permit a party to replace a Rule 30(b)(6) witness who has left its employment with a different individual. *See Coach, Inc. v. Visitors Flea Market, LLC*, 2014 WL 2612036, at *2 (M.D. Fla. 2014) ("as a general proposition, a corporation should not be prohibited from calling a designated representative as a witness simply because the person it thought was going to testify leaves its employ"). Here, Defendant presented no sworn declaration that Burda departed, nor did it say when she departed. The Court is thus left with nothing but

unattested argument of counsel regarding the circumstances of the designation. However, counsel's representations at oral argument are sufficient to remedy this omission. The Court therefore DENIES the Motion, but on the condition that **Plaintiff gets to depose Wilkins if he desires, AT DEFENDANT'S EXPENSE, by September 1, 2026, unless Plaintiff prefers a later date**. It should also go without saying that Wilkins must not testify differently from the original witness Burda. (Dkt. 195 at 8 (emphasis added).)

On August 12, 2026, this Court entered the Final Pretrial Order. The Final Pretrial Order states that "[o]nly the witnesses identified on the [witness] lists will be permitted to testify (other than solely for impeachment)" and that the Final Pretrial Order shall "govern the course of the trial of this cause, unless modified to prevent manifest injustice." (Dkt. 196 at 21, 23.)

**D. Disclosure of David Rivera**

On August 13, 2026, Chase offered to make Wilkins available for deposition on August 31, 2026, and Johnson agreed. (See Ex. D at 1 (August 17 email confirming the planned August 31 deposition).)

On August 19, 2026, counsel for Chase stated via email: "**I just learned that Rob Wilkins is leaving JPMorgan Chase and that he will be unable to testify at the deposition or at trial**. We have arranged for another witness to testify named David Rivera. Mr. Rivera lives in Illinois. I have confirmed he is available for deposition on August 31st." (Ex. E at 1 (emphasis added).)

**E. Aborted Deposition of David Rivera**

On August 25, 2026, Johnson informed Chase that he was having difficulty finding a court reporting firm that would work with a pro se litigant and asked Chase to arrange and pay for the reporter and videographer, given the Court's order that the deposition of Rob Wilkins be taken "AT DEFENDANT'S EXPENSE." (Ex. E at 5; Johnson Decl. ¶ 17; Dkt. 195 at 8.) Chase declined. (Ex. E at 6.) Johnson also

served a third amended Rule 30(b)(6) notice of deposition, renewing all prior topics and adding three new topics related to the alleged separations of Burda and Wilkins. (Ex. E at 5; Ex. G at 2, 10–14.)

In the same email, Johnson requested a conference about the noticed deposition topics under Rule 30(b)(6). (Ex. E at 5.) Chase did not respond. (Johnson Decl. ¶ 10.)

On August 26, 2026, Johnson stated via email: "I object to the improper substitution of Wilkins with Rivera. Chase designated Wilkins five months ago. The order names Wilkins. My trial preparation from March 2026 through early August focused on Wilkins, not Rivera, whom I had never heard of until last week." (Ex. E at 7.)

On August 27, 2026, Johnson scheduled a deposition with Brickell Key Reporting ("Brickell"), a firm in Florida. Because Johnson is a pro se litigant, Brickell required an upfront deposit of $3,823.50. (Ex. H at 1–2.)

Late in the afternoon on Friday, August 28, 2026, Chase served written objections to the deposition notice. (Ex. E at 20; Ex. I at 2–6.)

On August 31, 2026, at approximately 7:00 a.m., Johnson appeared to take Rivera's deposition. Johnson asked whether Wilkins was "employed by JPMorgan Chase today, August 31st?" and counsel for Chase responded that he "ha[d] no idea":

MR. JOHNSON: **<u>Where's Mr. Wilkins?</u>**

MR. NARITA: We already told you that Mr. Rivera is going to be here testifying. I think we told you well over a week ago. And Mister –

MR. JOHNSON: So…

MR. NARITA: And **<u>Mr. Wilkins is no longer with the bank</u>**, so he's…

MR. JOHNSON: He's… He's unemployed? He's… He's not a… He's not employed by JPMorgan Chase as of today, August 31st?

