**Joshua Johnson**
1957 Diamond St
San Diego, CA 92109
(336) 423-2594
josh@jj88.org
PRO SE

FILED
CLERK, U.S. DISTRICT COURT
SEP 07 2026
CENTRAL DISTRICT OF CALIFORNIA
BY: GK DEPUTY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

JOSHUA JOHNSON,
Plaintiff,
v.
JPMORGAN CHASE BANK, N.A.,
Defendant.

Case No.: 2:22-cv-06718-AB-MAAx

**DECLARATION OF JOSHUA JOHNSON IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR AN ORDER ENFORCING THE FINAL PRETRIAL ORDER AND FOR TRIAL CONTINUANCE**

The Hon. André Birotte Jr.
Courtroom: 7B

# DECLARATION OF JOSHUA JOHNSON

I, Joshua Johnson, declare as follows:

1. I am the Plaintiff in this action and am representing myself.
2. I have personal knowledge of the facts stated in this declaration and could testify competently to them if called upon to do so.
3. I make this declaration in support of my Ex Parte Application for an Order Enforcing the Final Pretrial Order, precluding David Rivera from testifying at trial, and continuing trial for one week, from September 14 to September 21, 2026 ("Application").
4. On August 31, 2026, I notified Defendant's counsel by email that I intended to file the Application, describing the relief requested and the grounds for the Application. On September 1, 2026, Tomio Narita responded that Defendant would oppose any motion I filed. True and correct copies of those emails are included in **Exhibit E** at pages 10–11. Since August 31, 2026, I have also spoken by telephone several times with Chase's counsel, Alisa Givental, about the general substance of the Application.
5. Attached as **Exhibit A** are true and correct excerpts from the transcript of Barbara Burda's October 23, 2023 deposition in this action.
6. Attached as **Exhibit B** is a true and correct copy of the March 13, 2026 email I received from Alisa Givental identifying Rob Wilkins as the trial witness who would replace Barbara Burda.
7. Attached as **Exhibit C** are true and correct excerpts from the transcript of the July 17, 2026 final pretrial conference in this action.
8. Attached as **Exhibit D** is a true and correct copy of my August 17, 2026 email to Tomio Narita and Alisa Givental, with the subject "Trial binders etc.," concerning trial preparations and arrangements for Wilkins's deposition.

9. Attached as **Exhibit E** are true and correct copies of selected emails I sent to or received from Defendant's counsel or their office between August 19 and September 2, 2026, concerning the witness substitution, deposition and reporting arrangements, and my objections and requests.

10. Attached as **Exhibit G** is a true and correct copy of my Third Amended Notice of Deposition of Defendant JPMorgan Chase Bank, N.A., dated August 24, 2026. When I emailed the notice on August 25, 2026, I asked Chase to confer about the noticed deposition topics under Rule 30(b)(6). Chase did not respond to that request before the August 31 deposition.

11. Attached as **Exhibit H** is a true and correct copy of Brickell Key Court Reporting's invoice no. 0000109, dated August 27, 2026, requiring prepayment of $3,823.50 to confirm services for the August 31 deposition.

12. Attached as **Exhibit I** is a true and correct copy of Defendant's August 28, 2026 objections to my Third Amended Notice of Deposition.

13. Attached as **Exhibit J** is a true and correct copy of the transcript of David Rivera's August 31, 2026 deposition in this action.

14. Attached as **Exhibit K** are true and correct excerpts, pages 95–99, from the transcript of my October 27, 2023 deposition in this action.

15. Attached as **Exhibit L** are true and correct excerpts from Robert Wilkins's LinkedIn profile, which I downloaded from LinkedIn on August 28, 2026.

16. Attached as **Exhibit M** is a true and correct copy of David Rivera's LinkedIn profile, which I downloaded from LinkedIn on August 28, 2026.

17. Between August 19 and August 26, 2026, I contacted Veritext, Aptus Court Reporting, Esquire Deposition Solutions, Steno, Paszkiewicz Litigation Services, Thompson Court Reporters, McCorkle Litigation Services, First Legal, Planet Depos, Scheff & Associates, Coash Court Reporting & Video, and Naegeli Deposition & Trial to arrange deposition reporting services. None was able or willing to work with me because they did not work with

pro se litigants, lacked the capacity to assist pro se litigants, or were already booked.

18. On August 31, 2026, I participated in an emergency conference with the Court, held at Chase's request after Rivera's deposition was terminated. The conference began at approximately 12:20 p.m. and ended at approximately 1:15 p.m. I made contemporaneous notes of the conference. The quotations in this paragraph are from those notes. When the Court questioned Narita about Wilkins's employment status, Narita said that Wilkins was "no longer with the bank," that "if he's still an employee today, then he won't be very long," that "he has been terminated as part of a reduction in force," and that "maybe he's still with the bank". The Court denied Chase's request for a protective order and encouraged counsel to assist in securing a court reporter so that the deposition could resume.

19. After the August 31, 2026 emergency conference, I emailed Chase asking whether it would take on the logistics of scheduling a second deposition. I received no reply to that request. I also called Brickell that afternoon, but its office had already closed, so I was unable to schedule the deposition. On September 1, I called Brickell again and confirmed that a court reporter and videographer were available for the proposed September 3 deposition beginning at noon Pacific time.

20. I did not have cash immediately available to advance a second deposition deposit. On September 2, 2026, I sold investments in my Schwab brokerage account so that I could transfer the proceeds to my checking account to pay the deposit. Based on my past experience, I expected the funds to become available within one to three days.

21. On August 19, 2026, I first learned that Chase intended to substitute Rivera for Wilkins. From then through September 7, 2026, I spent substantial time addressing the proposed substitution, finding court reporting and

videography services, scheduling Rivera's deposition, and attempting to arrange its resumption after it was terminated on August 31. These matters required extensive legal research, correspondence, and preparation of this application. This work reduced the time I had available to prepare for trial.

22. I also run a small business. During this same period, a major contract that I had worked on for months came together without advance notice and required a significant amount of my time.

23. I am unavailable for a deposition during the week of September 7, 2026, because I am on a hiking trip in Colorado. I planned this trip months ago when trial was scheduled to start on August 3, 2026.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 7, 2026.

/s/Joshua Johnson

Joshua Johnson

# EXHIBIT A

Barbara Burda Deposition
Transcript Excerpts

October 23, 2023

Q. More than ten?
A. I don't know. I'm not sure.
Q. Do you have a best estimate as to approximately how many times you've provided a declaration to Chase?
A. I don't.
Q. Is assisting with FCRA litigation one of your responsibilities as the manager of CBO disputes?
A. Yes, it is. It's required to support the process.
Q. And about how much time per month is that -- assisting with the defense of these legal actions take up?
A. It varies. It's not frequent. Maybe two or three hours.
Q. So, approximately, two or three hours a month is dedicated to that legal function?
A. On average, if there's a case that I have to testify for. There's not a case that I have to testify for every month.
Q. And you're aware that you've been designated as Chase's corporate representative today; correct?

A. Correct.
Q. And you understand you're speaking for the company; correct?
A. Correct.
Q. And throughout the deposition I'll always be asking for testimony on behalf of the company; do you understand?
A. Yes, I do.
(Deposition Exhibit No. 1 was marked for identification.)
BY MR. RUSSELL:
Q. So I would like to mark as Exhibit 1 is the Second Amended Notice of Deposition of Representatives of JPMorgan Chase Bank N.A., pursuant to Federal Rules of Civil Procedure Rule 30(b)(6).
Ms. Burda, have you seen this document before?
A. Yes, I have.
Q. And you're aware that there are topics that are outlined throughout this document?
A. Yes, I am aware.
Q. Are there any topics that you're not prepared to provide testimony on?

MR. HYATT: Objection, it's way overbroad. You need to trim it down so she knows specifically what you're talking about.

BY MR. RUSSELL:

Q. Ms. Burda, do you understand my question?

A. I don't really. Could you restate that again?

Q. Sure. So you see here on Page 3 of the Notice of Deposition there's Topic No. 1; correct?

A. Yes.

Q. And then if I go through -- do you see there are topics and it goes to Topic 30 on Page 7 of the deposition notice? Do you see that?

A. I do see that.

Q. Are there topics that you're not prepared to provide testimony on behalf of Chase for today?

A. There are some topics that I do not have knowledge on.

Q. Do you know, right now, which topics those are?

A. I do.

Q. Which topics?
A. If you want to scroll down.
Q. Sure. I'll scroll slowly and you can just tell me when to stop.
A. Okay. Keep going.
MR. HYATT: And, David, I'll just to let you know now, Chase objects to -- if you keep scrolling down -- to the online --
BY MR. RUSSELL:
Q. Is this too fast, Ms. Burda?
A. No. You can keep going.
MR. HYATT: So Chase objects to any questioning about online access topics 19, 20, and 21, and I will direct the witness not to answer any questions about those topics. And the same objection for similar complaints topics 22, 23, 24, 25 and 26.
Also the same objection for the financial condition topics 27, 28, and 30.
BY MR. RUSSELL:
Q. Ms. Burda, are there any topics that you're not prepared to testify on today?
A. The topics that we're just mentioned.
Q. Okay. Do you have any personal

knowledge of those topics?

A. No, I don't.

MR. HYATT: Objection, irrelevant. You just said she's here as Chase's corporate representative.

MR. RUSSELL: Yeah, but, Mr. Hyatt, you know the rules. If she has personal knowledge, she still has to answer the question. You can't just instruct her not to answer.

MR. HYATT: Well, she's not going to answer on any of those topics because they're irrelevant to the case or we've already dealt with them.

MR. RUSSELL: You know that's not a proper instruction not to answer, but let's -- we can get to that later.

BY MR. RUSSELL:

Q. Ms. Burda, what did you do to prepare for today's deposition?

A. I read through the documentations that were provided.

Q. When you say read through the documentations that were provided, what are you referring to?

A. The Interrogatories, the documentations that were part of the Interrogatories.
Q. And when you say you read through the Interrogatories that Chase provided to Mr. Johnson or Mr. Johnson's -- let me strike that.
Are you saying you reviewed Interrogatory responses?
A. I reviewed the document that you just had on the screen.
Q. Okay. So you've reviewed the topics that --
A. Yes.
Q. Okay. What other documents did you review?
A. I reviewed the documents that were produced as part of the deposition.
MR. HYATT: Let me just interject to make it a little bit easier. Ms. Burda reviewed the documents that Chase has produced in this litigation.
MR. RUSSELL: Okay.
BY MR. RUSSELL:
Q. Ms. Burda, you reviewed the document

that Chase produced in this litigation?
A. I did.
Q. Are there any specific documents you remember reviewing?
A. The ACDV.
Q. Anything else?
A. The C3 memos.
Q. Anything else?
A. The correspondence that was provided -- that was sent to the customer.
Q. Anything else?
A. The furnishing record that was provided.
Q. Anything else?
A. That's all I can recall right now.
Q. Besides those documents you just mentioned, is there anything else you recall reviewing for your testimony here today?
A. No.
Q. How much time did you spend preparing to give your testimony today?
A. Today, I spent a couple hours reading through the information.
Q. Did you spend any time prior to today?

A. I did with our counsel.
Q. How many times did you meet with your counsel?
A. Two times, I recall.
Q. And how long was the first meeting?
A. I don't remember.
Q. Do you have an estimate? Was it ten minutes? Was it an hour?
A. I think it was an hour.
Q. And do you have an estimate for how long you met for that second meeting?
A. It was about an hour.
Q. So, in all, is it fair to say that you prepared for about four hours to provide testimony here today?
A. That's fair.
Q. To whom did you speak, other than counsel, in preparation for providing testimony here today?
A. No one.
Q. Is there anyone else who works at Chase that you talked to to prepare to give testimony?
A. No.
Q. Can you tell me what is a Consumer

correct -- strike that.
These comments are shorthand notes that a customer service rep took when talking to a consumer; correct?
A. They're documentation of the conversation.
Q. And, in your experience, do investigators sometimes have a hard time understanding what is in these comments?
A. Not usually because they're trained and they understand, you know, the comments that come from our business. So, no, I don't think so.
Q. You've never run into that?
A. Not that I can recall.
Q. If we go back to what's already been marked as Exhibit 2, here we're on Chase 758 and there's a table here. Do you see the last row starts with XVTC?
A. I do see that.
Q. What are VIP type accounts?
A. Those are coded a certain way on the system of record.
Q. What does that code VIP relate to? What does it mean?

A. I'm not sure.
Q. Does it mean very important person?
A. I'm not sure.
Q. Who would know that?
A. I don't know.
Q. Do you know what it means when it says, "Accounts designated as VIPs are not eligible for reporting"?
A. Only what it reads there.
Q. Who else has -- who has knowledge about that manual besides you -- let me strike that.
Who would be more knowledgeable about this manual than you?
A. The manual -- you mean the procedures?
Q. Yeah. So Exhibit 2, the procedures, the card dispute resolution processing procedures that I've referred to as the manual, who would have more knowledge about what's in here than you?
A. I don't know. I think I have pretty good knowledge.
Q. Have you never run into a VIP code in the credit -- in the C3 system?

A. I never have, no.
Q. If you ran into that code in the system, who would you ask what it meant?
A. I would probably ask a peer or my manager.
Q. And who is your manager?
A. Rob Wilkins.
Q. Where does he work?
A. He works in Columbus.
Q. What's his title?
A. VP.
MR. RUSSELL: Thank you. No further questions.
MR. HYATT: I don't have any questions, so I think we're done. I don't think there's any housekeeping we need to do, is there?
MR. RUSSELL: I don't think so.
MR. HYATT: Madam Reporter, I would like a copy but I don't want a video right now.
THE VIDEOGRAPHER: All right.
Mr. Russell, just the standard video for yourself or would you like it synced?

# EXHIBIT B

Email Identifying Rob Wilkins
as Chase's Trial Witness

March 13, 2026

**From:** **Givental, Alisa** Alisa.Givental@wbd-us.com
**Subject:** RE: Joshua Johnson v. JPMorgan Chase - pretrial meet and confer
**Date:** March 13, 2026 at 1:09 AM
**To:** Josh Johnson josh@jj88.org
**Cc:** Narita, Tomio Tomio.Narita@wbd-us.com, Gnanadesigan, Abirami agnanadesigan@dykema.com, Hickey, Joseph jhickey@dykema.com

AG

Josh,

Attached is your exhibit list to which I added our exhibits starting at number 301 – which leaves some space for you to add more exhibits if you wish. It turns out that most of our exhibits are already on your list. Tell me if you disagree, but our understanding is that because this is a joint exhibit list, we need to remove all duplicates. Once we do so, there will be very few exhibits left on our list. I started on the de-duping and realizing the breadth of the overlap, decided to pause and make sure we are on the same page. Let me know if you agree and I can finish removing the duplicates tomorrow, so that you can start considering any objections based on the de-duped list.

Two notes on the attached list:

Note 1 -- the last three exhibits in our section are placeholders for (a) card dispute resolution procedures – we want to meet and confer about whether we can agree on which version(s) is/are the relevant version or whether we should include all versions produced because agreement is not feasible, and (b) all discovery Chase served on you in the case and all responses to that discovery that you served on Chase. As to (b) we are gathering all of those specific documents and will add them on as individual exhibits, but wanted to disclose that written discovery is a category of exhibits in case this is pertinent to your motion in limine decisions.

Note 2 – I am not sure that "Date Identified" refers to date the exhibit is added to the exhibit list by you. I am not positive, but I think it may refer to the date it is first discussed in testimony at trial, which may not be the same date that it is admitted into evidence by the Court. For this reason, I left that column blank for the exhibits in our section.

Next steps:

Other than the de-duping, the next step is for the parties to insert any objections to the exhibits on the list and make any final additions or revisions to the list. If you remove any exhibits or move them around, please let us know the changes you make or circulate them as tracked edits, so that we don't have to start over on the objections we are preparing. We will do the same.

Witness List:

We only have one witness to add to the list – Rob Wilkins; he will be replacing our 36(b)(6) witness, who is not available for trial. For the witness list, the next step is to insert the summary of testimony, time for direct exam, time for cross exam, and dates of testimony. Some of that is going to be tricky before we finish our

# EXHIBIT C

Final Pretrial Conference
Transcript Excerpts

July 17, 2026

number seven. At least the tentative in this case is to deny that motion.

Motion in limine number eight. Also my tentative is to deny.

Motion in limine number nine. The tentative is to deny that motion.

And, then, motion in limine number 10. Bear with me one moment, please. The tentative on that was to deny.

Motion in limine number 11, also the tentative was to deny.

And, then, motion in limine number 12. The tentative is to deny it.

I'll issue a written order soon, but at least this will give you a sense of where the Court is leaning.

With respect to the Plaintiff's motions in limine. First one, to preclude the testimony of Rob Wilkins. It seems to me -- look, the -- Chase, you didn't provide a declaration specifically to this issue, but you're saying that basically Burda has left the building, for lack of a better -- this is now a new employee that's going to be testifying to the same as what Burda would testify to. And obviously, that new witness is, for lack of a better term, tied to whatever Burda testified to and cannot deviate from that. Is that a fair statement?

MS. GIVENTAL: Yes, your Honor.

THE COURT: Okay. So the Plaintiff's motion in limine number one is denied. The tentative, at least, is denied.

Plaintiff's motion in limine number two. Let's see. This was --

MR. JOHNSON: And, your Honor, a clarification. So, reasoning is coming --

THE COURT: I will issue a written order.

