**Joshua Johnson**
1957 Diamond St
San Diego, CA 92109
(336) 423-2594
josh@jj88.org
PRO SE

FILED
CLERK, U.S. DISTRICT COURT
SEP 11 2026
CENTRAL DISTRICT OF CALIFORNIA
BY: GK DEPUTY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

JOSHUA JOHNSON,
Plaintiff,
v.
JPMORGAN CHASE BANK, N.A.,
Defendant.

Case No.: 2:22-cv-06718-AB-MAAx

**PLAINTIFF'S EX PARTE APPLICATION FOR AN ORDER PERMITTING REMOTE TESTIMONY**

Judge: Hon. André Birotte Jr.
Place: Courtroom 7B

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Plaintiff Joshua Johnson ("Johnson") applies ex parte under Rule 43(a) for permission for Zack Hoffman and Meghan Johel to testify at trial by live video from North Carolina. Trial is set for September 14, 2026. (Dkt. 193 at 2.) Ordinary motion procedures cannot resolve it before the currently scheduled trial.

On August 27, 2026, Johnson advised Defendant JPMorgan Chase Bank, N.A. ("Chase") by email that he would seek ex parte relief if Chase would not stipulate. On September 1, Alisa Givental stated that Chase would oppose. (Exs. A, E.) Any opposition is due within 48 hours (two court days) after service under the Court's procedures.

Chase's counsel may be contacted as follows: Alisa Givental, Alisa.Givental@wbd-us.com, (415) 765-6268; Womble Bond Dickinson (US) LLP, 50 California Street, Suite 2800, San Francisco, CA 94111.

**DATED:** September 11, 2026 Joshua Johnson

/s/ Joshua Johnson

## MEMORANDUM OF POINTS AND AUTHORITIES

On May 26, 2026, Chase moved to continue trial from August 3, 2026, because Chase's attorneys had "vacations and/or other family commitments scheduled" that "cannot be cancelled without significant hardship and cannot be rescheduled due to school and work schedules." (Dkt. 182-1 at 2.)

Johnson offered to stipulate to a continuance if Chase agreed to accommodate his distant witnesses by allowing them "to testify by remote transmission under Rule 43(a)." Chase refused. (Dkt. 182-2 ¶¶ 5–7; Dkt. 193 at 2.)

This Court granted that continuance,[1] but noted that "Plaintiff's fact witnesses in North Carolina, who are not parties, also have family obligations, so their having to re-shuffle their travel plans and related arrangements to accommodate Defendant's representative and counsel, who are paid professionals, is burdensome" and "the Court does expect Defendant to reciprocate and avoid additional needless motion practice by agreeing to reasonable requests for Plaintiff's distant fact witnesses to testify remotely." (Dkt. 193 at 2.) Defendant has not reciprocated.

On August 13, 2026, Johnson renewed his request with Chase. Chase suggested that it would consider his request if Johnson provided authority and a hardship statement. Johnson provided both on August 27; Narita responded that Chase would review the authorities and get back to him "in a few days." (Johnson Decl. ¶ 5; Exs. D–E.)

Johnson's witness Zack Hoffman lives in North Carolina and works full time. His wife also works full time, and they have a three-month-old and a two-year-old. Johnson's witness Meghan Johel also lives in North Carolina, works, and is the primary caregiver for her six-year-old and two-year-old children. Her husband's work schedule is inflexible. (Johnson Decl. ¶ 6.)

---

1 After obtaining a continuance from August 3 to September 14 for its attorneys' vacations, Chase decided on August 18 to terminate its trial witness. (Dkt. 209-2 ¶ 3.) Yet the Court denied Johnson a continuance to address the fallout from that extension. (Dkt. 210 at 1–2.)

Ms. Givental says those "employment, childcare, and travel considerations … may make attendance tiring and inconvenient, but they were foreseeable." Their "asserted three-to-four-day travel burden also remains unsupported" because they could just fly down at 6:35 a.m. on the morning of the first day of trial and take a red eye back home that night. (Exs. A, C.)

