**WOMBLE BOND DICKINSON (US) LLP**
TOMIO NARITA (SBN 156576)
Tomio.Narita@wbd-us.com
ALISA A. GIVENTAL (SBN 273551)
Alisa.Givental@wbd-us.com
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone: (415) 433-1900

**DYKEMA GOSSETT LLP**
ABIRAMI GNANADESIGAN, State Bar No. 263375
*AGnanadesigan@dykema.com*
444 South Flower Street, Suite 2200
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

JOSHUA JOHNSON,

Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,

Defendant.

Case No. 2:22-cv-06718-AB-MAAx

The Hon. André Birotte Jr.
Courtroom 7B

Magistrate Maria A. Audero
Courtroom: 690

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

Complaint Filed: September 19, 2022
Trial Date: September 14, 2026

## I. INTRODUCTION

Defendant JPMorgan Chase Bank, N.A. ("Chase") respectfully moves for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) on all claims asserted by Plaintiff Joshua Johnson ("Johnson"). Johnson has rested and the evidence—viewed in the light most favorable to Johnson—is legally insufficient to sustain a verdict on either of his remaining claims: (1) failure to conduct a reasonable investigation under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b); and (2) furnishing inaccurate information under the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.25(a).

The trial evidence has established the following undisputed facts: Johnson opened a Chase Ink business credit card in January 2017, used it for months, was late on payments in four of seven months, failed to pay at all in three months, and then stopped making payments entirely after September 6, 2017. The account was charged off at $499.53 in April 2018. Johnson does not dispute the charges on the account were his, does not challenge Chase's arithmetic, and has offered no competent evidence that the information Chase furnished to any consumer reporting agency was, in fact, inaccurate.

Johnson's case rests on three excuses for nonpayment—that he could not access his online statements, that he instructed Chase to pay the balance in full during a September 6, 2017 phone call, and a newly minted theory about "unauthorized late fees" that appeared for the first time at trial and was never raised in any dispute to Chase or to any credit reporting agency. None of these contentions, even if believed, would establish that Chase furnished inaccurate information. Excuses for nonpayment do not transform accurate debt reporting into actionable inaccuracies under the FCRA or the CCRAA. Nor has Johnson put on any evidence that the alleged inaccuracy of reporting the balance owed was objectively or readily verifiable as inaccurate or incomplete – which renders the alleged inaccuracy not actionable under the FCRA or CCRAA.

Johnson's FCRA claim fails for the additional reason that Johnson has not put on any evidence indicating that Chase's investigation of allegedly inaccurate information furnished by Chase was unreasonable. The information communicated to Chase about Johnson's dispute also precludes a finding of unreasonable investigation. The dispute form communicated to Chase that the account was subject to fraudulent takeover, which Johnson concedes is not his claim. The remainder of his claim communicated a complaint about non receipt of communications while the account was open – which the evidence in the case demonstrably refuted as inaccurate. Plaintiff's expert testified generally that Chase's investigation did not meet industry standards but did not identify anything Chase failed to do or should have done.

Finally, Johnson has not presented evidence of recoverable damages.

For the reasons set forth below, judgment as a matter of law should be entered in Chase's favor on both remaining claims.

## II. LEGAL STANDARD

When "a party has been fully heard on an issue during a jury trial," the court "can resolve the issue" and grant "judgment as a matter of law against the party" if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue" and that the party could prevail on its claim "only with a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1).

The Ninth Circuit has emphasized that Rule 50(a) serves a "gatekeeping" function, ensuring that cases with insufficient evidence do not reach the jury. *Costa v. Desert Palace, Inc.,* 299 F.3d 838, 859 (9th Cir. 2002) (en banc), aff'd, 539 U.S. 90 (2003). "A mere scintilla of evidence" is not sufficient to withstand a motion for judgment as a matter of law. *Erickson v. Pierce County*, 960 F.3d 567, 571 (9th Cir. 2020). Rather, the nonmoving party must present "substantial evidence" from which a reasonable jury could find in its favor. *Id.*

## III. CHAISE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

### A. No Reasonable Jury Could Find That Chase Furnished Inaccurate Information

Both of Johnson's claims require proof that Chase furnished inaccurate information to a consumer reporting agency. *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022) ("If there is no inaccuracy, then the reasonableness of the investigation is not in play."); Cal. Civ. Code § 1785.25(a) ("A person shall not furnish information …to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."). Johnson did not meet this burden.