> MR. NARITA: He's… He's been let go by the bank, and so he's not going to be testifying today.
>
> MR. JOHNSON: **Is he employed by JPMorgan Chase today, August 31st?**
>
> MR. NARITA: **I have no idea, Josh.** Get going with your deposition. You're burning your time. (Ex. J, Rivera Dep. 6:12–7:3 (emphasis added).)

During the deposition, counsel repeatedly threatened to end the examination over the "scope" of Johnson's questions concerning Chase's substitutions. (Ex. J, Rivera Dep. 17:16–22, 18:5–10, 22:17–24:23; see also Ex. I at 5.) Johnson acknowledged counsel's objections but declined to modify his questions. (Ex. J, Rivera Dep. 25:8–16, 29:23–30:6.) At approximately 7:40 a.m. Pacific, counsel directed Rivera to leave:

> MR. NARITA: David, I want you to click out of however you can click out of this deposition. **We're going to end this deposition.** I'm going to be contacting the judge. (Ex. J, Rivera Dep. 25:18–21 (emphasis added).)

At approximately 12:20 p.m., at Chase's request, this Court held an emergency meeting. When questioned by this Court concerning Wilkins's employment status, counsel for Chase made conflicting statements: that "if he's still an employee today, then he won't be very long," but also that "he has been terminated as part of a reduction in force" and "maybe he's still with the bank." This Court denied Chase's request for a protective order and encouraged counsel to assist in securing a court reporter so the deposition could resume. The meeting ended at approximately 1:15 p.m. (Johnson Decl. ¶ 18.)

After the meeting, Johnson emailed Chase to ask whether it would secure a court reporter (Ex. E at 9); Chase did not reply. (Johnson Decl. ¶ 19.) Johnson then contacted Brickell, but its office had already closed. (Johnson Decl. ¶ 19.)

**F. Attempted Second Deposition of David Rivera**

On September 1, 2026, Chase offered Rivera for deposition on September 3, 2026. (Ex. E at 11.) Johnson informed Chase several times that he was available (Ex. E at 12, 18), but that he would need several days to obtain funds for a second upfront deposit. (Johnson Decl. ¶ 20.) Combined with the $3,823.50 already paid, the second deposit would require Johnson to advance more than $7,500 in total—an expense he had not planned for.[1] He again requested that Chase arrange and fund the deposition. (Ex. E at 13, 15–16.) On September 2, 2026, Chase acknowledged responsibility for the deposition's expense but did not agree to arrange it or advance the required deposit. (Ex. E at 17.) Johnson reiterated: "I remain available and I want to take the deposition," explaining that "[t]he problem is that Chase won't schedule it, Chase won't advance the deposit, and I can't pay the deposit until funds from Schwab land in 1-3 days." (Ex. E at 18.) Counsel for Chase responded: "I understand your email to mean that you are not taking us up on the offer to have Mr. Rivera's deposition tomorrow. I will release him." (Ex. E at 19.)

**IV. ARGUMENT**

**A. Chase's proposed substitution of Rivera requires amending the Final Pretrial Order, and Chase cannot meet Rule 16(e)'s manifest injustice standard.**

This second attempt to substitute a corporate representative differs significantly from the first. First, because the Final Pretrial Order has been entered, substitution would require amending the Final Pretrial Order to add Rivera to the witness list. (Dkt. 196 at 21, 23; Dkt. 126 at 2–3; Dkt. 143 at 1–2.) The governing standard for amendment is not Rule 37(c)'s substantial-justification-or-harmlessness standard; instead, it is Rule 16(e)'s manifest-injustice standard. Second, Chase has not moved to amend. Third, unlike its representation that Burda had left the