MR. JOHNSON: Okay.

THE COURT: But I'm just giving you at least a tentative on where I'm leaning on it.

MR. JOHNSON: Okay. Thank you.

THE COURT: Motion in limine number two. To exclude the evidence about -- oh, payment notice. Okay. Let me just have a moment here.

MR. JOHNSON: And, I'm sorry, another question. So -- with the tentatives -- if your tentative is denied, you do not want oral argument, you want us to wait for the --

THE COURT: If you -- I'm going to give -- if there's argument that you want to present today, I'll give you the chance on both sides. I'm just giving you at least my tentatives on them.

MR. JOHNSON: Okay. I mean, I would like to say something with respect to one.

THE COURT: I'm just going to give -- I'm going to run through them now --

MR. JOHNSON: Oh.

THE COURT: -- and then afterwards give you --

MR. JOHNSON: Okay. Thank you. I'm sorry.

THE COURT: Tentative on motion in limine number two is -- at least right now, my tentative is to deny that motion.

Motion in limine number three. This deals with the executive office. I guess -- I want to get a sense from Chase. You take the position that this is -- that is a business record, correct? That's kept in the normal course and scope of business at Chase?

MR. NARITA: Yes. The response to the -- the executive office response to the CFPB complaint is a business record.

THE COURT: Okay. And, then, what would you use the letter for specifically? What's the purpose of the introductory? Is it just to respond and say, "This is our response to your complaint." ? I mean, and so then what's the significance of that?

MR. NARITA: Well, thank you for that, your Honor. So, we have in one of our motions, which the Court has tentatively denied -- we have moved to exclude everything about the CFPB investigation. We think it's an improper

evidence of a direct dispute. It doesn't relate to the -- to the ACDV issues and credit reporting issues in the case, but certainly if the Court is inclined to deny our motion, which we hope the Court doesn't, but if the Court's inclined to deny it, then it -- we can't have Mr. Johnson introducing the fact that he made a complaint to the CFPB and he made all of these allegations and then somehow preclude us from offering of the very response to the very complaint that he made. That would be incredibly one sided and prejudicial. So, we would, again, we'd like everything thrown out that relates to it, but if it's coming -- if one comes in, both does.

THE COURT: But there's no other evidence as it relates to the response to the CFPB complaint? The only evidence is this -- this EO letter? Is that --

MR. NARITA: No, there's -- there will be other evidence too. There are -- there are notes that were kept that reflect that the investigation was ongoing. They're called C-3 notes. There will be some testimony from our witness. Our corporate witness will talk about this, who can speak to the records. But the outcome, you know, that's sort of the culmination of all of the response, was that letter. In fact, it's a -- I think it's an attachment. This letter is an attachment to one of Mr. Johnson's proposed exhibits. So I don't know how he can then move to

exclude it. It's part of the story of what happened when he made this CFPB complaint, and if we're going to tell the story, we've got to tell the complete story.

THE COURT: All right. My inclination right now is to deny that motion.

Then Plaintiff's motion in limine number four, the arbitration records. My tentative on that is to deny that motion.

And, then, motion in limine number five. Just bear with me one second. Yeah, this one -- I have to tell you, I'm on the fence -- I mean, and this is just my general -- well, this is more in line with, it seems to me that we're fighting over a technicality here, but the rules may be the rules. He's saying that, you know, he got notice less than 14 days. You say, that's not the case? Is that --

MS. GIVENTAL: Your Honor, that's not the -- what this turns on. In order -- Mr. Johnson invokes F.R.C.P. 32(a)(5)(A), which only applies if a motion for protective order was pending at the time the deposition took place. Here there wasn't a motion for protective order pending. He --

THE COURT: There wasn't? I thought --

MS. GIVENTAL: No, Judge Audero denied it before the deposition took place.

THE COURT: Okay. All right.

So, you've heard my tentatives. Mr. Johnson, I'll give you a chance first if you want to be heard as it relates to any of the motions.

MR. JOHNSON: Yes, on, I think, at least one or two. Bear with me just a minute, please.

THE COURT: Okay.

(Pause.)

MR. JOHNSON: Okay. I'm going to kind of go in reverse order, if that's okay?

So, with respect to my motion in limine number three, the executive office investigation evidence. So, the specific issue that I have with the executive office letter is not that it's -- it is or is not a business record. The issue is that it contains hearsay within hearsay. So, it contains statements -- so this is a letter authored in 2020, and the letter contains statements saying that certain things happened in 2018 and 2017. So, I don't want it used for that purpose. I think if they want to show that something happened in 2017 or 2018, they need the business records from that time period, not an after the fact recollection by somebody who wasn't there. That's my issue.

THE COURT: Okay. All right.

(Pause.)

MR. JOHNSON: Okay. And, then, with respect to

motion in limine number one, which is the motion to --

THE COURT: Your motion in limine or their motion in limine?

MR. JOHNSON: My motion.

THE COURT: Okay.

MR. JOHNSON: To exclude testimony of Rob Wilkins. So, in its motion, Chase collapses I think what are two distinct rules. So there's Rule 26, which requires disclosures, and then there's Rule 30(b) -- Rule 30, which is the corporate representative section.

So, Rule 37 provides an automatic -- it's very clear that a violation occurred here. Rob Wilkins was not identified on their Rule 26 initial disclosures. They didn't supplement to provide him before the close of discovery. And, so, Rule 37 provides an automatic sanction that prohibits them from using him at trial, unless they can show, and they have the burden of proof to show, that that violation was -- or that omission was substantially justified or harmless. The Ninth Circuit, under Hoffman and Ollier, it is not harmless, because it is going to require -- it's going to shift pretrial scheduling if I have to take a deposition of him.

And the second is, on the substantial justification point, they didn't submit a declaration at all. So we have absolutely no evidence on key questions which are

-- they say that counsel discovered that Burda was no longer with the company, but we have no declaration from Chase. We don't know when that happened. This could have happened three years ago. Discovery has been closed for nearly three years. It's possible that she retired with the company three years ago and I'm just learning about this now, which would -- which would not be substantially justified. So, I think that at a bear minimum, you should require a declaration from them, like, pinning down exactly what they knew and when.

Second is, if you're inclined to continue with the tentative and allow him to testify, I would like to request, which is consistent with some of the other cases, to conduct a deposition of him prior to the trial.

THE COURT: Even though in theory -- well, not in theory -- Wilkins can't testify to anything differently than what Burda has. So if you have Burda's testimony under deposition, what -- what do you gain from Wilkins?

MR. JOHNSON: My understanding is that everybody who testifies at trial, it has to be based on personal knowledge. So, I haven't deposed him. I don't know how his testimony is or is not going to be inconsistent with Burda.

THE COURT: Okay. All right. All right. Thank you.

All right. Well, what other motions do you want

this? All right, now that I've heard some testimony, this may have some relevance, this may not. And, then, I ask the parties their positions before we finalize. And, so, does that make sense?

MR. JOHNSON: That makes sense.

THE COURT: Okay. All right. Well, thank you all for the time. I will see you all on the 14th and have a wonderful weekend. All right. Thank you.

MR. JOHNSON: I actually had a few just general ask about logistics, if that's okay?

THE COURT: Okay.

MR. JOHNSON: So, just going in order. The first is, may I be permitted to have a non-attorney assistant, like just helping me with papers and --

THE COURT: Sure.

MR. JOHNSON: Okay. And, then, any depositions, I'd like to ask for someone to be able to read the deposition.

THE COURT: Other than the witness?

MR. JOHNSON: Well, Barbara Burda, for example, the 30(b)(6) designee, she will not be at trial.

THE COURT: Right, but they're calling another witness in -- based on the tentative, they're going to call another witness in there instead. So you can't read that, unless that witness says something different than what

Barbara Burda said.

MR. JOHNSON: So, my understanding is that I'm allowed to use her 30(b)(6) deposition at trial for any purpose. So, I need a way to get that in front of the jury.

THE COURT: So -- all right. So, then, you're going to need to -- are you going to try to read all of the testimony?

MR. JOHNSON: No, not all of the testimony, but we've designated and counter designated.

THE COURT: And, so -- all right. So, this is designated testimony from the 30(b)(6) witness and your -- I'm sorry, your question is whether you want to have someone come here and sit on the witness stand, or do you want to read it, or is that -- what's your question?

MR. JOHNSON: My question is if I can have someone come in to just read verbatim what her testimony was?

THE COURT: As opposed to you?

MR. JOHNSON: Correct. Or myself. But --

THE COURT: I mean, you could -- you could read it yourself. I mean, I'm just trying to avoid you having to call in a bunch of favors, having people to come in for such a limited purpose.

MR. JOHNSON: I've been -- I would prefer to have somebody else do it. And, so, like that option.

THE COURT: Okay. That's fine.

MR. JOHNSON: Okay. I may go with myself, but okay.

THE COURT: Okay.

MR. JOHNSON: I'd like to ask for the ability to do narrative testimony, which I think you already mentioned.

THE COURT: When you testify?

MR. JOHNSON: When I testify.

THE COURT: Right. But, now, I will tell you, if it gets -- if we're just rambling on, I'm going to stop you in front of the jury. So, again, these are the things you need to think about. Like, what -- my unsolicited advice, you need to create an outline of what you intend to testify to. Because if it goes on and on, I will stop you. Okay? I'm just letting you know.

MR. JOHNSON: Understood.

THE COURT: Okay.

MR. JOHNSON: With respect to exhibit presentation. I'm sorry, so first, one other thing. So, I guess this is related. I'd like to present exhibits by a Power Point or some sort of a computer screen. So, question one is, am I allowed to do that? And, then, question two is, may I schedule an appointment with the IT team to --

THE COURT: You can contact our courtroom deputy. Schedule a time if you need to to go -- to get familiar with the technology that's available. But you'll need to have your

# EXHIBIT D

Email Regarding Trial Binders
and Wilkins's Deposition

August 17, 2026

**From:** **Josh Johnson** josh@jj88.org
**Subject:** Trial binders etc.
**Date:** August 17, 2026 at 9:57 AM
**To:** Narita, Tomio Tomio.Narita@wbd-us.com, Givental, Alisa Alisa.Givental@wbd-us.com

JJ

Following up on a couple of things from last week:

- **Trial binders:** I am fine with Chase taking on the trial binder work so long as I am able to see/approve the ultimate documents that will be printed and make their way into the binders.
- **Deposition:** I intend to personally take the deposition of Rob Wilkins on August 31 by videotaped remote deposition. I will send a renewed 30(b)(6) notice and figure out logistics shortly. If this plan changes, e.g., if I am able to find limited-scope counsel on short notice, I will let you know promptly.

Josh

# EXHIBIT E

Correspondence with Chase's Counsel

August 19 to September 2, 2026

**From:** **Narita, Tomio** Tomio.Narita@wbd-us.com
**Subject:** Johnson case - Chase trial witness David Rivera
**Date:** August 19, 2026 at 4:26 PM
**To:** Josh Johnson josh@jj88.org
**Cc:** Gnanadesigan, Abirami agnanadesigan@dykema.com, Narita, Tomio Tomio.Narita@wbd-us.com, Givental, Alisa Alisa.Givental@wbd-us.com

TN

---

Josh: I just learned that Rob Wilkins is leaving JPMorgan Chase and that he will be unable to testify at the deposition or at trial. We have arranged for another witness to testify named David Rivera. Mr. Rivera lives in Illinois. I have confirmed he is available for deposition on August 31st. Let me know if you have any questions.

Tomio

**Tomio Narita**
Partner
Womble Bond Dickinson (US) LLP

**d:** 415-765-6274
**m:** 415-519-6093
**e:** Tomio.Narita@wbd-us.com

50 California Street
Suite 2800
San Francisco, CA 94111

WOMBLE BOND DICKINSON

**womblebonddickinson.com**

**We have moved! Please update your records with our new address**

This email is sent for and on behalf of Womble Bond Dickinson (US) LLP. Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

**From:** **Josh Johnson** josh@jj88.org
**Subject:** Re: Johnson case - Chase trial witness David Rivera
**Date:** August 20, 2026 at 9:01 AM
**To:** Narita, Tomio Tomio.Narita@wbd-us.com
**Cc:** Gnanadesigan, Abirami agnanadesigan@dykema.com, Narita, Tomio Tomio.Narita@wbd-us.com, Givental, Alisa Alisa.Givental@wbd-us.com

JJ

Hi Tomio,

What's David's position, address, and phone number? On what date does Rob's employment with Chase ends?

Josh

On Wed, Aug 19, 2026 at 4:26 PM Narita, Tomio <Tomio.Narita@wbd-us.com> wrote:

> Josh: I just learned that Rob Wilkins is leaving JPMorgan Chase and that he will be unable to testify at the deposition or at trial. We have arranged for another witness to testify named David Rivera. Mr. Rivera lives in Illinois. I have confirmed he is available for deposition on August 31st. Let me know if you have any questions.
>
> Tomio
>
> **Tomio Narita**
> Partner
> Womble Bond Dickinson (US) LLP
>
> **d:** 415-765-6274
> **m:** 415-519-6093
> **e:** Tomio.Narita@wbd-us.com
>
> 50 California Street
> Suite 2800
> San Francisco, CA 94111
>
> WOMBLE BOND DICKINSON
>
> **womblebonddickinson.com**
>
> **We have moved! Please update your records with our new address**
>
> This email is sent for and on behalf of Womble Bond Dickinson (US) LLP. Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

**From:** **Josh Johnson** josh@jj88.org
**Subject:** Re: Johnson case - Chase trial witness David Rivera
**Date:** August 22, 2026 at 12:10 PM
**To:** Narita, Tomio Tomio.Narita@wbd-us.com
**Cc:** Gnanadesigan, Abirami agnanadesigan@dykema.com, Narita, Tomio Tomio.Narita@wbd-us.com, Givental, Alisa Alisa.Givental@wbd-us.com

JJ

Following up on my email below.

On Thu, Aug 20, 2026 at 9:01 AM Josh Johnson <josh@jj88.org> wrote:

> Hi Tomio,
>
> What's David's position, address, and phone number? On what date does Rob's employment with Chase ends?
>
> Josh
>
> On Wed, Aug 19, 2026 at 4:26 PM Narita, Tomio <Tomio.Narita@wbd-us.com> wrote:
>
>> Josh: I just learned that Rob Wilkins is leaving JPMorgan Chase and that he will be unable to testify at the deposition or at trial. We have arranged for another witness to testify named David Rivera. Mr. Rivera lives in Illinois. I have confirmed he is available for deposition on August 31st. Let me know if you have any questions.
>>
>> Tomio
>>
>> **Tomio Narita**
>> Partner
>> Womble Bond Dickinson (US) LLP
>>
>> **d:** 415-765-6274
>> **m:** 415-519-6093
>> **e:** Tomio.Narita@wbd-us.com
>>
>> 50 California Street
>> Suite 2800
>> San Francisco, CA 94111
>>
>> WOMBLE BOND DICKINSON
>>
>> **womblebonddickinson.com**
>>
>> **We have moved! Please update your records with our new address**
>>
>> This email is sent for and on behalf of Womble Bond Dickinson (US) LLP. Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

**From:** **Givental, Alisa** Alisa.Givental@wbd-us.com
**Subject:** RE: Johnson case - Chase trial witness David Rivera
**Date:** August 24, 2026 at 11:48 AM
**To:** Josh Johnson josh@jj88.org
**Cc:** Narita, Tomio Tomio.Narita@wbd-us.com, Gnanadesigan, Abirami agnanadesigan@dykema.com

AG

Josh,
Why do you need this info?
I was travelling again and now I am back. Apologies for delay in circling back.
Alisa

**Alisa Givental**
Senior Counsel
Womble Bond Dickinson (US) LLP

**d:** 415-765-6268
**e:** Alisa.Givental@wbd-us.com

50 California Street
Suite 2800
San Francisco, CA 94111

WOMBLE BOND DICKINSON

womblebonddickinson.com

**We have moved! Please update your records with our new address**

This email is sent for and on behalf of Womble Bond Dickinson (US) LLP. Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

**From:** Josh Johnson <josh@jj88.org>
**Sent:** Saturday, August 22, 2026 11:11 AM
**To:** Narita, Tomio <Tomio.Narita@wbd-us.com>
**Cc:** Gnanadesigan, Abirami <agnanadesigan@dykema.com>; Givental, Alisa <Alisa.Givental@wbd-us.com>
**Subject:** Re: Johnson case - Chase trial witness David Rivera

External (josh@jj88.org)

Report This Email FAQ

Following up on my email below.

On Thu, Aug 20, 2026 at 9:01 AM Josh Johnson <josh@jj88.org> wrote:

Hi Tomio

**From:** **Josh Johnson** josh@jj88.org
**Subject:** Re: Johnson case - Chase trial witness David Rivera
**Date:** August 25, 2026 at 1:14 AM
**To:** Givental, Alisa Alisa.Givental@wbd-us.com
**Cc:** Narita, Tomio Tomio.Narita@wbd-us.com, Gnanadesigan, Abirami agnanadesigan@dykema.com

JJ

All,

Rule 26(a)(1)(A)(i) requires Chase to disclose the address and telephone number of each individual it may use to support its defenses, along with the subjects of that information, and Rule 26(e) requires Chase to supplement now that it intends to substitute Rivera. Please provide his address and telephone number. Counsel's or the employer's address does not satisfy the rule. *Fausto v. Credigy Servs. Corp.*, 251 F.R.D. 427, 429 (N.D. Cal. 2008); *Thurby v. Encore Receivable Mgmt., Inc.*, 251 F.R.D. 620, 621–22 (D. Colo. 2008).