Meanwhile, for Rob Wilkins, Chase's Vice President who has "[s]erved as the executive Credit Reporting Witness for 30+ legal depositions and trials, providing definitive operational expertise that resulted in zero case losses and mitigated over $20M in corporate financial risk" (Ex. B at 2)—the prospect of "multi-day cross-country travel" is too much of a burden. He needs to look for a job after Chase decided to fire him. (Dkt. 209-2 ¶ 3.)

**This Court should allow Zack Hoffman and Meghan Johel to testify at trial by live video from North Carolina.** Fed. R. Civ. P. 43(a). *See Ever Win International Corp. v. Prong, Inc.*, 2017 WL 1654063, at *1–2 (C.D. Cal. Jan. 6, 2017) (permitting an East Coast witness to testify by video over objection).

**DATED:** September 11, 2026 Joshua Johnson

/s/ Joshua Johnson

# DECLARATION OF JOSHUA JOHNSON

I, Joshua Johnson, declare as follows:

1. I am the Plaintiff in this action and am representing myself.
2. I make this declaration in support of my Ex Parte Application for an Order Permitting Remote Testimony. I have personal knowledge of the facts stated, except where I identify information supplied by a witness.
3. Attached as **Exhibits A, C, D, and E** are true and correct copies of my email correspondence with Chase's counsel concerning remote testimony on August 27 and September 1, 2026.
4. Attached as **Exhibit B** is a true and correct copy of Rob Wilkins's LinkedIn profile, which I downloaded from LinkedIn on September 11, 2026.
5. On August 13, 2026, I met and conferred with Chase's counsel about remote trial testimony. Counsel was not inclined to stipulate at that time, questioned whether the Court had authority to permit remote testimony, and asked me to provide supporting authority and the witnesses' hardship information.
6. I communicated with Zack Hoffman and Meghan Johel about appearing at trial. Hoffman told me that he and his wife work full time, live in North Carolina, and have a three-month-old and a two-year-old. Johel told me that she lives in North Carolina, works, and is the primary caregiver for her six-year-old and two-year-old children. Her husband's work schedule is inflexible.
7. I expect each witness's testimony to take approximately ten minutes. Both told me that appearing in person would require three to four days away from work and home.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 11, 2026.

/s/Joshua Johnson

Joshua Johnson

# EXHIBIT A

Email from Alisa Givental
Declining Remote-Testimony Stipulation
September 1, 2026

Gmail **Josh Johnson <josh@jj88.org>**

## RE: Rule 43 stipulations Johnson v Chase

1 message

**Givental, Alisa** <Alisa.Givental@wbd-us.com> Tue, Sep 1, 2026 at 7:36 PM
To: Josh Johnson <josh@jj88.org>
Cc: "Narita, Tomio" <Tomio.Narita@wbd-us.com>, "Gnanadesigan, Abirami" <AGnanadesigan@dykema.com>

Josh,

This request has not been pending since before June 17. Before Thursday afternoon, you had communicated only that you were contemplating a remote-appearance request for unspecified witnesses. Thursday afternoon was the first time you identified Meghan and Zack and provided the reasons specific to them. We did, however, discuss remote trial appearances during our recent Zoom call, so you are aware that Chase believes remote testimony—particularly from damages witnesses—would be highly prejudicial.

That prejudice is compounded because Meghan and Zack would offer testimony on which you presumably intend to base a substantial damages request. Your initial disclosures identified 13 potential lay emotional-distress witnesses in substantially identical terms, as well as seven similarly described medical providers. It was not practicable to depose every individual in that undifferentiated group, and the disclosures gave Chase no basis to know that Meghan and Zack would become your selected trial damages witnesses. Requiring Chase to cross-examine these undeposed witnesses for the first time remotely would materially impair its ability to conduct an effective credibility examination.

You also have not provided a compelling basis for remote testimony. You selected a forum distant from many of your witnesses and then chose, from a larger group of similarly described witnesses, two who reside outside California. You did not explain how Meghan's anticipated testimony differs from Zack's or why testimony from both is necessary. Nor did you explain why comparable testimony could not be presented through another listed witness able to appear in person, including the California witness.