The evidence at trial established that Johnson opened the Ink business credit card in January 2017 and that he made all of the purchases on the business credit card account that were referenced in the account records. Dkt. 196, Admitted Fact (A.F.) ## 2, 6; Exhibit 336, ¶ 23; Testimony 9/15/26. Johnson does not claim there was any arithmetic error in the account statements entered into evidence statements.[1] *Id.* (testifying about Exhibit 302); Testimony 9/15/26.

The record shows Chase called Johnson on September 6, 2017 to request payment on the Business account. Dkt. 196, A.F. # 7. The amount owed was $345.97, with a minimum payment of $111.49, and Johnson paid only $111.49 on that date, leaving an unpaid balance of $234.48. A.F. # 8; Tr. Exh. 302, Bates CHASE00045, CHASE00049. Johnson never made another payment until August 26, 2020—nearly three years later. Testimony 9/15/26. The account was charged off at $499.53 in April 2018. Tr. Exh. 302; Testimony 9/15/26. There is no evidence that

[1] For the first time, at trial Plaintiff has challenged the propriety of charging a late fee based on his claim that he did not have access to his statements online. Even if this argument were not waived – having never been previously raised in any dispute or pleading – it is irrelevant to accuracy. Contractually, a late fee is charged "[i]f any payment is late," and "Even if [the] account is closed or suspended, …the amounts … owe[d] under the account," still must be repaid. Tr. Exh. 31, pp. 7-8. Even if this were not the case, Plaintiff's contract claims were resolved in arbitration.

Chase furnished any information inconsistent with the amount of or status of the account at any time. *See* Tr. Exhs. and Testimony.

Failure to prove that inaccurate information furnished by Chase precludes liability under the FCRA or CCRAA.

**B. Johnson's Alleged Excuses for Nonpayment Do Not Transform Accurate Reporting into Inaccurate Reporting.**

Johnson contends the accurate information furnished about his account should be deemed inaccurate under the FCRA and CCRAA because he allegedly believed his payment on September 6, 2017 was payment in full.[2] He also contends it was inaccurate because Chase allegedly failed to make account statements available. Johnson effectively contends these excuses negate his obligation to pay such that it was "inaccurate" to report the account with the unpaid balance owed.

Courts all over the country have rejected collateral attacks on contractual obligations to pay, finding them inactionable under the FCRA.[3] *E.g. Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010) ("[C]ourts have been

---

[2] Johnson also claims that he was not receiving account statements, but he does not dispute – and it is Admitted Fact # 7 – that Chase called him on September 6, 2017 to collect a payment, and that the payment made on that date was $111.49 – well short of the balance at the time. A.F. # 8. The alleged lack of statements are not the reason he failed to pay the full balance on September 6. 2017. The excuse comes down to what happened during the call.

[3] This case law is being replaced with the "objectively and readily verifiable" standard discussed in the next section, but the outcome using either lines of case law is the same. Courts continue to recognize that furnishers are not tribunals required to decide disputes that have no objectively and readily verifiable answer. *See e.g. Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 251 (4th Cir. 2025) ("Furnishers are not tribunals. They have neither the resources nor the expertise to conduct the level of investigation that takes place in judicial proceedings or to make the kinds of determinations about disputes that courts make."). It took two years of discovery and four days of hearings for an arbitrator to rule on Johnson's breach of contract theories. Chase was not required to resolve the same contentions within the 30-day dispute window allotted by the FCRA.

loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims."); *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 38 (1st Cir. 2010) ("just as in suits against CRAs, a plaintiff's required showing is factual inaccuracy, rather than the existence of disputed legal questions," because "[l]ike CRAs, furnishers are 'neither qualified nor obligated to resolve' matters that 'turn[ ] on questions that can only be resolved by a court of law.'"); *Mehta v. Wells Fargo Bank, N.A.*, No. CV 17-02532-AB (SSX), 2018 WL 5880758, at *3 (C.D. Cal. Feb. 6, 2018) (citing *Biggs v. Experian Info. Sols.*, Inc., 209 F. Supp. 3d 1142, 1144 (N.D. Cal. 2016) (The alleged inaccuracy must be a factual inaccuracy; "the presentation of legal defenses to payment will not suffice."); *see also:* ECF 187, Chase J.I. # 32.