1 Johnson testified on October 27, 2023, that he no longer used credit cards because of the events underlying this case. (Ex. K, Johnson Dep. 95:9–13, 98:3–5.)

company, Chase's representations about Wilkins's employment status are inconsistent; its counsel stated on the record that he did not know whether Wilkins remained employed. (Ex. J, Rivera Dep. 6:24–7:1.) Fourth, the parties are not two months from trial; they are about a week from trial. (Dkt. 193 at 2 (setting trial for September 14, 2026).) Fifth, Chase violated this Court's MIL Order by failing to produce Wilkins for deposition, producing Rivera, and then preventing Johnson from completing Rivera's deposition. (Dkt. 195 at 8; Ex. E at 1; Ex. J, Rivera Dep. 25:18–21, 30:7–22.) Sixth, Rivera and Wilkins possess different personal knowledge.

**1. Chase knowingly failed to seek the amendment required to add Rivera as a trial witness.**

Rule 16(e) is unambiguous. If Chase wants Rivera to testify at trial, it must move to amend the Final Pretrial Order. Chase cannot claim ignorance; on August 31, 2026, Johnson emailed counsel for Chase and stated:

> [Y]ou are attempting to add David Rivera. Rivera is not listed on the witness list incorporated into the Final Pretrial Order entered August 12. The party seeking amendment bears "the burden of showing that an amendment to the pretrial order [is] necessary to prevent 'manifest injustice.'" *Galdamez v. Potter*, 415 F.3d 1015, 1020 (9th Cir. 2005); Fed. R. Civ. P. 16(e). An email announcing Rivera as a replacement did not modify the Order, and Chase has never sought leave to amend it. (Ex. E at 10.)

This alone is a basis to preclude Rivera from testifying at trial. If Chase believed it had a colorable argument to amend the Final Pretrial Order, it could and should have moved to amend it immediately after it "learned" of Wilkins's alleged unavailability on or around August 19, 2026. (Ex. E at 1.) As of the filing of this application, however, Chase has not moved to amend. That lack of diligence

prejudices Johnson and has forced him to file this application to eliminate uncertainty about who will appear at trial. (Johnson Decl. ¶ 21.)

**2. Eliminating Wilkins's position does not entitle Chase to replace him, particularly when Chase has not established that he will be unavailable for trial.**

In Johnson's MIL, he argued that Wilkins should be precluded from testifying at trial pursuant to Rule 37(c). (Dkt. 135 at 2.) In its opposition to Johnson's MIL, Chase represented that Burda was "no longer employed by Chase." (Dkt. 145 at 2.)

In its MIL Order, the Court cited *Coach, Inc. v. Visitors Flea Market, LLC*, 2014 WL 2612036, at *2 (M.D. Fla. 2014), for the proposition that "Courts do tend to permit a party to replace a Rule 30(b)(6) witness who has left its employment with a different individual." (Dkt. 195 at 8.) Applying Rule 37(c), the court in *Coach* found substantial justification and harmlessness and allowed substitution with the safeguard of a deposition.

Johnson is aware of no authority for the proposition that allowing a corporation to replace a trial witness—after entry of the final pretrial order—is necessary to prevent manifest injustice simply because it chose to eliminate that witness's position mere weeks after representing in open court that he would testify at trial (Ex. C, July 17, 2026 Tr. 24:15–25, 27:16–23). Chase's conflicting statements leave unclear whether Wilkins has actually left its employment or when any departure will take effect. (Ex. J, Rivera Dep. 6:17–7:1; Johnson Decl. ¶ 18.) Chase has therefore not established that Wilkins will be unavailable to testify at trial.