The Third Amended Rule 30(b)(6) notice is attached. Please identify Chase's designee(s) and the topics each will cover and let me know when someone is available to confer under Rule 30(b)(6). Per the Court's order, please also confirm that Chase will arrange and pay for the court reporter and videographer for August 31, that the deposition will be video-recorded as the Burda deposition was, and that the certified transcript and video will be delivered to me on a next-day expedited basis given the trial date. I have made several attempts to schedule the deposition; the vast majority of firms will not work with pro se litigants.

Thanks,
Josh

On Mon, Aug 24, 2026 at 11:48 AM Givental, Alisa <Alisa.Givental@wbd-us.com> wrote:

> Josh,
>
> Why do you need this info?
>
> I was travelling again and now I am back. Apologies for delay in circling back.
>
> Alisa
>
> **Alisa Givental**
> Senior Counsel
> Womble Bond Dickinson (US) LLP
>
> **d:** 415-765-6268
> **e:** Alisa.Givental@wbd-us.com
>
> 50 California Street
> Suite 2800
> San Francisco, CA 94111
>
> WOMBLE BOND DICKINSON
>
> womblebonddickinson.com
>
> **We have moved! Please update your records with our new address**
>
> This email is sent for and on behalf of Womble Bond Dickinson (US) LLP. Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.
>
> **From:** Josh Johnson <josh@jj88.org>
> **Sent:** Saturday, August 22, 2026 11:11 AM
> **To:** Narita, Tomio <Tomio.Narita@wbd-us.com>
> **Cc:** Gnanadesigan, Abirami <agnanadesigan@dykema.com>; Givental, Alisa <Alisa.Givental@wbd-us.com>

**From:** **Givental, Alisa** Alisa.Givental@wbd-us.com
**Subject:** RE: Johnson case - Chase trial witness David Rivera
**Date:** August 25, 2026 at 2:15 PM
**To:** Josh Johnson josh@jj88.org
**Cc:** Narita, Tomio Tomio.Narita@wbd-us.com, Gnanadesigan, Abirami agnanadesigan@dykema.com

AG

Josh,

Thank you for returning my call. To answer your questions regarding the deposition, we cannot take on the logistics of setting up the deposition.

With respect to whether a deposition being at Chase's expense means Chase has to cover any and all expenses you incur beyond a court reporter, including a videographer, overnight expediting of a certified video record, overnight expediting of a certified transcript, and as contemplated earlier (but I believe now moot) attorneys' fees if you hire an attorney to take the depo – is not stated in the Court's order. The magnitude of the contemplated expense is likewise uncertain at this point. Since you plan to proceed as you deem appropriate regardless of our position, it is not necessary for us to take a position without additional information. We hope you consider the reasonableness of any expenses you incur. Once you incur the expenses, please provide us with the invoices to review with our client and respond with any objections.

Alisa

**Alisa Givental**
Senior Counsel
Womble Bond Dickinson (US) LLP

**d:** 415-765-6268
**e:** Alisa.Givental@wbd-us.com

50 California Street
Suite 2800
San Francisco, CA 94111

WOMBLE BOND DICKINSON

**womblebonddickinson.com**

**We have moved! Please update your records with our new address**

---

**From:** Josh Johnson <josh@jj88.org>
**Sent:** Tuesday, August 25, 2026 1:14 AM
**To:** Givental, Alisa <Alisa.Givental@wbd-us.com>
**Cc:** Narita, Tomio <Tomio.Narita@wbd-us.com>; Gnanadesigan, Abirami <agnanadesigan@dykema.com>
**Subject:** Re: Johnson case - Chase trial witness David Rivera

External (josh@jj88.org)

**From:** **Josh Johnson** josh@jj88.org
**Subject:** Fwd: SCHEDULING REQUEST
**Date:** August 26, 2026 at 4:00 PM
**To:** Givental, Alisa Alisa.Givental@wbd-us.com, Narita, Tomio Tomio.Narita@wbd-us.com, Gnanadesigan, Abirami AGnanadesigan@dykema.com

JJ

FYI. See thread below with Brickell.

I called every nationwide firm I am aware of (Steno, Veritext, US Legal, etc.), every Chicago firm listed on Google Maps, and several out-of-state firms — all confirmed they would either not work with a pro se or had no capacity. I was also unable to find limited-scope representation to conduct the deposition.

Brickell Key is located in Florida but confirmed that they can do remote. The earliest rush transcript delivery they can do is 3 days.

For the record, it is very disruptive to my trial preparation to be forced to spend substantial time coordinating, preparing for, and taking a deposition less than three weeks from trial, not to mention incorporating the new evidence into my trial presentation plan.

It also would have been better to (a) have had this deposition prepared for and conducted by counsel (as was the original deposition in 2023), (b) the option to do an in-person deposition (Chicago, IL is non-stop from San Diego; Columbus, OH is not), and (c) a transcript made available earlier than ~10 days before trial.

Moreover, I object to the improper substitution of Wilkins with Rivera. Chase designated Wilkins five months ago. The order names Wilkins. My trial preparation from March 2026 through early August focused on Wilkins, not Rivera, whom I had never heard of until last week.

This is all very prejudicial and I reserve all rights.

Josh

---------- Forwarded message ---------
From: **Josh Johnson** <josh@jj88.org>
Date: Wed, Aug 26, 2026 at 2:57 PM
Subject: Re: SCHEDULING REQUEST
To: <scheduling@brickellcourtreporting.com>

Sounds great!

On Wed, Aug 26, 2026 at 2:56 PM <scheduling@brickellcourtreporting.com> wrote:

> Hi Josh, Our scheduler will put this proposal in a formal quote. You sign off on it, then we send an invoice.
>
> It's after-hours here so she'll do it first thing tomorrow morning (Eastern Standard).
>
> If you have any exhibits you will be introducing into the deposition, please send them to us beforehand. Thank you.
>
> Sarah Anderson
>
> Scheduling Coordinator
>
> Brickell Key Court Reporting, LLC
>
> 333 SE Second Avenue
>
> Suite 2000
>
> Miami, Florida 33131
>
> Ph: 305.407.9993
>
> Fx: 786.871.3301

**From:** **Josh Johnson** josh@jj88.org
**Subject:** Re: Johnson case - Chase trial witness David Rivera
**Date:** August 26, 2026 at 8:37 PM
**To:** Givental, Alisa Alisa.Givental@wbd-us.com
**Cc:** Narita, Tomio Tomio.Narita@wbd-us.com, Gnanadesigan, Abirami agnanadesigan@dykema.com

JJ

Separately from Rivera, Chase never provided -an address and phone number information for Wilkins as required by Rule 26. I need this information if I want to serve a subpoena. Please provide it ASAP.

Josh

On Tue, Aug 25, 2026 at 1:14 AM Josh Johnson <josh@jj88.org> wrote:

> All,
>
> Rule 26(a)(1)(A)(i) requires Chase to disclose the address and telephone number of each individual it may use to support its defenses, along with the subjects of that information, and Rule 26(e) requires Chase to supplement now that it intends to substitute Rivera. Please provide his address and telephone number. Counsel's or the employer's address does not satisfy the rule. *Fausto v. Credigy Servs. Corp.*, 251 F.R.D. 427, 429 (N.D. Cal. 2008); *Thurby v. Encore Receivable Mgmt., Inc.*, 251 F.R.D. 620, 621–22 (D. Colo. 2008).
>
> The Third Amended Rule 30(b)(6) notice is attached. Please identify Chase's designee(s) and the topics each will cover and let me know when someone is available to confer under Rule 30(b)(6). Per the Court's order, please also confirm that Chase will arrange and pay for the court reporter and videographer for August 31, that the deposition will be video-recorded as the Burda deposition was, and that the certified transcript and video will be delivered to me on a next-day expedited basis given the trial date. I have made several attempts to schedule the deposition; the vast majority of firms will not work with pro se litigants.
>
> Thanks,
> Josh
>
> On Mon, Aug 24, 2026 at 11:48 AM Givental, Alisa <Alisa.Givental@wbd-us.com> wrote:
>
>> Josh,
>>
>> Why do you need this info?
>>
>> I was travelling again and now I am back. Apologies for delay in circling back.
>>
>> Alisa
>>
>> **Alisa Givental**
>> Senior Counsel
>> Womble Bond Dickinson (US) LLP
>>
>> **d:** 415-765-6268
>> **e:** Alisa.Givental@wbd-us.com
>>
>> 50 California Street
>> Suite 2800
>> San Francisco, CA 94111
>>
>> WOMBLE BOND DICKINSON
>>
>> **womblebonddickinson.com**
>>
>> **We have moved! Please update your records with our new address**
>>
>> This email is sent for and on behalf of Womble Bond Dickinson (US) LLP. Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.
>>
>> **From:** Josh Johnson <josh@jj88.org>
>> **Sent:** Saturday, August 22, 2026 11:11 AM
>> **To:** Narita, Tomio <Tomio.Narita@wbd-us.com>

**From:** **Josh Johnson** josh@jj88.org
**Subject:** Re: Johnson case - Chase trial witness David Rivera
**Date:** August 31, 2026 at 1:45 PM
**To:** Givental, Alisa Alisa.Givental@wbd-us.com
**Cc:** Narita, Tomio Tomio.Narita@wbd-us.com, Gnanadesigan, Abirami agnanadesigan@dykema.com

JJ

Counsel,

I wanted to follow up after the discussion this morning with the Court.

Has Chase's position with respect to taking on the logistics of scheduling a (now second) deposition changed?

Josh

On Tue, Aug 25, 2026 at 2:15 PM Givental, Alisa <Alisa.Givental@wbd-us.com> wrote:

> Josh,
>
> Thank you for returning my call. To answer your questions regarding the deposition, we cannot take on the logistics of setting up the deposition.
>
> With respect to whether a deposition being at Chase's expense means Chase has to cover any and all expenses you incur beyond a court reporter, including a videographer, overnight expediting of a certified video record, overnight expediting of a certified transcript, and as contemplated earlier (but I believe now moot) attorneys' fees if you hire an attorney to take the depo – is not stated in the Court's order. The magnitude of the contemplated expense is likewise uncertain at this point. Since you plan to proceed as you deem appropriate regardless of our position, it is not necessary for us to take a position without additional information. We hope you consider the reasonableness of any expenses you incur. Once you incur the expenses, please provide us with the invoices to review with our client and respond with any objections.
>
> Alisa
>
> **Alisa Givental**
> Senior Counsel
> Womble Bond Dickinson (US) LLP
>
> **d:** 415-765-6268
> **e:** Alisa.Givental@wbd-us.com
>
> 50 California Street
> Suite 2800
> San Francisco, CA 94111
>
> WOMBLE BOND DICKINSON
>
> **womblebonddickinson.com**
>
> **We have moved! Please update your records with our new address**
>
> ---
>
> **From:** Josh Johnson <josh@jj88.org>
> **Sent:** Tuesday, August 25, 2026 1:14 AM
> **To:** Givental, Alisa <Alisa.Givental@wbd-us.com>
> **Cc:** Narita, Tomio <Tomio.Narita@wbd-us.com>; Gnanadesigan, Abirami <agnanadesigan@dykema.com>
> **Subject:** Re: Johnson case - Chase trial witness David Rivera
>
> External (josh@jj88.org)

**From:** **Josh Johnson** josh@jj88.org
**Subject:** Re: Johnson case - Chase trial witness David Rivera
**Date:** August 31, 2026 at 11:45 PM
**To:** Givental, Alisa Alisa.Givental@wbd-us.com
**Cc:** Narita, Tomio Tomio.Narita@wbd-us.com, Gnanadesigan, Abirami agnanadesigan@dykema.com

JJ

I called Brickell after the conference this afternoon. Brickell is based out of Florida, and had closed, so I was unable to schedule a second deposition. I am aware of no other firms that will work with a pro se litigant.

Given Chase's suspension of the deposition this morning, its unsuccessful request for protective relief, and its prior refusal to handle the logistics of a deposition that was to be at its expense, there is no practical way to get the deposition done in a timeframe that allows for a fair trial as planned on September 14. At absolute best, the deposition would be taken on September 2, with the transcript made available on September 6. That is not sufficient time.

Consequently, I intend to file ex parte as soon as is practicable, likely tomorrow, for a motion for the court to enforce the final pretrial conference order and preclude David Rivera from testifying at trial.

There are two serious problems.

First, you are attempting to add David Rivera. Rivera is not listed on the witness list incorporated into the Final Pretrial Order entered August 12. The party seeking amendment bears "the burden of showing that an amendment to the pretrial order [is] necessary to prevent 'manifest injustice.'" *Galdamez v. Potter*, 415 F.3d 1015, 1020 (9th Cir. 2005); Fed. R. Civ. P. 16(e). An email announcing Rivera as a replacement did not modify the Order, and Chase has never sought leave to amend it.

Second, Chase is removing Rob Wilkins from the trial posture on which I reasonably relied. Chase repeatedly represented to myself and to the Court that Wilkins would be available and would testify at trial. Courts recognize that representations that an out-of-state witness will appear live can support reasonable trial-preparation reliance notwithstanding the absence of compulsory process. *See, e.g., Brown v. Kia Motors Corp.*, No. 2:06-cv-00804, ECF No. 277, at 1–4 (W.D. Pa. Jan. 19, 2010).

I relied on that posture. Wilkins is independently on my trial list for 1.5 hours of affirmative examination, in part because of his witness-specific personal knowledge as a Vice President in Chase's credit-dispute organization. His role as Chase's 30(b)(6) designee is separate. Rivera may be capable of learning and presenting Chase's corporate position, but he cannot inherit Wilkins's firsthand knowledge.

Josh

On Mon, Aug 31, 2026 at 1:45 PM Josh Johnson <josh@jj88.org> wrote:

> Counsel,
>
> I wanted to follow up after the discussion this morning with the Court.
>
> Has Chase's position with respect to taking on the logistics of scheduling a (now second) deposition changed?
>
> Josh
>
> On Tue, Aug 25, 2026 at 2:15 PM Givental, Alisa <Alisa.Givental@wbd-us.com> wrote:
>
>> Josh,
>>
>> Thank you for returning my call. To answer your questions regarding the deposition, we cannot take on the logistics of setting up the deposition.
>>
>> With respect to whether a deposition being at Chase's expense means Chase has to cover any and all expenses you incur beyond a court reporter, including a videographer, overnight expediting of a certified video record, overnight expediting of a certified transcript, and as contemplated earlier (but I believe now moot) attorneys' fees if you hire an attorney to take the depo – is not stated in the Court's order. The magnitude of the contemplated expense is likewise uncertain at this point. Since you plan to proceed as you deem appropriate regardless of our position, it is not necessary for us to take a position without additional information. We hope you consider the reasonableness of any expenses you incur. Once you incur the expenses, please provide us with the invoices to review with our client and respond with any objections.
>>
>> Alisa
>>

>> **Alisa Givental**
>> Senior Counsel
>> Womble Bond Dickinson (US) LLP
>>
>> **d:** 415-765-6268
>> **e:** Alisa.Givental@wbd-us.com
>>
>> 50 California Street
>> Suite 2800
>> San Francisco, CA 94111
>>
>> **womblebonddickinson.com**

**From:** **Narita, Tomio** Tomio.Narita@wbd-us.com
**Subject:** RE: Johnson case - Chase trial witness David Rivera
**Date:** September 1, 2026 at 9:13 AM
**To:** Josh Johnson josh@jj88.org, Givental, Alisa Alisa.Givental@wbd-us.com
**Cc:** Gnanadesigan, Abirami agnanadesigan@dykema.com, Narita, Tomio Tomio.Narita@wbd-us.com

TN

Josh, we will oppose any motion you file. The witness was on standby yesterday, and after we were heard by the Court, we were waiting to see if you wanted to restart the deposition, but you never indicated you wanted to resume it. We also asked Mr. Rivera to block off time on his calendar this Thursday September 3rd to complete the deposition. Please advise us immediately if you want to resume on Thursday. If we don't hear from you by the end of the business day, I will assume you do not want to proceed.

Tomio

**From:** Josh Johnson <josh@jj88.org>
**Sent:** Monday, August 31, 2026 11:45 PM
**To:** Givental, Alisa <Alisa.Givental@wbd-us.com>
**Cc:** Narita, Tomio <Tomio.Narita@wbd-us.com>; Gnanadesigan, Abirami <agnanadesigan@dykema.com>
**Subject:** Re: Johnson case - Chase trial witness David Rivera

External (josh@jj88.org)

Report This Email FAQ

I called Brickell after the conference this afternoon. Brickell is based out of Florida, and had closed, so I was unable to schedule a second deposition. I am aware of no other firms that will work with a pro se litigant.

Given Chase's suspension of the deposition this morning, its unsuccessful request for protective relief, and its prior refusal to handle the logistics of a deposition that was to be at its expense, there is no practical way to get the deposition done in a timeframe that allows for a fair trial as planned on September 14. At absolute best, the deposition would be taken on September 2, with the transcript made available on September 6. That is not sufficient time.

Consequently, I intend to file ex parte as soon as is practicable, likely tomorrow, for a motion for the court to enforce the final pretrial conference order and preclude David Rivera from testifying at trial.