The asserted three-to-four-day travel burden also remains unsupported. Airfare appears moderate, and three to four days away is unnecessary given the fixed trial schedule. Realistically, Plaintiff's damages witnesses would be presented Monday afternoon or Tuesday morning, with the remainder of the three-day trial devoted to Chase's case, closing arguments, and deliberations. The parties could meet and confer regarding witness sequencing to reduce uncertainty and limit the witnesses' travel to one or two days. The employment, childcare, and travel considerations you identify may make attendance tiring and inconvenient, but they were foreseeable and would have existed on any trial date.

Based on the information provided, Chase cannot stipulate to the requested remote testimony and will oppose an *ex parte* application. Chase remains willing to meet and confer regarding scheduling arrangements that would minimize the witnesses' time away while permitting them to testify in person.

Alisa

# EXHIBIT B

Rob Wilkins LinkedIn Profile

Downloaded September 11, 2026

## Contact

robjwilkins@hotmail.com

www.linkedin.com/in/robert-wilkins-497045171 (LinkedIn)

## Top Skills

Operations Management

Workforce Management

Process Automation

## Certifications

AI Prompt Engineering Certified

# Robert Wilkins

Vice President of Operations | Global Workforce & Dispute Management | Enterprise Risk Mitigation | AI-Driven Process Optimization & Automation

Columbus, Ohio Metropolitan Area

## Summary

Senior operations executive with 21 years of progressive leadership experience driving regulated, high-volume financial services at JPMorgan Chase. Proven record of directing global workforces of 75+ employees across domestic and international sites, scaling dispute-resolution operations to exceed 60,000 monthly volumes while consistently maintaining a 99.9% SLA compliance rate.An early adopter and certified practitioner of Generative AI and advanced prompt engineering, pioneering the integration of LLMs to automate complex workflow documentation, eliminate manual bottlenecks, and reclaim critical operational capacity. Recognized for enterprise governance, flawless audit execution, and serving as an executive Credit Reporting Witness in 30+ legal depositions—mitigating over $20M in corporate financial risk.Core Expertise: • Global Workforce & Operations Management • Enterprise Risk & Regulatory Compliance (FCRA, RESPA) • Process Automation & Generative AI Integration • Cross-Functional Leadership & Change Management • Vendor & Partnership Management • Audit Readiness & Governance Controls

## Experience

### JPMorganChase

16 years 1 month

**Vice President, Operations Leadership**

2023 - September 2026 (3 years)

Columbus, OH

Directed a 75+ person global workforce across domestic and offshore centers (Mumbai, Manila), processing over 60,000 disputes monthly while sustaining an exceptional 99.9% SLA compliance rate.

Pioneered the integration of Generative AI and advanced prompt engineering to automate complex workflow documentation and root-cause analysis, reclaiming 10+ hours of operational capacity weekly.

Engineered strategic dispute-resolution frameworks for major product rollouts, including the "Pay in 4" initiative, seamlessly scaling operations to support thousands of new customer touchpoints while maintaining inventory control.

Directed operational control reporting and governance frameworks, successfully navigating 10+ enterprise audits with zero critical findings while maintaining strict regulatory alignment.

Served as the executive Credit Reporting Witness for 30+ legal depositions and trials, providing definitive operational expertise that resulted in zero case losses and mitigated over $20M in corporate financial risk.

### Vice President, Operations Manager / Project Manager

2018 - 2023 (5 years)

Columbus, OH

Spearheaded the Auto Indirect Disputes Robotics Project, automating legacy workflows to eliminate 2 minutes of manual processing per case and driving a 20% increase in overall execution productivity.

Designed and deployed a proprietary Root Cause Tracker that revealed over 80% of dispute updates originated externally from credit bureaus, enabling strategic realignment and targeted vendor accountability.

Directed complex operational initiatives across 5 distinct lines of business, forging strategic partnerships with Legal, Risk, Compliance, and Servicing to translate regulatory requirements into actionable execution plans.

Governed system access and data security protocols for enterprise dispute teams, reinforcing stringent operational controls and safeguarding institutional data integrity.