Johnson has not identified any case where a consumer prevailed on an FCRA claim because they were mistaken about the amount he had paid (or failed to receive a credit card statement).

When this Court denied Chase's motion for summary judgment, it held that the outcome of the arbitration proceeding has no preclusive effect here *because* the claims in this case are not the same contract claims. *See* ECF 80, p. 4. Johnson cannot prove inaccuracy by relying on the breach of contract theories he already litigated. He has not stated any other basis for claiming his excuses for failure to pay have any impact on the accuracy of the information reported by Chase. He cannot transform factually accurate information furnished by Chase into inaccurate information actionable under the FCRA or CCRAA.

**C. Johnson's Excuses for Payment Were Not Objectively and Readily Verifiable**

An emerging multi-circuit consensus holds that an alleged inaccuracy is not actionable under the FCRA, and by extension the CCRAA,[4] unless it involves

[4] California courts interpret the CCRAA consistently with the FCRA. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890-91 (9th Cir. 2010).

information that is "objectively and readily verifiable." *Ward v. Nat'l Credit Sys., Inc.,* 182 F.4th 918, 937 (10th Cir. July 20, 2026) (joining the Second, Fourth, Fifth, and Eleventh Circuits: "reported information is actionably 'inaccurate' only if that information is objectively and readily verifiable"); *Roberts v. Carter-Young, Inc.,* 131 F.4th 241, 251 (4th Cir. 2025) ("reported information is actionably 'inaccurate' only if that information is objectively and readily verifiable' as mistake- or error-free."); *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269–70 (2d Cir. 2023) (an unresolved legal question concerning the validity of a debt was not sufficiently objectively verifiable); *Reyes v. Equifax Info. Servs., LLC*, 140 F.4th 279, 287 (5th Cir. 2025) (same where the legal position on the debt's validity was "contested and unresolved"); *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1369 (11th Cir. 2024); *Sessa v. Trans Union, LLC*, 74 F.4th 38, 42 (2d Cir. 2023).

While the Ninth Circuit has not formally adopted this standard, courts in this Circuit, including this Court, have applied it. E.g. *Davis v. Trans Union, LLC*, No. 2:22-CV-05819-SPG-AS, 2025 WL 2851881, *9 (C.D. Cal. July 22, 2025) ("in light of the weight of authority from other Circuits, the Court will instead apply the 'objectively and readily verifiable' test to analyze whether plaintiffs' claimed inaccuracies are actionable."); *Adedamola Osuolale v. Experian Info. Sols. Inc.,* No. CV 25-07118-MWF (PVCX), 2026 WL 2536499, at *6 (C.D. Cal. Aug. 27, 2026) ("even assuming that either of Plaintiff's theories rendered MBFS's reporting inaccurate, neither inaccuracy involved 'the type of straightforward application of law to facts that [MBFS] could objectively and readily verify.'"); *id.* ("MBFS's allegedly inaccurate resolution of that dispute is not actionable because it is 'a contractual [and statutory] dispute without a straightforward answer.' ") (quoting *Holden,* 98 F.4th at 1368); *Hebrank v. Early Warning Servs. LLC*, No. CV-24-03711-PHX-MTL, 2025 WL 1148801, at *4 (D. Ariz. Apr. 18, 2025) ("[T]he matters which Hebrank raises concern about are objectively and readily verifiable . . . .").

Johnson says the information furnished by Chase was inaccurate because

Chase allegedly failed to comply with his payment instructions during the September 6, 2017 call and because he did not receive statements.[5] There is no evidence that Johnson ever communicated this claim to Chase during any relevant time. *See* Testimony, 9/14/2026, 9/15/2026, 9/16/2026. Even if he had, there is no evidence that the claim could have been confirmed as true with objectively and readily available evidence at any time relevant to this case.