**3. Even if Chase sought amendment, all four factors weigh against modification.**

Even if Chase sought modification of the Final Pretrial Order to add Rivera to its witness list, it could not meet its burden of showing that modification is necessary to prevent manifest injustice. Under *Galdamez*, the Court "should consider four factors: (1) the degree of prejudice or surprise to the [non-moving party] if the order

is modified; (2) the ability of the [non-moving party] to cure the prejudice; (3) any impact of modification on the orderly and efficient conduct of the trial; and (4) any willfulness or bad faith by the party seeking modification." All four factors weigh heavily against modification.

**a. Substituting Rivera would prejudice Johnson because he relied on Chase's representations that Wilkins would testify at trial and because Rivera possesses different, untested personal knowledge.**

Amending the Final Pretrial Order would prejudice and surprise Johnson because Rivera was first disclosed on August 19, 2026, 26 days before trial (Ex. E at 1; Dkt. 193 at 2), and Johnson has not had an opportunity to depose him regarding his personal knowledge.

In *Ruiz v. Magellan Financial & Insurance Services*, No. CV-23-02090-PHX-DWL, slip op. at 4–5 (D. Ariz. May 18, 2026), the court denied an eve-of-trial request to add a witness even though the witness had been disclosed during discovery years earlier. The court explained that the Final Pretrial Order provides the "roadmap" for final trial preparation and that adding a witness on the eve of trial "can be quite prejudicial" because the parties prepare witness outlines, opening statements, strategic decisions, and witnesses themselves in reliance on that order. *Id. Ruiz* cited *Cawley v. American Financial Security Life Insurance Co.*, 2026 WL 799690, at *4 (D. Ariz. Mar. 23, 2026), which similarly found the proposed addition of new witnesses less than one month before trial "highly prejudicial" where the opposing party had not had an opportunity to prepare its trial presentation around them. Here, Rivera was first disclosed 26 days before trial, after entry of the Final Pretrial Order, and Johnson has not completed his deposition.

Chase has argued that it does not matter who its corporate representative at trial is because that representative is testifying on behalf of the corporation (Dkt. 145 at 3–4), and this Court ordered that its new representative cannot testify differently

from its former representative. (Dkt. 195 at 8.) Johnson disagrees with Chase's premise.

"[Rule] 30(b)(6) allows corporate representatives to testify to matters within the corporation's knowledge during deposition, and Rule 32(a)(3) permits an adverse party to use that deposition testimony during trial. However, a corporate representative may not testify to matters outside his own personal knowledge to the extent that information is hearsay not falling within one of the authorized exceptions." *Union Pump Co. v. Centrifugal Technology Inc.*, 404 F. App'x 899, 907–08 (5th Cir. 2010) (cleaned up).

At trial, Chase cannot rely on Rule 30(b)(6) alone to bypass Rule 602 and the hearsay rules when eliciting testimony from its own designee. *See Tijerina v. Alaska Airlines, Inc.*, 2024 WL 270090, at *2–3 (S.D. Cal. Jan. 24, 2024) ("Rule 30(b)(6) does not eliminate Rule 602's personal knowledge requirement for trial witnesses") (cleaned up). Rule 30(b)(6) is "designed to streamline the discovery process, not alter the rules of evidence to be applied at trial." *Id.*

Wilkins is (or was) a vice president (Dkt. 126 at 3; Ex. A, Burda Dep. 112:6–11) who led Chase's Credit Bureau Operations, "a team of 75+ across Columbus and Elgin," during the period when Johnson disputed his credit card account with Chase. (Ex. L at 1.) He also spent eight years working in Chase Home Lending, where he "[r]egulated and analyzed daily control reporting to support compliance with FCRA, RESPA, and related requirements." (Ex. L at 2–3.) That experience is highly relevant because Johnson seeks damages related to a lost mortgage opportunity. (Dkt. 196 at 13–14.) Rivera, by contrast, is an individual contributor, and his profile lists no work experience in Chase Home Lending. (Ex. J, Rivera Dep. 9:23–24; Ex. M at 1–2.) These are different individuals with different personal knowledge.