There are two serious problems.

First, you are attempting to add David Rivera. Rivera is not listed on the witness list incorporated into the Final Pretrial Order entered August 12. The party seeking

**From:** **Josh Johnson** josh@jj88.org
**Subject:** Re: Johnson case - Chase trial witness David Rivera
**Date:** September 1, 2026 at 11:54 AM
**To:** Narita, Tomio Tomio.Narita@wbd-us.com
**Cc:** Givental, Alisa Alisa.Givental@wbd-us.com, Gnanadesigan, Abirami agnanadesigan@dykema.com, Narita, Tomio Tomio.Narita@wbd-us.com

JJ

---

I have immovable professional obligations until 12pm Pacific time on the 3rd. I am available at 12pm.

On Tue, Sep 1, 2026 at 9:13 AM Narita, Tomio <Tomio.Narita@wbd-us.com> wrote:

> Josh, we will oppose any motion you file. The witness was on standby yesterday, and after we were heard by the Court, we were waiting to see if you wanted to restart the deposition, but you never indicated you wanted to resume it. We also asked Mr. Rivera to block off time on his calendar this Thursday September 3rd to complete the deposition. Please advise us immediately if you want to resume on Thursday. If we don't hear from you by the end of the business day, I will assume you do not want to proceed.
>
> Tomio
>
> ---
>
> **From:** Josh Johnson <josh@jj88.org>
> **Sent:** Monday, August 31, 2026 11:45 PM
> **To:** Givental, Alisa <Alisa.Givental@wbd-us.com>
> **Cc:** Narita, Tomio <Tomio.Narita@wbd-us.com>; Gnanadesigan, Abirami <agnanadesigan@dykema.com>
> **Subject:** Re: Johnson case - Chase trial witness David Rivera
>
> External (josh@jj88.org)
>
> Report This Email FAQ
>
> I called Brickell after the conference this afternoon. Brickell is based out of Florida, and had closed, so I was unable to schedule a second deposition. I am aware of no other firms that will work with a pro se litigant.
>
> Given Chase's suspension of the deposition this morning, its unsuccessful request for protective relief, and its prior refusal to handle the logistics of a deposition that was to be at its expense, there is no practical way to get the deposition done in a timeframe that allows for a fair trial as planned on September 14. At absolute best, the deposition would be taken on September 2, with the transcript made available on September 6. That is not sufficient time.
>
> Consequently, I intend to file ex parte as soon as is practicable, likely tomorrow, for a motion for the court to enforce the final pretrial conference order and preclude David Rivera from testifying at trial.
>
> There are two serious problems.
>
> First, you are attempting to add David Rivera. Rivera is not listed on the witness list incorporated into the Final Pretrial Order entered August 12.

**From:** **Josh Johnson** josh@jj88.org
**Subject:** Re: Johnson case - Chase trial witness David Rivera
**Date:** September 1, 2026 at 1:48 PM
**To:** Narita, Tomio Tomio.Narita@wbd-us.com
**Cc:** Givental, Alisa Alisa.Givental@wbd-us.com, Gnanadesigan, Abirami agnanadesigan@dykema.com, Narita, Tomio Tomio.Narita@wbd-us.com

JJ

Tomio,

I went ahead and called Brickell. They do have a court reporter and videographer available at 12pm PT / 3pm ET, who can be available for as long as is necessary. I intend to reserve my full time, which means that the deposition may not conclude until 10pm ET or later.

It would have been nice to have a reply to my questions asking whether Chase would assist with the logistics and court reporter, given the short time frame, and Judge Birotte's clear suggestion that you assist. It is difficult for me to liquidate *another* ~$4,000 on short notice to pay the deposit required by Brickell. You must schedule the deposition, request the same parameters as the Burda deposition, and ensure that I receive a transcript as soon as the firm allows. Please confirm your agreement by the end of today.

I object to the deposition taking place on September 3 and maintain my objection to Rivera appearing instead of Wilkins. The August 11 order states: "Plaintiff gets to depose Wilkins if he desires, AT DEFENDANT'S EXPENSE, by September 1, 2026, unless Plaintiff prefers a later date." Chase has violated the Court's August 11 order by failing to produce Wilkins by September 1.

With respect to your contention that the witness was merely "on standby," that was never the issue. Your conduct at the deposition speaks for itself. You stated: "I will just be ending the deposition"; "We'll just end"; "We're going to end this deposition"; instructed Mr. Rivera to "click out"; and later stated that your intent was "to terminate the deposition".

I repeatedly asked you to clarify whether you were ending the deposition; you repeatedly confirmed that you were, and the proceeding was thereafter taken off the record and concluded. The court reporter and videographer left. When I called Brickell after the emergency meeting with the Court, they had closed.

Moreover, your unilateral termination was improper. Rule 30(d)(3)(A) provides the exclusive basis for interrupting a deposition to seek its termination or limitation. *Biovail Labs., Inc. v. Anchen Pharms., Inc.*, 233 F.R.D. 648, 653 (C.D. Cal. 2006) ("Rule 30(d)(3) is the only authority allowing the interruption of a deposition."). Rule 30(d)(3)(A) then provides: "At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party."

But what you repeatedly identified was not any of those enumerated grounds; rather it was "scope":

- "If you exceed the scope of what was provided to you in Ms. Burda's deposition, I'll move for a protective order and I'll end the deposition and we'll talk to the judge about it."
- "If you start asking him questions about topics that you added beyond the scope of what was presented at Ms. Burda's deposition, then I'm going to end this deposition and move for a protective order."
- "If you exceed the scope, then I will just be ending the deposition … and seeking a protective order."

The question immediately preceding your termination merely asked whether Mr. Rivera had testified that he was prepared to testify on all topics in the Third Amended Notice; you then instructed him to "click out" and stated, "We're going to end this deposition."

Josh

On Tue, Sep 1, 2026 at 11:54 AM Josh Johnson <josh@jj88.org> wrote:

> I have immovable professional obligations until 12pm Pacific time on the 3rd. I am available at 12pm.
>
> On Tue, Sep 1, 2026 at 9:13 AM Narita, Tomio <Tomio.Narita@wbd-us.com> wrote:
>
> > Josh, we will oppose any motion you file. The witness was on standby yesterday, and after we were heard by the Court, we were waiting to see if you wanted to restart the deposition, but you never indicated you wanted to resume it. We also asked Mr. Rivera to block off time on his calendar this Thursday September 3rd to complete the deposition. Please advise us immediately if you want to resume on Thursday. If we don't hear from you by the end of the business day, I will assume you do not want to proceed.
> >
> > Tomio
> >
> > ---
> >
> > **From:** Josh Johnson <josh@jj88.org>
> > **Sent:** Monday, August 31, 2026 11:45 PM
> > **To:** Givental, Alisa <Alisa.Givental@wbd-us.com>
> > **Cc:** Narita, Tomio <Tomio.Narita@wbd-us.com>; Gnanadesigan, Abirami <agnanadesigan@dykema.com>

**From:** **Narita, Tomio** Tomio.Narita@wbd-us.com
**Subject:** RE: Johnson case - Chase trial witness David Rivera
**Date:** September 1, 2026 at 3:24 PM
**To:** Josh Johnson josh@jj88.org
**Cc:** Givental, Alisa Alisa.Givental@wbd-us.com, Gnanadesigan, Abirami agnanadesigan@dykema.com, Narita, Tomio Tomio.Narita@wbd-us.com

TN

Josh,

Your recollections and characterizations listed below are inaccurate. Your suggestion that the witness should make himself available until "10p.m. Eastern Time or later" is patently ridiculous and the Court will see it as such. Ms. Burda's deposition lasted a total of 4 hours, including breaks, so there would be no reason to have Mr. Rivera available to be deposed for more a similar time frame. It is apparent you have no serious interest in taking Mr. Rivera's deposition. Rather, consistent with your past pattern, you simply wish to preclude any Chase witness from testifying at the trial and you are searching for a way to try to set up that argument.

Notwithstanding all this, we are attempting to give you the chance to take a further deposition of Mr. Rivera so long as you keep the Court's clear guidance in mind. Mr. Rivera lives in Illinois, as you know, and he is on Central Time. His normal work hours are from 6:00 a.m. to 2:30 p.m. Central time. We can make him available this Thursday, September 3d for his deposition during those hours. That time slot provides you with more than twice the time that you should need. If you do not wish to start that early in the morning, then you can start at a later time and, as a courtesy to you, Mr. Rivera has agreed to be available for two additional hours beyond his normal work hours, i.e., ending at 4:30 p.m. Central time. If for some reason you still are not willing to work within these time frames, then please suggest another few dates that you can take his deposition and we will consider them with Mr. Rivera and get back to you.

We have attempted in good faith to accommodate your many changing requests and shifting positions on this subject. I'll need to hear from you promptly if you want to lock in the Thursday date.

Tomio

---

**From:** Josh Johnson <josh@jj88.org>
**Sent:** Tuesday, September 1, 2026 1:48 PM

**From:** **Josh Johnson** josh@jj88.org
**Subject:** Re: Johnson case - Chase trial witness David Rivera
**Date:** September 1, 2026 at 3:37 PM
**To:** Narita, Tomio Tomio.Narita@wbd-us.com
**Cc:** Givental, Alisa Alisa.Givental@wbd-us.com, Gnanadesigan, Abirami agnanadesigan@dykema.com, Narita, Tomio Tomio.Narita@wbd-us.com

JJ

> It is difficult for me to liquidate another ~$4,000 on short notice to pay the deposit required by Brickell. You must schedule the deposition, request the same parameters as the Burda deposition, and ensure that I receive a transcript as soon as the firm allows. Please confirm your agreement by the end of today.

I'm going to ask again, now for the third time. What is your position on this?

On Tue, Sep 1, 2026 at 3:24 PM Narita, Tomio <Tomio.Narita@wbd-us.com> wrote:

> Josh,
>
> Your recollections and characterizations listed below are inaccurate. Your suggestion that the witness should make himself available until "10p.m. Eastern Time or later" is patently ridiculous and the Court will see it as such. Ms. Burda's deposition lasted a total of 4 hours, including breaks, so there would be no reason to have Mr. Rivera available to be deposed for more a similar time frame. It is apparent you have no serious interest in taking Mr. Rivera's deposition. Rather, consistent with your past pattern, you simply wish to preclude any Chase witness from testifying at the trial and you are searching for a way to try to set up that argument.
>
> Notwithstanding all this, we are attempting to give you the chance to take a further deposition of Mr. Rivera so long as you keep the Court's clear guidance in mind. Mr. Rivera lives in Illinois, as you know, and he is on Central Time. His normal work hours are from 6:00 a.m. to 2:30 p.m. Central time. We can make him available this Thursday, September 3d for his deposition during those hours. That time slot provides you with more than twice the time that you should need. If you do not wish to start that early in the morning, then you can start at a later time and, as a courtesy to you, Mr. Rivera has agreed to be available for two additional hours beyond his normal work hours, i.e., ending at 4:30 p.m. Central time. If for some reason you still are not willing to work within these time frames, then please suggest another few dates that you can take his deposition and we will consider them with Mr. Rivera and get back to you.
>
> We have attempted in good faith to accommodate your many changing requests and shifting positions on this subject. I'll need to hear from you promptly if you want to lock in the Thursday date.

**From:** **Josh Johnson** josh@jj88.org
**Subject:** Re: Johnson case - Chase trial witness David Rivera
**Date:** September 2, 2026 at 3:46 AM
**To:** Narita, Tomio Tomio.Narita@wbd-us.com
**Cc:** Givental, Alisa Alisa.Givental@wbd-us.com, Gnanadesigan, Abirami agnanadesigan@dykema.com, Narita, Tomio Tomio.Narita@wbd-us.com

JJ

Tomio,

As I've told you several times before, the only litigation firm that will work with me requires an up-front deposit. I already paid $3,823.50 because you refused to handle payment for a deposition that the Court ordered to be at "DEFENDANT'S EXPENSE".

You won't pay and I don't have the cash on hand to advance a second deposit. So here we are.

I've placed a sell order with Schwab to make funds available. Based on past experience, the money will arrive in 1-3 days.

Josh

On Tue, Sep 1, 2026 at 3:37 PM Josh Johnson <josh@jj88.org> wrote:

> > It is difficult for me to liquidate another ~$4,000 on short notice to pay the deposit required by Brickell. You must schedule the deposition, request the same parameters as the Burda deposition, and ensure that I receive a transcript as soon as the firm allows. Please confirm your agreement by the end of today.
>
> I'm going to ask again, now for the third time. What is your position on this?
>
> On Tue, Sep 1, 2026 at 3:24 PM Narita, Tomio <Tomio.Narita@wbd-us.com> wrote:
>
>> Josh,
>>
>> Your recollections and characterizations listed below are inaccurate. Your suggestion that the witness should make himself available until "10p.m. Eastern Time or later" is patently ridiculous and the Court will see it as such. Ms. Burda's deposition lasted a total of 4 hours, including breaks, so there would be no reason to have Mr. Rivera available to be deposed for more a similar time frame. It is apparent you have no serious interest in taking Mr. Rivera's deposition. Rather, consistent with your past pattern, you simply wish to preclude any Chase witness from testifying at the trial and you are searching for a way to try to set up that argument.
>>
>> Notwithstanding all this, we are attempting to give you the chance to take a further deposition of Mr. Rivera so long as you keep the Court's clear guidance in mind. Mr. Rivera lives in Illinois, as you know, and he is on Central Time. His normal work hours are from 6:00 a.m. to 2:30 p.m. Central time. We can make him available this Thursday, September 3d for his deposition during those hours. That time slot provides you with more than twice the time that you should need. If you do not wish to start that early in the morning, then you can start at a later time and, as a courtesy to you, Mr. Rivera has agreed to be available for two additional hours beyond his normal work hours, i.e., ending at 4:30 p.m. Central time. If for some reason you still are not willing to work within these time frames, then please suggest another few dates that you can take his deposition and we will consider them with Mr. Rivera and get back to you.

**From:** **Narita, Tomio** Tomio.Narita@wbd-us.com
**Subject:** RE: Johnson case - Chase trial witness David Rivera
**Date:** September 2, 2026 at 5:36 AM
**To:** Josh Johnson josh@jj88.org
**Cc:** Givental, Alisa Alisa.Givental@wbd-us.com, Gnanadesigan, Abirami agnanadesigan@dykema.com, Narita, Tomio Tomio.Narita@wbd-us.com

TN

Josh, thank you. You still have not stated that you want to proceed with Mr. Riviera's deposition on Thursday September 3rd (tomorrow) during the time window we offered. If you do not confirm that by Noon Pacific time today then I will release that date on his calendar and we'll await word from you on other potential dates. We will work to the best of our ability to arrange another date but his calendar is filling up very quickly.

If you proceed with a deposition, it will be a Chase's expense, consistent with the Court's order. Indeed, I have already received an invoice for the deposition transcript from Monday, which I immediately put in line for payment. My memory of the hearing we had on Monday (which needs to be confirmed by the transcript of that hearing, which we have ordered), is the Court stated it was not directing Chase to make your deposition arrangements for you.

Tomio

---

**From:** Josh Johnson <josh@jj88.org>
**Sent:** Wednesday, September 2, 2026 3:47 AM
**To:** Narita, Tomio <Tomio.Narita@wbd-us.com>
**Cc:** Givental, Alisa <Alisa.Givental@wbd-us.com>; Gnanadesigan, Abirami <agnanadesigan@dykema.com>
**Subject:** Re: Johnson case - Chase trial witness David Rivera

**Caution**: External (josh@jj88.org)

Sensitive Content Details

**Never send money without first confirming orally – via phone or in person – that the payment is to be made.**

Report This Email FAQ

Tomio,

As I've told you several times before, the only litigation firm that will work with me requires an up-front deposit. I already paid $3,823.50 because you refused to handle payment for a deposition that the Court ordered to be at "DEFENDANT'S EXPENSE".

You won't pay and I don't have the cash on hand to advance a second deposit. So here we are.

I've placed a sell order with Schwab to make funds available. Based on past experience, the money will arrive in 1-3 days.

**From:** **Josh Johnson** josh@jj88.org
**Subject:** Re: Johnson case - Chase trial witness David Rivera
**Date:** September 2, 2026 at 11:55 AM
**To:** Narita, Tomio Tomio.Narita@wbd-us.com
**Cc:** Givental, Alisa Alisa.Givental@wbd-us.com, Gnanadesigan, Abirami agnanadesigan@dykema.com, Narita, Tomio Tomio.Narita@wbd-us.com

JJ

Tomio,

Stop working on an exhibit to your opposition and start reading my emails.

I told you yesterday that I was available at 12pm Pacific on Sep 3, but that fronting a second deposit would be an issue, and asked you to schedule the deposition. I remain available and I want to take the deposition.

The problem is that Chase won't schedule it, Chase won't advance the deposit, and I can't pay the deposit until funds from Schwab land in 1-3 days.

I will let you know when I am able to pay the deposit.