### Vice President, Operations Manager

2016 - 2018 (2 years)

Columbus, OH

Directed a 75+ person global workforce, optimizing capacity and operational workflows to successfully execute over 60,000 credit disputes on a monthly basis.

Spearheaded the strategic offshoring of 30 FTEs, conducting on-site international training in Mumbai, India, while concurrently executing the successful decommissioning of the Dallas operational footprint.

Conducted comprehensive risk assessments and directed strategic credit-reporting vendor partnerships, driving procedural consistency, cross-functional training alignment, and robust data integrity.

Assistant Vice President, Operations Unit Manager
September 2010 - September 2016 (6 years 1 month)
Columbus, OH

Directed internal teams of up to 12 FTEs and rapidly scaled operations by onboarding and managing 20 contingent workers to maintain service continuity and manage massive volume surges during the historic housing crisis.

Engineered and standardized CDC/OCC regulatory complaint controls, providing executive visibility that successfully proved actual, validated complaints comprised less than 1% of total dispute volume.

Partnered directly with Legal counsel to align credit-reporting requirements and provide critical operational support for high-stakes settlement agreements.

JPMorganChase
Early Career Progression
September 2005 - 2010 (5 years)
Columbus, OH

Advanced through progressively responsible operations and workflow management roles, including Team Leader and compliance support. Managed domestic and offshore teams, streamlined loan servicing workflows, and resolved complex consumer credit disputes.

## Education

Columbus State Community College
Associate of Science - AS, Business Administration and Management, General · (2001 - 2005)

# EXHIBIT C

Email from Alisa Givental
Proposing Trial-Day Flights
September 1, 2026

**From:** **Givental, Alisa** Alisa.Givental@wbd-us.com
**Subject:** RE: Rule 43 stipulations Johnson v Chase
**Date:** September 1, 2026 at 2:59 PM
**To:** Josh Johnson josh@jj88.org
**Cc:** Narita, Tomio Tomio.Narita@wbd-us.com, Gnanadesigan, Abirami AGnanadesigan@dykema.com

AG

Hi Josh,

Some additional information would help to evaluate your request.

First, could you explain why anticipated testimony of Meghan and Zack won't be cumulative or duplicative of each other or the other three lay damages witnesses on your witness list (Samantha Alcorn, Addison McMillan, Brandon Workman). Your initial disclosures and witness list describe these witnesses' anticipated testimony in identical terms.

Second, what is the basis for your estimate that in-person testimony would require Meghan and Zack to spend three to four days away from work and home? (I did a quick search on google flights and found a $400 itinerary departing Raleigh at 6:35 a.m. on September 14, arriving at LAX at 11:47 a.m., departing LAX at 9:40 p.m., and returning to Raleigh at 9:09 a.m. the following morning. That itinerary would require approximately 27 hours away.)

Third, did either Meghan or Zack make or change any travel, work, or childcare arrangements for the August 3rd trial date? Based on the hardships you describe in your email, travel in August or now would be equally burdensome, but we may not have all the information.

Finally, do we know whether the Raleigh federal courthouse is in a position to accommodate the proposal you outline?

Alisa

**Alisa Givental**
Senior Counsel
Womble Bond Dickinson (US) LLP

**d:** 415-765-6268
**e:** Alisa.Givental@wbd-us.com

50 California Street
Suite 2800
San Francisco, CA 94111

WOMBLE BOND DICKINSON

womblebonddickinson.com

**We have moved! Please update your records with our new address**

# EXHIBIT D

Email from Tomio Narita
Response Regarding Authorities
August 27, 2026

**From:** **Narita, Tomio** Tomio.Narita@wbd-us.com
**Subject:** RE: Rule 43 stipulations Johnson v Chase
**Date:** August 27, 2026 at 8:51 PM
**To:** Josh Johnson josh@jj88.org, Givental, Alisa Alisa.Givental@wbd-us.com, Gnanadesigan, Abirami AGnanadesigan@dykema.com
**Cc:** Narita, Tomio Tomio.Narita@wbd-us.com

TN

Josh we'll review your authorities and get back to you in a few days.