Under the FCRA and the "objectively and readily verifiable" standard, furnishers are not required to change factually accurate reporting on the basis of the consumer's statement alone. *Ward,* 182 F.4th 931–32 (A furnisher will have "reasonable cause to believe that the information is inaccurate" when it has "specific knowledge, ***other than solely allegations by the consumer***, that would cause a reasonable person to have substantial doubts about the accuracy of the information.") (citing 15 U.S.C. § 1681s-2(a)(1)(D) (emphasis added in opinion)); *id.* at 937 (reversing FCRA jury verdict; identity theft allegations required the furnisher to "subjectively assess … credibility," which "a furnisher is not qualified nor obligated to do… Thus, Ward cannot show the information was inaccurate under the objectively-and-readily-verifiable standard."); *Roberts,* 131 F.4th at 251 ("[A] dispute that involves complex fact-gathering and in-depth legal analysis of the sort that courts would typically perform is not objectively and readily verifiable. A dispute that implicates unsettled questions of law and requires credibility determinations and quasi-discovery isn't either.").

Johnson cannot prove an actionable inaccuracy to support his FCRA and CCRAA claims because the alleged inaccuracy was not objectively and readily verifiable at any relevant time.

**D. Johnson Cannot Prove an Unreasonable Investigation**

The claim under section 1681s-2(b) of the FCRA requires proof that Johnson

[5] Johnson relayed neither claim in his August 2020 dispute. *See* Tr. Exh. 4.

communicated to a CRA that information Chase furnished was inaccurate, and that Chase conducted an unreasonable investigation of that dispute. 15 U.S.C. § 1681s-2(b)(1)(A); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009). There is no evidence in the record of Chase's investigation. *See* Testimony, 9/14/2026, 9/15/2026, 9/16/2026.

Whether an investigation is reasonable "depends in large part on ... the allegations provided to the furnisher by the credit reporting agency.' " *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1160 (9th Cir. 2009) (citation omitted); *Id.* at 1157 ("The pertinent question is thus whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute.") (citing *Westra v. Credit Control of Pinellas*, 409 F.3d 1825, 1827 (7th Cir.2005) ("[The furnisher's] investigation in this case was reasonable given the scant information it received regarding the nature of [the consumer's] dispute.")); *Gross*, 33 F.4th 1246, 1252 ("Courts have also identified several factors that inform the reasonableness analysis, including: the furnisher's relationship to the debt and to the consumer; the level of detail in the credit reporting agency's notice of dispute; and the feasibility of implementing investigatory procedures, including training staff.") (citations omitted).

Based on the contents of the dispute received by Chase, Tr. Exh. 4, any investigation would have confirmed the accuracy of Chase's reporting, because the disputed information was simply untrue. Equifax coded it as a claim of "account take-over, fraudulent charges on account," with a narrative statement that: "Chase never sent a paper bill, never called, never emailed, or otherwise attempted to make me aware in any way that the account carried a balance while the account was open. I regularly logged into my Chase account online and observed a $0 balance." Tr. Exh. # 4.

Johnson concedes that there were no fraudulent charges on the account. *See* Testimony 9/14/2026, 9/15/2026. And the evidence at trial established that while the

account was open, Chase sent Johnson paper statements (until he switched to paperless billing), past due notices, email notifications, and placed at least one call to alert him of a past due balance on the account. Tr. Exh. ## CITE. Mr. Johnson admitted on cross-examination that he does not claim to have seen a zero balance owed on the Business account when he logged in. *See* Testimony 9/15/2026. While Johnson has presented no evidence of an unreasonable investigation, the evidence does establish that any reasonable investigation would not have revealed that any information furnished by Chase was inaccurate.

An investigation into Johnson's dispute to the CFPB, Tr. Exh. # 314, confirms this fact. *See* Exh. # 319 (describing results of CFPB investigation).