Finally, Johnson relied on Chase's repeated representations that Wilkins would testify at trial and planned his trial strategy and preparation around Wilkins's anticipated personal knowledge. (Ex. E at 10.) That reliance was reasonable. *See*

*Brown v. Kia Motors Corp.*, No. 2:06-cv-00804, ECF No. 277, at 2 & n.1 (W.D. Pa. Jan. 9, 2010) (finding reliance on counsel's representations that a witness would testify live justified even though the witness was outside the court's subpoena power).

**b. Substituting Rivera would also prejudice Johnson because his claimed corporate knowledge has not been tested and cannot simply be assumed to mirror Burda's.**

The limited deposition that did take place underscored the need for further inquiry into Rivera's anticipated testimony concerning Chase's corporate knowledge. Burda testified that she spent four hours preparing and was unprepared on about 10 noticed topics. (Ex. A, Burda Dep. 14:18–15:24, 19:13–16.) Rivera, by contrast, testified that he spent 20 hours preparing and was prepared on all topics. (Ex. J, Rivera Dep. 15:13–16:16, 20:7–18 (subject to counsel's objections).) It is unclear why one corporate representative would need five times as much preparation time as the other. This Court has held that "Wilkins must not testify differently from the original witness Burda" (Dkt. 195 at 8). That restriction presumably would extend to Rivera, but Johnson must be able to test compliance before trial rather than simply assume it.

**c. Chase's obstruction and termination of Rivera's deposition prevented Johnson from curing the prejudice resulting from the untimely disclosure of Wilkins.**

The untimely disclosure of Wilkins, more than two years after the close of fact discovery, was prejudicial. The cure for that prejudice, as contemplated by the MIL Order, was a deposition of Wilkins. (Dkt. 195 at 8.) But Chase unilaterally decided to produce Rivera instead of Wilkins. (Ex. E at 1; Ex. J, Rivera Dep. 6:13–15.) Then, it improperly terminated Rivera's deposition. (Ex. J, Rivera Dep. 25:18–21, 30:7–31:9.) Chase's sole complaint was that Johnson's questions exceeded the alleged scope of the Rule 30(b)(6) notice. But that is not a valid basis for an

instruction not to answer, much less outright termination of the deposition. Fed. R. Civ. P. 30(c)(2), (d)(3).

Rule 30(b)(6) also requires the parties to confer in good faith about the matters for examination before or promptly after service of the notice. Johnson requested that conference when he served the amended notice, but Chase did not respond to that request or confer about the topics. (Ex. E at 5; Johnson Decl. ¶ 10.) Chase served written objections late Friday afternoon, then terminated Monday's deposition over its scope. (Ex. E at 20; Ex. I at 5; Ex. J, Rivera Dep. 25:18–21.)

**d. Chase's disregard of the Court's orders and the Rules, coupled with its shifting representations regarding Wilkins's availability, demonstrates willfulness.**

First, Chase willfully violated the MIL Order. On its face, the MIL Order did not authorize the deposition of an unidentified corporate representative of Chase's choosing. It authorized Johnson to depose Wilkins by September 1, 2026, unless Johnson preferred a later date. (Dkt. 195 at 8.) Counsel for Chase claims to have "learned" of Wilkins's alleged unavailability on or around August 19, 2026, 12 days before the scheduled deposition of Wilkins on August 31, 2026. (Ex. E at 1; Ex. D at 1.) Nevertheless, Chase chose not to notify the Court of the purported impossibility of complying with the MIL Order or to ask this Court for permission to produce Rivera instead of Wilkins.

Second, Chase must provide the addresses and telephone numbers of its identified trial witnesses. Fed. R. Civ. P. 26(a)(3)(A)(i), 26(e)(1)(A). On August 26, Johnson requested contact information for Wilkins, explaining: "I need this information if I want to serve a subpoena. Please provide it ASAP." (Ex. E at 8.) Chase has repeatedly and expressly refused to provide this information for both Wilkins and Rivera.