Josh

On Wed, Sep 2, 2026 at 5:36 AM Narita, Tomio <Tomio.Narita@wbd-us.com> wrote:

> Josh, thank you. You still have not stated that you want to proceed with Mr. Riviera's deposition on Thursday September 3rd (tomorrow) during the time window we offered. If you do not confirm that by Noon Pacific time today then I will release that date on his calendar and we'll await word from you on other potential dates. We will work to the best of our ability to arrange another date but his calendar is filling up very quickly.
>
> If you proceed with a deposition, it will be a Chase's expense, consistent with the Court's order. Indeed, I have already received an invoice for the deposition transcript from Monday, which I immediately put in line for payment. My memory of the hearing we had on Monday (which needs to be confirmed by the transcript of that hearing, which we have ordered), is the Court stated it was not directing Chase to make your deposition arrangements for you.
>
> Tomio
>
> ---
>
> **From:** Josh Johnson <josh@jj88.org>
> **Sent:** Wednesday, September 2, 2026 3:47 AM
> **To:** Narita, Tomio <Tomio.Narita@wbd-us.com>
> **Cc:** Givental, Alisa <Alisa.Givental@wbd-us.com>; Gnanadesigan, Abirami <agnanadesigan@dykema.com>
> **Subject:** Re: Johnson case - Chase trial witness David Rivera
>
> **Caution**: External (josh@jj88.org)
>
> Sensitive Content Details
>
> **Never send money without first confirming orally – via phone or in person – that the payment is to be made.**

**From:** **Narita, Tomio** Tomio.Narita@wbd-us.com
**Subject:** RE: Johnson case - Chase trial witness David Rivera
**Date:** September 2, 2026 at 12:13 PM
**To:** Josh Johnson josh@jj88.org
**Cc:** Givental, Alisa Alisa.Givental@wbd-us.com, Gnanadesigan, Abirami agnanadesigan@dykema.com, Narita, Tomio Tomio.Narita@wbd-us.com

TN

Thank you, Josh. I understand your email to mean that you are not taking us up on the offer to have Mr. Rivera's deposition tomorrow. I will release him. If you decide you want to proceed with the deposition, please provide us with alternate dates and we will attempt to work within those dates. As I said, his calendar fills quickly.

Regards, Tomio

**From:** Josh Johnson <josh@jj88.org>
**Sent:** Wednesday, September 2, 2026 11:55 AM
**To:** Narita, Tomio <Tomio.Narita@wbd-us.com>
**Cc:** Givental, Alisa <Alisa.Givental@wbd-us.com>; Gnanadesigan, Abirami <agnanadesigan@dykema.com>
**Subject:** Re: Johnson case - Chase trial witness David Rivera

External (josh@jj88.org)

Report This Email FAQ

Tomio,

Stop working on an exhibit to your opposition and start reading my emails.

I told you yesterday that I was available at 12pm Pacific on Sep 3, but that fronting a second deposit would be an issue, and asked you to schedule the deposition. I remain available and I want to take the deposition.

The problem is that Chase won't schedule it, Chase won't advance the deposit, and I can't pay the deposit until funds from Schwab land in 1-3 days.

I will let you know when I am able to pay the deposit.

Josh

On Wed, Sep 2, 2026 at 5:36 AM Narita, Tomio <Tomio.Narita@wbd-us.com> wrote:

> Josh, thank you. You still have not stated that you want to proceed with Mr. Riviera's deposition on Thursday September 3rd (tomorrow) during the time window we offered. If you do not confirm that by Noon Pacific time today then I will release that date on his calendar and we'll await word from you on other potential dates. We will work to the best of our ability to arrange another date but his calendar is filling up very quickly.
>
> If you proceed with a deposition, it will be a Chase's expense, consistent

**From:** **Salmon, Emma** ESalmon@dykema.com
**Subject:** Joshua Johnson vs. JPMorgan Chase Bank, N.A.
**Date:** August 28, 2026 at 4:53 PM
**To:** Josh Johnson josh@jj88.org
**Cc:** Gnanadesigan, Abirami AGnanadesigan@dykema.com

ES

Dear Counsel,

Please find attached the following document:

1. DEFENDANT JPMORGAN CHASE BANK, N.A.'S OBJECTIONS TO PLAINTIFF'S THIRD AMENDED NOTICE OF DEPOSITION OF REPRESENTATIVES OF JPMORGAN CHASE BANK, N.A. PURSUANT TO FRCP 30(B)(6)

Feel free to contact our office if you have any questions or concerns.

Sincerely,

**Emma Salmon**
Administrative Assistant

D 213-457-1718
ESalmon@dykema.com ▪ dykema.com

444 South Flower Street, Suite 2200
Los Angeles, California 90071

Dykema 100 YEARS

*** Notice from Dykema Gossett PLLC: This Internet message may contain information that is privileged, confidential, and exempt from disclosure. It is intended for use only by the person to whom it is addressed. If you have received this in error, please (1) do not forward or use this information in any way; and (2) contact me immediately.

Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

2026-08-28 Def's Objection to Third Amended 30(b)(6) Notice...

# EXHIBIT G

Third Amended Rule 30(b)(6) Deposition Notice

August 24, 2026

**Joshua Johnson**
1957 Diamond St
San Diego, CA 92019
(336) 423-2594
josh@jj88.org
PRO SE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| JOSHUA JOHNSON,<br>Plaintiff,<br>v.<br>JPMORGAN CHASE BANK, N.A.,<br>Defendant. | Case No.: 2:22-cv-06718-AB-MAA<br><br>**THIRD AMENDED NOTICE OF DEPOSITION OF REPRESENTATIVES OF JPMORGAN CHASE BANK, N.A. PURSUANT TO FED. R. CIV. P. 30(b)(6), AS AUTHORIZED BY THE COURT'S AUGUST 11, 2026 ORDER [DKT. 195]**<br><br>Date: August 31, 2026<br>Time: 10:00 a.m. Eastern Time<br>Place: Remote Deposition |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and the Court's August 11, 2026 Order (Dkt. 195), Plaintiff JOSHUA JOHNSON ("Plaintiff"), appearing pro se, will take by oral examination under oath, on August 31, 2026, commencing at 10:00 a.m. Eastern Time, the deposition of the person(s) designated by Defendant JPMORGAN CHASE BANK, N.A. ("Defendant" or "Chase") to testify on its behalf, via videoconference using Steno, Zoom, or a similar remote platform.

The Court's August 11, 2026 Order denied Plaintiff's Motion in Limine No. 1 "on the condition that Plaintiff gets to depose Wilkins if he desires, AT DEFENDANT'S EXPENSE, by September 1, 2026, unless Plaintiff prefers a later date." (Dkt. 195 at 8.) The deposition will be taken at Defendant's expense.

This Notice amends and supersedes Plaintiff's Second Amended Notice of Deposition of Representatives of JPMorgan Chase Bank, N.A. Topics 1 through 30 of the Second Amended Notice are renewed without change and retain their original numbering. Topics 31, 32, and 33 are added.

The deposition will be taken before a court reporter authorized to administer oaths by the laws of the State of California, and testimony will be recorded stenographically. The deposition also shall be recorded by audio and videotape. Plaintiff reserves the right to use any part or all of the deposition, including but not limited to the audio or video recording thereof, at trial or at any other hearing in this action in lieu of live testimony of the deponent, as provided in Rule 32 of the Federal Rules of Civil Procedure. The deposition will continue day-to-day until completed, weekends and holidays excepted, unless otherwise agreed by counsel.

In accordance with Rule 30(b)(6), Plaintiff requests that Defendant prepare its designee(s) to testify "as to matters known or reasonably available to" Defendant regarding the Areas of Examination listed below, and that Defendant provide written notice, no later than August 28, 2026, of the name and employment

position of each person designated to testify on Defendant’s behalf and the Topics on which each is designated.

**DEFINITIONS**

1. The terms "related," "relating," "concern," and "in connection with," and all forms of these terms, as used herein, shall mean having any logical or factual connection with the matter discussed and includes, without limitation: analyzing, concerning, consisting of, describing, discussing, embodying, evidencing, identifying, including, pertaining to, memorializing, mentioning, naming, negating, recording, reflecting, showing, supporting, or summarizing.
2. The term "document(s)" as used herein shall refer to any means of writing and "communication" and includes, without limitation: the original or a non-identical copy as well as drafts and all versions of all writings and recordings; material that is stored, compiled or organized by means of any electronic, magnetic, optical or mechanical device, such as by handwriting, typewriting, or printing; agreements, analytical data, audio recordings, books, calendars, computer tapes, computer storage media, contracts, correspondence, diagrams, diaries, email, facsimiles, forms, interoffice communications, letters, memoranda, messages, notes, papers, pleadings, proposals, reports, social media, studies, surveys, video recordings, worksheets; and any writing or recording prepared on or with any other physical objects.
3. The terms "communications" or "communication" as used herein shall refer to any form of information exchange, or attempted exchange, including but not limited to written or electronic exchanges; exchanges by letter, telephone, facsimile, email, meeting, or conference; any exchange written, taped, or recorded; any exchange without limit to the time, place, or circumstances of its occurrence; instant messages; messages transmitted by social media accounts; direct messages; text messages; and/or any other transmittal of information by any media by any manner.

4. The terms "or" and "and" include each other within their meaning, whether both are referenced or otherwise.
5. The terms "any" and "all" include each other within their meaning, whether both are reference or otherwise.
6. The terms "person" or "persons" shall mean any natural person, firm, entity, corporation, partnership, proprietorship, association, joint venture, other form of business organization or arrangement, and/or government or government agency of any nature or type.
7. The singular form of a word shall be interpreted as plural, and the plural form of a word shall be interpreted as singular whenever appropriate in order to bring within scope any information or "documents" that might otherwise be considered beyond their scope.
8. The terms "you," "your," or "Chase" as used herein shall refer to Defendant JPMorgan Chase Bank, N.A., together with its parents, subsidiaries, and affiliates, including JPMorgan Chase & Co., and includes any current and former representatives, agents, employees, attorneys, and anyone else acting or purporting to act on its or their behalf.
9. The term "Plaintiff" as used herein shall refer to Plaintiff Joshua Johnson.
10. "Dispute" means the dispute Plaintiff initiated in August 2020 regarding the information JPMorgan Chase Bank, N.A. reported to Equifax related Plaintiff's Chase Ink credit card account.
11. "Burda," "Wilkins," and "Rivera" mean Barbara Burda, Rob Wilkins, and David Rivera, respectively.
12. "Burda Separation" means the ending, or scheduled ending, of Burda's employment with Chase, however characterized, including the decision to end it.

13. "Wilkins Separation" means the ending, or scheduled ending, of Wilkins's employment with Chase, however characterized, including the decision to end it.

14. "Employment Termination Program" means any program, whether or not formally named, under which the positions or employment of more than one employee were selected for elimination, including any program in connection with which Chase provided the written disclosures described in 29 U.S.C. § 626(f)(1)(H).

15. "Notice Date" means the date on which an employee was first informed by Chase that his or her employment would end or that his or her position would be eliminated.

16. "Separation Date" means the date on which an employee's employment with Chase ended or is scheduled to end.

17. "Relevant Period" means October 23, 2023 through December 31, 2026.

# AREAS OF EXAMINATION

## The Disputed Information and 2020 Investigation

**Topic No. 1:**

The accuracy of the information Chase reported regarding Plaintiff to Equifax that was the subject of the Dispute.

**Topic No. 2:**

The number of times from July 2017 to the present that Chase reported to Equifax that Plaintiff's Chase Ink credit card was a "charge off".

**Topic No. 3:**

Chase's investigation of the Dispute, including but not limited to (a) the steps Chase took to investigate the dispute, (b) the information Chase reviewed when investigating the dispute, (c) Chase's determination after the investigation, and (d) the basis for Chase's determination.

**Topic No. 4:**

Chase's verification of the information Chase reported regarding Plaintiff that was the subject of the Dispute.

**Topic No. 5:**

Chase's transmittal of the information Chase reported regarding Plaintiff that was the subject of the Dispute to Equifax, including but not limited to (a) the number of transmittals and (b) the timeframes those transmittals occurred.

**Topic No. 6:**

The documents Chase has evidencing its investigation of the Dispute.

**Topic No. 7:**

Chase's responses to Interrogatories 1-20.

**Topic No. 8:**

Plaintiff's current balance on his Chase Ink business credit card account.

**Topic No. 9:**

Chase's document retention policies with respects to documents generated during the 2020 investigation of the Dispute.

**Topic No. 10:**

The number of times Chase transmitted the information that was the subject of the Dispute to Equifax.

**Topic No. 11:**

The number of times Chase made contact with Josh Johnson as stated in the October 13, 2020 letter from Chase to Mr. Johnson.

**FCRA Investigations**

**Topic No. 12:**

The process for Chase's receipt of complaints disputing the completeness or accuracy of consumer's information from a consumer reporting agency.

**Topic No. 13:**

What information Chase receives from a consumer's dispute of the completeness or accuracy of a consumer's information from a consumer reporting agency, including whether consumer reporting agencies provide all information they receive from the consumer regarding the dispute to Chase.

**Topic No. 14:**

Chase's procedures for investigating a consumer dispute regarding the completeness or accuracy of a consumer's information received from a consumer reporting agency.

**Topic No. 15:**

The amount of time Chase typically takes to investigate a consumer dispute regarding the completeness or accuracy of a consumer's information received from a consumer reporting agency.

**Topic No. 16:**

The number of employees Chase has participating in investigations related to consumers' disputes of completeness or accuracy of their information pursuant

to FCRA.

**Topic No. 17:**

The number of FCRA consumer disputes Chase receives and processes yearly.

**Topic No. 18:**

Chase's document retention policies with respects to documents generated and/or reviewed when investigating consumer disputes it receives from consumer reporting agencies.

**Online Access**

**Topic No. 19:**

Procedures regarding merging or linking Chase business and personal banking/credit card accounts in 2017.

**Topic No. 20:**

The procedure for customers to access closed and charged off accounts online, including whether charged off accounts are removed from online access.

**Topic No. 21:**

Procedures for sending "payment due" alerts to Chase Ink Card holders, including whether "payment due" notices were sent to Plaintiff for his Chase Ink Card account.

**Similar Complaints**

**Topic No. 22:**

Prior complaints from 2020 to the present where Chase's customers claimed that Chase inaccurately reported their accounts as chargeoffs.

**Topic No. 23:**

Prior complaints from 2020 to the present where Chase's customers claimed that they could not access the balance of their accounts.

**Topic No. 24:**

Prior complaints from 2020 to the present where Chase's customers claimed that they tried to pay off their entire balance but instead only a minimum payment was applied to their accounts.

**Topic No. 25:**

Chase's document retention policies in connection with online communications with its customers, from 2018 to the present.

**Topic No. 26:**

Chase's internal policies and procedures of documenting and investigating customer account inquiries, from 2018 to the present.

**Topics re Chase's Financial Condition / Net Worth**

**Topic No. 27:**

Defendant's current net worth and financial condition.

**Topic No. 28:**

The creation of JPMorgan Chase & Co.'s 10-K filings for the years ending (a) December 31, 2018, (b) December 31, 2019, (c) December 31, 2020, (d) December 31, 2021, and (e) December 31, 2022

**Topic No. 30:**

The creation of JPMorgan Chase & Co.'s 10-Q filings for the periods ending (a) June 30, 2020, (b) September 30, 2020, (c) March 31, 2021, (d) June 30, 2021, (e) September 30, 2021, (f) March 31, 2022, (g) June 30, 2022, (h) September 30, 2022, and (i) March 31, 2022.

**Witness Availability**

**Topic No. 31:**

The Burda Separation, limited to the Relevant Period and to the following:

(a) Each period during the Relevant Period in which Burda was employed by Chase, with the start and end date of each period and the entity that employed her.

(b) The date on which Burda or her position was first identified or selected for elimination; each date on which Chase planned or decided to end her employment or eliminate her position; and the name, title, and role of each person who recommended, made, or approved that decision.

(c) The reason for that decision as recorded in Chase's records or as communicated to Burda.

(d) Whether the decision was made under an Employment Termination Program and, if so: the name or internal identifier of the Employment Termination Program; the date on which it was first proposed and each date on which it was approved; the group of positions from which selections under it were made, including whether the position Wilkins held, or any position reporting to Wilkins, was within that group; and each date on which the selections under it were approved.

(e) Burda's Notice Date; the name and title of the person who notified her; the last date on which she performed any work for Chase; each date on which Chase revoked her access to its premises, email, or systems; her Separation Date; and, if her Separation Date has not yet occurred, whether she is actively working, on a paid non-working notice period, or on leave, and whether she continues to receive her regular salary and benefits.

(f) Whether Chase offered Burda any agreement in connection with the Burda Separation; whether and when she executed it; and the substance of any provision in it that restricts or requires cooperation in legal proceedings, availability to testify, or communications with third parties, whether or not the provision refers to this action.

(g) The date on which the decision to end Burda's employment or eliminate her position was first communicated to any person other than those who recommended, made, or approved it, and the name and title of each person

to whom it was communicated before her Notice Date. As to any attorney, this subpart seeks the date only and not the content of any communication.

**Topic No. 32:**

The Wilkins Separation, limited to the Relevant Period and to the following:

(a) Each period during the Relevant Period in which Wilkins was employed by Chase, with the start and end date of each period and the entity that employed him.

(b) The date on which Wilkins or his position was first identified or selected for elimination; each date on which Chase planned or decided to end his employment or eliminate his position; and the name, title, and role of each person who recommended, made, or approved that decision.

(c) The reason for that decision as recorded in Chase's records or as communicated to Wilkins.

(d) Whether the decision was made under an Employment Termination Program and, if so: the name or internal identifier of the Employment Termination Program; the date on which it was first proposed and each date on which it was approved; the group of positions from which selections under it were made, including whether the position Wilkins held, or any position reporting to Wilkins, was within that group; and each date on which the selections under it were approved.