**Tomio Narita**
Partner
Womble Bond Dickinson (US) LLP

**d:** 415-765-6274
**m:** 415-519-6093
**e:** Tomio.Narita@wbd-us.com

50 California Street
Suite 2800
San Francisco, CA 94111

WOMBLE BOND DICKINSON

**womblebonddickinson.com**

**We have moved! Please update your records with our new address**

This email is sent for and on behalf of Womble Bond Dickinson (US) LLP. Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

**From:** Josh Johnson <josh@jj88.org>
**Sent:** Thursday, August 27, 2026 4:38 PM
**To:** Narita, Tomio <Tomio.Narita@wbd-us.com>; Givental, Alisa <Alisa.Givental@wbd-us.com>; Gnanadesigan, Abirami <AGnanadesigan@dykema.com>
**Subject:** Rule 43 stipulations

External (josh@jj88.org)

Report This Email FAQ

Counsel,

On June 17, when the Court continued the trial to September 14—the fifth trial date set in this case (Dkt. Nos. 27, 59, 83, 175, 193)—to accommodate your family obligations, it stated that it "does expect [Chase] to reciprocate and avoid additional needless motion practice by agreeing to reasonable requests for Plaintiff's distant fact witnesses to testify remotely." Dkt. 193.

# EXHIBIT E

Email from Joshua Johnson
Request for Remote-Testimony Stipulation
August 27, 2026

**From:** **Josh Johnson** josh@jj88.org
**Subject:** Rule 43 stipulations
**Date:** August 27, 2026 at 4:38 PM
**To:** Narita, Tomio Tomio.Narita@wbd-us.com, Givental, Alisa Alisa.Givental@wbd-us.com, Gnanadesigan, Abirami AGnanadesigan@dykema.com
**Bcc:** meghanjohel@gmail.com, Zack Hoffmann zphoffmann@gmail.com

JJ

Counsel,

On June 17, when the Court continued the trial to September 14—the fifth trial date set in this case (Dkt. Nos. 27, 59, 83, 175, 193)—to accommodate your family obligations, it stated that it "does expect [Chase] to reciprocate and avoid additional needless motion practice by agreeing to reasonable requests for Plaintiff's distant fact witnesses to testify remotely." Dkt. 193.

Rule 43(a) provides: "For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." Fed. R. Civ. P. 43(a); *see also Ever Win Int'l Corp. v. Prong, Inc.*, No. CV 15-6433 DMG (GJSx), 2017 WL 1654063, at *1–2 (C.D. Cal. Jan. 6, 2017) (permitting remote testimony over objection based on witness's East Coast residence and adequate safeguards); *Beltran-Tirado v. INS*, 213 F.3d 1179, 1185–86 (9th Cir. 2000) (recognizing out-of-state remote testimony as permissible under Rule 43(a)); *Warner v. Cate*, No. 1:12-cv-1146-LJO-MJS, 2015 WL 4645019, at *1–2 (E.D. Cal. Aug. 4, 2015) (permitting remote testimony based on the witness's geographic distance and the expense and inconvenience of travel, with testimony transmitted from a federal courthouse).

Per the order, I request that Defendant stipulate to allow Zack Hoffman and Meghan Johel to testify by contemporaneous transmission from North Carolina.

Both are non-party witnesses who live in Raleigh, and I expect each to testify for about ten minutes. Zack works full time and has a 3-month-old and a 6-year-old; his wife also works full time. Meghan works and is the primary caretaker of her 3- and 6-year-old; her husband's work schedule is inflexible. For each of them, ten minutes of in-person testimony would realistically mean 3–4 days away from work and home, cross-country airfare plus lodging and lost wages, and arranging multi-day care for two young children, including an infant.

Both have agreed to testify from the federal courthouse in Raleigh (E.D.N.C.), subject to both courts' approval, which resolves any concern about safeguards.

Please let me know whether Chase will stipulate. Otherwise, I will file an ex parte application for an order permitting their testimony by contemporaneous transmission under Rule 43(a).

Regards,
Josh