**E. Johnson Did Not Establish Any Damages**

Even if Johnson could establish liability under either the FCRA or the CCRAA—which he cannot—his claims fail independently because he has not presented sufficient evidence of compensable damages.

***1. No Evidence of Actual Economic Harm.***

Johnson has presented no competent evidence that any third party—whether an insurance company, bank, or other creditor—actually reviewed a credit report containing the Ink business account and took adverse action based on it. Johnson testified about receiving letters from insurance companies and referenced mortgage rates, but he presented no evidence that these entities actually pulled his credit report, saw the Ink account tradeline, and denied him credit or charged him higher rates because of it.

The only other economic damages Johnson claimed relate to the costs and burdens of the arbitration proceeding he litigation proceeding he voluntarily initiated against Chase. The arbitration was Johnson's choice, not an injury caused by Chase's credit reporting, and any economic losses thereto are not compensable in this case – if compensable at all, they should have been sought and – if appropriate – awarded in the arbitration case. *See Enwere v. Terman Assocs., L.P.*, 2008 WL 5146617, *4 (N.D.

Cal. Dec. 4, 2008) (citing *Knussman v. Maryland*, 272 F.3d 625, 642 (4th Cir. 2001) ("Generally speaking, litigation-induced emotional distress is never a compensable element of damages")).

### *2. No Evidence of Emotional Distress Unrelated to Arbitration Proceeding*

Johnson's emotional distress claim likewise fails for lack of competent evidence. No medical expert testified at trial that Chase's conduct caused Johnson any medical or psychological harm. Johnson mentioned seeing a sleep psychologist during 2021, but the evidence at trial demonstrates that the psychologist's records attribute Johnson's depression and distress to entirely different causes—his job, the COVID-19 pandemic, his living situation in a studio apartment, and time spent on the arbitration proceeding —not to Chase's credit reporting. *See* Tr. Exh. 246, 247, 248, 250, 251.

Johnson presented two friend witnesses who offered their subjective impressions of Johnson's mood and demeanor. But on cross-examination, at least one of these witnesses admitted she was unaware that Johnson had told his psychologist that his distress related to his job, COVID, and his apartment—not the credit reporting dispute, nor that the sleep problems began in 2017. Testimony 9/15/2026. The testimony also focused on Johnson's stress at the time the arbitration proceeding was ongoing and expressly related to preparing or drafting documents for that case. *See id.* These lay witnesses' speculative attributions of Johnson's observed mood to the credit reporting dispute, contradicted by Johnson's own statements to his treating psychologist, do not constitute "substantial evidence" of causation.

Without competent evidence that Chase's credit reporting actually caused compensable harm—whether economic or emotional—Johnson's claims fail as a matter of law, regardless of the liability analysis.

## IV. CONCLUSION

For the foregoing reasons, Defendant JPMorgan Chase Bank, N.A. respectfully requests that the Court grant judgment as a matter of law in Chase's favor under Federal Rule of Civil Procedure 50(a) on all of Plaintiff's remaining claims.

DATED: September 16, 2026

**WOMBLE BOND DICKINSON (US) LLP**

By: */s/Alisa A. Givental*
Alisa A. Givental

Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant JPMorgan Chase Bank, N.A., certifies that this brief contains words, which complies with the word limit of L.R. 11-6.1.

DATED: September 16, 2026

**WOMBLE BOND DICKINSON (US) LLP**

By: */s/Alisa A. Givental*
Alisa A. Givental

Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

**PROOF OF SERVICE**

*Joshua Johnson vs. JPMorgan Chase Bank, N.A.*
*USDC, Central District, Case No. 2:22-cv-06718-AB-MAA*

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is 50 California Street, Suite 2800, San Francisco, California 94111.

On the date set forth below, I served the following document(s) described as:

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

on the interested parties in this action as follows:

Joshua Johnson
2201 5th St. Apt 208
Santa Monica, CA 90405

Tel: (336) 423-2594
Email: josh@jj88.org

**PLAINTIFF PRO SE**

☒**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address alisa.givental@wbd-us.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 16, 2026, at Los Angeles, California.

Alisa Givental