Third, Chase has continued to make shifting representations about Wilkins's alleged unavailability for deposition or trial and to obstruct inquiry into that issue.

In the context of the previous substitution, this Court noted that Chase "presented no sworn declaration that Burda departed, nor did it say when she departed" and the Court was "thus left with nothing but unattested argument of counsel regarding the circumstances of the designation." (Dkt. 195 at 8.)

As to Wilkins, Chase has been careful never to state in writing that he has "left" Chase. Instead, on August 19, counsel stated that he was "leaving" Chase. (Ex. E at 1.) Then, at the August 31 deposition, counsel had "no idea" whether Wilkins remained an employee. (Ex. J, Rivera Dep. 6:24–7:1.) At the emergency meeting before this Court, counsel stated that Wilkins was "no longer with the bank," but also stated, "if he's still an employee today, then he won't be very long," "he has been terminated as part of a reduction in force," and "maybe he's still with the bank." (Johnson Decl. ¶ 18.)

That is an unacceptable record to support amendment of a pretrial order. Chase has also sought to block Johnson's examination of the circumstances underlying the substitutions. When Johnson asked whether Rivera was prepared to testify concerning Burda's alleged separation from Chase, counsel for Chase stated that "I'm not going to have him talk about that" (Ex. J, Rivera Dep. 22:17–21) and threatened to end the deposition if Johnson continued. Counsel ultimately directed Rivera to leave (Ex. J, Rivera Dep. 23:1–5, 24:18–25:21), then unsuccessfully sought a protective order to avoid those questions. (Johnson Decl. ¶ 18.)

**e. The attempted substitution has already disrupted trial preparation and threatens the orderly and efficient conduct of trial.**

In his MIL, Johnson stated:

> To cure Chase's late disclosure, Johnson would need to depose Wilkins and likely seek related documents and follow-up discovery. It is entirely possible that Wilkins, like Burda, would be improperly instructed by Chase's counsel [not] to answer Johnson's questions, necessitating a noticed motion to compel. (Dkt. 135 at 7.)

This would require reopening discovery that closed years ago, compressed meet-and-confer efforts, motion practice, and a disruption of the trial schedule. The Ninth Circuit has already made clear that such a last-minute cure is not "harmless." (Dkt. 135 at 7.)

That is exactly what happened more than five months later. Chase obstructed a fair deposition, meet-and-confer efforts were compressed, and motion practice ensued. (Ex. J, Rivera Dep. 25:18–21, 30:7–22; Ex. E at 7, 10–19.) Instead of preparing for trial on the merits, Johnson has been forced to divert extremely limited resources to resolving uncertainty about who, if anyone, will appear at trial. (Johnson Decl. ¶ 21.)

## V. CONCLUSION

The Final Pretrial Order limits trial witnesses to those identified on the parties' witness lists. Rivera is not among them. Chase has not moved to amend the Final Pretrial Order, and it could not show that amendment is necessary to prevent manifest injustice if it did. Trial is scheduled to begin in one week, and Johnson is entitled to know who will testify. Johnson respectfully requests that this Court enforce the Final Pretrial Order as entered and preclude David Rivera from testifying at trial.

Johnson also requests a one-week continuance of trial, from September 14 to September 21, 2026, under L.R. 40-1. Since August 19, the proposed substitution has required substantial time finding reporting services, preparing for Rivera's deposition, attempting to arrange its resumption, and researching and preparing this application. That work reduced the time available for trial preparation. (Johnson Decl. ¶ 21.) The additional week would allow Johnson to complete the trial preparation disrupted by those events.

**DATED:** September 7, 2026 Joshua Johnson

/s/ Joshua Johnson

**CERTIFICATE OF COMPLIANCE**

The undersigned, Plaintiff Joshua Johnson, certifies that this brief contains 4,719 words, which complies with the word limit of L.R. 11-6.1.

**DATED:** September 7, 2026 Joshua Johnson

/s/ Joshua Johnson