(e) Wilkins's Notice Date; the name and title of the person who notified him; the last date on which he performed any work for Chase; each date on which Chase revoked his access to its premises, email, or systems; his Separation Date; and, if his Separation Date has not yet occurred, whether he is actively working, on a paid non-working notice period, or on leave, whether he continues to receive his regular salary and benefits; any change after August 18, 2026 to his scheduled Separation Date, and the date of and reason for the change.

(f) Whether Chase offered Wilkins any agreement in connection with the Wilkins Separation; whether and when he executed it; and the substance of any provision in it that restricts or requires cooperation in legal proceedings, availability to testify, or communications with third parties, whether or not the provision refers to this action.

(g) The date on which the decision to end Wilkins's employment or eliminate his position was first communicated to any person other than those who recommended, made, or approved it, and the name and title of each person to whom it was communicated before his Notice Date. As to any attorney, this subpart seeks the date only and not the content of any communication.

**<u>Topic No. 33:</u>**

Chase's Representations Concerning the Availability of Its Witnesses, limited to the following:

(a) Each fact on which Chase based its March 13, 2026 statement that Burda was "not available for trial."

(b) Each fact on which Chase based its March 27, 2026 statement that its counsel designated Wilkins "promptly ... upon learning of Burda's departure," including the date on which Chase's counsel learned of Burda's departure.

(c) Each fact on which Chase based its July 17, 2026 representation to the Court that Wilkins would testify at trial in place of Burda.

(d) Each fact on which Chase based its August 19, 2026 statements that its counsel had "just learned" that Wilkins "is leaving JPMorgan Chase" and that Wilkins "will be unable to testify at the deposition or at trial," including the date on which Chase's counsel learned that Wilkins's employment would end, and each fact on which Chase relies to the extent it contends that Wilkins is not within its control for purposes of producing him for deposition or trial.

(e) The name and title of each person who determined that Wilkins would be unable to testify, and the date of that determination.

(f) Whether Chase asked Wilkins to appear for deposition on August 31, 2026 and to appear at trial; the date of each such request; and each statement by Wilkins to Chase concerning his willingness or ability to testify in this action, with the date of the statement and the person to whom it was made.

(g) Each step Chase has taken to secure Wilkins's attendance at deposition or trial.

(h) The date on which Chase decided to designate Rivera in place of Wilkins.

(i) Whether, as of the date of the deposition, Chase has decided, or has initiated any process, to end Rivera's employment or eliminate his position.

**DATED:** August 24, 2026

Joshua Johnson

/s/ Joshua Johnson

# EXHIBIT H

Brickell Key Court Reporting Invoice
Invoice No. 0000109

August 27, 2026

BRICKELL | KEY

Brickell Key Court Reporting
(305) 407-9993
701 Brickell Avenue
Suite 1550
Miami, FL 33131

**Billed To**
Joshua Johnson - Pro Se
1957 Diamond Street
San Diego, CA 92019

**Date of Issue**
08/27/2026

**Due Date**
08/27/2026

**Invoice Number**
0000109

**Reference**
8/31/26 - Joshua Johnson vs. JPMorgan Chase Bank, N.A.

**Amount Due (USD)**
$3,823.50

| Description | Rate | Qty | Line Total |
|---|---|---|---|
| Attendance Fee - 6 hours<br>$660.00 - $110 per hour thereafter | $660.00 | 1 | $660.00 |
| After hours Attendance Fee - Court Reporter<br>$150.00 per hour after 5:00 PM | $0.00 | 1 | $0.00 |
| E-Transcript (PDF Delivery)<br>$130.00 | $130.00 | 1 | $130.00 |
| Original Transcript<br>$6.50 per page ++ .50 per page surcharge for med/tech/interpreter/Zoom/videotaped - 50 page minimum<br>Transcript will be quoted at conclusion | $6.50 | 270 | $1,755.00 |
| 4-day expedite (Optional)<br>(Delivered 9/4/26) | $4.55 | 270 | $1,228.50 |
| $50 Service Fee<br>(One-time, Non-refundable) | $50.00 | 1 | $50.00 |

| | |
|---|---|
| Subtotal | 3,823.50 |
| Tax | 0.00 |
| Total | 3,823.50 |
| Amount Paid | 0.00 |

# EXHIBIT I

Chase's Objections to the Third Amended Deposition Notice

August 28, 2026

**DYKEMA GOSSETT LLP**
ABIRAMI GNANADESIGAN, State Bar No. 263375
*AGnanadesigan@dykema.com*
444 South Flower Street, Suite 2200
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

**WOMBLE BOND DICKINSON (US) LLP**
TOMIO NARITA (SBN 156576)
Tomio.Narita@wbd-us.com
ALISA A. GIVENTAL (SBN 273551)
Alisa.Givental@wbd-us.com
50 California Street, Suite 2750
San Francisco, CA 94111
Telephone: (415) 433-1900

Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.



**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

JOSHUA JOHNSON,

Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,

Defendant.

Case No. 2:22-cv-06718-AB-MAAx

The Hon. André Birotte Jr.
Courtroom 7B

Magistrate Maria A. Audero
Courtroom: 690

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S OBJECTIONS TO PLAINTIFF'S THIRD AMENDED NOTICE OF DEPOSITION OF REPRESENTATIVES OF JPMORGAN CHASE BANK, N.A. PURSUANT TO FRCP 30(B)(6)**

Complaint Filed: September 19, 2022

Defendant JPMorgan Chase Bank, N.A. ("Chase") hereby makes the following objections to Plaintiff's Third Amended Notice Of Deposition Of Representatives Of JPMorgan Chase Bank, N.A. Pursuant To FRCP 30(B)(6):

Topic No. 2: Chase objects to this topic as irrelevant and overbroad. "Charge-off" was not a term contained in the DISPUTE. The number of times that Plaintiff's Chase Ink credit card was reported as a "charge-off" is overbroad due to its irrelevancy.

Topic No. 7: Chase objects to this topic to the extent that Chase has objected to the subject interrogatories. Chase objects to any interrogatory that requests information that is not relevant to the DISPUTE. Chase further objects to the topic as overbroad and unduly burdensome due to the lack of specificity of the topic. Chase objects to the topic regarding any interrogatories requesting information about Chase employees that is covered by the stipulation between the parties, Joint Stipulation re Employees with Information re 2020 Investigation.

Topic No. 9: Chase objects to this topic as irrelevant, overbroad, unduly burdensome, and potentially privileged. Since no specific documents are identified, Chase is unable to determine what specific document retention policy may be implicated. Chase is willing to meet and confer with Plaintiff to respond to this topic through interrogatories or stipulation.

Topic No. 18: Chase objects to this topic as irrelevant, overbroad, unduly burdensome, and potentially privileged. Since no specific documents are identified, Chase is unable to determine what specific document retention policy may be implicated. Chase is willing to meet and confer with Plaintiff to respond to this topic through interrogatories or stipulation.

Topic No. 19: Chase objects to this topic as irrelevant and overbroad. Anything regarding "online access", or linking of Chase business and personal banking/credit card accounts is not the subject of the DISPUTE and is not related to the DISPUTE as it was communicated to Chase. In addition, there are no

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

allegations of any kind regarding Chase banking, so any information regarding Chase banking is irrelevant.

Topic No. 20: Chase objects to this topic as irrelevant and overbroad. Anything regarding "online access", or closed and charged off accounts online is not the subject of the DISPUTE and is not related to the DISPUTE as it was communicated to Chase. The topic is overbroad as it is not limited to credit card accounts.

Topic No. 21: Chase objects to this topic as irrelevant and overbroad. Anything regarding "online access", or "payment due" alerts to Chase Ink Card holders is not the subject of the DISPUTE and is not related to the DISPUTE as it was communicated to Chase.

Topic No. 22: Chase objects to this topic as irrelevant, overbroad, unduly burdensome, and lacking in proportionality to the needs of the case. The DISPUTE did not concern an inaccurate report of account charge off and so the topic is irrelevant. The topic is not limited to credit cards and so is overbroad. Chase does not separately track this information making any discussion of customer complaints unduly burdensome. Complaints regarding charge offs is the largest dispute status code received by Chase from credit reporting agencies, resulting in thousands of complaints that have no relevancy to this dispute making this information disproportional to the needs of the case.

Topic No. 23: Chase objects to this topic as irrelevant, overbroad, unduly burdensome, and lacking in proportionality to the needs of the case. The DISPUTE did not concern inability to access the balance of an account and so the topic is irrelevant. The topic is not limited to credit cards and so is overbroad. Chase does not separately track this information making any discussion of customer complaints unduly burdensome. Since the topic does not concern the DISPUTE, the information is disproportional to the needs of the case.

Topic No. 24: Chase objects to this topic as irrelevant, overbroad, unduly

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

burdensome, and lacking in proportionality to the needs of the case. The DISPUTE did not concern attempts to pay off entire balance of an account where only a minimum payment was applied and so the topic is irrelevant. The topic is not limited to credit cards and so is overbroad. Chase does not separately track this information making any discussion of customer complaints unduly burdensome. Since the topic does not concern the DISPUTE, the information is disproportional to the needs of the case.

Topic No. 25: Chase objects to this topic as irrelevant, overbroad, unduly burdensome, and potentially privileged. As drafted, the topic is irrelevant because it is not clear what online communications are requested. Since no specific documents are identified, Chase is unable to determine what specific document retention policy may be implicated. It is also overbroad and unduly burdensome because it is not limited to credit card customers.

Topic No. 26: Chase objects to this topic as irrelevant, overbroad, unduly burdensome, and not proportional to the needs of the case. It is not clear what is requested regarding "internal policies and procedures documenting and investigating customer account inquiries."

Topic No. 27: Chase objects to this topic to the extent it's precluded by the stipulation between the parties, Joint Stipulation re Financial Condition Evidence. Chase objects to this topic as overbroad in that it's not limited to Chase's credit card business. As stipulated to, Chase is willing to meet and confer regarding Chase's financial condition as it relates to its credit card business, subject to objections of relevancy as to admission of evidence of damages.

Topic No. 28: Chase objects to this topic to the extent it's precluded by the stipulation between the parties, Joint Stipulation re Financial Condition Evidence. Chase objects to this topic as overbroad in that it's not limited to Chase's credit card business. As stipulated to, Chase is willing to meet and confer regarding Chase's financial condition as it relates to its credit card business, subject to objections of

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

relevancy as to admission of evidence of damages.

Topic No. 30: Chase objects to this topic to the extent it's precluded by the stipulation between the parties, Joint Stipulation re Financial Condition Evidence. Chase objects to this topic as overbroad in that it's not limited to Chase's credit card business. As stipulated to, Chase is willing to meet and confer regarding Chase's financial condition as it relates to its credit card business, subject to objections of relevancy as to admission of evidence of damages.

Topic No. 31: Chase objects to this topic and each of its subparts as irrelevant, overbroad, unduly burdensome, and lacking in proportionality to the needs of the case. Chase further objects to this topic to the extent it seeks private or confidential information of third parties. Chase further objects to this topic as overbroad as it is outside of the scope of this Court's August 11, 2026 Order denying Plaintiff's Motion in Limine No. 1. Discovery has closed and Plaintiff is not permitted to add additional topics to this Third Amended Notice.

Topic No. 32: Chase objects to this topic and each of its subparts as irrelevant, overbroad, unduly burdensome, and lacking in proportionality to the needs of the case. Chase further objects to this topic to the extent it seeks private or confidential information of third parties. Chase further objects to this topic as overbroad as it is outside of the scope of this Court's August 11, 2026 Order denying Plaintiff's Motion in Limine No. 1. Discovery has closed and Plaintiff is not permitted to add additional topics to this Third Amended Notice.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

Topic No. 33: Chase objects to this topic and each of its subparts as irrelevant, overbroad, unduly burdensome, and lacking in proportionality to the needs of the case. Chase further objects to this topic to the extent it seeks private or confidential information of third parties. Chase further objects to this topic as overbroad as it is outside of the scope of this Court's August 11, 2026 Order denying Plaintiff's Motion in Limine No. 1. Discovery has closed and Plaintiff is not permitted to add additional topics to this Third Amended Notice.

DATED: August 28, 2026 DYKEMA GOSSETT LLP

By: ______________________

ABIRAMI GNANADESIGAN
Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

# PROOF OF SERVICE

*Joshua Johnson vs. JPMorgan Chase Bank, N.A.*
*USDC, Central District, Case No. 2:22-cv-06718-AB-MAA*

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 444 South Flower Street, Suite 2200, Los Angeles, California 90071.

On the date set forth below, I served the foregoing document(s) described as

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S OBJECTIONS TO PLAINTIFF'S THIRD AMENDED NOTICE OF DEPOSITION OF REPRESENTATIVES OF JPMORGAN CHASE BANK, N.A. PURSUANT TO FRCP 30(B)(6)**

on the interested parties in this action as follows:

| | |
|---|---|
| Joshua Johnson<br>1957 Diamond St<br>San Diego, CA 92109<br><br>Tel: (336) 423-2594<br>Email: josh@jj88.org | **DEFENDANT PRO PER** |

☒**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Dykema Gossett LLP for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Los Angeles, California.

☒**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address MMendoza@dykema.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on August 28, 2026, at Los Angeles, California.

Emma Salmon

# EXHIBIT J

David Rivera Deposition Transcript

August 31, 2026

# In the Matter of:

*JOSHUA JOHNSON vs*

*JPMORGAN CHASE BANK*

---

# DAVID RIVERA, CORP REP

*August 31, 2026*

---

BRICKELL KEY
COURT REPORTING
WWW.BRICKELLCOURTREPORTING.COM

Brickell Key Court Reporting, LLC
701 Brickell Avenue, Suite 1550
Miami, Florida 33131
305.407.9993
www.brickellcourtreporting.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

CERTIFIED TRANSCRIPT

JOSHUA JOHNSON,

Plaintiff, VOLUME 1

vs. Case No.: 2:22-cv-06718-AB-MAA

JPMORGAN CHASE BANK, N.A.,

Defendant.

_______________________________/

VIDEOTAPED
DEPOSITION OF: DAVID RIVERA, Corporate Representative
Talent Manager II
Credit Bureau Operation Support
JPMorgan Chase Bank, N.A.

PURSUANT TO: FED. R. CIV. P. 30(b)(6)

DATE: Monday, August 31, 2026

TIME: 7:07 a.m. PST / 10:07 a.m. EST

LOCATION OF THE WITNESS: Elgin, Illinois via Zoom Video-Conference

COURT REPORTER: Barb Sonafelt

VIDEOGRAPHER: Anna Scandella

APPEARANCES:

JOSHUA JOHNSON, PRO SE
1957 Diamond Street
San Diego, California 92019
(336) 423-2594
josh@jj88.org

Appearing Pro Se on behalf of Plaintiff
(via Zoom.)

TOMIO BUCK NARITA, ESQ.
ALISA A. GIVENTAL, ESQ.
Womble Bond Dickinson (US) LLP
50 California Street
Suite 2800
San Francisco, California 94111
(415) 765-6274
tomio.narita@wbd-us.com
alisa.givental@wbd-us.com

Appearing on behalf of Defendant (via Zoom.)

ALSO PRESENT:

Andrew Cho, Esq. (via Zoom)
In-house counsel JPMorgan Chase Bank, N.A.

INDEX


| Witness | Page |
| --- | --- |
| David Rivera | |
| DIRECT EXAMINATION BY MR. JOHNSON: | 7 |


EXHIBITS


| Exhibit | Page |
| --- | --- |
| (Exhibit attached to transcript.) | |
| PLAINTIFF'S PREMARKED EXHIBIT NO. 30, THIRD AMENDED NOTICE OF DEPOSITION OF REPRESENTATIVES OF JPMORGAN CHASE BANK, N.A. PURSUANT TO FED. R. CIV. P. 30(b)(6), AS AUTHORIZED BY THE COURT'S AUGUST 11, 2026 ORDER [DKT. 195] | 14 |

Elgin, Illinois
Monday, August 31, 2026
7:07 a.m. PST / 10:07 a.m. EST

***

THE VIDEOGRAPHER: We are now on the record. My name is Anna Scandella. I am the videographer for Brickell Key Court Reporting. Today's date is August 31st of 2026, and the time is now 10:07 a.m. This video deposition is being held remotely in the matter of Joshua Johnson versus JPMorgan Chase Bank. The deponent is David Rivera.

Will counsel please introduce themselves.

MR. JOHNSON: This is Joshua Johnson, plaintiff, representing himself.

MR. NARITA: This is Tomio Narita for the defendant, JPMorgan Chase.

MS. GIVENTAL: This is the Alisa Givental for the defendant, JPMorgan Chase.

MR. CHO: This is Andrew Cho, in-house counsel for JPMorgan Chase.

THE VIDEOGRAPHER: The court reporter is Barbara Sonafelt, and will now swear in the witness.

COURT REPORTER: (Inaudible.)

Can you please identify yourself, please?

MR. CHO: Excuse me?

COURT REPORTER: (No Response.)
MR. CHO: Andrew Cho, in-house counsel for JPMorgan Chase.
COURT REPORTER: Andrew, okay. I don't see you anywhere. That's why I'm asking. Your camera is not connected or you're not on.
MR. CHO: Here I am. Here I am. I don't expect to be talking, so I kept it off.
COURT REPORTER: And how do you spell your last name, sir?
MR. CHO: C-h-o.
COURT REPORTER: Thank you, sir. I appreciate that.
Okay, Mr. Rivera, would you please raise your right hand?
(Mr. Rivera raised right hand.)
COURT REPORTER: And I've already identified you.
Do you swear or affirm that the testimony you will give today will be the truth, the whole truth, and nothing but the truth?
MR. RIVERA: I do.
***
DAVID RIVERA,
was thereupon called as a witness herein, and after

having first been duly sworn or affirmed to testify to the truth, was examined and testified as follows:

COURT REPORTER: Thank you, sir.

Counsel, it is all yours.

MR. JOHNSON: Okay. So first off, Counsel, where is Mr. Wilkins?

MR. NARITA: Rob Wilkins?

MR. JOHNSON: Rob Wilkins. The... I-I mean, the Court authorized me to conduct a deposition of Rob Wilkins, not Mr. Rivera. Where's...

MR. NARITA: Yeah.

MR. JOHNSON: Where's Mr. Wilkins?

MR. NARITA: We already told you that Mr. Rivera is going to be here testifying. I think we told you well over a week ago. And Mister --

MR. JOHNSON: So...

MR. NARITA: And Mr. Wilkins is no longer with the bank, so he's...

MR. JOHNSON: He's... He's unemployed? He's... He's not a... He's not employed by JPMorgan Chase as of today, August 31st?

MR. NARITA: He's... He's been let go by the bank, and so he's not going to be testifying today.

MR. JOHNSON: Is he employed by JPMorgan Chase today, August 31st?

MR. NARITA: I have no idea, Josh. Get going with your deposition. You're burning your time.

MR. JOHNSON: Okay.

DIRECT EXAMINATION

BY MR. JOHNSON:

Q. Okay. Mr. Rivera, do you understand that the oath you were given is the same oath you would receive if you were testifying in court?

A. Yes.

Q. Do you understand that the oath carries a duty to testify truthfully under penalty of perjury?

A. Yes.

Q. Are you aware of any reason you cannot provide truthful testimony today?

A. No.

Q. Are you aware of any reason you cannot provide accurate testimony today?

A. No.

Q. In the last 24 hours -- excuse me -- have you taken any medication that would interfere with your ability to testify today?

A. No.

Q. The defendant... The defendant is JPMorgan Chase Bank, North America, correct?

A. Correct.
Q. Do you mind if I refer to JPMorgan Chase Bank, N.A. as "Chase"?
A. No concern.
Q. Do you currently work for Chase?
A. Yes.
Q. How long have you worked for Chase?
A. I've worked for Chase for 20 years.
Q. And what is your current position?
A. Talent Manager II.
Q. In what department or business unit do you work?
A. Credit Bureau Operation Support.
Q. How long have you held your current position?
A. I want to say about, approximately two years.
Q. And what position did you hold when you began working for Chase?
A. I was a correspondence supervisor.
Q. Please describe for me each position you've held at Chase since then.
A. Customer Service. Do not soliciting, power of attorney, credit balance refund, email servicing, credit party disputes. I believe that covers them all.
Q. Okay. And if you remember, how long did you hold each position?
A. Credit Bureau Operation is the only one I really, uh,

I can remember because it's approximately, I would say, about 15 years. Others were between... It was in between five years.
Q. Okay. And I'm sorry, if you wouldn't mind working back for me?
So Credit Bureau Operations is the... That's the latest position or no?
A. No, it's... Uh, credit...
So I was a manager, a supervisor for approximately 10 years and five -- approximately from fiv- -- uh, 10 years, I assisted in other supports within Credit Bureau Operations, leading to my current title.
Q. I see, okay. So you've been in Credit Bureau Operations for about 10 years, but the last two has been as an -- as -- has been as an Account Manager II?
A. Ten years of managing people on the credit dispute process. Between two... About, I would say about four, approximately, and then two currently in this title, but I was a support to the dispute process procedures, process enhancements, case studies, just a-a few responsibilities with that.
Q. Okay. How many people do you currently supervise?
A. I do not supervise people today.
Q. Okay. But you did in your previous position?

A. That is correct.
Q. And how many people did you supervise at that -- or in that position?
A. Between 15 to 20.
Q. And what was the role of those, those people that, that reported to you?
A. Those individuals perform dispute investigation of our system of record and reporting with the credit bureaus.
Q. And were they referred to as processor specialists?
A. Correct. We refer to them as processors, specialists.
Q. Going forward, I might reference that role in future questions. Would you prefer that I used processor or specialist or processor specialist?
A. I have no preference.
Q. Okay. And where do you work geographically?
A. I work in Elgin, Illinois.
Q. Okay. And what is your highest level of education?
A. High school.
Q. Have you been deposed previously?
A. Yes.
Q. How many times?
A. I've been... I was pre- -- I was deposed last week. Prior to that, over 10 depositions. I don't have an exact number.
Q. Okay.

A. Approximately.
Q. So at least 11; is that fair?
A. Yeah, that's correct.
Q. And on each of those occasions, did you testify as a witness for Chase?
A. Yes.
Q. When was the first deposition that you participated in?
A. I don't recall. That was quite a time ago.
Q. Would it have been before 2016?
A. Yes. Uh, I do not know.
Q. So you don't know the case caption?
A. Unfortunately, I do not.
Q. Do you know what type of case it was?
A. I do not.
Q. What was the last deposition? What was the... Strike that. What was the case caption for the last deposition you were -- you testified at?
A. I'm not sure I understand the question.
Q. Who was the party in the last case?
A. (No Response.)
Q. For example, my case is Joshua Johnson v. JPMorgan Chase. So I'm Joshua Johnson. I'm the, the plaintiff. Do you know who the plaintiff was in the -- in the case that you gave the prior deposition at?
A. I don't recall.

Q. Okay. Have you ever testified at trial?
A. No.
Q. I... I'm sorry. Could you say that again?
A. I... No.
Q. No, okay. Have you ever testified at an arbitration?
A. No.
Q. Have you ever provided a declaration for Chase in a lawsuit?
A. Yes.
Q. On how many occasions?
A. I don't recall.
Q. What's your best estimate of the number of declarations that you provided?
A. I would say, over 20.
Q. Okay. Is assisting with litigation one of your job responsibilities?
A. Yes.
Q. Approximately, how much time per month do you spend assisting with litigation?
A. I would have to say, approximately 20-plus hours.
Q. Per month?
A. Per month. I just... In this last, I would say, two years, I have not been in deposition or assisting with legal cases, but prior to that, I would say about, approximately 20; 20 or more hours.

Q. Okay. And what does the breakdown of that 20 hours look like?
A. I would meet with our legal team who's assisting with the case. I would spend time researching the account to better understand the situation. All documentations are associated with the case, ensuring I understand all the details around the reporting so I could feel confident in speaking to our, uh, these cases and give accurate information.
Q. Okay. So you are aware that Chase has designated you as its corporate representative today, correct?
A. Yes.
Q. And you understand that you are testifying for and speaking on behalf of Chase, correct?
A. Yes.
Q. You understand that throughout this deposition, I will be seeking testimony from you on behalf of Chase, correct?
A. Yes.
Q. Chase designated you to testify on its behalf concerning the topics in the third amended notice; is that correct?
A. Yes.
Q. Have you previously seen the third amended notice?
A. Can you repeat that question?

Q. Bear with me just a second and I'll-I'll pull the document up for you.
A. Okay.
(PLAINTIFF'S PREMARKED EXHIBIT NO. 30, THIRD AMENDED NOTICE OF DEPOSITION OF REPRESENTATIVES OF JPMORGAN CHASE BANK, N.A. PURSUANT TO FED. R. CIV. P. 30(b)(6), AS AUTHORIZED BY THE COURT'S AUGUST 11, 2026 ORDER [DKT. 195] MARKED FOR IDENTIFICATION.)
BY MR. JOHNSON:
Q. Okay. I am displaying what has been premarked as Exhibit 30. This is a document titled third amended notice of deposition of representatives of JPMorgan Chase Bank pursuant to Federal Rule 30(b)(6), as authorized by the Court's August 11th order. There are no Bates' stamps.
Mr. Rivera, do you see this document?
A. Yes, I do.
Q. Have you seen this document before?
A. Yes.
Q. What is this document?
A. As you said, a third amended notice of deposition of a representative of JPMorgan Chase, N.A.
Q. And are you aware that the third amended... Well, strike that. Is it okay if I just refer to this as the

"third amended notice"?
A. Yeah. I have no concern.
Q. Are you aware that the third amended notice contains specific topics for examination?
A. Yes.
Q. The notice begins with topics 1... Let me back up.
If I scroll through this document, are you able to see me scrolling and where I am on the page?
A. Yes, I can see them.
Q. So the notice begins with topic number 1 and the notice ends with topic number 33, correct?
A. I see that.
Q. Are there any notice topics for which you are not prepared to give testimony on behalf of Chase today?
MR. NARITA: Well, Josh, we served you with some objections last week, and so he's -- he's here subject to those objections.
MR. JOHNSON: I understand that.
BY MR. JOHNSON:
Q. Mr. Rivera, you can answer.
A. Yes. To the best of my knowledge, yes.
Q. I... I'm sorry. Let me repeat the question.
Are there any notice topics for which you are not prepared to provide testimony on behalf of Chase today?

A. Not to my knowledge.
Q. So you're prepared to testify with respect to all 33 topics?
A. Yes, to the best of my knowledge.
MR. NARITA: Subject to the objections that we served last week, Josh.
MR. JOHNSON: Understood.
MR. NARITA: As you know, this is supposed to be -- encompass the topics that were at issue in Ms. Burda's deposition. And there were numerous topics in that deposition that Chase objected to. You never moved to compel on that or, or sought any kind of remedy on that. And you also have tried to add new topics to this notice, which we, of course, objected to.
Subject to that, the witness is available for you.
MR. JOHNSON: You're referring, Tomio, to the objections that Mr. Hyatt stated on the record at the beginning of Ms. Burda's deposition or something else?
MR. NARITA: I would be incorporating those, but also the written objections that we served you with last week.
MR. JOHNSON: You're incorporating Mr.

Hyatt's oral objections at the last deposition?

MR. NARITA: Yes. Those objections were made on the record, and they're noted. And there was no further deposition of Ms. Burda, as far as I know. And so you got... You got testimony on a subset of these topics during Ms. Burda's deposition. We're certainly not going to go beyond the topics that were presented for Ms. Burda's deposition, nor are we going to allow you to add two or three new topics at the last minute. That's not what the Court ordered.

MR. JOHNSON: When you say we're not, are you instructing the witness not to answer those questions?

MR. NARITA: No. No. We've made --

MR. JOHNSON: Okay.

MR. NARITA: We've made our objections. If you exceed the scope of, of what was provided to you in Ms. Burda's deposition, I'll move for a protective order and I'll end the deposition and we'll talk to the judge about it, but I'm not instructing him not to answer. I'm just telling you what the scope of this deposition is.

MR. JOHNSON: Okay. That... Understood.

So Mr. Hyatt, if you read the transcript, he objected and instructed Ms. Burda not to answer

questions. So that's...
MR. NARITA: I won't be doing it. I won't be doing that, Josh.
MR. JOHNSON: Okay.
MR. NARITA: If you exceed the scope, then I will just be ending the deposition pursuant -- and seeking a protective order. That's what I'll be doing.
MR. JOHNSON: Okay.
MR. NARITA: I won't be instructing him. We'll just end.
MR. JOHNSON: Excellent. I'm... I'm glad to hear that.
BY MR. JOHNSON:
Q. Okay. Mr. Rivera, what did you do to prepare for today's deposition?
A. I reviewed the third amended notice of deposition. I reviewed all the documents that were provided in this trial. I also reviewed our system of records, leading from the very beginning, from May of 2018 up to, uh, ACDV dispute that was received and responded to.
So pretty much, I feel like I did quite a few, uh, quite a time of review in this case.
Q. How much time would you say you spent reviewing?
A. I would say, a little bit over 20 hours.
Q. And when you say... I'm sorry, I-I think you said you

reviewed documents Chase produced in this litigation; is that correct?
A. That is correct.
Q. Did you review documents that I produced in this litigation?
A. If that's all encompassed of this lawsuit, then I would have reviewed it.
Q. So you don't know for sure?
A. I don't know for sure until you show me the document.
Q. And as far as specific documents... So you mentioned Chase's systems of record. What systems of record do you remember reviewing?
A. System of record such as the-the memos. I reviewed certain screens that are associated with our system of record. Procedures, statements. That's just to name a few.
Q. Okay. When did you first become aware that you would be deposed today? Actually, let me strike that.
When did you first become aware that... Let me strike that.
When were you first asked to be involved with this case?
A. About two weeks ago.
Q. Do you remember the date?
A. I do not.

Q. Other than counsel, with whom did you speak while preparing to testify?
A. Alisa and Andy Cho.
Q. I'm sorry. The question was, other than counsel, with whom did you speak with while preparing to testify?
A. No other individuals.
Q. How many times did you meet with, uh, with counsel?
A. I believe it was two or three times.
Q. And how long was the first meeting?
A. Approximately, a little over two hours.
Q. And how long was each additional meeting?
A. I would definitely say, over -- over two hours.
Q. In, in total, how many -- approximately, how many hours did you spend meeting with counsel?
A. Approximately five hours altogether.
Q. So about five hours meeting with counsel, and about 15 doing document and record review; is that fair?
A. That's fair.
Q. Bear with me, please, just a second.
(Pause in the Proceedings.)
Q. I'm going to stop sharing my screen.
So I wanted to start with some questions about the organization that you're a part of, Mr. Rivera, and then also Rob Wilkins and then Barbara Burda.

Let's start with Barbara Burda. Do you know Barbara Burda?
A. Yes, I do.
Q. What is your relationship with Ms. Burda?
A. We were peers for a certain time.
Q. Approximately what dates were you peers with Ms. Wilkins -- I'm sorry, with Ms. Burda?
A. I don't have a... I can't... I don't recall how long or dates.
Q. Do you remember the years?
A. Not... Not exactly the year. I have... She was a peer of mine for at least two years while managing credit reporting disputes.
Q. Were you peers in 2023?
A. I'm not certain, but it's possible.
Q. Is Ms. Burda currently a Chase employee?
A. She is not.
Q. Do you know when she left Chase?
A. I do not know exactly when she left Chase.
Q. Do you remember the year when she left Chase?
A. I do not.
Q. What was your last communication with Ms. Burda?
A. I don't recall.
Q. Do you know why Ms. Burda left Chase?
A. Yes.

Q. Why did Ms. Burda leave Chase?
A. She retired.
Q. Would that have been 2024?
A. I don't recall exactly when she retired.
Q. Was that retirement planned?
A. Yes.
Q. When did you first become aware that Ms. Burda was... Let me strike that.
When did you... When do you remember you first becay... Let me strike that.
When did you first become aware that Ms. Burda was retiring?
A. Yeah. I-I can't... I-I... Sorry, I do not know exactly when I was aware of it or became aware of it.
Q. Okay. Bear with me just a second.
(Pause in the Proceedings.)
Q. Okay. I'm sharing my screen again. So you are prepared with respect to topic number 31; is that correct?
MR. NARITA: We... We objected to that topic and I'm not going to have him talk about that.
MR. JOHNSON: Are you instructing Mr. Rivera not to answer?
MR. NARITA: No. I'm, I'm... I'm meeting and conferring with you, Josh.

If you start asking him questions about topics that you added beyond the scope of what was presented at Ms. Burda's deposition, then I'm going to end this deposition and move for a protective order and seek relief with the judge.

So you got a lot of things to cover. I would suggest that you move on.

BY MR. JOHNSON:

Q. Mr. Rivera, your prior testimony was that you were prepared to testify on behalf of Chase on topics -- on all of these topics; is that correct?

MR. NARITA: I told you, subject to our objections, Josh.

BY MR. JOHNSON:

Q. Mr. Rivera, you may answer.

A. I'm able to contest to, uh, based on my knowledge.

Q. So you are not prepared to testify on behalf of Chase with respect to topic number 31; is that correct?

MR. NARITA: Josh, this is... This is not going to continue. I'm not going to have you ask the Cou- -- the-the witness questions about topics that you added that were beyond the scope of what Ms. Burda testified about. They obviously were because you're ask- -- you're asking -- uh, this topic deals with her leaving the bank. And when she was deposed, she was

employed by the bank.

So if you continue to waste our time questioning this witness about topics that are clearly improper, then I'm going to have everyone log off, stop the deposition, and we're going to go talk to the judge.

I would advise you to course correct and get back on track.

MR. JOHNSON: Is that an instruction not to answer based on privilege, a limitation ordered by the court, or a motion under --

MR. NARITA: It's not an instruction not to answer. We're not going to play that game. I'm talking to you, meeting and conferring with you about the misuse of the deposition process. So listen to me and talk to me.

MR. JOHNSON: All right.

MR. NARITA: Are you going to continue... Josh, are you going to continue to ask this witness questions about topics that were outside of the scope of what Ms. Burda testified about? Answer that. If you're going to keep doing it, then we're going to click off, and I'm going to call the judge.

MR. JOHNSON: I have a limited amount of time for this deposition. I'm going to ask you to

stop wasting my time.
BY MR. JOHNSON:
Q. Mr. Rivera, with respect to the topics, I lost track of where we -- where we -- where we were at.
Your testimony earlier was that you were prepared to testify on all of the topics in the third amended notice on behalf of Chase; is that correct?
MR. NARITA: Misstating his testimony, misstating the record. The witness is being offered on the topics that were at issue in Ms. Burda's deposition, Josh. If you keep down this path, I'm going to instruct the witness to dis- -- to sign off, and we're going to call the judge. Are you going to keep going?
MR. JOHNSON: Yes. I am going to keep going.
MR. NARITA: Okay.
David, I want you to click out of however you can click out of this deposition. We're going to end this deposition. I'm going to be contacting the judge.
Just stay, just stay... Stay nearby in case we get the judge on the phone. Okay? I want you to stay available.
We're going to sign off. Please sign off

first.

And Madam Court Reporter, we're going off the record.

COURT REPORTER: Are we in agreement to go off the record, everyone?

MR. JOHNSON: No. No, we are not.

MR. NARITA: All right.

Josh, we'll be... We'll be contacting chambers of the judge. You can sit here on the record and enjoy yourself. We'll be back as soon as we...

(Pause in the Proceedings.)

MR. JOHNSON: Miss Court Reporter, I'm here. I'm just turning off my video and my audio, but if-if you need me, I'll be here.

COURT REPORTER: Okay, sir. Thank you.

THE VIDEOGRAPHER: Mr. Johnson, you can just let me know if you want to go off the record, and we'll be on standby, regardless.

MR. JOHNSON: Sure.

THE VIDEOGRAPHER: Or if we want to stay on the record, it's up to you.

MR. JOHNSON: We can go off the record.

I won't... I won't refuse that.

THE VIDEOGRAPHER: We're going off the record. The time is now 10:40 a.m.

(Recess taken at 10:40 a.m.)
(Back on record at 11:52 a.m.)
THE VIDEOGRAPHER: We're back on the record. The time is now 11:52 a.m.
MR. CHO: This is Andrew Cho, in-house counsel of JPMorgan. I'd just like to point out that I was still on the Zoom, but counsel of record, outside counsel, Tomio Narita, is not on the record, so I just want to make that clear. He's not on the Zoom at the moment. Thank you.
MR. JOHNSON: Do we want to wait for him, Andy? Is he coming back?
MR. CHO: I don't know. I just wanted to point that out. I think it's best to wait. I can let him know that you intend to go on the record.
MR. JOHNSON: Okay, sure. I'm happy to do that.
(Pause in the Proceedings.)
COURT REPORTER: So are we still on the record, everybody?
MR. JOHNSON: I think we could go off until we get further information from Andy.
THE VIDEOGRAPHER: Sounds good. We're going off the record. The time is now 11:53 a.m.
(Recess taken at 11:53 a.m.)

(Back on record at 11:58 a.m.)

THE VIDEOGRAPHER: We're back on the video record. The time is now 11:58 a.m.

MR. JOHNSON: Okay. If we leave the Zoom recording, does that constitute the termination of the deposition, or are we able to leave it open, leave it running, and come back if and when we hear something from the judge, or do we need to leave the Zoom -- the Zoom window up?

THE VIDEOGRAPHER: (No Response.)

MR. JOHNSON: In other words, can we leave the deposition open, stay off the record, but close the Zoom app, and then perhaps come back later?

THE VIDEOGRAPHER: As far as the video -- videographer -- I'm sorry.

As far as the videographer goes, I can be on standby until you guys notify me. We can stop the Zoom recording, log out, and log back in, when needed.

That's just for the videographer.

COURT REPORTER: As the court reporter, I would think it's the same thing. I-I don't really know. I think it's a... I think it's your decision, sir.

MR. JOHNSON: Tomio, are-are you... Do you have a preference, Tomio? Do you have a position on

this?

MR. NARITA: Well, as I... As I told you when we spoke off the record, and I think Alisa told you when she spoke to you off the record, we are... We are prepared with a witness now to continue on all of the topics that Ms. Burda was examined on. And if you're ready to proceed on the topics that she was examined on, then I would urge you to proceed or decide that you don't need the deposition, one or the other. Either is fine, but we're... I can't have you continue to, you know, basically harass the witness and Chase and waste time on topics that were never part of the Burda deposition and that certainly are not going to be part of this upcoming trial. No one is going to be coming into the trial, testifying about when Ms. Burda left the bank or when Mr. Wilkins did or their situation. We're talking...

If there's a trial and a, and a Chase witness is needed, it's going to be to talk about you and your account. So this is all, you know, just an incredible and unfortunate waste of time, and I think it's harassing.

MR. JOHNSON: Okay. Well, I'm not going to limit my questions in any way. So if you want to bring back the designee and we can proceed, I am ready and

willing to do that. I will not agree to limit my questions. And I will be asking questions on topics 31 through 33 immediately when we resume. And you are welcome to object further. And if you improperly instruct the witness not to answer, that is what it is, but...

MR. NARITA: My remedy is not to instruct the witness not to answer. My remedy is to terminate the deposition and seek a protective order, which is what we've done. So I think we should --

MR. JOHNSON: So you terminated the deposition, and you're seeking a protective order?

MR. NARITA: If that's what we're doing. There's no other way to do it. We have to seek a protective order promptly because you refuse to move on the topics which the witness is ready, willing, and able to testify about, which are -- you know, which he's prepared to testify about, but you refused to do that. You've made it very clear, you're going to continue to question the witness on improper subject matters, and I'm just not going to expose the witness to that.

MR. JOHNSON: Okay. So for the record, I do not consent to termination or completion of the deposition. Chase directed its Rule 30(b)(6) designee

to leave. I remain ready, willing to continue immediately. I consider the deposition -- through your representation -- Tomio suspended at Chase's request and not completed.

Miss Court Reporter, you can go off the record.

THE VIDEOGRAPHER: Please standby. We're going off the video record. The time is now 12:03 p.m.

(Deposition concluded at 12:03 p.m. (EST)

REPORTER'S CERTIFICATE FOR REMOTE DEPOSITION

I, BARBARA SONAFELT, a duly Certified Court Reporter and Notary Public, do hereby certify:

That the taking of the videoconference, videotaped deposition of the witness, DAVID RIVERA, commencing on AUGUST 31, 2026, at the hour of 10:07 AM to 12:03 PM (EST), was audio recorded and taken down by digital recording via videoconference and videotaped deposition.

That the witness named in the foregoing deposition was remotely duly sworn or affirmed by me to testify to the truth, the whole truth, and nothing but the truth;

That the foregoing pages contain a full, true and accurate record of the proceedings heard and understood by me, the court reporter;

I further certify that I am not a relative nor employee of any attorney or party involved in said action, nor a person financially interested in the action.

IN WITNESS WHEREOF, I have hereunto subscribed my name this date of SEPTEMBER 1, 2026.

BARBARA SONAFELT
Notary Public
My Commission # 1157193
Expiration: 3/28/2030

# EXHIBIT K

Joshua Johnson Deposition
Transcript Excerpts

October 27, 2023

word. What else? That's all I can remember off the top of my head.
Q Okay. So when you say, "creditworthiness," are you referring to, for instance, your ability to purchase real estate? Or is there some other thing you're trying to get at?
A And maybe one additional category --
Q Sure.
A -- would be I have been burned bad enough by this that I don't use credit cards anymore, so there's a whole host of, you know, benefits that would come with that, but I don't think it's worth the risk anymore, so I just use a debit card.
Q Okay. Anything else that you would put in that bucket of creditworthiness?
A Oh, in the bucket of creditworthiness. I'm sorry. That was meant as a separate category.
Q Oh, okay. All right. I'm just trying to figure out what you mean by "creditworthiness."
A By "creditworthiness," well, like if -- for folks to extend you credit for various things, auto loans, mortgage loans, your --
Q So your ability to get credit?
A -- your ability to get credit and at favorable rates. And then also just general reputation. I mean

employers and landlords will use your credit report to determine whether you can get an apartment or whether you can get the job. That's a function of the reports as well.

Q Okay. Have you had any experience with an employer denying you a job because of your credit report?

A No.

Q So in terms of that general reputation category that you just mentioned, have you seen any adverse effects to your general reputation based on your dispute with Chase?

A One additional -- I'm sorry. I keep remembering stuff. Another category that I forgot to mention would be increased insurance rates. So home insurance.

Q I was going to remind you of that.

A Yeah.

Q But I had asked you about your general reputation. Have you noticed any effects from that from the dispute with Chase?

A It came up at least once when I applied -- when I applied for a new apartment.

Q Okay. Do you remember when that was?

A 2020, I believe.

Q Do you remember when in 2020?
A I would have to look at the documents submitted. It's in there.
Q Do you know if it was before or after August of 2020?
A I believe it was after, but I would have to look at the documents.
Q Okay. In this proceeding have you produced any documents regarding this issue with getting the apartment?
A I think there was an email, and it was produced in the arbitration. I believe it was reproduced here as well. So it should be in Chase's possession either way.
Q Okay. All right. So what I have so far is creditworthiness, meaning your ability to get credit at a favorable rate. Is that fair?
A Yep.
Q Okay. Issues with real estate, I'm assuming your ability to purchase real estate?
A Yeah.
Q Something along those lines?
And then you said your mental state, but I just put that as emotional distress.
A Sure.
Q So damages based on your psychological

well-being?
A Sure.
Q Okay. That because of this you don't use credit cards anymore; is that correct?
A Yes, that's correct.
Q Have you --
A Maybe one more. With respect to the emotional distress, I am extremely paranoid now of not receiving letters in the mail, and it causes me great anxiety to just constantly be worried about that.
Q All right. In terms of the not using a credit card anymore, are you able to quantify in any way how that's affected you?
MR. RUSSELL: Objection. Calls for an expert opinion.
Go ahead.
THE WITNESS: I can attempt to. For example, I believe with the Ink account, when I opened it, I got some amount of reward points that were like equivalent to 800 bucks or so. So it would be nice to open a, you know, credit card and get a promotional thing like that, but it is not worth the risk, you know. This happened to me. It was no fault of my own, so I'm not going to --
\\\

BY MR. HYATT:
Q Okay. And anything else in terms of the not wanting to use a credit card anymore?
A There's protections that you get with credit cards that you don't get with debit cards, with respect to fraud, things like that, warranties. I just know generally of a lot of benefits you can get with credit cards, and again it's not worth the risk.
Q Okay. And is it correct to say that's -- I understand that you're blaming Chase for this, but is it correct to say that it's your decision to stop using credit cards?
A That's correct.
(Whereupon, Deposition Exhibit O was marked for identification.)
BY MR. HYATT:
Q So I'll mark this next in order. I believe we're on O.
All right. And this is your initial disclosures that you submitted in this case. And so if you could turn to Page 1.
A Okay.
Q So I wanted to go through the witnesses that you listed and just confirm their information and basis for their testimony.

# EXHIBIT L

Robert Wilkins LinkedIn Profile

August 28, 2026

Contact

robjwilkins@hotmail.com

www.linkedin.com/in/robert-wilkins-497045171 (LinkedIn)

## Top Skills

Data Quality
Training
Auditing

# Robert Wilkins

Vice President/Business Analysis Manager
Columbus, Ohio Metropolitan Area

## Summary

15 years of management experience at different levels managing teams of upward to 75+ domestic and offshore in both Manila, Philippines and Mumbai, India.

## Experience

### JPMorganChase & Co. (Chase Credit Bureau Operations)

8 years

**Business Analysis Manager**
2023 - Present (3 years)

Lead a team of 75+ across Columbus and Elgin, directing daily execution for dispute resolution operations. Partner with offshore teams in Mumbai and Manila to meet service level targets and improve inventory management and operational flow. Develop and implement a new dispute resolution process for the Pay In 4 Product to strengthen operational consistency. Build partnerships with Compliance, Audit, and internal stakeholders to align business execution and customer-centric solutions. Oversee daily control reporting and risk assessments to support regulatory compliance and audit readiness. Manage relationships with internal credit reporting partners to reinforce data quality, procedural consistency, and training alignment. Serve as a Credit Reporting Witness in legal depositions, arbitrations, and trials, representing JPMorgan Chase & Co. with subject matter expertise.

**Vice President Operations**
2018 - 2023 (5 years)

Led cross-functional initiatives to improve efficiency across Credit Bureau Disputes operations and drive sustained adoption. Translated business needs into operational execution plans to support consistent delivery across teams. Spearheaded the Auto Indirect Disputes Robotics Project to modernize dispute workflow and execution. Developed the Root Cause Tracker initiative to improve issue identification and escalation for strategic change. Managed system access for Disputes Teams to reinforce compliance expectations and security protocols through governance.

JPMorgan Chase & Co.
Business Analysis Manager
September 2005 - Present (21 years)
Columbus, Ohio, United States

I am seeking a position that will utilize my operational management skill set to lead and build relationships internally, externally, domestic, and offshore.

JPMorganChase & Co. (Chase Auto Finance)
Vice President Operations
2016 - 2018 (2 years)

Directed a team of 75+ across domestic and offshore locations to deliver operational performance and stability. Executed end-to-end transitions of operational processes between domestic sites with disciplined change management. Established and led offshore teams to expand processing capacity and improve operational throughput. Regulated and analyzed daily control reports to meet regulatory standards and support audit readiness. Performed risk assessments to strengthen controls and maintain audit preparedness. Managed relationships with credit reporting partners to prioritize data integrity, procedural consistency, and training.

JPMorganChase & Co. (Chase Home Lending)
9 years

Assistant Vice President Operations
2010 - 2016 (6 years)

Led a team of 6-12 through performance management, development, and staffing decisions. Conducted structured monthly 1-on-1s and appraisals to reinforce accountability and performance expectations. Managed special projects by directing teams of 10-20 contractors with clear ownership and delivery focus. Executed procedural changes and process improvements, coordinating training and alignment with offshore partners in the Philippines. Implemented a peer-to-peer recognition program to strengthen engagement, performance, and collaboration. Regulated and analyzed daily control reporting to support compliance with FCRA, RESPA, and related requirements. Developed and standardized CDC/OCC complaint process controls and consulted with legal teams on credit reporting requirements and settlement agreement support.

Operations Team Lead
2008 - 2010 (2 years)

Facilitated weekly staff meetings to align priorities, execution discipline, and communication. Managed workflow for 11 employees across domestic and Manila teams to sustain throughput and service performance. Coached employees on audit findings to strengthen compliance behaviors and continuous improvement. Served as an escalation point for policy and procedure inquiries from team members, management, and compliance partners. Partnered with business lines to ensure accurate credit reporting and communicate policy changes. Conducted Passport queries, analyzed results, and delivered actionable feedback to management. Produced and distributed morning volume reports and prepared files for mass transaction requests to CSG.

Internal Auditor
2007 - 2008 (1 year)

Conducted audits across Default Loan Servicing to confirm adherence to procedures and investor guidelines. Presented audit results to department VPs and facilitated working sessions to identify and implement improvements. Analyzed trends and developed action plans for procedural corrections and stronger control outcomes.

### JPMorganChase & Co. (Chase Home Lending)
Compliance Analyst
2001 - 2005 (4 years)

Formalized monthly compliance audits for the Legal and Compliance Department to support consistent regulatory adherence. Supported litigation research and documentation gathering for the Legal Department to ensure completeness and responsiveness. Researched and resolved customer credit disputes while maintaining accurate records and documented outcomes. Developed and delivered training materials to onboard new hires and support peer capability building. Served as the primary liaison with major credit bureaus to ensure alignment with CDIA guidelines and consistent execution.

## Education

### Columbus State Community College
Associate of Science - AS, Business Administration and Management, General · (2001 - 2005)

### Columbus State University
Associate's Degree, Business Administration and Management, General

# EXHIBIT M

David Rivera LinkedIn Profile

August 28, 2026

Contact

www.linkedin.com/in/david-rivera-13a64261 (LinkedIn)

Top Skills

Team Leadership
Credit Reporting
Self-management

# David Rivera

Account Manager II at JPMorgan Chase
Greater Chicago Area

## Summary

I have 19 years of experience at JP Morgan Chase, where I have managed processes across various departments and led teams of up to 30 employees. My responsibilities have included establishing efficient and consistent processes, ensuring alignment with policies and procedures, and managing the consumer reporting disputes business. This role required a deep understanding of CDIA guidelines and the implementation of reasonable investigation steps to ensure accurate reporting. I have collaborated with controls, risk, and legal teams on consumer reporting matters. Currently, I serve as an individual contributor, supporting the overall consumer reporting dispute process by facilitating work transitions, developing new workflows, and establishing new processes.

## Experience

JPMorgan Chase & Co.
21 years 3 months

Account Manager II
April 2014 - Present (12 years 5 months)
Elgin, Illinois, United States

I oversee the consumer reporting disputes process, managing a team of up to 20 employees to ensure they meet their annual objectives and support their development and career growth. I am responsible for managing our service level expectations and establishing process efficiencies. Additionally, I collaborate with cross-functional teams to address reporting impacts, with a focus on enhancing our overall service quality.

Team Manager
June 2005 - April 2014 (8 years 11 months)
Elgin, Illinois, United States

I have overseen various processes, including Letter Correspondence/Customer Emails, Do Not Solicit requests, Quality Assurance Letters, Power of Attorney documentation, and Credit Balance Refunds. In this role, I managed a team of up to 30 employees, focusing on optimizing process efficiency

and ensuring that all requests are handled within regulatory service level agreements.